

SEALED

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.



RISHI KAPOOR;
LOCATION VENTURES, LLC;
URBIN, LLC;
PATRIOTS UNITED, LLC;
LOCATION PROPERTIES, LLC;
LOCATION DEVELOPMENT, LLC;
LOCATION CAPITAL, LLC;
LOCATION VENTURES RESOURCES, LLC;
LOCATION EQUITY HOLDINGS, LLC;
LOCATION GP SPONSOR, LLC;
515 VALENCIA SPONSOR, LLC;
LV MONTANA SPONSOR, LLC;
URBIN FOUNDERS GROUP, LLC;
URBIN CG SPONSOR, LLC;
515 VALENCIA PARTNERS, LLC;
LV MONTANA PHASE I, LLC;
STEWART GROVE 1, LLC;
STEWART GROVE 2, LLC;
LOCATION ZAMORA PARENT, LLC;
URBIN CORAL GABLES PARTNERS, LLC;
URBIN COCONUT GROVE PARTNERS, LLC;
URBIN MIAMI BEACH PARTNERS, LLC; and
URBIN MIAMI BEACH II PHASE 1, LLC,

        Defendants.

_____/

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

    Plaintiff Securities and Exchange Commission (the "Commission") alleges:

## I.   INTRODUCTION

1.     The Commission brings this emergency action against Defendants Rishi Kapoor ("Kapoor"), Location Ventures, LLC ("LV"), URBIN, LLC ("URBIN"), and their subsidiaries and affiliated companies[1](collectively, the "Defendants") for their operation of a real estate investment scheme in violation of the anti-fraud provisions of the federal securities laws. From January 2018 through March 2023 (the "Relevant Period"), Defendants raised approximately $93 million from more than 50 investors.

2.     LV purports to be a real estate company that invests in the development of single-family homes, condominiums, and mixed-use properties in South Florida. Kapoor is LV's founder and former chief executive officer. URBIN is an affiliate of LV that invests in the development of communal live/work concept properties located in, as its name suggests, urban neighborhoods.

3.     LV and URBIN earn revenue from fees they charge their real estate projects, including acquisition, development, management, marketing, and loan guarantor fees. They also own a stake in each of their projects, which entitles them and their investors to a percentage of any profits made by the projects. Importantly, LV owns 40% of URBIN, resulting in a multi-level corporate structure with a percentage of the profits at each level flowing to LV at the top.

4.     To fund the venture, Defendants offered passive investment opportunities in both LV and URBIN, as well as in each of their respective projects. To induce investors, Kapoor and his partner claimed they made a $13 million cash investment in LV through Defendant Patriots United, LLC ("Patriots United"), a company owned by Kapoor, his partner, and members of

---

[1] LV's and URBIN's subsidiaries and affiliated companies are alleged in paragraph 5 of this Complaint.

Kapoor's family. At no point during the Relevant Period, however, did Patriots United contribute any cash to LV.

5.      Kapoor attempted to conceal the $13 million deficit within a web of companies, subsidiaries, and affiliated entities, which included among others: LV; URBIN; Patriots United; Location Properties, LLC ("L. Properties"); Location Development, LLC ("L. Development"); Location Capital, LLC ("L. Capital"); Location Ventures Resources, LLC ("L. Resources"); Location Equity Holdings, LLC ("L. Holdings"); Location GP Sponsor, LLC ("L. GP Sponsor"); 515 Valencia Sponsor, LLC ("515 Valencia Sponsor"); LV Montana Sponsor, LLC ("LV Montana Sponsor"); URBIN Founders Group, LLC ("URBIN Founders"); URBIN CG Sponsor, LLC ("URBIN CG Sponsor"); 515 Valencia Partners, LLC ("515 Valencia"); LV Montana Phase I, LLC ("LV Montana"); Stewart Grove 1, LLC ("Stewart Grove 1"); Stewart Grove 2, LLC ("Stewart Grove 2"); Location Zamora Parent, LLC ("L. Zamora Parent"); URBIN Coral Gables Partners, LLC ("URBIN Gables"); URBIN Coconut Grove Partners, LLC ("URBIN Grove"); URBIN Miami Beach Partners, LLC ("URBIN Miami Beach"); and URBIN Miami Beach II Phase 1, LLC ("URBIN Miami Beach II") (collectively, "Company Defendants").

6.      Kapoor's false claims about his investment was just one in a series of material misrepresentations and omissions Defendants made to investors. For instance, as part of the offering materials provided to prospective investors, Defendants included *pro forma* budgets that projected costs for each of the projects, such as interest expense and loan fees, land purchase, and acquisition and capital formation costs. Kapoor intentionally understated construction and other estimated costs in the *pro formas* to represent higher returns to prospective investors. When actual costs for the projects greatly exceeded those forecasted in the *pro formas*, Defendants withheld that and other information from investors, directed employees to revise or remove financial data

3

from reports and meeting minutes, and, in some instances, continued to use the *pro formas* to raise additional capital.

7.      Kapoor also represented to investors that LV, URBIN, and each of the projects were separate and distinct investments, possessing their own members, designated capital, and corporate identities. Kapoor, however, regularly ignored corporate formalities and commingled investor funds with more than $60 million in intercompany transfers occurring during the Relevant Period. As just a few examples: $1.6 million of investor funds in the URBIN Grove project were transferred to and used by the URBIN Gables project to purchase land. Approximately $4.5 million of customer sales deposits paid by purchasers of units in the URBIN Grove and URBIN Miami Beach projects were released from escrow and used for purposes unrelated to the construction of those projects. And approximately $14 million was transferred from LV to URBIN and recorded internally as an intercompany loan without member or board approval.

8.      As Defendants shuffled investor funds among the various companies and accounts, Kapoor and other insiders misappropriated at least $6 million of investor funds—$4.3 million of which Kapoor misappropriated for himself. During the same period, Kapoor purchased a 2023 68.7-foot yacht for over $5 million, a dock at the Cocoplum Yacht Club for $695,000, leased a 2020 600LT Spider McLaren sportscar, and paid a private chef $10,000 per month.

9.      In or around July 2023, a majority of LV's members removed Kapoor as manager and CEO of LV but not before Kapoor transferred more than $19 million—and nearly all of LV's remaining cash—to LV's largest investor, who demanded to be bought out after learning that Kapoor was misappropriating and misusing investor funds. Kapoor later resigned as the manger of URBIN.

10.     Without sufficient funds, LV's and URBIN's projects have stalled, been abandoned, or are the subject of litigation. In August 2023, LV's members formally replaced Kapoor with a retired judge to wind down LV and to liquidate certain LV projects. URBIN currently is being managed by LV's chief development officer.

11.     By engaging in the conduct alleged in this Complaint, Kapoor, LV, and URBIN violated Section 17(a)(2) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)(2)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Exchange Act Rule l0b-5(b) [7 C.F.R. § 240.10b-5(b)]. Kapoor and the Company Defendants violated Section 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1) and (3)], and Section 10(b) of the Exchange Act and Exchange Act Rules 10b-5(a) and (c) [17 C.F.R. § 240.10b-5(a) and (c)]. Kapoor also, directly and indirectly, violated Exchange Act Section 10(b) and Rule 10b-5 thereunder as a control person of the Company Defendants under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

12.     Among other relief, the Commission seeks permanent injunctions, disgorgement of ill-gotten gains with prejudgment interest,[2] and civil monetary penalties against the Defendants. The Commission also seeks an order against Kapoor imposing an officer and director bar. To protect investors and preserve investor assets, the Commission also seeks emergency relief, including asset freezes, the appointment of a Receiver, an order prohibiting the destruction of documents, and sworn accountings.

---

[2] The Commission's request for disgorgement is limited currently to: Kapoor, LV, URBIN, Patriots United, L. Capital, L. Development, L. Properties, L. Ventures, 515 Valencia, LV Montana, Stewart Grove 1, Stewart Grove 2, Zamora Parent, URBIN Grove, URBIN Gables, URBIN Miami Beach, and URBIN Miami Beach II.

## II.   DEFENDANTS

13.    **Kapoor** is a resident of Coral Gables, Florida. From January 2016 until a majority of LV's members removed him in July 2023, Kapoor served as the CEO and manager of LV. From May 2018 until he resigned in August 2023, Kapoor was the Managing Partner and manager of URBIN through URBIN Founders. Kapoor owns a 47.917% membership interest in LV through Patriots United[3] and a 7.14% membership interest in URBIN through Kapoor Capital, LLC ("Kapoor Capital").[4] Kapoor has business degrees in finance, marketing, and management, and a law degree but has never been a licensed attorney. At all times material to the Complaint, Kapoor managed and controlled the Company Defendants.

14.    **LV** is a Florida limited liability company formed in January 2016 with its principal place of business in Coral Gables, Florida. Kapoor managed and controlled LV until he was removed as manager by a majority of LV's members in July 2023. Kapoor and others formed LV for the purpose of investing in and developing real estate. LV is owned by certain investors in LV and Patriots United, a Florida limited liability company partly owned and controlled by Kapoor.

15.    **URBIN** is a Florida limited liability company formed in May 2018 with its principal place of business in Coral Gables, Florida. LV owns approximately 40% of URBIN. Kapoor managed and controlled URBIN through LV and URBIN Founders until he resigned in August 2023 and was replaced by LV's chief development officer. URBIN is an affiliate of LV that Kapoor and others formed for the purpose of investing in and developing real estate.

---

[3] Patriots United is owned by Kapoor, his partner, and Kapoor Capital, which is owned by Kapoor and two of his family members.

[4] Kapoor Capital is owned by Kapoor and two of his family members.

16.     **Patriots United** is a Florida limited liability company formed in September 2017 with its principal place of business in Coral Gables, Florida. Patriots United is partly owned and controlled by Kapoor. Patriots United owns a 47.917% membership interest in LV based on a purported $13 million cash capital contribution by Kapoor, his partner, and two members of Kapoor's family. As detailed in the Complaint, Patriots United never made a cash capital contribution to LV.

17.     **L. Properties** is a Florida limited liability company formed in January 2016 with its principal place of business in Coral Gables, Florida. L. Properties is a wholly owned subsidiary of LV through which LV operates. L. Properties is described on LV's website as a full-service real estate sales and marketing team.

18.     **L. Development** is a Florida limited liability company formed in February 2016 with its principal place of business in Coral Gables, Florida. L. Development is a wholly owned subsidiary of LV through which LV operates. L. Development is described on LV's website as a company focused on developing architecturally significant living experiences in key markets in South Florida.

19.     **L. Capital** is a Florida limited liability company formed in January 2016 with its principal place of business in Coral Gables, Florida. L. Capital is a wholly owned subsidiary of LV through which LV operates. LV's website describes L. Capital as a private real estate investment and asset management division that raises capital to invest in premium locations and premier developers.

20.     **L. Resources** is a Florida limited liability company formed in September 2019 with its principal place of business in Coral Gables, Florida. L. Resources is a wholly owned subsidiary of LV through which LV operates and purportedly provides human resource services to LV.

21.     **L. Holdings** is a Florida limited liability company formed in April 2020 with its principal place of business in Coral Gables, Florida. L. Holdings is a wholly owned subsidiary of LV through which LV operates and purportedly holds LV's projects. L. Properties, L. Development, L. Capital, L. Resources, and L. Holdings, collectively, shall be referred to as the "Operational Entities."

22.     **L. GP Sponsor** is a Florida limited liability company formed in February 2020 with its principal place of business in Coral Gables, Florida. L. GP Sponsor is a wholly owned subsidiary of LV through which LV owns the sponsor entities formed to own an interest in and manage LV's projects.

23.     **515 Valencia Sponsor** is a Florida limited liability company formed in February 2018 with its principal place of business in Coral Gables, Florida. 515 Valencia Sponsor is a wholly owned subsidiary of L. GP Sponsor. 515 Valencia Sponsor is the manager of the 515 Valencia project.

24.     **LV Montana Sponsor** is a Florida limited liability company formed in August 2022 with its principal place of business in Coral Gables, Florida. LV Montana Sponsor is a wholly owned subsidiary of L. GP Sponsor. LV Montana Sponsor is the manager of the LV Montana project.

25.     **URBIN Founders** is a Florida limited liability company formed in May 2018 with its principal place of business in Coral Gables, Florida. URBIN Founders is an affiliate of LV and the manager of URBIN.

26.     **URBIN CG Sponsor** is a Florida limited liability company formed in May 2018 with its principal place of business in Coral Gables, Florida. URBIN CG Sponsor is an affiliate of URBIN and the manager of the URBIN Gables project. L. GP Sponsor, 515 Valencia Sponsor, LV

Montana Sponsor, URBIN Founders, and URBIN CG Sponsor, collectively, are referred to as the "Manager Entities."

27.      **515 Valencia** is a Florida limited liability company formed in February 2018 with its principal place of business in Miami, Florida. 515 Valencia is managed by 515 Valencia Sponsor. 515 Valencia is an affiliate of LV that Kapoor and others formed for the purpose of owning and developing real property located in Coral Gables, Florida.

28.      **LV Montana** is a Florida limited liability company formed in August 2022 with its principal place of business in Coral Gables, Florida. LV Montana is managed by LV Montana Sponsor. LV Montana is an affiliate of LV that Kapoor and others formed for the purpose of owning and developing real property located in Columbia Falls, Montana.

29.      **Stewart Grove 1** is a Florida limited liability company that was formed in March 2016 with its principal place of business in Coral Gables, Florida. Stewart Grove 1 is a wholly owned subsidiary of L. Holdings that Kapoor and others formed for the purpose of owning and developing real property located in Miami, Florida.

30.      **Stewart Grove 2** is a Florida limited liability company that was formed in March 2016 with its principal place of business in Coral Gables, Florida. Stewart Grove 2 is a wholly owned subsidiary of L. Holdings that Kapoor and others formed for the purpose of owning and developing real property located in Miami, Florida.

31.      **L. Zamora Parent** is a Florida limited liability company formed in April 2023 with its principal place of business in Coral Gables, Florida. L. Zamora Parent is a wholly owned subsidiary of L. Holdings that Kapoor and others formed for the purpose of owning and developing real property located in Miami, Florida.

32.    **URBIN Gables** is a Florida limited liability company formed in May 2018 with its principal place of business in Coral Gables, Florida. URBIN CG Sponsor is the manager of URBIN Gables. URBIN Gables is an affiliate of URBIN that Kapoor and others formed for the purpose of owning and developing real property located in Coral Gables, Florida.

33.    **URBIN Grove** is a Florida limited liability company formed in August 2018 with its principal place of business in Coral Gables, Florida. URBIN is the manager of URBIN Grove. URBIN Grove is an affiliate of URBIN that Kapoor and others formed for the purpose of owning and developing real property located in Miami, Florida.

34.    **URBIN Miami Beach** was a Florida limited liability company formed in October 2019 with its principal place of business in Coral Gables, Florida, which was converted to a Delaware limited liability company in July 2022. URBIN Miami Beach is managed by URBIN. URBIN Miami Beach is an affiliate of URBIN that Kapoor and others formed for the purpose of owning and developing real property located in Miami Beach, Florida.

35.    **URBIN Miami Beach II** is a Florida limited liability company formed in August 2022 with its principal place of business in Coral Gables, Florida. URBIN Miami Beach II is managed by URBIN. URBIN Miami Beach II is an affiliate of URBIN that Kapoor and others formed for the purpose of owning and developing real property located in Miami Beach, Florida. 515 Valencia, LV Montana, Stewart Grove 1, Stewart Grove 2, L. Zamora Parent, URBIN Gables, URBIN Grove, URBIN Miami Beach, and URBIN Miami Beach II, collectively, are referred to as the "Project Entities."

### III.   JURISDICTION AND VENUE

36.     This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)]; and Sections 21(d), 21(e), and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa(a)].

37.     This Court has personal jurisdiction over the Defendants and venue is proper in the Southern District of Florida because: (a) Kapoor resides in the District; (b) the principal place of business of each of the Company Defendants is in the District; and (c) a substantial part of the events or omissions giving rise to the violations of the Securities Act and the Exchange Act occurred in the District.

38.     In connection with the conduct alleged in the Complaint, Defendants, directly and indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and of the mails.

### IV.   FACTUAL ALLEGATIONS

#### A.     The Real Estate Investment Scheme

39.     LV is a real estate development and investment company that Kapoor and others formed in January 2016 to develop new luxury single-family homes, multi-family redevelopment projects, and boutique condominiums.

40.     In May 2018, Kapoor and others formed URBIN, an affiliate of LV, to develop communal live/work properties in Miami Beach, Coral Gables, and Miami's Coconut Grove neighborhood, with plans to expand into Fort Lauderdale and cities nationwide.

41.     LV and URBIN essentially are two distinct brands. LV fits squarely in South Florida's luxury real estate market, while URBIN targets young professionals desiring to live and work in city centers and urban neighborhoods.

42.     From approximately January 2018 until at least March 2023, Defendants offered investors passive real estate investments opportunities in LV, URBIN, and their respective portfolios of real estate projects.

43.     Prospective investors could invest at the "company level" by purchasing membership units in LV and/or URBIN, which earn revenue from fees they charge their real estate projects, including acquisition, development, management, marketing, and loan guarantor fees. In addition to earning fees, LV and URBIN own an interest in each of their projects, such that an investment in LV or URBIN is an indirect investment in their respective projects.

44.     Prospective investors also could invest at the "project level" by purchasing membership units directly in the companies created to own the projects,[5] which would pay investors upon the completion or sale of the projects, assuming they were profitable.

45.     LV owns 40% of URBIN, placing investors in LV at the top of a multi-level corporate structure with a percentage of the profits at each level flowing to the top, as shown in LV's organization chart on the following page.

---

[5] This includes, but is not limited to, the Project Entities.

### *Figure 1 - Location Ventures' Organizational Chart*



46.   Kapoor used each of the Company Defendants in the scheme to defraud investors, including: the Operational Entities through which Kapoor operated the scheme and funneled investor funds; the Manager Entities through which Kapoor managed and controlled the companies and projects used in the scheme; and the Project Entities through which Kapoor raised money from investors, and misappropriated and misused investor funds.

47.   From at least January 2018 to March 2023, Defendants raised at least $93 million from more than 50 external investors.

48.   At all times material to the Complaint, Kapoor had the power to control the general affairs of the Company Defendants and had the requisite power to directly or indirectly control or influence the specific company policy which resulted in the Company Defendants' violations of

the anti-fraud provisions of the federal securities laws. Through the Manager Entities, Kapoor had control over the Company Defendants, their respective bank accounts and finances, and all key aspects of their business operations.

49.     The membership units Defendants sold to investors constitute investment contracts and are, therefore, securities under *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946). With respect to these investments, there was (a) an investment of money; (b) in a common enterprise; (c) based on the expectation of profits to be derived from the entrepreneurial or managerial efforts of others. *See SEC v. Friendly Power Co., LLC*, 49 F. Supp. 2d 1363, 1368 (S.D. Fla. 1999).

## B.     Defendants' Material Misrepresentations, Omissions, and Misuse of Investor Funds

50.     Defendants solicited investors through in-person and virtual investor presentations, as well as by telephone, email, and through LV's website. Investors were provided with materials that typically included an offering memorandum with information regarding the projects, a sponsor resume with information regarding LV, as well as the operating agreements and *pro forma* budgets for their preferred investment. The operating agreements and budgets not only contained the terms upon which prospective investors agreed to invest but made a series of representations regarding capitalization, expenses, corporate governance, use of investor funds, among many others.

### (i)     *Patriot United's $13 Million Cash Capital Contribution*

51.     To induce prospective investors to invest, Kapoor represented that he made an initial $13 million cash investment in LV through Patriots United, an entity owned by Kapoor, Kapoor's business partner, and two of Kapoor's family members.

52.     By contributing his own capital, Kapoor not only gained the confidence of prospective investors, many of whom are high-wealth individuals, but received a 47.917% membership interest in LV and, combined with the interest held by other insiders, effective control

14

over the company. LV then used the capital it raised, including Patriots United's purported $13 million, to purchase membership units in LV's projects and in URBIN.

53.     Despite Kapoor's representations to investors, Patriots United never contributed any cash to LV. Defendants attempted to conceal the $13 million deficit within a web of companies, subsidiaries, and affiliates that grew to at least 36 companies and 15 real estate projects at various stages of acquisition and development. See *Figure 1 – Location Ventures' Organizational Chart* on page 13.

### (ii)     Pro Forma Budgets & Spending Controls

54.     Central to the scheme were the *pro forma* budgets Defendants provided to prospective investors, which estimated the costs to acquire, construct, manage, and sell the projects, as well as estimated investor returns.

55.     Kapoor intentionally understated construction and other estimated costs used in the *pro formas* to represent higher returns to prospective investors. When actual costs for the projects greatly exceeded those forecasted in the *pro formas*, Defendants withheld that and other information from investors, directed employees to revise or remove financial data from reports and meeting minutes, and, in some instances, continued to use the *pro formas* to raise additional capital. In the words of one LV company officer, "the budgets were a fiction."

56.     For example, certain LV board members instructed Kapoor not to use investor funds to engage in projects outside of Florida unless returns for those projects exceeded those of existing projects in South Florida. Kapoor used investor funds toward the acquisition of property in Colombia Falls, Montana, referred to herein as LV Montana. Kapoor directed the president of LV's Single Family Division to modify the estimated costs in the LV Montana's *pro forma* budget to ensure the estimated returns were as high as those in South Florida.

57.     As another example, LV's budget set limits to employee salaries. Kapoor's annual salary was capped at $350,000, which could increase to no more than $400,000 with board approval. In 2021, Kapoor paid himself $629,600 as compensation. In 2022, Kapoor paid himself $1,686,303 as compensation. The budget also capped LV's chief development officer's annual salary at $350,000, but she received $363,333 as compensation in 2020, $534,999 in 2021, and $743,333 in 2022. None of these payments was approved by LV's board.

58.     In addition to the budgets, the operating agreements Defendants provided to prospective investors included express controls on how investor funds could be used. For example, increases to LV's annual budget greater than 7.5% required board approval. Increases greater than 10% to URBIN Miami Beach's annual budget required approval by a majority of its members.

59.     Defendants, however, failed to seek board approval when LV's budgets for 2021 increased by 68%. And upon receiving updated cost estimates for the URBIN Miami Beach and 551 Bayshore projects exceeding 110% of their approved budgets, Kapoor caused construction to begin on those projects without obtaining member approval, despite knowing the costs were substantially greater than what investors relied upon when electing to invest.

### (iii)     Commingling of Investor Funds

60.     Defendants also represented to investors that LV, URBIN, and each of their projects were separate and distinct entities, with their own members, budgets, and corresponding capital, and that investor funds would be used solely for their intended project or projects. Defendants, however, regularly commingled investor funds among the various Company Defendants and other entities, with more than $60 million of intercompany transfers during the Relevant Period.

61.     For instance, LV received approximately $14.7 million from the URBIN entities, and the URBIN entities received $25.2 million from the LV entities, including a $14 million

transfer from LV to URBIN that was recorded internally as an intercompany loan (the "Intercompany Loan") without notice to, or approval from, LV's members or board of directors.

62.     Also, it was not uncommon for Kapoor to use investor funds from one project to pay for the expenses of another. For example, on January 3, 2022, URBIN Grove received $4.2 million from Investor 14,[6] and on January 4, 2022, $1 million from Investor 49. The balance in URBIN Grove's bank account prior to receiving these funds was $68,000. Between January 4, 2022, and January 6, 2022, URBIN Grove transferred $1,847,000 to URBIN, of which URBIN transferred $1.69 million to URBIN Gables, which URBIN Gables used to purchase the "Minorca Parking Lots." URBIN Gables recorded the purchase of the parking lots as a land asset on its balance sheet.

63.     Defendants' complete disregard for corporate formalities included the use of approximately $4.5 million of customer sales deposits—deposits made by customers toward the purchase of condominium units—for purposes other than the construction and development of that condominium project.

64.     For instance, on October 31, 2022, URBIN Grove received approximately $1.2 million in customer sales deposits from its escrow company.[7] A few days later, URBIN Grove transferred $1 million to URBIN, which URBIN used to pay down the Intercompany Loan.

65.     Customer sales deposits in URBIN Grove and URBIN Miami Beach were systematically transferred away from the projects and used for any number of purposes, including, but not limited to:

---

[6] The names of investors have been replaced with numbers to protect their identities. A key associating the assigned numbers with investors names will be provided to the Court *in camera* upon request.

[7] The combined balance in URBIN Grove's bank accounts prior to receiving these funds was $452,347.

a.      $220,000 from URBIN Grove to Kapoor, personally, for purported "loan guarantor fees";

b.      $556,000 from URBIN Miami Beach to a title company for an investment called "Pipeline Montana";

c.      $300,000 from URBIN Miami Beach toward the "Minorca Parking Lots" purchase; and

d.      $1 million from URBIN Miami Beach to L. Capital, after which L. Capital made a series of disbursements that were unrelated to URBIN Miami Beach.

### (iv)      *Kapoor's Background and Experience*

66.      Kapoor also made material misrepresentations and omissions concerning his background and experience that made certain statements on LV's website and in offering materials either false or materially misleading.

67.      As of January 4, 2023,[8] LV's website included a biography page touting the experience and expertise of its officers, directors, and other key employees. Kapoor's biography stated, among other things, that "[t]o date, Rishi is responsible for leading the development of a $400M portfolio including high-end, custom single-family homes; rehabilitation of multi-family properties; development of boutique condominiums ...."

68.      The size of Kapoor's portfolio increased from $400 million to $1 billion according to a 2020 version of LV's sponsor resume, similar to a brochure, that LV, Kapoor, and others regularly provided to prospective investors and that included information about LV, its projects and investment opportunities, and its team of professionals.

---

[8] Date of website capture of LV's website https://location.ventures/.

69.     Kapoor's portfolio increased again in the 2022 version[9] of the sponsor resume—this time to $4 billion.

70.     Kapoor's representation that he was responsible for leading the development of a $4 billion portfolio was false. Indeed, that he was responsible for a $1 billion portfolio is, if not false, materially misleading.

71.     In addition to inflating his portfolio, Kapoor's biography highlighted his business degrees in finance, management, and marketing, and described his day-to-day role as centering "around identifying unique opportunities, capital formation and setting the product vision for our projects while working closely with the development team on proper execution." Kapoor failed to disclose, however, that his previous marketing business incurred federal tax liens for failing to remit federal payroll taxes—a practice that continued at LV, where he failed to remit approximately $1.375 million in federal payroll taxes despite deducting those amounts from employee compensation.

### C.     Defendants' Misappropriation of Investor Funds

72.     Kapoor added to LV and URBIN's financial woes by misappropriating at least $6 million from the Company Defendants, at least $4.3 million of which went to Kapoor alone.

73.     As previously alleged, Kapoor's approved annual salary was $350,000. Kapoor paid himself $629,600 in 2021 and $1,686,303 in 2022, which collectively represented approximately $1.6 million in excess compensation. The source of these funds was derived largely from the sale of the project 800 Dixie Partners, LLC ("800 Dixie"). LV was an investor in 800 Dixie and was entitled to a distribution of any profits.[10] Rather than paying the proceeds from the

---

[9] While dated for the year 2022, the Sponsor Resume was created in February 2023.

[10] All project level investors in 800 Dixie were paid upon the sale and received a return of capital and profit distribution.

sale to LV, on August 15, 2022, Kapoor took the entirety of the proceeds, along with additional funds belonging to LV, and paid himself $1,328,000.[11] LV recorded the payment to Kapoor in its books as compensation.

74.     Further, LV and URBIN were entitled to fees from the development of their respective projects. Rather than pay LV and URBIN, which would then determine whether distributions to their members were appropriate, in many instances Kapoor paid these fees directly to himself and others. Also, the amount of fees LV and URBIN charged the projects exceeded the amounts authorized in their respective operating agreements. In total, Kapoor paid himself and others close to $1 million in fees belonging to LV and URBIN.

75.     In addition to the above transactions, there were two significant transfers in 2021. L. Capital is a wholly owned subsidiary of LV that was used by Kapoor and others to raise capital. L. Capital's bank accounts were used to hold investor capital as well as in the operation of the business. On August 3, 2021, Kapoor transferred $1.5 million from L. Capital's bank account directly to his personal bank account for no apparent legitimate purpose. Also in 2021, Kapoor and his partner, through Patriots United, received a distribution in the amount of $1,247,931 in connection with the sale of the Leucadendra Drive project. Patriots United received this distribution despite never having made its initial $13 million cash capital contribution.

76.     During the same period as these transfers, Kapoor purchased a new 2023 68.7-foot Princess Y72 yacht for over $5 million, a dock at the Cocoplum Yacht Club for $695,000, leased a 2020 600LT Spider McLaren sportscar, and paid a private chef $10,000 per month.

---

[11] Kapoor represented to investors that the sale of 800 Dixie resulted in a profit. Based on accounting records, however, the sale of 800 Dixie resulted in a net loss to LV of approximately $411,087.

### D.   Defendants Buy Out Major Investor

77.    Sometime in 2022, a major investor in LV and three of its projects, referred to herein as "Investor 20," became concerned regarding the management of LV and its projects, including Kapoor's misappropriation and misuse of investor funds, and demanded Defendants buy out the entirety of its interest. In December 2022, Defendants paid Investor 20[12] $3 million to purchase its interest in the LV project Redlands Phase 1, LLC ("Redlands"). The source of these funds was a combination of Investor 30's capital contribution in LV and funds belonging to the URBIN Grove project and its members.

78.    Shortly after the Redlands buyout, Investor 20, LV, and Kapoor, along with certain other related parties, entered into a Global Interest Purchase Agreement (the "Buyout Agreement"), dated December 31, 2022. The Buyout Agreement required LV to purchase Investor 20's interest in LV and the two remaining projects for approximately $41 million, to be paid in installments over a five-month period. The first installment required a payment of $2 million and was due on January 13, 2023. To meet this installment payment, Defendants received $2.5 million from Investor 46 on January 13, 2023, and immediately transferred $2 million of those funds to Investor 20.

79.    Defendants made the following payments under the Buyout Agreement:

a.   January 13, 2023, payment of $2 million;

b.   January 31, 2023, payment of $2,378,630;

c.   February 15, 2023, payment of $2.5 million;

d.   February 28, 2023, payment of $2.5 million; and

---

[12] The payment was made to Investor 80, which is owned by or related to Investor 20.

e. March 13, 2023, payment of $5 million.

80.     In addition to the above-scheduled payments, Defendants paid Investor 20 a $500,000 extension fee, and a partial payment in the amount of $1.5 million under the Buyout Agreement for a total of $16,378,630. Together with Defendants' payment to Investor 20 related to the Redlands project, the total amount paid to Investor 20 and its related entities was $19,378,630.

81.     After making these payments to Investor 20 under the Buyout Agreement, LV's funds were exhausted.

82.     On or around July 14, 2023, the members of LV entered into a resolution by written consent that removed Kapoor as manager of LV. According to the resolution, the members determined that:

> Rishi Kapoor ("Rishi") has taken certain actions or omitted to take certain actions, including, without limitation, the following (a) Rishi has put his personal interests before the interests of the Members and the Company by taking millions of dollars from the Company and/or Company Affiliates in fees, compensation and/or other remuneration in violation of the Operating Agreement and not otherwise authorized in any Approved Budget and, in certain instances, he has admitted to taking some of these actions to some of the Members; (b) Rishi has misappropriated and misused assets of the Company and/or Company Affiliates; (c) Rishi has caused the Company and Company Affiliates to be under investigation by the United States Federal Bureau of Investigation and the United States Securities and Exchange Commission.

83.     In or around August 2023, Kapoor resigned as manager of URBIN.

84.     Without sufficient cash, LV's and URBIN's projects have stalled, been abandoned, or are the subject of litigation.

85.     On August 30, 2023, LV's members formally replaced Kapoor as manager of LV with a retired judge, with instructions to wind down and sell substantially all the assets of LV and its projects.

86.     LV's former chief development officer replaced Kapoor as the manager of URBIN. URBIN has not been included as part of LV's liquidation plan.

## V.    CLAIMS FOR RELIEF

### COUNT I

**Violations of Section 17(a)(1) of the Securities Act**
**(Against All Defendants)**

87.     The Commission repeats and realleges Paragraphs 1 through 86 of this Complaint.

88.     From approximately January 2018 until at least March 2023, Defendants, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, knowingly or recklessly employed devices, schemes or artifices to defraud.

89.     By reason of the foregoing, Defendants, directly or indirectly, have violated and unless enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

### COUNT II

**Violations of Section 17(a)(2) of the Securities Act**
**(Against Kapoor, LV, and URBIN)**

90.     The Commission repeats and realleges Paragraphs 1 through 86 of this Complaint.

91.     From approximately January 2018 until at least March 2023, Kapoor, LV, and URBIN, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts or omissions to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

23

92.     By reason of the foregoing, Kapoor, LV, and URBIN, directly and indirectly, have violated and unless enjoined, are reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## COUNT III

### Violations of Section 17(a)(3) of the Securities Act
### (Against All Defendants)

93.     The Commission repeats and realleges Paragraphs 1 through 86 of this Complaint.

94.     From approximately January 2018 until at least March 2023, the Defendants, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently engaged in transactions, practices and courses of business which have operated, are now operating or will operate as a fraud or deceit upon the purchasers.

95.     By reason of the foregoing, the Defendants, directly and indirectly, have violated and unless enjoined, are reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## COUNT IV

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a)
### (Against All Defendants)

96.     The Commission repeats and realleges Paragraphs 1 through 86 of this Complaint.

97.     From approximately January 2018 until at least March 2023, the Defendants, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, knowingly or recklessly employed devices, schemes or artifices to defraud in connection with the purchase or sale of securities.

98.     By reason of the foregoing, the Defendants, directly and indirectly, have violated and unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) [17 C.F.R. § 240.10b-5(a)] thereunder.

## COUNT V

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b)
### (Against Kapoor, LV, and URBIN)

99.     The Commission repeats and realleges Paragraphs 1 through 86 of this Complaint.

100.     From approximately January 2018 until at least March 2023, Kapoor, LV, and URBIN, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

101.     By reason of the foregoing, Kapoor, LV, and URBIN, directly and indirectly, violated and unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)] thereunder.

## COUNT VI

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5(c)
### (Against All Defendants)

102.     The Commission repeats and realleges Paragraphs 1 through 86 of this Complaint.

103.     From approximately January 2018 until at least March 2023, the Defendants, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly engaged in acts, practices and courses of business which have operated, are now operating, and will operate as a fraud upon the purchasers of such securities.

104.    By reason of the foregoing, the Defendants, directly and indirectly, violated and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(c) [17 C.F.R. § 240.10b-5(c)] thereunder.

## COUNT VII

### Violations of Section 20(a) of the Exchange Act—Control Person Liability
### (Against Kapoor)

105.    The Commission repeats and realleges Paragraphs 1 through 86 and Paragraphs 96 through 104 of this Complaint.

106.    From at least January 2016 through August 2023, Kapoor was, directly or indirectly, a control person of LV, URBIN, and/or each of the Company Defendants for purposes of Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

107.    From approximately January 2018 through March 2023, LV and URBIN violated Section 10(b) and Rule 10b-5 of the Exchange Act.

108.    As a control person of LV and URBIN, Kapoor is jointly and severally liable with and to the same extent as LV and URBIN for each of their respective violations of Section 10(b) and Rule 10b-5 of the Exchange Act.

109.    From approximately January 2018 through March 2023, the Company Defendants violated Section 10(b) and Rule 10b-5(a) and (c) of the Exchange Act.

110.    As a control person of each of the Company Defendants, Kapoor is jointly and severally liable with and to the same extent as the Company Defendants for each of their respective violations of Section 10(b) and Rule 10b-5(a) and (c) of the Exchange Act.

111.    By reason of the foregoing, Kapoor has violated and, unless enjoined, is reasonably likely to continue to violate Sections 10(b) and 20(a), and Rule 10b-5 of the Exchange Act [15 U.S.C. § 78j(b) and § 78t(a), and 17 C.F.R. § 240.10b-5].

## VI.   RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find the Defendants committed the violations alleged, and:

### A.   Permanent Injunction

Issue Permanent Injunctions enjoining LV, URBIN, and Kapoor, and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them and each of them, from violating Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)], and Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)]; and Kapoor and the Company Defendants, and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them and each of them, from violating Section 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1) and (3)], and Section 10(b) of the Exchange Act and Exchange Act Rules 10b-5(a) and (c) [17 C.F.R. § 240.10b-5(a) and (c)]; and further enjoining Kapoor from violating Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

### B.   Disgorgement and Prejudgment Interest

Issue an order directing Kapoor, LV, URBIN, Patriots United, L. Capital, L. Development, L. Properties, L. Ventures, 515 Valencia, LV Montana, Stewart Grove 1, Stewart Grove 2, Zamora Parent, URBIN Grove, URBIN Gables, URBIN Miami Beach, URBIN Miami Beach II, and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, to disgorge all ill-gotten gains received within the applicable statute of limitations, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

### C.  **Asset Freeze and Sworn Accountings**

Issue an order freezing the assets of the Defendants and requiring Defendants to file sworn accountings with the Court.

### D.  **Appointment of a Receiver**

Appoint a receiver over the Company Defendants.

### E.  **Records Preservation**

Issue an Order requiring all Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, to preserve any records related to the subject matter of this lawsuit that are in their possession, custody, or subject to their control.

### F.  **Civil Monetary Penalties**

Issue an Order directing Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

### G.  **Officer and Director Bar Against Kapoor**

Issue an Order pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], permanently prohibiting Kapoor from acting as an officer or director of any issuer whose securities are registered with the Commission pursuant to Section 12 of the Exchange Act or which is required to file reports with the Commission pursuant to Section 15(d) of the Exchange Act.

### H.  **Further Relief**

Grant such other and further relief as may be necessary and appropriate.

### I.   Retention of Jurisdiction

Further, the Commission respectfully requests the Court retain jurisdiction over this action and over Defendants in order to implement and carry out the terms of all orders that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

### VII.   DEMAND FOR JURY TRIAL

The Commission hereby demands a trial by jury on any and all issues in this action so triable.

Dated:  December 27, 2023          Respectfully submitted,

By: _____
    Russell R. O'Brien
    Trial Counsel
    Fla. Bar No.  084542
    Direct Dial: (305) 982-6341
    Email:  obrienru@sec.gov
    *Lead Attorney*
    *Attorney To Be Noticed*

    John T. Houchin, Esq.
    Senior Counsel
    Florida Bar No. 118966
    Direct Dial:  (305) 416-6292
    Email:  houchinj@sec.gov

    Jordan A. Cortez, Esq.
    Senior Counsel
    Special Bar No. A5502524
    Direct Dial:  (305) 982-6355
    Email: cortezjo@sec.gov

    **ATTORNEYS FOR PLAINTIFF**
    **SECURITIES AND EXCHANGE**
    **COMMISSION**
    801 Brickell Avenue, Suite 1950
    Miami, FL 33131

Telephone:  (305) 982-6300
Facsimile:  (305) 536-4154