TREZSUBP0001937

| | |
|---|---|
| **From:** | Rishi Kapoor [rkapoor@location.ventures] |
| **Sent:** | 2/4/2022 2:01:55 PM |
| **To:** | Ben Jacobson [bjacobson@trezcapital.com] |
| **CC:** | Daniel Motha [dmotha@location.ventures] |
| **Subject:** | Re: URBIN Grove - Rishi |
| **Attachments:** | Kapoor Certificate of Release of Federal Tax Lien.pdf; Rishi Payoff.pdf |

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

GM, Ben,

Attached are the proof of payoff for the lien releases.

Background:
I had started a marketing business out of law school in 2009. As we were growing the company, I had people accept low-paying jobs with me during the Great Recession who made a bet on me to perform -- young adults, fathers, mothers -- were all part of our team. We grew the business to a nice billings book, and then we signed a dream client who issued us a $1M fee contract -- our biggest at the time, and it quickly became the focus of nearly our entire company.

I became very close with this client, he was at my wedding, we were buddies. He made a few hundred thousand dollars worth of payments against the contract, and then started falling behind because of his "investor's funding" (an investor I happened to know). I extended him a few months of credit, and then I never heard from him again. We lost all of the past billings to cover the team, but then also the future billings. I had the company so focused on this client, I wasn't out developing other business. At this time, I wasn't speaking with my father because he wanted me to focus on real estate or law, and I made a choice to do what I had to do to get through that period so I didn't have to fire the employees that bet on me. So we withheld the payroll taxes to help float the team -- and we didn't lose a single employee. We then self reported, and paid back every cent we owed including interest and penalities. We grew the business to 30 people and millions of dollars of annual income. I got out of the business because my mom died and I decided to shift to "creating value" as I was unhappy as a service provider -- the family business of real estate was the natural fit, and also because of my background in doing so much sales and marketing for other developers. I gave all the business to other people I liked, and transitioned every employee that didn't come with me to the new real estate business 8 years ago.

I'm not proud of what I did, but it was an impossible situation. We were caught flat footed, which is a mistake I'll never make again (as you can see in my current business, we have a lot of sources of income). But there is no way I could possibly let go of those people that had bet on me on next to nothing salaries coming out of the recession. In the end, we made everyone whole, jobs were saved, and we rebounded nicely. I hope y'all can understand the stress of the situation, but hopefully you see the high moral character from it. And I would like to reiterate this had nothing to do with my real estate business.

Thank you



**Rishi Kapoor**
CEO, Location Ventures

m: 404-449-4931 | o: 786-701-6724
rkapoor@location.ventures | www.location.ventures
299 Alhambra Cir, Coral Gables, FL 33143

Confidential

**EXHIBIT**

_____ Z _____

TREZSUBP0001937

TREZSUBP0001937

On Thu, Feb 3, 2022 at 2:53 PM Ben Jacobson <bjacobson@trezcapital.com> wrote:
Thank you sir

Benjamin Jacobson
Trez Capital

W 561-588-0132 x 1055
M 561-635-1093
bjacobson@trezcapital.com

> On Feb 3, 2022, at 2:32 PM, Rishi Kapoor <rkapoor@location.ventures> wrote:

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

No problem. All of that stuff had an unrelated story with someone that fucked me in my unrelated marketing business, Ill explain, and we paid every cent owed.

On Thu, Feb 3, 2022 at 1:00 PM Ben Jacobson <bjacobson@trezcapital.com> wrote:

Hi Rishi;

Can you please assist with the below?

Tax Returns:

Proof of tax payments required:

- Rishi reports tax payment due of $113,510 and $445,273 in 2019 and 2020, respectively, Please provide the proof of the tax payment

Background Searches:

The background searches came back with the following federal tax liens on personal guarantors.

Please provide a brief description of how the liens came about and provide the proof of settlement.

Confidential

TREZSUBP0001938

TREZSUBP0001937

- Rishi: Federal tax liens filed in the amount of $59,578, $46,262 and $73,443 related to his tax returns from 2014 to 2016.

Best,

Ben

**Benjamin Jacobson**

 **TREZ** CAPITAL

| | Managing Director |
| --- | --- |
| | 1501 Corporate Drive, Suite 240 |
| | Boynton Beach, FL 33426 |
| | Direct: 561 588 0132 x 1055 |
| | Cell: 561 635.1093 |
| | Email: bjacobson@trezcapital.com |
| | Visit us online: www.trezcapital.com | LinkedIn |

**\*\*\* We are pleased to announce that Trez Forman Capital has officially re-branded to Trez Capital. Please update your records accordingly. \*\*\***

This e-mail may contain privileged and confidential material and its transmission is not a waiver of that privilege. It is intended for the sole use of the person to whom it is addressed. Any copying, disclosure, distribution or reliance on this material by anyone other than the intended recipient is strictly prohibited. We assume no responsibility to persons other than the intended recipient. If you have received this transmission in error, please notify Trez Capital at (604) 689-0821 immediately and destroy any hard copies you may have printed and remove all copies of the e-mail from your mailbox and hard drives.

--
Rishi Kapoor, J.D.
CEO
Location Ventures

e: rkapoor@location.ventures
c: 404.449.4931
w: www.location.ventures

299 Alhambra Cir
Coral Gables, FL 33143

Sent from my mobile

SEC-HMY-E-0000003



## HMY
### Y A C H T S

## BUYER'S CLOSING STATEMENT

**Date:** 3/13/2023

**Vessel Description:** PRINCESS Y72-041
HIN: VSC72041B323

**Buyer:** RISHI KUMAR KAPOOR & JENNIE ELIZABETH FRANK  KAPOOR
1233 LOS PINOS BLVD.
CORAL GABLES FL 33143

**Seller:** HMY YACHT SALES, INC.
817 NE 3RD STREET
DANIA FL 33004

| | |
|---|---|
| Purchase Price: | $5,352,794.00 |
| Addition to Order 1 - Wolf Cooktop | $1,840.00 |
| Addition to Order 2 - 6 Step Quick Step | $10,508.00 |
| TOTAL | $5,365,142.00 |
| Florida Sales Tax | $18,000.00 |
| TOTAL | $5,383,142.00 |
| Escrow Deposit: | ($1,070,559.00) |
| Financing | ($4,282,235.00) |
| Balance Due at Closing: | $30,348.00 |

Reviewed & Accepted       Date
Buyer: Rishi Kumar Kapoor

Reviewed & Accepted       Date
Buyer: Jennie E Kapoor

Reviewed & Accepted       Date    3/13/2023
HMY Yacht Sales, Inc. - Broker

---

## EXHIBIT

### AA

SEC-HMY-E-0000003

SEC-HMY-E-0000003

| | |
|---|---|
| Viking Sport Cruisers, Inc- Florida<br>1 N Clematis St. #102<br>West Palm Beach, FL 33401 | **Hull Number**    Y72041<br><br>**ORDER DATE**    3/24/2022 |
| **DEALER/ADDRESS**<br>HMY Yacht Sales<br>817 NE 3rd Street, suite 1<br>Dania Beach, FL 33004 | **ESTIMATED FACTORY COMPLETION**    January-23<br><br>**EX WORKS**    Palm Beach |

## ADDITION TO ORDER-1                    Issue Date:03/01/23

| | | |
|---|---|---|
| Wolf Cooktop | NET | $1,840 |
| | **Total** | **$1,840** |

Page 1 of 1

SEC-HMY-E-0000004

SEC-HMY-E-0000003

Viking Sport Cruisers, Inc- Florida
1 N Clematis St. #120
West Palm Beach, FL 33401

**DEALER/ADDRESS**
HMY Yacht Sales
817 NE 3rd Street, suite 1
Dania Beach, FL 33004

| Hull Number | Y72041 |
|---|---|
| ORDER DATE | 3/24/2022 |
| ESTIMATED DELIVERY | Mar-23 |
| EX WORKS | Palm Beach |

| ADDITION TO ORDER-2 | | Issue Date:03/10/23 | |
|---|---|---|---|
| 6 Step Quick Step | | NET | $10,508 |
| | | **Total** | **$10,508** |

Page 1 of 1

SEC-HMY-E-0000005

SEC-HMY-E-0000003

| DEPARTMENT OF HOMELAND SECURITY U.S. Coast Guard **BILL OF SALE** | OMB No: 1625-0027 Expires: 04/30/2023 |
|---|---|

**1. VESSEL NAME**
## 2023 PRINCESS

**2. OFFICIAL NUMBER OR HULL ID NUMBER** VSC72041B323

**3. NAME(S) AND ADDRESS(ES) OF SELLERS**
HMY YACHT SALES INC.

817 NE 3RD ST.
DANIA BEACH FL 33004

**3A. TOTAL INTEREST OWNED** *(IF LESS THAN 100%)*: ___100___ %

**4. NAME(S) AND ADDRESS(ES) OF BUYER(S) AND INTEREST TRANSFERRED TO EACH**
RISHI KUMAR KAPOOR AND JENNIE ELIZABETH FRANK KAPOOR

7233 LOS PINOS BLVD.
CORAL GABLES FL 33143

**4A. TOTAL INTEREST TRANSFERRED (100% UNLESS OTHERWISE SPECIFIED):** ___100___ %

**4B. MANNER OF OWNERSHIP. UNLESS OTHERWISE STATED HEREIN, THIS BILL OF SALE CREATES A TENANCY IN COMMON, WITH EACH TENANT OWNING AN EQUAL UNDIVIDED INTEREST. CHECK ONLY ONE OF THE FOLLOWING BLOCKS TO SHOW ANOTHER FORM OF OWNERSHIP.**

[ ] JOINT TENANCY WITH RIGHT OF SURVIVORSHIP    [ ] TENANCY BY THE ENTIRETIES    [ ] COMMUNITY PROPERTY

[ ] OTHER *(DESCRIBE)*

**5. CONSIDERATION RECEIVED** *(ONE DOLLAR AND OTHER VALUABLE CONSIDERATION UNLESS OTHERWISE STATED)*

**6. I (WE) DO HEREBY SELL TO THE BUYER(S) NAMED ABOVE, THE RIGHT, TITLE AND INTEREST IDENTIFIED IN BLOCK 4 OF THIS BILL OF SALE, IN THE PROPORTION SPECIFIED HEREIN.**

VESSEL IS SOLD FREE AND CLEAR OF ALL LIENS, MORTGAGES, AND OTHER ENCUMBRANCES OF ANY KIND AND NATURE, EXCEPT AS STATED ON THE REVERSE HEREOF. VESSEL IS SOLD TOGETHER WITH AN EQUAL INTEREST IN THE MASTS, BOWSPRIT, SAILS, BOATS, ANCHORS, CABLES, TACKLE, FURNITURE, AND ALL OTHER NECESSARIES THERETO APPERTAINING AND BELONGING, EXCEPT AS STATED ON THE REVERSE HEREOF.

**7. SIGNATURES OF SELLER(S) OR PERSON(S) SIGNING ON BEHALF OF SELLER(S).**

*[signature]*

**8. DATE SIGNED**
3/14/2023

**9. NAME(S) OF PERSON(S) SIGNING ABOVE, AND LEGAL CAPACITY IN WHICH SIGNED** *(E.G., OWNER, AGENT, TRUSTEE, EXECUTOR)*
LAWRENCE J. THOMAS, VP

**10. ACKNOWLEDGMENT (TO BE COMPLETED BY NOTARY PUBLIC OR OTHER OFFICIAL AUTHORIZED BY A LAW OF A STATE OR THE UNITED STATES TO TAKE OATH.)**

ON ___3/14/2123___ THE PERSON(S) NAMED IN SECTION 9    STATE: Florida
*(DATE)*
ABOVE ACKNOWLEDGED EXECUTION OF THE FOREGOING INSTRUMENT    COUNTY: Palm Beach
IN THEIR STATED CAPACITY(IES) FOR THE PURPOSE THEREIN CONTAINED.

KRISTI EKASALA
MY COMMISSION # GG 908024
EXPIRES: September 7, 2023
Bonded Thru Notary Public Underwriters

NOTARY PUBLIC: Kristi Ekasala

MY COMMISSION EXPIRES: September 7, 2023
*(DATE)*

CG-1340 (05/20)    Previous Edition Obsolete    [Reset]

SEC-HMY-E-0000006

SEC-HMY-E-0000003

DR-41C r.3/84

**Florida Department of Revenue**
**DEALER'S SALES TAX STATEMENT**

Date: March 13, 2023

I certify that the sales tax under Chapter 212, Florida Statutes, has been paid by the purchaser on the boat described herein:

| | |
|---|---|
| Purchaser's Name: | Rishi Kumar Kapoor & Jennie Elizabeth Frank Kapoor |
| Address: | 1233 Los Pinos Blvd. |
| City, State Zip | Coral Gables, FL 33143 |

| | |
|---|---|
| Previous Owner's Name: | HMY Yacht Sales, Inc. |
| Address: | 817 NE 3rd Street |
| City, State Zip | Dania Beach, FL 33004 |

**VESSEL DESCRIPTION:**

Make: Princess          Model:          Y72          Year: 2023

Hull ID Number:          VSC72041B323          Vessel Name:

State Registration or Documentation No: New

Length: 68'7"  Beam: 18'2"

Type: ☒ Inboard     ☐ Outboard     ☐ Other

Date of Purchase: March 13, 2023

Purchase Price: $5,365,142    Trade Allowance:          Tax Collected: $18,000*

*Includes 1% Palm Beach County Surtax

| | |
|---|---|
| Dealer's Name: | HMY Yacht Sales, Inc. |
| Address: | 817 NE 3rd Street |
| City, State Zip | Dania Beach, FL 33004 |
| Sales Tax No: | 16-8012028015-4 |

BY:          _Laura Hogle_
Authorized Representative

**This form is not valid unless completed in its entirety signed by selling dealer, and the dealer's sales tax registration number is shown.**

SEC-HMY-E-0000007

SEC-HMY-E-0000003

## MANUFACTURER'S
## STATEMENT OF ORIGIN
## TO A BOAT OR MOTOR

The undersigned CORPORATION hereby certifies that the new boat or motor described below, the property of said CORPORATION, has been transferred this _10th_ day of _March_ 20 _23_ on Invoice No. _CI42606_

to _Viking Sport Cruisers-Florida, Inc._
(Distributor, Dealer, Etc.)
whose address is _1 N. Clematis Street, Suite 120_
(Street, City and State)
_West Palm Beach, FL 33401_

| | | |
|---|---|---|
| **YEAR** 2023 | **MODEL** 72 Motor Yacht | 68'7" **LENGTH** |
| **BOAT** Princess | **Mfr's Serial No.** VSC720418323 | |
| **MOTOR** MAN V12 | **MOTOR No.** Port: 710 6396 809 6388 Stbd: 710 6396 811 6388 | **H.P.** 1650HP 1650HP |

The CORPORATION further certifies that this was the first transfer of such new boat or motor in ordinary trade and commerce

Princess Yachts Limited
(Corporation)

By: _[signature]_ , _Executive Director_
Title or Position

Newport Street
Plymouth, Devon PL13QG England
Office Address of Signatory (City and State)

Approved by Div. of Watercraft

SEC-HMY-E-0000008

SEC-HMY-E-0000003

## FIRST ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby transfers this Statement of Origin and the boat or motor described therein to _HMY Yacht Sales, Inc._

Address _817 NE 3rd Street   Dania Beach, FL 33___
and certifies that the boat or motor is new and has not been registered in this or any other state; he also warrants the title of said boat or motor at time of delivery, subject to the liens and encumbrances, if any, as set out below:

| Amt. of Lien | Date | To Whom Due | Address |
|---|---|---|---|
| | | | |

Dated _March 14_ 20_23_ at _Nags Head, N___

_Viking Sport Cruises_ Florida. By: _Ryan Eckroth_   _Brian V. [President]_

(Transferor Firm Name)   Sign Here   Position

Dealer License (Permit) No. _____

Before me personally appeared _Ryan Eckroth_ who by me being duly sworn upon oath says that the statements set forth above are true and correct.
Subscribed and sworn to before me this _14_ day of _March_ 20_

Notary Public for _Burlington_ County, State of _____

COMM. EXPIRES   Notary Seal

## SECOND ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby transfers this Statement of Origin and the boat or motor described therein to _____

Address _____
and certifies that the boat or motor is new and has not been registered in this or any other state; he also warrants the title of said boat or motor at time of delivery, subject to the liens and encumbrances, if any, as set out below:

| Amt. of Lien | Date | To Whom Due | Address |
|---|---|---|---|
| | | | |
| | | | |

Dated _____ 20_____ at_____

_____ By: _____
(Transferor Firm Name)   Sign Here   Position

Dealer License (Permit) No. _____

Before me personally appeared _____ who by me being duly sworn upon oath says that the statements set forth above are true and correct.
Subscribed and sworn to before me this _____ day of_____ 20_____

Notary Public for_____ County, State of _____

Notary Seal

## THIRD ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby transfers this Statement of Origin and the boat or motor described therein to _____

Address_____
and certifies that the boat or motor is new and has not been registered in this or any other state; he also warrants the title of said boat or motor at time of delivery, subject to the liens and encumbrances, if any, as set out below:

| Amt. of Lien | Date | To Whom Due | Address |
|---|---|---|---|
| | | | |
| | | | |

Dated_____ 20_____ at_____

_____ By: _____
(Transferor Firm Name)   Sign Here   Position

Dealer License (Permit) No. _____

Before me personally appeared _____ who by me being duly sworn upon oath says that the statements set forth above are true and correct.
Subscribed and sworn to before me this _____ day of_____ 20_____

Notary Public for_____ County, State of _____

Notary Seal

SEC-HMY-E-0000009

**DEPARTMENT OF HOMELAND SECURITY**
**U.S. Coast Guard**
**BUILDER'S CERTIFICATION AND FIRST TRANSFER OF TITLE**

OMB No: 1625-0027
Expires: 04/30/2023

## I. PHASE OF CONSTRUCTION COVERED BY THIS CERTIFICATE

| | |
|---|---|
| ☑ ENTIRE CONSTRUCTION | YEAR PHASE OF CONSTRUCTION |
| ☐ HULL ONLY | |
| ☐ COMPLETION ONLY *(HULL BUILT BY ANOTHER)* | YEAR COMPLETED 2023 |

## II. VESSEL DATA

A. HULL IDENTIFICATION NUMBER OR HULL NUMBER
VSC72041B323

B. VESSEL NAME *(IF KNOWN)*

C. EQUIPPED WITH ENGINE
☑ YES   ☐ NO       OUTBOARD: ☐ YES   ☑ NO

D. PLACE OF BUILD *(CITY, STATE, COUNTRY)*
Plymouth, UK

E. HULL MATERIAL
☐ WOOD   ☐ STEEL   ☐ ALUMINUM   ☑ FIBROUS REINFORCED PLASTIC   ☐ CONCRETE   ☐ OTHER

## III. DIMENSIONS
*(COMPLETE APPROPRIATE DIAGRAM(S) - DIMENSIONS IN FEET AND TENTHS/INCHES)*

MONOHULL SHIP-SHAPE

L = 68'7"     B = 18'2"     D = 9'11"

MONOHULL SAILBOAT-SHAPE
☐ DISTINCT KEEL     ☐ FAIRED KEEL

L =_____     B =_____     D =_____

CATAMARAN-SHAPE
☐ SHIP   ☐ BARGE   ☐ SAIL DISTINCT KEEL   ☐ SAIL FAIRED KEEL

L =_____   B =_____   B₁ =_____   D =_____

TRIMARAN-SHAPE
☐ SHIP   ☐ BARGE   ☐ SAIL DISTINCT KEEL   ☐ SAIL FAIRED KEEL

L₁ =_____   L₂ =_____   B =_____
B₁ =_____   B₂ =_____   D =_____   D₁ =_____

MONOHULL BARGE-SHAPE

L =_____     B =_____     D =_____

DECKHOUSE FOR HOUSEBOAT OR SIMILAR

*(Complete in addition to hull diagram only if the volume of the principal structure above the main deck exceeds the hull volume)*

L₆ =_____     B₆ =_____     D₆ =_____

## IV. UNITED STATES BUILD STATEMENT

☐ ALL MAJOR COMPONENTS USED IN THE PHASE OF CONSTRUCTION COVERED BY THIS CERTIFICATE WERE FABRICATED IN THE UNITED STATES.

☐ ALL CONSTRUCTION AND ALL ASSEMBLY FOR THIS PHASE OF CONSTRUCTION WERE DONE IN THE UNITED STATES.

CG-1261 (05/20)          PREVIOUS EDITION OBSOLETE          Page 1 of 2

## V. NAME(S) AND ADDRESS(ES) OF PARTY(IES) FOR WHOM BUILT

Viking Sport Cruisers-Florida,Inc.
1 N. Clematis Street, Suite 120
West Palm Beach, FL 33401

IF BUILT FOR MORE THAN ONE PERSON, THE PERSONS NAMED ABOVE ARE TENANTS IN COMMON, EACH OWNING AN EQUAL UNDIVIDED INTEREST, UNLESS OTHERWISE INDICATED HEREIN: CHECK ONLY ONE OF THE FOLLOWING BLOCKS TO SHOW ANOTHER FORM OF OWNERSHIP

☐ JOINT TENANCY WITH RIGHT OF SURVIVORSHIP   ☐ COMMUNITY PROPERTY

☐ TENANCY BY THE ENTIRETIES   ☐ OTHER *(Describe)*   -->

## VI. CERTIFICATION

I, _WILL GREEN_ DO HEREBY CERTIFY THAT THE FACTS RECITED HEREIN ARE TRUE AND THAT I HAVE PERSONAL KNOWLEDGE OF THESE FACTS BECAUSE I:

☐ PERSONALLY PERFORMED THE CONSTRUCTION  OR

☐ SUPERVISED THE CONSTRUCTION AT AND ON BEHALF OF:_____  OR
*(NAME OF COMPANY)*

☑ AM AN EMPLOYEE OF THE COMPANY WHO BUILT VESSEL AND HAVE EXAMINED THE RECORDS OF THE COMPANY CONCERNING THE FACTS OF BUILD OF THE VESSEL IN MY CAPACITY AS

_Executive Director_ OF Princess Yachts Limited
*(TITLE)*                        *(NAME OF COMPANY)*

NOTE: THIS CERTIFICATE MUST NOT BE COMPLETED BY AN IMPORTER OR AN IMPORTER'S AGENT

_(SIGNATURE)_                 _10-Mar-23_
*(SIGNATURE)*                 *(DATE)*

## VII. FIRST SALE OR TRANSFER OF VESSEL

100% OF THE VESSEL IDENTIFIED HEREIN IS SOLD (TRANSFERRED) BY THE PARTY(IES) NAMED IN SECTION V TO THE FOLLOWING PERSON(S) *(NAMES AND ADDRESSES)*
HMY Yacht Sales, Inc
817 NE 3rd Street
Dania Beach, FL 33004

IF SOLD (TRANSFERRED) TO MORE THAN ONE PERSON, THE PURCHASER(S) (TRANSFEREE(S)) ARE TENANTS IN COMMON, EACH OWNING AN EQUAL UNDIVIDED INTEREST, UNLESS OTHERWISE INDICATED HEREIN: CHECK ONLY ONE OF THE FOLLOWING BLOCKS TO SHOW ANOTHER FORM OF OWNERSHIP.

☐ JOINT TENANCY WITH RIGHT OF SURVIVORSHIP   ☐ COMMUNITY PROPERTY

☐ TENANCY BY THE ENTIRETIES   ☐ OTHER *(Describe)*   -->

### VIII. SIGNATURES OF SELLER(S) (TRANSFEROR(S)) OR PERSONS SIGNING ON BEHALF OF SELLER(S) (TRANSFEROR(S))

_Ryan Fitchett_   DATE SIGNED: 3/14/2023

IX. NAME(S) OR PERSON(S) SIGNING ABOVE, AND LEGAL CAPACITY IN WHICH SIGNED (E.G. OWNER, AGENT, TRUSTEE, EXECUTOR)

_Ryan Fitchett   Vice President_

X. ACKNOWLEDGMENT  *(TO BE COMPLETED BY NOTARY PUBLIC OR OTHER OFFICIAL AUTHORIZED BY A LAW OF A STATE OR THE UNITED STATES TO TAKE OATHS.)*

ON _3/14/23_ THE PERSON(S)   STATE: _New Jersey_
*(DATE)*

NAMED IN SECTION IX SIGNED AND ACKNOWLEDGED EXECUTION OF THE FOREGOING INSTRUMENT IN THEIR STATED CAPACITY(IES) FOR THE PURPOSES THEREIN CONTAINED.

COUNTY: _Burlington_

NOTARY PUBLIC:

MY COMMISSION EXPIRES:

MICHELLE BABEK
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES 2/26/2026

## PRIVACY ACT STATEMENT

1. **AUTHORITY**: 46 U.S.C. CHAPTER 121, DOCUMENTATION OF VESSELS AND 46 CFR PART 67, DOCUMENTATION OF VESSELS.

2. **PURPOSE**: TO PROVIDE BUILD INFORMATION, DIMENSIONS AND PARTY FOR WHOM BUILT.

3. **ROUTINE USES**: AUTHORIZED USCG PERSONNEL WILL USE THIS INFORMATION TO VALIDATE U.S. BUILD AND DETERMINE VESSEL MEETS THE FIVE NET TON REQUIREMENT FOR DOCUMENTATION.  ANY DISCLOSURES OF DATA WITHIN THIS RECORD WILL BE MADE IN ACCORDANCE WITH DHS/USCG-013, MARINE INFORMATION FOR SAFETY AND LAW ENFORCEMENT (MISLE), 74 FEDERAL REGISTER (FR) 30305, JUNE 25, 2009.

4. **CONSEQUENCES OF FAILURE TO PROVIDE INFORMATION**: VOLUNTARY  HOWEVER, FAILURE TO PROVIDE THE REQUESTED INFORMATION WILL RESULT IN DENIAL OF APPLICATION, WHICH MAY PREVENT THE OWNER FROM OPERATING THE VESSEL IN A SPECIFIC TRADE.

AN AGENCY MAY NOT CONDUCT OR SPONSOR, AND A PERSON IS NOT REQUIRED TO RESPOND TO A COLLECTION OF INFORMATION UNLESS IT DISPLAYS A VALID OMB CONTROL NUMBER

THE COAST GUARD ESTIMATES THAT THE AVERAGE BURDEN FOR THIS FORM IS 30 MINUTES.  YOU MAY SUBMIT ANY COMMENTS CONCERNING THE ACCURACY OF THIS BURDEN ESTIMATE OR ANY SUGGESTIONS FOR REDUCING THE BURDEN TO: U.S COAST GUARD, NATIONAL VESSEL DOCUMENTATION CENTER, 792 T.J JACKSON DRIVE, FALLING WATERS, WEST VIRGINIA 25419, OR OFFICE OF MANAGEMENT AND BUDGET, OFFICE OF MANAGEMENT AND BUDGET, PAPERWORK REDUCTION PROJECT (1625-0027), WASHINGTON, DC 20503

CG-1261 (05/20)                                                                 Page 2 of 2

SEC-HMY-E-0000003

## IRREVOCABLE SPECIAL POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS: THAT KNOW I/WE,

**HMY YACHT SALES INC.**

the undersigned (hereinafter referred to as "Principal") do hereby appoint Debra Rich or Barbara Velazquez as my/our attorney-in-fact to prepare, execute, and deliver a Bill of Sale in connection with the sale of the vessel identified as 2023 PRINCESS   Hull ID#: V5C72041B323, and any and all other paperwork necessary to complete the sale of said vessel.

Principal hereby grants to said attorney-in-fact full power and authority to do and perform each and every act and thing which may be necessary, or convenient, in connection with any of the foregoing, as fully, to all intents and purposes, as Principal might or could do if personally present, hereby ratifying and confirming all that our said attorney-in-fact shall lawfully do or cause to be done by authority hereof.

Wherever the context so requires, the singular number includes the plural.

Lawrence J. Thomas, Vice President
HMY Yacht Sales, Inc.

STATE OF          Florida
COUNTY OF        Palm Beach

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

On _____ before me, ____Kristi Ekasala_____ Notary Public, personally appeared _____Lawrence J Thomas_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the aforementioned state that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

> KRISTI EKASALA
> MY COMMISSION # GG 966024
> EXPIRES: September 7, 2023
> Bonded Thru Notary Public Underwriters

SEC-HMY-E-0000012

SEC-HMY-E-0000003



## **ACCEPTANCE OF VESSEL**

We, Rishi Kumar Kapoor and Jennie Elizabeth Frank Kapoor, Buyers of the Y72-041 Princess, Hull ID# VSC72041B323, do hereby accept said vessel under the terms set forth in the Yacht Purchase Order dated August 9, 2022.

I hereby acknowledge that all conditions entered into on said Yacht Purchase Order, have either been performed or are hereby waived; and I agree to accept delivery of said vessel and pay the balance due thereon and close this transaction in accordance with the terms therein.

I have received a copy of this form and copies of all paperwork requested. I understand that no verbal agreement will be honored by this dealership and that anything due to me must be listed below (except when covered by the manufacturer's warranty).

I have received the Manufacturer's Warranty and Owner's Manuals and a full warranty procedure explanation.

WITNESS

WITNESS

BUYER – Rishi Kumar Kapoor

BUYER – Jennie Elizabeth Frank Kapoor

Dated this _____ day of May, 2023.

SEC-HMY-E-0000013

SEC-HMY-E-0000003

# YACHT PURCHASE ORDER



**H M Y**
Y A C H T S

| Today's Date | Tuesday, August 9, 2022 | | | |
| --- | --- | --- | --- | --- |
| Purchaser: | Rishi Kapoor or Assigns | | | |
| Address: | 7233 Los Pinos Blvd | | | |
| City, State, Zip Code | Coral Gables FL 33143 | | | |
| Best Email Address: | rkapoor@location.ventures | Purchaser Phone: | 404-449-4931 | |
| Broker | Alexie Creary | Broker Phone: | 305-393-6333 | |

I HEREBY AGREE TO PURCHASE THE FOLLOWING VESSEL:   NEW [x]   DEMO [ ]

| YEAR: | 2023 | MFR: | Princess | MODEL: | Y72 | POWER: | MAN V12-1650 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | HULL ID | Y72-041 | | | HP: | 1650 |

| TRADE: | MANUFACTURER: | | MODEL: | | POWER: | |
| --- | --- | --- | --- | --- | --- | --- |
| YEAR: | | HULL ID | | HOURS: | LOCATED: | |

| | | | |
| --- | --- | --- | --- |
| 1 | Addendum A - Price per Proposal / Listing Sheet | $ | 6,834,743 |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 6 | Subtotal | $ | 6,834,743 |
| 7 | Discount | $ | (1,366,949) |
| 8 | Palm Beach Boat show incentive | $ | (115,000) |
| 9 | Subtotal | $ | 5,352,794 |
| 10 | Florida Sales or Use Tax if applicable | $ | 18,000 |
| 11 | Total Due | $ | 5,370,794 |
| 12 | Initial Deposit-Due August 16, 2022 | $ | (1,070,559) |
| 13 | Second Deposit Due: | | |
| 14 | Third Deposit Due: | | |
| 15 | Fourth Deposit Due: | | |
| 16 | Balance Due prior to delivery | $ | 4,300,235 |

**DELIVERY FOB:** ⟨ Palm Beach, FL ⟩

Note: Purchaser agrees that the vessel shall be made available for Princess Yachts to display at the 2023 Palm Beach International Boat Show.

_____
Broker Initials

_____
Purchaser Initials

1

SEC-HMY-E-0000014

SEC-HMY-E-0000003

# YACHT PURCHASE ORDER



**THIS SALE IS CONTINGENT UPON THE FOLLOWING TERMS AND CONDITIONS:**

1  Approximate Delivery Date: **April, 2023**          This Yacht Purchase Order is made subject to war, rebellion, strikes, accidents, force majeure, or other causes beyond the control of the dealer. The buyer recognizing the uncertainty of absolute deliveries, hereby acknowledges that no claim for damages accruing through failure to deliver the vessel on the approximate delivery date shall be made, when such failure is due to reasons beyond the control of the dealer. Unless otherwise provided, delivery shall be made at dealer's place of business or as stated on Page One of this Yacht Purchase Order.

2  Buyer may with written approval of Seller, which may be withheld in Seller's discretion unless the assignee is an entity controlled by Buyer, unilaterally assign this Yacht Purchase Order to any individual or entity; however such assignment shall not relieve Buyer of its obligations and liabilities hereunder. Seller shall have the right and the power to delegate any of its duties under this Yacht Purchase Order. Unless otherwise specifically agreed to in writing, no such delegation of duties by Seller shall ever relieve Seller of its obligations and liabilities hereunder.

3  Changes or modifications to this Yacht Purchase Order must be presented to the dealer in writing, and will be accepted only conditional to manufacturer's ability to incorporate said changes into production.

4  This Yacht Purchase Order is subject to cancellation only by the written consent of the dealer.

5  Advertised Speeds and performance are estimated, and not guaranteed.

6  Any accessories, equipment, or services ordered by the buyer after execution of this Yacht Purchase Order will be covered by additional invoices as required, and are payable upon delivery.

7  The Purchase Price includes the Specifications and any required substitutions of materials or components during construction of the Vessel. Substitutions of materials and/or components shall only occur if such materials or components are no longer available during construction; further, Dealer will use their best efforts to inform Buyer of such substitutions. The Buyer shall not be entitled to reject the goods and/or services on the grounds of departure from Specifications.

8  If the Yacht Purchase Order contains a trade in vessel, the dealer acceptance of the trade in vessel will be subject to inspection, sea trial, and survey at dealer's expense. Owner to provide access to the vessel along with captain's services while vessel is under his ownership. All major mechanical, electrical, and structural components will be in good working condition at the sole discretion of the dealer. **Trade FOB will be HMY docks at Dania Beach, or North Palm Beach, FL**

9  This Yacht Purchase Order is binding on all heirs, executors, and successors.

**Broker Initials**                                                                          **Purchaser Initials**

2

SEC-HMY-E-0000015

SEC-HMY-E-0000003

## YACHT PURCHASE ORDER

### HMY
### Y A C H T S

10      Purchaser agrees that the following people will have the authority to make changes and or additions to the
        vessel during the build process at the factory, or rigging facility.

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |

11      **Warranty:**
        In the case of a new yacht, it is understood and agreed by the buyer that the new yacht is covered by the
        builder and /or the manufacture of parts and equipment supplied to the yacht builder by others in accor-
        dance with published warranties on file with the dealer.
        Such warranties are the sole warranties, expressed or implied, pertaining to this Yacht Purchase Order. It is
        understood and agreed that no warranties, express or implied are made by the dealer, including implied warranties
        of MERCHANTABILITY and FITNESS FOR USE.
        **Dealer does not assume, nor does it authorize anyone else to assume on its' behalf, any other obligation, or
        liability, in connection with the sale or use of this yacht.**
        It is understood and agreed that the model and sample shown by the dealer were been used for demonstration
        purposes only; there is no warranty that the goods delivered shall conform to such model and sample, and
        such conformity is no part of the basis of the bargain between dealer and buyer.

12      In the event of any disputes between Buyer and HMY Yacht Sales, Inc, that are not resolved amicably
        arising out of the sale of this Yacht Purchase Order, or between Buyer and HMY Yacht Sales Inc, all
        unresolved disputes shall be determined exclusively in the state courts of Broward County, Florida.

**The Agreed Purchase Price is:**

Five Million Three Hundred Fifty Two Thousand Seven Hundred Ninety Four Dollars
($5,352,794)

**PURCHASER SIGNATURE:**   X _(signature)_

**Date**   08.15.22

**\*Receipt of Deposit
in the Amount of:**

One Million Seventy Thousand Five Hundred Fifty Nine Dollars ($1,070,559)

**Date**   BY HMY  X

**THIS YACHT PURCHASE ORDER IS NOT EFFECTIVE UNTIL ACCEPTED BY AN OFFICER OF HMY YACHT
SALES, INC.**

**ACCEPTANCE BY HMY YACHT SALES, INC.**

X- _(signature)_ VP

3

SEC-HMY-E-0000016

SEC-HMY-E-0000003

## 2023 Princess Y72 Motor Yacht #Y72041



**Estimated Factory Completion: January 2023**
**\*\*This boat is scheduled for the 2023 Palm Beach Boat Show\*\***

| | |
|---|---|
| Princess Y72 with twin MAN V12-1650 (2 x 1650mhp) engines<br>\*\*Pricing subject to change after August 31, 2022 | $5,795,000 |

**ENGINES & DRIVE:**

| | |
|---|---|
| Oil Changer for engines, transmissions, and generator | $4,840 |
| Third station controls in cockpit (engine controls, thruster controls,<br>and engine emergency stops) | $17,080 |
| Additional long-range fuel tank (211 US gals) | $26,050 |

**HYDRAULICS**

| | |
|---|---|
| Hydraulic system consisting of separate engine driven hydraulic pumps<br>allowing any system to be supplied with hydraulic power from either<br>engine. Including hydraulic anchor winch and 320 kgF hydraulic bow<br>thruster (in place of standard) 240kgF stern thruster and hold fuction<br>docking system. All with dual station controls | $85,510 |

**HULL COLOR**

Engine air vent cover and deck house buttresses are painted in Onyx
Black Metallic. Transom face, canopy styling line, leading edge or
arch and cockpit headlining painted in Graphite Grey Metallic.
Radar arch legs and exterior furniture where specified, are painted
in Oyster Grey Metallic

| | |
|---|---|
| White Hull (with dark grey waterline & black antifouling, hull & bathing<br>platform fendering is white with stainless steel insert) | NEC |

**INTERIOR FURNITURE:**

| | |
|---|---|
| Walnut interior wood satin finish<br>(galley, dinette and helm floors are V groove planked walnut as standard) | $25,790 |

**LAYOUT:**

| | |
|---|---|
| Crew cabin with air conditioning | STD |
| Starboard cabin to have double berth conversion with powered sliding<br>mechanism on inboard berth | $8,870 |
| Port cabin to have double berth conversion with powered sliding<br>mechanism on inboard berth | $8,870 |
| Bar stools (fixed to deck and with top load access to forward saloon port<br>side sideboard unit) | $5,300 |

**GALLEY:**

| | |
|---|---|
| Galley Quartz: Misty Carrera | NEC |
| Garbage disposal | $1,650 |

**BATHROOMS**

Bathroom countertops are Sylmar White Solid Surface (satin finish) with
thermoformed basins  Floors are Solid Surface Carrara White (satin finish)

Broker Initials

Buyer Initials

SEC-HMY-E-0000017

SEC-HMY-E-0000003

## 2023 Princess Y72 Motor Yacht
## #Y72041



PRINCESS YACHTS AMERICA

**COLOR SCHEME**
**Color scheme can be selected from Quartz VII or Milan IX fabric and**
**Quartz II carpet as standard**

**DECK HARDWARE:**
**The Princess 72 has an up/down electro hydraulic transom platform**
**with 550 kg (1212 lbs) safe working load (SWL) fitted as standard.**
**The maximum recommended tender weight is 450 kg (992 lbs).**

| | | |
|---|---|---|
| Hardtop main canopy painted in Graphite Grey Metallic with Oyster Grey Metallic legs (note: Radar mast and navigation equipment painted in dark grey to match) | | $60,570 |
| Electrically operated sun awning to aft end of hardtop in Anthracite Grey mesh | | $36,270 |
| Side boarding gates to cockpit area | | $21,690 |
| Additional 20m of 12mm anchor chain to give a total of 80 metres | | $720 |
| Dinghy chocks on bathing platform | NEC | |
| Teak coffee table for foredeck seating area (with fixing point) | | $5,520 |
| Deck wash system, located in transom, foredeck and flybridge lockers | | $1,320 |
| Plug in carbon pole transom shower and deck socket to bathing platform | | $7,300 |

**GENERATOR**

| | | |
|---|---|---|
| Onan 29 kW / 60 Hz primary generator fitted as standard | STD | |

**ELECTRICAL:**

| | | |
|---|---|---|
| Separate washing machine and dryer located in companionway leading to Forward VIP (in place of standard combi washer/dryer) | | $3,990 |
| Icemaker in flybridge wetbar | | $4,330 |
| Exterior lighting upgrade package | | $4,190 |
| Included linear LED (x1) and fiber optic lighting to the cockpit pelmet and headlining and low level LED dock lighting (x28) | | |
| Interior lighting upgrade package | | $5,300 |
| Additional fiber optics (to saloon & dining area) | | |
| Additional LED strip lights to blind pelmets - to lower accommodation | | |
| AGM 90Ah batteries in place of standard (for start, domestic, and generator) | | $6,010 |
| CCTV cameras (2 x fixed cameras in engine room, 1 x pan/tilt camera in cockpit) | | $6,820 |
| Buell air horns IPO electric | | $2,880 |
| Glendinning Cablemasters (2) | | $24,000 |
| Energy Solutions Combiner and 2 x Energy Solutions IsoBoost2 12kVa/50A isolation transformers | | $50,660 |

Broker Initials

Buyer Initials

SEC-HMY-E-0000018

SEC-HMY-E-0000003

## 2023 Princess Y72 Motor Yacht
## #Y72041



PRINCESS YACHTS AMERICA

**AUDIO / VIDEO & COMMUNICATIONS:**

Premium Audio System                                                                    $40,200

Incorporates:

**Deck saloon** - 55" UHD LED TV on power lift mechanism
Naim Uniti Star audio system - Stream your music in high resolution,
play, download, store and access your music library or tune in to your
favorite radio stations via DAB & FM radio. Access a world of music
with a host of streaming and media sources with intuitive app enabled
features. 4 Focal 300 ICW6 speakers and Focal Cub Evo subwoofer

**Owners Stateroom** - 50" UHD LED TV
Naim Uniti Atom audio system with Bluetooth, multi-zone streaming
capability and dedicate app. 2 Focal 300 ICW6 speakers and Focal Cub Evo subwoofer

**Forward Stateroom** - 43" UHD LED TV
Naim Uniti Atom audio system with Bluetooth, multi-zone streaming
capability and dedicate app. 2 Focal 300 ICW6 speakers

**Starboard guest cabin** - 32" UHD LED TV
Naim Uniti Atom audio system with Bluetooth, multi-zone streaming
capability and dedicate app. 2 Focal 300 ICW speakers

**Port guest cabin** - 32" UHD LED TV
Naim Uniti Atom audio system with Bluetooth, multi-zone streaming
capability and dedicate app. 2 Focal 300 ICW8 speakers

**Flybridge** - Naim Uniti Atom audio system with Bluetooth, multi
streaming capability and dedicated app. Paired with four JL Audio
M6-650X-L waterproof speakers (no HDMI connectivity) and Focal
P25F subwoofer with 1000F amplifier

**Foredeck seating walk-through area** - Naim Uniti Atom audio system
with Bluetooth, multi-zone streaming capability & dedicated app. Paired
with 2 JL Audio M6-650 X-L waterproof speakers (no HDMI connectivity)

**Cockpit seating area** - Naim Uniti Atom audio system with Bluetooth
multi streaming capability and dedicated app. Paired with two JL Audio
M6-650X-L waterproof speakers(no HDMI connectivity

**System Includes**
- On board Ethernet and 4G internet capability
- On board WIFI network incorporating external WIFI and 3G/4G
antenna for extended range. Enabling connectivity to onshore WIFI
networks throughout the vessel. (Mobile internet connectivity requires an
activated mobile data SIM card

System is plug and play with external devices via HDMI/USB/RJ45
sockets in saloon and stateroom
256GB SD card
Combination inverter charger fitted, providing seamless transfer
between generators/shore power and inverted battery power for saloon
A/V & galley fridge.

Broker Initials

Buyer Initials

**SEC-HMY-E-0000019**

SEC-HMY-E-0000003

# 2023 Princess Y72 Motor Yacht
## #Y72041

**PRINCESS**
PRINCESS YACHTS AMERICA

**NAVIGATIONAL EQUIPMENT:**

| | | |
|---|---|---|
| Garmin electronics package in place of standard | | $25,880 |
| 1x Garmin GPSMAP 8616xsv 16" display at main helm | | |
| 1x Garmin GPSMAP 8616 16" display at main helm | | |
| 2x Garmin GPSMAP 8616 16" displays at upper helm | | |
| Garmin GMR Fantom 124 radar (6 kW / 4' open array scanner) | | |
| Garmin GMI20 multifunction instruments | | |
| Garmin GHP20 autopilot (dual station) | | |
| Garmin VHF315 handset VHF radio | | |
| Ensure Garmin electronics are connected to engines | | |
| Garmin AIS 800 Class B transponder | | $3,060 |
| Chase tubes for later fitting of SAT TV | | $1,410 |

**EXTERIOR UPHOLSTERY / CANVAS / COVERS:**
Reticulated foam to all exterior cockpit and flybridge seating is std
Please note : Craft are supplied with cockpit, foredeck and flybridge
covers as standard

**ACCESSORIES**
8 place settings of China, Cutlery, & Glasses are supplied as standard.

**SPARES/DELIVERY:**

| | | |
|---|---|---|
| Bed linens not including crew | NEC | |
| Water delivery kit | | $2,590 |

**NET OPTIONS:**

| | | |
|---|---|---|
| GRP flybridge hardtop featuring electric tilting louvres (including dimmable LED lighting) finished in white Gelcoat with painted Oyster Grey Metallic legs with reduced height aerials mounted on hardtop | NET | $149,390 |
| Sleipner Vector Fin stabilization system with VF-300 fins. When underway fins are driven by an engine powered hydraulic motor and at zero speed by a generator powered electric motor. (NB variable speed thrusters are recommended as fin and thruster controls are incorporated into one control at both helms | NET | $148,770 |
| Underwater lights. Lumishore TIX 803 color changing (4x fitted across the transom and 1x centered under Port and Starboard master windows) connected to navigation screens and including a Lumishore EOS STV2204i Lumi-Link controller in the cockpit | NET | $30,380 |
| Stainless steel flybridge rail in place of standard teak | NET | $4,750 |
| (2) ElectroSea CL-990-X1.5 Clearline Control System | NET | $21,340 |
| Yacht Safe Air Purification System, 7 Zones | NET | $6,643 |
| Estimated shipping includes delivery to shipping port, ocean freight, shipping insurance, US duty, US harbor taxes, and delivery from port of arrival to New Gretna, NJ or Riviera Beach, FL* | NET | $165,000 |
| Launch and Make Ready | NET | $15,000 |

| | |
|---|---|
| **TOTAL: (BASE BOAT AND OPTIONS)** | **$6,834,743** |
| | **-$1,366,949** |
| **SELLING PRICE:** | **$5,467,794** |
| | **-$115,000** |
| **SPECIAL DISCOUNTED PRICE:** | **$5,352,794** |

*Estimate is based on current shipping rates and importing expenses including duty, taxes, tariffs, and
clearance fees. Actual shipping to be confirmed approximately 15 days prior to loading

Broker Initials

Buyer Initials

Issue Date: 6/30/2022

Page 4 of 4

SEC-HMY-E-0000020

SEC-HMY-E-0000003



## PRINCESS YACHTS LIMITED (PRINCESS)
## ONE YEAR LIMITED WARRANTY

Hull # 72-041

Date of Purchase
August 9, 2022

| Purchaser's Name | | |
| Rishi Kapoor or Assigns | | |
| Purchaser's Address | | |
| 7233 Los Pinos Blv | | |
| City | State | Zip |
| Coral Gables FL 33143 | | |
| Purchaser's Phone No. | | Fax No. |
| 404-449-4931 | | |
| Purchaser's E-Mail Address | | |
| rkapoor@location.ventures | | |

Estimated Date of Delivery
April 2023

| Actual Date of Delivery | Engine hours |
| 5-6-23 | |

Selling Dealer
HMY Yacht Sales, Inc.

Dealer's Address
817 NE 3rd Street, Dania FL 33004

1.　　REGISTRATION OF WARRANTY AND PURCHASE Princess Yachts Limited (Princess), includes with each new boat this document a limited warranty which is part of the **purchase bargain** that must be filled out and delivered to Princess Yachts America, Inc the Warranty Administrator (PYA) within Ten (10) days after the purchase date.

　　The Maritime Safety Act of 1984 requires all boat manufacturers to maintain a record of all first retail purchasers and their current address for the purpose of notification in case of discovery of defective parts or equipment that create a substantial risk of personal injury to the public.

　　FAILURE TO COMPLETE AND RETURN THE WARRANTY WITHIN TEN (10) DAYS OF THE PURCHASE OF YOUR NEW PRINCESS MAY VOID THE WARRANTY, AFFECT YOUR WARRANTY OR OTHER LEGAL RIGHTS, AND WILL WAIVE YOUR RIGHT TO RECEIVE NOTIFICATION OF DEFECTS AND/OR REPAIRS AT PRINCESS'S EXPENSE IN THE FUTURE.

2.　　LIMITED WARRANTY.  PRINCESS warrants to the original purchaser, for a period of One (1) year, from the date of delivery of any new yacht purchased from PRINCESS or an authorized PYA dealer that PRINCESS will, through an authorized service center, replace or repair, at the discretion of PRINCESS, any part or component manufactured by Princess Yachts Limited which is proven to the satisfaction of PRINCESS to be defective, and which failure has occurred under normal use and service within the warranty period.  In addition, PRINCESS will, through an authorized service center, repair any hull which is proven to its satisfaction to have been defective in materials or workmanship at the time of delivery to its first owner and which defect is discovered and reported within five (5) years from the date of manufacture.  This warranty gives you specific legal rights, and you may also have other rights which vary from state to state.  Cosmetic defects / damage such as but not limited to scratches, dents, etc. are excluded on Yachts that have in excess of twenty-five (25) hours of use at the time of claim.

3.　　DISCLAIMER AND EXCLUSION OF WARRANTIES. THIS WARRANTY IS MEANT TO BE A COMPLETE AND EXCLUSIVE STATEMENT OF THE TERMS OF ALL PRINCESS WARRANTIES.  THE PURCHASER NAMED ABOVE UNDERSTANDS AND AGREES THAT THERE ARE NO WARRANTIES EXTENDED BY PRINCESS OTHER THAN THOSE EXPRESSLEY SET FORTH IN THIS INSTRUMENT. THERE ARE NO WARRANTIES OF ANY KIND PROVIDED BY THE SELLING DEALER OR THE DISTRIBUTOR. IMPLIED WARRANTIES IF ANY, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE LIMITED TO THE TERM PER SECTION 2 ABOVE OF THIS LIMITED WARRANTY. *PRINCESS UNDERTAKES NO RESPOSIBILITY FOR THE QUALITY OF THE GOODS EXCEPT AS OTHERWISE PROVIDED IN THIS LIMITED WARRANTY.* SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU. *PRINCESS ASSUMES NO RESPONSIBILITY THAT THE GOODS WILL BE FIT FOR ANY PARTICULAR PURPOSE FOR WHICH YOU MAY BE BUYING THE GOODS EXCEPT AS OTHERWISE PROVIDED HEREIN.*

4.　　LIMITATION AND EXCLUSION OF REMEDIES.  PRINCESS'S SOLE RESPONSIBILITY SHALL BE THE REPAIR OR REPLACEMENT, AT ITS OPTION, OF ANY DEFECTIVE PARTS OR COMPONENTS COVERED BY THIS LIMITED WARRANTY. THE PURCHASER NAMED ABOVE UNDERSTANDS AND AGREES THAT THIS IS HIS OR HER SOLE AND EXCLUSIVE REMEDY UNDER THIS LIMITED WARRANTY.  PRINCESS SHALL NOT BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL OR INDIRECT DAMAGES, INCLUDING LOSS OF USE CAUSED AS A RESULT OF ANY DEFECT IN WORKMANSHIP, REPAIR OR REPLACEMENT OR ANY BREACH OF WARRANTY.  SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, OR EXCLUSION MAY NOT APPLY TO YOU.

5.　　NOTICE OF DEFECTS;  You may make a warranty claim by: (1) Contacting PYA to arrange  for an inspection of the problem involved; (2) Delivering your PRINCESS to an authorized service center or the authorized selling dealer for an examination on the premises; or (3) Contacting PYA in writing at: Princess Yachts America, Inc, One North Clematis St, Suite 120, West Palm Beach, Florida, 33401.  Without regard to whether the initial report of the warranty claim is made under (1), (2), or (3) above, the defect **must also** be reported to PYA in writing by Email to service@pyamerica.com with read receipt or certified mail or overnight express mail service (FedEx-UPS-USPS) at the above address within **Thirty (30) days** of the discovery of same within the following information:

(a) Owner's name and address;
(b) Boat serial number (hull number);
(c) Information as to nature of defect or failure;

(d) Date actually placed in service;
(e) Accumulated hours or days of service;
(f) Location of Boat

Buyer Initials _____

Page 1 of 2

March 2022

SEC-HMY-E-0000021

SEC-HMY-E-0000003

All other necessary communications in connection with this warranty should be sent in writing to the above address.

The warranty claim and PRINCESS'S obligation to remedy the claimed defect shall be waived if you fail to provide timely written notice to PYA of the claimed defects as provided herein.

6.      PRINCESS invites any purchaser to inspect the vessel before purchase, with any experts (mechanical or otherwise) to determine to the purchaser's satisfaction, the condition of the vessel prior to purchase.

7.      PYA is not the agent of PRINCESS and PRINCESS does not authorize that PYA or any other person to assume for PRINCESS any liability or obligation in connection herewith. Neither PYA nor any other person is authorized to assume or impose any liability, undertaking or expense on behalf of PRINCESS with respect to the scope of this limited warranty or in the repair of its product other than those obligations expressly authorized herein. After an authorized service center has been assigned by PRINCESS for the claimed warranty work, reimbursement for labor costs provided by the authorized service center under the PRINCESS warranty will be based upon a rate and schedule established by PRINCESS with the authorized service center. This reimbursement shall be through PYA. The Purchaser is responsible for all other expenses, if any, in connection with any repair or replacement covered under this limited warranty, including but not limited to consequential damages, including repair or replacement of other parts or property damaged as a result of failure of the warranted part; the costs to obtain warranty service, such as towing charges, telephone charges, time lost from work (including crew), transportation costs, and the cost of renting a product temporarily to replace the warranted product; and/or any other incidental damages or expenses.

8.      PRINCESS reserves the right to improve product through change and design or material without obligation to incorporate such change in boats of prior manufacture. PRINCESS does not have a model year as such, and changes are incorporated in boats by PRINCESS as same are constructed from time to time. PRINCESS does not warrant or represent that a particular boat is of a particular model year.

9.      PRINCESS, except for proper installation, does not warranty the engines or other major components such as air conditioners, generators, appliances, electronics, etc., installed in your vessel, and is not responsible for any damages caused by or related to any defects in such products. You must make all such warranty claims directly to the product manufacturer. Please consult the separate product warranties that come with your vessel.

10.     PRINCESS will not be responsible for any damage to a vessel, or parts thereof, which have been subjected to abuse or neglect, installations by personnel not directly employed or authorized by PRINCESS, lack of, or improper maintenance, or failures caused by accident.

11.     **This warranty excludes and will not apply to:**
   a) **Products or components not manufactured by Princess Yachts Limited.**
   b) **Components covered by another manufacturer's warranty.**
   c) **Parts altered in any manner from original manufacturer.**
   d) **Fuel consumption or performance characteristics because they are merely estimates.**
   e) **Varnishes, gelcoats, paints, fabrics, chromium plated and stainless steel finishes damaged due to climate / environmental conditions and or lack of maintenance issues.**
   f) **Any person other than the first owner.**
   g) **Yachts in commercial, charter, revenue producing, used for racing or rental use.**
   h) **Normal wear & tear maintenance items of any kind or type.**
   i) **Electronics or electronics installations.**
   j) **Canvas, enclosure, upholstery, zippers, vinyl, fabric or bimini installations.**
   k) **The cost of removal or reinstallment of parts or components.**
   l) **Yachts based and/or registered outside of the United States.**
   m) **Electrolysis, galvanic, or other corrosion.**
   n) **Painting the standard Princess fiberglass hulls, decks, hardtops, etc is not recommended without extensive post finishing including post curing, this additional effort including the costs of any remedial works is excluded from coverage under this limited warranty.**
   o) **Any "Act of God" or any kind of force majeure and/or UCC defined impracticability.**

12.     This warranty, and all rights and obligations of the parties shall be governed by the Uniform Commercial Code.

13.     The parties acknowledge that this Agreement expresses their entire understanding and Agreement, and that there have been no warranties, representations, covenants or understandings made by either party to the other except such as are expressly set forth in this section.

I acknowledge receipt of a copy of this PRINCESS One Year Limited Warranty and acknowledge that this PRINCESS One Year Limited Warranty was provided to me prior to, or at the time of the purchase and further acknowledge that I have read and understand its terms and conditions and acknowledge that this warranty is part of the Purchase Agreement between myself and the selling dealer.

_____          _____
**Purchaser's Signature**

_____          _____
**Purchaser's Signature**

_____
Received and Accepted by Warranty Administrator, Princess Yachts America, Inc.

March 2022

SEC-HMY-E-0000022

SEC-HMY-E-0000003



**LIMITED WARRANTY**
**FOR MAN MARINE DIESEL ENGINES**
**SOLD TO BOAT BUILDERS FOR INSTALLATION IN NEW BOATS**
**IN NON-COMMERCIAL, NON-REVENUE PRODUCING,**
**LIGHT DUTY APPLICATIONS THAT OPERATE LESS THAN**
**9:00 HOURS PER YEAR**

**TERMS:**

**I.    Limited Warranty**

MAN hereby warrants that any engine part of its Common Rail Series engines that is found, during the Warranty Period, to be materially defective, or of poor workmanship, will be repaired or replaced, at MAN's option, subject to the terms of this Limited Warranty.

**II.   Warranty Period**

The Warranty Period of the Limited Warranty shall be a period of 24 months or 2000 hours, whichever occurs first, beginning on the first to occur:

a.   the date of delivery to the original retail purchaser, or
b.   for engines in dealer inventory boats and demonstrator boats, two (2) years after date of commissioning or 250 operating hours, but
c.   in any event, the 24 month Limited Warranty shall end no later than four (4) years from shipment from MEC.

At the expiration of the Warranty Period, warranty shall continue to apply for an additional 36 months as Extended Coverage, but only for damages that are a result of material or workmanship defects in the following major components:

cylinder block (casting defect)
crankshaft (forging defect)
camshaft (forging defect)
oil pan (casting defect)

**III.  Repairs**

MAN shall have a reasonable time to perform warranty repairs. Repairs will be performed during normal business hours. MAN will pay reasonable travel expenses for authorized service technicians to travel to the boat's location to make repairs, and will pay normal customary shipping charges to deliver parts. Costs for extraordinary travel expenses or transportation of parts are the responsibility of the owner.

**IV.  Replacement Parts/Components/Engine**

All parts, components, or the entire engine, which are replaced under the terms of this Limited Warranty, assume the identity of the original part, component, or engine replaced, and will be entitled to Limited Warranty protection for the remainder of the original Warranty Period and/or Extended Coverage, if any.

Maintenance items such as lube oil, coolant, filters, etc. which are made unusable as a result of a warrantable defect will be replaced by MAN.

All defective parts, components or the entire engine, which are replaced under the terms of this Limited Warranty become the property of MAN.

**V.    Limitations and Exclusions**

a)   This Limited Warranty applies only to the following engine models delivered on or after January 1, 2014 and only if it is a new engine, installed in new boats used in non-commercial non-revenue producing, marine light duty applications in North America, South America, Central America and the Caribbean:

R6 – 730
R6 – 800          V12 – 1360
R6 – 580          D2862LE466
V8 – 900          V12 – 1400
V8 – 1000         V12 – 1550
V8 – 1200         V12 – 1650
V10 – 1100        V12 – 1800

b)   This Limited Warranty does not cover failures or damages that are a result of engine misuse, negligence, alteration, or failure to carry out normal maintenance, or if repairs have been made by persons other than an Authorized MAN Service Representative.

c)   During all storage periods, engines must be handled as specified in the MAN guideline M 3289-4, otherwise MAN shall not be responsible for any failure or damages that are a result of improper storage.

d)   This Limited Warranty does not cover the replacement of service parts such as injectors, filters, belts, oil and anti-freeze except as stipulated in paragraph IV, Replacement Parts/Components/ Engine.

e)   This Limited Warranty does not apply to equipment supplied with the engine that bears the name of another manufacturer (e.g. marine transmission, power take-offs, exhaust system, alternator, engine mounts).

f)   MAN shall not be responsible for any loss of time, inconvenience, loss of use, meals, lodging, communication costs, transportation, cargo damage overtime, towing, any dockage or harbor charges, or other consequential damages resulting from a defect covered by this Limited Warranty. MAN does not accept any liability for consequential, punitive, contingent, or incidental damages.

g)   MAN shall not be responsible for labor and material costs relating to removal and replacement or dockage charges incurred in connection with warranty repairs.

h)   MAN shall not be responsible for costs for the execution of regular maintenance service as specified in the maintenance manual for the engine, nor for repairs required as a result of the failure to use specified fuel, oil, lubricants, and coolant.

i)   THE LIMITED WARRANTY HEREIN SET FORTH IS THE SOLE AND EXCLUSIVE WARRANTY WITH RESPECT TO MAN COMMON RAIL MARINE DIESEL ENGINES. THERE ARE NO OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AND ALL SUCH OTHER WARRANTIES ARE HEREBY DISPLACED.

Buyer's Initials

SEC-HMY-E-0000023

SEC-HMY-E-0000003



This account does not allow ed...

# UNIBANK

49 Church St.
Whitinsville MA 01588
800-578-4270

Wire Transfer of Funds Notice

Outgoing Domestic Wire

Deposit Account

XXXXXXXXXXXXXXX5055

TOMMARK, INC.
STERLING ASSOCIATES
49 CHURCH ST
WHITINSVILLE, MA  01588-1415

| | |
|---|---|
| Processing Date: | 3/14/2023 |
| Time: | 2:00PM |

The Following Information Was Sent For: Regular Transfer of Funds

| | | |
|---|---|---|
| Originator: | ID#:  XXXXXXXXXXXXXX5056 | Wire Amount:    $4,282,235.00 |
| | TOMMARK, INC. | |
| | STERLING ASSOCIATES | |
| | 49 CHURCH ST | |
| | WHITINSVILLE, MA  01588-1415 | |
| Beneficiary: | ID#:  XXXXXXXXXXXX4848 | |
| | VIKING SPORT CRUISERS, INC | Wire Charged To: XXXXXXXXXXXXXXX5055 |
| | 1 N. CLEMATIS STREET | |
| | SUITE 120 | |
| | WEST PALM BEACH FL 33401 | |
| IMAD: | 20230314MMQFMPWN000012 | |

Additional Wire Information:

Reference: 20230314000029  Originator to Ben: RISHI AND JENNIE KAPOOR  Receiving Bank: 0311-0114-3 CITIZENS
BANK, NATIONAL ASSOCIATION

| 1 | | Src: FEDLINE | Verified By: JIZZO01 | Ref #:      29 |
|---|---|---|---|---|

SEC-HMY-E-0000024

SEC-HMY-E-0000003

## Laura Hogle

| | |
|---|---|
| **From:** | Spirito, Tom <tspirito@pyamerica.com> |
| **Sent:** | Tuesday, February 28, 2023 10:09 AM |
| **To:** | Laura Hogle |
| **Cc:** | Alexie Creary; O'Hara, Mike |
| **Subject:** | Y72041 Rishi Kumar Kapoor & Jennie E. Kapoor |
| **Attachments:** | Rishi BC & MSO.pdf; PastedGraphic-1.tiff |

Good Morning Laura,

Mr. Kapoor would like to close as soon as Y72041 arrives which is approximately on March 13th.

The loan amount is $4,282,235.00. Please prepare a closing statement as Rishi is prepared to wire HMY the difference owed HMY less the $4,282,235,00 loan. Creative Yacht Solutions/Debbie Rich will document & register the yacht, and will prepare the BOS for HMY. Settlement wil bel tentatively on March 13th.

I have attached a copy of the BC & MSO for your file.

Please let me know if you have any questions.

Best Regards

Tom

Tom Spirito
Marine Finance Director
Princess Yachts America
727-698-3096

1

SEC-HMY-E-0000026

SEC-HMY-E-0000003

## Comerica Bank Incoming Wire Transfer Notification

W   wire_alerts@comerica.com                                    Reply all
    Today, 2:31 PM
    EMESSAGE@HMY.COM

Attention: Larry  Thomas
Contact:  HMY YACHTS SALES INC
Comerica Bank Incoming Wire Transfer Notification
Account number ending in 4168 has received an incoming wire transfer:

| | |
|---|---|
| Wire Amount: | |
| Rate Applied: | |
| Amount: | $30,348.00 USD |
| Sequence Number: | 230313011136 |
| Fed Reference Number: | 000041 |
| Incoming Time Stamp: | 03\13\2023 14:31 |
| Sending Bank Reference: | 2023031300448340 |
| Sending Bank Name: | 026009593  BK AMER NYC |
| Bank to Bank Info: | |
| Receiving Bank: | 067012099  COMERICA BK & TR |
| Receiving Bank Info: | PRINCESS Y72 CLOSING PROCEEDS |
| Beneficiary: | ACCT -     4168 |
| | HMY YACHTS SALES, INC |
| | 2401 PGA BLVD SUITE 198 |
| | PALM BEACH GARDENS, FL, 33410, US |
| Reference for Benef: | 429577132 |
| Beneficiary Bank: | |
| Origin acct ending in: | 3191 |
| Originator: | RISHI KAPOOR |
| | 7233 LOS PINOS BLVD |
| | CORAL GABLES, FL, 33143, US |
| Originator's Bank: | BIC-BOFAUS3N |
| Originator to Ben Info: | PRINCESS Y72 CLOSING PROCEEDS |
| Instructing Bank: | |
| Acceptance Timestamp: | 03\13\2023 14:31 |
| | |
| OMAD: | 20230313F6QC949C00004103131431FT01 |
| IMAD: | 20230313B6B7HU1R011978 |
| Charges: | |
| Details of Charges: | |

SEC-HMY-E-0000027

SEC-HMY-E-0000003

## Payment Details

**ComericA Bank**

**HMY YACHTS SALES INC - MHMYASA3**

### PAYMENT ID: 7582

| | |
|---|---|
| Payment Type | Wire - Domestic |
| Status | Bank Confirmed |
| Entry Method | Created from Template |
| Template | Princess |
| Value Date | 08/16/2022 |
| Send Date | 08/16/2022 |
| Credit Amount | 420,909.00 USD |
| Debit Amount | 420,909.00 USD |
| Exchange Rate | 1 |
| Tnum | 5411090 |
| Charges | SHA |
| 1st Confirmation | 220816004327 |
| 2nd Confirmation | 000009 |

### DEBIT ACCOUNT

| | |
|---|---|
| Number | ▮4168 |
| Name | HMY Yachts Sales Inc Operating Acct |
| Type | Checking |
| Bank | Comerica Florida |

### ORIGINATOR INFORMATION

| | |
|---|---|
| Name | HMY YACHTS SALES INC OPERATING ACCT |
| ID | ▮168 |
| Type | CUST |
| Country | US |

### BENEFICIARY

| | |
|---|---|
| Name | VIKING SPORT CRUISERS INC |
| Address 1 | NEW GRETNA NJ |
| City | , |
| Country | US |
| Account | ▮4648 |

### BENEFICIARY BANK

| | |
|---|---|
| Account Type | Other |
| Bank Code | ▮6150 |
| Bank | CITIZENS BANK, NATIONAL ASSOCIATION |
| City | PHILADELPHIA |
| Country | US |

### SETTLEMENT INFORMATION

| | Timestamp |
|---|---|
| Extracted | 08/16/2022 10:54:43 AM |
| Bank Received | 08/16/2022 10:54:45 AM |
| Bank Confirmed | 08/16/2022 10:55:06 AM |

### PAYMENT DETAILS

72041

### AUDIT INFORMATION

| | Timestamp | User ID | Company |
|---|---|---|---|
| APPROVED | 08/16/2022 10:54:37 AM | MHMYASA3JEFFERY | MHMYASA3 |
| ENTERED | 08/16/2022 10:28:24 AM | MHMYASA3HM33 | MHMYASA3 |

*Princess*
*72-041*

Continued

HMY YACHTS SALES INC          User:          Report Generated: 08/16/2022 11:03:11 AM          Page 1 of 2

SEC-HMY-E-0000003

# Comerica Bank Incoming Wire Transfer Notification

**W**   **wire_alerts@comerica.com**
Today, 11:24 AM
EMESSAGE@HMY.COM

Reply all

Attention: Larry  Thomas
Contact:  HMY YACHTS SALES INC
Comerica Bank Incoming Wire Transfer Notification
Account number ending in 4168 has received an incoming wire transfer:

| | |
|---|---|
| Wire Amount: | |
| Rate Applied: | |
| Amount: | $250,000.00 USD |
| Sequence Number: | 220815005829 |
| Fed Reference Number: | 000014 |
| Incoming Time Stamp: | 08\15\2022 11:24 |
| Sending Bank Reference: | 2022081500371314 |
| Sending Bank Name: | 026009593  BK AMER NYC |
| Bank to Bank Info: | |
| Receiving Bank: | 067012099  COMERICA BK & TR |
| Receiving Bank Info: | Y72 INITIAL DEPOSIT |
| Beneficiary: | ACCT - ▮▮4168 |
| | HMY YACHTS SALES, INC |
| | 2401 PGA BLVD SUITE 198 |
| | PALM BEACH GARDENS, FL, 33410, US |
| Reference for Benef: | 400402558 |
| Beneficiary Bank: | |
| Origin acct ending in: | 0440 |
| Originator: | RISHI KAPOOR |
| | 7233 LOS PINOS BLVD |
| | CORAL GABLES, FL, 33143, US |
| Originator's Bank: | BIC-BOFAUS3N |
| Originator to Ben Info: | Y72 INITIAL DEPOSIT |
| Instructing Bank: | |
| Acceptance Timestamp: | 08\15\2022 11:24 |

| | |
|---|---|
| OMAD: | 20220815F6QC949C00001408151124FT03 |
| IMAD: | 20220815B6B7HU2R009469 |
| Charges: | |
| Details of Charges: | |

SEC-HMY-E-0000029

SEC-HMY-E-0000003

# Comerica Bank Incoming Wire Transfer Notification

W  wire_alerts@comerica.com                                                   Reply all
   Today, 4:38 PM
   EMESSAGE@HMY.COM

Attention: Larry  Thomas
Contact:  HMY YACHTS SALES INC
Comerica Bank Incoming Wire Transfer Notification
Account number ending in 4168 has received an incoming wire transfer:

| | |
|---|---|
| Wire Amount: | |
| Rate Applied: | |
| Amount: | $820,559.00 USD |
| Sequence Number: | 220815015289 |
| Fed Reference Number: | 000038 |
| Incoming Time Stamp: | 08\15\2022 16:37 |
| Sending Bank Reference: | 2022081500503313 |
| Sending Bank Name: | 026009593  BK AMER NYC |
| Bank to Bank Info: | |
| Receiving Bank: | 067012099  COMERICA BK & TR |
| Receiving Bank Info: | Y72 BALANCE OF 20 PERCENT DEPOSIT |
| Beneficiary: | ACCT - ▓▓▓▓4168 |
| | HMY YACHTS SALES, INC |
| | 2401 PGA BLVD SUITE 198 |
| | PALM BEACH GARDENS, FL, 33410, US |
| Reference for Benef: | 400468100 |
| Beneficiary Bank: | |
| Origin acct ending in: | 3191 |
| Originator: | RISHI KAPOOR |
| | 7233 LOS PINOS BLVD |
| | CORAL GABLES, FL, 33143, US |
| Originator's Bank: | BIC-BOFAUS3N |
| Originator to Ben Info: | Y72 BALANCE OF 20 PERCENT DEPOSIT |
| Instructing Bank: | |
| Acceptance Timestamp: | 08\15\2022 16:37 |

| | |
|---|---|
| OMAD: | 20220815F6QC949C00003808151637FT03 |
| IMAD: | 20220815B6B7HU3R016358 |
| Charges: | |
| Details of Charges: | |

SEC-HMY-E-0000030

SEC-HMY-E-0000031

## DECLARATION OF HMY YACHT SALES, INC. CERTIFYING RECORDS
## OF REGULARLY CONDUCTED BUSINESS ACTIVITY

I, the undersigned, Lawrence J. Thomas, pursuant to 28 U.S.C. § 1746, declare that:

1.  I am employed by HMY Yacht Sales, Inc. as Vice President/Chief Financial Officer and by reason of my position I am authorized and qualified to make this declaration. I am custodian of records, and I am familiar with the company's record keeping practices or systems.

2.  I further certify that the documents submitted herewith are true copies of records that were:

    a.  Made at or near the time of the occurrence of the matters set forth therein, by, or from

        information transmitted by, a person with knowledge of those matters.

    b.  Kept in the course of regularly conducted business activity and

    c.  Made by the regularly conducted business activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct. Executed on [date]

Lawrence J. Thomas
Vice President
HMY Yacht Sales, Inc.

SEC-HMY-E-0000031

## BANK OF AMERICA

P.O. Box 15284
Wilmington, DE 19850

RISHI KUMAR KAPOOR
2618 TRAPP AVE
MIAMI, FL 33133-4624

**Customer service information**

Customer service: 1.800.432.1000

TDD/TTY users only: 1.800.288.4408

En Español: 1.800.688.6086

bankofamerica.com

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

# Your Adv Plus Banking

for November 23, 2019 to December 24, 2019

Account number: 3191

**RISHI KUMAR KAPOOR**

## Account summary

| | |
|---|---|
| Beginning balance on November 23, 2019 | $2,367.18 |
| Deposits and other additions | 221,756.97 |
| ATM and debit card subtractions | -8,067.42 |
| Other subtractions | -180,250.93 |
| Checks | -31,979.50 |
| Service fees | -63.50 |
| **Ending balance on December 24, 2019** | **$3,762.80** |

THE POWER TO

## keep up with what matters

**Better Money Habits®**
Powered by BANK OF AMERICA

Everyone has priorities — from welcoming a child or buying a home to traveling the world. Let us help you with financial tools, tips and information for every stage of life at **BetterMoneyHabits.com/WhatMatters**.

What would you like the power to do?®

SSM-09-19-0055.B | ARL79RSV

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

RISHI KUMAR KAPOOR   |   Account # ████3191   |   November 23, 2019 to December 24, 2019

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

How to Contact Us - You may call us at the telephone number listed on the front of this statement.

Updating your contact information - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

Electronic transfers: In case of errors or questions about your electronic transfers - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- – Tell us your name and account number.
- – Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- – Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2019 Bank of America Corporation

Bank of America, N.A. Member FDIC and   Equal Housing Lender

**EXHIBIT**

**BB**
_____

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP          RK00000339



**BANK OF AMERICA**

RISHI KUMAR KAPOOR  |  Account #⬛⬛⬛3191  |  November 23, 2019 to December 24, 2019

## Deposits and other additions

| Date | Description | Amount |
|------|-------------|--------|
| 12/02/19 | Counter Credit | 150,000.00 |
| 12/18/19 | Online Banking Transfer Conf# fe6d936a0; LOCATION VENTURES LLC, LOCATION VENTURES | 25,000.00 |
| 12/19/19 | WIRE TYPE:BOOK IN DATE:191219 TIME:0515 ET TRN:2019121800730246 SNDR REF:283827304 ORIG:LOCATION DEVELOPMENT LLC ID:898089495835 | 45,000.00 |
| 12/20/19 | CHECKCARD 1219 NUAGE PC, LLC 305-421-7264 FL 7449215935389438173 | 1,756.97 |
| **Total deposits and other additions** | | **$221,756.97** |

## Withdrawals and other subtractions

ATM and debit card subtractions

| Date | Description | Amount |
|------|-------------|--------|
| 11/25/19 | CHECKCARD 1123 APPLE.COM/BILL 866-712-7753 CA 24692169327100739943223 RECURRING | -6.41 |
| 12/03/19 | MOBILE PURCHASE 1203 Bonobos, New York New York   NY | -170.80 |
| 12/04/19 | CHECKCARD 1203 ARLO TECHNOLOGIES INC 408-638-3750 CA 24692169337100452118084 RECURRING | -10.69 |
| 12/04/19 | CHECKCARD 1204 CITIBANK, N.A. SIOUX FALLS  SD | -107.00 |
| 12/06/19 | WELLS FARGO BA 12/06 #000681521 WITHDRWL 2665 S BAYSHORE D  COCONUT GROVE FL | -83.00 |
| 12/09/19 | CHECKCARD 1206 SQ *CORAL CONTEMPOR 877-417-4551 FL 24492159340854248386169 | -1,979.50 |
| 12/09/19 | CHECKCARD 1207 ADT SECURITY*402718390 WWW.ADT.COM  FL 24692169341100359269935 RECURRING | -40.65 |
| 12/09/19 | CHECKCARD 1207 AFFIRM  PAYMEN SAN FRANCISCOCA 00000000000000000699723 RECURRING | -73.64 |
| 12/09/19 | MOBILE PURCHASE 1208 FITPLAN TECHNOLOGIES I VANCOUVER   BC | -49.99 |
| 12/09/19 | CHECKCARD 1207 ZUCCA MIAMI CORP CORAL GABLES FL 24269799342500678730218 | -389.89 |
| 12/09/19 | CHECKCARD 1207 SQ *ACTORS' PLAYHOU CORAL GABLES FL 24492159341854324743944 | -20.55 |
| 12/09/19 | CHECKCARD 1208 ADT SECURITY*402718390 800-238-2727 FL 24692169342100997294856 | -7.18 |

*continued on the next page*

---

## Do you know how much you need to retire?
### Find out at merrilledge.com/LearnMore.



Merrill Lynch, Pierce, Fenner & Smith Incorporated (also referred to as "MLPF&S" or "Merrill") makes available certain investment products sponsored, managed, distributed or provided by companies that are affiliates of Bank of America Corporation ("BofA Corp."). MLPF&S is a registered broker-dealer, Member SIPC and a wholly owned subsidiary of BofA Corp. Banking products are provided by Bank of America, N.A., and affiliated banks, Members FDIC and wholly owned subsidiaries of BofA Corp.

Investment products: | Are Not FDIC Insured | Are Not Bank Guaranteed | May Lose Value |

SSM-09-19-0046 B | ARFWWLDI

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP     RK00000340

## Withdrawals and other subtractions - continued

### ATM and debit card subtractions - continued

| Date | Description | Amount |
|---|---|---|
| 12/09/19 | THE FRESH MARK  12/09 #000247317 PURCHASE 2640 SOUTH BAYSHO  MIAMI          FL | -78.19 |
| 12/10/19 | CHECKCARD  1209 TST* YARDBIRD SOUTHERN MIAMI BEACH  FL 24137469343500757745755 | -84.94 |
| 12/10/19 | CHECKCARD  1209 C.GROVE LAUNDRY-CLNRS COCONUT GROVEFL 24493989343200968900043 | -96.00 |
| 12/16/19 | CHECKCARD  1212 AMERIPARK 30216800 INTE MIAMI          FL 24299109347001717366446 | -18.00 |
| 12/16/19 | CHECKCARD  1212 GLASS AND VINE MIAMI          FL 24755429348133481727442 | -121.52 |
| 12/16/19 | THE FRESH MARK  12/15 #000698755 PURCHASE 2640 SOUTH BAYSHO  MIAMI          FL | -120.67 |
| 12/18/19 | CHECKCARD  1217 CITY OF MIAMI BEACH PAR MIAMI BEACH  FL 24210739352400992001425 | -8.00 |
| 12/19/19 | CHECKCARD  1218 NUAGE PC, LLC 3054217264  FL 24492159352894343646260 | -1,756.97 |
| 12/19/19 | CHECKCARD  1218 NUAGE PC, LLC 3054217264  FL 24492159352894343722798 | -1,756.97 |
| 12/20/19 | AUTO CRAZE         12/20 #000405374 PURCHASE AUTO CRAZE          DOWNTOWN MIAM FL | -1,016.45 |
| 12/23/19 | P225126          12/22 #000604163 WITHDRWL ICON - BRICK-2251  MIAMI          FL | -64.00 |
| 12/24/19 | CHECKCARD  1223 APPLE.COM/BILL 866-712-7753 CA 24692169357100592471505 RECURRING | -6.41 |

| **Total ATM and debit card subtractions** | **-$8,067.42** |
|---|---|

### Other subtractions

| Date | Description | Amount |
|---|---|---|
| 11/26/19 | CAPITAL ONE        DES:ONLINE PMT ID:933039910240664 INDN:KAPOORRISHI          CO ID:9279744991 WEB | -1,781.99 |
| 11/27/19 | VENMO          DES:PAYMENT    ID:2785295735 INDN:RISHI KAPOOR          CO ID:3264681992 WEB | -275.00 |
| 12/02/19 | COMENITY PAY SB DES:WEB PYMT  ID:P19333323986351 INDN:RISHI KAPOOR          CO ID:1133163498 WEB | -262.00 |
| 12/03/19 | WIRE TYPE:BOOK OUT DATE:191203 TIME:1414 ET TRN:2019120300563853 RELATED REF:282397452 BNF:LOCATION CAPITAL LLC ID:898079118410 | -140,000.00 |
| 12/06/19 | VENMO          DES:PAYMENT    ID:2820970056 INDN:RISHI KAPOOR          CO ID:3264681992 WEB | -275.00 |
| 12/06/19 | COMENITY PAY SB DES:WEB PYMT  ID:P19339325905582 INDN:JENNIE FRANK          CO ID:1133163498 WEB | -130.00 |
| 12/09/19 | ALLY          DES:ALLY PAYMT ID:673924768655011 INDN:003347163191          CO ID:9833122002 WEB | -957.30 |
| 12/09/19 | Credit One Bank DES:Payment   ID:23567932 INDN:RISHI KAPOOR          CO ID:WEB000004 WEB | -64.00 |
| 12/09/19 | Credit One Bank DES:Payment   ID:33569889 INDN:RISHI KAPOOR          CO ID:WEB000004 WEB | -48.00 |
| 12/09/19 | VENMO          DES:PAYMENT    ID:2830606190 INDN:RISHI KAPOOR          CO ID:3264681992 WEB | -40.00 |
| 12/16/19 | CAPITAL ONE        DES:ONLINE PMT ID:934839910288999 INDN:KAPOORRISHI          CO ID:9279744991 WEB | -1,000.00 |

continued on the next page

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP          RK00000341

 **BANK OF AMERICA**

## Withdrawals and other subtractions - continued

Other subtractions - continued

| Date | Description | Amount |
|---|---|---|
| 12/16/19 | VENMO  DES:PAYMENT  ID:2860422333  INDN:RISHI KAPOOR  CO ID:3264681992 WEB | -275.00 |
| 12/19/19 | BARCLAYCARD US  DES:CREDITCARD ID:XXXXXXXXX  INDN:JENNIE FRANK  CO ID:2510407970 WEB | -12,000.00 |
| 12/20/19 | CAPITAL ONE  DES:ONLINE PMT ID:935439910246797  INDN:KAPOORRISHI  CO ID:9279744991 WEB | -4,142.64 |
| 12/23/19 | BARCLAYCARD US  DES:CREDITCARD ID:XXXXXXXXX  INDN:JENNIE FRANK  CO ID:2510407970 WEB | -19,000.00 |

**Total other subtractions** — **-$180,250.93**

## Checks

| Date | Check # | Amount | Date | Check # | Amount |
|---|---|---|---|---|---|
| 12/10/19 | 3080 | -1,979.50 | 12/19/19 | 3081 | -30,000.00 |
| | | | **Total checks** | | **-$31,979.50** |
| | | | **Total # of checks** | | **2** |

## Service fees

| Date | Transaction description | Amount |
|---|---|---|
| 12/03/19 | Wire Transfer Fee | -30.00 |
| 12/06/19 | WELLS FARGO BA 12/06 #000681521 WITHDRWL 2665 S BAYSHORE D COCONUT GROVE FL  FEE | -2.50 |
| 12/09/19 | MOBILE PURCHASE 1208 FITPLAN TECHNOLOGIES I VANCOUVER  BC 7408342934200000135081 1 INTERNATIONAL TRANSACTION FEE | -1.50 |
| 12/19/19 | Wire Transfer Fee | -15.00 |
| 12/23/19 | P225126        12/22 #000604163 WITHDRWL ICON - BRICK-2251  MIAMI FL  FEE | -2.50 |
| 12/24/19 | Monthly Maintenance Fee | -12.00 |

**Total service fees** — **-$63.50**

*Note your Ending Balance already reflects the subtraction of Service Fees.*

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

RK00000:342

RISHI KUMAR KAPOOR   |   Account #███████3191   |   November 23, 2019 to December 24, 2019

This page intentionally left blank

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

RK000 00343



RISHI KUMAR KAPOOR   |   Account # [REDACTED] 3191   |   November 23, 2019 to December 24, 2019

## Check images
**Account number:** [REDACTED] **3191**
Check number: 3080   |   Amount: $1,979.50



Check number: 3081   |   Amount: $30,000.00



Page 7 of 8

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP                    RK00 0003441

This page intentionally left blank

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

RK00000345

FL-4347_Kleyner_LV_LLC_0001480



# GLOBAL INTEREST PURCHASE AGREEMENT

This **GLOBAL INTEREST PURCHASE AGREEMENT** (this "Agreement") dated as of December 31, 2022 (the "Effective Date"), is made and entered into by and among (a) **The Dare Trust**, under an agreement of Trust dated April 22, 2020 ██████ (b) **1505 Ponce, LLC**, a Delaware limited liability company ██████ (c) ██████ a Delaware limited liability company ██████ (d) **Alex Kleyner** ("Alex"), (e) ██████ (f) **Location Ventures, LLC**, a Florida limited liability company ("Location Ventures"); and (g) **Rishi Kapoor** ("Rishi" and together with Location Ventures, collectively, the "Buyers," and individually, each is a "Buyer"). ██████ Alex and ██████ are sometimes hereinafter referred to collectively as the "Seller Parties" and they each are sometimes hereinafter referred to individually as a "Seller Party." Each Seller Party and each Buyer are hereinafter sometimes individually referred to as a "Party" and they are hereinafter sometimes referred to collectively as the "Parties." Buyers are primary obligors under this Agreement and they are jointly and severally liable and responsible for all obligations of Buyers hereunder. Certain capitalized terms are either defined within the individual paragraphs of this Agreement or in Section 10.14 below. In addition, Urbin, LLC and Daniel Motha are made parties to this Agreement for certain provisions, as reflected below.

## WITNESSETH:

WHEREAS, (a) ██████ is the owner of a membership interest in Location Ventures comprising 32.93% of the membership units of Location Ventures (such membership units, the "LV Interest"), (b) ██████ is the owner of a membership interest in 1505 Ponce Partners, LLC, a Florida limited liability company ("Ponce"), comprising 45% of the membership interests of Ponce (such interest, the "Ponce Interest"); and (c) ██████ is the owner of a membership interest in 551 Bayshore Partners, LLC, a Delaware limited liability company ("Bayshore"), comprising 28.736% of the membership interests of Bayshore (such interest, the "Bayshore Interest"; together with the LC Interest and the Ponce Interest, each, an "Redemption Interest"); and

WHEREAS, each of ██████ and ██████ are Affiliates of Alex and ██████ and ██████ each an "Interest Seller" and collectively, the "Interest Sellers");

WHEREAS, the Seller Parties have determined that it is desirable for Interest Sellers to sell their Redemption Interest in accordance with the terms of this Agreement and for the Seller Parties to enter into covenants and agreements relating thereto, including releases, covenants of confidentiality and indemnification, among other provisions, all as provided in this Agreement;

WHEREAS, Buyers, without the Seller Parties' input or advice, have determined that it is desirable and in Buyers' best interests to purchase from each Interest Seller each Redemption Interest in accordance with the terms of this Agreement and for Buyers to enter into and/or cause certain of its Affiliates, as necessary to comply with this Agreement, to enter into, covenants and agreements relating thereto, including releases, covenants of confidentiality and indemnification, among other provisions, all as provided in this Agreement

NOW, THEREFORE, in consideration of the mutual agreements contained herein, the Parties, intending to be legally bound hereby, agree as follows:

## ARTICLE I
## PURCHASE AND SALE OF MEMBERSHIP INTERESTS

1.1    Purchase of Membership Units.  Upon the terms and subject to the conditions set forth in this Agreement, each applicable Interest Seller irrevocably agrees to transfer, sell and assign to Buyers, and Buyers irrevocably agree to purchase, acquire and assume, from each applicable Interest Seller, the applicable

**EXHIBIT**

CC

FL-4347_Kleyner_LV_LLC_0001480

Redemption Interest, including, without limitation, each applicable Interest Seller's voting rights, capital accounts, rights to distributions of cash, property or otherwise, all rights to participate in and receive profits, losses, distributions of any kind and/or income, all rights to any member loans, and any other rights to which such Interest Seller ever had or may now or hereafter be entitled as a member of the applicable Subject Entity, and Buyers hereby irrevocably agree to assume and perform any and all obligations that the applicable Interest Seller may have to the applicable Subject Entity as a member of such Subject Entity or otherwise, whether or not arising under or pursuant to the Organizational Documents of such Subject Entity or otherwise. The purchase and sale of each Redemption Interest shall be in accordance with Sections 1.2, 1.3 and 1.4 below, as well as other relevant provisions of this Agreement.

1.2     Purchase Price. The Parties agree that the purchase price to be paid by Buyers to an Interest Seller for each Interest Seller's Redemption Interest will be as follows (as to each Redemption Interest, the "Purchase Price" and the aggregate Purchase Price for all of the Redemption Interests shall be referred to as the "Full Purchase Price"):

(a)     LV Interest. The Purchase Price payable for the LV Interest shall be $24,378,630.00 (the "LV Purchase Price");

(b)     Bayshore Interest. The Purchase Price payable for the Bayshore Interest shall be $6,366,356.94 (the "Bayshore Purchase Price"); and

(c)     Ponce Interest. The Purchase Price payable for the Ponce Interest shall be $10,182,246.57 (the "Ponce Purchase Price").

1.3     Payment. The Purchase Price payable for each Redemption Interest shall be paid by Buyers in installments (each, an "Installment" and collectively, the "Installments") by wire transfers, in accordance with the applicable Interest Seller's wire instructions, in each case as attached to this Agreement as **Exhibit A** as follows:

(a)     LV Purchase Price. Buyers shall pay to ▇▇▇▇ the LV Purchase Price for the LV Interest in the Installment Amounts and on the Payment Due Dates reflected below:

| Payment Due Date | Installment Amount | Proportionate Interest |
|---|---|---|
| 1/13/2023 | $2,000,000 | 2.70% |
| 1/31/2023 | $2,378,630 | 3.21% |
| 2/15/2023 | $2,500,000 | 3.38% |
| 2/28/2023 | $2,500,000 | 3.38% |
| 3/15/2023 | $5,000,000 | 6.75% |
| 5/15/2023 | $5,000,000 | 6.75% |
| 6/1/2023 | $5,000,000 | 6.75% |
| Total | | 32.93% |

(b)     Bayshore Purchase Price. Buyers shall pay to ▇▇▇▇ the Bayshore Purchase Price for the Bayshore Interest in the Installment Amount and on the Payment Due Date reflected below:

| Payment Due Date | Installment Amount | Proportionate Interest |
|---|---|---|

2

FL-4347_Kleyner_LV_LLC_0001480

| 3/31/2023 | $6,366,356.94 | 28.736% |

      (c)    Ponce Purchase Price. Buyers shall pay to ▮▮▮▮ the Ponce Purchase Price for the Ponce Interest in the Installment Amounts and on the Payment Due Dates reflected below:

| Payment Due Date | Installment Amount | Proportionate Interest |
| --- | --- | --- |
| 4/15/2023 | $2,968,493.15 | 13.119% |
| 4/30/2023 | $7,213,753.42 | 31.881% |
| Total | | 45% |

      (d)    Prepayment. Purchaser shall have the right to prepay, in full or in part, and without penalty, the Full Purchase Price or any Installments, but there shall be no discount for early payment of the Full Purchase Price or for the Purchase Price or any Installments for a Redemption Interest.

      (e)    Extension Option. Buyers shall have one (1) option to extend the Payment Due Date for only one of the Installments set forth in Sections 1.3(a)-(c) above, which extension shall be for not more than thirty (30) days from the originally scheduled Payment Due Date for such Installment (the "Extension Option"), in exchange for a non-refundable extension fee of $500,000.00 (the "Extension Fee") payable to the Seller Party that is to receive the Installment which is to be extended; provided, however, in no event shall Buyers be permitted to exercise the Extension Option with respect to either of the Installments due and payable on the 1/13/2023 or 1/31/2023 Payment Due Dates. The Extension Fee shall not reduce the amount of the Installment that is being extended (nor shall the Extension Fee reduce any other Installments), but shall be in addition to all other Installments due and payable hereunder. The option to exercise the Extension Option may be exercised by Buyers' delivery to the Seller Parties, by not later than ten (10) days prior to the date of the Payment Due Date for the Installment that is to be extended, (i) written notice of such exercise identifying the Payment Due Date and Installment to be extended, and (ii) cleared funds (in accordance with the applicable Seller Party's written instructions) in the amount of the Extension Fee. Solely by way of example, if the Buyers exercise the Extension Option with respect to the $5,000,000 Installment due to the ▮▮▮▮ on 3/15/2023, the extension notice and the Extension Fee shall be delivered and paid to ▮▮▮▮ on or prior to March 5, 2023 and the Installment in the amount of $5,000,000 shall be due and payable on April 15, 2023 along with the April 15, 2023 Installment in the amount of $2,968,493.15 which is due and payable under Section 1.3(c), for a total of $7,968,493.15 being due and payable on April 15, 2023. Buyers' exercise of the Extension Option shall not operate to extend any other payments due under this Agreement, including, without limitation, any Payment Due Date set forth in Sections 1.3(a)-(c). Accordingly, under the previous example, exercise of the Extension Option with respect to the March 15, 2023 Installment payment shall not extend the due date for the Installment payment due and payable on March 31, 2023, or any other date. The Extension Fee shall be deemed earned when received and shall not be cancellable or refundable, in whole or in part.

      (f)    Time of Essence. Time is of the essence for the timely payment of each Installment and the timely performance of each other obligation under this Agreement.

    1.4    Assignment of Interests

      (a)    Provided that an applicable Interest Seller shall have received the full amount of a given Installment on the applicable Payment Due Date therefore, then such Interest Seller shall convey to the Buyers the Proportionate Interest corresponding to such Installment and Payment Due Date. As noted in Section 1.3(d), Buyers shall have the right to prepay the full amount of any given Installment(s) prior to the Payment Due Date for such Installment(s), in which case, the applicable Interest Seller(s) shall convey to the

3

FL-4347_Kleyner_LV_LLC_0001480

Buyers the Proportionate Interest corresponding to such prepaid Installment(s) and Payment Due Date(s). The date upon which the full amount of a given Installment shall be received by a given Interest Seller shall be referred to as an "Interest Closing Date" and each closing for a Proportionate Interest to be conveyed by such Interest Seller shall be referred to as an "Interest Closing." On each Interest Closing Date, the applicable Interest Seller shall convey the applicable Proportionate Interest to the Buyers by the Seller Parties' counsel's delivery of an Assignment of Interest, in substantially the form attached hereto as Exhibit B, reflecting the applicable Proportionate Interest that is the subject of the Interest Closing Date. On each Interest Closing Date, a duly executed Assignment of Interest to convey the Proportionate Interest that is the subject of the Interest Closing shall be delivered by the Seller Party to Buyers.

(b)      Notwithstanding anything to the contrary, if an Interest Closing for any given Proportionate Interest shall not occur, then it is understood and agreed that the subject Proportionate Interest shall not be conveyed to Buyers and such Proportionate Interest and all associated rights relating thereto shall remain in and with the Interest Seller. By way of example only, and not in limitation of any other provision herein, upon receipt of the entire Bayshore Purchase Price, the Interest Sellers' counsel shall deliver to Buyers an executed Assignment of Interest to convey only the Bayshore Interest to Buyers. In further illustration of the preceding sentence, if Buyers shall pay six of the seven Installments on the LV Interest, then Buyers shall be entitled to receive Assignments of Interest for the six Proportionate Interests corresponding to the Installments paid, but Buyer would not be eligible for the remaining Proportionate Interest.

(c)      Buyers acknowledge and agree that the provisions of this Section 1.4 are fair and reasonable in light of the Seller Parties' forbearance from pursuing claims against Buyers for so long as Buyers continuously remain in compliance with the provisions of this Agreement in the effort to facilitate an amicable settlement of such claims in a timely fashion (the "Proposed Settlement").

(d)      The Installments and Proportionate Interests reflected in 1.3 above may not be subdivided or fractionalized and, without limiting the preceding, any partial payment on any Installment (whether as a normally scheduled payment or as a prepayment permitted under Section 1.3(d)) shall not require that the Interest Seller convey a portion of the Proportionate Interest to be conveyed. Rather, the Interest Seller may hold any partial payment on an Installment until the full amount of the Installment has been received by the Interest Seller before the Interest Seller shall have any obligation to convey the Proportionate Interest. Solely by way of example, if Buyers shall have paid the May 15, 2023 Installment in full and also pay an additional $2,500,000 against the June 1, 2023 Installment of $5,000,000, the Interest Sellers shall not be required to convey to the Buyers a fraction of the 6.75% Proportionate Interest and shall only have the obligation to convey the entire 6.75% Proportionate Interest at such time as the Interest Seller shall have received the full amount of the $5,000,000 Installment for such Proportionate Interest. No partial payment of any Installment shall accrue interest for or in favor of the Buyers.

1.5      Interest on Unpaid Portion of Full Purchase Price. Upon a default by Buyers, in addition to all other remedies available at law or in equity, interest on the unpaid portion of the Full Purchase Price shall accrue (and shall continue to accrue interest) at the highest non-usurious rate permitted by applicable law until paid in full. Interest accruing on any unpaid portion of Full Purchase Price shall be added to, and shall become part of, the Full Purchase Price.

1.6      Resignation. Effective upon the Final Closing Date (as defined in paragraph 6.1 below), Alex and ▇▇▇▇ shall formally resign from any and all positions then held with any LV Entity. Prior to such time, provided that Buyers remain in continuous compliance with the provisions of this Agreement, neither Alex nor ▇▇▇▇ shall vote on any matters brought before the board of managers of Location Ventures or an LV Entity pertaining to this Agreement; provided, however, the Seller Parties agree that (a) no vote by the ▇▇▇▇ of the LV Interest shall be required for Member Super Majority Approval (as defined in the Second Amended and Restated Limited Liability Company Operating Agreement of Location Ventures dated as of

4

FL-4347_Kleyner_LV LLC_0001483

FL-4347_Kleyner_LV_LLC_0001480

April 21, 2021 (the "LV Operating Agreement")) to approve this Agreement or any actions necessary for Buyers to implement this Agreement and (b) no vote by Alex or ██████ as Board Members of Location Ventures shall be required for Member Super Majority Approval (as defined in the LV Operating Agreement) to approve this Agreement or any actions necessary for Buyers to implement this Agreement. Buyers acknowledge and agree that neither Alex nor ██████ have participated in any of the underlying discussions, analysis or deliberations for voting on or the approval of any matters directly or indirectly pertaining to this Agreement or the Interest Purchase Agreement for the redemption of membership interest in Redlands Phase I, LLC, including, without limitation any meeting of the board of directors of Location Ventures or any meeting of the members of Location Ventures, including any committee or sub-committee thereof. If, and to the extent that, any voting decisions are required by a board of managers or the equivalent for any matters in which Alex or ██████ would be interested parties, Buyers represent and warrant that all appropriate actions and measures have already been taken, or they shall later take, timely, all appropriate actions and measures, to address the interested nature of the matter in accordance with applicable law, as well as any procedures established in the applicable Organizational Documents. Notwithstanding anything to the contrary, abstention from any vote or consent by either or both of Alex and ██████ shall be of no consequence to any of their rights under the Organizational Documents or any other document, instrument or agreement of any LV Entity, and shall not lead to any declaration or determination that either Alex or ██████ are non-responding members of the board.

1.7    Maintenance of Rights; Limitation of Obligations. In addition to Section 1.4(b) and not in limitation of such provision, the Parties acknowledge and agree that each Interest Seller's rights under any Organizational Document of any Subject Entity and any of the obligations that any Subject Entity may have to any Seller Party or its Affiliates under such Subject Entity's Organizational Documents shall remain in full force and effect unless and until the aggregate Purchase Price for the Redemption Interest of such Subject Entity has been received by the applicable Interest Seller; provided, however, that it is understood and agreed that no Interest Seller shall be entitled to distributions on any Proportionate Interest as to which the applicable Interest Seller shall have received full payment on the applicable Installment therefore. Notwithstanding anything to the contrary, no Interest Seller or any of its Affiliates, shall have any obligation to make any contribution to the capital of any Subject Entity or any loan to or other payment of any sort whatsoever with respect to any Subject Entity or any of its Affiliates and, notwithstanding any capital contribution by any other Person to any Subject Entity, the rights (voting, approval, economic or otherwise) of an Interest Seller and/or the percentage of interest represented by such Interest Seller's membership interest (and/or units) in or to any Subject Entity shall not be diluted or diminished in any respect, unless and until an Interest Closing shall have occurred with respect to a given Redemption Interest and then such changes shall be limited only to that Proportionate Interest of such Redemption Interest that is the subject of the Interest Closing.

ARTICLE II
REPRESENTATIONS AND WARRANTIES OF SELLER

Each Seller Party hereby represents and warrants to Buyers that the following representations and warranties are true and correct as of the Effective Date and as of each Interest Closing Date and shall survive each Interest Closing:

2.1    Non-Contravention. Each Seller Party has full unrestricted power and capacity to enter into this Agreement and to carry out the transactions contemplated hereby. Seller Party has duly executed and delivered this Agreement and this Agreement is the valid and binding obligation of such Seller Party, enforceable against such Seller Party in accordance with the terms herein, except as such enforceability may be limited by (a) bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to or limiting creditors' rights generally and (b) general principles of equity.

5

FL-4347_Kleyner_LV_LLC_0001480

2.2     Membership Interests.    Each Interest Seller is the direct record and beneficial owner of its respective Redemption Interest as of the Effective Date and will be the direct record and beneficial owner of such respective Redemption Interest as of the Interest Closing Date for such Redemption Interest, free and clear of all security interests, liens, adverse claims, pledges, hypothecations, options, rights of first refusals, and agreements or limitations on voting rights and charges, other than as expressly set forth in the Organizational Documents for the Subject Entity that is the subject of the applicable Redemption Interest.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyers hereby jointly and severally represent and warrant to each Seller Party that the following representations and warranties are true and correct as of the Effective Date and as of each Interest Closing Date, and each such representation and warranty shall survive each Interest Closing (and Urbin is hereby making the following representations and warranties in furtherance of its obligations in Section 4.22 and, in furtherance thereof, shall be deemed to be "Buyer" in so doing):

3.1     Authority; Non-Contravention.    Buyers have full unrestricted power and capacity to enter into this Agreement and to carry out the transactions contemplated hereby.  No approvals of any Person, other than such approvals as have already been obtained, are required for Buyers to execute and perform its obligations under this Agreement or to cause any other Person to perform or carry out any obligation required under this Agreement.  Buyers have duly executed and delivered this Agreement, and this Agreement is the valid and binding obligation of Buyers, enforceable against Buyers in accordance with the terms herein, except as such enforceability may be limited by (a) bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to or limiting creditors' rights generally and (b) general principles of equity.

3.2     Compliance.    To the Knowledge of Buyers, neither Buyers nor any LV Entity are in violation of, or default under, any applicable law, any agreement or instrument to which it is a party or by which it is bound or to which any of its properties or assets are subject.  The execution, delivery and the performance by Buyers, any LV Entity or any of their respective Affiliates of this Agreement and any related document and agreement required to be delivered hereunder, the consummation of the transactions contemplated herein and the compliance with the terms and provisions hereof, will not (a) violate the Organizational Documents of Buyers, any LV Entity or any of its or their Affiliates, (b) contravene any applicable law to which Buyers, any LV Entity or any of its or their Affiliates is subject or (c) violate, conflict with or result in any breach of any of the term, covenant, condition or provision of, or constitute a default under, or result in the creation or imposition of any security interest upon any of the property or assets of Buyers, any LV Entity or any of its or their Affiliates under, any indenture, mortgage, deed of trust, agreement or other instrument to which such Buyers, any LV Entity or any of its or their Affiliates is a party or by which its properties or assets are bound or may be subject.

3.3     Litigation.    There are no actions, suits, proceedings or investigations pending or, to the Knowledge of Buyers, threatened (in writing or verbally) against or affecting Buyers, any LV Entity or any of its or their Affiliates or its or their respective properties or assets, or to which Buyers, any LV Entity or any of its or their Affiliates or any of their properties or assets is subject, nor is there any outstanding judgment, order, writ, injunction, decree or award affecting Buyers, any LV Entity or any of its or their Affiliates or its or their properties or assets before any court or before any government authority, and Buyers do not have any Knowledge of any basis for any such suit, proceeding or investigation.

3.4     As-Is.    Buyers are substantial, sophisticated investors having such knowledge and experience in financial and business matters that they are capable of evaluating the merits and risks of the transaction contemplated herein without any input or advice, and without reliance on any matters, from any Seller Party.

6

FL-4347_Kleyner_LV_LLC_0001480

Buyers acknowledge and agree that it is intimately familiar with the Redemption Interests and Subject Entities and has all information and materials necessary for Buyers to make the determination to enter into and perform its obligations under this Agreement. Other than as expressly provided in Article II above, Buyers have not relied upon any oral or written statements or representations made by a Seller Party or any of its or their respective representatives or agents in deciding to enter into this transaction. Without in any way limiting the generality of the foregoing, (a) no Seller Party has made any representations or warranties other than those representations and warranties expressly contained in Article II and (b) Buyers waive all defenses to the enforcement of this Agreement and claims based on or arising from all known or unknown alleged statements, representations, warranties or omissions from or by any Seller Party, and covenants not to assert claims or defenses based upon alleged negligent misrepresentation or fraud in the inducement to enter this Agreement. **Buyers acknowledge and agree that, except as expressly set forth in this Agreement, each Redemption Interest is being sold "AS IS, WHERE-IS, AND WITHOUT RECOURSE". Buyers have received the advice of counsel, and Buyers' counsel has reviewed, negotiated, participated in drafting and approved the terms of this Agreement prior to Buyers' execution of the Agreement.**

## ARTICLE IV
## BUYERS' COVENANTS

Buyers, jointly and severally, hereby covenant and agree that from the date hereof and until payment in full of the Full Purchase Price for all Redeemed Interests, Buyers will take, and will cause to be taken, all appropriate steps and actions to ensure that each LV Entity will comply with each of the following provisions:

4.1     Limitations on Salary, Remuneration, Compensation and Success Fees. No LV Entity shall pay, directly or indirectly, Rishi or Daniel Motha, or any of their respective Affiliates, any salary, distribution or any other remuneration, payment or compensation or make any loans, advances or the like, other than as follows: (a) salary of up to $400,000, on an annualized basis; (b) health care benefits as are available to other employees of Location Ventures generally, (c) any payment to which Rishi may be entitled as success fees or upon the occurrence of a liquidity event or the like ("Success Fee") but solely to the extent that such Success Fee is due and payable, directly or indirectly, by any Person that is not Location Ventures or any Existing Project Entity. Without limiting the preceding, it is expressly understood and agreed that Rishi shall not take any payment, advance or loan for any Success Fee or the like from any Subject Entity.

4.2     Forensic Accounting Audit. Buyers acknowledge and agree that Location Ventures shall submit to an independent forensic accounting audit involving each LV Entity, the cost and expense of which shall be borne by Location Ventures. Buyers represent and warrant that Location Ventures has engaged Berkowitz Pollack Brant Advisors + CPAs (the "Audit Firm") to undertake the independent audit as soon as reasonably practical and Rishi has paid the applicable retainer therefore. Buyers agree to cooperate in good faith with the Audit Firm to facilitate the Audit Firm's efforts and to expedite the completion of the audit as quickly as reasonably possible, including, without limitation, by making available to the Audit Firm all available resources and materials that the Audit Firm may request. Buyers covenant and agree that, commencing upon an event of default under this Agreement and at all times thereafter, (i) the Audit Firm shall update and provide each Seller Party or its representatives with past, present and future interim findings and final results of the audit, (ii) the Audit Firm shall answer such questions as any Seller Party or its representatives may have regarding the Audit Firm's interim findings and/or final report and (iii) Buyers waive any and all alleged rights to any assertion or right to claim the accountant-client privilege or any other privilege with respect to the audit, or the work of, or communications with the Audit Firm (including any attorney-client privilege, it the Audit Firm shall be engaged by or through Buyer's counsel). Moreover, Buyers shall direct the Audit Firm to maintain audit work files and, upon an event of default under this

7

FL-4347_Kleyner_LV_LLC_0001480

Agreement, the Audit Firm shall make such work files, and all interim and final reports, available to each Seller Party or its representatives upon request.

4.3     Business and Existence.  Each LV Entity will perform all things necessary to preserve and keep in full force and effect its existence, maintain the continuous operation of its business and comply with each requirement of applicable law.  No LV Entity shall amend its Organizational Documents (other than to bring in new capital in connection with Buyers' performance under this Agreement), or change its jurisdiction of formation and each LV Entity shall comply in all material respects with all of the provisions of its Organizational Documents.  No LV Entity shall make any new investment in any Person.  No LV Entity shall make any material change to its business or operations.  No LV Entity shall convey all or substantially all of its assets to any Person, except (i) upon payment of the Full Purchase Price to the Seller Parties or (ii) if the proceeds of such transaction are paid towards the Purchase Price and no such portion of said proceeds or other payments as a result of any such transaction are made to Rishi, Daniel Motha or any LV Entity or any of their respective Affiliates.

4.4     Indebtedness and Expenses.  No LV Entity shall incur, create or suffer to exist any indebtedness, obligations and expenses, or incur, create or suffer to exist any  indebtedness, obligations and expenses except reasonably necessary expenses incurred in the ordinary course of business or otherwise in connection with the performance of its obligations under this Agreement; by way of clarification the LV Entity shall be permitted to pursue the Current Projects in connection with their respective operating plan and budgets approved by all appropriate means (including by Seller Parties or their Affiliates) prior to the date of this Agreement (a true, correct and complete copy of which is attached hereto as Exhibit 4.4) (each, an "Approved Budget and Plan").  Each LV Entity shall pay and discharge all of its indebtedness, obligations and expenses promptly in accordance with the terms thereof and, in all cases, before the same shall become in default, as well as all lawful claims for labor, materials and supplies which otherwise, if unpaid, could reasonably be expected to become a lien upon its properties or assets or any part thereof.  Each LV Entity shall remain in compliance with any operating budget and operating plan approved, prior to the Effective Date, by the applicable governing body and/or members of such LV Entity.

4.5     Taxes.  Each LV Entity shall pay, prior to delinquency, all taxes, assessments and other governmental charges or levies which become due and payable by each LV Entity to any governmental body, entity, subdivision or department thereof under any law now or hereafter in force or effect, except any such taxes, assessments or charges (a) that are being diligently contested in good faith by appropriate proceedings and (b) for which adequate reserves in accordance with GAAP shall have been set aside on its books.

4.6     Notice of Event of Default.  Each LV Entity shall furnish the Seller Parties with prompt written notice of the occurrence of any event of default or any event or condition the occurrence or existence of which would, with the giving of notice or lapse of time, or both, constitute an event of default under any material agreement to which any LV Entity is bound or a party or which would suffer a material adverse effect as a result of such event or condition.

4.7     Financial Statements; Additional Information; Further Assurances.

        (a)     As soon as available and in any event within forty-five (45) days after the end of each fiscal quarter of Location Ventures, Location Ventures will deliver to the Seller Parties an unaudited consolidated balance sheet, together with a related unaudited statement of income and unaudited statement of cash flow for such quarter covering each LV Entity, all prepared in accordance with GAAP.  Together with each delivery of such financial statements, Location Ventures will deliver a sworn affirmation of the CEO of Location Ventures to the effect that (i) such financial statements were prepared in accordance with GAAP applied on a consistent basis (other than for the absence of footnotes and normal recurring year-end adjustments) and, (ii) such financial statements fairly and accurately present the results of operations and financial condition of each LV Entity in all material respects as of the date of such financial statements and

8

FL-4347_Kleyner_LV_LLC_0001480

(iii) each LV Entity is in compliance with the provisions affecting or relating to such LV Entity in this Agreement.

(b)     Upon five (5) days written notice, furnish such other financial information in the possession of or readily obtainable by an LV Entity regarding the operations, business affairs and financial condition of each LV Entity and its and their respective properties or assets as a Seller Party may reasonably request in writing for the purpose of determining compliance with this Agreement, including, but not limited to, true, complete and exact copies of its books of account and any audit reports prepared by any governmental agency related to any LV Entity or this Agreement, and all information furnished by any LV Entity to any governmental agency related to any LV Entity or this Agreement.

4.8     Right of Inspection/Right of Audit.

(a)     Each LV Entity shall permit all persons designated by a Seller Party to visit and/or inspect any of the properties, and all books, systems, procedures, financial reports and records of each LV Entity and to discuss with such LV Entity's CFO and other officers, its affairs, finances and accounts at all such times and as often as a Seller Party may reasonably request for the purpose of determining compliance with this Agreement. Buyers shall ensure that each Seller Party shall continue to have electronic access to each LV Entity's accounts to enable the Seller Party to review banking and other related records to ensure compliance with this Agreement.

(b)     Permit each Seller Party to conduct an audit of the properties, books, systems, procedures, financial reports and records of the business activities and operations conducted by each LV Entity in connection with their performance under this Agreement, during regular business hours, at the location the records are then kept by any LV Entity

4.9     Notification of Litigation, Liens, Material Events.  Buyers shall promptly notify the Seller Parties in writing of (i) any material litigation or dispute affecting any LV Entity whether pending or threatened, and deliver to Seller Parties copies of all pleadings, unprivileged relevant correspondence and similar documentation relating thereto, (ii) any lien, claim, encumbrance, security interest, attachment or other legal process asserted against any of the assets of any LV Entity and (iii) the occurrence of any other event or the discovery of any other information of which Buyers and/or any LV Entity shall have Knowledge which could reasonably be expected to have a material adverse effect on the business, operations or reputation of any LV Entity.

4.10    Consolidation, Merger, Sale of Assets or Interests.  No LV Entity shall (i) wind up, liquidate or dissolve its affairs, enter into any transaction of merger or consolidation, convey or transfer its properties and assets substantially as an entirety, (ii) convey, sell, transfer, lease or otherwise dispose of its assets or any part thereof, other than in the ordinary course of business, or (iii) create any partnership, joint venture or subsidiary except in connection with a Current Project to the extent reflected and consistent with an Approved Plan and Budget; or (iv) sell any membership interest or other equity interest or any right to acquire any of the foregoing except in connection with an Current Project to the extent reflected and consistent with an Approved Plan and Budget; unless in the case of subclauses (i) through and including (iv), all of the proceeds, after deducting only for reserves which are determined in the written opinion of Location Venture's certified public accountant to be reasonably necessary for any material contingency resulting from any action taken as an exception to clauses (i) through and inclusive of (iv) (and not for any payment, fee or the like for Rishi, Daniel Motha or any LV Entity or any of their respective Affiliates, other than as expressly permitted in Section 4.1), shall be used to pay down the Full Purchase Price (it being understood and agreed that no partial payment against the Full Purchase Price shall absolve the Buyers obligation to pay the entire amount of the Full Purchase Price); it being further understood and agreed that notwithstanding any line item in any Approved Plan and Budget or any other document, instrument or agreement (including, without limitation, any Organizational Document), no portion of such proceeds or any other payment shall be made

9

FL-4347_Kleyner_LV LLC_0001488

FL-4347_Kleyner_LV_LLC_0001480

to Rishi, Daniel Motha or any LV Entity or any of their respective Affiliates unless and until the Final Purchase Price shall have been paid.

4.11    Other Agreements. No LV Entity shall enter into any agreement containing any provision which would cause a default or an event of default hereunder or which would be violated or breached by the performance of Buyers' obligations under this Agreement.

4.12    Advances, Investments. No LV Entity shall lend money or make advances to any Person, or purchase or acquire any stock, obligation or security of, or any other interest in, or make any capital contribution to, any Person, other than in accordance with this Agreement.

4.13    Distributions. No LV Entity shall make distributions to its members (including, without limitation, by redemption or return of capital) of any cash or of any LV Entity's assets, other than in accordance with this Agreement.

4.14    Approvals and Licenses. Each LV Entity shall maintain all consents, approvals, authorizations, orders, rights, licenses, franchises and permits, if any, required by or from any federal, state or other governmental authority, for the conduct of its business and the ownership of its properties, or otherwise obtain a waiver, exemption or variance thereof, except where the failure to so maintain would not reasonably be expected to have a material adverse effect on the business, operations or reputation of any LV Entity.

4.15    Maintenance of Books and Records; Change in Accounting Policies. Each LV Entity shall (a) maintain proper books of record and account, in which full, true and correct entries in conformity with GAAP consistently applied shall be made of all financial transactions and matters involving the assets and business of such LV Entity, as applicable; and (b) maintain such books of record and account in material conformity with all applicable requirements of any governmental authority having regulatory jurisdiction over such LV Entity, as applicable. In addition, no LV Entity will change its accounting policies or reporting practices, except as allowable pursuant to GAAP and provided that prompt written notice shall be provided to Seller Parties.

4.16    Fraudulent Activities, Violations of Law. Buyers will not and no other LV Entity will engage in, and no Person under its or their direct control or direction shall engage in, any fraudulent or illegal activity.

4.17    Transactions with Affiliates. Buyers will not and no other LV Entity shall enter into any transaction of any kind with any of its respective Affiliates (including, but not limited to Rishi, Daniel Motha or any of their Affiliates), whether or not in the ordinary course of business or otherwise, other than as expressly permitted in an Approved Plan and Budget and solely to the extent expressly permitted under this Agreement (it being understood and agreed that no payment, fee or other amount shall be paid to or with respect to, and no reserve shall be established with respect to a payment, fee or other amount to be paid to, Rishi or Daniel Motha or any of their Affiliates, other than as expressly provided in Section 4.1).

4.18    Compliance with Organizational Documents and Material Agreements. Each LV Entity shall be and remain in compliance in all material respects with each of its Organizational Documents and any material agreement to which it is a party or by which its respective assets are bound, except as limited or altered by this Agreement. Moreover, each LV Entity shall comply in all respects with all of its obligations to any Seller Party or its Affiliates arising under its Organizational Document and any material agreement to which it is a party or by which its respective assets are bound.

4.19    Board Observer Rights. If either or both of Alex and ▮▮▮▮ shall resign from office as members of the board of directors of any LV Entity and/or abstain from voting, then each applicable LV Entity shall invite a representative of the Seller Parties to attend all meetings of such LV Entity's board of

10

FL-4347_Kleyner_LV_LLC_0001480

directors, members or similar body in a manner that observes corporate and to this respect shall give such representative rights of all management interests and other material that it provides to its directors and or members as applicable in the same time and in the same manner is provided to such directors and or members as applicable.

    5.20    Intentionally deleted.

    5.21    Intentionally deleted.

    5.22    Urban Loan. Buyers and Urban, LLC ("Urban") acknowledge that Location Ventures made an undocumented loan to Urban in the approximate amount of $bn million (the "Urban Loan"). Buyers represent, and Urban agrees, that if Urban will hold and will not disclose or, such that is to the Urban Loan which the roll in an account under the control of Urban and in the Urban Loan shall be automatically called upon any default by Buyers to pay any Installment when due or any other default by Buyers under this Agreement, in which case, Urban shall promptly repay to Location Ventures the principal plus the accrued upon rate of interest, which is to be compounded annually. Buyers shall ensure that the Urban Loan is properly documented through the execution of a loan or promissory note containing usual and customary terms. The documentation of the loan pursuant to this Section shall be completed contemporaneous to with the execution and delivery of this Agreement. Upon a call of the Urban Loan, all proceeds of the Urban Loan shall be used to pay down the Full Purchase Price.

    5.23    Restrictions Binding With Respect to Affiliates. Notwithstanding anything to the contrary, any restriction that is binding on or with respect to Location Ventures, Rishi, Daniel Mafla, or any other JV Entity shall also be applicable and restrictive and so binding upon or with respect to all Affiliates of Location Ventures, Rishi, Daniel Mafla, and such JV Entity, except to the extent expressly provided otherwise in the Agreement.

    5.24    Plans and Budgets. There shall be no alteration or deviation from any Approved Plan and Budget.

### ARTICLE V
### INDEMNIFICATION

    5.1    Indemnification. Subject to the provisions of this Article, from and after the Effective Date, Buyers each, a Buyer Indemnitory Party) shall defend, indemnify, and hold harmless each Seller Party and its Affiliates (each a Seller Indemnified Party), against and in respect of any and all losses, liabilities, damages, actions, torts, proceedings, claims, demands, orders, assessments, amount, paid in settlement, fine, costs or deficiencies, including without limitation, interest, penalties, and attorneys' fees and costs, including the cost of or seeking to enforce this indemnity, to the extent such enforcement is successful, all the expense, collectively, "Losses") and singularly a "Loss", from any claims by third parties against a Seller Indemnified Party in any way arising out of or relating to, or in the broader sense, this Agreement, the transactions arising under this Agreement, and any JV Entity. Without limiting any of the foregoing, the duty to indemnify shall exist with respect to any matter pertaining to or any investment in, management of, or any other relationship with, Location Ventures or any JV Entity, any ongoing operations of Location Ventures or any JV Entity, any requirement for capital contributions, member loans or any other payments to Location Ventures or any JV Entity, or the like. In addition, Buyers acknowledge that the indemnification provisions in any Organizational Document under which a Seller Indemnified Party would be eligible for indemnification as of the Effective Date shall remain in full force and effect for and in favor of such Seller Indemnified Party and or its Affiliates, and no amendment, restatement, or the like to the Organizational Documents shall lessen or reduce the application of such indemnification provisions for the Seller Indemnified Party and or

11

FL-4347_Kleyner_LV LLC_0001490

FL-4347_Kleyner_LV_LLC_0001480

its Affiliates in any manner. The duty to indemnify shall include the duty to immediately advance the cost of defense for a Loss, if and when incurred, subject to a written agreement by a Seller Indemnified Party to reimburse the Buyer Indemnifying Party if it is later determined there was no duty to Indemnify hereunder. Seller Indemnified Party shall have full control to select counsel to defend any Losses. Without limiting any of the foregoing, to the extent this Agreement provides broader indemnity rights to Seller Indemnified Party than any Organizational Document, then the duty to indemnify under this Agreement shall control. Also without limiting the foregoing, to the extent the Organizational Documents provide broader indemnity rights to Seller Indemnified Party than this Agreement, then the duty to indemnify under Organizational Documents shall control.

5.2     Indemnification. Subject to the provisions of this Article, from and after the Effective Date, each Interest Seller (each, a "Seller Indemnifying Party") shall defend, indemnify, and hold harmless, Buyers and their Affiliates (each, a "Buyer Indemnified Party"), against and in respect of any and all Losses, caused by or resulting or arising from, or otherwise with respect to, any inaccuracy in or breach of the Seller Indemnifying Party's representations and warranties contained in this Agreement. The duty to indemnify shall include the duty to immediately advance the cost of defense for a Loss, if and when incurred, subject to a written agreement by a Buyer Indemnified Party to reimburse the Seller Indemnifying Party if it is later determined there was no duty to Indemnify hereunder.

<center>ARTICLE VI<br>RELEASES</center>

6.1     Seller Release of Buyers. At each Interest Closing, the Interest Seller that is then conveying a Proportionate Interest shall, in addition to delivering an Assignment of Interest for such Proportionate Interest, automatically and without the need for further documentation be deemed to release the Subject Entity that is the issuer of the Proportionate Interest of and from any claims relating to distributions otherwise payable on the Proportionate Interest that is then being conveyed. At each Interest Closing in which an Interest Seller receives the entire amount of the Purchase Price for its applicable Redemption Interest prior to the Seller Parties' receipt of the Full Purchase Price, the Seller Parties shall automatically and without the need for any further documentation be deemed to have released only the Subject Entity whose Redemption Interest is then the subject of the Interest Closing of and from all Claims the Seller Parties or any of its respective Affiliates had, then has or hereafter can, shall or may have arising out of or related to the applicable Interest Seller's investment in or ownership of membership interests in the applicable Subject Entity; provided, however, that such release shall not include or be for the benefit of any other Person (including without limitation, Buyers, Daniel Motha or any of their Affiliates) and as to them all Claims are reserved to or for the benefit of the Seller Parties. Effective as of Seller Parties' receipt of the Full Purchase Price (the "Final Closing Date"), each Seller Party, shall automatically and without the need for further documentation be deemed to remise, release and forever discharge each Location Ventures Party (including Daniel Motha) of and from any and all Claims that any Seller Party or any of its respective Affiliates had, then has or thereafter can, shall or may have, from the beginning of the world through the Final Closing Date, arising out of or relating to an Interest Seller's investment in or ownership of a membership interest in Location Ventures or of a Subject Entity, including, without limitation, claims for breach of fiduciary duty, intentional torts, actions of bad faith or negligence, rights to distributions, repayment of member loans, and/or any other payments, remuneration or compensation which may be due or payable to the Interest Seller or any other Seller Party; provided, however, that nothing in this Section 6.1 shall release Buyers or any LV Entity from fully complying with (i) terms, conditions and covenants of this Agreement, and (ii) their obligations to indemnify Seller Party as provided under any Organizational Document of any Subject Entity, or as is or may be available under applicable law or any other agreement (including, without limitation, this Agreement) (such full release, the "Full Release"). Notwithstanding anything to the contrary contain in this Agreement, for so long as there shall be no default by Buyers under this Agreement (including any default in the payment of any Installment), the Seller Parties covenant not to sue Buyers, any LV Entity or their

<center>12</center>

FL-4347_Kleyner_LV_LLC_0001480

Nothing in this Section includes, without limitation, claims for breach of fiduciary duty, breach of bad faith, negligence, and intentional torts.

6.2    Location Ventures Release of Sellers.   At each Interest Closing, Buyers and each of their Affiliates (including Daniel Matha) shall automatically and without the need for further documentation be deemed to release the Seller Parties and their Affiliates, and from any Claims relating to the Proportionate Interest that is the subject of such Interest Closing.   At each Interest Closing in which an Interest Seller receives the entire amount of the Purchase Price for its applicable Redemption Interest prior to the Seller Parties' receipt of the Full Purchase Price, the Buyers and each of their Affiliates (including Daniel Matha) shall automatically and without the need for any further documentation be deemed to have released the Seller Parties and their Affiliates of and from all Claims the Buyers or any of its respective Affiliates had, then has or thereafter may, shall or may have arising out of or related to the Subject Entity whose Redemption Interest is then the subject of an Interest Closing.   Effective as of the Final Closing Date, Buyers, for and on behalf of each other Location Ventures Party and its and their respective Affiliates, and Daniel Matha, does hereby remise, release and forever discharge each Seller Party and its respective Affiliates of and from any and all Claims that Buyers or any LV Entity or any of its or their Affiliates had, now has or hereafter can, shall or may have, from the beginning of the world through the Final Closing Date, arising out of or related to any matter, including but not limited to Location Ventures or any LV Entity, or any of their business or operations, an Interest Seller's investment interest or any equity or membership interest of a Subject Entity, any required capital contributions, any other obligation arising under an, Organization Document of the Subject Entity, or any involvement by any Seller Party's or any of its Affiliates' involvement in or with Location Ventures or an LV Entity or any of its or their Affiliates; provided, however, that nothing in this Section to 2 shall release any Seller Party from fully complying with terms, conditions and covenants in this Agreement. Effective upon and after the Final Closing Date, each Location Ventures Party hereby agrees that it shall not and shall not permit its Affiliates to pursue legal action against any Seller Party or its Affiliates with respect to Claims arising out of or related to any facts, circumstances, occurrences or matters that any Claims which are or could be the subject of any of the foregoing releases.

6.3    Sufficiency of Consideration. Each Buyer and Daniel Matha, on the one hand, and each Seller Party, on the other hand, acknowledge and agree that releases provided for hereunder are sufficient consideration to support such Person's agreement to release the other Person, as provided in the respective provisions of Section 6.1 and or 6.2 above, as applicable.

## ARTICLE VII
## CONFIDENTIALITY

7.1    Confidentiality.   Each Party acknowledges that it has or may have information that the other Party deems is the Confidential Information of the other Party and that all such Confidential Information is a valuable asset of the other Party.  So long as there has been no default by Buyers under this Agreement, each Party agrees that it shall not, except in connection with the consummation or enforcement of the transactions contemplated hereunder, or as required by applicable law, without limitation in time or until such information shall have become public other than by such Party's unauthorized disclosure, disclose to others, or use, whether directly or indirectly, any Confidential Information, regarding the other Party.   Each Party acknowledges that such Confidential Information concerning the other Party is specialized, unique in nature and of great value to the other Party, and that such information gives the other Party a competitive advantage. So long as there has been no default by Buyers under this Agreement, each Party shall only use the Confidential Information at concerning the other Party in connection with the performance of each Party's obligations under this Agreement and for no other purpose.  In the event that a Party (the "Possessing Party") is legally compelled to communicate or disclose any Confidential Information of the other Party (the "Owner Party") the Possessing Party shall, to the extent permitted by applicable law, provide the Owner Party with prompt written notice of such communication or disclosure.  The Possessing Party shall furnish only that portion of the Confidential Information that it deems in good faith is legally required to disclose,

13

and shall, in the event that the Owner Party is not a party to the action pursuant to which such communication or disclosure is compelled, interpose a confidentiality defense based upon this Agreement in order to seek to have the Confidential Information accorded confidential treatment, if legally permitted to do so. In the event of a breach of this Agreement including the failure to pay any Installment, the Seller Parties shall not be bound by this confidentiality provision or any other confidentiality provision.

7.2 Exceptions. Notwithstanding the foregoing, a Seller Party shall have the unrestricted right to use any alleged Confidential Information of or relating to any Location Ventures Party, Location Ventures or any LV Entity or any Affiliate of any of them in connection with: (a) any reason whatsoever if Buyer shall default under any obligation to pay any Installment hereunder or shall otherwise be in default under any other obligation under this Agreement or any other document, instrument or agreement executed and delivered in connection with this Agreement, (b) any action or proceeding to enforce any right arising directly or indirectly under this Agreement, (c) the defense of any action or proceeding brought by any Location Ventures Party, Location Ventures or any LV Entity for any reason, or the defense of any action or proceeding brought by any Person relating to any Location Ventures Party, Location Ventures or any LV Entity or any of their respective businesses or operations, (d) for any discussions with any member of the board of managers of Location Ventures or any LV Entity in any formal or informal setting for the purpose of the Seller Party fulfilling any fiduciary duty which, in the reasonable opinion of the Seller Party's counsel, a Seller Party owes with respect to Location Ventures or the applicable LV Entity, (e) for any discussion with any current direct or indirect equity owner (or their Affiliates or other representatives) of Location Ventures or any LV Entity in any formal or informal setting for the purpose of the Seller Party fulfilling any alleged fiduciary duty which, in the reasonable opinion of the Seller Party's counsel, a Seller Party owes with respect to Location Ventures or the applicable LV Entity. If any prospective investor of any of Location Ventures or any LV Entity requests any Confidential Information from any Seller Party, the Seller Party shall generally state only that the Seller Party (or its applicable Affiliate) has determined to separate from Location Ventures or the Subject Entity for philosophical reasons.

7.3 Non-disparagement. Without limiting, and expressly subject to, the rights under Paragraph 7.2 above, each Party shall not make, publish, or communicate to any person or entity or in any public forum any comments or statements (written or oral) that denigrate or disparage, or are detrimental to the reputation or stature of any other Party or its Affiliates or any of their respective direct or indirect owners or businesses; provided, however, that Seller Parties' obligation pursuant to this Section 7.3 shall lapse and terminate if Buyers shall default under this Agreement including any failure to fail to pay any Installment due under this Agreement.

ARTICLE VIII
GUARANTY AND PLEDGE OF INTERESTS

8.1 Guaranty of Obligations. Contemporaneously with the execution and delivery of this Agreement, Location Ventures shall cause to be delivered by Patriots United, LLC ("Patriot") to each Seller Party, full, unconditional and unlimited Guaranties of Buyers' obligations arising under this Agreement (a "Guaranty"), including, without limitation, for the payment of each Installment and the Full Purchase Price for all Redeemed Interests as well as any other payment or performance obligations of Buyers which may arise under or in connection with this Agreement, the form of which is attached hereto as **Exhibit C.**

8.2 Pledge. Intentionally deleted.

ARTICLE IX
BUYERS' DEFAULT; ACCELERATION

FL-4347_Kleyner_LV_LLC_0001480

9.1     Events of Default.   The occurrence of any one or more of the following events shall constitute an event of default under this Agreement, without the need to provide notice or any opportunity to cure:

(a)     Non-Payments or Untimely Payments.   Buyers fails to timely pay any amount due hereunder on the date such payment is due.

(b)     Representations and Warranties.   Any representation or warranty made by Buyers under this Agreement, is, on the date so made, false, misleading, incomplete or untrue in any material respect.

(c)     Covenants.   To the extent not otherwise covered in this Section 9.1, any covenant, term, agreement or condition contained in this Agreement is breached by Buyers or shall not be observed by an LV Entity.

(d)     Bankruptcy or Insolvency.   Any LV Entity (i) is dissolved, (ii) fails or is generally unable to pay its debts as they become due, or admits in writing its inability to pay its debts generally as they become due, (iii) commences a voluntary case in bankruptcy or any other action or proceeding for any other relief under any law affecting creditors' rights that is similar to a bankruptcy law, (iv) consents by answer or otherwise to the commencement against it of an involuntary case in bankruptcy or any other such action or proceeding, or an involuntary case in bankruptcy or any other such action or proceeding in respect of such Person or any of its properties is commenced and is not dismissed on or before the sixtieth (60) day after the commencement thereof, (v) makes an assignment for the benefit of creditors, (vi) files a petition or applies to any tribunal for the appointment of a custodian, receiver or any trustee for all or a substantial part of its assets, (vii) by any act or omission indicates its consent, approval of, or acquiescence in the appointment of a receiver, custodian or trustee for all or a substantial part of its property, (viii) is adjudicated a bankrupt, (ix) becomes insolvent however otherwise evidenced, or (x) ceases to continue as a going concern.

(e)     Fraudulent Conveyances.   Buyers or any other LV Entity conceals, removes or permits to be concealed or removed, any part of its assets, with intent to hinder, delay or defraud its creditors or any of them, or makes or permits a transfer of any of its assets which transfer is fraudulent under any bankruptcy, fraudulent conveyance or similar law.

(f)     Judgments.   A final and non-appealable judgment in excess of $100,000 is rendered against any LV Entity.

(g)     Cross-Default.   Any "default," "event of default," "amortization event," "termination event" or any other similar breach in connection with any material agreement of any LV Entity, which such default, event of default, amortization event or termination event is reasonably likely to have a material adverse effect.

(h)     Intentionally omitted.

(i)     Sale or Disposal.   Any sale of all or substantially all of any LV Entity's assets, including any bulk sale, except as otherwise expressly permitted under this Agreement.

9.2     Acceleration.   Upon any default by Buyers of any covenant or terms in this Agreement or any document, instrument or agreement delivered in connection with this Agreement which is binding upon or relating to Buyers or any LV Entity, including but not limited to Buyers' failure to pay any portion of the Purchase Price or Installments on a timely basis, time being of the essence, Buyers agree that all sums remaining due under this Agreement, including the unpaid part of the Full Purchase Price that remains outstanding, shall immediately and automatically accelerate (without the necessity of notice or any opportunity to cure) and become immediately due and owing in full, and each Seller Party shall be entitled to

15

FL-4347_Kleyner_LV_LLC_0001480

each and every remedy provided in this Agreement, and all remedies available under applicable law and in equity, including but not limited to rights of specific performance. Buyers acknowledge and agree that the foregoing is fair and reasonable in light of the forbearance exercised by Seller Parties to effectuate the Proposed Settlement.

9.3     Remedies Under Agreement Not Exclusive. Notwithstanding anything to the contrary, and except as to any release previously given pursuant to Sections 6.1 and 6.2, in the event of a breach or default under this Agreement, the non-breaching or non-defaulting Party may pursue any and all Claims and remedies available at law or in equity, in addition to any rights or Claims it may assert arising out of or in connection with this Agreement. The Parties expressly agree that in the event of a default, the non-defaulting Parties' Claims are not limited to Claims that arise out of this Agreement.

ARTICLE X
GENERAL CONDITIONS

10.1     Amendment and Modification. This Agreement may be amended, modified, or supplemented only by mutual written consent of all of the Parties hereto.

10.2     Waiver of Compliance. To be effective, any waiver by a Party of its right to require performance of any provision hereof must be in writing, specifically refer to the right being waived, and signed by the Party. The failure to immediately exercise a right that exists or to assert a default against a breaching Party shall not be deemed a waiver to declare such condition a default or a breach at any time. No waiver in any one or more instances shall (except as stated therein) be deemed to be a further or continuing waiver of any such condition or breach in other instances or a waiver of any condition or breach of any other term, covenant, representation, or warranty.

10.3     Expenses. All costs and expenses incurred in connection with the negotiation and consummation of this Agreement and the transactions contemplated hereby shall be paid by the Party incurring such expenses.

10.4     Construction. This Agreement shall be construed without regard to any presumption or other rule requiring construction against the Party causing this Agreement to be drafted. If any word or phrase in this Agreement shall have been stricken out or otherwise eliminated, whether or not any other words or phrases have been added, this Agreement shall be construed as if the words or phrases so stricken out or otherwise eliminated were never included in this Agreement and no implication or inference shall be drawn from the fact that said words or phrases were so stricken out or otherwise eliminated. All terms and words used in this Agreement, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require. If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, and the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

10.5     Notices. To the extent notices, demands, instructions and other communications are required or permitted to be given to or made upon a Party, they shall be in writing, personally delivered or overnight courier. All such notices shall also be sent via email. All such notices shall be deemed to be given on the day such notice is received if sent by personal delivery or one (1) business day after such notice is sent by overnight courier. Unless otherwise specified in a notice sent or delivered in accordance with the foregoing provisions of this paragraph, notices, demands, instructions and other communications in writing shall be given to or made upon Buyers or a Seller Party at their respective addresses indicated for such party below:

16

FL-4347_Kleyner_LV LLC_0001495

FL-4347_Kleyner_LV_LLC_0001480

If to a Seller Party



With Copy to:          Kluger Kaplan Silverman Katzen & Levine, P.L.
                       201 South Biscayne Boulevard, 27th Floor
                       Miami, Florida 33131
                       Attention: Alan Kluger
                       Email: akluger@klugerkaplan.com
                       Email: plieberman@klugerkaplan.com

If to Buyers:          Location Ventures, LLC
                       299 Alhambra Circle, Suite 510
                       Coral Gables, Florida 33134
                       Attention: Rishi Kapoor
                       Email: rkapoor@location.ventures

With Copy to:          Goodkind & Florio, P.A.
                       4121 La Playa Boulevard
                       Coconut Grove, Florida 33133
                       Attention: Brian Goodkind
                       Email: brian@goodkindandflorio.com
                       Email: kenneth@goodkindandflorio.com

or at such other address as the Parties may have furnished to each other in writing. For the avoidance of doubt, Notice of default shall not be required by a Seller Party to Buyers for the non-payment of any Installment or the total Purchase Price for any or all of the Redemption Interests, or as a condition for the exercise of any remedy that may be available to Seller.

10.6    Governing Law; Waiver of Jury Trial. **THIS AGREEMENT AND THE LEGAL RELATIONS BETWEEN THE PARTIES HERETO SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA WITHOUT GIVING EFFECT TO ANY CONFLICT OF LAW PROVISION. THE PARTIES FURTHER HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED HEREBY, THE FORMATION OF THIS AGREEMENT, AND THE RELATIONSHIP BETWEEN THE PARTIES. EACH PARTY DOES HEREBY IRREVOCABLY SUBMIT TO THE EXCLUSIVE JURISDICTION AND VENUE OF THE APPROPRIATE STATE AND FEDERAL COURTS SITTING IN MIAMI-DADE COUNTY, FLORIDA.**

10.7    Counterparts. This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Delivery of executed signature pages hereof by facsimile transmission shall constitute effective and binding execution and delivery of this Agreement.

10.8    Headings. The headings of the Sections and Articles of this Agreement are inserted for convenience only and shall not constitute a part hereof.

17

FL-4347_Kleyner_LV LLC_0001496

FL-4347_Kleyner_LV_LLC_0001480

10.9    Entire Agreement.  This Agreement, including the agreements referred to herein, and other documents referred to herein which form a part hereof, contains the entire understanding of the Parties hereto in respect of the subject matter contained herein.  There are no restrictions, promises, representations, warranties, covenants or undertakings other than those expressly set forth or referred to herein.  This Agreement supersedes all prior agreements and understandings between the Parties with respect to such subject matter, except as expressly provided herein.

10.10    No Third-Party Beneficiary.  This Agreement is for the benefit of, and may be enforced only by, the Parties and their respective successors and permitted assigns, and is not for the benefit of, and may not be enforced by, any third party.  Buyers may not assign all or any of their rights or obligations under this Agreement without the prior written consent of the Seller Parties, which consent may be rejected at the sole and absolute discretion of the Seller Parties, with or for no reason; provided however, that even if such assignment is permitted, Buyers shall remain obligated and liable for all obligations of the Buyers under this Agreement.

10.11    Further Assurances.  The Parties shall after the Closing Date, and without further consideration, execute, acknowledge and deliver to the other Parties hereto such documents and instruments, and take such other actions, as shall reasonably requested or as may be necessary to consummate more effectively the transactions herein contemplated in accordance with this Agreement.

10.12    Attorneys' Fees.  If any Party to this Agreement shall bring any action or proceeding for any relief against the other, declaratory or otherwise, at law or in equity, arising out of this Agreement, in addition to all other relief that may be available, the prevailing Party shall be entitled to recover from the non prevailing Party all reasonable attorneys' fees and costs incurred in enforcing its rights, bringing or defending such action or proceeding, and/or enforcing any judgment granted therein, at the trial and appellate level, all of which shall be deemed to have accrued upon the commencement of such action or proceeding and shall be paid whether or not such action or proceeding is prosecuted to final judgment.  Any judgment or order entered in such action or proceeding shall contain a specific provision providing for the recovery of attorneys' fees and costs, separate from the judgment, incurred in enforcing such judgment.  The prevailing Party shall be determined by the trier of fact based upon an assessment of which Party's could fairly be said to have prevailed in obtaining the primary relief over the other Party.  For the purposes of this section, attorneys' fees shall include, without limitation, fees and costs incurred in the following: (a) pre-litigation; (b) at trial and appellate level; (c) post judgment proceedings; (d) contempt proceedings; (e) garnishment, levy, and debtor and third-party examinations; (f) discovery; and (g) bankruptcy litigation.  This Section is intended to be expressly severable from the other provisions of this Agreement, is intended to survive any judgment and is not to be deemed merged into the judgment.

10.13    Dates.  Should the date for performance of any obligation hereunder fall on a Saturday, Sunday or national holiday, the date for performance shall be extended to the next day which is not a Saturday, Sunday, or national holiday.

10.14    Definitions.  The following terms shall have the meanings ascribed to them below:

(a)      "Affiliate" (and "Affiliates") means any Person(s) that, as of the Closing Date, owns or controls, is owned or controlled by, or is under common ownership or control with the Person in question and any family member of such Person.  "Control" means the possession, directly or indirectly, of the power to cause the direction of the management and policies of a Person, through the ownership of a majority of the voting stock, securities or other equity interests of an entity or by contract.

(b)      "Agreement" shall have the meaning set forth in the introductory paragraph.

18

FL-4347_Kleyner_LV_LLC_0001480

(c)     "Audit Firm" has the meaning set forth in Section 4.2.

(d)     "Bayshore" has the meaning set forth in the first Whereas clause

(e)     "Bayshore Interest" has the meaning set forth in the first Whereas clause.

(f)     "Bayshore Purchase Price" has the meaning set forth in Section 1.2(b)

(g)     "Buyer" or "Buyers" has the meaning set forth in the introductory paragraph.

(h)     "Buyer Indemnifying Party" has the meaning set forth in Section 5.1

(i)     "Buyer Indemnifying Party" has the meaning set forth in Section 5.2.

(j)     "Claims" means any and all manner of action or actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, liabilities, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, losses, judgments, executions, claims and demands whatsoever, in law or in equity, absolute or contingent, known and unknown, matured and not matured.

(k)     "Confidential Information" shall mean information about a party and others with which such party has business relationships that is not disclosed publicly by such party and that was or will be learned by the other party in the course of this Agreement, including (without limitation) all information and materials relating to (i) the financial condition, operations, business and interests of such party, (ii) the systems, technology, data, formulae, know-how, records, products, services, cost information, pricing policies, computer and Internet software, marketing and sales techniques and/or programs, methods, methodologies, manuals, and other trade secrets from time to time acquired, sold, developed, maintained and/or used by such party, (iii) the nature, terms and history of such party's relationships with its clients, customers, vendors, consultants, independent contractors, attorneys, accountants and employees, (iv) such party's employees, officers and/or directors relating to their relationships with clients and customers, and (v) all papers, resumes, and records (including computer records) of the documents containing such information. "Confidential Information" does not include information which (i) is, at the time of disclosure to the receiving party hereunder generally available to the public, or, after such disclosure, becomes so available other than as a result of a breach hereunder by the receiving party or its directors, officers, advisors, employees or representatives or (ii) becomes available to the receiving party from a source other than the disclosing party, its affiliates, or its advisors, provided that such source is not known by the receiving party to be bound with respect to such information by a confidentiality agreement with or other obligation of secrecy to the disclosing party or its advisors or affiliates or (iii) is already known to the receiving party or its agents or representatives, or is in the receiving party's or its agents' or representatives' possession, at the time of disclosure to the receiving party by the disclosing party, or (iv) is developed by the receiving party or its agents or representatives without reference to, and independent of, the Confidential Information actually disclosed to the receiving party by the disclosing party.

(l)     "Current Project" shall mean the development projects presently owned, operated, managed and/or under development by or through a Subject Entity, Urbin and/or 515 Valencia Partners, LLC.

(m)     ██████████ has the meaning set forth in the introductory paragraph.

(n)     ██████████ has the meaning set forth in the introductory paragraph.

(o)     ██████████ has the meaning set forth in the introductory paragraph

19

FL-4347_Kleyner_LV_LLC_0001498

p) "Effective Date" has the meaning set forth in the introductory paragraph.

q) "Existing Project Entity" shall mean any direct or indirect Affiliate of Location Ventures in which a Current Project is owned, managed and/or operated, including, but not limited to, each Subject Entity.

r) "Final Closing Date" has the meaning set forth in Section 6.1.

s) "Full Purchase Price" has the meaning set forth in Section 1.2.

t) "GAAP" means generally accepted accounting principles.

u) "Guaranty" has the meaning set forth in Section 8.1.

v) "Installments" has the meaning set forth in Section 1.3.

w) "Installment Amount" shall mean the amount of any Installment reflected in the tables in Section 1.3(a), (b) or (c), as applicable, under the column titled "Interest Amount".

x) "Interest Closing" has the meaning set forth in Section 1.5.

y) "Interest Closing Date" has the meaning set forth in Section 1.5.

z) "Interest Seller" has the meaning set forth in the second Whereas clause.

aa) "Knowledge" shall mean the actual knowledge of the applicable Person or the knowledge that such Person would have obtained if such Person were a reasonably diligent agent of the Person and used diligent efforts to investigate the subject matter of the relevant inquiry.

bb) "Location Ventures Party" or "Location Ventures Parties" shall mean Buyer, each LV Entity and each of its or their Affiliates.

cc) "Losses" or "Losses" has the meaning set forth in Section 5.1.

dd) "LV Entity" shall mean Location Ventures, each Existing Project Entity and each Affiliate of an Existing Project Entity, including, but not limited to, direct and/or indirect parent and subsidiary entities thereof that are Affiliates of Location Ventures.

ee) "LV Interest" has the meaning set forth in the first Whereas clause.

ff) "LV Purchase Price" has the meaning set forth in Section 1.2(a).

gg) "Organizational Documents" shall mean an entity's organizational documents, including, without limitation, articles of incorporation or certificate of organization or the like, shareholders agreement, partnership agreement, operating agreement, or any other document, instrument or agreement concerning the business and affairs of the entity that would be binding upon the members of such entity generally.

hh) "Patriot" has the meaning set forth in Section 8.1.

ii) "Party" or "Parties" has the meaning set forth in the introductory paragraph.

FL-4347_Kleyner_LV_LLC_0001480

qq.        "Payment Due Date" shall mean the payment due date reflected in the tables in section 1.3(c), below, as applicable, under the column titled "Payment Due Date."

ll.        "Person" means an individual, firm, corporation, limited liability company or partnership, limited partnership, joint venture, trust, unincorporated association, other entity, government or governmental department or agency.

ll.        "Parties" has the meaning set forth in the first Whereas clause

mm.        "Parties' Interest" has the meaning set forth in the first Whereas clause

nn.        "Parties' Purchase Price" has the meaning set forth in Section 1.2(c)

oo.        "Proposed Settlement" shall have the meaning set forth in Section 1.3(e)

pp.        "Proportionate Interest" shall mean the interest reflected in the tables in Section 1.3(c), below, as applicable, under the column titled "Proportionate Interest"

qq.        "Purchase Price" has the meaning set forth in Section 1.2

rr.        "Redemption Interest" has the meaning set forth in the first Whereas clause

s.        "Seller Party" or "Seller Parties" has the meaning set forth in the introductory paragraph

tt.        "Seller Indemnified Party" has the meaning set forth in Section 5.1

uu.        "Seller Indemnifying Party" has the meaning set forth in Section 5.2

vv.        "Subject Entity" shall mean, as applicable, either of Location Ventures Pledge and/or Brickage

ww.        "Tehm" has the meaning set forth in Section 4.22

[signature page follows]

21

FL-4347_Kleyner_LV_LLC_0001480

IN WITNESS WHEREOF, for good and valuable consideration, the receipt of which is hereby acknowledged, each Party hereto, and Urbin LLC and Daniel Motha, has caused this Interest Purchase Agreement to be executed by its duly authorized representative, as of the day and year first written above

THE DARE TRUST

By: _____

████████ under an agreement of Trust dated April 22, 2020

1505 PONCE, LLC

By: _____
Alex Kleyner
Manager

FTL BAYSHORE DRIVE, LLC

By: _____
Alex Kleyner
Manager

_____
Alex Kleyner

_____

LOCATION VENTURES, LLC

By: _____
Rishi Kapoor
Manager

_____
Rishi Kapoor

For Purposes of Section 4.22

URBIN, LLC

By: _____
Rishi Kapoor
Manager

For Purposes of Sections 4.23 and 6.2

_____
Daniel Motha

22

FL-4347_Kleyner_LV LLC_0001501

FL-4347_Kleyner_LV_LLC_0001480

IN WITNESS WHEREOF, for good and valuable consideration, the receipt of which is hereby acknowledged, each Party hereto, and Urbin LLC and Daniel Motha, has caused this Interest Purchase Agreement to be executed by its duly authorized representative, as of the day and year first written above

**THE DARE TRUST**

By: _____

▮▮▮▮▮▮ under an agreement of Trust dated April 22, 2020

**1505 PONCE, LLC**

By _____
Alex Kleyner
Manager

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

By: _____
Alex Kleyner
Manager

_____
**Alex Kleyner**

▮▮▮▮▮▮▮

**LOCATION VENTURES, LLC**

By _____
Rishi Kapoor
Manager

_____
**Rishi Kapoor**

For Purposes of Section 4.22

**URBIN, LLC**

By _____
Rishi Kapoor
Manager

For Purposes of Sections 4.23 and 6.2

_____
**Daniel Motha**

22

FL-4347_Kleyner_LV LLC_0001502

FL-4347_Kleyner_LV_LLC_0001480

IN WITNESS WHEREOF, for good and valuable consideration, the receipt of which is hereby acknowledged, each Party hereto, and Urbin LLC and Daniel Motha, has caused this Interest Purchase Agreement to be executed by its duly authorized representative, as of the day and year first written above.

**THE DARE TRUST**

By: _____

████████████ under an agreement of Trust dated
April 22, 2020

**1505 PONCE, LLC**

By: _____
    Alex Kleyner
    Manager

████████████████████████

By: _____
    Alex Kleyner
    Manager

_____
**Alex Kleyner**

█████████

**LOCATION VENTURES, LLC**

By: _____
    Rishi Kapoor
    Manager

_____
**Rishi Kapoor**

For Purposes of Section 4.22

**URBIN, LLC**

By: _____
    Rishi Kapoor
    Manager

For Purposes of Sections 4.23 and 6.2

_____
**Daniel Motha**

22

FL-4347_Kleyner_LV LLC_0001503

FL-4347_Kleyner_LV_LLC_0001480

**Exhibit A**

**SELLER'S WIRE INSTRUCTIONS**



Account Number

Routing Number

**1505 Ponce Wire Instructions - JP Mogan Chase Bank, NA**

Account Number

Routing Number

Account Number

Routing Number

23

FL-4347_Kleyner_LV LLC_0001504

FL-4347_Kleyner_LV_LLC_0001480

Exhibit B

Form of Assignment of Interest

(see attached)

24

FL-4347_Kleyner_LV LLC_0001505

FL-4347_Kleyner_LV_LLC_0001480

## ASSIGNMENT OF MEMBERSHIP INTEREST

KNOW THAT [INSERT INTEREST SELLER NAME] ("Assignor"), in consideration of Ten Dollars and other good and valuable consideration paid by [INSERT BUYER] ("Assignee"), the receipt and sufficiency of which are hereby acknowledged, hereby assigns and transfers to Assignee free and clear of all liens, claims or encumbrances (other than under the limited liability company operating agreement of [INSERT NAME OF SUBJECT ENTITY] (the "Subject Entity")) all of Assignor's right, title and interest in and to a membership interest in Subject Entity consisting of [___] of the Subject Entity's membership interests (to be determined as of December ___, 2022). All capitalized terms not otherwise defined herein shall have the meanings set forth in the Global Interest Purchase Agreement dated December ___, 2022 ("Purchase Agreement"). Other than the representations and warranties made pursuant to the Purchase Agreement, the Assignor makes no other representations or warranties.

TO HAVE AND TO HOLD the same unto the Assignee, its successors and assigns forever.

IN WITNESS WHEREOF, Assignor and Assignee have duly executed this Assignment as of the date set forth ___, 2023.

ASSIGNOR

[INSERT INTEREST SELLER NAME]

By: _____
    Name:
    Title:

25

FL-4347_Kleyner_LV_LLC_0001480

Exhibit C

Form of Guaranty

(see attached)

26

FL-4347_Kleyner_LV LLC_0001507

FL-4347_Kleyner_LV_LLC_0001480

## GUARANTY

This Guaranty (this "Guaranty") is made as of December __, 2022 by **Patriots United, LLC**, a Florida limited liability company ("Guarantor"), in favor of **1505 Ponce, LLC**, a Delaware limited liability company, ███████████████ a Delaware limited liability company, **Alex Kleyner**, and ██████ (each individually a "Beneficiary" and collectively the "Beneficiaries"). Capitalized terms used herein without definition shall have the respective meanings ascribed to such terms in that certain Global Interest Purchase Agreement by and among Location Ventures, LLC ("Location Ventures"), Rishi Kapoor ("Rishi" and together with Location Ventures, "Buyers" and each is a "Buyer") and the Beneficiaries, dated of even date herewith (the "Purchase Agreement")

### RECITALS:

As an express condition to Beneficiaries entering into the Purchase Agreement and agreeing to perform their respective obligations thereunder, Beneficiaries required that the Guarantor enter into this Guaranty to guaranty payment and performance of each Buyer's obligations under the Purchase Agreement and Guarantor has agreed to the same.

Guarantor is an owner of a membership interest in Location Ventures and Rishi is an owner of a membership interest in Guarantor, accordingly, the Guarantor acknowledges and agrees that it gains substantial benefits by Buyers and Beneficiaries entering into and performing their respective obligations under the Purchase Agreement

### AGREEMENT:

NOW, THEREFORE, in consideration of the foregoing recitals, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor hereby agrees as follows:

1.     Guarantor unconditionally and irrevocably guarantees to the Beneficiaries, and their respective successors and assigns, the due regular and punctual payment of each of Buyers', Urbin, LLC's and Daniel Motha's (each is a "Buyer Party" and they are collectively, the "Buyer Parties") obligations under the Purchase Agreement, whether such obligations represent payment of any Installment, Purchase Price or the Full Purchase Price, interest, any indemnities, damages, fees or any other type of sum of any kind whatsoever that a Buyer Party may now or at any time hereafter owe to the Beneficiary thereunder, and does hereby further guarantee to the Beneficiaries, and their respective successors and assigns, the due, regular and punctual performance of all other duties, covenants, agreements and obligations of every kind or character whatsoever that a Buyer Party may now or at any time hereafter owe to any Beneficiary pursuant to the Purchase Agreement (all such payment and performance obligations being collectively referred to as "Obligations")

2.     This Guaranty is a guaranty of prompt payment and performance (and not merely a guaranty of collection). Nothing herein shall require any Beneficiary to first seek or exhaust any remedy against any Buyer Party, its successors or assigns, or any other person obligated with respect to the Obligations, or to first foreclose, exhaust or otherwise proceed against any collateral, security or other guaranty, if any, which may be given at any time in connection with the Obligations  It is agreed that a Beneficiary may upon any breach or default by a Buyer Party under the Purchase Agreement make demand upon the Guarantor and receive payment and performance of the Obligations, with or without notice or demand for payment or performance by a Buyer Party, its successors or assigns

27

or any other person, and may be brought and maintained against the Guarantor at the election of any Beneficiary, without joinder of the Buyer Parties or any other person as parties thereto.

3. The Guarantor agrees that its obligations under this Guaranty shall be primary, absolute, continuing and unconditional, irrespective of and unaffected by any of the following actions or circumstances (regardless of any notice to or consent of the Guarantor): (a) the genuineness, validity, regularity and enforceability of any provision of the Purchase Agreement or any other agreement, instrument, certificate, notice or other document; (b) any extension, renewal, amendment, change, waiver or other modification of the Purchase Agreement or any other agreement, instrument, certificate, notice or other document; (c) the absence of, or delay in, any action to enforce the Purchase Agreement, this Guaranty or any other agreement, instrument, certificate, notice or other document; (d) the release of, extension of time for payment or performance by, or any other indulgence granted to a Buyer Party or any other person with respect to the Obligations by operation of law, in equity or otherwise; (e) a Buyer Party's voluntary or involuntary bankruptcy, insolvency, assignment for the benefit of creditors, reorganization or similar proceeding affecting the Buyer Party or any of its assets (collectively, "Bankruptcy"); or (f) any other action or circumstance which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor.

4. This Guaranty shall continue and remain undischarged until all of the Obligations are indefeasibly paid and performed in full. The Guarantor agrees that this Guaranty shall remain in full force and effect or be reinstated (as the case may be) if at any time payment or performance of any of the Obligations (or any part thereof) is rescinded, reduced or must otherwise be restored or returned by any Beneficiary, all as though such payment or performance had not been made or performed. If, by reason of any bankruptcy, insolvency or similar laws affecting the rights of creditors, a Beneficiary shall be prohibited from exercising any of its rights or remedies against a Buyer Party or any other person or against any property, then, as between the Beneficiary and the Guarantor, such prohibition shall be of no force or effect, and the Beneficiary shall have the right to make demand upon, and receive payment from the Guarantor of all amounts and other sums that would be due to the Beneficiary upon a breach or default with respect to the Obligations.

5. The Guarantor shall be deemed to be in default hereunder ("Default") if:

(a) it shall fail to perform or observe any covenant, condition or agreement to be performed or observed by it hereunder; or

(b) there is any anticipatory repudiation or breach, in writing, of its obligations pursuant to this Guaranty.

6. Upon any Default hereunder, a Beneficiary may, at its option, declare this Guaranty to be in default by written notice to the Guarantor, without election of remedies and without other opportunity to cure, and at any time thereafter, may do any one or more of the following, all of which are hereby authorized by the Guarantor:

(a) sue for and recover all damages then or thereafter incurred by the Beneficiary as a result of such Default; and/or

FL-4347_Kleyner_LV_LLC_0001480

b. seek specific performance of the obligations of the Guarantor hereunder in this Buyer Party under the Purchase Agreement.

No right or remedy referred to herein is intended to be exclusive but each shall be cumulative, and shall be in addition to any other remedy referred to above or otherwise available at law or in equity, and may be exercised concurrently or separately from time to time.

7.    All notices, including but not limited to notice of acceptance of this Guaranty, notice of any breach or default by any Buyer Party or any other person, and notice of an extension or amendment of Obligations of the Purchase Agreement is hereby waived. Presentment, protest, demand and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are hereby waived. Guarantor waives all defenses to enforcement or validity of this Guaranty, at law or in equity, based upon or arising out of a failure to receive notice or demands of any type.

8.    The Guarantor hereby represents and warrants all of which representations and warranties shall survive until all Obligations are indefeasibly satisfied in full, that:

a.    The Guarantor has full legal capacity to execute and deliver this Guaranty and to perform the obligations of the Guarantor under this Guaranty.

b.    This Guaranty constitutes the legal, valid and binding obligation of the Guarantor enforceable in accordance with its terms.

c.    The execution, delivery and performance of this Guaranty does not and will not violate any requirement of law applicable to the Guarantor or any material contract or contractual instrument to which the Guarantor is a party or to which the Guarantor or any property of the Guarantor is bound or result in the creation or imposition of any mortgage, lien or other encumbrance on any of the property or assets of the Guarantor pursuant to the provisions of any of the foregoing.

d.    No consent of any other person or entity, including, without limitation, any creditor of the Guarantor, and no consent, license, permit, approval or authorization of, exemption by, notice or report to, or registration, filing or declaration with, any governmental authority is required in connection with the execution, delivery, performance, validity or enforceability of this Guaranty.

e.    No litigation, arbitration, investigation or administrative proceeding of or before any court, arbitrator or governmental authority, bureau or agency is currently pending or, to the knowledge of the Guarantor, threatened against Guarantor.

f.    Guarantor is a substantial, sophisticated investor having such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of the transaction contemplated herein without the input or advice, and without reliance on any matters, from any Beneficiary. Guarantor has not relied upon any oral or written statements or representations made by a Beneficiary or any of its or their respective representatives or agents in deciding to enter into this Guaranty. Without in any way limiting the generality of the foregoing, a

29

FL-4347_Kleyner_LV_LLC_0001510

FL-4347_Kleyner_LV_LLC_0001480

the Beneficiary from making any representation as to what induces the Guarantor, who never had the Guarantor's own difficulties to the enforcement of this Guaranty, and claims based loss or injury from all kinds, or makes any alleged statements, representations, or transactions or omissions made or by any Beneficiary and warrants not to assert claims, or devices based upon alleged negligent misrepresentations or relied on the inducement to enter this Guaranty. **Guarantor has received the advice of counsel, and Guarantor's counsel has reviewed, negotiated, participated in drafting and approved the terms of this Guaranty prior to Guarantor's execution of the Guaranty.**

9. TO THE FULLEST EXTENT NOT PROHIBITED BY APPLICABLE LAW, THE GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHT, POWER, REMEDY OR DEFENSE ARISING OUT OF OR RELATED TO THE GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ANY RELATED DOCUMENTS, ANY DEALINGS BETWEEN OR AMONG THE GUARANTOR, THE BUYER PARTIES AND THE BENEFICIARIES, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN OR AMONG SUCH PARTIES WITH RESPECT THERETO, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A JUDGE AND NOT BEFORE A JURY. THE GUARANTOR FURTHER WAIVES ANY RIGHT TO SEEK TO CONSOLIDATE ANY SUCH LITIGATION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER LITIGATION IN WHICH A JURY TRIAL CANNOT OR HAS NOT BEEN WAIVED. FURTHER, THE GUARANTOR HEREBY CERTIFIES THAT NONE OF ITS REPRESENTATIVES, AGENTS OR ATTORNEYS HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT IT WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. THE GUARANTOR ACKNOWLEDGES THAT THE PROVISIONS OF THIS SECTION ARE A MATERIAL INDUCEMENT TO THE ACCEPTANCE BY BENEFICIARIES OF THIS GUARANTY.

THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND SHALL APPLY TO ANY AND ALL SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS AND/OR MODIFICATIONS TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, AND ANY RELATED AGREEMENTS, INSTRUMENTS AND DOCUMENTS. In the event of litigation, this Guaranty may be filed as a written consent to a trial by the court.

10. As used in this Guaranty, the word "person" shall include any individual, corporation, limited liability company, partnership, joint venture, association, joint stock company, trust, unincorporated organization or any government or any political subdivision thereof.

11. This Guaranty is intended by the parties as a final expression of the guaranty of the Guarantor and is also intended as a complete and exclusive statement of the terms thereof. No course of dealing, course of performance or trade usage, nor any evidence of any kind, shall be used to supplement or modify any of the terms hereof. There are no conditions to the full effectiveness of this Guaranty. This Guaranty and each of its provisions may only be waived, modified, varied, released, terminated or surrendered, in whole or in part, by a duly authorized written instrument signed by the Guarantor and each Beneficiary. No failure by any Beneficiary to exercise its rights hereunder shall give rise to any estoppel

30

FL-4347_Kleyner_LV_LLC_0001480

against it or excuse the Guarantor from performing hereunder.  A Beneficiary's waiver, if any is granted, of its right to demand performance hereunder shall not be a waiver of any subsequent or other right to demand performance hereunder.

12.     This Contract shall bind the Guarantor's successors and assigns and the benefits thereof shall extend to and include the Beneficiaries' respective successors and assigns.

13.     THIS GUARANTY AND THE RIGHTS AND OBLIGATIONS SET FORTH HEREIN SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF FLORIDA (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE.  Any action or proceeding arising out of or relating to this Guaranty shall be brought in the appropriate court in Miami-Dade County, Florida.  If any provision of this Guaranty is in conflict with any applicable statute, rule or law, then such provision shall be deemed null and void to the extent that it may conflict therewith, but without invalidating any other provisions hereof.

14.     To the extent a Beneficiary wishes to provide notice, such notice shall be deemed adequately given if sent by certified courier or by hand delivery to the Guarantor to its address stated below:

                    Patriots United, LLC
                    299 Alhambra Circle, Suite 510
                    Coral Gables, Florida 33134
                    Attention: Rishi Kapoor
                    Email: rkapoor@locationventures

        With Copy to:       Goodkind & Florio, P.A.
                    4121 La Playa Boulevard
                    Coconut Grove, Florida 33133
                    Attention: Brian Goodkind
                    Email: bgoodkind@goodkindflorio.com
                    Email: assistant@goodkindflorio.com

Any provision of this Guaranty which is prohibited or unenforceable in any jurisdiction, shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability, without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

15.     Time is of the essence with respect to all matters contained herein.

16.     This Guaranty shall be construed without regard to any presumption or other rule requiring construction against the party causing this Guaranty to be drafted.  If any word or phrase in this Guaranty shall have been stricken out or otherwise eliminated, whether or not any other words or phrases have been added, this Guaranty shall be construed as if the words or phrases so stricken out or otherwise eliminated were never included in this Guaranty and no implication or inference shall be drawn from the fact that said words or phrases were so stricken out or otherwise eliminated.  All terms and words used in this Guaranty, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require.  It

31

FL-4347_Kleyner_LV_LLC_0001480

any term or provision of this Contract or the application thereof to any person or circumstance, shall to any extent, be invalid or unenforceable, the remainder of this Contract, and the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Contract shall be valid and enforced to the fullest extent permitted by law.

[Signature Page Follows]

32

FL-4347_Kleyner_LV LLC_0001513

FL-4347_Kleyner_LV_LLC_0001480

IN WITNESS WHEREOF, and for good and valuable consideration the receipt of which is hereby acknowledged, the Guarantor has caused this Guaranty to be executed by its duly authorized representative as of the date first above written.

ATTEST:                                    PATRIOTS UNITED, LLC
                                           a Florida limited liability company

By: _____              By: _____
Name:                                      Name:  Richa Kapoor
Title:                                     Title:  Manager

33

FL-4347_Kleyner_LV LLC_0001514

FL-4347_Kleyner_LV_LLC_0001480

## GUARANTY

This Guaranty (this "Guaranty") is made as of December 31, 2022 by **Patriots United, LLC**, a Florida limited liability company ("Guarantor"), in favor of **1505 Ponce, LLC**, a Delaware limited liability company, ████████████████, a Delaware limited liability company, **Alex Kleyner**, and ████████ (each individually a "Beneficiary" and collectively the "Beneficiaries." Capitalized terms used herein without definition shall have the respective meanings ascribed to such terms in that certain Global Interest Purchase Agreement by and among Location Ventures, LLC ("Location Ventures"), Rishi Kapoor ("Rishi" and together with Location Ventures, "Buyers" and each is a "Buyer") and the Beneficiaries, dated of even date herewith (the "Purchase Agreement").

### RECITALS:

As an express condition to Beneficiaries entering into the Purchase Agreement and agreeing to perform their respective obligations thereunder, Beneficiaries required that the Guarantor enter into this Guaranty to guaranty payment and performance of each Buyer's obligations under the Purchase Agreement and Guarantor has agreed to the same.

Guarantor is an owner of a membership interest in Location Ventures and Rishi is an owner of a membership interest in Guarantor, accordingly, the Guarantor acknowledges and agrees that it gains substantial benefits by Buyers and Beneficiaries entering into and performing their respective obligations under the Purchase Agreement.

### AGREEMENT:

NOW, THEREFORE, in consideration of the foregoing recitals, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor hereby agrees as follows:

1.      Guarantor unconditionally and irrevocably guarantees to the Beneficiaries, and their respective successors and assigns, the due regular and punctual payment of each of Buyers', Urbin, LLC's and Daniel Morha's (each is a "Buyer Party" and they are collectively, the "Buyer Parties") obligations under the Purchase Agreement, whether such obligations represent payment of any Installment, Purchase Price or the Full Purchase Price, interest, any indemnities, damages, fees or any other type of sum of any kind whatsoever that a Buyer Party may now or at any time hereafter owe to the Beneficiary thereunder, and does hereby further guarantee to the Beneficiaries, and their respective successors and assigns, the due, regular and punctual performance of all other duties, covenants, agreements and obligations of every kind or character whatsoever that a Buyer Party may now or at any time hereafter owe to any Beneficiary pursuant to the Purchase Agreement (all such payment and performance obligations being collectively referred to as "Obligations")

2.      This Guaranty is a guaranty of prompt payment and performance (and not merely a guaranty of collection)  Nothing herein shall require any Beneficiary to first seek or exhaust any remedy against any Buyer Party, its successors or assigns, or any other person obligated with respect to the Obligations, or to first foreclose, exhaust or otherwise proceed against any collateral, security or other guaranty, if any, which may be given at any time in connection with the Obligations  It is agreed that a Beneficiary may upon any breach or default by a Buyer Party under the Purchase Agreement make demand upon the Guarantor and receive payment and performance of the Obligations, with or without notice or demand for payment or performance by a Buyer Party, its successors or assigns or any other person. Suit may be brought and maintained against the Guarantor at the election of any Beneficiary, without joinder of the Buyer Parties or any other person as parties thereto

FL-4347_Kleyner_LV LLC_0001515

FL-4347_Kleyner_LV_LLC_0001480

3. The Guarantor agrees that its obligations under this Guaranty shall be primary, absolute, continuing and unconditional, irrespective of and unaffected by any of the following: actions or circumstances, irrespective of any notice to or consent of the Guarantor [...] the continuance, validity, regularity, failure and enforceability or any provision of the Purchase Agreement or any other agreement, instrument, certificate, notice or other document, or any extension, renewal, amendment, change, waiver or other modification of the Purchase Agreement or any other agreement, instrument, certificate, notice or other document, or the absence of or delay in any action to enforce the Purchase Agreement, this Guaranty or any other agreement, instrument, certificate, notice or other document, of the release of, extension of time for payment or performance by any other indulgence granted to a Buyer Party or any other person with respect to the Obligations by operation of law, in equity or otherwise, or a Buyer Party's voluntary or involuntary bankruptcy, insolvency, assignment for the benefit of creditors, reorganization or similar proceeding affecting the Buyer Party or any of its assets (collectively, "Bankruptcy") or (f) any other action or circumstance which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor.

4. This Guaranty shall continue and remain undischarged until all of the Obligations are indefeasibly paid and performed in full. The Guarantor agrees that this Guaranty shall remain in full force and effect or be reinstated, as the case may be, at any time payment or performance of any of the Obligations or any part thereof is rescinded, reduced or must otherwise be restored or returned by any Beneficiary, all as though such payment or performance had not been made or performed. If, by reason of any bankruptcy, insolvency or similar laws affecting the rights of creditors, Beneficiary shall be prohibited from exercising any of its rights or remedies against a Buyer Party or any other person or entity, any proper provision, as between the Beneficiary and the Guarantor, such prohibition shall be of no force or effect, and the Beneficiary shall have the right to make demand upon, and receive payment from the Guarantor of all amounts and other sums that would be due to the Beneficiary upon a breach or default with respect to the Obligations.

5. The Guarantor shall be deemed to be in default hereunder ("Default") if:

   a. it shall fail to perform or observe any covenant, condition or agreement to be performed or observed by it hereunder; or

   b. there is any attempt or repudiation or breach in writing, of its obligations pursuant to this Guaranty.

6. Upon any Default hereunder, Beneficiary may, at its option, declare this Guaranty to be in default by written notice to the Guarantor without election of remedies and without further opportunity to cure, and at any time thereafter, may do any one or more of the following, all of which are hereby authorized by the Guarantor:

   a. sue for and recover all damages then or thereafter incurred by the Beneficiary as a result of such Default; and/or

   b. seek specific performance of the obligations of the Guarantor hereunder and the Buyer Party under the Purchase Agreement.

No right or remedy referred to herein is intended to be exclusive, but each shall be cumulative, and shall be in addition to any other remedy referred to above or otherwise

FL-4347_Kleyner_LV_LLC_0001480

remedies at law or in equity and may be exercised concurrently or successively from time to time.

7.    All notices, including but not limited to notice of acceptance of this Guaranty, notice of the breach or default by any Buyer Party or any other person, and notice of presentation or amendment of Obligations or the Purchase Agreement, is hereby waived. Presentment, protest, demand and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are hereby waived. Guarantor waives all defenses to enforcement or validity of this Guaranty, at law or in equity, based upon or arising out of a failure to present, notice or demands of any type.

8.    The Guarantor hereby represents and warrants (all of which representation and warranties shall survive until all Obligations are indefeasibly satisfied in full), that:

        a.    The Guarantor has full legal capacity to execute and deliver this Guaranty and to perform the obligations of the Guarantor under this Guaranty.

        b.    This Guaranty constitutes the legal, valid and binding obligation of the Guarantor enforceable in accordance with its terms.

        c.    The execution, delivery and performance of this Guaranty does not and will not violate any requirement of law applicable to the Guarantor, or any material contract, agreement or instrument to which the Guarantor is a party or by which the Guarantor or any property of the Guarantor is bound, or result in the creation or imposition of any material lien or other encumbrance on any of the property or assets of the Guarantor pursuant to the provisions of any of the foregoing.

        d.    No consent of any other person or entity, and no consent, license, permit, approval or authorization of, exemption by, notice or report to, or registration, filing or declaration with, any governmental authority is required in connection with the execution, delivery, performance, validity or enforceability of this Guaranty.

        e.    No litigation, arbitration, investigation or administrative proceeding of or before any court, arbitrator or governmental authority, bureau or agency is currently pending or, to the knowledge of the Guarantor, threatened against Guarantor.

        f.    Guarantor is a substantial, sophisticated investor having such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of the transaction contemplated herein without any input or advice, and without reliance on any matters. In entering the Guaranty, Guarantor has not relied upon any oral or written statements or representations made by a Beneficiary or any of its or their respective representatives or agents in deciding to enter into this Guaranty. Without in any way limiting the generality of the foregoing, and to Beneficiary has made any representations or warranties to Guarantor whatsoever, and (i) Guarantor waives all defenses to the enforcement of this Guaranty and claims based on or arising from all known or unknown or alleged statements, representations, warranties, or omissions from or by any Beneficiary, and covenants not to assert claims or defenses based upon alleged negligent misrepresentation as found in the inducement to enter this Guaranty. **Guarantor has received the advice of counsel, and Guarantor's counsel**

FL-4347_Kleyner_LV_LLC_0001480

has reviewed, negotiated, participated in drafting and approved the terms of this Guaranty prior to Guarantor's execution of the Guaranty.

9. TO THE FULLEST EXTENT NOT PROHIBITED BY APPLICABLE LAW, THE GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHT, POWER, REMEDY OR DEFENSE ARISING OUT OF OR RELATED TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ANY RELATED DOCUMENTS, ANY DEALINGS BETWEEN OR AMONG THE GUARANTOR, THE BUYER PARTIES AND THE BENEFICIARIES, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN OR AMONG SUCH PARTIES WITH RESPECT THERETO, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A JUDGE AND NOT BEFORE A JURY. THE GUARANTOR FURTHER WAIVES ANY RIGHT TO SEEK TO CONSOLIDATE ANY SUCH LITIGATION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER LITIGATION IN WHICH A JURY TRIAL CANNOT OR HAS NOT BEEN WAIVED. FURTHER, THE GUARANTOR HEREBY CERTIFIES THAT NONE OF ITS REPRESENTATIVES, AGENTS OR ATTORNEYS HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT IT WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. THE GUARANTOR ACKNOWLEDGES THAT THE PROVISIONS OF THIS SECTION ARE A MATERIAL INDUCEMENT TO THE ACCEPTANCE BY BENEFICIARIES OF THIS GUARANTY.

THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND SHALL APPLY TO ANY AND ALL SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, AND/OR MODIFICATIONS TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, AND ANY RELATED AGREEMENTS, INSTRUMENTS AND DOCUMENTS. In the event of litigation, this Guaranty may be filed as a written consent to a trial by the court.

10. As used in this Guaranty, the word "person" shall include any individual, corporation, limited liability company, partnership, joint venture, association, joint stock company, trust, unincorporated organization or any association or any political subdivision thereof.

11. This Guaranty is intended by the parties as a final expression of the guaranty of the Guarantor and is also intended as a complete and exclusive statement of the terms thereof. No course of dealing, course of performance or trade usage, nor any evidence of any kind, shall be used to supplement or modify any of the terms hereof. There are no conditions to the full effectiveness of this Guaranty. This Guaranty and each of its provisions may not be waived, modified, varied, released, terminated or surrendered, in whole or in part, except by a duly authorized written instrument signed by the Guarantor and each Beneficiary. No failure by any Beneficiary to exercise its rights hereunder shall give rise to an estoppel against or in excess the Guarantor from performing hereunder. A Beneficiary's waiver, if any is granted, of any right to demand performance hereunder shall not be a waiver of any subsequent or other right to demand performance hereunder.

FL-4347_Kleyner_LV_LLC_0001480

12.   This Guaranty shall bind the Guarantor's successors and assigns and the benefits thereof shall extend to and include the Beneficiaries' respective successors and assigns.

13.   THIS GUARANTY AND THE RIGHTS AND OBLIGATIONS SET FORTH HEREIN SHALL, IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF FLORIDA (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE.   Any action or proceeding arising out of or relating to this Guaranty shall be brought in the appropriate court in Miami Dade County, Florida.  If any provision of this Guaranty is in conflict with any applicable statute, rule or law, then such provision shall be deemed null and void to the extent that it may conflict therewith, but without invalidating any other provisions hereof.

14.   To the extent a Beneficiary wishes to provide notice, such notice shall be deemed adequately given if sent by overnight courier or by hand delivery to the Guarantor at its address stated below:

> Patriots United, LLC
> 299 Alhambra Circle, Suite 510
> Coral Gables, Florida 33134
> Attention: Rishi Kapoor
> Email: rkapoor@location.ventures

With Copy to:    Goodkind & Florio, P.A.
> 4121 La Playa Boulevard
> Coconut Grove, Florida 33133
> Attention: Brian Goodkind
> Email: bnan@goodkindandflorio.com
> Email: kenneth@goodkindandflorio.com

Any provision of this Guaranty, which is prohibited or unenforceable in any jurisdiction, shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

15.   Time is of the essence with respect to all matters contained herein.

16.   This Guaranty shall be construed without regard to any presumption or other rule requiring construction against the party causing this Guaranty to be drafted.  If any word or phrase in this Guaranty shall have been stricken out or otherwise eliminated, whether or not any other words or phrases have been added, this Guaranty shall be construed as if the words or phrases so stricken out or otherwise eliminated were never included in this Guaranty and no implication or inference shall be drawn from the fact that said words or phrases were so stricken out or otherwise eliminated.  All terms and words used in this Guaranty, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require.  If any term or provision of this Guaranty or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Guaranty, and the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable,

FL-4347_Kleyner_LV_LLC_0001480

shall not be affected thereby, and each term and provision of this Guaranty shall be valid and enforced to the fullest extent permitted by law.

[Signature Page Follows]

FL-4347_Kleyner_LV LLC_0001520

FL-4347_Kleyner_LV_LLC_0001480

IN WITNESS WHEREOF, and for good and valuable consideration the receipt of which is hereby acknowledged, the Guarantor has caused this Guaranty to be executed by a duly authorized representative as of the date first above written.

ATTEST:

By: _____

Name: _____

Title: _Vice President_

PATRIOTS UNITED, LLC
a Florida limited liability company

By: _____

Name: Rishi Kapoor

Title: Manager

FL-4347_Kleyner_LV LLC_0001521

**WRITTEN CONSENT IN LIEU OF A MEETING OF
THE MEMBERS OF
LOCATION VENTURES, LLC**

Pursuant to Section 605.04073(4) of the Florida Revised Limited Liability Company Act (the "Act"), the undersigned Members of Location Ventures, LLC, a Florida limited liability company (the "Company"), do hereby waive any and all formalities and requirements for notice, consent to the Company actions specified below, and do hereby adopt the following resolutions in lieu of holding a meeting of the Members of the Company.  Certain capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Company's Second Amended and Restated Operating Agreement dated as of April 19, 2021 (the "Operating Agreement").

**WHEREAS**, the undersigned Members have determined that Rishi Kapoor ("Rishi") has taken certain actions or omitted to take certain actions, including, without limitation, the following (a) Rishi has put his personal interests before the interests of the Members and the Company by taking millions of dollars from the Company and/or Company Affiliates in fees, compensation and/or other remuneration in violation of the Operating Agreement and not otherwise authorized in any Approved Budget and, in certain instances, he has admitted to taking some of these actions to some of the Members; (b) Rishi has misappropriated and misused assets of the Company and/or Company Affiliates; (c) Rishi has caused the Company and Company Affiliates to be under investigation by the United States Federal Bureau of Investigation and the United States Securities and Exchange Commission;

**WHEREAS**, the undersigned Members have determined that the above mentioned acts and/or omissions, as well as others, by Rishi constitute "Cause" as defined under clauses (iv) and (v) of that definition under the Operating Agreement which conduct constitutes grounds justifying his removal as the Manager of the Company under Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement;

**WHEREAS,** the undersigned Members have determined that it is desirable and in the best interests of the Company and the Members and also necessary for the protection and preservation of the Company's and Company Affiliates' assets to remove Rishi as the Manager of the Company;

**WHEREAS**, under Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement, the removal of Rishi as the Manager may be approved by the Member Super Majority Approval, it being understood that, pursuant to such sections of the Operating Agreement, any Member Affiliated with Rishi shall be excluded for purposes of determining whether the Member Super Majority Approval has been obtained for such removal;



EXHIBIT

EE
_____

**WHEREAS,** the undersigned members have determined that Members holding at least seventy five percent (75%) of the Membership Units that will be counted for the vote on the removal of Rishi as Manager of the Company have approved the resolutions herein;

**NOW THEREFOR, BE IT RESOLVED**, Rishi is hereby removed as the Manager of the Company effective immediately;

**BE IT FURTHER RESOLVED**, that all authority, consent rights and other powers given or granted to Rishi, by operation of the Operating Agreement, the Act, other applicable law or otherwise, to take action for or on behalf of the Company or any of its Affiliates is hereby terminated and revoked effective immediately; and

**BE IT FURTHER RESOLVED**, that the actions taken to date or hereafter taken in furtherance of the removal of Rishi as Manager of the Company are, have been and/or will be in the best interest of the Company and are hereby in all respects ratified, approved, confirmed and adopted as the actions of the Company.

**IN WITNESS WHEREOF**, the undersigned Members of the Company do hereby approve and adopt the foregoing resolutions effective as of July 14, 2023.



FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP



FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

**WRITTEN CONSENT IN LIEU OF A MEETING OF
THE MEMBERS OF
LOCATION VENTURES, LLC**

Pursuant to Section 605.04073(4) of the Florida Revised Limited Liability Company Act (the "Act"), the undersigned Members of Location Ventures, LLC, a Florida limited liability company (the "Company"), do hereby waive any and all formalities and requirements for notice, consent to the Company actions specified below, and do hereby adopt the following resolutions in lieu of holding a meeting of the Members of the Company.  Certain capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Company's Second Amended and Restated Operating Agreement dated as of April 19, 2021 (the "Operating Agreement").

> **WHEREAS**, the undersigned Members have determined that Rishi Kapoor ("Rishi") has taken certain actions or omitted to take certain actions, including, without limitation, the following (a) Rishi has put his personal interests before the interests of the Members and the Company by taking millions of dollars from the Company and/or Company Affiliates in fees, compensation and/or other remuneration in violation of the Operating Agreement and not otherwise authorized in any Approved Budget and, in certain instances, he has admitted to taking some of these actions to some of the Members; (b) Rishi has misappropriated and misused assets of the Company and/or Company Affiliates; (c) Rishi has caused the Company and Company Affiliates to be under investigation by the United States Federal Bureau of Investigation and the United States Securities and Exchange Commission;

> **WHEREAS**, the undersigned Members have determined that the above mentioned acts and/or omissions, as well as others, by Rishi constitute "Cause" as defined under clauses (iv) and (v) of that definition under the Operating Agreement which conduct constitutes grounds justifying his removal as the Manager of the Company under Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement;

> **WHEREAS,** the undersigned Members have determined that it is desirable and in the best interests of the Company and the Members and also necessary for the protection and preservation of the Company's and Company Affiliates' assets to remove Rishi as the Manager of the Company;

> **WHEREAS**, under Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement, the removal of Rishi as the Manager may be approved by the Member Super Majority Approval, it being understood that, pursuant to such sections of the Operating Agreement, any Member Affiliated with Rishi shall be excluded for purposes of determining whether the Member Super Majority Approval has been obtained for such removal;

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

**WHEREAS,** the undersigned members have determined that Members holding at least seventy five percent (75%) of the Membership Units that will be counted for the vote on the removal of Rishi as Manager of the Company have approved the resolutions herein;

**NOW THEREFOR, BE IT RESOLVED**, Rishi is hereby removed as the Manager of the Company effective immediately;

**BE IT FURTHER RESOLVED**, that all authority, consent rights and other powers given or granted to Rishi, by operation of the Operating Agreement, the Act, other applicable law or otherwise, to take action for or on behalf of the Company or any of its Affiliates is hereby terminated and revoked effective immediately; and

**BE IT FURTHER RESOLVED**, that the actions taken to date or hereafter taken in furtherance of the removal of Rishi as Manager of the Company are, have been and/or will be in the best interest of the Company and are hereby in all respects ratified, approved, confirmed and adopted as the actions of the Company.

**IN WITNESS WHEREOF**, the undersigned Members of the Company do hereby approve and adopt the foregoing resolutions effective as of July 14, 2023.





FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

**WRITTEN CONSENT IN LIEU OF A MEETING OF
THE MEMBERS OF
LOCATION VENTURES, LLC**

Pursuant to Section 605.04073(4) of the Florida Revised Limited Liability Company Act (the "Act"), the undersigned Members of Location Ventures, LLC, a Florida limited liability company (the "Company"), do hereby waive any and all formalities and requirements for notice, consent to the Company actions specified below, and do hereby adopt the following resolutions in lieu of holding a meeting of the Members of the Company. Certain capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Company's Second Amended and Restated Operating Agreement dated as of April 19, 2021 (the "Operating Agreement").

**WHEREAS**, the undersigned Members have determined that Rishi Kapoor ("Rishi") has taken certain actions or omitted to take certain actions, including, without limitation, the following (a) Rishi has put his personal interests before the interests of the Members and the Company by taking millions of dollars from the Company and/or Company Affiliates in fees, compensation and/or other remuneration in violation of the Operating Agreement and not otherwise authorized in any Approved Budget and, in certain instances, he has admitted to taking some of these actions to some of the Members; (b) Rishi has misappropriated and misused assets of the Company and/or Company Affiliates; (c) Rishi has caused the Company and Company Affiliates to be under investigation by the United States Federal Bureau of Investigation and the United States Securities and Exchange Commission;

**WHEREAS**, the undersigned Members have determined that the above mentioned acts and/or omissions, as well as others, by Rishi constitute "Cause" as defined under clauses (iv) and (v) of that definition under the Operating Agreement which conduct constitutes grounds justifying his removal as the Manager of the Company under Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement;

**WHEREAS,** the undersigned Members have determined that it is desirable and in the best interests of the Company and the Members and also necessary for the protection and preservation of the Company's and Company Affiliates' assets to remove Rishi as the Manager of the Company;

**WHEREAS**, under Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement, the removal of Rishi as the Manager may be approved by the Member Super Majority Approval, it being understood that, pursuant to such sections of the Operating Agreement, any Member Affiliated with Rishi shall be excluded for purposes of determining whether the Member Super Majority Approval has been obtained for such removal;

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

**WHEREAS,** the undersigned members have determined that Members holding at least seventy five percent (75%) of the Membership Units that will be counted for the vote on the removal of Rishi as Manager of the Company have approved the resolutions herein;

**NOW THEREFOR, BE IT RESOLVED**, Rishi is hereby removed as the Manager of the Company effective immediately;

**BE IT FURTHER RESOLVED**, that all authority, consent rights and other powers given or granted to Rishi, by operation of the Operating Agreement, the Act, other applicable law or otherwise, to take action for or on behalf of the Company or any of its Affiliates is hereby terminated and revoked effective immediately; and

**BE IT FURTHER RESOLVED**, that the actions taken to date or hereafter taken in furtherance of the removal of Rishi as Manager of the Company are, have been and/or will be in the best interest of the Company and are hereby in all respects ratified, approved, confirmed and adopted as the actions of the Company.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

**IN WITNESS WHEREOF**, the undersigned Members of the Company do hereby approve and adopt the foregoing resolutions effective as of July 14, 2023.





FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

## WRITTEN CONSENT IN LIEU OF A MEETING OF
## THE MEMBERS OF
## LOCATION VENTURES, LLC

Pursuant to Section 605.04073(4) of the Florida Revised Limited Liability Company Act (the "Act"), the undersigned Members of Location Ventures, LLC, a Florida limited liability company (the "Company"), do hereby waive any and all formalities and requirements for notice, consent to the Company actions specified below, and do hereby adopt the following resolutions in lieu of holding a meeting of the Members of the Company. Certain capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Company's Second Amended and Restated Operating Agreement dated as of April 19, 2021 (the "Operating Agreement").

**WHEREAS**, the undersigned Members have determined that Rishi Kapoor ("Rishi") has taken certain actions or omitted to take certain actions, including, without limitation, the following (a) Rishi has put his personal interests before the interests of the Members and the Company by taking millions of dollars from the Company and/or Company Affiliates in fees, compensation and/or other remuneration in violation of the Operating Agreement and not otherwise authorized in any Approved Budget and, in certain instances, he has admitted to taking some of these actions to some of the Members; (b) Rishi has misappropriated and misused assets of the Company and/or Company Affiliates; (c) Rishi has caused the Company and Company Affiliates to be under investigation by the United States Federal Bureau of Investigation and the United States Securities and Exchange Commission;

**WHEREAS**, the undersigned Members have determined that the above mentioned acts and/or omissions, as well as others, by Rishi constitute "Cause" as defined under clauses (iv) and (v) of that definition under the Operating Agreement which conduct constitutes grounds justifying his removal as the Manager of the Company under Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement;

**WHEREAS,** the undersigned Members have determined that it is desirable and in the best interests of the Company and the Members and also necessary for the protection and preservation of the Company's and Company Affiliates' assets to remove Rishi as the Manager of the Company;

**WHEREAS**, under Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement, the removal of Rishi as the Manager may be approved by the Member Super Majority Approval, it being understood that, pursuant to such sections of the Operating Agreement, any Member Affiliated with Rishi shall be excluded for purposes of determining whether the Member Super Majority Approval has been obtained for such removal;

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

**WHEREAS,** the undersigned members have determined that Members holding at least seventy five percent (75%) of the Membership Units that will be counted for the vote on the removal of Rishi as Manager of the Company have approved the resolutions herein;

**NOW THEREFOR, BE IT RESOLVED**, Rishi is hereby removed as the Manager of the Company effective immediately;

**BE IT FURTHER RESOLVED**, that all authority, consent rights and other powers given or granted to Rishi, by operation of the Operating Agreement, the Act, other applicable law or otherwise, to take action for or on behalf of the Company or any of its Affiliates is hereby terminated and revoked effective immediately; and

**BE IT FURTHER RESOLVED**, that the actions taken to date or hereafter taken in furtherance of the removal of Rishi as Manager of the Company are, have been and/or will be in the best interest of the Company and are hereby in all respects ratified, approved, confirmed and adopted as the actions of the Company.

**IN WITNESS WHEREOF**, the undersigned Members of the Company do hereby approve and adopt the foregoing resolutions effective as of July 14, 2023.





FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

**WRITTEN CONSENT IN LIEU OF A MEETING OF**
**THE MEMBERS OF**
**LOCATION VENTURES, LLC**

Pursuant to Section 605.04073(4) of the Florida Revised Limited Liability Company Act (the "Act"), the undersigned Members of Location Ventures, LLC, a Florida limited liability company (the "Company"), do hereby waive any and all formalities and requirements for notice, consent to the Company actions specified below, and do hereby adopt the following resolutions in lieu of holding a meeting of the Members of the Company. Certain capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Company's Second Amended and Restated Operating Agreement dated as of April 19, 2021 (the "Operating Agreement").

**WHEREAS**, Rishi Kapoor ("Rishi") has been removed as the Manager of the Company for "Cause" pursuant to Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement;

**WHEREAS,** the undersigned Members have determined that it is desirable and in the best interests of the Company and the Members and also necessary for the protection and preservation of the Company's and Company Affiliates' assets to appoint a successor to replace Rishi as the Manager of the Company and have determined that Retired Judge Alan Fine ("Fine") has the requisite qualifications for such role;

**WHEREAS**, under Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement, Rishi's replacement as Manager may be approved by the Member Super Majority Approval, it being understood that, pursuant to such sections of the Operating Agreement, any Member Affiliated with Rishi shall be excluded for purposes of determining whether the Member Super Majority Approval has been obtained for such replacement;

**WHEREAS,** the undersigned members have determined that Members holding at least seventy five percent (75%) of the Membership Units that will be counted for the vote on the replacement of Rishi as Manager of the Company have approved the resolutions herein;

**NOW THEREFOR, BE IT RESOLVED**, Fine is hereby appointed as the Manager of the Company effective immediately and the terms of Fine's engagement shall be as set forth in the engagement agreement attached hereto as **Exhibit A**;

**BE IT FURTHER RESOLVED**, that all authority, consent rights and other powers given or granted to a Manager, by operation of the Operating Agreement, the Act, other applicable law or otherwise, to take action for or on behalf of the Company or any of its Affiliates is hereby given and granted to Fine effective immediately; and

**BE IT FURTHER RESOLVED**, that the actions taken to date or hereafter taken in furtherance of the appointment of Fine as Manager of the Company are, have been and/or will be in the best interest of the Company and are hereby in all respects ratified, approved, confirmed and adopted as the actions of the Company.

**(signature pages follow)**

**IN WITNESS WHEREOF**, the undersigned Members of the Company do hereby approve and adopt the foregoing resolutions effective as of July 14, 2023.





FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

**Exhibit A**
**Engagement Agreement**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP   LV00011144

# Written Consent of Members (Appointment of Judge Fine).001

Final Audit Report                                           2023-07-14

| | |
|---|---|
| Created: | 2023-07-14 |
| By: | ▮▮▮▮▮▮▮▮▮▮ |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAtnHxX-1WSWBY5gXGoV6uI5m8hTP_J9jv |

## "Written Consent of Members (Appointment of Judge Fine).001" History



 **Adobe Acrobat Sign**





Agreement completed.
2023-07-14 - 4:24:49 PM GMT

Adobe Acrobat Sign

**WRITTEN CONSENT IN LIEU OF A MEETING OF
THE MEMBERS OF
LOCATION VENTURES, LLC**

Pursuant to Section 605.04073(4) of the Florida Revised Limited Liability Company Act (the "Act"), the undersigned Members of Location Ventures, LLC, a Florida limited liability company (the "Company"), do hereby waive any and all formalities and requirements for notice, consent to the Company actions specified below, and do hereby adopt the following resolutions in lieu of holding a meeting of the Members of the Company. Certain capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Company's Second Amended and Restated Operating Agreement dated as of April 19, 2021 (the "Operating Agreement").

**WHEREAS**, Rishi Kapoor ("Rishi") has been removed as the Manager of the Company for "Cause" pursuant to Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement;

**WHEREAS,** the undersigned Members have determined that it is desirable and in the best interests of the Company and the Members and also necessary for the protection and preservation of the Company's and Company Affiliates' assets to appoint a successor to replace Rishi as the Manager of the Company and have determined that Retired Judge Alan Fine ("Fine") has the requisite qualifications for such role;

**WHEREAS**, under Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement, Rishi's replacement as Manager may be approved by the Member Super Majority Approval, it being understood that, pursuant to such sections of the Operating Agreement, any Member Affiliated with Rishi shall be excluded for purposes of determining whether the Member Super Majority Approval has been obtained for such replacement;

**WHEREAS,** the undersigned members have determined that Members holding at least seventy five percent (75%) of the Membership Units that will be counted for the vote on the replacement of Rishi as Manager of the Company have approved the resolutions herein;

**NOW THEREFOR, BE IT RESOLVED**, Fine is hereby appointed as the Manager of the Company effective immediately and the terms of Fine's engagement shall be as set forth in the engagement agreement attached hereto as **Exhibit A**;

**BE IT FURTHER RESOLVED**, that all authority, consent rights and other powers given or granted to a Manager, by operation of the Operating Agreement, the Act, other applicable law or otherwise, to take action for or on behalf of the Company or any of its Affiliates is hereby given and granted to Fine effective immediately; and

**BE IT FURTHER RESOLVED**, that the actions taken to date or hereafter taken in furtherance of the appointment of Fine as Manager of the Company are, have been and/or will be in the best interest of the Company and are hereby in all respects ratified, approved, confirmed and adopted as the actions of the Company.

**(signature pages follow)**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

**IN WITNESS WHEREOF**, the undersigned Members of the Company do hereby approve and adopt the foregoing resolutions effective as of July 14, 2023.



FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP



FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP'

**Exhibit A**
**Engagement Agreement**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

LV00011152

# Written Consent of Members (Appointment of Judge Fine).001

Final Audit Report                                    2023-07-15

| | |
|---|---|
| Created: | 2023-07-14 |
| By: | ███████████████████████ |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAm-WgeC_2LujthvoeofXQpAg-4EyF2l3u |

## "Written Consent of Members (Appointment of Judge Fine).001" History



✔ Agreement completed.
2023-07-15 - 9:45:50 PM GMT

**Adobe Acrobat Sign**

**WRITTEN CONSENT IN LIEU OF A MEETING OF
THE MEMBERS OF
LOCATION VENTURES, LLC**

Pursuant to Section 605.04073(4) of the Florida Revised Limited Liability Company Act (the "Act"), the undersigned Members of Location Ventures, LLC, a Florida limited liability company (the "Company"), do hereby waive any and all formalities and requirements for notice, consent to the Company actions specified below, and do hereby adopt the following resolutions in lieu of holding a meeting of the Members of the Company. Certain capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Company's Second Amended and Restated Operating Agreement dated as of April 19, 2021 (the "Operating Agreement").

**WHEREAS**, Rishi Kapoor ("Rishi") has been removed as the Manager of the Company for "Cause" pursuant to Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement;

**WHEREAS,** the undersigned Members have determined that it is desirable and in the best interests of the Company and the Members and also necessary for the protection and preservation of the Company's and Company Affiliates' assets to appoint a successor to replace Rishi as the Manager of the Company and have determined that Retired Judge Alan Fine ("Fine") has the requisite qualifications for such role;

**WHEREAS**, under Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement, Rishi's replacement as Manager may be approved by the Member Super Majority Approval, it being understood that, pursuant to such sections of the Operating Agreement, any Member Affiliated with Rishi shall be excluded for purposes of determining whether the Member Super Majority Approval has been obtained for such replacement;

**WHEREAS,** the undersigned members have determined that Members holding at least seventy five percent (75%) of the Membership Units that will be counted for the vote on the replacement of Rishi as Manager of the Company have approved the resolutions herein;

**NOW THEREFOR, BE IT RESOLVED**, Fine is hereby appointed as the Manager of the Company effective immediately and the terms of Fine's engagement shall be as set forth in the engagement agreement attached hereto as **Exhibit A**;

**BE IT FURTHER RESOLVED**, that all authority, consent rights and other powers given or granted to a Manager, by operation of the Operating Agreement, the Act, other applicable law or otherwise, to take action for or on behalf of the Company or any of its Affiliates is hereby given and granted to Fine effective immediately; and

**BE IT FURTHER RESOLVED**, that the actions taken to date or hereafter taken in furtherance of the appointment of Fine as Manager of the Company are, have been and/or will be in the best interest of the Company and are hereby in all respects ratified, approved, confirmed and adopted as the actions of the Company.

**(signature pages follow)**

**IN WITNESS WHEREOF**, the undersigned Members of the Company do hereby approve and adopt the foregoing resolutions effective as of July 14, 2023.





LV00011157

**Exhibit A**
**Engagement Agreement**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

LV00011158

### WRITTEN CONSENT IN LIEU OF A MEETING OF
### THE MEMBERS OF
### LOCATION VENTURES, LLC

Pursuant to Section 605.04073(4) of the Florida Revised Limited Liability Company Act (the "Act"), the undersigned Members of Location Ventures, LLC, a Florida limited liability company (the "Company"), do hereby waive any and all formalities and requirements for notice, consent to the Company actions specified below, and do hereby adopt the following resolutions in lieu of holding a meeting of the Members of the Company. Certain capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Company's Second Amended and Restated Operating Agreement dated as of April 19, 2021 (the "Operating Agreement").

**WHEREAS**, Rishi Kapoor ("Rishi") has been removed as the Manager of the Company for "Cause" pursuant to Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement;

**WHEREAS,** the undersigned Members have determined that it is desirable and in the best interests of the Company and the Members and also necessary for the protection and preservation of the Company's and Company Affiliates' assets to appoint a successor to replace Rishi as the Manager of the Company and have determined that Retired Judge Alan Fine ("Fine") has the requisite qualifications for such role;

**WHEREAS**, under Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement, Rishi's replacement as Manager may be approved by the Member Super Majority Approval, it being understood that, pursuant to such sections of the Operating Agreement, any Member Affiliated with Rishi shall be excluded for purposes of determining whether the Member Super Majority Approval has been obtained for such replacement;

**WHEREAS,** the undersigned members have determined that Members holding at least seventy five percent (75%) of the Membership Units that will be counted for the vote on the replacement of Rishi as Manager of the Company have approved the resolutions herein;

**NOW THEREFOR, BE IT RESOLVED**, Fine is hereby appointed as the Manager of the Company effective immediately and the terms of Fine's engagement shall be as set forth in the engagement agreement attached hereto as **Exhibit A**;

**BE IT FURTHER RESOLVED**, that all authority, consent rights and other powers given or granted to a Manager, by operation of the Operating Agreement, the Act, other applicable law or otherwise, to take action for or on behalf of the Company or any of its Affiliates is hereby given and granted to Fine effective immediately; and

**BE IT FURTHER RESOLVED**, that the actions taken to date or hereafter taken in furtherance of the appointment of Fine as Manager of the Company are, have been and/or will be in the best interest of the Company and are hereby in all respects ratified, approved, confirmed and adopted as the actions of the Company.

**(signature pages follow)**

**IN WITNESS WHEREOF**, the undersigned Members of the Company do hereby approve and adopt the foregoing resolutions effective as of July 14, 2023.





FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

**Exhibit A**
**Engagement Agreement**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

# Written Consent of Members (Appointment of Judge Fine).001

Final Audit Report                                                2023-07-15

| | |
|---|---|
| Created: | 2023-07-14 |
| By: | ████████████████████████ |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAm-WgeC_2LujthvoeofXQpAg-4EyF2l3u |

## "Written Consent of Members (Appointment of Judge Fine).001" History



✔ Agreement completed.
2023-07-15 - 9:45:50 PM GMT

 **Adobe Acrobat Sign**

**WRITTEN CONSENT IN LIEU OF A MEETING OF
THE MEMBERS OF
LOCATION VENTURES, LLC**

Pursuant to Section 605.04073(4) of the Florida Revised Limited Liability Company Act (the "Act"), the undersigned Members of Location Ventures, LLC, a Florida limited liability company (the "Company"), do hereby waive any and all formalities and requirements for notice, consent to the Company actions specified below, and do hereby adopt the following resolutions in lieu of holding a meeting of the Members of the Company. Certain capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Company's Second Amended and Restated Operating Agreement dated as of April 19, 2021 (the "Operating Agreement").

**WHEREAS**, Rishi Kapoor ("Rishi") has been removed as the Manager of the Company for "Cause" pursuant to Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement;

**WHEREAS,** the undersigned Members have determined that it is desirable and in the best interests of the Company and the Members and also necessary for the protection and preservation of the Company's and Company Affiliates' assets to appoint a successor to replace Rishi as the Manager of the Company and have determined that Retired Judge Alan Fine ("Fine") has the requisite qualifications for such role;

**WHEREAS**, under Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement, Rishi's replacement as Manager may be approved by the Member Super Majority Approval, it being understood that, pursuant to such sections of the Operating Agreement, any Member Affiliated with Rishi shall be excluded for purposes of determining whether the Member Super Majority Approval has been obtained for such replacement;

**WHEREAS,** the undersigned members have determined that Members holding at least seventy five percent (75%) of the Membership Units that will be counted for the vote on the replacement of Rishi as Manager of the Company have approved the resolutions herein;

**NOW THEREFOR, BE IT RESOLVED**, Fine is hereby appointed as the Manager of the Company effective immediately and the terms of Fine's engagement shall be as set forth in the engagement agreement attached hereto as **Exhibit A**;

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP                    LV00011165

**BE IT FURTHER RESOLVED**, that all authority, consent rights and other powers given or granted to a Manager, by operation of the Operating Agreement, the Act, other applicable law or otherwise, to take action for or on behalf of the Company or any of its Affiliates is hereby given and granted to Fine effective immediately; and

**BE IT FURTHER RESOLVED**, that the actions taken to date or hereafter taken in furtherance of the appointment of Fine as Manager of the Company are, have been and/or will be in the best interest of the Company and are hereby in all respects ratified, approved, confirmed and adopted as the actions of the Company.

**(signature pages follow)**

**IN WITNESS WHEREOF**, the undersigned Members of the Company do hereby approve and adopt the foregoing resolutions effective as of July 14, 2023.



FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP                    LV00011167



FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

**Exhibit A**
**Engagement Agreement**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

LV00011169

# Written Consent of Members (Appointment of Judge Fine).001

Final Audit Report                                                       2023-07-14

| | |
|---|---|
| Created: | 2023-07-14 |
| By: | ████████████████████ |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAtnHxX-1WSWBY5gXGoV6uI5m8hTP_J9jv |

## "Written Consent of Members (Appointment of Judge Fine).001" History



 **Adobe Acrobat Sign**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP                    LV00011170



**Adobe Acrobat Sign**



Agreement completed.
2023-07-14 - 4:24:49 PM GMT

**Adobe Acrobat Sign**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

**WRITTEN CONSENT IN LIEU OF A MEETING OF
THE MEMBERS OF
LOCATION VENTURES, LLC**

Pursuant to Section 605.04073(4) of the Florida Revised Limited Liability Company Act (the "Act"), the undersigned Members of Location Ventures, LLC, a Florida limited liability company (the "Company"), do hereby waive any and all formalities and requirements for notice, consent to the Company actions specified below, and do hereby adopt the following resolutions in lieu of holding a meeting of the Members of the Company. Certain capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Company's Second Amended and Restated Operating Agreement dated as of April 19, 2021 (the "Operating Agreement").

**WHEREAS**, Rishi Kapoor ("Rishi") has been removed as the Manager of the Company for "Cause" pursuant to Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement;

**WHEREAS,** the undersigned Members have determined that it is desirable and in the best interests of the Company and the Members and also necessary for the protection and preservation of the Company's and Company Affiliates' assets to appoint a successor to replace Rishi as the Manager of the Company and have determined that Retired Judge Alan Fine ("Fine") has the requisite qualifications for such role;

**WHEREAS**, under Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement, Rishi's replacement as Manager may be approved by the Member Super Majority Approval, it being understood that, pursuant to such sections of the Operating Agreement, any Member Affiliated with Rishi shall be excluded for purposes of determining whether the Member Super Majority Approval has been obtained for such replacement;

**WHEREAS,** the undersigned members have determined that Members holding at least seventy five percent (75%) of the Membership Units that will be counted for the vote on the replacement of Rishi as Manager of the Company have approved the resolutions herein;

**NOW THEREFOR, BE IT RESOLVED**, Fine is hereby appointed as the Manager of the Company effective immediately and the terms of Fine's engagement shall be as set forth in the engagement agreement attached hereto as **Exhibit A**;

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP                    LV00011173

**BE IT FURTHER RESOLVED**, that all authority, consent rights and other powers given or granted to a Manager, by operation of the Operating Agreement, the Act, other applicable law or otherwise, to take action for or on behalf of the Company or any of its Affiliates is hereby given and granted to Fine effective immediately; and

**BE IT FURTHER RESOLVED**, that the actions taken to date or hereafter taken in furtherance of the appointment of Fine as Manager of the Company are, have been and/or will be in the best interest of the Company and are hereby in all respects ratified, approved, confirmed and adopted as the actions of the Company.

**(signature pages follow)**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP     LV00011174

**IN WITNESS WHEREOF**, the undersigned Members of the Company do hereby approve and adopt the foregoing resolutions effective as of July 14, 2023.



LV00011175



FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

**Exhibit A**
**Engagement Agreement**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

LV00011177

# Written Consent of Members (Appointment of Judge Fine).001

Final Audit Report                                    2023-07-14

| | |
|---|---|
| Created: | 2023-07-14 |
| By: | ███████████████████ |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAtnHxX-1WSWBY5gXGoV6uI5m8hTP_J9jv |

## "Written Consent of Members (Appointment of Judge Fine).001" History



 **Adobe Acrobat Sign**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP          LV00011178





Agreement completed.
2023-07-14 - 4:24:49 PM GMT

**Adobe Acrobat Sign**

**WRITTEN CONSENT IN LIEU OF A MEETING OF
THE MEMBERS OF
LOCATION VENTURES, LLC**

Pursuant to Section 605.04073(4) of the Florida Revised Limited Liability Company Act (the "Act"), the undersigned Members of Location Ventures, LLC, a Florida limited liability company (the "Company"), do hereby waive any and all formalities and requirements for notice, consent to the Company actions specified below, and do hereby adopt the following resolutions in lieu of holding a meeting of the Members of the Company. Certain capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Company's Second Amended and Restated Operating Agreement dated as of April 19, 2021 (the "Operating Agreement").

**WHEREAS**, Rishi Kapoor ("Rishi") has been removed as the Manager of the Company for "Cause" pursuant to Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement;

**WHEREAS,** the undersigned Members have determined that it is desirable and in the best interests of the Company and the Members and also necessary for the protection and preservation of the Company's and Company Affiliates' assets to appoint a successor to replace Rishi as the Manager of the Company and have determined that Retired Judge Alan Fine ("Fine") has the requisite qualifications for such role;

**WHEREAS**, under Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement, Rishi's replacement as Manager may be approved by the Member Super Majority Approval, it being understood that, pursuant to such sections of the Operating Agreement, any Member Affiliated with Rishi shall be excluded for purposes of determining whether the Member Super Majority Approval has been obtained for such replacement;

**WHEREAS,** the undersigned members have determined that Members holding at least seventy five percent (75%) of the Membership Units that will be counted for the vote on the replacement of Rishi as Manager of the Company have approved the resolutions herein;

**NOW THEREFOR, BE IT RESOLVED**, Fine is hereby appointed as the Manager of the Company effective immediately and the terms of Fine's engagement shall be as set forth in the engagement agreement attached hereto as **Exhibit A**;

**BE IT FURTHER RESOLVED**, that all authority, consent rights and other powers given or granted to a Manager, by operation of the Operating Agreement, the Act, other applicable law or otherwise, to take action for or on behalf of the Company or any of its Affiliates is hereby given and granted to Fine effective immediately; and

**BE IT FURTHER RESOLVED**, that the actions taken to date or hereafter taken in furtherance of the appointment of Fine as Manager of the Company are, have been and/or will be in the best interest of the Company and are hereby in all respects ratified, approved, confirmed and adopted as the actions of the Company.

**(signature pages follow)**

**IN WITNESS WHEREOF**, the undersigned Members of the Company do hereby approve and adopt the foregoing resolutions effective as of July 14, 2023.





FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

**Exhibit A**
**Engagement Agreement**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

LV00011185

EXECUTION COPY

**WRITTEN CONSENT IN LIEU OF A MEETING OF**
**THE MEMBERS OF**
**LOCATION VENTURES, LLC**

Pursuant to Section 605.04073(4) of the Florida Revised Limited Liability Company Act (the "Act"), the undersigned Members of Location Ventures, LLC, a Florida limited liability company (the "Company"), do hereby waive any and all formalities and requirements for notice, consent to the Company actions specified below, and do hereby adopt the following resolutions in lieu of holding a meeting of the Members of the Company. Certain capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Company's Second Amended and Restated Operating Agreement dated as of April 19, 2021 (the "Operating Agreement").

**WHEREAS**, Rishi Kapoor ("Rishi") has been replaced as the Manager of the Company and, in his place, Retired Judge Alan Fine ("Judge Fine") has been appointed as Manager pursuant to and in accordance with Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement;

**WHEREAS**, the undersigned Members have also determined that it is desirable and in the best interests of the Company and the Members for the Company to wind down, sell all or substantially all of its assets (including, without limitation, all assets of the Company's direct and indirect subsidiaries and all of its and their respective contracts and contract rights, collectively, the "Assets"), settle and satisfy Company obligations, and to take such further action in accordance with the powers and authority granted to Judge Fine below (collectively, the "Plan");

**WHEREAS,** the undersigned members have determined that Members holding at least seventy five percent (75%) of the Membership Units entitled to vote on the Plan have approved the resolutions herein;

**NOW THEREFOR, BE IT RESOLVED**, the Plan is hereby approved in all respects;

**BE IT FURTHER RESOLVED**, that Judge Fine in his capacity as Manager is hereby authorized and directed to take action in furtherance of execution of the Plan and, in furtherance thereof, shall have the following powers and authority without the necessity for further approval of the Members of the Company (for purposes of the following grant of authority, the Company shall mean and include the Company and the direct and indirect subsidiaries of the Company):

a. Take control of all Company bank accounts, remove all existing signatories to existing accounts, and/or open new accounts and transfer existing Company funds to new accounts under his sole control as Manager.

1

12382855-5

EXECUTION COPY

b.  Enter into contracts on behalf of the Company to hire brokers and other professionals to market and list the Assets for sale or assignment.

c.  Determine the listing price of the Assets, accept or reject offers to buy any of the Assets, and/or negotiate offers and terms for the purchase and sale or assignment of any of the Assets and consummate such transactions.

d.  Decide whether to invest further Company funds to finish construction of Assets in "Villa Valencia" and "Stewart Avenue", and to retain, supervise and pay trade creditors to finish such construction.

e.  Make operational decisions, as necessary, to protect Asset values, *e.g.*, pay HOA fees to protect Assets from liens.

f.  Contact existing Company creditors and negotiate, settle, and satisfy Company debts and obligations, with the goal to minimize Company liabilities.

g.  Hire attorneys to defend lawsuits against the Company.

h.  Keep the Company's current counsel, Goodkind & Florio PA, retained to represent the Company in connection with the Plan and the closings on the sale or assignment of Company Assets in furtherance of the Plan, including but not limited to due diligence and contract negotiations.

i.  Hire accountants to assess the current financial condition of the Company, prepare current financial statements and tax returns, if and as deemed necessary, and assist with accounting tasks for the duration of the Plan.

j.  Determine the employees and staff of Company to retain or, at any time, terminate.   Judge Fine may, in his discretion, pay small severances to non-officer Company employees or staff who are terminated.

k.  Borrow money on behalf of the Company to execute or fund, or in furtherance of, the Plan.

l.  Subject to the remainder of this paragraph, Judge Fine shall close on the sale of the Company's and its subsidiaries' or Affiliate's, including LV Bayshore Sponsor, LLC and LV

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP                    LV00011187

Bayshore Partners, LLC, and Location Equity Holdings, LLC, entire ownership interest (the "Bayshore Interest") in 551 Bayshore Partners, LLC ("Bayshore") to ▓▓▓▓ ("▓▓▓") and ("▓▓▓▓▓"), existing investors in Bayshore (or to either of their respective assignees) for $2.3 million in the aggregate. As a result of this sale, ▓▓▓ and ▓▓▓ shall own 100% of Bayshore. As soon as reasonably practical, Judge Fine shall require the Company to cooperate with ▓▓▓ and ▓▓▓ in furtherance of their due diligence efforts on the real property (the "Bayshore Property") that is the subject of the Purchase and Sale Agreement between Bayshore Concepts, LLC and Location Acquisitions, LLC (as amended, the "PSA"), the Bayshore Interest and other matters. It is understood and agreed that the following conditions shall be satisfied prior to any obligation for ▓▓▓ and ▓▓▓ to close: (a) each of ▓▓▓ and ▓▓▓ shall be fully satisfied with the results of their due diligence; and (b) each of ▓▓▓ and ▓▓▓ shall be able to simultaneously close on the Bayshore Interest and on the Bayshore Property, and in the case of the Bayshore Property, on terms at least as favorable as those provided for in the PSA. Any or all of the forgoing conditions to closing may be waived by ▓▓▓ and ▓▓▓ for any reasons at their sole and absolute discretion. Subject to the foregoing, Judge Fine shall ensure Company's cooperation to facilitate an expeditious and timely closing. In addition, Judge Fine shall cause to be transferred into and assigned to 551 Bayshore SPE, LLC, the buyer under the PSA, or to such other entity as ▓▓▓ and ▓▓▓ may determine, all contracts, agreements, development rights, entitlements and other related rights and benefits relating to or affecting the property that is the subject of the PSA (the "Property"), to the extent that any of the same are owned by any Affiliate of Location Ventures, LLC, as ▓▓▓ and ▓▓▓ may request. Prior to the closing, Judge Fine shall cause Location Acquisitions, LLC to terminate the Memorandum of Agreement recorded against the Property.

m. From the funds of the Company, pay the creditors of the Company in the following order: (1) any remaining taxes owed to the IRS and/or the State of Florida, plus a reserve of a sufficient amount to pay interest and penalties related thereto, as determined appropriate by Judge Fine in his

12382855-5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

LV00011188

EXECUTION COPY

discretion following consultation with appropriate professionals, and (2) subject to establishing a reserve from available funds to pay ongoing and anticipated operating and wind down expenses of the Company in an amount as determined appropriate by Judge Fine in his discretion following consultation with appropriate professionals, a combination, or some or all, of (a) amounts owed to Woodforest National Bank, (b) confirmed Amex charges of the Company (i.e., Amex charges of Company expenses) that remain outstanding and unpaid; and (c) other creditors, as they may be negotiated and deemed appropriate by Judge Fine as part of the wind down process.

n. Distribute all Company funds generated from the Plan, after payment or satisfaction of all debts and obligations, and Plan expenses, to Members in the following order of priority and for the following amounts:

    i. First to Members, excluding Patriots United LLC (collectively, such Members excluding Patriots, shall be referred to as "Preferred Members"), *pro rata*, until the Preferred Members are repaid the amount of their capital investment in the Company;

    ii. Second, only after repayment of 100% of the capital investment of each of the Preferred Members, payment to Patriots United, LLC up to the amount of its capital investment;

    iii. Third, after payment to Patriots United LLC, any additional funds shall be distributed to all Members *pro-rata* according to ownership interest at the time that this Plan is effectuated based on capital investment, as of the date of this Resolution.

**The provisions of the above subsection (n) above shall be deemed to be an agreed to amendment to Article 5 of the Company's Second Amended and Restated Operating Agreement.**

**BE IT FURTHER RESOLVED,** the undersigned Members have determined that it is desirable and in the best interests of the Company and the Members of the Company to authorize, ratify and confirm the compensation for Judge Fine, retroactive to July 17, 2023, as follows: $180,000 for his services through January 16, 2024 that was presented and approved at the Members' meeting of July 14, 2023.

4

12382855-5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

LV00011189

EXECUTION COPY

**BE IT FURTHER RESOLVED** that the actions taken to date or hereafter taken in furtherance of the appointment of Judge Fine as Manager of the Company, or as part of the wind down plan, are, have been and/or will be in the best interest of the Company and are hereby in all respects ratified, approved, confirmed and adopted as the actions of the Company.

**(signature pages follow)**

5

12382855-5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

LV00011190

EXECUTION COPY

**IN WITNESS WHEREOF**, the undersigned Members of the Company do hereby approve and adopt the foregoing resolutions effective as of July 14, 2023.



12382855-5

6

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

LV00011191



EXECUTION COPY



**PATRIOTS UNITED, LLC**

By:_____
      Rishi Kapoor, Co-Manager

By:_____
      Daniel Motha, Co-Manager

7

12382855-5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

# 2023-08-30 Member Consent Wind Down (EXECUTION COPY)

Final Audit Report                                          2023-08-30

| | |
|---|---|
| Created: | 2023-08-30 |
| By: | ███████████████████████ |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAw1rpha66mw5S6eHsAy9022YkHLkI0B7X |

"2023-08-30 Member Consent Wind Down (EXECUTION COPY)" History



🗸 Agreement completed.
2023-08-30 - 8:31:59 PM GMT

**Adobe Acrobat Sign**

EXECUTION COPY

**WRITTEN CONSENT IN LIEU OF A MEETING OF
THE MEMBERS OF
LOCATION VENTURES, LLC**

Pursuant to Section 605.04073(4) of the Florida Revised Limited Liability Company Act (the "Act"), the undersigned Members of Location Ventures, LLC, a Florida limited liability company (the "Company"), do hereby waive any and all formalities and requirements for notice, consent to the Company actions specified below, and do hereby adopt the following resolutions in lieu of holding a meeting of the Members of the Company. Certain capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Company's Second Amended and Restated Operating Agreement dated as of April 19, 2021 (the "Operating Agreement").

**WHEREAS**, Rishi Kapoor ("Rishi") has been replaced as the Manager of the Company and, in his place, Retired Judge Alan Fine ("Judge Fine") has been appointed as Manager pursuant to and in accordance with Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement;

**WHEREAS**, the undersigned Members have also determined that it is desirable and in the best interests of the Company and the Members for the Company to wind down, sell all or substantially all of its assets (including, without limitation, all assets of the Company's direct and indirect subsidiaries and all of its and their respective contracts and contract rights, collectively, the "Assets"), settle and satisfy Company obligations, and to take such further action in accordance with the powers and authority granted to Judge Fine below (collectively, the "Plan");

**WHEREAS,** the undersigned members have determined that Members holding at least seventy five percent (75%) of the Membership Units entitled to vote on the Plan have approved the resolutions herein;

**NOW THEREFOR, BE IT RESOLVED**, the Plan is hereby approved in all respects;

**BE IT FURTHER RESOLVED**, that Judge Fine in his capacity as Manager is hereby authorized and directed to take action in furtherance of execution of the Plan and, in furtherance thereof, shall have the following powers and authority without the necessity for further approval of the Members of the Company (for purposes of the following grant of authority, the Company shall mean and include the Company and the direct and indirect subsidiaries of the Company):

    a. Take control of all Company bank accounts, remove all existing signatories to existing accounts, and/or open new accounts and transfer existing Company funds to new accounts under his sole control as Manager.

1

12382855-5

EXECUTION COPY

b.  Enter into contracts on behalf of the Company to hire brokers and other professionals to market and list the Assets for sale or assignment.

c.  Determine the listing price of the Assets, accept or reject offers to buy any of the Assets, and/or negotiate offers and terms for the purchase and sale or assignment of any of the Assets and consummate such transactions.

d.  Decide whether to invest further Company funds to finish construction of Assets in "Villa Valencia" and "Stewart Avenue", and to retain, supervise and pay trade creditors to finish such construction.

e.  Make operational decisions, as necessary, to protect Asset values, *e.g.,* pay HOA fees to protect Assets from liens.

f.  Contact existing Company creditors and negotiate, settle, and satisfy Company debts and obligations, with the goal to minimize Company liabilities.

g.  Hire attorneys to defend lawsuits against the Company.

h.  Keep the Company's current counsel, Goodkind & Florio PA, retained to represent the Company in connection with the Plan and the closings on the sale or assignment of Company Assets in furtherance of the Plan, including but not limited to due diligence and contract negotiations.

i.  Hire accountants to assess the current financial condition of the Company, prepare current financial statements and tax returns, if and as deemed necessary, and assist with accounting tasks for the duration of the Plan.

j.  Determine the employees and staff of Company to retain or, at any time, terminate.   Judge Fine may, in his discretion, pay small severances to non-officer Company employees or staff who are terminated.

k.  Borrow money on behalf of the Company to execute or fund, or in furtherance of, the Plan.

l.  Subject to the remainder of this paragraph, Judge Fine shall close on the sale of the Company's and its subsidiaries' or Affiliate's, including LV Bayshore Sponsor, LLC and LV

12382855-5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP                    LV00011195

Bayshore Partners, LLC, and Location Equity Holdings, LLC, entire ownership interest (the "Bayshore Interest") in 551 Bayshore Partners, LLC ("Bayshore") to ██████████ ("██████████") and ██████████ ("██████████"), existing investors in Bayshore (or to either of their respective assignees) for $2.3 million in the aggregate. As a result of this sale, ██████████ and ██████████ shall own 100% of Bayshore. As soon as reasonably practical, Judge Fine shall require the Company to cooperate with ██████████ and ██████████ in furtherance of their due diligence efforts on the real property (the "Bayshore Property") that is the subject of the Purchase and Sale Agreement between Bayshore Concepts, LLC and Location Acquisitions, LLC (as amended, the "PSA"), the Bayshore Interest and other matters. It is understood and agreed that the following conditions shall be satisfied prior to any obligation for ██████████ and ██████████ to close: (a) each of ██████████ and ██████████ shall be fully satisfied with the results of their due diligence; and (b) each of ██████████ and ██████████ shall be able to simultaneously close on the Bayshore Interest and on the Bayshore Property, and in the case of the Bayshore Property, on terms at least as favorable as those provided for in the PSA. Any or all of the forgoing conditions to closing may be waived by ██████████ and ██████████ for any reasons at their sole and absolute discretion. Subject to the foregoing, Judge Fine shall ensure Company's cooperation to facilitate an expeditious and timely closing. In addition, Judge Fine shall cause to be transferred into and assigned to 551 Bayshore SPE, LLC, the buyer under the PSA, or to such other entity as ██████████ and ██████████ may determine, all contracts, agreements, development rights, entitlements and other related rights and benefits relating to or affecting the property that is the subject of the PSA (the "Property"), to the extent that any of the same are owned by any Affiliate of Location Ventures, LLC, as ██████████ and ██████████ may request. Prior to the closing, Judge Fine shall cause Location Acquisitions, LLC to terminate the Memorandum of Agreement recorded against the Property.

m. From the funds of the Company, pay the creditors of the Company in the following order: (1) any remaining taxes owed to the IRS and/or the State of Florida, plus a reserve of a sufficient amount to pay interest and penalties related thereto, as determined appropriate by Judge Fine in his

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP                    LV00011196

EXECUTION COPY

discretion following consultation with appropriate professionals, and (2) subject to establishing a reserve from available funds to pay ongoing and anticipated operating and wind down expenses of the Company in an amount as determined appropriate by Judge Fine in his discretion following consultation with appropriate professionals, a combination, or some or all, of (a) amounts owed to Woodforest National Bank, (b) confirmed Amex charges of the Company (i.e., Amex charges of Company expenses) that remain outstanding and unpaid; and (c) other creditors, as they may be negotiated and deemed appropriate by Judge Fine as part of the wind down process.

n.  Distribute all Company funds generated from the Plan, after payment or satisfaction of all debts and obligations, and Plan expenses, to Members in the following order of priority and for the following amounts:

    i.  First to Members, excluding Patriots United LLC (collectively, such Members excluding Patriots, shall be referred to as "Preferred Members"), *pro rata*, until the Preferred Members are repaid the amount of their capital investment in the Company;

    ii.  Second, only after repayment of 100% of the capital investment of each of the Preferred Members, payment to Patriots United, LLC up to the amount of its capital investment;

    iii.  Third, after payment to Patriots United LLC, any additional funds shall be distributed to all Members *pro-rata* according to ownership interest at the time that this Plan is effectuated based on capital investment, as of the date of this Resolution.

**The provisions of the above subsection (n) above shall be deemed to be an agreed to amendment to Article 5 of the Company's Second Amended and Restated Operating Agreement.**

**BE IT FURTHER RESOLVED,** the undersigned Members have determined that it is desirable and in the best interests of the Company and the Members of the Company to authorize, ratify and confirm the compensation for Judge Fine, retroactive to July 17, 2023, as follows: $180,000 for his services through January 16, 2024 that was presented and approved at the Members' meeting of July 14, 2023.

4

12382855-5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP   LV00011197

EXECUTION COPY

**BE IT FURTHER RESOLVED** that the actions taken to date or hereafter taken in furtherance of the appointment of Judge Fine as Manager of the Company, or as part of the wind down plan, are, have been and/or will be in the best interest of the Company and are hereby in all respects ratified, approved, confirmed and adopted as the actions of the Company.

**(signature pages follow)**

5

12382855-5

EXECUTION COPY

**IN WITNESS WHEREOF**, the undersigned Members of the Company do hereby approve and adopt the foregoing resolutions effective as of July 14, 2023.



6

12382855-5

EXECUTION COPY



7

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

LV00011200

# 2023-08-30 Member Consent Wind Down (EXECUTION COPY)(Form)

Final Audit Report                                    2023-08-31

| | |
|---|---|
| Created: | 2023-08-30 |
| By: | ████████████████████ |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAgazzFAYMGdIRVVYfCpXjcPDyNoai8Ynk |

"2023-08-30 Member Consent Wind Down (EXECUTION COPY )(Form)" History



 **Adobe Acrobat Sign**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP



Agreement completed.
2023-08-31 - 2:49:38 PM GMT

**Adobe Acrobat Sign**

EXECUTION COPY

## WRITTEN CONSENT IN LIEU OF A MEETING OF
## THE MEMBERS OF
## LOCATION VENTURES, LLC

Pursuant to Section 605.04073(4) of the Florida Revised Limited Liability Company Act (the "Act"), the undersigned Members of Location Ventures, LLC, a Florida limited liability company (the "Company"), do hereby waive any and all formalities and requirements for notice, consent to the Company actions specified below, and do hereby adopt the following resolutions in lieu of holding a meeting of the Members of the Company.  Certain capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Company's Second Amended and Restated Operating Agreement dated as of April 19, 2021 (the "Operating Agreement").

**WHEREAS**, Rishi Kapoor ("Rishi") has been replaced as the Manager of the Company and, in his place, Retired Judge Alan Fine ("Judge Fine") has been appointed as Manager pursuant to and in accordance with Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement;

**WHEREAS**, the undersigned Members have also determined that it is desirable and in the best interests of the Company and the Members for the Company to wind down, sell all or substantially all of its assets (including, without limitation, all assets of the Company's direct and indirect subsidiaries and all of its and their respective contracts and contract rights, collectively, the "Assets"), settle and satisfy Company obligations, and to take such further action  in accordance with the powers and authority granted to Judge Fine below (collectively, the "Plan");

**WHEREAS,** the undersigned members have determined that Members holding at least seventy five percent (75%) of the Membership Units entitled to vote on the Plan have approved the resolutions herein;

**NOW THEREFOR, BE IT RESOLVED**, the Plan is hereby approved in all respects;

**BE IT FURTHER RESOLVED**, that Judge Fine in his capacity as Manager is hereby authorized and directed to take action in furtherance of execution of the Plan and, in furtherance thereof, shall have the following powers and authority without the necessity for further approval of the Members of the Company (for purposes of the following grant of authority, the Company shall mean and include the Company and the direct and indirect subsidiaries of the Company):

    a.  Take control of all Company bank accounts, remove all existing signatories to existing accounts, and/or open new accounts and transfer existing Company funds to new accounts under his sole control as Manager.

1

12382855-5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP          LV00011203

EXECUTION COPY

    b.  Enter into contracts on behalf of the Company to hire brokers and other professionals to market and list the Assets for sale or assignment.

    c.  Determine the listing price of the Assets, accept or reject offers to buy any of the Assets, and/or negotiate offers and terms for the purchase and sale or assignment of any of the Assets and consummate such transactions.

    d.  Decide whether to invest further Company funds to finish construction of Assets in "Villa Valencia" and "Stewart Avenue", and to retain, supervise and pay trade creditors to finish such construction.

    e.  Make operational decisions, as necessary, to protect Asset values, *e.g.*, pay HOA fees to protect Assets from liens.

    f.  Contact existing Company creditors and negotiate, settle, and satisfy Company debts and obligations, with the goal to minimize Company liabilities.

    g.  Hire attorneys to defend lawsuits against the Company.

    h.  Keep the Company's current counsel, Goodkind & Florio PA, retained to represent the Company in connection with the Plan and the closings on the sale or assignment of Company Assets in furtherance of the Plan, including but not limited to due diligence and contract negotiations.

    i.  Hire accountants to assess the current financial condition of the Company, prepare current financial statements and tax returns, if and as deemed necessary, and assist with accounting tasks for the duration of the Plan.

    j.  Determine the employees and staff of Company to retain or, at any time, terminate.   Judge Fine may, in his discretion, pay small severances to non-officer Company employees or staff who are terminated.

    k.  Borrow money on behalf of the Company to execute or fund, or in furtherance of, the Plan.

    l.  Subject to the remainder of this paragraph, Judge Fine shall close on the sale of the Company's and its subsidiaries' or Affiliate's, including LV Bayshore Sponsor, LLC and LV

12382855-5

2

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

LV00011204

Bayshore Partners, LLC, and Location Equity Holdings, LLC, entire ownership interest (the "Bayshore Interest") in 551 Bayshore Partners, LLC ("Bayshore") to FTL Bayshore ██████████ ("██████") and ██████████ ("██████████"), existing investors in Bayshore (or to either of their respective assignees) for $2.3 million in the aggregate. As a result of this sale, ██████████ and ██████ shall own 100% of Bayshore. As soon as reasonably practical, Judge Fine shall require the Company to cooperate with ██████████ and ██████████ in furtherance of their due diligence efforts on the real property (the "Bayshore Property") that is the subject of the Purchase and Sale Agreement between Bayshore Concepts, LLC and Location Acquisitions, LLC (as amended, the "PSA"), the Bayshore Interest and other matters. It is understood and agreed that the following conditions shall be satisfied prior to any obligation for ██████████ and ██████████ to close: (a) each of ██████████ and ██████ shall be fully satisfied with the results of their due diligence; and (b) each of ██████████ and ██████████ shall be able to simultaneously close on the Bayshore Interest and on the Bayshore Property, and in the case of the Bayshore Property, on terms at least as favorable as those provided for in the PSA. Any or all of the forgoing conditions to closing may be waived by ██████████ and ██████████ for any reasons at their sole and absolute discretion. Subject to the foregoing, Judge Fine shall ensure Company's cooperation to facilitate an expeditious and timely closing. In addition, Judge Fine shall cause to be transferred into and assigned to 551 Bayshore SPE, LLC, the buyer under the PSA, or to such other entity as ██████████ and ██████████ may determine, all contracts, agreements, development rights, entitlements and other related rights and benefits relating to or affecting the property that is the subject of the PSA (the "Property"), to the extent that any of the same are owned by any Affiliate of Location Ventures, LLC, as ██████████ and ██████████ may request. Prior to the closing, Judge Fine shall cause Location Acquisitions, LLC to terminate the Memorandum of Agreement recorded against the Property.

m.  From the funds of the Company, pay the creditors of the Company in the following order: (1) any remaining taxes owed to the IRS and/or the State of Florida, plus a reserve of a sufficient amount to pay interest and penalties related thereto, as determined appropriate by Judge Fine in his

3

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

LV00011205

EXECUTION COPY

discretion following consultation with appropriate professionals, and (2) subject to establishing a reserve from available funds to pay ongoing and anticipated operating and wind down expenses of the Company in an amount as determined appropriate by Judge Fine in his discretion following consultation with appropriate professionals, a combination, or some or all, of (a) amounts owed to Woodforest National Bank, (b) confirmed Amex charges of the Company (i.e., Amex charges of Company expenses) that remain outstanding and unpaid; and (c) other creditors, as they may be negotiated and deemed appropriate by Judge Fine as part of the wind down process.

n. Distribute all Company funds generated from the Plan, after payment or satisfaction of all debts and obligations, and Plan expenses, to Members in the following order of priority and for the following amounts:

    i. First to Members, excluding Patriots United LLC (collectively, such Members excluding Patriots, shall be referred to as "Preferred Members"), *pro rata*, until the Preferred Members are repaid the amount of their capital investment in the Company;

    ii. Second, only after repayment of 100% of the capital investment of each of the Preferred Members, payment to Patriots United, LLC up to the amount of its capital investment;

    iii. Third, after payment to Patriots United LLC, any additional funds shall be distributed to all Members *pro-rata* according to ownership interest at the time that this Plan is effectuated based on capital investment, as of the date of this Resolution.

**The provisions of the above subsection (n) above shall be deemed to be an agreed to amendment to Article 5 of the Company's Second Amended and Restated Operating Agreement.**

**BE IT FURTHER RESOLVED,** the undersigned Members have determined that it is desirable and in the best interests of the Company and the Members of the Company to authorize, ratify and confirm the compensation for Judge Fine, retroactive to July 17, 2023, as follows: $180,000 for his services through January 16, 2024 that was presented and approved at the Members' meeting of July 14, 2023.

4

12382855-5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP                    LV00011206

EXECUTION COPY

**BE IT FURTHER RESOLVED** that the actions taken to date or hereafter taken in furtherance of the appointment of Judge Fine as Manager of the Company, or as part of the wind down plan, are, have been and/or will be in the best interest of the Company and are hereby in all respects ratified, approved, confirmed and adopted as the actions of the Company.

**(signature pages follow)**

5

12382855-5

EXECUTION COPY

**IN WITNESS WHEREOF**, the undersigned Members of the Company do hereby approve and adopt the foregoing resolutions effective as of July 14, 2023.



6

12382855-5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP     LV00011208

EXECUTION COPY



7

12382855-5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

LV00011209

EXECUTION COPY

**WRITTEN CONSENT IN LIEU OF A MEETING OF
THE MEMBERS OF
LOCATION VENTURES, LLC**

Pursuant to Section 605.04073(4) of the Florida Revised Limited Liability Company Act (the "Act"), the undersigned Members of Location Ventures, LLC, a Florida limited liability company (the "Company"), do hereby waive any and all formalities and requirements for notice, consent to the Company actions specified below, and do hereby adopt the following resolutions in lieu of holding a meeting of the Members of the Company.  Certain capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Company's Second Amended and Restated Operating Agreement dated as of April 19, 2021 (the "Operating Agreement").

**WHEREAS**, Rishi Kapoor ("Rishi") has been replaced as the Manager of the Company and, in his place, Retired Judge Alan Fine ("Judge Fine") has been appointed as Manager pursuant to and in accordance with Sections 6.6(a)(i) and 7.1(d) of the Operating Agreement;

**WHEREAS**, the undersigned Members have also determined that it is desirable and in the best interests of the Company and the Members for the Company to wind down, sell all or substantially all of its assets (including, without limitation, all assets of the Company's direct and indirect subsidiaries and all of its and their respective contracts and contract rights, collectively, the "Assets"), settle and satisfy Company obligations, and to take such further action  in accordance with the powers and authority granted to Judge Fine below (collectively, the "Plan");

**WHEREAS,** the undersigned members have determined that Members holding at least seventy five percent (75%) of the Membership Units entitled to vote on the Plan have approved the resolutions herein;

**NOW THEREFOR, BE IT RESOLVED**, the Plan is hereby approved in all respects;

**BE IT FURTHER RESOLVED**, that Judge Fine in his capacity as Manager is hereby authorized and directed to take action in furtherance of execution of the Plan and, in furtherance thereof, shall have the following powers and authority without the necessity for further approval of the Members of the Company (for purposes of the following grant of authority, the Company shall mean and include the Company and the direct and indirect subsidiaries of the Company):

   a.  Take control of all Company bank accounts, remove all existing signatories to existing accounts, and/or open new accounts and transfer existing Company funds to new accounts under his sole control as Manager.

1

12382855-5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP   LV00011210

EXECUTION COPY

b. Enter into contracts on behalf of the Company to hire brokers and other professionals to market and list the Assets for sale or assignment.

c. Determine the listing price of the Assets, accept or reject offers to buy any of the Assets, and/or negotiate offers and terms for the purchase and sale or assignment of any of the Assets and consummate such transactions.

d. Decide whether to invest further Company funds to finish construction of Assets in "Villa Valencia" and "Stewart Avenue", and to retain, supervise and pay trade creditors to finish such construction.

e. Make operational decisions, as necessary, to protect Asset values, *e.g.,* pay HOA fees to protect Assets from liens.

f. Contact existing Company creditors and negotiate, settle, and satisfy Company debts and obligations, with the goal to minimize Company liabilities.

g. Hire attorneys to defend lawsuits against the Company.

h. Keep the Company's current counsel, Goodkind & Florio PA, retained to represent the Company in connection with the Plan and the closings on the sale or assignment of Company Assets in furtherance of the Plan, including but not limited to due diligence and contract negotiations.

i. Hire accountants to assess the current financial condition of the Company, prepare current financial statements and tax returns, if and as deemed necessary, and assist with accounting tasks for the duration of the Plan.

j. Determine the employees and staff of Company to retain or, at any time, terminate.   Judge Fine may, in his discretion, pay small severances to non-officer Company employees or staff who are terminated.

k. Borrow money on behalf of the Company to execute or fund, or in furtherance of, the Plan.

l. Subject to the remainder of this paragraph, Judge Fine shall close on the sale of the Company's and its subsidiaries' or Affiliate's, including LV Bayshore Sponsor, LLC and LV

2

12382855-5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

LV00011211

Bayshore Partners, LLC, and Location Equity Holdings, LLC, entire ownership interest (the "Bayshore Interest") in 551 Bayshore Partners, LLC ("Bayshore") to ███████████ ("██████████") and ██████ ("███████████"), existing investors in Bayshore (or to either of their respective assignees) for $2.3 million in the aggregate. As a result of this sale, ██████████ and ██████ ██████ shall own 100% of Bayshore. As soon as reasonably practical, Judge Fine shall require the Company to cooperate with ████████ and ████████ in furtherance of their due diligence efforts on the real property (the "Bayshore Property") that is the subject of the Purchase and Sale Agreement between Bayshore Concepts, LLC and Location Acquisitions, LLC (as amended, the "PSA"), the Bayshore Interest and other matters. It is understood and agreed that the following conditions shall be satisfied prior to any obligation for ████████ and ████████ to close: (a) each of ████████ and ████████ shall be fully satisfied with the results of their due diligence; and (b) each of ████████ and ████████ shall be able to simultaneously close on the Bayshore Interest and on the Bayshore Property, and in the case of the Bayshore Property, on terms at least as favorable as those provided for in the PSA. Any or all of the forgoing conditions to closing may be waived by ████████ and ████████ for any reasons at their sole and absolute discretion. Subject to the foregoing, Judge Fine shall ensure Company's cooperation to facilitate an expeditious and timely closing. In addition, Judge Fine shall cause to be transferred into and assigned to 551 Bayshore SPE, LLC, the buyer under the PSA, or to such other entity as ████████ and ████████ may determine, all contracts, agreements, development rights, entitlements and other related rights and benefits relating to or affecting the property that is the subject of the PSA (the "Property"), to the extent that any of the same are owned by any Affiliate of Location Ventures, LLC, as ████████ and ████████ may request. Prior to the closing, Judge Fine shall cause Location Acquisitions, LLC to terminate the Memorandum of Agreement recorded against the Property.

m. From the funds of the Company, pay the creditors of the Company in the following order: (1) any remaining taxes owed to the IRS and/or the State of Florida, plus a reserve of a sufficient amount to pay interest and penalties related thereto, as determined appropriate by Judge Fine in his

3

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

EXECUTION COPY

discretion following consultation with appropriate professionals, and (2) subject to establishing a reserve from available funds to pay ongoing and anticipated operating and wind down expenses of the Company in an amount as determined appropriate by Judge Fine in his discretion following consultation with appropriate professionals, a combination, or some or all, of (a) amounts owed to Woodforest National Bank, (b) confirmed Amex charges of the Company (i.e., Amex charges of Company expenses) that remain outstanding and unpaid; and (c) other creditors, as they may be negotiated and deemed appropriate by Judge Fine as part of the wind down process.

n.  Distribute all Company funds generated from the Plan, after payment or satisfaction of all debts and obligations, and Plan expenses, to Members in the following order of priority and for the following amounts:

    i.  First to Members, excluding Patriots United LLC (collectively, such Members excluding Patriots, shall be referred to as "Preferred Members"), *pro rata*, until the Preferred Members are repaid the amount of their capital investment in the Company;

    ii.  Second, only after repayment of 100% of the capital investment of each of the Preferred Members, payment to Patriots United, LLC up to the amount of its capital investment;

    iii.  Third, after payment to Patriots United LLC, any additional funds shall be distributed to all Members *pro-rata* according to ownership interest at the time that this Plan is effectuated based on capital investment, as of the date of this Resolution.

**The provisions of the above subsection (n) above shall be deemed to be an agreed to amendment to Article 5 of the Company's Second Amended and Restated Operating Agreement.**

**BE IT FURTHER RESOLVED,** the undersigned Members have determined that it is desirable and in the best interests of the Company and the Members of the Company to authorize, ratify and confirm the compensation for Judge Fine, retroactive to July 17, 2023, as follows: $180,000 for his services through January 16, 2024 that was presented and approved at the Members' meeting of July 14, 2023.

4

12382855-5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP                                     LV00011213

EXECUTION COPY

**BE IT FURTHER RESOLVED** that the actions taken to date or hereafter taken in furtherance of the appointment of Judge Fine as Manager of the Company, or as part of the wind down plan, are, have been and/or will be in the best interest of the Company and are hereby in all respects ratified, approved, confirmed and adopted as the actions of the Company.

**(signature pages follow)**

5

12382855-5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

LV00011214

EXECUTION COPY

**IN WITNESS WHEREOF**, the undersigned Members of the Company do hereby approve and adopt the foregoing resolutions effective as of July 14, 2023.



6

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP          LV00011215

EXECUTION COPY



7

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

LV00011216

See Exhibit 3
Location Ventures, LLC
100%
Location Equity Holdings, LLC
28.57%
All Other Class A Investors
71.43%
See Exhibit 1
Class A Investors
70%
See Exhibit 3
Location Ventures, LLC
100%
Location GP Sponsor, LLC
36.369%
Brij Kapoor
50%
Rishi Kapoor
50%
Kapoor Capital, LLC
9.091%
All Other Members
54.54%
See Exhibit 2
URBIN Founders Group, LLC
Rishi Kapoor, Manager
30%
Halpern Family Trust
7.428%
Thomas J. Tharrington
4.456%
URBIN, LLC
88.116%%
Class B Investors
63%
URBIN, LLC
(Class A)
37%
URBIN Coconut Grove Partners, LLC
100%
URBIN Commodore SPE, LLC
100%
3138 Ground/Office Lease
URBIN Ventures, LLC
100%
3166 + 3170/Yoga
URBIN Commodore Residential SPE, LLC
100%
Condo Units
URBIN Commodore Restaurant SPE, LLC
100%
3120 Ground Lease/Restaurant

EXHIBIT

FF

LV00010749

**EXHIBIT 1**

| Name of Member | Membership Units/% |
|---|---|
| Kapoor Capital, LLC | 7.14%/Class A |
|  | 7.14%/Class A |
|  | 7.14%/Class A |
|  | 7.14%/Class A |
|  | 7.14%/Class A |
|  | 7.14%/Class A |
|  | 7.14%/Class A |
|  | 0.268% Class A |
|  | 0.89%/Class A |

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP          LV00010750

LV00010749

**EXHIBIT 2**

| Name of Member | Membership Units/% |
|---|---|
| ███████████ | 9.09% |
| ███████████ | 9.09% |
| ███████████ | 9.09% |
| ███████████ | 9.09% |
| ███████████ | 9.09% |
| ███████████ | 9.09% |

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP          LV00010751

LV00010749

**EXHIBIT 3**
(Ownership of Location Ventures, LLC)



FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP              LV00010752

LV00010749

**EXHIBIT 3A**

| Name of Member | Membership Units/% |
|---|---|
| | 3.00 Membership Units/2.515% |
| | 5.00 Membership Units/4.191% |
| | 2.00 Membership Units/1.677% |
| | 0.75 Membership Units/0.629% |
| | 0.50 Membership Units/0.419% |
| | 0.625 Membership Units/0.524% |
| | 1.00 Membership Units/0.838% |
| | 2.50 Membership Units/2.096% |
| | 6.00 Membership Units/5.030% |
| | 36.002 Membership Units/30.180% |
| | 0.120 Membership Units/0.101% |
| | 0.180 Membership Units/0.151% |
| | 0.180 Membership Units/0.151% |
| | 0.500 Membership Units/0.419% |
| | 0.971 Membership Units/0.814% |
| | 0.485 Membership Units/0.407% |

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP          LV00010753

CP-000003240

## Location Ventures, LLC



As of 5/19/2023

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

LV00011015

CP-000003240



**Location Ventures, LLC**
**Members**

As of 5/10/2023

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

LV00011016

### Location Ventures, LLC
### Other Investors - from Page 2



| Investor | % of Location Ventures LLC |
| --- | --- |
|  | 0.188% |
|  | 0.522% |
|  | 3.130% |
|  | 0.782% |
|  | 0.188% |
|  | 0.652% |
|  | 5.313% |
|  | 1.013% |
|  | 0.522% |
|  | 6.260% |
|  | 5.217% |
|  | 0.506% |
|  | 0.156% |
|  | 2.111% |
|  | 0.125% |

As of 5/10/2023

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

# KING & SPALDING

King & Spalding LLP
Southeast Financial Center
200 S Biscayne Boulevard
Suite 4700
Miami, FL 33131

Tel: +1 305 462 6000
Fax: +1 305 462 6100
www.kslaw.com

Brian P. Miller
Direct Dial: +1 305 462 6028
bmiller@kslaw.com

March 31, 2023

<u>VIA EMAIL</u>  (**cortezjo@sec.gov; ENF-CPU@sec.gov**)
Jordan A. Cortez
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, FL 33131

  **Re:** *In the Matter of Location Ventures, LLC* **(FL-04347)**

Dear Jordan:

  As you know, King & Spalding LLP represents Location Ventures LLC in connection with the above-referenced investigation.  We write in response to your Subpoena dated March 13, 2023, which requested Location Ventures LLC provide certain information and documents (the "Requests").

  Enclosed please find documents Bates labeled LV00000001- LV00004886, which Location Ventures LLC is producing in response to Requests Nos. 1, 2, and 3.  We will provide the password to access this production separately.  Location Ventures LLC intends to produce additional documents on a rolling basis in response to the Requests.

  Data from QuickBooks is being produced as follows:

| | |
|---|---|
| 8325 Cheryl Lane LLC | LV00000001 |
| 515 Valencia Partners LLC | LV00000002 |
| 551 Bayshore Partners LLC | LV00000003 |
| 800 Dixie Partners LLC | LV00000004 |
| 1505 Ponce Partners LLC | LV00000005 |
| Location Capital LLC | LV00000006 |
| Location Development LLC | LV00000007 |
| Location Properties LLC | LV00000008 |
| Location Ventures LLC | LV00000009 |
| Stewart Grove 1 LLC | LV00000010 |
| Urbin Coconut Grove Partners LLC | LV00000011 |



**EXHIBIT**

**AAA**

**FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP**

Jordan A. Cortez
March 31, 2023
Page -2-

| | |
|---|---|
| Urbin Coral Gables Partners LLC | LV00000012 |
| Urbin LLC | LV00000013 |
| Urbin Miami Beach Partners LLC | LV00000014 |
| Stewart Grove 2 LLC | LV00000015 |

Data from Sage is being produced as follows:

Files in .CSV format are LV00000016 - LV00000033.  Files in .PDF format are LV00000034 - LV00004886.

In preparing this production, every effort was made to identify and withhold any materials that may be privileged.  If, however, any such materials have been included in the production, we request to be notified immediately and that either the materials be returned or destroyed immediately.

\*       \*       \*       \*

Pursuant to the Freedom of Information Act and 17 C.F.R. § 200.83, on behalf of ourselves and Location Ventures LLC, we hereby claim that all materials provided to the Staff during the course of its investigation, including this letter are entitled to confidential treatment pursuant to the Freedom of Information Act.  This claim of confidentiality shall continue indefinitely unless we advise you otherwise. Should the Commission receive any request for these documents pursuant to the Freedom of Information Act or pursuant to a third-party subpoena or document demand (from a party other than a federal, state, local or foreign law enforcement agency, or a governmental entity, or a self- regulatory organization), we expect that we will be given notice and an opportunity to object to such disclosure.  In such event, we request that the Staff promptly contact me by email or telephone rather than rely upon the United States mail for such notice.  We also request that, at the conclusion of your investigation into this matter, all documents produced be returned to our firm.

Should you have any questions, please do not hesitate to contact me. Thank you.

Very truly yours,

Brian P. Miller

cc:      Ross E. Linzer, Esq. (rlinzer@kslaw.com)

# KING & SPALDING

King & Spalding LLP
Southeast Financial Center
200 S Biscayne Boulevard
Suite 4700
Miami, FL 33131

Tel: +1 305 462 6000
Fax: +1 305 462 6100
www.kslaw.com

Brian P. Miller
Direct Dial: +1 305 462 6028
bmiller@kslaw.com

April 14, 2023

VIA EMAIL  (cortezjo@sec.gov; ENF-CPU@sec.gov)
Jordan A. Cortez
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, FL 33131

Re:   *In the Matter of Location Ventures, LLC* (FL-04347)

Dear Jordan:

As you know, King & Spalding LLP represents Location Ventures LLC in connection with the above-referenced investigation.  We write in response to your Subpoena dated March 13, 2023, which requested Location Ventures LLC provide certain information and documents (the "Requests").

Enclosed please find documents Bates labeled LV00004887 - LV00009947, which are income tax returns during the Relevant Period produced in response to Request No. 4.

| Entity Name | Begin Bates | End Bates |
|---|---|---|
| 1505 Ponce Partners LLC | LV00004887 | LV00004902 |
| 515 Valencia Partners LLC | LV00004903 | LV00005257 |
| 551 Bayshore Partners LLC | LV00005258 | LV00005275 |
| 800 Dixie Partners LLC | LV00005276 | LV00007847 |
| 8325 Cheryl Lane LLC | LV00007848 | LV00007944 |
| Location Ventures LLC | LV00007945 | LV00008506 |
| Stewart Grove 1 LLC | LV00008507 | LV00008602 |
| Stewart Grove 2 LLC | LV00008603 | LV00008676 |
| Urbin Coconut Grove Partners LLC | LV00008677 | LV00008814 |
| Urbin Coral Gables Partners LLC | LV00008815 | LV00009002 |
| Urbin Founders Group LLC | LV00009003 | LV00009236 |
| Urbin LLC | LV00009237 | LV00009912 |
| Urbin Miami Beach Partners LLC | LV00009913 | LV00009947 |

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

Jordan A. Cortez
April 14, 2023
Page -2-

We will provide the password to access this production separately. Location Ventures LLC intends to produce additional documents on a rolling basis in response to the Requests.

In response to Request No. 5, the following reflects our current understanding regarding various bank accounts.

The following accounts with Bank of America, N.A. were opened online and remain open:

| Entity | Account Number | Date Opened |
|--------|----------------|-------------|
| 1505 Ponce Partners LLC | 6996 | 9/14/2021 |
| 515 Valencia Partners LLC | 2161 | 3/23/2018 |
| 8325 Cheryl Lane LLC | 6042 | 2016 |
| Location Capital LLC | 8410 | 2016 |
| Location Development LLC | 5835 | 5/24/2017 |
| Location Properties LLC | 8258 | 7/5/2017 |
| LV Bayshore Partners LLC | 2626 | 12/2/2020 |
| Stewart Grove 1 LLC | 2744 | 5/5/2016 |
| 800 Dixie Partners LLC | 6868 | 4/3/2017 |
| 800 Dixie Partners LLC | 9134 | 7/5/2017 |
| LV Bayshore SPE LLC | 6257 | 3/21/2023 |
| Urbin Coconut Grove Partners LLC | 3302 | 10/4/2019 |
| Urbin Coral Gables Partners LLC | 3014 | 10/4/2019 |
| Urbin LLC | 3263 | 10/4/2019 |
| Urbin Miami Beach Partners LLC | 5493 | 12/2/2020 |

The following accounts with Biscayne Bank – which was acquired by First Citizens Bank – were opened at 2601 S Bayshore Dr, Miami, FL 33133, and are now closed:

| Entity | Account Number | Date Opened |
|--------|----------------|-------------|
| Urbin Coconut Grove Partners LLC | 0033 | 2018 |
| 515 Valencia Partners LLC | 7583 | 7/19/2018 |
| Urbin Coral Gables Partners LLC | 6536 | 7/2/2018 |
| Urbin LLC | 6544 | 2018 |

**FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP**

Jordan A. Cortez
April 14, 2023
Page -3-

The following accounts with Woodforest National Bank were opened online and remain open:

| Entity | Account Number | Date Opened |
|---|---|---|
| Location Properties LLC | 1385 | 12/16/2020 |
| Location Development LLC | 1393 | 12/16/2020 |
| Location Capital LLC | 1450 | 12/21/2020 |
| LV Bayshore Partners LLC | 1880 | 1/27/2021 |
| Urbin LLC | 6400 | 9/29/2021 |
| Urbin Coconut Grove Partners LLC | 0725 | 5/5/2022 |
| 551 Bayshore Partners LLC | 1160 | 6/10/2022 |
| Urbin Miami Beach Partners LLC | 1236 | 6/17/2022 |
| 1505 Ponce Partners LLC | 1244 | 6/17/2022 |
| Location Ventures Resources LLC | 1459 | 7/12/2022 |
| Urbin Commodore Residential II SPE, LLC | 2879 | 10/7/2022 |

The following accounts with Woodforest National Bank were opened online and are now closed:

| Entity | Account Number | Date Opened |
|---|---|---|
| Stewart Grove 1 LLC | 6319 | 9/27/2021 |
| 800 Dixie Partners LLC | 6392 | 9/28/2021 |

In response to Request No. 18, during the Subpoena's Relevant Period, the following firms have been engaged: (i) Pedro M. Gallinar & Associates, P.A.; (ii) Berkowitz Pollack Brant Advisors + CPAs; and (iii) CohnReznick.

In preparing this production, every effort was made to identify and withhold any materials that may be privileged. If, however, any such materials have been included in the production, we request to be notified immediately and that either the materials be returned or destroyed immediately.

*       *       *       *

Pursuant to the Freedom of Information Act and 17 C.F.R. § 200.83, on behalf of ourselves and Location Ventures LLC, we hereby claim that all materials provided to the Staff during the course of its investigation, including this letter are entitled to confidential treatment pursuant to the Freedom of Information Act. This claim of confidentiality shall continue indefinitely unless we advise you otherwise. Should the Commission receive any request for these documents pursuant to the Freedom of Information Act or pursuant to a third-party subpoena or document demand (from a party other than a federal, state, local or foreign law enforcement agency, or a governmental entity, or a self- regulatory organization), we expect that

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

Jordan A. Cortez
April 14, 2023
Page -4-

we will be given notice and an opportunity to object to such disclosure.  In such event, we request that the Staff promptly contact me by email or telephone rather than rely upon the United States mail for such notice.  We also request that, at the conclusion of your investigation into this matter, all documents produced be returned to our firm.

      Should you have any questions, please do not hesitate to contact me. Thank you.

      Very truly yours,

      Brian P. Miller

cc:    Ross E. Linzer, Esq. (rlinzer@kslaw.com)

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

# KING & SPALDING

King & Spalding LLP
Southeast Financial Center
200 S Biscayne Boulevard
Suite 4700
Miami, FL 33131

Tel: +1 305 462 6000
Fax: +1 305 462 6100
www.kslaw.com

Brian P. Miller
Direct Dial: +1 305 462 6028
bmiller@kslaw.com

May 3, 2023

VIA EMAIL  (cortezjo@sec.gov; ENF-CPU@sec.gov)
Jordan A. Cortez
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, FL 33131

Re:   *In the Matter of Location Ventures, LLC* (FL-04347)

Dear Jordan:

As you know, King & Spalding LLP represents Location Ventures LLC in connection with the above-referenced investigation. We write in response to your Subpoena dated March 13, 2023, which requested Location Ventures LLC provide certain information and documents (the "Requests").

Enclosed please find documents Bates labeled LV00009948 - LV00010688, which are operating agreements produced in response to Request No. 8.

| Entity Name | Begin Bates | End Bates |
|---|---|---|
| 1505 Ponce Partners, LLC | LV00009948 | LV00010089 |
| 1505 Ponce SPE, LLC | LV00010090 | LV00010105 |
| 515 Valencia Partners, LLC | LV00010106 | LV00010153 |
| 515 Valencia Sponsor, LLC | LV00010154 | LV00010156 |
| 551 Bayshore Partners, LLC | LV00010157 | LV00010232 |
| 800 Dixie Manager, LLC | LV00010233 | LV00010262 |
| 800 Dixie Partners LLC | LV00010263 | LV00010306 |
| 800 Dixie SPE. LLC | LV00010307 | LV00010311 |
| 8325 Cheryl Lane, LLC | LV00010312 | LV00010314 |
| Location Acquisitions, LLC | LV00010315 | LV00010317 |
| Location Capital LLC | LV00010318 | LV00010320 |
| Location Construction LLC | LV00010321 | LV00010323 |

Jordan A. Cortez
May 3, 2023
Page -2-

| Location Development LLC | LV00010324 | LV00010326 |
|---|---|---|
| Location Equity Holdings, LLC | LV00010327 | LV00010329 |
| Location GP Sponsor, LLC | LV00010330 | LV00010332 |
| Location Properties LLC | LV00010333 | LV00010335 |
| Location Ventures Management LLC | LV00010336 | LV00010338 |
| Location Ventures Marketing LLC | LV00010339 | LV00010341 |
| Location Ventures Resources, LLC | LV00010342 | LV00010344 |
| LV Bayshore SPE, LLC | LV00010345 | LV00010347 |
| LV Montana Phase I LLC | LV00010348 | LV00010389 |
| Redlands Phase I, LLC | LV00010390 | LV00010437 |
| Stewart Grove 1 LLC | LV00010438 | LV00010440 |
| Stewart Grove 2 LLC | LV00010441 | LV00010443 |
| Urbin Miami Beach II Phase I, LLC | LV00010444 | LV00010445 |
| Urbin Miami Beach Mezzanine, LLC | LV00010446 | LV00010448 |
| Urbin Miami Beach Owner, LLC | LV00010449 | LV00010451 |
| 619 Breakers SPE, LLC | LV00010452 | LV00010500 |
| Location Ventures LLC | LV00010501 | LV00010688 |

We will provide the password to access this production separately. Location Ventures LLC intends to produce additional documents on a rolling basis in response to the Requests.

In preparing this production, every effort was made to identify and withhold any materials that may be privileged. If, however, any such materials have been included in the production, we request to be notified immediately and that either the materials be returned or destroyed immediately.

*       *       *       *

Pursuant to the Freedom of Information Act and 17 C.F.R. § 200.83, on behalf of ourselves and Location Ventures LLC, we hereby claim that all materials provided to the Staff during the course of its investigation, including this letter are entitled to confidential treatment pursuant to the Freedom of Information Act. This claim of confidentiality shall continue indefinitely unless we advise you otherwise. Should the Commission receive any request for these documents pursuant to the Freedom of Information Act or pursuant to a third-party subpoena or document demand (from a party other than a federal, state, local or foreign law enforcement agency, or a governmental entity, or a self- regulatory organization), we expect that we will be given notice and an opportunity to object to such disclosure. In such event, we request that the Staff promptly contact me by email or telephone rather than rely upon the United States mail for such notice. We also request that, at the conclusion of your investigation into this matter, all documents produced be returned to our firm.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

Jordan A. Cortez
May 3, 2023
Page -3-

Should you have any questions, please do not hesitate to contact me. Thank you.

Very truly yours,

Brian P. Miller

cc:    Ross E. Linzer, Esq. (rlinzer@kslaw.com)

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

# KING & SPALDING

King & Spalding LLP
Southeast Financial Center
200 S Biscayne Boulevard
Suite 4700
Miami, FL 33131

Tel:  +1 305 462 6000
Fax:  +1 305 462 6100
www.kslaw.com

Brian P. Miller
Direct Dial:  +1 305 462 6028
bmiller@kslaw.com

May 15, 2023

VIA EMAIL  (cortezjo@sec.gov; ENF-CPU@sec.gov)
Jordan A. Cortez
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, FL 33131

Re:    *In the Matter of Location Ventures, LLC* (FL-04347)

Dear Jordan:

As you know, King & Spalding LLP represents Location Ventures LLC in connection with the above-referenced investigation.  We write in response to your Subpoena dated March 13, 2023, which requested Location Ventures LLC provide certain information and documents (the "Requests").

Enclosed please find documents Bates labeled LV00010689 - LV00011012, which are operating agreements produced in response to Request No. 8.

| Entity Name | Begin Bates | End Bates |
|---|---|---|
| Urbin Coconut Grove Partners LLC | LV00010689 | LV00010843 |
| Urbin, LLC | LV00010844 | LV00010884 |
| Urbin Founders Group, LLC | LV00010885 | LV00010923 |
| Urbin Coral Gables Partners, LLC | LV00010924 | LV00010956 |
| Urbin Miami Beach Partners, LLC | LV00010957 | LV00011012 |

Enclosed also please find documents Bates labeled LV00011013 - LV00011014, which are the current capitalization tables related to operating agreements also produced in response to Request No. 8.

| Entity Name | Begin Bates | End Bates |
|---|---|---|
| Urbin Founders Group, LLC | LV00011013 | LV00011013 |
| Urbin, LLC | LV00011014 | LV00011014 |

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

Jordan A. Cortez
May 15, 2023
Page -2-

We will provide the password to access this production separately.

Enclosed also please find documents Bates labeled LV00011015 - LV00011017, which are organizational charts that have been created in response to Request No. 6.

Location Ventures LLC intends to produce additional documents on a rolling basis in response to the Requests.

In preparing this production, every effort was made to identify and withhold any materials that may be privileged. If, however, any such materials have been included in the production, we request to be notified immediately and that either the materials be returned or destroyed immediately.

*       *       *       *

Pursuant to the Freedom of Information Act and 17 C.F.R. § 200.83, on behalf of ourselves and Location Ventures LLC, we hereby claim that all materials provided to the Staff during the course of its investigation, including this letter are entitled to confidential treatment pursuant to the Freedom of Information Act. This claim of confidentiality shall continue indefinitely unless we advise you otherwise. Should the Commission receive any request for these documents pursuant to the Freedom of Information Act or pursuant to a third-party subpoena or document demand (from a party other than a federal, state, local or foreign law enforcement agency, or a governmental entity, or a self- regulatory organization), we expect that we will be given notice and an opportunity to object to such disclosure. In such event, we request that the Staff promptly contact me by email or telephone rather than rely upon the United States mail for such notice. We also request that, at the conclusion of your investigation into this matter, all documents produced be returned to our firm.

Should you have any questions, please do not hesitate to contact me. Thank you.

Very truly yours,

for

Brian P. Miller

cc:      Ross E. Linzer, Esq. (rlinzer@kslaw.com)

# KING & SPALDING

King & Spalding LLP
Southeast Financial Center
200 S Biscayne Boulevard
Suite 4700
Miami, FL 33131

Tel: +1 305 462 6000
Fax: +1 305 462 6100
www.kslaw.com

Brian P. Miller
Direct Dial: +1 305 462 6028
bmiller@kslaw.com

June 16, 2023

<u>VIA EMAIL</u>  (**cortezjo@sec.gov; ENF-CPU@sec.gov**)
Jordan A. Cortez
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, FL 33131

> **Re:**   *In the Matter of Location Ventures, LLC* **(FL-04347)**

Dear Jordan:

As you know, King & Spalding LLP represents Location Ventures LLC in connection with the above-referenced investigation.  We write in response to your Subpoena dated March 13, 2023, which requested Location Ventures LLC provide certain information and documents (the "Requests").

Enclosed please find documents Bates labeled LV00011018 - LV00011024, which are Location Ventures LLC's financial statements and reports, in response to Request No. 1.  We will provide the password to access this production separately.

Location Ventures LLC intends to produce additional documents on a rolling basis in response to the Requests.

In preparing this production, every effort was made to identify and withhold any materials that may be privileged.  If, however, any such materials have been included in the production, we request to be notified immediately and that either the materials be returned or destroyed immediately.

<div align="center">*       *       *       *</div>

Pursuant to the Freedom of Information Act and 17 C.F.R. § 200.83, on behalf of ourselves and Location Ventures LLC, we hereby claim that all materials provided to the Staff during the course of its investigation, including this letter are entitled to confidential treatment pursuant to the Freedom of Information Act.  This claim of confidentiality shall continue indefinitely unless we advise you otherwise. Should the Commission receive any request for

Jordan A. Cortez
June 16, 2023
Page -2-

these documents pursuant to the Freedom of Information Act or pursuant to a third-party subpoena or document demand (from a party other than a federal, state, local or foreign law enforcement agency, or a governmental entity, or a self-regulatory organization), we expect that we will be given notice and an opportunity to object to such disclosure. In such event, we request that the Staff promptly contact me by email or telephone rather than rely upon the United States mail for such notice. We also request that, at the conclusion of your investigation into this matter, all documents produced be returned to our firm.

Should you have any questions, please do not hesitate to contact me. Thank you.

Very truly yours,

Brian P. Miller

cc:    Ross E. Linzer, Esq. (rlinzer@kslaw.com)

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

# KING & SPALDING

King & Spalding LLP
Southeast Financial Center
200 S Biscayne Boulevard
Suite 4700
Miami, FL 33131

Tel: +1 305 462 6000
Fax: +1 305 462 6100
www.kslaw.com

Brian P. Miller
Direct Dial: +1 305 462 6028
bmiller@kslaw.com

June 26, 2023

VIA EMAIL  (cortezjo@sec.gov; ENF-CPU@sec.gov)
Jordan A. Cortez
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, FL 33131

      Re:   *In the Matter of Location Ventures, LLC* (FL-04347)

Dear Jordan:

      As you know, King & Spalding LLP represents Location Ventures LLC in connection with the above-referenced investigation.  We write in response to your Subpoena dated March 13, 2023, which requested Location Ventures LLC provide certain information and documents (the "Requests").

      Enclosed please find documents Bates labeled LV00011025 - LV00011101, which Location Ventures LLC is producing in response to Request Nos. 1, 2, and 3.  We will provide the password to access this production separately.

      Location Ventures LLC intends to produce additional documents on a rolling basis in response to the Requests.

      Data from QuickBooks is being produced as follows:

| Entity | Beginning Bates | Ending Bates |
|---|---|---|
| 1505 Ponce Partners LLC | LV00011025 | LV00011026 |
| 515 Valencia Partners, LLC | LV00011027 | LV00011028 |
| 551 Bayshore Partners LLC | LV00011029 | LV00011030 |
| 800 Dixie Partners | LV00011031 | LV00011032 |
| 8325 Cheryl Lane | LV00011033 | LV00011034 |
| Location Development LLC | LV00011035 | LV00011036 |
| Location Properties LLC | LV00011037 | LV00011038 |

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

Jordan A. Cortez
June 26, 2023
Page -2-

| | | |
|---|---|---|
| Stewart Grove 1 | LV00011039 | LV00011040 |
| Stewart Grove 2 LLC | LV00011041 | LV00011042 |
| Urbin Coconut Grove Partners, LLC | LV00011043 | LV00011044 |
| Urbin Coral Gables Partners LLC | LV00011045 | LV00011046 |
| Urbin Miami Beach Partners LLC | LV00011047 | LV00011048 |
| Urbin, LLC | LV00011049 | LV00011050 |
| 1505 Ponce Partners LLC | LV00011051 | LV00011051 |
| 515 Valencia Partners, LLC | LV00011052 | LV00011052 |
| 551 Bayshore Partners LLC | LV00011053 | LV00011053 |
| 800 Dixie Partners | LV00011054 | LV00011054 |
| 8325 Cheryl Lane | LV00011055 | LV00011055 |
| Location Properties LLC | LV00011056 | LV00011056 |
| Location Development LLC | LV00011057 | LV00011057 |
| Stewart Grove 1 LLC | LV00011058 | LV00011058 |
| Stewart Grove 2 LLC | LV00011059 | LV00011059 |
| Urbin Coconut Grove Partners, LLC | LV00011060 | LV00011060 |
| Urbin Coral Gables Partners LLC | LV00011061 | LV00011061 |
| Urbin Miami Beach Partners LLC | LV00011062 | LV00011062 |
| Urbin, LLC | LV00011063 | LV00011063 |

Data from Sage is being produced as follows:

| Entity | Beginning Bates | Ending Bates |
|---|---|---|
| 1505 Ponce Partners LLC | LV00011064 | LV00011065 |
| 551 Bayshore Partners LLC | LV00011066 | LV00011067 |
| Location Capital LLC | LV00011068 | LV00011069 |
| Location Development LLC | LV00011070 | LV00011071 |
| Location Properties LLC | LV00011072 | LV00011073 |
| Location Ventures Resources, LLC | LV00011074 | LV00011075 |
| Redlands Phase I LLC | LV00011076 | LV00011077 |
| Stewart Grove 1 LLC | LV00011078 | LV00011079 |
| Urbin Coconut Grove Partners, LLC | LV00011080 | LV00011081 |
| Urbin Coral Gables Partners LLC | LV00011082 | LV00011083 |
| Urbin Miami Beach II Phase I LLC | LV00011084 | LV00011085 |
| Urbin Miami Beach Partners LLC | LV00011086 | LV00011087 |
| Urbin, LLC | LV00011088 | LV00011089 |
| 1505 Ponce Partners LLC | LV00011090 | LV00011090 |
| 551 Bayshore Partners LLC | LV00011091 | LV00011091 |
| Location Capital LLC | LV00011092 | LV00011092 |

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

Jordan A. Cortez
June 26, 2023
Page -3-

| Location Development LLC | LV00011093 | LV00011093 |
|---|---|---|
| Location Properties LLC | LV00011094 | LV00011094 |
| Location Ventures Resources, LLC | LV00011095 | LV00011095 |
| Redlands Phase I LLC | LV00011096 | LV00011096 |
| Stewart Grove 1 LLC | LV00011097 | LV00011097 |
| Urbin Coconut Grove Partners, LLC | LV00011098 | LV00011098 |
| Urbin Coral Gables Partners LLC | LV00011099 | LV00011099 |
| Urbin LLC | LV00011100 | LV00011100 |
| Urbin Miami Beach Partners LLC | LV00011101 | LV00011101 |

In preparing this production, every effort was made to identify and withhold any materials that may be privileged. If, however, any such materials have been included in the production, we request to be notified immediately and that either the materials be returned or destroyed immediately.

\*      \*      \*      \*

Pursuant to the Freedom of Information Act and 17 C.F.R. § 200.83, on behalf of ourselves and Location Ventures LLC, we hereby claim that all materials provided to the Staff during the course of its investigation, including this letter are entitled to confidential treatment pursuant to the Freedom of Information Act. This claim of confidentiality shall continue indefinitely unless we advise you otherwise. Should the Commission receive any request for these documents pursuant to the Freedom of Information Act or pursuant to a third-party subpoena or document demand (from a party other than a federal, state, local or foreign law enforcement agency, or a governmental entity, or a self- regulatory organization), we expect that we will be given notice and an opportunity to object to such disclosure. In such event, we request that the Staff promptly contact me by email or telephone rather than rely upon the United States mail for such notice. We also request that, at the conclusion of your investigation into this matter, all documents produced be returned to our firm.

Should you have any questions, please do not hesitate to contact me. Thank you.

Very truly yours,

Brian P. Miller

cc:    Ross E. Linzer, Esq. (rlinzer@kslaw.com)

# KING & SPALDING

King & Spalding LLP
Southeast Financial Center
200 S Biscayne Boulevard
Suite 4700
Miami, FL 33131

Tel: +1 305 462 6000
Fax: +1 305 462 6100
www.kslaw.com

Brian P. Miller
Direct Dial: +1 305 462 6028
bmiller@kslaw.com

July 11, 2023

VIA EMAIL  (cortezjo@sec.gov; ENF-CPU@sec.gov)
Jordan A. Cortez
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, FL 33131

**Re:**   *In the Matter of Location Ventures, LLC* **(FL-04347)**

Dear Jordan:

As you know, King & Spalding LLP represents Location Ventures LLC in connection with the above-referenced investigation.  We write in response to your Subpoena dated March 13, 2023, which requested Location Ventures LLC provide certain information and documents (the "Requests").

Enclosed please find documents Bates labeled LV00011102 - LV00011121, which Location Ventures LLC is producing in response to Request Nos. 1 and 2.  We will provide the password to access this production separately.  These documents contain financial data that correspond with specific entities as follows:

| Entity | Beginning Bates | Ending Bates |
|---|---|---|
| 1505 Ponce Partners LLC | LV00011102 | LV00011105 |
| 551 Bayshore Partners LLC | LV00011106 | LV00011108 |
| 800 Dixie Partners LLC | LV00011109 | LV00011113 |
| Urbin Coconut Grove Partners, LLC | LV00011114 | LV00011117 |
| Urbin Miami Beach Partners LLC | LV00011118 | LV00011121 |

Location Ventures LLC intends to produce additional documents on a rolling basis in response to the Requests.

Jordan A. Cortez
July 11, 2023
Page -2-

In preparing this production, every effort was made to identify and withhold any materials that may be privileged.  If, however, any such materials have been included in the production, we request to be notified immediately and that either the materials be returned or destroyed immediately.

\*        \*        \*        \*

Pursuant to the Freedom of Information Act and 17 C.F.R. § 200.83, on behalf of ourselves and Location Ventures LLC, we hereby claim that all materials provided to the Staff during the course of its investigation, including this letter are entitled to confidential treatment pursuant to the Freedom of Information Act.  This claim of confidentiality shall continue indefinitely unless we advise you otherwise. Should the Commission receive any request for these documents pursuant to the Freedom of Information Act or pursuant to a third-party subpoena or document demand (from a party other than a federal, state, local or foreign law enforcement agency, or a governmental entity, or a self- regulatory organization), we expect that we will be given notice and an opportunity to object to such disclosure.  In such event, we request that the Staff promptly contact me by email or telephone rather than rely upon the United States mail for such notice.  We also request that, at the conclusion of your investigation into this matter, all documents produced be returned to our firm.

Should you have any questions, please do not hesitate to contact me. Thank you.

Very truly yours,

Brian P. Miller

cc:    Ross E. Linzer, Esq. (rlinzer@kslaw.com)

FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP

# KING & SPALDING

King & Spalding LLP
Southeast Financial Center
200 S Biscayne Boulevard
Suite 4700
Miami, FL 33131

Tel: +1 305 462 6000
Fax: +1 305 462 6100
www.kslaw.com

Brian P. Miller
Direct Dial: +1 305 462 6028
bmiller@kslaw.com

October 26, 2023

<u>VIA EMAIL</u>  (**cortezjo@sec.gov**)
Jordan A. Cortez
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, FL 33131

> Re:   *In the Matter of Location Ventures, LLC* (**FL-04347**)

Dear Jordan:

As you know, King & Spalding LLP represents Location Ventures LLC in connection with the above-referenced investigation.

Enclosed please find documents Bates labeled LV00011124 - LV00011216, which contain written consents you have requested.

In preparing this production, every effort was made to identify and withhold any materials that may be privileged. If, however, any such materials have been included in the production, we request to be notified immediately and that either the materials be returned or destroyed immediately.

<p align="center">*     *     *     *</p>

Pursuant to the Freedom of Information Act and 17 C.F.R. § 200.83, on behalf of ourselves and Location Ventures LLC, we hereby claim that all materials provided to the Staff during the course of its investigation, including this letter are entitled to confidential treatment pursuant to the Freedom of Information Act. This claim of confidentiality shall continue indefinitely unless we advise you otherwise. Should the Commission receive any request for these documents pursuant to the Freedom of Information Act or pursuant to a third-party subpoena or document demand (from a party other than a federal, state, local or foreign law enforcement agency, or a governmental entity, or a self- regulatory organization), we expect that we will be given notice and an opportunity to object to such disclosure. In such event, we request that the Staff promptly contact me by email or telephone rather than rely upon the United

**FOIA CONFIDENTIAL TREATMENT REQUESTED BY KING & SPALDING LLP**

Jordan A. Cortez
October 26, 2023
Page -2-

States mail for such notice.  We also request that, at the conclusion of your investigation into this matter, all documents produced be returned to our firm.

      Should you have any questions, please do not hesitate to contact me. Thank you.

           Very truly yours,

           Brian P. Miller

cc:    Ross E. Linzer, Esq. (rlinzer@kslaw.com)

**Reference number**
D022423000628
**Court case number**
FL-04347
**Court or issuer**
U.S. Securities & Exchange Commission
**Court case name:**
DANIEL MOTHA

## DECLARATION OF BANK OF AMERICA BANK OFFICER AND/OR CUSTODIAN OF RECORDS

1.) Authority. I, Kristin Matysek, am a duly authorized bank officer and/or custodian of the records of Bank of America N.A with authority to execute this declaration and certify to the authenticity and accuracy of the records produced with this declaration.

2.) Records. The records produced herewith by Bank of America, N.A. are original documents or are true copies of records of a regularly conducted banking activity that:

a) Were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

b) Were made and kept in the course of regularly conducted banking activity by Bank of America, N.A. personnel or by persons acting under their control; and

c) Were made and kept by the regularly conducted activity of Bank of America N.A. as a regular practice, on or about the time of the act, condition, or event recorded.

| Account title: | Account ending in: | Document type: | Timeframe: |
|---|---|---|---|
| 1505 PONCE PARTNERS, LLC | 6996 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets, | 2021-09 - 2023-02 |
| 515 VALENCIA PARTNERS, LLC | 2161 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets, | 2018-03 - 2023-02 |
| 800 DIXIE PARTNERS LLC | 6868 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets, | 2018-01 - 2023-02 |
| 800 DIXIE PARTNERS LLC | 9134 | Statement Pages, Signature Card, Corporate Resolution, Wires, Deposits, Offsets, | 2018-01 - 2023-02 |
| 8325 CHERYL LANE LLC | 6042 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets, | 2018-01 - 2023-02 |
| LOCATION CAPITAL LLC | 8410 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets, | 2018-01 - 2023-02 |
| LOCATION DEVELOPMENT LLC | 5835 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets, | 2018-01 - 2023-02 |
| LOCATION PROPERTIES LLC | 8258 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets, | 2018-01 - 2023-02 |

**EXHIBIT**

**BBB**

| | | | |
|---|---|---|---|
| LV BAYSHORE PARTNERS LLC | 2626 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets, | 2020-01 - 2023-02 |
| STEWART GROVE 1 LLC | 2744 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets, | 2018-01 - 2023-02 |
| URBIN COCONUT GROVE PARTNERS LLC | 3302 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets, | 2018-01 - 2023-02 |
| URBIN CORAL GABLES PARTNERS LLC | 3014 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, | 2019-10 - 2023-02 |
| URBIN LLC | 3263 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets | 2019-10 - 2023-02 |
| URBIN MIAMI BEACH PARTNERS LLC | 5493 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets | 2018-01 - 2023-02 |

3.) Production.

___X___ The records produced herewith (together with any banking records produced by Bank of America N.A. previously in response to the subject request, order, or subpoena) constitute a complete production of bank records responsive to the subject request order or subpoena (or a complete production under the terms of a subject request, order, subpoena as subsequently limited by the issuer).

OR

_____ A thorough search has been conducted and no records could be located that are responsive to the subject request, order, or subpoena.

4.) I declare under penalty of perjury that the foregoing is true and correct.



Kristin Matysek
Digitally signed by Kristin Matysek
Date: 2023.04.03 10:38:12 -07'00'

Date: 04/03/2023          Signature:_____

Bank of America Legal Order Processing
Regarding reference number: D050523000326
Court case name: LV BAYSHORE SPE
Court case number: FL-04347
Court or issuer: U.S. Securities & Exchange
Commission

### DECLARATION OF BANK OF AMERICA BANK OFFICER AND/OR CUSTODIAN OF RECORDS

1.) Authority. I, Kacie Williams, am a duly authorized bank officer and/or custodian of the records of Bank of America N.A with authority to execute this declaration and certify to the authenticity and accuracy of the records produced with this declaration.

2.) Records. The records produced herewith by Bank of America, N.A. are original documents or are true copies of records of a regularly conducted banking activity that:
   a.) Were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;
   b.) Were made and kept in the course of regularly conducted banking activity by Bank of America, N.A. personnel or by persons acting under their control; and
   c.) Were made and kept by the regularly conducted activity of Bank of America N.A. as a regular practice, on or about the time of the act, condition, or event recorded.

Additional Comments:

| Account title | Account ending in | Document type | Timeframe |
|---|---|---|---|
| LV BAYSHORE SPE LLC | 6257 | Statement Pages Corporate Resolutions, IP Addresses, Signature Card, Wires | 03/2023 - 04/2023 03/2023 - 05/2023 |

3.) Production.
   __X__ The records produced herewith (together with any banking records produced by Bank of America N.A. previously in response to the subject request, order, or subpoena) constitute a complete production of bank records responsive to the subject request order or subpoena (or a complete production under the terms of a subject request, order, subpoena as subsequently limited by the issuer).

OR

   _____A thorough search has been conducted and no records could be located that are responsive to the subject request, order, or subpoena.

4.) I declare under penalty of perjury that the foregoing is true and correct.

Kacie Williams
Digitally signed by Kacie Williams
Date: 2023.05.17 09:28:05 -04'00'

Date:05/17/2023_____Signature: _____

STATE OF TEXAS                           §
                                         §
                                         §
                                         §
COUNTY OF MONTGOMERY                      §


### AFFIDAVIT OF THE CUSTODIAN OF BUSINESS RECORDS

Before me, the undersigned authority, personally appeared W. Jeffrey Levi, who, being by me duly sworn, deposed as follows:

My name is W. Jeffrey Levi. I am of sound mind, capable of making this Affidavit, and personally acquainted with the facts herein stated:

I am the custodian of records of Woodforest National Bank and am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities. Attached are electronic copies of records maintained by Woodforest National Bank. These are the original records or exact duplicates of the original records. The records were made at or near the time of each act, event, condition, opinion, or diagnosis set forth. The records were made by, or from information transmitted by, persons with knowledge of the matters set forth. The records were kept in the course of regularly conducted business activity. It is the regular practice of the business activity to make the records.

_____
Affiant

SWORN TO AND SUBSCRIBED before me on the 3rd day of March 2023.

_____
Notary Public - State of Texas

Notary's printed name:

Nelsy E. Palmero
My Commission Expires 03/29/2026

NELSY E. PALMERO
Notary Public, State of Texas
Comm. Expires 03-29-2026
Notary ID 12554459-8

**EXHIBIT**

CCC

STATE OF TEXAS                         §
                                       §
                                       §
                                       §
COUNTY OF MONTGOMERY                    §


## AFFIDAVIT OF THE CUSTODIAN OF BUSINESS RECORDS

Before me, the undersigned authority, personally appeared W. Jeffrey Levi, who, being by me duly sworn, deposed as follows:

My name is W. Jeffrey Levi. I am of sound mind, capable of making this Affidavit, and personally acquainted with the facts herein stated:

I am the custodian of records of Woodforest National Bank and am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities. Attached are electronic copies of records maintained by Woodforest National Bank. These are the original records or exact duplicates of the original records. The records were made at or near the time of each act, event, condition, opinion, or diagnosis set forth. The records were made by, or from information transmitted by, persons with knowledge of the matters set forth. The records were kept in the course of regularly conducted business activity. It is the regular practice of the business activity to make the records.



Affiant

SWORN TO AND SUBSCRIBED before me on ___28th Day of March 2023___

Notary Public - State of Texas

Notary's printed name:

Lucy Cooper
My commission expires 07/27/2024

LUCY COOPER
Notary Public, State of Texas
Comm. Expires 07-27-2024
Notary ID 12496908-0

STATE OF TEXAS        §
                                         §
                                         §
                                         §

**COUNTY OF MONTGOMERY**     §

## AFFIDAVIT OF THE CUSTODIAN OF BUSINESS RECORDS

Before me, the undersigned authority, personally appeared W. Jeffrey Levi, who, being by me duly sworn, deposed as follows:

My name is W. Jeffrey Levi. I am of sound mind, capable of making this Affidavit, and personally acquainted with the facts herein stated:

I am the custodian of records of Woodforest National Bank and am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities. Attached are electronic copies of records maintained by Woodforest National Bank. These are the original records or exact duplicates of the original records. The records were made at or near the time of each act, event, condition, opinion, or diagnosis set forth. The records were made by, or from information transmitted by, persons with knowledge of the matters set forth. The records were kept in the course of regularly conducted business activity. It is the regular practice of the business activity to make the records.

_____
Affiant

SWORN TO AND SUBSCRIBED before me on the 16th day of May 2023.

_____
Notary Public - State of Texas

Notary's printed name:

Nelsy E. Palmero
My Commission Expires 03/29/2026

NELSY E. PALMERO
Notary Public, State of Texas
Comm. Expires 03-29-2026
Notary ID 12554459-8



## AFFIDAVIT OF CUSTODIAN OF RECORDS

I, Nicole Cribbs, state as follows:

1.      I am employed by First-Citizens Bank & Trust Company as the AVP, Supervisor Deposit Operations. This affidavit is offered in response to the Subpoena (the "Subpoena") served in relation to the above-referenced matter on **April 21, 2023**. I make this affidavit based upon my own personal knowledge.

2.      In my capacity as AVP, Supervisor Deposit Operations, I am familiar with and have access to certain business records for **First Citizens Bank** including the business records sought by the Subpoena.

3.      Attached hereto are true and accurate copies of the business records which have been identified as being responsive to the Subpoena.

4.      The documents attached hereto and produced herewith are true and accurate copies of the business records which were made at or near the time of the acts, events, conditions, or opinions recited therein by or from information transmitted by a person with knowledge thereof; and were and are made and kept in the course of a regularly conducted business activity as a regular practice.

This the 3rd day of MAY, 2023.

_Nicole Cribbs_
Nicole Cribbs
AVP, Supervisor Deposit Operations

Sworn to and subscribed before me on
_May 3 2023_

_Courtney Best_
Notary Public
Wake County, North Carolina

My Commission Expires: _11/14/2026_

Sub. No. **22051**

1

**EXHIBIT**

**DDD**

SEC-PMGA-P-0000002

### DECLARATION OF PEDRO M. GALLINAR CERTIFYING RECORS
### OF REGULARLY CONDUCTED BUSINESS ACTIVITY

I, the undersigned, Pedro M. Gallinar, pursuant to 28 U.S.C. section 1746, declare that:

1. I am employed by Pedro M. Gallinar & Associates, P.A. as (Certified Public Accountant) and by reason of my position am authorized and qualified to make this declaration.
2. I further certify that the documents submitted herewith are true copies of records that were:
   a. made at or near the time of the occurrence of the matters set forth therein, by, or from information transmitted by, a person with knowledge of those matter;
   b. kept in the course of regularly conducted business activity; and
   c. made by regularly conducted activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 13, 2023.

Pedro M. Gallinar

**EXHIBIT**

EEE

SEC-PMGA-P-0000002