UNITED STAPTES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

RISHI KAPOOR; et al
,

Defendants.
_____/

# Emergency *Ex Parte* Motion for Asset Freeze and Other Relief Against Defendant Rishi Kapoor

# EXHIBIT 3

Declaration of Marguerite Cook

## DECLARATION OF MARGUERITE COOK

Pursuant to 28 U.S.C. §1746, the undersigned states as follows:

1. My name is Marguerite Cook. I am over the age of twenty-one (21). I have personal knowledge of the matters set forth herein.

2. I am a resident of Florida and at all relevant times resided in Broward County, Florida.

3. I am the former Chief Investor Relations Officer ("CIRO") of Location Ventures, LLC ("LV"). I served as LV's CIRO from May 1, 2022 until February 16, 2023. As LV's CIRO, I was hired to establish LV's investor relations department intended to provide transparent communications with investors, including launching an investor portal and providing accurate financial information both proactively and in accordance with the Operating Agreements to investors. I reported to Rishi Kapoor ("Kapoor"), LV's Chief Executive Officer. My actual duties, however, included preparing board meeting documents under Kapoor's direction, fielding investor questions, collecting answers from colleagues and different departments, and reporting back to investors with complete oversight and direction by Kapoor.

4. URBIN, LLC ("Urbin") is a division of LV. Therefore, when I refer to LV, generally, in this declaration, I am also referring to Urbin and its projects.

5. Shortly after I began working for LV, it became clear that Kapoor managed and controlled all aspects of LV's operations and their related projects. Kapoor required that he personally review and approve all communications with investors, including budgets and financial reports prior to them being sent to board members, investors, and prospective investors.

6. During my tenure, I personally observed Kapoor misrepresent, omit, and/or provide false and misleading information to LV's board of directors, investors and potential investors, including, but not limited to:

   a. In preparation for a July 2022 board meeting, Kapoor needed to compare budgeted costs and expected returns with actual costs for the Villa Valencia project to present to the board of directors. Jorge Chirinos ("Chirinos") provided the requested information with the actual costs to me, and I gave that information to Kapoor. When Kapoor received the requested information, he stated to Chirinos and me that Chirinos needed to reduce the costs represented as the actual costs when presented to the board.

   b. I witnessed Kapoor direct Jorge Chirinos ("Chirinos"), LV's former Controller, and Angel Garcia ("Garcia"), LV's former Chief Investment Officer, to provide financial reports that underreported the actual costs of the Villa Valencia project to investors. On September 19, 2022, Kapoor represented to me that updated expected returns on the Villa Valencia project had been communicated to investors. I knew this was false. The Villa Valencia project was over budget by at least $10 million and investors were asking me for updates, which would not have occurred if Kapoor had communicated the information to them.

**EXHIBIT 3**

c. To raise capital, Kapoor included *pro forma* budgets along with the operating agreements, including the Urbin Coconut Grove, Urbin Miami Beach, Villa Valencia, and 551 Bayshore projects, among others. Each project required significant planning, permitting, and construction. Ordinarily, a general contractor would provide estimated costs to be used in formulating *pro forma* budgets, which estimated the various costs to develop the projects. Kapoor intentionally understated construction costs and other estimated costs that were used in the *pro forma* in order to represent higher returns to solicit prospective investors. Subsequently, once Kapoor secured a GMP contract,[1] which would set a maximum cost for the developer for a given project, the costs previously provided to prospective investors were much lower than the actual costs identified in the GMP contract. In other words, the budgets were a fiction. This occurred across the board in almost every project. Myself and others asked Kapoor multiple times when he was going to inform investors about the increased actual costs, but to my knowledge, he never conveyed that information to investors. Even after Kapoor received the GMP and updated costs, he continued to use the *pro forma* budgets to raise money, including during a meeting with an existing investor who Kapoor was soliciting to make additional investments in December 2022. Kapoor also solicited an investment from a prospective investor in the Urbin Coral Gables project using a *pro forma* with inflated return expectations on December 1, 2022.

d. In or around late May 2022, Chirinos told me that the costs for the Urbin Miami Beach project were higher than what was represented in the *pro forma* for that project. Based on my position with LV, I had reviewed the *pro forma* and Operating Agreement for Urbin Miami Beach. The budget provided to prospective investors estimated construction costs for Urbin Miami Beach in the amount of $18 million. Construction costs came in at $31 million. In or around August 2022, Kapoor directed staff, including myself, verbally and by email, to brainstorm ways to get the GMP under $31 million.

e. I observed Kapoor misrepresent anticipated returns in *pro forma* budgets. For instance, LV board members told Kapoor that he was not authorized to use investor funds to engage in developing projects outside of Florida unless the returns for those projects exceeded returns forecasted for the South Florida projects. Prior to my joining LV, Kapoor obtained for LV a letter of intent to acquire properties in Montana to begin development. In May or June 2022, I observed Kapoor direct Frank Astor, President of LV's Single Family division, to change the numbers in the Montana *pro forma* budget to ensure the forecasted returns were at least as high as what Kapoor had previously represented to investors. Kapoor acknowledged to Frank Astor, Josh Baniak and myself that costs for the Montana project had increased, but that he could not inform the LV board of the increased costs because the expected returns were now lower than those of the South Florida projects.

f. Kapoor did not report accurate financial data to the Urbin Coconut Grove investors. In June 2022, investors asked when they would receive the first quarter

---

[1] A GMP contract refers to a guaranteed maximum price that a general contractor would charge for developer or property owner. Costs that exceed the maximum price typically are the responsibility of the general contractor.

financial reports for Urbin Coconut Grove, which were more than a month late at the time, and subsequently submitted questions to me regarding the project. As a result of their questions, investors eventually learned Kapoor had directed the project to incur additional debt without disclosing it to investors or getting approval. Kapoor also misled Urbin Coconut Grove investors by not disclosing changes to the timeline for the project. Specifically, Investor 14 had an option to redeem its investment if construction had not started on all three of the Urbin Coconut Grove properties by December 2022. Given the new timeline, construction would not begin on all three Urbin Coconut Grove properties by December 2022. Kapoor expressed to me and to others that he needed time to persuade Investor 14 not to exercise its option because Urbin Coconut Grove did not have the necessary funds. Kapoor instructed staff, including myself, not to inform investors regarding the new timeline for the project. In preparation for a call with the Urbin Coconut Grove Investor 14, Kapoor instructed me, as well as other staff members, not to discuss the updated timeline, and Kapoor misrepresented the timeline and the general outlook for the project during the call, which I attended. Kapoor also did not disclose that the costs for the project exceeded what had been disclosed to investors in the *pro forma* budget. On December 10, 2022, Kapoor sent an internal email, which I received from Jonathan Drujak, in which Kapoor acknowledged that the project was $8 million over the GMP and stated, "I will have some room to navigate an increased budget, but not $8M, so let's work together."

g.  Prior to my joining LV, Investor 49 had requested that LV send Investor 49 all agendas and meeting minutes for the 1505 Ponce, 551 Bayshore, and Urbin Miami Beach projects on a weekly basis. After joining LV, I learned from Claudia Mezerhane ("Mezerhane"), LV's former Chief Operating Officer, that Kapoor had directed staff to change the minutes and agendas before they were sent to Investor 49. Shortly after starting as CIRO, Kapoor directed me to do the same, which I refused to do. Instead, I notified Investor 49 that the agendas and meeting minutes it had previously received might not have been accurate.

h.  LV had a daily conference call in which the employees responsible for each project provided management with updates, discussed issues, and reported on the progress of their projects. Mezerhane instructed staff, including myself, not to provide any information on these daily calls after Investor 20, one of LV's largest investors, which had started attending. In response, I instructed staff to speak openly about the projects. After I left LV, Mezerhane emailed me asking how much information should be changed before sending the meeting minutes to Investor 49 because Kapoor directed her to change the minutes before sending. I responded that the minutes should not be changed because it is important for the investors to know what is happening with the projects.

i.  On or about December 1, 2022, I also witnessed Kapoor pitch a prospective investor concerning the Urbin Coral Gables project. As part of that presentation, Kapoor and Angel Garcia ("Garcia"), LV's former Chief Investment Officer, had created an investor memorandum that included an inflated anticipated return. When I questioned Garcia about the return being inflated, Garcia texted me that the memorandum reflected what Kapoor wanted to convey.

3

j. I also witnessed Kapoor misrepresent details regarding the real estate portfolio he managed. In the LV Sponsor resume, dated 2022 but created in February 2023, Kapoor represented he was responsible for leading the development of a $4 billion portfolio. I confronted him on this representation, as LV did not have $4 billion in assets. His response was that it reflected what he wanted to convey.

k. I also witnessed that Vivian Bonet ("Bonet"), LV's Chief Development Officer, always agreed with Kapoor and the positions he took during board meetings and within the office. After board meetings, when they took place, Kapoor met with me to discuss what had occurred. As a member of LV and a board member, Kapoor reported that Vivian always voted with Kapoor anytime a vote of the members was called. The only time I witnessed Bonet question Kapoor's positions was in private, where she complained to me about Kapoor changing the numbers in *pro forma* budgets.

I declare under the penalty of perjury that the foregoing is true, correct, and made in good faith. Executed on this 2nd day of December 2023.

Marguerite Cook

4