EXHIBIT
FL-04347
7
5/31/23
PENGAD 800-631-6989

## GLOBAL INTEREST PURCHASE AGREEMENT

This **GLOBAL INTEREST PURCHASE AGREEMENT** (this "Agreement") dated as of December 31, 2022 (the "Effective Date"), is made and entered into by and among (a) **The Dare Trust**, under an agreement of Trust dated April 22, 2020 (█████████████████ (b) **1505 Ponce, LLC**, a Delaware limited liability company (█████████ (c) █████████████ a Delaware limited liability company (█ ████████ (d) **Alex Kleyner** ("Alex"); (e) █████████ (█████████ (f) **Location Ventures, LLC**, a Florida limited liability company ("Location Ventures"); and (g) **Rishi Kapoor** ("Rishi" and together with Location Ventures, collectively, the "Buyers;" and individually, each is a "Buyer"). █████████, █████████, ██████ Alex and █ are are sometimes hereinafter referred to collectively as the "Seller Parties" and they each are sometimes hereinafter referred to individually as a "Seller Party". Each Seller Party and each Buyer are hereinafter sometimes individually referred to as a "Party" and they are hereinafter sometimes referred to collectively as the "Parties." Buyers are primary obligors under this Agreement and they are jointly and severally liable and responsible for all obligations of Buyers hereunder. Certain capitalized terms are either defined within the individual paragraphs of this Agreement or in Section 10.14 below. In addition, Urbin, LLC and Daniel Motha are made parties to this Agreement for certain provisions, as reflected below.

### WITNESSETH:

WHEREAS, (a) █████████ is the owner of a membership interest in Location Ventures comprising 32.93% of the membership units of Location Ventures (such membership units, the "LV Interest"); (b) ████ is the owner of a membership interest in 1505 Ponce Partners, LLC, a Florida limited liability company ("Ponce"), comprising 45% of the membership interests of Ponce (such interest, the "Ponce Interest"); and (c) █████████ is the owner of a membership interest in 551 Bayshore Partners, LLC, a Delaware limited liability company ("Bayshore"), comprising 28.736% of the membership interests of Bayshore (such interest, the "Bayshore Interest"; together with the LC Interest and the Ponce Interest, each, an "Redemption Interest"); and

WHEREAS, each of █████████ █████████ and █████████ are Affiliates of Alex and ████ (█ ████ and █████████ each an "Interest Seller" and collectively, the "Interest Sellers");

WHEREAS, the Seller Parties have determined that it is desirable for Interest Sellers to sell their Redemption Interest in accordance with the terms of this Agreement and for the Seller Parties to enter into covenants and agreements relating thereto, including releases, covenants of confidentiality and indemnification, among other provisions, all as provided in this Agreement;

WHEREAS, Buyers, without the Seller Parties' input or advice, have determined that it is desirable and in Buyers' best interests to purchase from each Interest Seller each Redemption Interest in accordance with the terms of this Agreement and for Buyers to enter into and/or cause certain of its Affiliates, as necessary to comply with this Agreement, to enter into, covenants and agreements relating thereto, including releases, covenants of confidentiality and indemnification, among other provisions, all as provided in this Agreement.

NOW, THEREFORE, in consideration of the mutual agreements contained herein, the Parties, intending to be legally bound hereby, agree as follows:

### ARTICLE I
### PURCHASE AND SALE OF MEMBERSHIP INTERESTS

1.1    Purchase of Membership Units. Upon the terms and subject to the conditions set forth in this Agreement, each applicable Interest Seller irrevocably agrees to transfer, sell and assign to Buyers, and Buyers irrevocably agree to purchase, acquire and assume, from each applicable Interest Seller, the applicable

EXHIBIT

CC

Redemption Interest, including, without limitation, each applicable Interest Seller's voting rights, capital accounts, rights to distributions of cash, property or otherwise, all rights to participate in and receive profits, losses, distributions of any kind and/or income, all rights to any member loans, and any other rights to which such Interest Seller ever had or may now or hereafter be entitled as a member of the applicable Subject Entity, and Buyers hereby irrevocably agree to assume and perform any and all obligations that the applicable Interest Seller may have to the applicable Subject Entity as a member of such Subject Entity or otherwise, whether or not arising under or pursuant to the Organizational Documents of such Subject Entity or otherwise. The purchase and sale of each Redemption Interest shall be in accordance with Sections 1.2, 1.3 and 1.4 below, as well as other relevant provisions of this Agreement.

     1.2    Purchase Price. The Parties agree that the purchase price to be paid by Buyers to an Interest Seller for each Interest Seller's Redemption Interest will be as follows (as to each Redemption Interest, the "Purchase Price" and the aggregate Purchase Price for all of the Redemption Interests shall be referred to as the "Full Purchase Price"):

     (a)    LV Interest. The Purchase Price payable for the LV Interest shall be $24,378,630.00 (the "LV Purchase Price");

     (b)    Bayshore Interest. The Purchase Price payable for the Bayshore Interest shall be $6,366,356.94 (the "Bayshore Purchase Price"); and

     (c)    Ponce Interest. The Purchase Price payable for the Ponce Interest shall be $10,182,246.57 (the "Ponce Purchase Price").

     1.3    Payment. The Purchase Price payable for each Redemption Interest shall be paid by Buyers in installments (each, an "Installment" and collectively, the "Installments") by wire transfers, in accordance with the applicable Interest Seller's wire instructions, in each case as attached to this Agreement as **Exhibit A** as follows:

     (a)    LV Purchase Price. Buyers shall pay to ▮▮▮▮ the LV Purchase Price for the LV Interest in the Installment Amounts and on the Payment Due Dates reflected below:

| Payment Due Date | Installment Amount | Proportionate Interest |
|---|---|---|
| 1/13/2023 | $2,000,000 | 2.70% |
| 1/31/2023 | $2,378,630 | 3.21% |
| 2/15/2023 | $2,500,000 | 3.38% |
| 2/28/2023 | $2,500,000 | 3.38% |
| 3/15/2023 | $5,000,000 | 6.75% |
| 5/15/2023 | $5,000,000 | 6.75% |
| 6/1/2023 | $5,000,000 | 6.75% |
| Total | | 32.93% |

     (b)    Bayshore Purchase Price. Buyers shall pay to ▮▮▮▮ the Bayshore Purchase Price for the Bayshore Interest in the Installment Amount and on the Payment Due Date reflected below:

| Payment Due Date | Installment Amount | Proportionate Interest |
|---|---|---|

2

FL-4347_Kleyner_LV_LLC_0001480

| 3/31/2023 | $6,366,356.94 | 28.736% |

(c)   Ponce Purchase Price. Buyers shall pay to ▮▮▮▮ the Ponce Purchase Price for the Ponce Interest in the Installment Amounts and on the Payment Due Dates reflected below:

| Payment Due Date | Installment Amount | Proportionate Interest |
|---|---|---|
| 4/15/2023 | $2,968,493.15 | 13.119% |
| 4/30/2023 | $7,213,753.42 | 31.881% |
| Total | | 45% |

(d)   Prepayment. Purchaser shall have the right to prepay, in full or in part, and without penalty, the Full Purchase Price or any Installments, but there shall be no discount for early payment of the Full Purchase Price or for the Purchase Price or any Installments for a Redemption Interest.

(e)   Extension Option. Buyers shall have one (1) option to extend the Payment Due Date for only one of the Installments set forth in Sections 1.3(a)-(c) above, which extension shall be for not more than thirty (30) days from the originally scheduled Payment Due Date for such Installment (the "Extension Option"), in exchange for a non-refundable extension fee of $500,000.00 (the "Extension Fee") payable to the Seller Party that is to receive the Installment which is to be extended; provided, however, in no event shall Buyers be permitted to exercise the Extension Option with respect to either of the Installments due and payable on the 1/13/2023 or 1/31/2023 Payment Due Dates. The Extension Fee shall not reduce the amount of the Installment that is being extended (nor shall the Extension Fee reduce any other Installments), but shall be in addition to all other Installments due and payable hereunder. The option to exercise the Extension Option may be exercised by Buyers' delivery to the Seller Parties, by not later than ten (10) days prior to the date of the Payment Due Date for the Installment that is to be extended, (i) written notice of such exercise identifying the Payment Due Date and Installment to be extended, and (ii) cleared funds (in accordance with the applicable Seller Party's written instructions) in the amount of the Extension Fee. Solely by way of example, if the Buyers exercise the Extension Option with respect to the $5,000,000 Installment due to the ▮▮▮▮ on 3/15/2023, the extension notice and the Extension Fee shall be delivered and paid to ▮▮▮▮ on or prior to March 5, 2023 and the Installment in the amount of $5,000,000 shall be due and payable on April 15, 2023 along with the April 15, 2023 Installment in the amount of $2,968,493.15 which is due and payable under Section 1.3(c), for a total of $7,968,493.15 being due and payable on April 15, 2023. Buyers' exercise of the Extension Option shall not operate to extend any other payments due under this Agreement, including, without limitation, any Payment Due Date set forth in Sections 1.3(a)-(c). Accordingly, under the previous example, exercise of the Extension Option with respect to the March 15, 2023 Installment payment shall not extend the due date for the Installment payment due and payable on March 31, 2023, or any other date. The Extension Fee shall be deemed earned when received and shall not be cancellable or refundable, in whole or in part.

(f)   Time of Essence. Time is of the essence for the timely payment of each Installment and the timely performance of each other obligation under this Agreement.

1.4   Assignment of Interests.

(a)   Provided that an applicable Interest Seller shall have received the full amount of a given Installment on the applicable Payment Due Date therefore, then such Interest Seller shall convey to the Buyers the Proportionate Interest corresponding to such Installment and Payment Due Date. As noted in Section 1.3(d), Buyers shall have the right to prepay the full amount of any given Installment(s) prior to the Payment Due Date for such Installment(s), in which case, the applicable Interest Seller(s) shall convey to the

3

Buyers the Proportionate Interest corresponding to such prepaid Installment(s) and Payment Due Date(s). The date upon which the full amount of a given Installment shall be received by a given Interest Seller shall be referred to as an "Interest Closing Date" and each closing for a Proportionate Interest to be conveyed by such Interest Seller shall be referred to as an "Interest Closing." On each Interest Closing Date, the applicable Interest Seller shall convey the applicable Proportionate Interest to the Buyers by the Seller Parties' counsel's delivery of an Assignment of Interest, in substantially the form attached hereto as Exhibit B, reflecting the applicable Proportionate Interest that is the subject of the Interest Closing Date. On each Interest Closing Date, a duly executed Assignment of Interest to convey the Proportionate Interest that is the subject of the Interest Closing shall be delivered by the Seller Party to Buyers.

(b)      Notwithstanding anything to the contrary, if an Interest Closing for any given Proportionate Interest shall not occur, then it is understood and agreed that the subject Proportionate Interest shall not be conveyed to Buyers and such Proportionate Interest and all associated rights relating thereto shall remain in and with the Interest Seller. By way of example only, and not in limitation of any other provision herein, upon receipt of the entire Bayshore Purchase Price, the Interest Sellers' counsel shall deliver to Buyers an executed Assignment of Interest to convey only the Bayshore Interest to Buyers. In further illustration of the preceding sentence, if Buyers shall pay six of the seven Installments on the LV Interest, then Buyers shall be entitled to receive Assignments of Interest for the six Proportionate Interests corresponding to the Installments paid, but Buyer would not be eligible for the remaining Proportionate Interest.

(c)      Buyers acknowledge and agree that the provisions of this Section 1.4 are fair and reasonable in light of the Seller Parties' forbearance from pursuing claims against Buyers for so long as Buyers continuously remain in compliance with the provisions of this Agreement in the effort to facilitate an amicable settlement of such claims in a timely fashion (the "Proposed Settlement").

(d)      The Installments and Proportionate Interests reflected in 1.3 above may not be subdivided or fractionalized and, without limiting the preceding, any partial payment on any Installment (whether as a normally scheduled payment or as a prepayment permitted under Section 1.3(d)) shall not require that the Interest Seller convey a portion of the Proportionate Interest to be conveyed. Rather, the Interest Seller may hold any partial payment on an Installment until the full amount of the Installment has been received by the Interest Seller before the Interest Seller shall have any obligation to convey the Proportionate Interest. Solely by way of example, if Buyers shall have paid the May 15, 2023 Installment in full and also pay an additional $2,500,000 against the June 1, 2023 Installment of $5,000,000, the Interest Sellers shall not be required to convey to the Buyers a fraction of the 6.75% Proportionate Interest and shall only have the obligation to convey the entire 6.75% Proportionate Interest at such time as the Interest Seller shall have received the full amount of the $5,000,000 Installment for such Proportionate Interest. No partial payment of any Installment shall accrue interest for or in favor of the Buyers.

1.5      <u>Interest on Unpaid Portion of Full Purchase Price</u>. Upon a default by Buyers, in addition to all other remedies available at law or in equity, interest on the unpaid portion of the Full Purchase Price shall accrue (and shall continue to accrue interest) at the highest non-usurious rate permitted by applicable law until paid in full. Interest accruing on any unpaid portion of Full Purchase Price shall be added to, and shall become part of, the Full Purchase Price.

1.6      <u>Resignation</u>. Effective upon the Final Closing Date (as defined in paragraph 6.1 below), Alex and ▮▮▮▮ shall formally resign from any and all positions then held with any LV Entity. Prior to such time, provided that Buyers remain in continuous compliance with the provisions of this Agreement, neither Alex nor ▮▮▮▮ shall vote on any matters brought before the board of managers of Location Ventures or an LV Entity pertaining to this Agreement; provided, however, the Seller Parties agree that (a) no vote by the ▮▮▮▮ of the LV Interest shall be required for Member Super Majority Approval (as defined in the Second Amended and Restated Limited Liability Company Operating Agreement of Location Ventures dated as of

4

April 21, 2021 (the "LV Operating Agreement")) to approve this Agreement or any actions necessary for Buyers to implement this Agreement and (b) no vote by Alex or ████ as Board Members of Location Ventures shall be required for Member Super Majority Approval (as defined in the LV Operating Agreement) to approve this Agreement or any actions necessary for Buyers to implement this Agreement. Buyers acknowledge and agree that neither Alex nor ████ have participated in any of the underlying discussions, analysis or deliberations for voting on or the approval of any matters directly or indirectly pertaining to this Agreement or the Interest Purchase Agreement for the redemption of membership interest in Redlands Phase I, LLC, including, without limitation any meeting of the board of directors of Location Ventures or any meeting of the members of Location Ventures, including any committee or sub-committee thereof. If, and to the extent that, any voting decisions are required by a board of managers or the equivalent for any matters in which Alex or ████ would be interested parties, Buyers represent and warrant that all appropriate actions and measures have already been taken, or they shall later take, timely, all appropriate actions and measures, to address the interested nature of the matter in accordance with applicable law, as well as any procedures established in the applicable Organizational Documents. Notwithstanding anything to the contrary, abstention from any vote or consent by either or both of Alex and ████ shall be of no consequence to any of their rights under the Organizational Documents or any other document, instrument or agreement of any LV Entity, and shall not lead to any declaration or determination that either Alex or ████ are non-responding members of the board.

1.7    Maintenance of Rights; Limitation of Obligations. In addition to Section 1.4(b) and not in limitation of such provision, the Parties acknowledge and agree that each Interest Seller's rights under any Organizational Document of any Subject Entity and any of the obligations that any Subject Entity may have to any Seller Party or its Affiliates under such Subject Entity's Organizational Documents shall remain in full force and effect unless and until the aggregate Purchase Price for the Redemption Interest of such Subject Entity has been received by the applicable Interest Seller; provided, however, that it is understood and agreed that no Interest Seller shall be entitled to distributions on any Proportionate Interest as to which the applicable Interest Seller shall have received full payment on the applicable Installment therefore. Notwithstanding anything to the contrary, no Interest Seller or any of its Affiliates, shall have any obligation to make any contribution to the capital of any Subject Entity or any loan to or other payment of any sort whatsoever with respect to any Subject Entity or any of its Affiliates and, notwithstanding any capital contribution by any other Person to any Subject Entity, the rights (voting, approval, economic or otherwise) of an Interest Seller and/or the percentage of interest represented by such Interest Seller's membership interest (and/or units) in or to any Subject Entity shall not be diluted or diminished in any respect, unless and until an Interest Closing shall have occurred with respect to a given Redemption Interest and then such changes shall be limited only to that Proportionate Interest of such Redemption Interest that is the subject of the Interest Closing.

ARTICLE II
REPRESENTATIONS AND WARRANTIES OF SELLER

Each Seller Party hereby represents and warrants to Buyers that the following representations and warranties are true and correct as of the Effective Date and as of each Interest Closing Date and shall survive each Interest Closing:

2.1    Non-Contravention. Each Seller Party has full unrestricted power and capacity to enter into this Agreement and to carry out the transactions contemplated hereby. Seller Party has duly executed and delivered this Agreement and this Agreement is the valid and binding obligation of such Seller Party, enforceable against such Seller Party in accordance with the terms herein, except as such enforceability may be limited by (a) bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to or limiting creditors' rights generally and (b) general principles of equity.

FL-4347_Kleyner_LV LLC_0001484

FL-4347_Kleyner_LV_LLC_0001480

2.2     Membership Interests.  Each Interest Seller is the direct record and beneficial owner of its respective Redemption Interest as of the Effective Date and will be the direct record and beneficial owner of such respective Redemption Interest as of the Interest Closing Date for such Redemption Interest, free and clear of all security interests, liens, adverse claims, pledges, hypothecations, options, rights of first refusals, and agreements or limitations on voting rights and charges, other than as expressly set forth in the Organizational Documents for the Subject Entity that is the subject of the applicable Redemption Interest.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyers hereby jointly and severally represent and warrant to each Seller Party that the following representations and warranties are true and correct as of the Effective Date and as of each Interest Closing Date, and each such representation and warranty shall survive each Interest Closing (and Urbin is hereby making the following representations and warranties in furtherance of its obligations in Section 4.22 and, in furtherance thereof, shall be deemed to be "Buyer" in so doing):

3.1     Authority; Non-Contravention.  Buyers have full unrestricted power and capacity to enter into this Agreement and to carry out the transactions contemplated hereby.  No approvals of any Person, other than such approvals as have already been obtained, are required for Buyers to execute and perform its obligations under this Agreement or to cause any other Person to perform or carry out any obligation required under this Agreement.  Buyers have duly executed and delivered this Agreement, and this Agreement is the valid and binding obligation of Buyers, enforceable against Buyers in accordance with the terms herein, except as such enforceability may be limited by (a) bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to or limiting creditors' rights generally and (b) general principles of equity.

3.2     Compliance.  To the Knowledge of Buyers, neither Buyers nor any LV Entity are in violation of, or default under, any applicable law, any agreement or instrument to which it is a party or by which it is bound or to which any of its properties or assets are subject.  The execution, delivery and the performance by Buyers, any LV Entity or any of their respective Affiliates of this Agreement and any related document and agreement required to be delivered hereunder, the consummation of the transactions contemplated herein and the compliance with the terms and provisions hereof, will not (a) violate the Organizational Documents of Buyers, any LV Entity or any of its or their Affiliates, (b) contravene any applicable law to which Buyers, any LV Entity or any of its or their Affiliates is subject or (c) violate, conflict with or result in any breach of any of the term, covenant, condition or provision of, or constitute a default under, or result in the creation or imposition of any security interest upon any of the property or assets of Buyers, any LV Entity or any of its or their Affiliates under, any indenture, mortgage, deed of trust, agreement or other instrument to which such Buyers, any LV Entity or any of its or their Affiliates is a party or by which its properties or assets are bound or may be subject.

3.3     Litigation.  There are no actions, suits, proceedings or investigations pending or, to the Knowledge of Buyers, threatened (in writing or verbally) against or affecting Buyers, any LV Entity or any of its or their Affiliates or its or their respective properties or assets, or to which Buyers, any LV Entity or any of its or their Affiliates or any of their properties or assets is subject, nor is there any outstanding judgment, order, writ, injunction, decree or award affecting Buyers, any LV Entity or any of its or their Affiliates or its or their properties or assets before any court or before any government authority, and Buyers do not have any Knowledge of any basis for any such suit, proceeding or investigation.

3.4     As-Is.  Buyers are substantial, sophisticated investors having such knowledge and experience in financial and business matters that they are capable of evaluating the merits and risks of the transaction contemplated herein without any input or advice, and without reliance on any matters, from any Seller Party.

6

Buyers acknowledge and agree that it is intimately familiar with the Redemption Interests and Subject Entities and has all information and materials necessary for Buyers to make the determination to enter into and perform its obligations under this Agreement. Other than as expressly provided in Article II above, Buyers have not relied upon any oral or written statements or representations made by a Seller Party or any of its or their respective representatives or agents in deciding to enter into this transaction. Without in any way limiting the generality of the foregoing, (a) no Seller Party has made any representations or warranties other than those representations and warranties expressly contained in Article II and (b) Buyers waive all defenses to the enforcement of this Agreement and claims based on or arising from all known or unknown alleged statements, representations, warranties or omissions from or by any Seller Party, and covenants not to assert claims or defenses based upon alleged negligent misrepresentation or fraud in the inducement to enter this Agreement. **Buyers acknowledge and agree that, except as expressly set forth in this Agreement, each Redemption Interest is being sold "AS IS, WHERE-IS, AND WITHOUT RECOURSE". Buyers have received the advice of counsel, and Buyers' counsel has reviewed, negotiated, participated in drafting and approved the terms of this Agreement prior to Buyers' execution of the Agreement.**

ARTICLE IV
BUYERS' COVENANTS

Buyers, jointly and severally, hereby covenant and agree that from the date hereof and until payment in full of the Full Purchase Price for all Redeemed Interests, Buyers will take, and will cause to be taken, all appropriate steps and actions to ensure that each LV Entity will comply with each of the following provisions:

4.1     Limitations on Salary, Remuneration, Compensation and Success Fees. No LV Entity shall pay, directly or indirectly, Rishi or Daniel Motha, or any of their respective Affiliates, any salary, distribution or any other remuneration, payment or compensation or make any loans, advances or the like, other than as follows: (a) salary of up to $400,000, on an annualized basis; (b) health care benefits as are available to other employees of Location Ventures generally; (c) any payment to which Rishi may be entitled as success fees or upon the occurrence of a liquidity event or the like ("Success Fee") but solely to the extent that such Success Fee is due and payable, directly or indirectly, by any Person that is not Location Ventures or any Existing Project Entity. Without limiting the preceding, it is expressly understood and agreed that Rishi shall not take any payment, advance or loan for any Success Fee or the like from any Subject Entity.

4.2     Forensic Accounting Audit. Buyers acknowledge and agree that Location Ventures shall submit to an independent forensic accounting audit involving each LV Entity, the cost and expense of which shall be borne by Location Ventures. Buyers represent and warrant that Location Ventures has engaged Berkowitz Pollack Brant Advisors + CPAs (the "Audit Firm") to undertake the independent audit as soon as reasonably practical and Rishi has paid the applicable retainer therefore. Buyers agree to cooperate in good faith with the Audit Firm to facilitate the Audit Firm's efforts and to expedite the completion of the audit as quickly as reasonably possible, including, without limitation, by making available to the Audit Firm all available resources and materials that the Audit Firm may request. Buyers covenant and agree that, commencing upon an event of default under this Agreement and at all times thereafter, (i) the Audit Firm shall update and provide each Seller Party or its representatives with past, present and future interim findings and final results of the audit, (ii) the Audit Firm shall answer such questions as any Seller Party or its representatives may have regarding the Audit Firm's interim findings and/or final report and (iii) Buyers waive any and all alleged rights to any assertion or right to claim the accountant-client privilege or any other privilege with respect to the audit, or the work of, or communications with the Audit Firm (including any attorney-client privilege, if the Audit Firm shall be engaged by or through Buyer's counsel). Moreover, Buyers shall direct the Audit Firm to maintain audit work files and, upon an event of default under this

7

Agreement, the Audit Firm shall make such work files, and all interim and final reports, available to each Seller Party or its representatives upon request.

4.3    Business and Existence. Each LV Entity will perform all things necessary to preserve and keep in full force and effect its existence, maintain the continuous operation of its business and comply with each requirement of applicable law. No LV Entity shall amend its Organizational Documents (other than to bring in new capital in connection with Buyers' performance under this Agreement), or change its jurisdiction of formation and each LV Entity shall comply in all material respects with all of the provisions of its Organizational Documents. No LV Entity shall make any new investment in any Person. No LV Entity shall make any material change to its business or operations. No LV Entity shall convey all or substantially all of its assets to any Person, except (i) upon payment of the Full Purchase Price to the Seller Parties or (ii) if the proceeds of such transaction are paid towards the Purchase Price and no such portion of said proceeds or other payments as a result of any such transaction are made to Rishi, Daniel Motha or any LV Entity or any of their respective Affiliates.

4.4    Indebtedness and Expenses. No LV Entity shall incur, create or suffer to exist any indebtedness, obligations and expenses, or incur, create or suffer to exist any indebtedness, obligations and expenses except reasonably necessary expenses incurred in the ordinary course of business or otherwise in connection with the performance of its obligations under this Agreement; by way of clarification the LV Entity shall be permitted to pursue the Current Projects in connection with their respective operating plan and budgets approved by all appropriate means (including by Seller Parties or their Affiliates) prior to the date of this Agreement (a true, correct and complete copy of which is attached hereto as Exhibit 4.4) (each, an "Approved Budget and Plan"). Each LV Entity shall pay and discharge all of its indebtedness, obligations and expenses promptly in accordance with the terms thereof and, in all cases, before the same shall become in default, as well as all lawful claims for labor, materials and supplies which otherwise, if unpaid, could reasonably be expected to become a lien upon its properties or assets or any part thereof. Each LV Entity shall remain in compliance with any operating budget and operating plan approved, prior to the Effective Date, by the applicable governing body and/or members of such LV Entity.

4.5    Taxes. Each LV Entity shall pay, prior to delinquency, all taxes, assessments and other governmental charges or levies which become due and payable by each LV Entity to any governmental body, entity, subdivision or department thereof under any law now or hereafter in force or effect, except any such taxes, assessments or charges (a) that are being diligently contested in good faith by appropriate proceedings and (b) for which adequate reserves in accordance with GAAP shall have been set aside on its books.

4.6    Notice of Event of Default. Each LV Entity shall furnish the Seller Parties with prompt written notice of the occurrence of any event of default or any event or condition the occurrence or existence of which would, with the giving of notice or lapse of time, or both, constitute an event of default under any material agreement to which any LV Entity is bound or a party or which would suffer a material adverse effect as a result of such event or condition.

4.7    Financial Statements; Additional Information; Further Assurances.

(a)    As soon as available and in any event within forty-five (45) days after the end of each fiscal quarter of Location Ventures, Location Ventures will deliver to the Seller Parties an unaudited consolidated balance sheet, together with a related unaudited statement of income and unaudited statement of cash flow for such quarter covering each LV Entity, all prepared in accordance with GAAP. Together with each delivery of such financial statements, Location Ventures will deliver a sworn affirmation of the CEO of Location Ventures to the effect that (i) such financial statements were prepared in accordance with GAAP applied on a consistent basis (other than for the absence of footnotes and normal recurring year-end adjustments) and, (ii) such financial statements fairly and accurately present the results of operations and financial condition of each LV Entity in all material respects as of the date of such financial statements and

8

(iii) each LV Entity is in compliance with the provisions affecting or relating to such LV Entity in this Agreement.

(b)     Upon five (5) days written notice, furnish such other financial information in the possession of or readily obtainable by an LV Entity regarding the operations, business affairs and financial condition of each LV Entity and its and their respective properties or assets as a Seller Party may reasonably request in writing for the purpose of determining compliance with this Agreement, including, but not limited to, true, complete and exact copies of its books of account and any audit reports prepared by any governmental agency related to any LV Entity or this Agreement, and all information furnished by any LV Entity to any governmental agency related to any LV Entity or this Agreement.

4.8     Right of Inspection/Right of Audit.

(a)     Each LV Entity shall permit all persons designated by a Seller Party to visit and/or inspect any of the properties, and all books, systems, procedures, financial reports and records of each LV Entity and to discuss with such LV Entity's CFO and other officers, its affairs, finances and accounts at all such times and as often as a Seller Party may reasonably request for the purpose of determining compliance with this Agreement. Buyers shall ensure that each Seller Party shall continue to have electronic access to each LV Entity's accounts to enable the Seller Party to review banking and other related records to ensure compliance with this Agreement.

(b)     Permit each Seller Party to conduct an audit of the properties, books, systems, procedures, financial reports and records of the business activities and operations conducted by each LV Entity in connection with their performance under this Agreement, during regular business hours, at the location the records are then kept by any LV Entity.

4.9     Notification of Litigation, Liens, Material Events. Buyers shall promptly notify the Seller Parties in writing of (i) any material litigation or dispute affecting any LV Entity whether pending or threatened, and deliver to Seller Parties copies of all pleadings, unprivileged relevant correspondence and similar documentation relating thereto, (ii) any lien, claim, encumbrance, security interest, attachment or other legal process asserted against any of the assets of any LV Entity and (iii) the occurrence of any other event or the discovery of any other information of which Buyers and/or any LV Entity shall have Knowledge which could reasonably be expected to have a material adverse effect on the business, operations or reputation of any LV Entity.

4.10    Consolidation, Merger, Sale of Assets or Interests. No LV Entity shall (i) wind up, liquidate or dissolve its affairs, enter into any transaction of merger or consolidation, convey or transfer its properties and assets substantially as an entirety, (ii) convey, sell, transfer, lease or otherwise dispose of its assets or any part thereof, other than in the ordinary course of business, or (iii) create any partnership, joint venture or subsidiary except in connection with a Current Project to the extent reflected and consistent with an Approved Plan and Budget; or (iv) sell any membership interest or other equity interest or any right to acquire any of the foregoing except in connection with an Current Project to the extent reflected and consistent with an Approved Plan and Budget; unless in the case of subclauses (i) through and including (iv), all of the proceeds, after deducting only that reserves which are determined in the written opinion of Location Venture's certified public accountant to be reasonably necessary for any material contingency resulting from any action taken as an exception to clauses (i) through and inclusive of (iv) (and not for any payment, fee or the like for Rishi, Daniel Motha or any LV Entity or any of their respective Affiliates, other than as expressly permitted in Section 4.1), shall be used to pay down the Full Purchase Price (it being understood and agreed that no partial payment against the Full Purchase Price shall absolve the Buyers obligation to pay the entire amount of the Full Purchase Price); it being further understood and agreed that notwithstanding any line item in any Approved Plan and Budget or any other document, instrument or agreement (including, without limitation, any Organizational Document), no portion of such proceeds or any other payment shall be made

to Rishi, Daniel Motha or any LV Entity or any of their respective Affiliates unless and until the Final Purchase Price shall have been paid.

4.11     Other Agreements.  No LV Entity shall enter into any agreement containing any provision which would cause a default or an event of default hereunder or which would be violated or breached by the performance of Buyers' obligations under this Agreement.

4.12     Advances, Investments.  No LV Entity shall lend money or make advances to any Person, or purchase or acquire any stock, obligation or security of, or any other interest in, or make any capital contribution to, any Person, other than in accordance with this Agreement.

4.13     Distributions.  No LV Entity shall make distributions to its members (including, without limitation, by redemption or return of capital) of any cash or of any LV Entity's assets, other than in accordance with this Agreement.

4.14     Approvals and Licenses.   Each LV Entity shall maintain all consents, approvals, authorizations, orders, rights, licenses, franchises and permits, if any, required by or from any federal, state or other governmental authority, for the conduct of its business and the ownership of its properties, or otherwise obtain a waiver, exemption or variance thereof, except where the failure to so maintain would not reasonably be expected to have a material adverse effect on the business, operations or reputation of any LV Entity.

4.15     Maintenance of Books and Records; Change in Accounting Policies.  Each LV Entity shall (a) maintain proper books of record and account, in which full, true and correct entries in conformity with GAAP consistently applied shall be made of all financial transactions and matters involving the assets and business of such LV Entity, as applicable; and (b) maintain such books of record and account in material conformity with all applicable requirements of any governmental authority having regulatory jurisdiction over such LV Entity, as applicable.  In addition, no LV Entity will change its accounting policies or reporting practices, except as allowable pursuant to GAAP and provided that prompt written notice shall be provided to Seller Parties.

4.16     Fraudulent Activities; Violations of Law.  Buyers will not and no other LV Entity will engage in, and no Person under its or their direct control or direction shall engage in, any fraudulent or illegal activity.

4.17     Transactions with Affiliates.  Buyers will not and no other LV Entity shall enter into any transaction of any kind with any of its respective Affiliates (including, but not limited to Rishi, Daniel Motha or any of their Affiliates), whether or not in the ordinary course of business or otherwise, other than as expressly permitted in an Approved Plan and Budget and solely to the extent expressly permitted under this Agreement (it being understood and agreed that no payment, fee or other amount shall be paid to or with respect to, and no reserve shall be established with respect to a payment, fee or other amount to be paid to, Rishi or Daniel Motha or any of their Affiliates, other than as expressly provided in Section 4.1).

4.18     Compliance with Organizational Documents and Material Agreements.  Each LV Entity shall be and remain in compliance in all material respects with each of its Organizational Documents and any material agreement to which it is a party or by which its respective assets are bound, except as limited or altered by this Agreement.  Moreover, each LV Entity shall comply in all respects with all of its obligations to any Seller Party or its Affiliates arising under its Organizational Document and any material agreement to which it is a party or by which its respective assets are bound.

4.19     Board Observer Rights.  If either or both of Alex and ███ shall resign from office as members of the board of directors of any LV Entity and/or abstain from voting, then each applicable LV Entity shall invite a representative of the Seller Parties to attend all meetings of such LV Entity's board of

10

directors, members or similar body in a nonvoting observer capacity and, in this respect, shall give such representative copies of all notices, minutes, consents, and other materials that it provides to its directors and/or members, as applicable, at the same time and in the same manner as provided to such directors and/or members, as applicable.

4.20    <u>Intentionally deleted</u>.

4.21    <u>Intentionally deleted</u>.

4.22    <u>Urbin Loan</u>. Buyers and Urbin, LLC ("Urbin") acknowledge that Location Ventures made an undocumented loan to Urbin in the approximate amount of $16 million (the "Urbin Loan"). Buyers represent, and Urbin agrees, that (i) Urbin will hold, and will not dispose of, such funds of the Urbin Loan which are still in an account under the control or Urbin and (ii) the Urbin Loan shall be automatically called upon any default by Buyers to pay any Installment when due or any other defaults by Buyers under this Agreement, in which case, Urbin shall promptly repay to Location Ventures the principal plus the agreed upon rate of interest, which is 6% compounded annually. Buyers shall ensure that the Urbin Loan is properly documented through the execution of a loan or promissory note containing usual and customary terms. The documentation of the loan pursuant to this Section shall be completed contemporaneously with the execution and delivery of this Agreement. Upon a call of the Urbin Loan, all proceeds of the Urbin Loan shall be used to pay down the Full Purchase Price.

4.23    <u>Restrictions Binding With Respect to Affiliates</u>. Notwithstanding anything to the contrary, any restriction that is binding on or with respect to Location Ventures, Rishi, Daniel Motha or any other LV Entity shall also be applicable and restrictive and/or binding upon or with respect to all Affiliates of Location Ventures, Rishi, Daniel Motha and such LV Entity, except to the extent expressly provided otherwise in this Agreement.

4.24    <u>Plan and Budget</u>. There shall be no alternation or deviation from any Approved Plan and Budget.

ARTICLE V
INDEMNIFICATION

5.1    <u>Indemnification</u>. Subject to the provisions of this Article, from and after the Effective Date, Buyers (each, a "Buyer Indemnifying Party") shall defend, indemnify, and hold harmless, each Seller Party and its Affiliates (each, a "Seller Indemnified Party"), against and in respect of any and all losses, liabilities, damages, actions, suits, proceedings, claims, demands, orders, assessments, amounts paid in settlement, fines, costs or deficiencies, including without limitation, interest, penalties, and attorneys' fees and costs, including the cost of seeking to enforce this indemnity to the extent such enforcement is successful (all the forgoing, collectively, "Losses", and singularly a "Loss"), from any claims by third parties against a Seller Indemnified Party in any way arising out of or relating to, in the broadest sense, this Agreement, the transactions arising under this Agreement, and any LV Entity. Without limiting any of the foregoing, the duty to indemnify shall exist with respect to any matters pertaining to or any investment in, management of, or any other relationship with, Location Ventures or any LV Entity, any ongoing operations of Location Ventures or any LV Entity, any requirement for capital contributions, member loans or any other payments to Location Ventures or any LV Entity, or the like. In addition, Buyers acknowledge that the indemnification provisions in any Organizational Document under which a Seller Indemnified Party would be eligible for indemnification as of the Effective Date shall remain in full force and effect for and in favor of such Seller Indemnified Party and/or its Affiliates, and no amendment, restatement or the like to the Organizational Documents shall lessen or reduce the application of such indemnification provisions for the Seller Indemnified Party and/or

11

its Affiliates in any manner. The duty to indemnify shall include the duty to immediately advance the cost of defense for a Loss, if and when incurred, subject to a written agreement by a Seller Indemnified Party to reimburse the Buyer Indemnifying Party if it is later determined there was no duty to Indemnify hereunder. Seller Indemnified Party shall have full control to select counsel to defend any Losses. Without limiting any of the foregoing, to the extent this Agreement provides broader indemnity rights to Seller Indemnified Party than any Organizational Document, then the duty to indemnify under this Agreement shall control. Also without limiting the foregoing, to the extent the Organizational Documents provide broader indemnity rights to Seller Indemnified Party than this Agreement, then the duty to indemnify under Organizational Documents shall control.

     5.2     Indemnification. Subject to the provisions of this Article, from and after the Effective Date, each Interest Seller (each, a "Seller Indemnifying Party") shall defend, indemnify, and hold harmless, Buyers and their Affiliates (each, a "Buyer Indemnified Party"), against and in respect of any and all Losses, caused by or resulting or arising from, or otherwise with respect to, any inaccuracy in or breach of the Seller Indemnifying Party's representations and warranties contained in this Agreement. The duty to indemnify shall include the duty to immediately advance the cost of defense for a Loss, if and when incurred, subject to a written agreement by a Buyer Indemnified Party to reimburse the Seller Indemnifying Party if it is later determined there was no duty to Indemnify hereunder.

ARTICLE VI

RELEASES

     6.1     Seller Release of Buyers. At each Interest Closing, the Interest Seller that is then conveying a Proportionate Interest shall, in addition to delivering an Assignment of Interest for such Proportionate Interest, automatically and without the need for further documentation be deemed to release the Subject Entity that is the issuer of the Proportionate Interest of and from any claims relating to distributions otherwise payable on the Proportionate Interest that is then being conveyed. At each Interest Closing in which an Interest Seller receives the entire amount of the Purchase Price for its applicable Redemption Interest prior to the Seller Parties' receipt of the Full Purchase Price, the Seller Parties shall automatically and without the need for any further documentation be deemed to have released only the Subject Entity whose Redemption Interest is then the subject of the Interest Closing of and from all Claims the Seller Parties or any of its respective Affiliates had, then has or thereafter can, shall or may have arising out of or related to the applicable Interest Seller's investment in or ownership of membership interests in the applicable Subject Entity; provided, however, that such release shall not include or be for the benefit of any other Person (including without limitation, Buyers, Daniel Motha or any of their Affiliates) and as to them all Claims are reserved to or for the benefit of the Seller Parties. Effective as of Seller Parties' receipt of the Full Purchase Price (the "Final Closing Date"), each Seller Party, shall automatically and without the need for further documentation be deemed to remise, release and forever discharge each Location Ventures Party (including Daniel Motha) of and from any and all Claims that any Seller Party or any of its respective Affiliates had, then has or thereafter can, shall or may have, from the beginning of the world through the Final Closing Date, arising out of or relating to an Interest Seller's investment in or ownership of a membership interest in Location Ventures or a Subject Entity, including, without limitation, claims for breach of fiduciary duty, intentional torts, actions of bad faith or negligence, rights to distributions, repayment of member loans, and/or any other payments, remuneration or compensation which may be due or payable to the Interest Seller or any other Seller Party; provided, however, that nothing in this Section 6.1 shall release Buyers or any LV Entity from fully complying with (i) terms, conditions and covenants of this Agreement, and (ii) their obligations to indemnify Seller Party as provided under any Organizational Document of any Subject Entity, or as is or may be available under applicable law or any other agreement (including, without limitation, this Agreement) (such full release, the "Full Release"). Notwithstanding anything to the contrary contain in this Agreement, for so long as there shall be no default by Buyers under this Agreement (including any default in the payment of any Installment), the Seller Parties covenant not to sue Buyers, any LV Entity or their

12

Affiliates for any Claims, including without limitation, claims for breach of fiduciary duty, actions of bad faith, negligence and intentional torts.

6.2     Location Ventures Release of Sellers.  At each Interest Closing, Buyers and each of their Affiliates (including Daniel Motha) shall automatically and without the need for further documentation be deemed to release the Seller Parties and their Affiliates of and from any Claims relating to the Proportionate Interest that is the subject of such Interest Closing.  At each Interest Closing in which an Interest Seller receives the entire amount of the Purchase Price for its applicable Redemption Interest prior to the Seller Parties' receipt of the Full Purchase Price, the Buyers and each of their Affiliates (including Daniel Motha) shall automatically and without the need for any further documentation be deemed to have released the Seller Parties and their Affiliates of and from all Claims the Buyers or any of its respective Affiliates had, then has or thereafter can, shall or may have arising out of or related to the Subject Entity whose Redemption Interest is then the subject of the Interest Closing.  Effective as of the Final Closing Date, Buyers, for and on behalf of each other Location Ventures Party and its and their respective Affiliates, and Daniel Motha, does hereby remise, release and forever discharge each Seller Party and its respective Affiliates of and from any and all Claims that Buyers or any LV Entity or any of its or their Affiliates had, now has or hereafter can, shall or may have, from the beginning of the world through the Final Closing Date, arising out of or relating to any matter, including but not limited to Location Ventures or any LV Entity, or its or their business or operations, an Interest Seller's investment in or ownership of a membership interest of a Subject Entity, any required capital contributions, any other obligation arising under any Organizational Document of the Subject Entity, or any involvement by any Seller Party's or any of its Affiliates' involvement in or with Location Ventures or any LV Entity or any of its or their Affiliates; provided, however, that nothing in this Section 6.2 shall release any Seller Party from fully complying with terms, conditions and covenants in this Agreement.  Effective from and after the Final Closing Date, each Location Ventures Party hereby agrees that it shall not and shall not permit its Affiliates to pursue legal action against any Seller Party or its Affiliates with respect to Claims arising out of or related to any facts, circumstances, or events giving rise to any Claims which are or could be the subject of any of the foregoing releases.

6.3     Sufficiency of Consideration.  Each Buyer and Daniel Motha, on the one hand, and each Seller Party, on the other hand, acknowledge and agree that releases provided to it hereunder are sufficient consideration to support such Person's agreement to release the other Person as provided in the respective provisions of Section 6.1 and/or 6.2 above, as applicable.

ARTICLE VII
CONFIDENTIALITY

7.1     Confidentiality.  Each Party acknowledges that it has or may have information that the other Party deems is the Confidential Information of the other Party and that all such Confidential Information is a valuable asset of the other Party.  So long as there has been no default by Buyers under this Agreement, each Party agrees that it shall not, except in connection with the consummation or enforcement of the transactions contemplated hereunder or as required by applicable law, without limitation in time or until such information shall have become public other than by such Party's unauthorized disclosure, disclose to others or use, whether directly or indirectly, any Confidential Information regarding the other Party.   Each Party acknowledges that such Confidential Information concerning the other Party is specialized, unique in nature and of great value to the other Party and that such information gives the other Party a competitive advantage.  So long as there has been no default by Buyers under this Agreement, each Party shall only use the Confidential Information concerning the other Party in connection with the performance of each Party's obligations under this Agreement and for no other purpose.  In the event that a Party (the "Possessing Party") is legally compelled to communicate or disclose any Confidential Information of the other Party (the "Owner Party"), the Possessing Party shall, to the extent permitted by applicable law, provide the Owner Party  with prompt written notice of such communication or disclosure.  The Possessing Party shall furnish only that portion of the Confidential Information that it deems in good faith is legally required to disclose,

13

and shall, in the event that the Owner Party is not a party to the action pursuant to which such communication or disclosure is compelled, interpose a confidentiality defense based upon this Agreement in order to seek to have the Confidential Information accorded confidential treatment, if legally permitted to do so. In the event of a breach of this Agreement, including the failure to pay any Installment, the Seller Parties shall not be bound by this confidentiality provision or any other confidentiality provision.

7.2    Exceptions.  Notwithstanding the foregoing, a Seller Party shall have the unrestricted right to use any alleged Confidential Information of or relating to any Location Ventures Party, Location Ventures or any LV Entity or any Affiliate of any of them in connection with (a) any reason whatsoever if Buyer shall default under any obligation to pay any Installment hereunder or shall otherwise be in default under any other obligation under this Agreement or any other document, instrument or agreement executed and delivered in connection with this Agreement; (b) any action or proceeding to enforce any right arising directly or indirectly under this Agreement; (c) the defense of any action or proceeding brought by any Location Ventures Party, Location Ventures or any LV Entity for any reason, or the defense of any action or proceeding brought by any Person relating to any Location Ventures Party, Location Ventures or any LV Entity or any of their respective businesses or operations; (d) for any discussions with any member of the board of managers of Location Ventures or any LV Entity in any formal or informal setting for the purpose of the Seller Party fulfilling any fiduciary duty which, in the reasonable opinion of the Seller Party's counsel, a Seller Party owes with respect to Location Ventures or the applicable LV Entity; (e) for any discussion with any current direct or indirect equity owner (or their Affiliate or other representative) of Location Ventures or any LV Entity in any formal or informal setting for the purpose of the Seller Party fulfilling any alleged fiduciary duty which, in the reasonable opinion of the Seller Party's counsel, a Seller Party owes with respect to Location Ventures or the applicable LV Entity. If any prospective investor of any of Location Ventures or any LV Entity requests any Confidential Information from any Seller Party, the Seller Party shall generally state only that the Seller Party (or its applicable Affiliate) has determined to separate from Location Ventures or the Subject Entity for philosophical reasons.

7.3    Non-disparagement.  Without limiting, and expressly subject to, the rights under Paragraph 7.2 above, each Party shall not make, publish, or communicate to any person or entity or in any public forum any comments or statements (written or oral) that denigrate or disparage, or are detrimental to, the reputation or stature of any other Party or its Affiliates or any of their respective direct or indirect owners or businesses; provided, however, that Seller Parties' obligation pursuant to this Section 7.3 shall lapse and terminate if Buyers shall default under this Agreement, including any failure to fail to pay any Installment due under this Agreement.

## ARTICLE VIII
### GUARANTY AND PLEADGE OF INTERESTS

8.1    Guaranty of Obligations.  Contemporaneously with the execution and delivery of this Agreement, Location Ventures shall cause to be delivered by Patriots United, LLC ("Patriots") to each Seller Party, full, unconditional and unlimited guaranties of Buyers' obligations arising under this Agreement (a "Guaranty"), including, without limitation for the payment of each Installment and the Full Purchase Price for all Redeemed Interests as well as any other payment or performance obligations of Buyers which may arise under or in connection with this Agreement, the form of which is attached hereto as **Exhibit C.**

8.2    Pledge.  Intentionally deleted.

## ARTICLE IX
### BUYERS DEFAULT; ACCELARATION

14

9.1     Events of Default.  The occurrence of any one or more of the following events shall constitute an event of default under this Agreement, without the need to provide notice or any opportunity to cure:

(a)     Non-Payments or Untimely Payments.  Buyers fails to timely pay any amount due hereunder on the date such payment is due.

(b)     Representations and Warranties.  Any representation or warranty made by Buyers under this Agreement, is, on the date so made, false, misleading, incomplete or untrue in any material respect.

(c)     Covenants.  To the extent not otherwise covered in this Section 9.1, any covenant, term, agreement or condition contained in this Agreement is breached by Buyers or shall not be observed by an LV Entity.

(d)     Bankruptcy or Insolvency.  Any LV Entity (i) is dissolved, (ii) fails or is generally unable to pay its debts as they become due, or admits in writing its inability to pay its debts generally as they become due, (iii) commences a voluntary case in bankruptcy or any other action or proceeding for any other relief under any law affecting creditors' rights that is similar to a bankruptcy law, (iv) consents by answer or otherwise to the commencement against it of an involuntary case in bankruptcy or any other such action or proceeding, or an involuntary case in bankruptcy or any other such action or proceeding in respect of such Person or any of its properties is commenced and is not dismissed on or before the sixtieth (60th) day after the commencement thereof, (v) makes an assignment for the benefit of creditors, (vi) files a petition or applies to any tribunal for the appointment of a custodian, receiver or any trustee for all or a substantial part of its assets, (vii) by any act or omission indicates its consent, approval of, or acquiescence in the appointment of a receiver, custodian or trustee for all or a substantial part of its property, (viii) is adjudicated a bankrupt, (ix) becomes insolvent however otherwise evidenced, or (x) ceases to continue as a going concern.

(e)     Fraudulent Conveyances.  Buyers or any other LV Entity conceals, removes or permits to be concealed or removed, any part of its assets, with intent to hinder, delay or defraud its creditors or any of them, or makes or permits a transfer of any of its assets which transfer is fraudulent under any bankruptcy, fraudulent conveyance or similar law.

(f)     Judgments.  A final and non-appealable judgment in excess of $100,000 is rendered against any LV Entity.

(g)     Cross Default.  Any "default," "event of default," "amortization event," "termination event" or any other similar breach in connection with any material agreement of any LV Entity, which such default, event of default, amortization event or termination event is reasonably likely to have a material adverse effect.

(h)     Intentionally omitted.

(i)     Sale or Disposal.  Any sale of all or substantially all of any LV Entity's assets, including any bulk sale, except as otherwise expressly permitted under this Agreement.

9.2     Acceleration.  Upon any default by Buyers of any covenant or terms in this Agreement or any document, instrument or agreement delivered in connection with this Agreement which is binding upon or relating to Buyers or any LV Entity, including but not limited to Buyers' failure to pay any portion of the Purchase Price or Installments on a timely basis, time being of the essence, Buyers agree that all sums remaining due under this Agreement, including the unpaid part of the Full Purchase Price that remains outstanding, shall immediately and automatically accelerate (without the necessity of notice or any opportunity to cure) and become immediately due and owing in full, and each Seller Party shall be entitled to

15

each and every remedy provided in this Agreement, and all remedies available under applicable law and in equity, including but not limited to rights of specific performance. Buyers acknowledge and agree that the foregoing is fair and reasonable in light of the forbearance exercised by Seller Parties to effectuate the Proposed Settlement.

9.3    Remedies Under Agreement Not Exclusive.   Notwithstanding anything to the contrary, and except as to any release previously given pursuant to Sections 6.1 and 6.2, in the event of a breach or default under this Agreement, the non-breaching or non-defaulting Party may pursue any and all Claims and remedies available at law or in equity, in addition to any rights or Claims it may assert arising out of or in connection with this Agreement. The Parties expressly agree that in the event of a default, the non-defaulting Parties' Claims are not limited to Claims that arise out of this Agreement.

ARTICLE X
GENERAL CONDITIONS

10.1    Amendment and Modification.   This Agreement may be amended, modified, or supplemented only by mutual written consent of all of the Parties hereto.

10.2    Waiver of Compliance.   To be effective, any waiver by a Party of its right to require performance of any provision hereof must be in writing, specifically refer to the right being waived, and signed by the Party. The failure to immediately exercise a right that exists or to assert a default against a breaching Party shall not be deemed a waiver to declare such condition a default or a breach at any time.   No waiver in any one or more instances shall (except as stated therein) be deemed to be a further or continuing waiver of any such condition or breach in other instances or a waiver of any condition or breach of any other term, covenant, representation, or warranty.

10.3    Expenses.   All costs and expenses incurred in connection with the negotiation and consummation of this Agreement and the transactions contemplated hereby shall be paid by the Party incurring such expenses.

10.4    Construction.   This Agreement shall be construed without regard to any presumption or other rule requiring construction against the Party causing this Agreement to be drafted. If any word or phrase in this Agreement shall have been stricken out or otherwise eliminated, whether or not any other words or phrases have been added, this Agreement shall be construed as if the words or phrases so stricken out or otherwise eliminated were never included in this Agreement and no implication or inference shall be drawn from the fact that said words or phrases were so stricken out or otherwise eliminated. All terms and words used in this Agreement, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require. If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, and the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

10.5    Notices.   To the extent notices, demands, instructions and other communications are required or permitted to be given to or made upon a Party, they shall be in writing, personally delivered or overnight courier. All such notices shall also be sent via email. All such notices shall be deemed to be given on the day such notice is received if sent by personal delivery or one (1) business day after such notice is sent by overnight courier. Unless otherwise specified in a notice sent or delivered in accordance with the foregoing provisions of this paragraph, notices, demands, instructions and other communications in writing shall be given to or made upon Buyers or a Seller Party at their respective addresses indicated for such party below:

FL-4347_Kleyner_LV LLC_0001495

If to a Seller Party:



With Copy to:       Kluger Kaplan Silverman Katzen & Levine, P.L.
                    201 South Biscayne Boulevard, 27th Floor
                    Miami, Florida 33131
                    Attention: Alan Kluger
                    Email: akluger@klugerkaplan.com
                    Email: plieberman@klugerkaplan.com

If to Buyers:       Location Ventures, LLC
                    299 Alhambra Circle, Suite 510
                    Coral Gables, Florida 33134
                    Attention: Rishi Kapoor
                    Email: rkapoor@location.ventures

With Copy to:        Goodkind & Florio, P.A.
                    4121 La Playa Boulevard
                    Coconut Grove, Florida 33133
                    Attention: Brian Goodkind
                    Email: brian@goodkindandflorio.com
                    Email: kenneth@goodkindandflorio.com

or at such other address as the Parties may have furnished to each other in writing. For the avoidance of doubt, Notice of default shall not be required by a Seller Party to Buyers for the non-payment of any Installment or the total Purchase Price for any or all of the Redemption Interests, or as a condition for the exercise of any remedy that may be available to Seller.

    10.6   Governing Law; Waiver of Jury Trial.  **THIS AGREEMENT AND THE LEGAL RELATIONS BETWEEN THE PARTIES HERETO SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA WITHOUT GIVING EFFECT TO ANY CONFLICT OF LAW PROVISION. THE PARTIES FURTHER HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED HEREBY, THE FORMATION OF THIS AGREEMENT, AND THE RELATIONSHIP BETWEEN THE PARTIES. EACH PARTY DOES HEREBY IRREVOCABLY SUBMIT TO THE EXCLUSIVE JURISDICTION AND VENUE OF THE APPROPRIATE STATE AND FEDERAL COURTS SITTING IN MIAMI-DADE COUNTY, FLORIDA.**

    10.7   Counterparts.  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Delivery of executed signature pages hereof by facsimile transmission shall constitute effective and binding execution and delivery of this Agreement.

    10.8   Headings.  The headings of the Sections and Articles of this Agreement are inserted for convenience only and shall not constitute a part hereof.

FL-4347_Kleyner_LV LLC_0001496

10.9     Entire Agreement. This Agreement, including the agreements referred to herein, and other documents referred to herein which form a part hereof, contains the entire understanding of the Parties hereto in respect of the subject matter contained herein. There are no restrictions, promises, representations, warranties, covenants or undertakings other than those expressly set forth or referred to herein. This Agreement supersedes all prior agreements and understandings between the Parties with respect to such subject matter, except as expressly provided herein.

10.10     No Third-Party Beneficiary. This Agreement is for the benefit of, and may be enforced only by, the Parties and their respective successors and permitted assigns, and is not for the benefit of, and may not be enforced by, any third party. Buyers may not assign all or any of their rights or obligations under this Agreement without the prior written consent of the Seller Parties, which consent may be rejected at the sole and absolute discretion of the Seller Parties, with or for no reason; provided however, that even if such assignment is permitted, Buyers shall remain obligated and liable for all obligations of the Buyers under this Agreement.

10.11     Further Assurances. The Parties shall after the Closing Date, and without further consideration, execute, acknowledge and deliver to the other Parties hereto such documents and instruments, and take such other actions, as shall reasonably requested or as may be necessary to consummate more effectively the transactions herein contemplated in accordance with this Agreement.

10.12     Attorneys' Fees. If any Party to this Agreement shall bring any action or proceeding for any relief against the other, declaratory or otherwise, at law or in equity, arising out of this Agreement, in addition to all other relief that may be available, the prevailing Party shall be entitled to recover from the non-prevailing Party all reasonable attorneys' fees and costs incurred in enforcing its rights, bringing or defending such action or proceeding, and/or enforcing any judgment granted therein, at the trial and appellate level, all of which shall be deemed to have accrued upon the commencement of such action or proceeding and shall be paid whether or not such action or proceeding is prosecuted to final judgment. Any judgment or order entered in such action or proceeding shall contain a specific provision providing for the recovery of attorneys' fees and costs, separate from the judgment, incurred in enforcing such judgment. The prevailing Party shall be determined by the trier of fact based upon an assessment of which Party's could fairly be said to have prevailed in obtaining the primary relief over the other Party. For the purposes of this section, attorneys' fees shall include, without limitation, fees and costs incurred in the following: (a) pre-litigation; (b) at trial and appellate level; (c) post-judgment proceedings; (d) contempt proceedings; (e) garnishment, levy, and debtor and third-party examinations; (f) discovery; and (g) bankruptcy litigation. This Section is intended to be expressly severable from the other provisions of this Agreement, is intended to survive any judgment and is not to be deemed merged into the judgment.

10.13     Dates. Should the date for performance of any obligation hereunder fall on a Saturday, Sunday or national holiday, the date for performance shall be extended to the next day which is not a Saturday, Sunday, or national holiday.

10.14     Definitions. The following terms shall have the meanings ascribed to them below:

(a)     "Affiliate" (and "Affiliates") means any Person(s) that, as of the Closing Date, owns or controls, is owned or controlled by, or is under common ownership or control with the Person in question and any family member of such Person. "Control" means the possession, directly or indirectly, of the power to cause the direction of the management and policies of a Person, through the ownership of a majority of the voting stock, securities or other equity interests of an entity or by contract.

(b)     "Agreement" shall have the meaning set forth in the introductory paragraph.

18

(c)      "Audit Firm" has the meaning set forth in Section 4.2.

(d)      "Bayshore" has the meaning set forth in the first Whereas clause.

(e)      "Bayshore Interest" has the meaning set forth in the first Whereas clause.

(f)      "Bayshore Purchase Price" has the meaning set forth in Section 1.2(b).

(g)      "Buyer" or "Buyers" has the meaning set forth in the introductory paragraph.

(h)      "Buyer Indemnifying Party" has the meaning set forth in Section 5.1.

(i)      "Buyer Indemnifying Party" has the meaning set forth in Section 5.2.

(j)      "Claims" means any and all manner of action or actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, liabilities, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, losses, judgments, executions, claims and demands whatsoever, in law or in equity, absolute or contingent, known and unknown, matured and not matured.

(k)      "Confidential Information" shall mean information about a party and others with which such party has business relationships that is not disclosed publicly by such party and that was or will be learned by the other party in the course of this Agreement, including (without limitation) all information and materials relating to (i) the financial condition, operations, business and interests of such party, (ii) the systems, technology, data, formulae, know-how, records, products, services, cost information, pricing policies, computer and Internet software, marketing and sales techniques and/or programs, methods, methodologies, manuals, and other trade secrets from time to time acquired, sold, developed, maintained and/or used by such party, (iii) the nature, terms and history of such party's relationships with its clients, customers, vendors, consultants, independent contractors, attorneys, accountants and employees, (iv) such party's employees, officers and/or directors relating to their relationships with clients and customers, and (v) all papers, resumes, and records (including computer records) of the documents containing such information. "Confidential Information" does not include information which (i) is, at the time of disclosure to the receiving party hereunder generally available to the public, or, after such disclosure, becomes so available other than as a result of a breach hereunder by the receiving party or its directors, officers, advisors, employees or representatives or (ii) becomes available to the receiving party from a source other than the disclosing party, its affiliates, or its advisors, provided that such source is not known by the receiving party to be bound with respect to such information by a confidentiality agreement with or other obligation of secrecy to the disclosing party or its advisors or affiliates or (iii) is already known to the receiving party or its agents or representatives, or is in the receiving party's or its agents' or representatives' possession, at the time of disclosure to the receiving party by the disclosing party, or (iv) is developed by the receiving party or its agents or representatives without reference to, and independent of, the Confidential Information actually disclosed to the receiving party by the disclosing party.

(l)      "Current Project" shall mean the development projects presently owned, operated, managed and/or under development by or through a Subject Entity, Urbin and/or 515 Valencia Partners, LLC.

(m)      ███████ has the meaning set forth in the introductory paragraph.

(n)      "███████ has the meaning set forth in the introductory paragraph.

(o)      ███████ has the meaning set forth in the introductory paragraph.

(p)     "Effective Date" has the meaning set forth in the introductory paragraph.

(q)     "Existing Project Entity" shall mean any direct or indirect Affiliate of Location Ventures in which a Current Project is owned, managed and/or operated (including, but not limited to each Subject Entity).

(r)     "Final Closing Date" has the meaning set forth in Section 6.1.

(s)     "Full Purchase Price" has the meaning set forth in Section 1.2.

(t)     "GAAP" means generally accepted accounting principles.

(u)     "Guaranty" has the meaning set forth in Section 8.1.

(v)     "Installments" has the meaning set forth in Section 1.3.

(w)     "Installment Amount" shall mean the amount of any Installment reflected in the tables in Section 1.3(a), (b) or (c), as applicable, under the column titled "Interest Amount".

(x)     "Interest Closing" has the meaning set forth in Section 1.5.

(y)     "Interest Closing Date" has the meaning set forth in Section 1.5.

(z)     "Interest Seller" has the meaning set forth in the second Whereas clause.

(aa)    ""Knowledge" shall mean the actual knowledge of the applicable Person or the knowledge that such Person would have obtained if such Person was a reasonably diligent agent of the Person and used diligent efforts to investigate the subject matter of the relevant inquiry.

(bb)    "Location Ventures Party" or "Location Ventures Parties" shall mean Buyers, each LV Entity and each of its or their Affiliates.

(cc)    "Loss" or "Losses" has the meaning set forth in Section 5.1.

(dd)    "LV Entity" shall mean Location Ventures, each Existing Project Entity and each Affiliate of an Existing Project Entity (including, but not limited to, direct and/or indirect parent and subsidiary entities thereof that are Affiliates of Location Ventures).

(ee)    "LV Interest" has the meaning set forth in the first Whereas clause.

(ff)    "LV Purchase Price" has the meaning set forth in Section 1.2(a).

(gg)    "Organizational Documents" shall mean an entity's organizational documents, including, without limitation, articles of incorporation or certificate of organization or the like, shareholders agreement, partnership agreement, operating agreement, or any other document, instrument or agreement concerning the business and affairs of the entity that would be binding upon the members of such entity generally.

(hh)    "Patriot" has the meaning set forth in Section 8.1.

(ii)    "Party" or "Parties" has the meaning set forth in the introductory paragraph.

FL-4347_Kleyner_LV LLC_0001499

FL-4347_Kleyner_LV_LLC_0001480

(jj)     "Payment Due Date" shall mean the payment due date reflected in the tables in Section 1.3(a), (b) or (c), as applicable, under the column titled "Payment Due Date".

(kk)     "Person" means an individual, firm, corporation, limited liability company, partnership, limited partnership, joint venture, trust, unincorporated organization, other entity, government or governmental department or agency.

(ll)     "Ponce" has the meaning set forth in the first Whereas clause.

(mm)     "Ponce Interest" has the meaning set forth in the first Whereas clause.

(nn)     "Ponce Purchase Price" has the meaning set forth in Section 1.2(c).

(oo)     "Proposed Settlement" shall have the meaning set forth in Section 1.5(c).

(pp)     "Proportionate Interest" shall mean the interest reflected in the tables in Section 1.3(a), (b) or (c), as applicable, under the column titled "Proportionate Interest".

(qq)     "Purchase Price" has the meaning set forth in Section 1.2.

(rr)     "Redemption Interest" has the meaning set forth in the first Whereas clause.

(ss)     "Seller Party" or "Seller Parties" has the meaning set forth in the introductory paragraph.

(tt)     "Seller Indemnified Party" has the meaning set forth in Section 5.1.

(uu)     "Seller Indemnifying Party" has the meaning set forth in Section 5.2.

(vv)     "Subject Entity" shall mean, as applicable, either of Location Ventures, Ponce and/or Bayshore.

(ww)     "Urbin" has the meaning set forth in Section 4.22.

(signature page follows)

FL-4347_Kleyner_LV LLC_0001500

IN WITNESS WHEREOF, for good and valuable consideration, the receipt of which is hereby acknowledged, each Party hereto, and Urbin LLC and Daniel Motha, has caused this Interest Purchase Agreement to be executed by its duly authorized representative, as of the day and year first written above.

**THE DARE TRUST**

By: _____

_____ under an agreement of Trust dated
April 22, 2020

**1505 PONCE, LLC**

By: _____
Alex Kleyner
Manager

**FTL BAYSHORE DRIVE, LLC**

By: _____
Alex Kleyner
Manager

_____
Alex Kleyner

_____

**LOCATION VENTURES, LLC**

By: _____
Rishi Kapoor
Manager

_____
**Rishi Kapoor**

For Purposes of Section 4.22

**URBIN, LLC**

By: _____
Rishi Kapoor
Manager

For Purposes of Sections 4.23 and 6.2

_____
**Daniel Motha**

22

IN WITNESS WHEREOF, for good and valuable consideration, the receipt of which is hereby acknowledged, each Party hereto, and Urbin LLC and Daniel Motha, has caused this Interest Purchase Agreement to be executed by its duly authorized representative, as of the day and year first written above.

**THE DARE TRUST**

By:_____

████████████ under an agreement of Trust dated April 22, 2020

**1505 PONCE, LLC**

By:_____
   Alex Kleyner
   Manager

████████████████████████████████

By:_____
   Alex Kleyner
   Manager

_____

**Alex Kleyner**

_____

████████████

**LOCATION VENTURES, LLC**

By:_____
   Rishi Kapoor
   Manager

_____

**Rishi Kapoor**

For Purposes of Section 4.22

**URBIN, LLC**

By:_____
   Rishi Kapoor
   Manager

For Purposes of Sections 4.23 and 6.2

_____

**Daniel Motha**

22

IN WITNESS WHEREOF, for good and valuable consideration, the receipt of which is hereby acknowledged, each Party hereto, and Urbin LLC and Daniel Motha, has caused this Interest Purchase Agreement to be executed by its duly authorized representative, as of the day and year first written above.

**THE DARE TRUST**

By: _____

▮▮▮▮▮▮▮ under an agreement of Trust dated
April 22, 2020

**1505 PONCE, LLC**

By: _____
Alex Kleyner
Manager

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

By: _____
Alex Kleyner
Manager

_____
**Alex Kleyner**

▮▮▮▮▮▮▮

**LOCATION VENTURES, LLC**

By: _____
Rishi Kapoor
Manager

_____
**Rishi Kapoor**

For Purposes of Section 4.22

**URBIN, LLC**

By: _____
Rishi Kapoor
Manager

For Purposes of Sections 4.23 and 6.2

_____
**Daniel Motha**

22

## Exhibit A

### SELLER'S WIRE INSTRUCTIONS

█████████████████████████████

Account Number: ████████████

Routing Number: ████████

**1505 Ponce Wire Instructions - JP Mogan Chase Bank, NA**

Account Number: ████████8607

Routing Number: ████████0021

█████████████████████████████

Account Number: ████████████

Routing Number: ████████

23

Exhibit B

Form of Assignment of Interest

(see attached)

24

FL-4347_Kleyner_LV LLC_0001505

## ASSIGNMENT OF MEMBERSHIP INTEREST

KNOW THAT [INSERT INTEREST SELLER NAME] ("Assignor"), in consideration of Ten Dollars and other good and valuable consideration paid by [INSERT BUYER] ("Assignee"), the receipt and sufficiency of which are hereby acknowledged, hereby assigns and transfers to Assignee free and clear or all liens, claims or encumbrances (other than under the limited liability company operating agreement of [INSERT NAME OF SUBJECT ENTITY] ("Subject Entity")) all of Assignor's right, title and interest in and to a membership interest in Subject Entity consisting of [___%] of the Subject Entity's membership interests (as determined as of December ___, 2022). All capitalized terms not otherwise defined herein shall have the meanings set forth in the Global Interest Purchase Agreement dated December ___ 2022 ("Purchase Agreement"). Other than the representations and warranties made pursuant to the Purchase Agreement, the Assignor makes no other representations or warranties.

TO HAVE AND TO HOLD the same unto the Assignee, its successors and assigns forever.

IN WITNESS WHEREOF, Assignor and Assignee have duly executed this Assignment as of the ___ day of _____ 2023.

ASSIGNOR:

[INSERT INTEREST SELLER NAME]

By:_____
   Name:
   Title:

25

Exhibit C

Form of Guaranty

(see attached)

26

FL-4347_Kleyner_LV LLC_0001507

## GUARANTY

This Guaranty (this "<u>Guaranty</u>") is made as of December __, 2022 by **Patriots United, LLC**, a Florida limited liability company ("<u>Guarantor</u>"), in favor of **1505 Ponce, LLC**, a Delaware limited liability company, ████████████████ a Delaware limited liability company, **Alex Kleyner**, and ████ (each individually a "<u>Beneficiary</u>" and collectively the "<u>Beneficiaries</u>." Capitalized terms used herein without definition shall have the respective meanings ascribed to such terms in that certain Global Interest Purchase Agreement by and among Location Ventures, LLC ("Location Ventures"), Rishi Kapoor ("Rishi" and together with Location Ventures, "Buyers" and each is a "Buyer") and the Beneficiaries, dated of even date herewith (the "<u>Purchase Agreement</u>").

### RECITALS:

As an express condition to Beneficiaries entering into the Purchase Agreement and agreeing to perform their respective obligations thereunder, Beneficiaries required that the Guarantor enter into this Guaranty to guaranty payment and performance of each Buyer's obligations under the Purchase Agreement and Guarantor has agreed to the same.

Guarantor is an owner of a membership interest in Location Ventures and Rishi is an owner of a membership interest in Guarantor, accordingly, the Guarantor acknowledges and agrees that it gains substantial benefits by Buyers and Beneficiaries entering into and performing their respective obligations under the Purchase Agreement.

### AGREEMENT:

NOW, THEREFORE, in consideration of the foregoing recitals, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor hereby agrees as follows:

1.  Guarantor unconditionally and irrevocably guarantees to the Beneficiaries, and their respective successors and assigns, the due regular and punctual payment of each of Buyers', Urbin, LLC's and Daniel Motha's (each is a "<u>Buyer Party</u>" and they are collectively, the "<u>Buyer Parties</u>") obligations under the Purchase Agreement, whether such obligations represent payment of any Installment, Purchase Price or the Full Purchase Price, interest, any indemnities, damages, fees or any other type of sum of any kind whatsoever that a Buyer Party may now or at any time hereafter owe to the Beneficiary thereunder, and does hereby further guarantee to the Beneficiaries, and their respective successors and assigns, the due, regular and punctual performance of all other duties, covenants, agreements and obligations of every kind or character whatsoever that a Buyer Party may now or at any time hereafter owe to any Beneficiary pursuant to the Purchase Agreement (all such payment <u>and</u> performance obligations being collectively referred to as "<u>Obligations</u>").

2.  This Guaranty is a guaranty of prompt payment and performance (and not merely a guaranty of collection). Nothing herein shall require any Beneficiary to first seek or exhaust any remedy against any Buyer Party, its successors or assigns, or any other person obligated with respect to the Obligations, or to first foreclose, exhaust or otherwise proceed against any collateral, security or other guaranty, if any, which may be given at any time in connection with the Obligations. It is agreed that a Beneficiary may upon any breach or default by a Buyer Party under the Purchase Agreement make demand upon the Guarantor and receive payment and performance of the Obligations, with or without notice or demand for payment or performance by a Buyer Party, its successors or assigns

27

or any other person. Suit may be brought and maintained against the Guarantor at the election of any Beneficiary, without joinder of the Buyer Parties or any other person as parties thereto.

3.      The Guarantor agrees that its obligations under this Guaranty shall be primary, absolute, continuing and unconditional, irrespective of and unaffected by any of the following actions or circumstances (regardless of any notice to or consent of the Guarantor): (a) the genuineness, validity, regularity and enforceability of any provision of the Purchase Agreement or any other agreement, instrument, certificate, notice or other document; (b) any extension, renewal, amendment, change, waiver or other modification of the Purchase Agreement or any other agreement, instrument, certificate, notice or other document; (c) the absence of, or delay in, any action to enforce the Purchase Agreement, this Guaranty or any other agreement, instrument, certificate, notice or other document; (d) the release of, extension of time for payment or performance by or any other indulgence granted to a Buyer Party or any other person with respect to the Obligations by operation of law, in equity or otherwise; (e) a Buyer Party's voluntary or involuntary bankruptcy, insolvency, assignment for the benefit of creditors, reorganization or similar proceeding affecting the Buyer Party or any of its assets (collectively, "Bankruptcy"); or (f) any other action or circumstance which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor.

4.      This Guaranty shall continue and remain undischarged until all of the Obligations are indefeasibly paid and performed in full. The Guarantor agrees that this Guaranty shall remain in full force and effect or be reinstated (as the case may be) if at any time payment or performance of any of the Obligations (or any part thereof) is rescinded, reduced or must otherwise be restored or returned by any Beneficiary, all as though such payment or performance had not been made or performed. If, by reason of any bankruptcy, insolvency or similar laws affecting the rights of creditors, a Beneficiary shall be prohibited from exercising any of its rights or remedies against a Buyer Party or any other person or against any property, then, as between the Beneficiary and the Guarantor, such prohibition shall be of no force or effect, and the Beneficiary shall have the right to make demand upon, and receive payment from the Guarantor of all amounts and other sums that would be due to the Beneficiary upon a breach or default with respect to the Obligations.

5.      The Guarantor shall be deemed to be in default hereunder ("Default") if:

        (a)      it shall fail to perform or observe any covenant, condition or agreement to be performed or observed by it hereunder; or

        (b)      there is any anticipatory repudiation or breach, in writing, of its obligations pursuant to this Guaranty.

6.      Upon any Default hereunder, a Beneficiary may, at its option, declare this Guaranty to be in default by written notice to the Guarantor (without election of remedies and without further opportunity to cure), and at any time thereafter, may do any one or more of the following, all of which are hereby authorized by the Guarantor:

        (a)      sue for and recover all damages then or thereafter incurred by the Beneficiary as a result of such Default; and/or

28

(b)     seek specific performance of the obligations of the Guarantor hereunder and the Buyer Party under the Purchase Agreement.

No right or remedy referred to herein is intended to be exclusive, but each shall be cumulative, and shall be in addition to any other remedy referred to above or otherwise available at law or in equity, and may be exercised concurrently or separately from time to time.

7.      All notice, including but not limited to notice of acceptance of this Guaranty, notice of any breach or default by any Buyer Party or any other person, and notice of an extension or amendment of Obligations or the Purchase Agreement, is hereby waived. Presentment, protest, demand and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are hereby waived. Guarantor waives all defenses to enforcement or validity of this Guaranty, at law or in equity, based upon or arising out of a failure to receive notice or demands of any type.

8.      The Guarantor hereby represents and warrants (all of which representations and warranties shall survive until all Obligations are indefeasibly satisfied in full), that:

(a)     The Guarantor has full legal capacity to execute and deliver this Guaranty and to perform the obligations of the Guarantor under this Guaranty.

(b)     This Guaranty constitutes the legal, valid and binding obligation of the Guarantor enforceable in accordance with its terms.

(c)     The execution, delivery and performance of this Guaranty does not and will not violate any requirement of law applicable to the Guarantor or any material contract, agreement or instrument to which the Guarantor is a party or by which the Guarantor or any property of the Guarantor is bound or result in the creation or imposition of any mortgage, lien or other encumbrance on any of the property or assets of the Guarantor pursuant to the provisions of any of the foregoing.

(d)     No consent of any other person or entity (including, without limitation, any creditor of the Guarantor) and no consent, license, permit, approval or authorization of, exemption by, notice or report to, or registration, filing or declaration with, any governmental authority is required in connection with the execution, delivery, performance, validity or enforceability of this Guaranty.

(e)     No litigation, arbitration, investigation or administrative proceeding of or before any court, arbitrator or governmental authority, bureau or agency is currently pending or, to the knowledge of the Guarantor, threatened against Guarantor.

(f)     Guarantor is a substantial, sophisticated investor having such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of the transaction contemplated herein without any input or advice, and without reliance on any matters, from any Beneficiary. Guarantor has not relied upon any oral or written statements or representations made by a Beneficiary or any of its or their respective representatives or agents in deciding to enter into this Guaranty. Without in any way limiting the generality of the foregoing, (a)

29

FL-4347_Kleyner_LV LLC_0001510

no Beneficiary has made any representations or warranties to Guarantor whatsoever and (b) Guarantor waives all defenses to the enforcement of this Guaranty and claims based on or arising from all known or unknown alleged statements, representations, warranties or omissions from or by any Beneficiary, and covenants not to assert claims or defenses based upon alleged negligent misrepresentation or fraud in the inducement to enter this Guaranty. **Guarantor has received the advice of counsel, and Guarantor's counsel has reviewed, negotiated, participated in drafting and approved the terms of this Guaranty prior to Guarantor's execution of the Guaranty.**

(g)

9.   TO THE FULLEST EXTENT NOT PROHIBITED BY APPLICABLE LAW, THE GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHT, POWER, REMEDY OR DEFENSE ARISING OUT OF OR RELATED TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ANY RELATED DOCUMENTS, ANY DEALINGS BETWEEN OR AMONG THE GUARANTOR, THE BUYER PARTIES AND THE BENEFICIARIES, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN OR AMONG SUCH PARTIES WITH RESPECT THERETO; AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A JUDGE AND NOT BEFORE A JURY. THE GUARANTOR FURTHER WAIVES ANY RIGHT TO SEEK TO CONSOLIDATE ANY SUCH LITIGATION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER LITIGATION IN WHICH A JURY TRIAL CANNOT OR HAS NOT BEEN WAIVED. FURTHER, THE GUARANTOR HEREBY CERTIFIES THAT NONE OF ITS REPRESENTATIVES, AGENTS OR ATTORNEYS HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT IT WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. THE GUARANTOR ACKNOWLEDGES THAT THE PROVISIONS OF THIS SECTION ARE A MATERIAL INDUCEMENT TO THE ACCEPTANCE BY BENEFICIARIES OF THIS GUARANTY.

THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND SHALL APPLY TO ANY AND ALL SUBSEQUENT AMENDMENT(S), RENEWAL(S), SUPPLEMENT(S) AND/OR MODIFICATION(S) TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, AND ANY RELATED AGREEMENTS, INSTRUMENTS AND DOCUMENTS. In the event of litigation, this Guaranty may be filed as a written consent to a trial by the court.

10.   As used in this Guaranty, the word "person" shall include any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or any government or any political subdivision thereof.

11.   This Guaranty is intended by the parties as a final expression of the guaranty of the Guarantor and is also intended as a complete and exclusive statement of the terms thereof. No course of dealing, course of performance or trade usage, nor any evidence of any kind, shall be used to supplement or modify any of the terms hereof. There are no conditions to the full effectiveness of this Guaranty. This Guaranty and each of its provisions may only be waived, modified, varied, released, terminated or surrendered, in whole or in part, by a duly authorized written instrument signed by the Guarantor and each Beneficiary. No failure by any Beneficiary to exercise its rights hereunder shall give rise to any estoppel

FL-4347_Kleyner_LV LLC_0001511

against it or excuse the Guarantor from performing hereunder. A Beneficiary's waiver, if any is granted, of any right to demand performance hereunder shall not be a waiver of any subsequent or other right to demand performance hereunder.

12. This Guaranty shall bind the Guarantor's successors and assigns and the benefits thereof shall extend to and include the Beneficiaries' respective successors and assigns.

13. THIS GUARANTY AND THE RIGHTS AND OBLIGATIONS SET FORTH HEREIN SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF FLORIDA (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE. Any action or proceeding arising out of or relating to this Guaranty shall be brought in the appropriate court in Miami Dade County, Florida. If any provision of this Guaranty is in conflict with any applicable statute, rule or law, then such provision shall be deemed null and void to the extent that it may conflict therewith, but without invalidating any other provisions hereof.

14. To the extent a Beneficiary wishes to provide notice, such notice shall be deemed adequately given if sent by overnight courier or by hand delivery to the Guarantor at its address stated below:

> Patriots United, LLC
> 299 Alhambra Circle, Suite 510
> Coral Gables, Florida 33134
> Attention: Rishi Kapoor
> Email: rkapoor@location.ventures

With Copy to:
> Goodkind & Florio, P.A.
> 4121 La Playa Boulevard
> Coconut Grove, Florida 33133
> Attention: Brian Goodkind
> Email: brian@goodkindandflorio.com
> Email: kenneth@goodkindandflorio.com

Any provision of this Guaranty, which is prohibited or unenforceable in any jurisdiction, shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

15. Time is of the essence with respect to all matters contained herein.

16. This Guaranty shall be construed without regard to any presumption or other rule requiring construction against the party causing this Guaranty to be drafted. If any word or phrase in this Guaranty shall have been stricken out or otherwise eliminated, whether or not any other words or phrases have been added, this Guaranty shall be construed as if the words or phrases so stricken out or otherwise eliminated were never included in this Guaranty and no implication or inference shall be drawn from the fact that said words or phrases were so stricken out or otherwise eliminated. All terms and words used in this Guaranty, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require. If

31

any term or provision of this Guaranty or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Guaranty, and the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Guaranty shall be valid and enforced to the fullest extent permitted by law.

[Signature Page Follows]

32

FL-4347_Kleyner_LV LLC_0001513

IN WITNESS WHEREOF, and for good and valuable consideration the receipt of which is hereby acknowledged, the Guarantor has caused this Guaranty to be executed by a duly authorized representative as of the date first above written.

ATTEST:

PATRIOTS UNITED, LLC
a Florida limited liability company

By:_____

Name:

Title:

By:_____

Name:  Rishi Kapoor

Title:   Manager

33

## GUARANTY

This Guaranty (this "<u>Guaranty</u>") is made as of December 31, 2022 by **Patriots United, LLC**, a Florida limited liability company ("<u>Guarantor</u>"), in favor of **1505 Ponce, LLC**, a Delaware limited liability company, ███████████████ a Delaware limited liability company, **Alex Kleyner**, and ██████████ (each individually a "<u>Beneficiary</u>" and collectively the "<u>Beneficiaries.</u>" Capitalized terms used herein without definition shall have the respective meanings ascribed to such terms in that certain Global Interest Purchase Agreement by and among Location Ventures, LLC ("Location Ventures"), Rishi Kapoor ("Rishi" and together with Location Ventures, "Buyers" and each is a "Buyer") and the Beneficiaries, dated of even date herewith (the "<u>Purchase Agreement</u>").

### RECITALS:

As an express condition to Beneficiaries entering into the Purchase Agreement and agreeing to perform their respective obligations thereunder, Beneficiaries required that the Guarantor enter into this Guaranty to guaranty payment and performance of each Buyer's obligations under the Purchase Agreement and Guarantor has agreed to the same.

Guarantor is an owner of a membership interest in Location Ventures and Rishi is an owner of a membership interest in Guarantor, accordingly, the Guarantor acknowledges and agrees that it gains substantial benefits by Buyers and Beneficiaries entering into and performing their respective obligations under the Purchase Agreement.

### AGREEMENT:

NOW, THEREFORE, in consideration of the foregoing recitals, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor hereby agrees as follows:

1.  Guarantor unconditionally and irrevocably guarantees to the Beneficiaries, and their respective successors and assigns, the due regular and punctual payment of each of Buyers', Urbin, LLC's and Daniel Motha's (each is a "<u>Buyer Party</u>" and they are collectively, the "<u>Buyer Parties</u>") obligations under the Purchase Agreement, whether such obligations represent payment of any Installment, Purchase Price or the Full Purchase Price, interest, any indemnities, damages, fees or any other type of sum of any kind whatsoever that a Buyer Party may now or at any time hereafter owe to the Beneficiary thereunder, and does hereby further guarantee to the Beneficiaries, and their respective successors and assigns, the due, regular and punctual performance of all other duties, covenants, agreements and obligations of every kind or character whatsoever that a Buyer Party may now or at any time hereafter owe to any Beneficiary pursuant to the Purchase Agreement (all such payment <u>and</u> performance obligations being collectively referred to as "<u>Obligations</u>").

2.  This Guaranty is a guaranty of prompt payment and performance (and not merely a guaranty of collection). Nothing herein shall require any Beneficiary to first seek or exhaust any remedy against any Buyer Party, its successors or assigns, or any other person obligated with respect to the Obligations, or to first foreclose, exhaust or otherwise proceed against any collateral, security or other guaranty, if any, which may be given at any time in connection with the Obligations. It is agreed that a Beneficiary may upon any breach or default by a Buyer Party under the Purchase Agreement make demand upon the Guarantor and receive payment and performance of the Obligations, with or without notice or demand for payment or performance by a Buyer Party, its successors or assigns or any other person. Suit may be brought and maintained against the Guarantor at the election of any Beneficiary, without joinder of the Buyer Parties or any other person as parties thereto.

3.     The Guarantor agrees that its obligations under this Guaranty shall be primary, absolute, continuing and unconditional, irrespective of and unaffected by any of the following actions or circumstances (regardless of any notice to or consent of the Guarantor): (a) the genuineness, validity, regularity and enforceability of any provision of the Purchase Agreement or any other agreement, instrument, certificate, notice or other document; (b) any extension, renewal, amendment, change, waiver or other modification of the Purchase Agreement or any other agreement, instrument, certificate, notice or other document; (c) the absence of, or delay in, any action to enforce the Purchase Agreement, this Guaranty or any other agreement, instrument, certificate, notice or other document; (d) the release of, extension of time for payment or performance by or any other indulgence granted to a Buyer Party or any other person with respect to the Obligations by operation of law, in equity or otherwise; (e) a Buyer Party's voluntary or involuntary bankruptcy, insolvency, assignment for the benefit of creditors, reorganization or similar proceeding affecting the Buyer Party or any of its assets (collectively, "Bankruptcy"); or (f) any other action or circumstance which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor.

4.     This Guaranty shall continue and remain undischarged until all of the Obligations are indefeasibly paid and performed in full.  The Guarantor agrees that this Guaranty shall remain in full force and effect or be reinstated (as the case may be) if at any time payment or performance of any of the Obligations (or any part thereof) is rescinded, reduced or must otherwise be restored or returned by any Beneficiary, all as though such payment or performance had not been made or performed.  If, by reason of any bankruptcy, insolvency or similar laws affecting the rights of creditors, a Beneficiary shall be prohibited from exercising any of its rights or remedies against a Buyer Party or any other person or against any property, then, as between the Beneficiary and the Guarantor, such prohibition shall be of no force or effect, and the Beneficiary shall have the right to make demand upon, and receive payment from the Guarantor of all amounts and other sums that would be due to the Beneficiary upon a breach or default with respect to the Obligations.

5.     The Guarantor shall be deemed to be in default hereunder ("Default") if:

        (a)     it shall fail to perform or observe any covenant, condition or agreement to be performed or observed by it hereunder; or

        (b)     there is any anticipatory repudiation or breach, in writing, of its obligations pursuant to this Guaranty.

6.     Upon any Default hereunder, a Beneficiary may, at its option, declare this Guaranty to be in default by written notice to the Guarantor (without election of remedies and without further opportunity to cure), and at any time thereafter, may do any one or more of the following, all of which are hereby authorized by the Guarantor:

        (a)     sue for and recover all damages then or thereafter incurred by the Beneficiary as a result of such Default; and/or

        (b)     seek specific performance of the obligations of the Guarantor hereunder and the Buyer Party under the Purchase Agreement.

No right or remedy referred to herein is intended to be exclusive, but each shall be cumulative, and shall be in addition to any other remedy referred to above or otherwise

available at law or in equity, and may be exercised concurrently or separately from time to time.

7.      All notice, including but not limited to notice of acceptance of this Guaranty, notice of any breach or default by any Buyer Party or any other person, and notice of an extension or amendment of Obligations or the Purchase Agreement, is hereby waived. Presentment, protest, demand and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are hereby waived. Guarantor waives all defenses to enforcement or validity of this Guaranty, at law or in equity, based upon or arising out of a failure to receive notice or demands of any type.

8.      The Guarantor hereby represents and warrants (all of which representations and warranties shall survive until all Obligations are indefeasibly satisfied in full), that:

        (a)     The Guarantor has full legal capacity to execute and deliver this Guaranty and to perform the obligations of the Guarantor under this Guaranty.

        (b)     This Guaranty constitutes the legal, valid and binding obligation of the Guarantor enforceable in accordance with its terms.

        (c)     The execution, delivery and performance of this Guaranty does not and will not violate any requirement of law applicable to the Guarantor or any material contract, agreement or instrument to which the Guarantor is a party or by which the Guarantor or any property of the Guarantor is bound or result in the creation or imposition of any mortgage, lien or other encumbrance on any of the property or assets of the Guarantor pursuant to the provisions of any of the foregoing.

        (d)     No consent of any other person or entity (including, without limitation, any creditor of the Guarantor) and no consent, license, permit, approval or authorization of, exemption by, notice or report to, or registration, filing or declaration with, any governmental authority is required in connection with the execution, delivery, performance, validity or enforceability of this Guaranty.

        (e)     No litigation, arbitration, investigation or administrative proceeding of or before any court, arbitrator or governmental authority, bureau or agency is currently pending or, to the knowledge of the Guarantor, threatened against Guarantor.

        (f)     Guarantor is a substantial, sophisticated investor having such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of the transaction contemplated herein without any input or advice, and without reliance on any matters, from any Beneficiary. Guarantor has not relied upon any oral or written statements or representations made by a Beneficiary or any of its or their respective representatives or agents in deciding to enter into this Guaranty. Without in any way limiting the generality of the foregoing, (a) no Beneficiary has made any representations or warranties to Guarantor whatsoever and (b) Guarantor waives all defenses to the enforcement of this Guaranty and claims based on or arising from all known or unknown alleged statements, representations, warranties or omissions from or by any Beneficiary, and covenants not to assert claims or defenses based upon alleged negligent misrepresentation or fraud in the inducement to enter this Guaranty. **Guarantor has received the advice of counsel, and Guarantor's counsel**

FL-4347_Kleyner_LV LLC_0001517

has reviewed, negotiated, participated in drafting and approved the terms of this Guaranty prior to Guarantor's execution of the Guaranty.

(g)

9.   TO THE FULLEST EXTENT NOT PROHIBITED BY APPLICABLE LAW, THE GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHT, POWER, REMEDY OR DEFENSE ARISING OUT OF OR RELATED TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ANY RELATED DOCUMENTS, ANY DEALINGS BETWEEN OR AMONG THE GUARANTOR, THE BUYER PARTIES AND THE BENEFICIARIES, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN OR AMONG SUCH PARTIES WITH RESPECT THERETO; AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A JUDGE AND NOT BEFORE A JURY. THE GUARANTOR FURTHER WAIVES ANY RIGHT TO SEEK TO CONSOLIDATE ANY SUCH LITIGATION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER LITIGATION IN WHICH A JURY TRIAL CANNOT OR HAS NOT BEEN WAIVED. FURTHER, THE GUARANTOR HEREBY CERTIFIES THAT NONE OF ITS REPRESENTATIVES, AGENTS OR ATTORNEYS HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT IT WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. THE GUARANTOR ACKNOWLEDGES THAT THE PROVISIONS OF THIS SECTION ARE A MATERIAL INDUCEMENT TO THE ACCEPTANCE BY BENEFICIARIES OF THIS GUARANTY.

THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND SHALL APPLY TO ANY AND ALL SUBSEQUENT AMENDMENT(S), RENEWAL(S), SUPPLEMENT(S) AND/OR MODIFICATION(S) TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, AND ANY RELATED AGREEMENTS, INSTRUMENTS AND DOCUMENTS. In the event of litigation, this Guaranty may be filed as a written consent to a trial by the court.

10.   As used in this Guaranty, the word "person" shall include any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or any government or any political subdivision thereof.

11.   This Guaranty is intended by the parties as a final expression of the guaranty of the Guarantor and is also intended as a complete and exclusive statement of the terms thereof. No course of dealing, course of performance or trade usage, nor any evidence of any kind, shall be used to supplement or modify any of the terms hereof. There are no conditions to the full effectiveness of this Guaranty. This Guaranty and each of its provisions may only be waived, modified, varied, released, terminated or surrendered, in whole or in part, by a duly authorized written instrument signed by the Guarantor and each Beneficiary. No failure by any Beneficiary to exercise its rights hereunder shall give rise to any estoppel against it or excuse the Guarantor from performing hereunder. A Beneficiary's waiver, if any is granted, of any right to demand performance hereunder shall not be a waiver of any subsequent or other right to demand performance hereunder.

FL-4347_Kleyner_LV LLC_0001518

12.   This Guaranty shall bind the Guarantor's successors and assigns and the benefits thereof shall extend to and include the Beneficiaries' respective successors and assigns.

13.   THIS GUARANTY AND THE RIGHTS AND OBLIGATIONS SET FORTH HEREIN SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF FLORIDA (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE. Any action or proceeding arising out of or relating to this Guaranty shall be brought in the appropriate court in Miami Dade County, Florida. If any provision of this Guaranty is in conflict with any applicable statute, rule or law, then such provision shall be deemed null and void to the extent that it may conflict therewith, but without invalidating any other provisions hereof.

14.   To the extent a Beneficiary wishes to provide notice, such notice shall be deemed adequately given if sent by overnight courier or by hand delivery to the Guarantor at its address stated below:

>               Patriots United, LLC
>               299 Alhambra Circle, Suite 510
>               Coral Gables, Florida 33134
>               Attention: Rishi Kapoor
>               Email: rkapoor@location.ventures
>
> With Copy to:   Goodkind & Florio, P.A.
>               4121 La Playa Boulevard
>               Coconut Grove, Florida 33133
>               Attention: Brian Goodkind
>               Email: brian@goodkindandflorio.com
>               Email: kenneth@goodkindandflorio.com

Any provision of this Guaranty, which is prohibited or unenforceable in any jurisdiction, shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

15.   Time is of the essence with respect to all matters contained herein.

16.   This Guaranty shall be construed without regard to any presumption or other rule requiring construction against the party causing this Guaranty to be drafted. If any word or phrase in this Guaranty shall have been stricken out or otherwise eliminated, whether or not any other words or phrases have been added, this Guaranty shall be construed as if the words or phrases so stricken out or otherwise eliminated were never included in this Guaranty and no implication or inference shall be drawn from the fact that said words or phrases were so stricken out or otherwise eliminated. All terms and words used in this Guaranty, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require. If any term or provision of this Guaranty or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Guaranty, and the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable,

shall not be affected thereby, and each term and provision of this Guaranty shall be valid and enforced to the fullest extent permitted by law.

[Signature Page Follows]

FL-4347_Kleyner_LV_LLC_0001480

IN WITNESS WHEREOF, and for good and valuable consideration the receipt of which is hereby acknowledged, the Guarantor has caused this Guaranty to be executed by a duly authorized representative as of the date first above written.

ATTEST:

By: _____
Name:
Title:   Vivian Anet

PATRIOTS UNITED, LLC
a Florida limited liability company

By: _____
Name: Rishi Kapoor
Title:   Manager

FL-4347_Kleyner_LV LLC_0001521

**Reference number**
D022423000628
**Court case number**
FL-04347
**Court or issuer**
U.S. Securities & Exchange Commission
**Court case name:**
DANIEL MOTHA

## DECLARATION OF BANK OF AMERICA BANK OFFICER AND/OR CUSTODIAN OF RECORDS

1.) <u>Authority.</u> I, Kristin Matysek, am a duly authorized bank officer and/or custodian of the records of Bank of America N.A with authority to execute this declaration and certify to the authenticity and accuracy of the records produced with this declaration.

2.) <u>Records.</u> The records produced herewith by Bank of America, N.A. are original documents or are true copies of records of a regularly conducted banking activity that:

   a)  Were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

   b)  Were made and kept in the course of regularly conducted banking activity by Bank of America, N.A. personnel or by persons acting under their control; and

   c)  Were made and kept by the regularly conducted activity of Bank of America N.A. as a regular practice, on or about the time of the act, condition, or event recorded.

| Account title: | Account ending in: | Document type: | Timeframe: |
|---|---|---|---|
| 1505 PONCE PARTNERS, LLC | 6996 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets, | 2021-09 - 2023-02 |
| 515 VALENCIA PARTNERS, LLC | 2161 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets, | 2018-03 - 2023-02 |
| 800 DIXIE PARTNERS LLC | 6868 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets, | 2018-01 - 2023-02 |
| 800 DIXIE PARTNERS LLC | 9134 | Statement Pages, Signature Card, Corporate Resolution, Wires, Deposits, Offsets, | 2018-01 - 2023-02 |
| 8325 CHERYL LANE LLC | 6042 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets, | 2018-01 - 2023-02 |
| LOCATION CAPITAL LLC | 8410 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets, | 2018-01 - 2023-02 |
| LOCATION DEVELOPMENT LLC | 5835 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets, | 2018-01 - 2023-02 |
| LOCATION PROPERTIES LLC | 8258 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets, | 2018-01 - 2023-02 |

**EXHIBIT**

BBB

| | | | |
|---|---|---|---|
| LV BAYSHORE PARTNERS LLC | 2626 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets, | 2020-01 - 2023-02 |
| STEWART GROVE 1 LLC | 2744 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets, | 2018-01 - 2023-02 |
| URBIN COCONUT GROVE PARTNERS LLC | 3302 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets, | 2018-01 - 2023-02 |
| URBIN CORAL GABLES PARTNERS LLC | 3014 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, | 2019-10 - 2023-02 |
| URBIN LLC | 3263 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets | 2019-10 - 2023-02 |
| URBIN MIAMI BEACH PARTNERS LLC | 5493 | Statement Pages, Signature Card, Corporate Resolution, Checks, Wires, Deposits, Offsets | 2018-01 - 2023-02 |

3.)  <u>Production.</u>

___X___The records produced herewith (together with any banking records produced by Bank of America N.A. previously in response to the subject request, order, or subpoena) constitute a complete production of bank records responsive to the subject request order or subpoena (or a complete production under the terms of a subject request, order, subpoena as subsequently limited by the issuer).

OR

_____A thorough search has been conducted and no records could be located that are responsive to the subject request, order, or subpoena.

4.)  I declare under penalty of perjury that the foregoing is true and correct.

Kristin Matysek

Digitally signed by Kristin Matysek
Date: 2023.04.03 10:38:12 -07'00'

Date: 04/03/2023         Signature: _____

Bank of America Legal Order Processing
Regarding reference number: D050523000326
Court case name: LV BAYSHORE SPE
Court case number: FL-04347
Court or issuer: U.S. Securities & Exchange
Commission

### DECLARATION OF BANK OF AMERICA BANK OFFICER AND/OR CUSTODIAN OF RECORDS

1.) <u>Authority.</u> I, Kacie Williams, am a duly authorized bank officer and/or custodian of the records of Bank of America N.A with authority to execute this declaration and certify to the authenticity and accuracy of the records produced with this declaration.

2.) <u>Records.</u> The records produced herewith by Bank of America, N.A. are original documents or are true copies of records of a regularly conducted banking activity that:

   a.) Were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

   b.) Were made and kept in the course of regularly conducted banking activity by Bank of America, N.A. personnel or by persons acting under their control; and

   c.) Were made and kept by the regularly conducted activity of Bank of America N.A. as a regular practice, on or about the time of the act, condition, or event recorded.

Additional Comments:

| Account title | Account ending in | Document type | Timeframe |
|---|---|---|---|
| LV BAYSHORE SPE LLC | 6257 | Statement Pages Corporate Resolutions, IP Addresses, Signature Card, Wires | 03/2023 - 04/2023 03/2023 - 05/2023 |

3.) <u>Production.</u>
 X          The records produced herewith (together with any banking records produced by Bank of America N.A. previously in response to the subject request, order, or subpoena) constitute a complete production of bank records responsive to the subject request order or subpoena (or a complete production under the terms of a subject request, order, subpoena as subsequently limited by the issuer).

OR

_____A thorough search has been conducted and no records could be located that are responsive to the subject request, order, or subpoena.

4.) I declare under penalty of perjury that the foregoing is true and correct.

Date:05/17/2023_____ Signature: ___Kacie Williams___   Digitally signed by Kacie Williams Date: 2023.05.17 09:28:05 -04'00'

STATE OF TEXAS        §
              §
              §
              §
COUNTY OF MONTGOMERY    §

## AFFIDAVIT OF THE CUSTODIAN OF BUSINESS RECORDS

    Before me, the undersigned authority, personally appeared W. Jeffrey Levi, who, being by me duly sworn, deposed as follows:

    My name is W. Jeffrey Levi. I am of sound mind, capable of making this Affidavit, and personally acquainted with the facts herein stated:

    I am the custodian of records of Woodforest National Bank and am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities. Attached are electronic copies of records maintained by Woodforest National Bank. These are the original records or exact duplicates of the original records. The records were made at or near the time of each act, event, condition, opinion, or diagnosis set forth. The records were made by, or from information transmitted by, persons with knowledge of the matters set forth. The records were kept in the course of regularly conducted business activity. It is the regular practice of the business activity to make the records.

                             _____
                             Affiant

SWORN TO AND SUBSCRIBED before me on the 3rd day of March 2023.

                       _____
                       Notary Public - State of Texas

NELSY E. PALMERO
Notary Public, State of Texas
Comm. Expires 03-29-2026
Notary ID 12554459-8

                       Notary's printed name:

                       Nelsy E. Palmero
                       My Commission Expires 03/29/2026

**EXHIBIT**

CCC

**STATE OF TEXAS**                                 §
                                                   §
                                                   §
                                                   §
**COUNTY OF MONTGOMERY**                            §

## AFFIDAVIT OF THE CUSTODIAN OF BUSINESS RECORDS

Before me, the undersigned authority, personally appeared W. Jeffrey Levi, who, being by me duly sworn, deposed as follows:

My name is W. Jeffrey Levi. I am of sound mind, capable of making this Affidavit, and personally acquainted with the facts herein stated:

I am the custodian of records of Woodforest National Bank and am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities. Attached are electronic copies of records maintained by Woodforest National Bank. These are the original records or exact duplicates of the original records. The records were made at or near the time of each act, event, condition, opinion, or diagnosis set forth. The records were made by, or from information transmitted by, persons with knowledge of the matters set forth. The records were kept in the course of regularly conducted business activity. It is the regular practice of the business activity to make the records.

_____
Affiant

SWORN TO AND SUBSCRIBED before me on ___28th Day of March 2023___

_____
Notary Public - State of Texas

Notary's printed name:



Lucy Cooper
My commission expires 07/27/2024

LUCY COOPER
Notary Public, State of Texas
Comm. Expires 07-27-2024
Notary ID 12496908-0

**STATE OF TEXAS**

§
§
§
§
**COUNTY OF MONTGOMERY** §

## AFFIDAVIT OF THE CUSTODIAN OF BUSINESS RECORDS

Before me, the undersigned authority, personally appeared W. Jeffrey Levi, who, being by me duly sworn, deposed as follows:

My name is W. Jeffrey Levi. I am of sound mind, capable of making this Affidavit, and personally acquainted with the facts herein stated:

I am the custodian of records of Woodforest National Bank and am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities. Attached are electronic copies of records maintained by Woodforest National Bank. These are the original records or exact duplicates of the original records. The records were made at or near the time of each act, event, condition, opinion, or diagnosis set forth. The records were made by, or from information transmitted by, persons with knowledge of the matters set forth. The records were kept in the course of regularly conducted business activity. It is the regular practice of the business activity to make the records.

_____
Affiant

SWORN TO AND SUBSCRIBED before me on the 16th day of May 2023.

_____
Notary Public - State of Texas

Notary's printed name:

Nelsy E. Palmero
My Commission Expires 03/29/2026

NELSY E. PALMERO
Notary Public, State of Texas
Comm. Expires 03-29-2026
Notary ID 12554459-8

**First Citizens Bank**

## AFFIDAVIT OF CUSTODIAN OF RECORDS

I, Nicole Cribbs, state as follows:

1.        I am employed by First-Citizens Bank & Trust Company as the AVP, Supervisor Deposit Operations.  This affidavit is offered in response to the Subpoena (the "Subpoena") served in relation to the above-referenced matter on __April 21, 2023__.  I make this affidavit based upon my own personal knowledge.

2.        In my capacity as AVP, Supervisor Deposit Operations, I am familiar with and have access to certain business records for ___**First Citizens Bank**___ including the business records sought by the Subpoena.

3.        Attached hereto are true and accurate copies of the business records which have been identified as being responsive to the Subpoena.

4.        The documents attached hereto and produced herewith are true and accurate copies of the business records which were made at or near the time of the acts, events, conditions, or opinions recited therein by or from information transmitted by a person with knowledge thereof; and were and are made and kept in the course of a regularly conducted business activity as a regular practice.

This the 3rd day of MAY , 2023.

_Nicole Cribbs_
Nicole Cribbs
AVP, Supervisor Deposit Operations

Sworn to and subscribed before me on
__May 3 2023__ .

__Courtney Best__
Notary Public
Wake County, North Carolina

My Commission Expires: __11/14/2026__

Sub. No. __22051__

1

**EXHIBIT**

**DDD**

SEC-PMGA-P-0000002

**DECLARATION OF PEDRO M. GALLINAR CERTIFYING RECORS
OF REGULARLY CONDUCTED BUSINESS ACTIVITY**

I, the undersigned, Pedro M. Gallinar, pursuant to 28 U.S.C. section 1746, declare that:

1. I am employed by Pedro M. Gallinar & Associates, P.A. as (Certified Public Accountant) and by reason of my position am authorized and qualified to make this declaration.
2. I further certify that the documents submitted herewith are true copies of records that were:
   a. made at or near the time of the occurrence of the matters set forth therein, by, or from information transmitted by, a person with knowledge of those matter;
   b. kept in the course of regularly conducted business activity; and
   c. made by regularly conducted activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 13, 2023.

Pedro M. Gallinar

---

**EXHIBIT**

**EEE**

SEC-PMGA-P-0000002