**UNITED STAPTES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

RISHI KAPOOR; et al
,

Defendants.

_____/

Emergency *Ex Parte* Motion for Asset Freeze and Other
Relief Against Defendant Rishi Kapoor

# **<u>EXHIBIT 5</u>**

Declaration of Melissa Davis

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Declaration of Melissa Davis, CPA, CIRA, CFE**

**December 4, 2023**



EXHIBIT

5



# TABLE OF CONTENTS

**DECLARATION**

**EXHIBITS**

| | |
|---|---|
| **Documents Utilized** | **A** |
| **Bank Records Analyzed** | **A.1** |
| **Location Ventures Bank Reconstruction** | **B** |
| **1505 Ponce Bank Reconstruction** | **B.1** |
| **515 Valencia Bank Reconstruction** | **B.2** |
| **551 Bayshore Bank Reconstruction** | **B.3** |
| **8325 Cheryl Lane Bank Reconstruction** | **B.4** |
| **Stewart Grove Bank Reconstruction** | **B.5** |
| **800 Dixie Bank Reconstruction** | **B.6** |
| **Urbin Bank Reconstruction** | **C** |
| **Urbin Coconut Grove Bank Reconstruction** | **C.1** |
| **Urbin Coral Gables Bank Reconstruction** | **C.2** |
| **Urbin Miami Beach Bank Reconstruction** | **C.3** |
| **Location Ventures 2021 and 2022 Balance Sheets** | **D** |
| **Location Ventures 2021 and 2022 Profit & Loss** | **D.1** |
| **Funds received from Related Parties and Entities** | **E** |
| **Summary of Insider Equity Account Balances** | **E.1** |
| **Location Ventures Operating Budgets** | **F** |
| **Closing Extension Fees – Location Ventures** | **G** |
| **Closing Extension Fees – Urbin Coconut Grove** | **G.1** |
| **Urbin Coconut Grove – Customer Escrow Tracing** | **H-H.2** |
| **Urbin Miami Beach – Customer Escrow Tracing** | **H.3** |
| **Urbin Coral Gables – Customer Escrow Tracing** | **H.4** |
| **Urbin Coconut Grove – Customer Escrow Tracing** | **I-I.1** |
| **Urbin Miami Beach – Investor Funds Tracing** | **J** |
| **Location Ventures – Investor Funds Tracing** | **K** |
| **1505 Ponce – Investor Funds Tracing** | **L** |

**QUALIFICATIONS**

**Resume of Melissa Davis**
**Case Experience**



Kapila/Mukamal

CPAs, Forensic and Insolvency Advisors

# TABLE OF CONTENTS CONTINUED

**APPENDICES**

| | |
|---|---|
| **Location Ventures Operating Agreement** | **1** |
| **1505 Ponce Operating Agreement** | **2** |
| **1505 Ponce Balance Sheets** | **3** |
| **515 Valencia Operating Agreement** | **4** |
| **515 Valencia Balance Sheet** | **5** |
| **551 Bayshore Operating Agreement** | **6** |
| **551 Bayshore Balance Sheet** | **7** |
| **Redlands Operating Agreement** | **8** |
| **Redlands Balance Sheets** | **9** |
| **Urbin Operating Agreement** | **10** |
| **Urbin Balance Sheets** | **11** |
| **Urbin Coconut Grove Operating Agreement** | **12** |
| **Urbin Coconut Grove Balance Sheet** | **13** |
| **Urbin Miami Beach Operating Agreement** | **14** |
| **Urbin Miami Beach Balance Sheet** | **15** |
| **Urbin Coral Gables Operating Agreement** | **16** |
| **Urbin Coral Gables Balance Sheet** | **17** |
| **Location Ventures Financial Statements 2021 and 2022** | **18** |
| **Location Ventures Operating Budgets 2020-2022** | **19** |



Kapila/Mukamal
CPAs, Forensic and Insolvency Advisors

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## DECLARATION OF MELISSA DAVIS

### I.      INTRODUCTION

I, Melissa Davis, declare as follows:

1.      I am over 18 years of age and have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.      I provide this declaration in support of the Securities and Exchange Commission's ("SEC") emergency civil action against Defendants: Location Ventures, LLC ("LV"); Urbin, LLC ("Urbin"); Rishi Kapoor ("Kapoor"), Location Properties, LLC ("L. Properties"); Location Development, LLC ("L. Development"); Location Capital, LLC ("L. Capital"); Location Ventures Resources, LLC ("L. Ventures"); Location GP Sponsor, LLC ("L. GP Sponsor"); Location Equity Holdings, LLC ("L. Holdings"); URBIN Founders Group, LLC ("URBIN Founders"); URBIN CG Sponsor, LLC ("URBIN CG Sponsor"); 515 Valencia Sponsor, LLC ("515 Valencia Sponsor"); LV Montana Sponsor, LLC ("LV Montana Sponsor"); 515 Valencia Partners, LLC ("515 Valencia"); LV Montana Phase I, LLC ("LV Montana"); Stewart Grove 1, LLC ("Stewart Grove 1"); Stewart Grove 2, LLC ("Stewart Grove 2"); URBIN Coral Gables Partners, LLC ("URBIN Gables"); URBIN Coconut Grove Partners, LLC ("URBIN Grove"); URBIN Miami Beach Partners, LLC ("URBIN Miami Beach"); URBIN Miami Beach II Phase 1, LLC ("URBIN Miami Beach II");

Page 1



Location Zamora Parent, LLC ("L. Zamora Parent"); and Patriots United, LLC ("Patriots United").

3.      My opinions are based on my review of the documents identified in ***Exhibit A*** and my experience as a certified public accountant, certified insolvency and restructuring advisor, certified fraud examiner, and as a practitioner addressing fraud investigations, solvency, and restructuring issues for over 20 years.

4.      In conducting my analyses, I was assisted by other professionals at KapilaMukamal, LLP ("KM") working under my direct supervision with extensive experience in litigation support and forensic and insolvency accounting. Any references to "I," "my," "KM," or "KapilaMukamal, LLP" within the declaration incorporate my efforts with the assistance of my co-professionals.

5.      This declaration was prepared solely for use in this matter. My opinions should not be relied upon by any other person nor should any statements in this declaration be used for any other purpose without written consent from KM.

## II.   <u>SCOPE</u>

6.      The SEC retained me to perform a financial analysis of certain bank accounts and other financial records for the period of January 2018 through February 2023 to identify sources and flow of funds in connection with investments in LV, Urbin, and their real estate projects, as further defined below.

7.      As part of my analysis, I was asked to determine:



a. The amount of funds the LV Entities[1] and the Urbin Entities[2] received from external investors;[3]

b. Whether certain insiders made their required capital contributions to LV;

c. Whether investor funds received by the LV Entities and/or the Urbin Entities were commingled, including for intercompany loans and intercompany transfers;

d. How the Urbin Entities utilized customer deposit funds released from escrow;

e. Whether there were circumstances where investor funds were used to pay other investors or not used for their intended purpose;

f. The amount of investor funds the LV Entities and the Urbin Entities, paid to insiders; and

g. The amount of loan extension fees paid by the LV Entities and/or the Urbin Entities.

---

[1] Included within the LV Entities are LV, L. Capital, L. Development, L. Properties, L. Resources and the following project-specific entities: 1505 Ponce Partners, LLC ("1505 Ponce"); 515 Valencia; 551 Bayshore; 8325 Cheryl Lane, LLC ("8325 Cheryl Lane"); Redlands Phase 1, LLC ("Redlands"); and Stewart Grove 1. These project-specific entities are separately referred to as the "LV Project Entities." There are additional entities associated with LV, but I was not provided with financial information related to those entities, to the extent financial information for those entities exists.

[2] Included within the Urbin Entities are Urbin and the following project-specific entities: Urbin Grove; Urbin Gables; and Urbin Miami Beach. These project-specific entities are separately referred to as the "Urbin Project Entities." There are additional entities associated with Urbin, but I was not provided with financial information related to those entities, to the extent financial information for those entities exist.

[3] An external investor is any investor not also an officer, director, or manager of LV, Urbin, or their related entities. The names of external investors are redacted for privacy purposes.



## III.   RECORDS ANALYZED & METHODOLOGY

### A.   THE LV ENTITIES AND URBIN ENTITIES

8.      A complete list of the documents I relied on in performing my analysis is included in ***Exhibit A***.

9.      My investigation included an analysis of the LV Entities' banking and accounting records listed in ***Exhibit A***. ***Table 1*** identifies LV's related entities included in this analysis.

10.     For each of LV's related entities, ***Table 1*** provides: the entity name, the abbreviated name adopted for this declaration, the entity's purpose based on my understanding, and the exhibit corresponding with the entity's bank reconstruction.

### *Table 1 – The LV Entities Bank Reconstructions* [4]

| Entity Name | Declaration Defined Name | Declaration Bank Reconstruction Exhibit | Entity Purpose |
|---|---|---|---|
| Location Capital LLC | *L. Capital* | ***Exhibit B*** | *Raise Capital* |
| Location Development LLC | *L. Development* | ***Exhibit B*** | *Developer* |
| Location Properties LLC | *L. Properties* | ***Exhibit B*** | *Marketing* |
| Location Ventures Resources LLC | *L. Resources* | ***Exhibit B*** | *Human Resources* |
| 1505 Ponce Partners LLC | *1505 Ponce* | ***Exhibit B.1*** | *Project Level Entity* |
| 515 Valencia Partners LLC | *515 Valencia* | ***Exhibit B.2*** | *Project Level Entity* |
| 551 Bayshore Partners LLC | *551 Bayshore* | ***Exhibit B.3*** | *Project Level Entity* |
| 8325 Cheryl Lane LLC | *8325 Cheryl Lane* | ***Exhibit B.4*** | *Project Level Entity* |
| Redlands Phase I LLC | *Redlands Phase I* | *n/a* | *Project Level Entity* |
| Stewart Grove 1 LLC | *Stewart Grove* | ***Exhibit B.5*** | *Project Level Entity* |

---

[4] There are additional entities associated with LV, but I was not provided with financial information related to those entities, to the extent financial information for those entities exists.



11.     My investigation also included an analysis of the Urbin Entities' banking and accounting records. ***Table 2*** identifies Urbin's related entities included in this analysis. For each of Urbin's related entities, ***Table 2*** provides: the entity name, the abbreviated name adopted for this declaration, the entity's purported purpose, and the exhibit corresponding with the entity's bank reconstruction.

12.     The entities listed in ***Table 2*** are referred to collectively as the "Urbin Entities."

### *Table 2 – The Urbin Entities* [5]

| Entity Name | Declaration Defined Name | Declaration Bank Reconstruction Exhibit | Entity Purpose |
|---|---|---|---|
| Urbin LLC | *Urbin* | ***Exhibit C*** | Developer |
| Urbin Coconut Grove Partners, LLC | *Urbin Grove* | ***Exhibit C.1*** | Project Level Entity |
| Urbin Coral Gables Partners, LLC | *Urbin Gables* | ***Exhibit C.2*** | Project Level Entity |
| Urbin Miami Beach Partners, LLC | *Urbin Miami Beach* | ***Exhibit C.3*** | Project Level Entity |

## B.     CASH ACTIVITY ANALYSIS

13.     To determine the nature of the transactions of the LV Entities and the Urbin Entities, I prepared a detailed reconstruction of the bank account activity for each entity, to the extent a bank account existed for that particular entity. The exhibits corresponding to these bank reconstructions are listed in ***Table 1*** and ***Table 2***.

14.     The bank reconstructions are databases of the details of each transaction (receipts and disbursements) that occurred in the bank accounts. The bank accounts included in my analysis are listed in ***Exhibit A.1***.

---

[5] There are additional entities associated with Urbin, but I was not provided with financial information related to those entities, to the extent financial information for those entities exist.



15.     In preparing the reconstructions, I utilized Actionable Intelligence Technologies Inc.'s Comprehensive Financial Investigative Solution ("CFIS"), which is a computer software company that converts bank statements from financial institutions into searchable databases ("CFIS Databases").

16.     I used the data from the CFIS Databases to populate the transactions in the bank reconstructions in chronological order. I verified that the data from the CFIS Databases matched the transactions listed in the bank statements. Where the CFIS Databases did not include a payee/recipient for each transaction, I populated the payee/recipient information using the bank statement support or information I obtained from the LV Entities and Urbin Entities general ledger and accounting files.

17.     I assigned each transaction in the bank reconstructions to a category for purposes of analyzing and summarizing the data. I aggregated the transactions in the bank reconstructions by category to prepare summaries of the activity in the bank accounts.

18.     I used the information in the bank reconstructions to quantify and evaluate the nature of the actual cash activity for the LV Entities' and Urbin Entities' respective business operations.

**C.     ACCOUNTING RECORDS**

19.     The SEC obtained and provided me with the LV Entities' and Urbin Entities' QuickBooks general ledger files and Sage general ledger spreadsheets. A complete list of the files provided to me by the SEC is included in ***Exhibit A***.

20.     I used the information from the general ledgers to evaluate the way the LV Entities and Urbin Entities maintained their accounting records as compared to actual

Page 6



cash activity. I also used the information in the general ledgers to analyze the way the LV Entities and Urbin Entities accounted for certain transactions, including payments to the entities and individuals discussed in this declaration.

21.    I was also provided with and reviewed select tax returns, which are listed in **Exhibit A**.

### D.    OPERATING AGREEMENTS

22.    The SEC provided me with the operating agreements for LV, Urbin, the LV Entities, and the Urbin Entities. I considered the information in the operating agreements when conducting my analysis in connection with capital contributions, developer fees, marketing fees, and other fees charged to the LV Project Entities and Urbin Project Entities. A complete list of the operating agreements is included in **Exhibit A**.

## IV.    <u>BACKGROUND</u>

### A.    LV

23.    LV was formed on January 25, 2016, to develop residential and commercial real property.[6] Kapoor is LV's founder and, until recently, Chief Executive Officer.[7] Daniel Motha ("Motha") is LV's former CFO.[8]

24.    Patriots United is owned by Kapoor, Motha, and Kapoor Capital, LLC ("Kapoor Capital").[9] Kapoor Capital is owned by Kapoor and two of his family members.[10]

25.    Patriots United holds a 47.917% membership interest in LV.[11]

---

[6] LV Second Amended and Restated Operating Agreement, dated April 19, 2021.
[7] LV Second Amended and Restated Operating Agreement, dated April 19, 2021. I understand Kapoor resigned or was removed as LV's CEO and manager in July 2023.
[8] LV Second Amended and Restated Operating Agreement, dated April 19, 2021.
[9] LV00011016 – LV Members Organizational Chart.
[10] LV00011016 – LV Members Organizational Chart.
[11] LV Second Amended and Restated Operating Agreement, dated April 19, 2021.



26.    Vivian Bonet ("Bonet") is LV's Chief Development Officer. She owns a 2.111% membership interest in LV.[12] LV's remaining members are external investors.[13]

*Figure 1* includes the ownership structure of LV as of May 10, 2023.



27.    LV owns and controls several subsidiaries through which it operates. These wholly owned subsidiaries include:

---

[12] LV00011017 – LV Other Investors.
[13] LV00011017 – LV Other Investors.
[14] LV Organizational Chart (Bates No. LV00011016-LV00011017) and LV Second Amended and Restated Operating Agreement, dated April 19, 2021.



a. L. Capital, formed on January 25, 2016, by Kapoor to raise capital for LV;[15]

b. L. Properties, formed on January 25, 2016, by Kapoor to provide marketing services for LV;[16]

c. L. Development, formed on February 16, 2016, by Kapoor to provide developer services for LV;[17] and

d. L. Resources, formed on September 13, 2019, by Kapoor to provide human resource services for LV.[18]

28.    Kapoor operated LV through these wholly owned subsidiaries. Any reference to the financial and accounting activity of LV includes the activity of these wholly owned subsidiaries: L. Capital; L. Properties; L. Development; and L. Resources.

29.    As shown in *Table 1* above, Kapoor also established the LV Project Entities to purchase and develop different real estate projects in which LV essentially was the developer.[19] *Figure 2* is an organization chart for the LV Entities and the Urbin Entities.

---

[15] L. Capital Operating Agreement, dated April 1, 2020.
[16] L. Properties Operating Agreement dated, April 1, 2020.
[17] L. Development Operating Agreement dated, April 1, 2020.
[18] L. Resources Operating Agreement dated, April 1, 2020.
[19] LV is an indirect member of these LV Project Entities through a wholly owned subsidiary formed for each project.





### B.    URBIN

30.    Urbin was formed on May 7, 2018, to develop residential and commercial real property.[21] Urbin Founders Group, LLC ("Urbin Founders Group") is the managing member of Urbin.[22] Kapoor is the manager of Urbin Founders Group.[23] Kapoor Capital owns a 7.14% membership interest in Urbin. Bonet owns a 1.79% membership interest in Urbin. The remaining members of Urbin are external investors. **Figure 3** is the Urbin Schedule of Members as represented in Urbin's Operating Agreement. As shown in **Figure 3**, LV owns a 40.62 % membership interest in Urbin.

---

[20] LV Organizational Chart (Bates No. LV00011015).
[21] Urbin Operating Agreement, dated June 14, 2018.
[22] Urbin Operating Agreement, dated June 14, 2018.
[23] Urbin Founders Group Operating Agreement, dated June 14, 2018.



***Figure 3 – Urbin Schedule of Members*** [24]

| Published Name | Capital Contributions ($US) | Membership Units, Class and Percentage Interest |
|---|---|---|
| Sponsor Entity: URBIN Founders Group, LLC 2665 S. Bayshore Drive, Suite 1101 Coconut Grove, Florida 33133 | $1.00 | 1 Class B 100% of Class B Units |
| Kapoor Capital LLC | $1,000,000.00 | 7.14% |
| Location Ventures LLC | $6,187,500.00 | 40.62% |
| Investor 13 | $1,000,000.00 | 7.14% |
| Investor 30 | $1,000,000.00 | 7.14% |
| Investor 51 | $1,000,000.00 | 7.14% |
| Investor 63 | $500,000.00 | 3.57% |
| Investor 64 | $250,000.00 | 1.79% |
| Vivian Bonet | $250,000.00 | 1.79% |
| Investor 42 | $1,000,000.00 | 7.14% |
| Investor 23 | 500,000.00 | 7.14% |
| Investor 6 | $37,500 | 0.27% |
| Investor 53 | $125,000 | 0.89% |
| Investor 34 | 250,000.00 | 1.07% |
| Investor 27 | 250,000.00 | 1.07% |
| Investor 37 | $250,000 | 1.78% |
| Investor 24 | $200,000 | 1.43% |
| Investor 3 | $200,000 | 1.43% |
| Total | $14,000,000.00 | 100% |

## V.   SUMMARY OF FINDINGS

31.   A summary of my findings are as follows:

   a.   The amount of funds the LV Entities and the Urbin Entities received

   from investors is as follows:

   i.   LV received $35.5 million from external investors. **[¶32]**

   ii.   The LV Project Entities received approximately $36.9 million

   from external investors. **[¶34]**

---

[24] Urbin Capitalization Table Bates No. LV00011014.



      iii.  Urbin and the Urbin Project Entities received approximately $21 million from external investors. **[¶ 41]**

b.  Patriots United, Bonet, and Kapoor Capital did not make their required capital contributions as follows:

      i.  Patriots United did not make a $13 million cash capital contribution to LV; and

      ii.  Bonet did not make a $475,000 cash capital contribution to LV. **[¶ 50-54]**

c.  Investor funds for the LV Entities and Urbin Entities were commingled, and there were more than $60 million of funds transferred back and forth between LV, the LV Project Entities, and the Urbin Entities. **[¶64]** In addition to its capital contribution, LV loaned Urbin approximately $14 million which, as of December 31, 2022, remained unsatisfied. **[¶ 66]**

d.  The Urbin Entities received at least $4.56 million of customer deposit escrow funds and used the funds for purposes unrelated to the relevant Urbin project, including: **[¶ 67]**

      i.  Urbin Grove's customer deposit escrow funds were used to:

         1.  Make LV's capital contribution in 1505 Ponce;

         2.  Make transfers to L. Capital that were used for purposes unrelated to Urbin Grove; and

         3.  Pay fees to insiders.



    ii. Urbin Miami Beach's customer deposit escrow funds were used to:

        1. Make payments for "pipeline" investments of LV;

        2. Pay fees to insiders; and

        3. Purchase land for the Urbin Grove project.

e. There were multiple instances of millions of dollars of investor funds being used to pay other investors or not for their intended purpose, including:

    i. Urbin Grove investor funds were used to pay for Urbin Gables land purchase; **[¶ 84-87]**

    ii. New Urbin Grove investor funds were used to pay earlier Urbin Grove investors; **[¶88]**

    iii. LV investor funds were used to repay a Redlands investor, **[¶93]** and

    iv. New LV investor funds were used to buy out an earlier LV investor. **[¶ 95-97]**

f. The LV Entities and the Urbin Entities made the following payments or transfers to insiders:

    i. LV paid Kapoor approximately $5.6 million of which $4.3 million was not supported by the LV Entities' and Urbin Entities' respective operating agreements. **[¶99]** The payments to Kapoor included:



1. $3.1 million for compensation of which $1.6 million was more than the approved budgeted amounts for his compensation for the years 2021 and 2022. $1.3 million of this compensation was derived from a capital distribution LV received in connection with its investment in the LV project 800 Dixie;

2. $1.5 million payment that was not reflected in the LV accounting records;

3. $691,000 in capital distributions in connection with Patriots United's ownership interest in LV, despite Patriots United not making its capital contribution;

4. Acquisition fees of $75,000, and

5. Loan guaranty fees of $472,470.

ii. LV paid Motha approximately $2.2 million of which approximately $1 million was not supported by the LV Entities' and Urbin Entities' respective operating agreements. **[¶101]** The payments to Motha included:

1. Acquisition fees of $240,000;

2. Loan guaranty fees of $192,500, and

3. Capital distributions of $641,006 in connection with Patriots United's ownership interest in LV, despite Patriots United not making its capital contribution.



    iii.   LV paid Bonet approximately $1.6 million. The payments to Bonet exceeded the approved budgeted amounts by approximately $641,000 for the years 2020 through 2022. **[¶ 106]**; and

  g.  The LV Entities and the Urbin Entities paid at least $2.4 million in loan extension fees. **[¶130]**

## VI.   <u>ANALYSIS</u>

### A.   INVESTOR FUNDS RECEIVED BY LV ENTITIES AND URBIN ENTITIES

#### 1.   <u>The LV Entities Received Over $72 Million from External Investors</u>

##### a)   **LV – Funds from Investors**

32.    The LV members are comprised of internal and external investors. ***Appendix 1*** is the Second Amended and Restated Operating Agreement of Location Ventures, dated April 19, 2021, which includes the schedule of members and the initial capital contributions for each member totaling $43.9 million.[25] As summarized in ***Table 3***, the actual funds LV received from its members total $35,536,268.

---

[25] Pursuant to LV Second Amended and Restated Operating Agreement, dated April 19, 2021.



**Table 3 – LV Capital Contributions**[26]

| Name | Initial Capital Contributions Per Operating Agreement | Equity Contributions Per December 31, 2022 Financial Statement | Fund Received from Members Per Combined Location Ventures Bank Reconstruction |
|---|---|---|---|
| Investor 9 | $    500,000.00 | $    500,000.00 | $    500,000.00 |
| Investor 15 | 100,000.00 | 100,000.00 | 150,000.00 |
| Investor 20 | 24,378,633.00 | 23,340,333.00 | 21,928,333.00 |
| Investor 21 | 150,000.00 | 150,000.00 | |
| Investor 27 | 100,000.00 | 100,000.00 | 150,000.00 |
| Investor 30 | 600,000.00 | 600,000.00 | 4,782,935.00 |
| Investor 34 | 150,000.00 | 150,000.00 | 300,000.00 |
| Investor 36 | 150,000.00 | 150,000.00 | |
| Investor 37 | 125,000.00 | 125,000.00 | 125,000.00 |
| Investor 46 | 500,000.00 | 500,000.00 | 3,500,000.00 |
| Investor 56 | 1,000,000.00 | 1,000,000.00 | 1,000,000.00 |
| Patriots United , LLC | 13,000,000.00 | 12,050,000.00 | - |
| Investor 58 | 500,000.00 | 500,000.00 | 500,000.00 |
| Investor 60 | 1,000,000.00 | 1,000,000.00 | 1,000,000.00 |
| Investor 63 | 1,000,000.00 | 1,000,000.00 | 1,450,000.00 |
| Investor 64 | 150,000.00 | 150,000.00 | 150,000.00 |
| Vivian Bonet | 475,000.00 | 475,000.00 | |
| | $   43,878,633.00 | $   41,890,333.00 | $   35,536,268.00 |

33.     Patriots United (an entity owned by Kapoor and Motha) and Bonet are listed as members of LV. Pursuant to the schedule of members, Patriots United's capital contribution was $13 million, and Bonet's contribution was $475,000. LV, however, did not receive capital contributions from either Patriots United or Bonet. See discussion in ¶ **52**.

### b)     LV Project Entities – Funds from Investors

34.     The LV Project Entities raised approximately $36.9 million from external investors as summarized in **Table 4**.[27]

---

[26] In some instances, the LV bank reconstruction indicates that LV received more or less funds from an external investor than the initial capital contribution. These variances were likely related to other transactions, loans, or investments LV investors made into other LV Entities or Urbin Entities.
[27] I obtained the external investor amounts from the LV Project Entities' operating agreements and balance sheets. I also considered the investor activity in the Bank Reconstructions.



***Table 4 – LV Project Entities External Member Investments***

| Entity Name | External Member Investment Amount |
|---|---|
| *1505 Ponce* | $ 18,000,000 |
| *515 Valencia* | 6,825,000 |
| *551 Bayshore* | 9,172,515 |
| *Redlands Phase I* | 2,860,446 |
| *Stewart Grove* | - |
| | $ 36,857,961 |

### (1)     1505 Ponce

35.     1505 Ponce was formed on September 15, 2021.[28] ***Appendix 2*** is 1505 Ponce's Amended and Restated Operating Agreement.

36.     1505 Ponce raised $18 million from two external investors. ***Appendix 3*** is 1505 Ponce's monthly balance sheet from March 2022 through February 2023 reflecting these investments.

### (2)     515 Valencia

37.     515 Valencia was formed on February 1, 2018.[29] ***Appendix 4*** is 515 Valencia's Operating Agreement. Pursuant to its operating agreement, 515 Valencia was capitalized with $10 million of which $6,488,000 was raised from external investors. ***Appendix 5*** is a summary of 515 Valencia's balance sheet that reflects these capital contributions.

---

[28] 1505 Ponce Amended and Restated Operating Agreement, dated June 1, 2022.
[29] 515 Valencia Operating Agreement, dated February 1, 2018.



### *(3)     551 Bayshore*

38.     551 Bayshore was formed on January 15, 2021.[30] ***Appendix 6*** is 551 Bayshore's Amended and Restated Operating Agreement. ***Appendix 7*** are 551 Bayshore's balance sheets reflecting $9,172,515 in investments from external investors.

### *(4)     Redlands*

39.     Redlands was formed on May 12, 2022.[31] ***Appendix 8*** is Redlands' Limited Liability Company Agreement. I was not provided with bank records for Redlands. Redlands' only external investor was Investor 80. ***Appendix 9*** are the monthly balance sheets for Redlands reflecting that Investor 80 made capital contributions totaling $2,860,446 and was repaid the capital in December 2022. See **¶93** for a discussion regarding the payments from LV for repayment of the Redlands capital contributions to Investor 80.

### *(5)     Stewart Grove 1 and Stewart Grove 2*

40.     Stewart Grove 1 and Stewart Grove 2's sole member is Location Equity Holdings, LLC.[32] ***Exhibit B.5*** is the Stewart Grove 1 bank reconstruction reflecting funds from Investor 2 totaling $5,529,620, which were recorded by Stewart Grove 1 as loans.

### 2.     The Urbin Entities Raised $21 Million from External Investors

41.     The Urbin Entities raised approximately $21 million from external investors as summarized in ***Table 5***.

---

[30] 551 Bayshore Amended and Restated Operating Agreement, dated June 1, 2022.
[31] Redlands Limited Liability Company Agreement, dated May 12, 2022.
[32] Stewart Grove 1 LLC Second Amended and Restated Operating Agreement, dated April 1, 2020, and Stewart Grove 2 LLC Amended and Restated Operating Agreement, dated April 1, 2020.



*Table 5 – Urbin Entities External Member Investment*

| Entity Name | External Member Investment Amount |
|---|---|
| Urbin | $ 6,652,500 |
| Urbin Grove | 7,350,000 |
| Urbin Gables | 500,000 |
| Urbin Miami Beach | 6,550,000 |
| | $ 21,052,500 |

42.     ***Appendix 10*** is Urbin's Operating Agreement, dated June 14, 2018, with an effective date of May 7, 2018. Urbin raised $6,562,000 from external investors as of January 2023. [33] ***Appendix 11*** is Urbin's balance sheet. LV invested $6,187,500 in Urbin.

### a)     Urbin Grove

43.     Urbin Grove was formed on August 16, 2018.[34] ***Appendix 12*** is Urbin Grove's Amended and Restated Operating Agreement. ***Appendix 13*** is Urban Grove's balance sheet. Urbin Grove raised $7.35 million from external investors.[35]

### b)     Urbin Miami Beach

44.     Urbin Miami Beach was formed on May 1, 2021.[36] ***Appendix 14*** is Urbin Miami Beach's Amended and Restated Limited Liability Company Agreement. ***Appendix 15*** is Urbin Miami Beach's balance sheet. Urbin Miami Beach raised $6,550,000 from external investors.

---

[33] Urbin Capitalization Table and balance sheet at ***Appendix 11***.
[34] Urbin Grove Amended and Restated Operating Agreement, dated January 1, 2022.
[35] Urbin Grove balance sheet ***Appendix 13***.
[36] Urbin Miami Beach Second Amended and Restated Limited Liability Company Agreement, dated June 1, 2022.



### c)   Urbin Gables

45.   Urbin Gables was formed on May 7, 2018.[37] ***Appendix 16*** is Urbin Gables' Limited Liability Company Operating Agreement. ***Appendix 17*** is Urbin Gables' balance sheet. Urbin Gables raised $500,000 from external investors.

## B.   INVESTEMENTS FROM LV INSIDERS – $13.5 MILLION NEVER CONTRIBUTED

46.   I determined that Patriots United and Bonet never made their capital contribution to LV.

47.   ***Appendix 18*** includes LV's financial statements for the years 2021 and 2022, which are summarized in ***Exhibits D and D.1***. The 2021 balance sheets disclose Patriots United's capital contribution to be $13 million and Bonet's capital contribution to be $475,000.

48.   LV reported a $13 million capital contribution from Patriots United and a $475,000 capital contribution from Bonet in its 2020 and 2021 partnership return of income.[38]

49.   The 2022 LV financial statements disclose a $12,050,000 capital contribution for Patriots United and a $475,000 capital contribution for Bonet (***Exhibit D***).[39]

50.   ***Exhibit B*** is LV's bank reconstruction, which reflects that these capital contributions were not made to LV.

---

[37] Urbin Gables Operating Agreement, dated May 23, 2018.
[38] Form 1065 U.S. Partnership Return of Income Years 2020 and 2021.
[39] LV Financial Statements for years 2021 and 2022.



51.      I analyzed LV's general ledger to determine how Patriots United's and Bonet's purported capital contributions were recorded. Each is reflected as a "book entry" only and not as an actual cash contribution. ***Figure 4*** is a snapshot from the journal entry where the capital contributions were reported.



52.      On December 31, 2019, journal entries were made in LV's general ledger that credited Patriots United with a $13,150,000 capital contribution and Bonet with a $475,000 capital contribution. However, no cash was contributed. Instead, the amount of LV's investments in certain LV Project Entities, Urbin, and other related entities were increased. These journal entries indicate that rather than contributing the funds to LV, the contributions went to entities listed in the journal entry. Based on my analysis, however, there were no such contributions to these entities.



53.     To determine if Patriots United contributed $13 million to any of the related entities listed in the journal entry, I analyzed the following entities' general ledgers and prepared bank reconstructions to determine the sources and uses of funds to each entity as follows:

     a.  515 Valencia (***Exhibit B.2***);

     b.  Urbin (***Exhibit C)***;

     c.  8325 Cheryl Lane ***(Exhibit B.4)***;

     d.  Stewart Grove 1 ***(Exhibit B.5)***; and

     e.  800 Dixie ***(Exhibit B.6)***.

54.     I found no evidence of any contributions of cash or property from Patriots United, Kapoor, or Motha totaling $13 million or from Bonet totaling $475,000.[40]

55.     ***Exhibit E*** summarizes the funds received by the LV Entities and the Urbin Entities from Kapoor, Kapoor Capital, Kapoor's family members, Motha, and Bonet. ***Exhibit E.1*** is a summary of the equity account balances Kapoor, Kapoor Capital, Kapoor's family members, Motha, and Bonet were credited with.

56.     LV received $940,000 from Rishi Kapoor; however, these funds were not capital contributions. $140,000 was recorded as "Urbin Dollars" and $800,000 were repayments to LV for funds paid to Kapoor in the same amount. [41]

57.     I noted a deposit in L. Capital for $500,000 from Bonet on June 28, 2018. However, that transaction was recorded as a capital contribution in Urbin and contained

---

[40] I did see evidence of the other investors listed in ***Figure 4*** making actual cash contributions to LV. Most of these funds were deposited in L. Capital's bank account.

[41] The $500,000 in funds categorized as "Pipeline" and $300,000 categorized as "Due to/From Rishi" were repayments of funds paid to Rishi Kapoor for the same amount so the net effect was zero. These were not capital contributions. See ***Table 6***.



a note that it was for Bonet's $250,000 Urbin capital contribution and for a $250,000 capital contribution for Investor 64.

58.     I noted a deposit of $250,000 in 515 Valencia received from Bonet. However, that was not capital for LV. The $250,000 deposit was attributed to the capital contribution from an external investor, Investor 66, an entity in which Bonet has indirect ownership.[42]

59.     I noted $2.1 million received from Brij Kapoor, of which $750,000 was for Jan Kapoor's equity investment in 515 Valencia; however, Jan Kapoor was credited with a $1,250,000 equity investment (***Exhibit E.1***).

60.     L. Capital received $1.1 million from Brij Kapoor; however, the funds were not accounted for as capital contributions to L. Capital. $150,000 was referenced as capital for Jan Kapoor's 515 Valencia investment, $450,000 was referenced as "Urbin Dollars," and $500,000 was not accounted for in the L. Capital general ledger. Rishi Kapoor Capital was credited with a $1 million investment in Urbin. I assume the $450,000 and $500,000 received by L. Capital from Brij Kapoor were for Kapoor Capital's $1 million equity investment in Urbin.

61.     Although I was unable to find evidence that Patriots United contributed $13 million, I did find evidence of capital ***distributions*** paid to Kapoor and Motha on behalf of Patriots United.

---

[42] VV Miami Partners Annual Report. VV Miami Partners is an investor in 515 Valencia. V V VBR, LLC is a member of VV Miami Partners. Bonet is a member of V V VBR, LLC per the V V VBR, LLC Articles of Incorporation.



62.     In 2021, Kapoor and Motha received capital distributions from LV in the amounts of $685,738 and $562,193, respectively, for a total of $1,247,931.[43] These amounts were reported as a capital distribution to Patriots United on Patriots United's 2021 Form K-1.

### C.     COMMINGLING OF INVESTOR FUNDS, INTERCOMPANY LOANS, AND INTERCOMPANY TRANSFERS

63.     I determined that there was commingling of the LV Entities' investor funds with Urbin Entities' investor funds.

64.     ***Exhibit B*** is a combined bank reconstruction for LV. There were more than $60 million of funds transferred back and forth between LV, the LV Project Entities, and the Urbin Entities.

65.     LV received approximately $14.7 million from the Urbin Entities and paid $25.2 million to the Urbin Entities.

66.     LV is a member of Urbin and made a $6,187,500 capital contribution. In addition to the capital contribution, LV made transfers to Urbin that were recorded as intercompany loans. The total amount of the loan as of December 31, 2022, was $14,032,670. ***Exhibit D***.

### D.     USE OF URBIN ENTITIES' CUSTOMER SALES DEPOSITS RELEASED FROM ESCROW FOR PURPOSES UNRELATED TO RELEVANT URBIN ENTITY

67.     I determined that certain Urbin Entities received customer sales deposits that were released from escrow and used approximately $4.56 million for purposes

---

[43] The source of this distribution was from LV's sale of the Leucadendra property reported in 2021. LV received $3,652,440 from the sale. The 2021 LV Income Tax Return tax return reported sales proceeds of $3,652,440 and a cost of $478,250 for net gain of $3,174,190.



Kapila Mukamal
CPAs, Forensic and Insolvency Advisors

unrelated to the relevant Urbin project. In this section, I describe the flow of funds for the use of the customer deposits.

### 1.    Urbin Grove – Customer Deposits

*$1,528,215 in Customer Sales Deposits Released*

68.     Between October 11, 2022, and October 14, 2022, Urbin Grove received $1,528,215 in funds from Chicago Title Escrow Company. The combined balance in Urbin Grove's bank accounts prior to receiving these funds was $141,645. On October 18, 2022, Urbin Grove transferred $1,146,900 to Urbin toward repayment of an intercompany loan. **Exhibit H**.

69.     On the same day that Urbin received the $1,146,900 from Urbin Grove, Urbin paid L. Capital $1,146,900, and then L. Capital paid 1505 Ponce $1,146,900. 1505 Ponce recorded the transaction as a capital contribution from LV. As reflected on the 1505 Ponce balance sheet in **Appendix 3**, as of September 30, 2022, LV's capital account balance was $853,100. Pursuant to the 1505 Ponce Amended and Restated Operating Agreement, LV was committed to a $2 million capital contribution. Once this transaction occurred, LV's capital account balance was $2 million. LV essentially used Urbin Grove's customer sales deposits to fund its required capital contribution in 1505 Ponce.[44]

70.     **Figure 5** below summarizes this flow of funds.

---

[44] LV is the sole member of 1505 Ponce Sponsor, LLC, the third member in 1505 Ponce. Pursuant to Exhibit A of the 1505 Ponce Amended and Restated Operating Agreement, 1505 Ponce Sponsor LLC's capital commitment was $2 million. The other two members of 1505 Ponce are Investor 1 and Investor 54. Both had a capital commitment of $9 million that had been fully funded.



***Figure 5 – LV'S Capital Contribution to 1505 Ponce***



*October 31, 2022, Release of $1,214,000 in Customer Sales Deposits*

71.     On October 31, 2022, Urbin Grove received $1,214,000 from Chicago Title Escrow Company. The combined balance in Urbin Grove's bank accounts prior to receiving the funds was $452,437. Urbin Grove paid Urbin $500,000 on November 1, 2022, and another $500,000 on November 4, 2022, to pay down the Urbin intercompany loan.[45] ***Exhibit H.1***.

---

[45] Urbin Grove General Ledger and Bank Reconstruction.

Page 26



72.     Also, on November 1 and November 4, 2022, Urbin transferred $500,000 to L. Capital, and L. Capital used the funds for purposes unrelated to Urbin.

*November 17, 2022, Release of $244,000 in Customer Sales Deposits*

73.     On November 17, 2022, Urbin Grove received $244,000 from Chicago Title Insurance Company. On November 30, 2022, Urbin Grove received $161,000 from Chicago Title Insurance Company.

74.     Prior to these transactions, the combined balance in Urbin Grove's bank accounts was $328,684, primarily derived from the funds remaining and received from Chicago Title Insurance Company on October 31, 2022. ***Exhibit H.1 and H.2***.

75.     Urbin Grove paid Kapoor $120,000 on November 30, 2022, and $100,000 on December 2, 2022, for "loan guaranty fees."[46]

### 2.     Urbin Miami Beach – Customer Deposits[47]

*February 8, 2022, Release of $700,561 in Customer Deposits*

76.     On February 8, 2022, Urbin Miami Beach received $700,561 from Goodkind & Florio for release of customer deposits.[48] The combined balance in the Urbin Miami Beach bank accounts before receipt of these funds was $39,116.

77.     Also, on February 8, 2022, Urbin Miami Beach made a series of four transfers to Urbin totaling $700,000. ***Exhibit H.3***.

---

[46] Urbin Grove General Ledger and Bank Reconstruction.
[47] There are more instances of Urbin Miami Beach customer deposit funds being released and transferred to Urbin, LLC or for other purposes. I have only included a few examples.
[48] Urbin Miami Beach General Ledger and Bank Reconstruction.



78.    On February 8, 2022, Urbin made two transfers to L. Capital totaling $581,000. L. Capital used the funds to make a $556,000 payment to Insured Titles for an investment called "Pipeline Montana."[49] ***Exhibit K***.

*February 11, 2022, Release of $312,000 Customer Deposits*

79.    On February 11, 2022, Urbin Miami Beach received $312,000 from Goodkind & Florio for release of customer escrow deposits and, on the same day, transferred $300,000 to Urbin. ***Exhibit H.3***.

80.    On February 11, 2022, Urbin transferred $300,000 to Urbin Gables.[50] On February 14, 2022, Urbin Gables paid Goodkind & Florio $300,000 for a deposit on the Minorca Parking Lots purchase.[51] ***Exhibit H.4***

*February 15 through 18, 2022, Release of $1,564,930 Customer Deposits*

81.    Between February 15, 2022, and February 18, 2022, Urbin Miami Beach received a total of $1,564,390 from Goodkind & Florio for release of customer escrow deposits. Thereafter, Urbin Miami Beach transferred $1.2 million to Urbin.[52] ***Exhibit H.3***.

82.    On February 18, 2022, Urbin transferred $1 million to L. Capital. L. Capital then made a series of disbursements that were unrelated to Urbin Miami Beach.

**E.    INVESTOR FUNDS USED CONTRARY TO OPERATING AGREEMENTS AND TO PAY OTHER INVESTORS**

83.    I determined that there are multiple instances of millions of dollars of investor funds that were used to pay other investors or used for purposes other than their

---

[49] L. Capital Bank Reconstruction and General Ledger.
[50] Urbin and Urbin Coral Gables Bank Reconstructions.
[51] Urbin Gables Bank Reconstruction and General Ledger.
[52] There are additional instances of this fact pattern; however, I have only highlighted some examples.



intended investment. In the following section, I describe selected examples of this activity by tracing the uses of investor funds.

### 1.   Urbin Grove Investor Funds Used to Pay for Urbin Gables' Land Purchase

84.    Urbin Grove received $4.2 million on January 3, 2022, from Investor 14[53] and $1 million on January 4, 2022, from Investor 49. The balance in Urbin Grove's bank account prior to receiving these funds was $68,002 (*Exhibit I*).

85.    *Figure 6* is an excerpt from the Urbin Grove Operating Agreement that states that Investor 14's $4.2 million capital contribution shall only be used to pay items in the Urbin Grove approved budget and shall not be used to repay any debt owed to the Sponsor (Urbin).



86.    Between January 4, 2022, and January 6, 2022, Urbin Grove paid Urbin $1,847,000. **Exhibit I**. This amount is comprised of:

---

[53] Investor 14's manager is Investor 70 pursuant to Sunbiz.org.



a.   Six transfers of $111,666.67 each, which were recorded in Urbin Grove's general ledger as payments to Urbin for previously incurred developer fees;

b.   One transfer of $725,000 that Urbin Grove recorded as a payment to a lender. However, the funds were actually transferred to Urbin.[54] This is because, on December 9, 2021, Urbin Grove recorded an amount as payable to the lender of $725,000, and the transaction included a memorandum that referenced "payment made by Urbin/1505 Ponce on behalf of Grove."[55] This transaction occurred because, on December 9, 2021, 1505 Ponce paid the lender $725,000 and recorded the transaction as an amount due from L. Capital.[56] The source of the funds 1505 Ponce used to make this payment were funds it received from Investor 1.[57]

87.   On January 6,2022, using the funds it had received from Urbin Grove, Urbin paid Urbin Gables $1.6 million. Also on January 6, 2022, Urbin Gables paid Goodkind & Florio $1,690,000 for the purchase of the Minorca Parking Lots.[58] Urbin Gables recorded the purchase of the parking lots as a land asset on its balance sheet. This flow of funds is illustrated in *Figure 7*.

---

[54] Urbin Grove and Urbin bank reconstructions.
[55] Urbin Grove general ledger.
[56] 1505 Ponce general ledger.
[57] The payee for this transaction was left blank in the 1505 Ponce general ledger; however, I determined the payee from the 1505 Ponce bank reconstruction.
[58] Urbin Gables general ledger and bank reconstruction.



*Figure 7 - Urbin Grove Investor Funds Used to Pay for Urbin Gables Land*



### 2.    Investor 65 Funds Used to Pay Investor 49

88.    On March 10, 2022, Urbin Grove received $1.1 million from Investor 65. Prior to this receipt, the balance in Urbin Grove's bank account was $310,348. On March 15, 2022, Urbin Grove paid Investor 49 $1 million. *Exhibit I.1*.

### 3.    Funds from Investor 30 and Urbin Gables Used to Pay Investor 80

89.    Investor 30 was an external investor in LV with a $600,000 capital investment.



90.     LV also received $2,182,935 from Investor 30 on November 18, 2022, and on December 1, 2022, it paid Investor 30 $780,514. These funds appear to be additional financing provided by Investor 30 which were deposited into L. Capital.

91.     On December 2, 2022, L. Capital received $2,325,436 from Goodkind & Florio. L. Capital's general ledger referenced the transaction as "299 Alhambra Refi and 1505 Ponce Acquisition."[59] 299 Alhambra is owned by Urbin Gables.

92.     The balance in L. Capital's bank account after receiving these funds was $3,502,827.

93.     On December 7, 2022, L. Capital paid $1,061,479 to Investor 80, the external investor in Redlands (and unrelated to Urbin). This flow of funds is illustrated in *Figure 8*.

*Figure 8 – Flow of Funds for 12/7/22 Payment to Redlands Investor*



---

[59] L. Capital general ledger. The wire transfer was payable to Jorge A Fernandez, PA and references what appears to be a payoff of a loan to Investor 30.



94.     On December 14, 2022, L. Capital received $2 million from Investor 30 and, on the same day, paid Investor 80—the external investors in Redlands—$1,957,179.[60] **Exhibit K**. This flow of funds is illustrated in **Figure 9.**

**Figure 9 – Flow of Funds for 12/14/22 Payment to Redlands Investor**



### 4.     Investor 46 Funds Used to Pay Investor 20 and Extension Fees

95.     On January 13, 2023, L. Capital received $2,500,000 from Investor 46 and, on the same day, paid Investor 20 $2 million.[61]

96.     The $2 million payment to Investor 20 was a payment made pursuant to the Global Interest Purchase Agreement, dated December 31, 2022, whereby Kapoor and LV agreed to purchase Investor 20's membership interest in LV; Investor 1's membership interest in 1505 Ponce; and Investor 26's membership interest in 551 Bayshore

---

[60] There were sufficient funds to pay Investor 80 in the L. Capital bank account before receiving the funds from Investor 30; however, I included the transaction in this discussion because it occurred on the same day. **See Exhibit K.**

[61] There were sufficient funds to pay Investor 20 in the L. Capital bank account before receiving the funds from Investor 46 however, I included the transaction in this discussion because it occurred on the same day. **See Exhibit K**



("Purchase Agreement"). The Purchase Agreement contained a payment schedule that required periodic installments, the first of which was due on January 13, 2023, in the amount of $2 million.

97.    On January 19, 2023, L. Capital also paid a $500,000 extension fee for the 619 Breakers property. ***Exhibit K***.

98.    This flow of funds is illustrated in ***Figure 10.***

*Figure 10– Flow of Funds to Pay Investor 20*



### F.    LV ENTITIES AND URBIN ENTITIES TRANSFERED $7.4 MILLION TO INSIDERS

#### 1.    <u>Kapoor and Motha Received Over $7.8 million from LV</u>

99.    LV paid Kapoor approximately $5.6 million during the years 2018 through 2022 of which $4.3 million was not supported by the LV Entities' and Urbin Entities' respective operating agreements. ***Table 6*** summarizes the payments LV made to Kapoor.



These $4.3 million of payments not supported by the LV Entities' and Urbin Entities' are comprised of:

    a. Capital distributions of $690,738;

    b. Compensation overpayment of $1,615,903;[62]

    c. $1.5 million L. Capital paid Kapoor on August 3, 2021 which was not recorded in L. Capital's general ledger;[63]

    d. Acquisition fees of $75,000, and

    e. Loan guaranty fees of $472,470.

100.    LV received $177,982 in funds from Rishi Kapoor that were categorized in the "Due to/from Rishi Kapoor" account in LV's general ledger. These payments were reimbursements from Kapoor for payments LV made to third parties and recorded the payment in the "Due to/from Rishi Kapoor" account.

### Table 6 – LV's Payments to Kapoor

| | Year | Compensation | Distribution | Due to/From Rishi Kapoor | Pipeline | Urbin Dollars | Acquisition Fee | Loan Guaranty Fees | Other | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Transfers to Kapoor | 2018 | $ 181,024 | $ - | $ - | $ - | $ - | $ 75,000 | $ - | $ 3,500 | $ 259,524 |
| Transfers from Kapoor | | | | (9,750) | | | | | (10,460) | (20,210) |
| Net transfers (receipts) | | 181,024 | - | (9,750) | - | | 75,000 | | (6,960) | 239,314 |
| Transfers to Kapoor | 2019 | 326,119 | | | | | | | 25,000 | 351,119 |
| Transfers from Kapoor | | | | (53,341) | | (140,000) | | | (10,800) | (204,141) |
| Net transfers (receipts) | | 326,119 | - | (53,341) | - | (140,000) | | - | 14,200 | 146,978 |
| Transfers to Kapoor | 2020 | 259,687 | | | | | | 59,970 | 25,000 | 344,657 |
| Transfers from Kapoor | | | | (39,813) | | | | | | (39,813) |
| Net transfers (receipts) | | 259,687 | - | (39,813) | - | - | - | 59,970 | 25,000 | 304,844 |
| Transfers to Kapoor | 2021 | 629,600 | 685,738 | | | | | | 1,525,000 | 2,840,338 |
| Transfers from Kapoor | | | | (75,078) | | | | | (10,000) | (85,078) |
| Net transfers (receipts) | | 629,600 | 685,738 | (75,078) | - | - | | - | 1,515,000 | 2,755,260 |
| Transfers to Kapoor | 2022 | 1,686,303 | 5,000 | 300,000 | 500,000 | | | 412,500 | 80,498 | 2,984,301 |
| Transfers from Kapoor | | | | (300,000) | (500,000) | | | | | (800,000) |
| Net transfers (receipts) | | 1,686,303 | 5,000 | - | - | - | | 412,500 | 80,498 | 2,184,301 |
| | | 3,082,733 | 690,738 | 300,000 | 500,000 | | 75,000 | 472,470 | 1,658,998 | 6,779,939 |
| Total 2018-2022 net transfers (receipts) | | $ 3,082,733 | $ 690,738 | $ (177,982) | $ - | $ (140,000) | $ 75,000 | $ 472,470 | $ 1,627,738 | $ 5,630,697 |

---

[62] Compensation was paid in the form of independent contractor payments. See **Table 9**.
[63] I could not find this transaction recorded in either QuickBooks or Sage. I have categorized the transaction in Table 6 as "Other".


Kapila/Mukamal
CPAs, Forensic and Insolvency Advisors

101.    During the years 2018 through 2022, LV paid Motha $2.2 million of which approximately $1 million was not supported by the LV Entities' and Urbin Entities' respective operating agreements.[64] *Table 7* summarizes the payments LV made to Motha. The payments of approximately $1 million not supported by the LV Entities' and Urbin Entities' respective operating agreements are comprised of:

    a.  Capital distributions of $641,006;

    b.  Loan guaranty fees of $192,500; and

    c.  Acquisition fees of $240,000.

### *Table 7 – LV's Payments to Motha*

| | Year | Compensation | Distribution | Acquisition Fee | Loan Guaranty Fees | Other | Total |
|---|---|---|---|---|---|---|---|
| Transfers to Motha | | $    129,300 | $    - | $    - | $    - | $    - | $    129,300 |
| Transfers from Motha | 2018 | | | | | (4,470) | (4,470) |
| Net transfers (receipts) | | **129,300** | **-** | **-** | **-** | **(4,470)** | **124,830** |
| Transfers to Motha | | 88,000 | | | | - | 88,000 |
| Transfers from Motha | 2019 | | | | | (39,900) | (39,900) |
| Net transfers (receipts) | | **88,000** | **-** | **-** | **-** | **(39,900)** | **48,100** |
| Transfers to Motha | | 176,000 | | | - | - | 176,000 |
| Transfers from Motha | 2020 | | | | | | - |
| Net transfers (receipts) | | **176,000** | **-** | **-** | **-** | **-** | **176,000** |
| Transfers to Motha | | 359,400 | 562,193 | | | - | 921,593 |
| Transfers from Motha | 2021 | | | | | - | - |
| Net transfers (receipts) | | **359,400** | **562,193** | **-** | **-** | **-** | **921,593** |
| Transfers to Motha | 2022 | 350,000 | 78,813 | 240,000 | 192,500 | 107,482 | 968,795 |
| Transfers from Motha | | | | | | | - |
| Net transfers (receipts) | | **350,000** | **78,813** | **240,000** | **192,500** | **107,482** | **968,795** |
| **Total 2018-2022 net transfers (receipts)** | | $    1,102,700 | $    641,006 | $    240,000 | $    192,500 | $    63,112 | $    2,239,318 |

---

[64] LV bank reconstruction at *Exhibit B.*



### 2. LV Operating Expense Payments Exceed Approved Operating Expenses by Millions of Dollars

102.    ***Appendix 19*** is LV's operating budgets for the years 2020, 2021, and 2022. ***Exhibit F*** summarizes the budgets. ***Figure 11*** is an excerpt from LV's Second Amended and Restated Operating Agreement with respect to the permitted variance of 7.5% between budgeted and actual expenses.



103.    The operating expenses in the budgets for each year as compared to the actual operating expenses incurred for those same years are summarized in ***Table 8***.[65]

### *Table 8 – Summary of LV Operating Expense Variances*

| Year | Operating Expenses Per Budget | Actual Operating Expenses | Favorable (Negative) Variance | % Variance |
|------|-------------------------------|---------------------------|-------------------------------|------------|
| 2020 | $      3,344,194 | $      2,558,000 | $      786,194 | 24% |
| 2021 |        4,457,057 |        7,465,712 |     (3,008,655) | -68% |

---

[65] 2020 actual operating expenses obtained from Woodforest Bank Production containing financial statements for LV's actual operating data for 2019 and 2020. Actual operating expenses for 2021 and 2022 based on financial statements produced by LV.

Page 37



104.    The actual operating expenses for 2021 exceeded the permitted variance of 7.5%.

105.    The compensation for the manager and officers was included in LV's operating agreements and budgets as illustrated in *Figure 12*.



106.    I determined that payments to Kapoor and Bonet were not in compliance with LV's operating agreements and budgets as summarized in *Table 9*. Payments for wages exceeded the budgeted amounts for a three-year period totaling more than $2.3 million.

### *Table 9 – Manager and Officers Expense Variances*

| Name | 2020 | | 2021 | | 2022 | | Total Overpayment |
|---|---|---|---|---|---|---|---|
| | Operating Budget | Amount Paid Per Bank Reconstruction | Operating Budget | Amount Paid Per Bank Reconstruction | Operating Budget | Amount Paid Per Bank Reconstruction | |
| Rishi Kapoor | $ 300,000.00 | $ 259,687.00 | $ 350,000.04 | $ 629,600.00 | $ 350,000.00 | $ 1,686,303.00 | $ 1,615,902.96 |
| DJ Motha | 204,000.00 | 176,000.00 | 350,000.04 | 359,400.00 | 350,000.00 | 350,000.00 | - |
| Joanna Davila | 144,000.00 | 78,562.44 | 350,000.04 | 402,500.00 | 350,000.00 | 403,758.47 | 106,258.43 |
| Vivian Bonet Rubio | 300,000.00 | 363,333.34 | 350,000.04 | 534,999.99 | 350,000.00 | 743,333.28 | 641,666.57 |
| **Total** | 948,000.00 | 877,582.78 | 1,400,000.16 | 1,926,499.99 | 1,400,000.00 | 3,183,394.75 | 2,363,827.96 |

### 3.    Payment to Kapoor for 'Contract Labor' Derived from LV's 800 Dixie Capital Distribution

107.    The $1.6 million unfavorable variance in the amount of compensation paid to Kapoor, shown in *Table 9,*  was primarily driven by a $1,328,000 payment that LV



made to Kapoor on August 15, 2022, that it recorded as compensation to Kapoor. I determined that the funds for this payment to Kapoor were derived from a capital distribution that LV received from 800 Dixie.

108.    On August 10, 2022, the 800 Dixie project was sold for $14.2 million. LV was an investor in 800 Dixie and received $1,259,887 from 800 Dixie as its share of the sales proceeds. The $1,259,887 represented the proceeds of LV's return of capital of $720,974 and a $538,913 profit distribution from 800 Dixie upon sale of the project.[66] This was based on LV's original investment in 800 Dixie of $720,974 as reflected in 800 Dixie's general ledger, as demonstrated in the *Figure 13* below.



109.    However, LV's balance sheet reflected a higher investment in 800 Dixie of $1,670,974. The higher investment was reflected as a "written up" basis by LV. *Figure 14* is an extract from LV's 2022 accounting workpaper that reflects the internal accounting notations. This means that LV's investment in 800 Dixie was $950,000 more than the capital contribution reflected in 800 Dixie's records.

---

[66] All 800 Dixie investors were paid upon the sale and received a return of capital and profit distribution. Motha was an investor in 800 Dixie through DJ MOTS, LLC and also received a distribution directly upon the project sale totaling $76,357.





110.    LV reported a gain on the sale of 800 Dixie in its income statement (*Exhibit D.1*) of $538,913 that matched the profit distribution received from 800 Dixie. However, because LV's accounting records reflected it had invested $950,000 more than the original $720,974 for a total investment of $1,670,974, LV incurred a loss of $411,087 on the 800 Dixie investment. [67]

111.    Even though LV had actually incurred a loss on its investment in 800 Dixie, a portion of the funds from the sale were used by LV to pay Kapoor $1,328,000, which resulted in an overpayment of his entitled compensation. **¶106**.

112.    The balance in the L. Capital bank account after receiving the $1,259,887 from 800 Dixie was $1,683,555. *Exhibit K*. Five days later, on August 15, 2022, L. Capital received $640,000 from 1505 Ponce and then paid Kapoor $1,328,000. The payment to Kapoor was recorded in the general ledger as "contract labor expenses." As disclosed in *Table 9*, during 2022, Kapoor was entitled to receive compensation from LV totaling $350,000.

---

[67] The $411,087 loss is calculated as the difference between the investment on the LV's balance sheet of $1,670,974 and the funds received from 800 Dixie of $1,259,887. LV did not recognize this loss in its profit & loss statement. Accordingly, the loss may be accounted for as a reduction to another balance sheet line item.



### 4. Payments to Insiders for Developer-Related Fees

113. LV and Urbin were entitled to receive certain fees from the LV Project Entities and Urbin Project Entities.[68] With respect to these fees, I determined that in some instances:

  a. Fees were paid directly to Kapoor or Motha rather than being paid to LV;

  b. The fees reported as accrued-based income in LV's financial statements far exceeded the amount of cash that was actually being collected for the fees; and

  c. The fees charged by LV exceeded the amounts stated in the LV Project Entities or Urbin Project Entities operating agreements.

  **a) Kapoor and Motha Were Paid Nearly a Million Dollars for Developer, Acquisition, Marketing, and Loan Guarantee Fees**

114. *Figure 15* is an excerpt from the Urbin Grove Operating Agreement that states Urbin was entitled to receive developer fees, acquisition fees, marketing fees, loan guarantee fees, and property management fees.

---

[68] Pursuant to the terms of the applicable operating agreement.





115.    The other LV Project Entities' and Urbin Project Entities' operating agreements contain similar language with respect to fees.

116.    I identified approximately $979,970 of fees that were paid directly to Kapoor and Motha as opposed to LV or Urbin. *Table 10*.

### *Table 10 – Fee Payments to Kapoor and Motha*[69]

| Date | Entity | Recipient | Amount | Fee Type |
|------|--------|-----------|--------|----------|
| 1/22/2022 | Location Capital | Daniel Motha | 100,000.00 | Acquisition Fee |
| 8/26/2022 | Location Capital | Daniel Motha | 140,000.00 | Acquisition Fee |
| 7/18/2022 | Urbin Miami Beach | DJ MOTS, LLC | 192,500.00 | Loan Guaranty Fee |
| | | | $ 432,500.00 | |
| 9/28/2018 | Urbin | Rishi Kapoor | 75,000.00 | Acquisition Fee |
| 2/19/2020 | 515 Valencia Partners, LLC | Rishi Kapoor | 59,970.00 | Loan Costs |
| 7/15/2022 | Urbin Miami Beach | Rishi Kapoor | 192,500.00 | Loan Guaranty Fee |
| 11/30/2022 | Urbin Coconut Grove | Rishi Kapoor | 120,000.00 | Loan Guaranty Fee |
| 12/2/2022 | Urbin Coconut Grove | Rishi Kapoor | 100,000.00 | Loan Guaranty Fee |
| | | | $ 547,470.00 | |

117.    I determined that in some instances, investor funds were used to pay the fees. On July 13, 2022, Urbin Miami Beach received $4.8 million from Investor 55. The

---

[69] These fees are also included in *Table 6* and *Table 7*.



combined ending balance in the Urbin Miami Beach bank accounts on July 12, 2022, was $2,893. Upon receipt of the funds from Investor 55, Urbin Miami Beach paid Motha (DJMOTS, LLC) $192,500 and paid Kapoor $192,500 for loan guaranty fees (referenced in **Table 10**). Urbin Miami Beach also made a series of transfers to Urbin totaling approximately $454,000 for developer and marketing fees. See **Exhibit J**.

**b)** **LV Recognized Large Amounts of Accrued Income from LV Project Entities and Urbin Project Entities**

118.   LV recognized developer fee, property management fee, and marketing fee income; however, a significant amount of the fees was not actually collected and was only accrued income. **Exhibit D.1** is the 2021 and 2022 profit and loss statement for LV. In 2022, LV recognized $14.4 million of income from developer fees, property management fees, and marketing fees. However, approximately 50% of this amount had not been collected as of the end of 2022. The accounts receivable balance was $7.4 million, primarily comprised of $6.9 million in developer fees and $500,000 in marketing fees. **Figure 16** is a copy of LV's accounting workpaper that provides the details of the accounts receivable as of December 31, 2022.





    **c)**    **Investor Funds Used to Pay Acquisition Fees to Motha that Exceeded Amounts Allowed Per Operating Agreements**

*1505 Ponce Acquisition Fees*

119.   I determined that 1505 Ponce made payments to L. Capital for acquisition fees that exceeded the amounts stated in the 1505 Ponce Operating Agreement.

120.   During the period from August 15, 2022, to August 17, 2022, L. Capital received $1.42 million from 1505 Ponce in a series of transfers. The source of the funds 1505 Ponce transferred to L. Capital was Investor 54.



121.    ***Exhibit L*** is the 1505 Ponce bank reconstruction that reflects these transfers to L. Capital. 1505 Ponce originally recorded the transactions as an "intercompany loan" to L. Capital. On September 30, 2020, 1505 Ponce changed the accounting treatment of the transactions as follows:

    a.  $640,000 – WIP Acquisition/Purchase –Contractual Acquisition Fee

    b.  $780,000 – WIP Acquisition/Purchase –Other Acquisition Fee

122.    ***Figure 17*** is an excerpt from the 1505 Ponce Amended and Restated Operating Agreement, dated June 1, 2022, indicating that 1505 Ponce is subject to an acquisition fee of 2% of the purchase price of the property, payable upon closing.[70]



123.    Exhibit C to the 1505 Ponce Amended and Restated Operating Agreement included a development budget that estimated the acquisition fee to be $711,040.

124.    ***Appendix 3*** includes 1505 Ponce's monthly balance sheets for the period January 2022 through February 2023. At the time these payments totaling $1.42 million

---

[70] §8.3 of the initial 1505 Ponce Operating Agreement, dated September 15, 2021, stated that the acquisition fee was limited to $640,000.



were made in August 2022, the acquisition purchase price reported on the 1505 Ponce balance sheet was $12,553,151. A 2% acquisition fee equates to $251,063.

125.    The acquisition purchase price reported on the 1505 Ponce balance sheet was $42,430,628 as of February 28, 2023. A 2% acquisition fee equates to $848,613.

126.    ***Exhibit K*** is the L. Capital bank reconstruction, reflecting the receipt of $1.42 million from 1505 Ponce.

127.    After receiving these funds, L. Capital made payments to vendors and insiders, including (***Exhibit K***):

> a.  On August 23, 2022, L. Capital paid Twin Peaks Farms, LLC, $36,300 for closing extension fees;
>
> b.  On August 26, 2022, L. Capital paid Motha $140,000 as an acquisition fee; and
>
> c.  On September 1, 2022, L. Capital paid L. Development $133,333.

### *Urbin Grove Overcharged Developer Fees*

128.    Another example of overcharging fees occurred with Urbin Grove.

129.    As reflected in ***Figure 15***, the Urbin Grove developer fee was $2,750,000. However, the Urbin Grove general ledger reflects developer fees charged of $3,790,000.

### G.    CLOSING EXTENSION FEES

130.    I analyzed the bank reconstructions and general ledgers for the LV Entities and Urbin Entities to determine if closing extension fees were paid. I determined the following closing extension fees were paid:

> a.  LV                   $1,234,700 (***Exhibit G***); and
>
> b.  Urbin Grove     $1,139,011 (***Exhibit G.1***).



*****************

I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 4, 2023

BY: _Melissa D_____

Melissa Davis, CPA, CIRA, CFE
KapilaMukamal, LLP
1000 S. Federal Highway
Suite 200
Fort Lauderdale, FL 33316
(954) 761-1011
mdavis@kapilamukamal.com

