UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-24903-CMA

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

RISHI KAPOOR;
LOCATION VENTURES, LLC;
URBIN, LLC;
PATRIOTS UNITED, LLC;
LOCATION PROPERTIES, LLC;
LOCATION DEVELOPMENT, LLC;
LOCATION CAPITAL, LLC;
LOCATION VENTURES RESOURCES, LLC;
LOCATION EQUITY HOLDINGS, LLC;
LOCATION GP SPONSOR, LLC;
515 VALENCIA SPONSOR, LLC;
LV MONTANA SPONSOR, LLC;
URBIN FOUNDERS GROUP, LLC;
URBIN CG SPONSOR, LLC;
515 VALENCIA PARTNERS, LLC;
LV MONTANA PHASE I, LLC;
STEWART GROVE 1, LLC;
STEWART GROVE 2, LLC;
LOCATION ZAMORA PARENT, LLC;
URBIN CORAL GABLES PARTNERS, LLC;
URBIN COCONUT GROVE PARTNERS, LLC;
URBIN MIAMI BEACH PARTNERS, LLC; and
URBIN MIAMI BEACH II PHASE 1, LLC,

Defendants.
_____/

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
EXPEDITED MOTION FOR APPOINTMENT OF RECEIVER, ASSET FREEZE,
AND OTHER RELIEF AGAINST THE COMPANY DEFENDANTS
<u>AND MEMORANDUM OF LAW</u>**

## INTRODUCTION

Plaintiff Securities and Exchange Commission (the "Commission") moves on an expedited basis for an Order appointing a Receiver over the Company Defendants[1] and freezing their assets, among other expedited relief (the "Motion"). As detailed in the Commission's Emergency *Ex Parte* Motion for Asset Freeze against Defendant Rishi Kapoor ("Motion for Asset Freeze against Kapoor") (ECF No. 6), which the Court granted on December 27, 2023 (ECF No. 10), from approximately January 2018 through at least March 2023 (the "Relevant Period"), Defendant Rishi Kapoor ("Kapoor") and the Company Defendants (collectively, the "Defendants") operated a real estate investment scheme in violation of the anti-fraud provisions of the federal securities laws. During the Relevant Period, Defendants raised approximately $93 million from more than 50 investors. Investor funds that were not misappropriated, misused, or spent in the operation of the scheme were used by Defendants to acquire and develop real estate projects located primarily in South Florida, some of which remain active. The Court should appoint a receiver with full and exclusive power, duty, and authority to fully investigate the manner in which the financial and business affairs of the Company Defendants were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings for the benefit of investors; identify potential

---

[1] Location Ventures, LLC ("LV"), URBIN, LLC ("URBIN"), Patriots United, LLC ("Patriots United"); Location Properties, LLC ("L. Properties"); Location Development, LLC ("L. Development"); Location Capital, LLC ("L. Capital"); Location Ventures Resources, LLC ("L. Resources"); Location Equity Holdings, LLC ("L. Holdings"); Location GP Sponsor, LLC ("L. GP Sponsor"); 515 Valencia Sponsor, LLC ("515 Valencia Sponsor"); LV Montana Sponsor, LLC ("LV Montana Sponsor"); URBIN Founders Group, LLC ("URBIN Founders"); URBIN CG Sponsor, LLC ("URBIN CG Sponsor"); 515 Valencia Partners, LLC ("515 Valencia"); LV Montana Phase I, LLC ("LV Montana"); Stewart Grove 1, LLC ("Stewart Grove 1"); Stewart Grove 2, LLC ("Stewart Grove 2"); Location Zamora Parent, LLC ("L. Zamora Parent"); URBIN Coral Gables Partners, LLC ("URBIN Gables"); URBIN Coconut Grove Partners, LLC ("URBIN Grove"); URBIN Miami Beach Partners, LLC ("URBIN Miami Beach"); and URBIN Miami Beach II Phase 1, LLC ("URBIN Miami Beach II").

stakeholders and orderly transition the remaining projects; administer and manage the Company Defendants' affairs, funds, tangible and intangible assets, choses in action, and any other property; marshal and safeguard their assets; and take whatever other actions are necessary for the protection of defrauded investors in this case. To aid the receiver and prevent further dissipation of investor funds, the Court should freeze the assets of the Company Defendants, require sworn accountings, and prohibit them from destroying documents.

Pursuant to Local Rule 7.1(d)(2), the Commission has filed this Motion on an expedited basis because, among other things, LV's contract with the liquidation manager currently in control of LV and its related entities expires on January 16, 2024. The Commission seeks a ruling on the Motion on or before January 16, 2024, or as soon thereafter as the Court deems reasonable under the circumstances. The Commission has obtained effective service of process on Kapoor and each of the Company Defendants.

## FACTUAL BACKGROUND

The Commission incorporates the factual discussion, legal arguments, and evidence in support of its Motion for Asset Freeze against Kapoor as if fully set forth herein.[2]

## MEMORANDUM OF LAW

I.   **APPOINTMENT OF A RECEIVER**

   A.   **Standard for Appointing a Receiver**

A receivership is an equitable remedy that federal courts routinely enlist to effectuate the remedial purposes of the securities laws. *See, e.g., SEC v. First Fin. Group of Texas*, 645 F.2d 429,

---

[2] To avoid refiling voluminous documents with the Court, unless otherwise stated, annotations contained in this Motion cite to the Motion for Asset Freeze against Kapoor and corresponding exhibits, filed on December 27, 2023. (ECF Nos. 6, 6-2, 6-3, 6-7, 6-8, 6-9, 6-10, and 6-12).

438 (5th Cir. 1981) ("the appointment of a receiver is a well-established equitable remedy available to the SEC in its civil enforcement proceedings"); *see generally* Section 21(d)(5) of the Securities Exchange Act of 1934 [15 U.S.C. §78u(d)(5)] ("In any action . . . brought . . . by the Commission under any provision of the securities laws, the Commission may seek, and any Federal Court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors."). Appointing a receiver is particularly appropriate in cases where a defendant, through its management, has defrauded members of the investing public. *First Fin.*, 645 F.2d at 438. In such cases, without the appointment of a receiver to maintain the status quo, the investor assets will be subject to diversion and waste to the detriment of those who were induced to invest in the scheme. *Id.*; *see also SEC v. R.J. Allen & Assocs., Inc.*, 386 F. Supp. 866, 878 (S.D. Fla. 1974). A receiver is appropriate to protect the public interest when it is obvious that those in control of an entity who have inflicted serious detriment in the past must be ousted. *SEC v. Bowler*, 427 F.2d 190, 198 (4th Cir. 1970).

### B. **The Appointment of a Receiver is Appropriate**

#### 1. **A Receiver is Necessary to Preserve Investor Assets**

The declarations, bank records, and other exhibits in support of the Motion for Asset Freeze against Kapoor demonstrate that Defendants have violated the antifraud provisions of the federal securities laws in their operation of a complex real estate investment scheme, which raised at least $93 million from over 50 investors.[3] As part of the scheme, Defendants made material misrepresentations to investors, commingled and misused investor funds, and misappropriated at least $6 million of which $4.3 million were transferred to Kapoor for his benefit.[4] Kapoor and others operated the scheme through the Company Defendants, which own and hold LV's and

---

[3] *See*, *generally*, Motion for Asset Freeze against Kapoor.
[4] *Id.* at Sections IV(B) and IV(C).

URBIN's assets, including bank accounts, contracts, choses in action, as well as real estate projects 515 Valencia, LV Montana, Stewart Grove, Stewart Grove 2, L. Zamora Parent, URBIN Gables, URBIN Grove, URBIN Miami Beach, and URBIN Miami Beach II.[5]

A Court-appointed receiver over the Company Defendants is necessary to: fully investigate the manner in which the financial and business affairs of the Company Defendants were conducted and (after obtaining leave of this Court) institute such actions and legal proceedings for the benefit of investors; identify potential stakeholders and attempt to complete any projects that remain viable; liquidate or abandon those projects that are not viable; trace and recover investor funds; marshal assets of the company, including those improperly diverted to Kapoor, insiders, and other third parties; pay creditors; and fairly distribute investor funds. Also, the appointment of a receiver, assuming this Court grants the Commission's request, will result in a stay of litigation against the Company Defendants, allowing a receiver to take the above actions while ensuring that the property of the receivership estate is preserved for the benefit of investors rather than diminished by the expense of litigation. *See SEC v. Byers*, 609 F.3d 87, 89 (2d Cir. 2010); *see also SEC v. Onix Capital*, LLC, No. 16-24678-CIV, 2017 WL 6728814, at *4 (S.D. Fla. Jul. 24, 2017) ("That the receivership is not 'substantially underway' is not a compelling factor to lift a stay against litigation when balanced against the Receiver's interest in preventing ancillary litigation during the early stages of the receivership."); *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006) ("[T]he receivership court may issue a blanket injunction, staying litigation against the named receiver and the entities under his control unless leave of that court is first obtained.").

---

[5] *Id*. at Section IV(A).

### 2. A Receiver is Necessary Despite Kapoor's Ouster

On or around July 14, 2023, LV's members removed Kapoor as manager of LV and replaced him with Retired Judge Alan Fine ("Judge Fine").[6] Subsequently, LV's members approved a resolution authorizing and directing Judge Fine to wind down LV and to liquidate certain LV projects (the "Liquidation Plan").[7] Importantly, URBIN and its projects are not under Judge Fine's control and not included in the Liquidation Plan.[8] In August 2023, Kapoor resigned as manager of URBIN and was replaced with LV's former chief development officer (the "CDO").[9] The the CDO remains in control of URBIN and its projects. As discussed below, notwithstanding Kapoor's ouster from LV and URBIN, the appointment of a receiver over the Company Defendants is in the best interest of investors because of the limited powers of the liquidation manager and to take control over URBIN and its related entities.

### (i) *The Liquidation Manager Does Not Possess the Powers or Authority of a Court-Appointed Receiver*

The Court should appoint a receiver over the Company Defendants despite Judge Fine's role as the liquidation manager of LV, which is set to expire on January 16, 2024.[10] Judge Fine does not possess the powers or the authority of a Court-appointed Receiver. Instead, he is bound by the contours of the Liquidation Plan, which is narrowly tailored and does not permit him to, among other things, investigate actions taken by Kapoor and other insiders, initiate lawsuits to recover investor funds that may have been misappropriated, misused, or improperly transferred to third parties, or exercise any authority or control over URBIN or its projects. This includes investigating the Global Interest Purchase Agreement, dated December 31, 2022 (the "Buyout

---

[6] *Id*. at Section IV(D).
[7] *Id*.
[8] *Id*.
[9] *Id*.
[10] *Id*. at Ex. 1 (Ex. EE at bate number LV00011189).

Agreement"), whereby Kapoor caused the Company Defendants to transfer almost $20 million to LV's largest investor ("Investor 20").[11] At least a portion of the funds used to pay Investor 20 originated from URBIN and its projects.[12] This includes $12 million of debt Kapoor caused URBIN Grove to incur, $10 million of which was used toward the Buyout Agreement.[13]

### (ii)   URBIN is Part and Parcel of Location Ventures

The Commission's analysis of the Company Defendants' accounting records and bank account activity, performed by forensic accounting firm Kapila Mukamal, dispels any notion that LV and URBIN are separate and distinct corporate entities.[14] As detailed in the Asset Freeze Motion against Kapoor, more than $60 million of investor funds were transferred back and forth between LV, URBIN, and their respective projects.[15] For instance, LV received approximately $14.7 million from the URBIN entities, and the URBIN entities received $25.2 million from the LV entities, including a $14 million transfer from LV to URBIN that was recorded internally as an intercompany loan without notice to, or approval from, LV's members or board of directors.[16] Given the extent of commingling of investor funds (both in terms of dollar amount and frequency), and because there is considerable overlap among the investors in the LV entities and the investors in the URBIN entities, any action taken for the benefit of all the investors—be that the Liquidation Plan or otherwise—should include URBIN and its projects.

Further, the CDO remains in control of URBIN.[17] The CDO owns a 2.111% membership interest in LV by virtue of a purported $450,000 initial cash capital contribution.[18] Based on Kapila

---

[11] *Id*. at Section IV(D).
[12] *Id*.
[13] *Id*. at Ex. 4 ¶ 7(N).
[14] *Id*. at Ex. 5.
[15] *Id*. at Section IV(B)(iii).
[16] *Id*.
[17] *Id*. at Section IV(D).
[18] *Id*. at Ex. 5 ¶¶ 46-62.

Mukamal's analysis, like Kapoor, there is no evidence that the CDO contributed any capital in exchange for her membership interest in LV.[19] Also, LV's approved budget capped the CDO's annual compensation in 2020 to $300,000, and to $350,000 2021 and 2022.[20] For the years 2020 to 2022, however, the CDO received $641,000 in excess compensation.[21] Lastly, Kapoor and the CDO had a professional relationship prior to her joining LV.[22] Until Kapoor was removed, the CDO had reliably voted her 2.111% membership interest with Kapoor's 47.917%, giving Kapoor majority control of LV.[23] Given their prior history and Kapoor's potential influence, the Court should appoint a receiver over the Company Defendants, which includes URBIN and its projects.

      C.      **The Commission's Receiver Recommendation**

In an effort to facilitate the Court's appointment of a Receiver, the Commission's staff has solicited expressions of interest from three potential receiver candidates it believes are well-suited to handle this matter and attaches the credentials of these candidates as Exhibits "A," "B," and "C" to this Motion. Each of these candidates has checked for potential conflicts of interest and none has any. Moreover, all have indicated that they are ready and able to immediately take on the duties and responsibilities if appointed by this Court as receiver in this case. After considering these candidates, the Commission's staff believes that the interests of defrauded investors would best be served by the appointment of Andres Rivero, Esq. Mr. Rivero, whose credentials are attached as Exhibit A, is the founder and a partner of the law firm of Rivero Mestre, LLP.

Mr. Rivero specializes in complex civil financial and fraud litigation, including SEC regulatory and criminal fraud matters, as well as receiverships. Mr. Rivero has represented

---

[19] *Id*. at Ex. 5 ¶ 106.
[20] *Id*.
[21] *Id*.
[22] *Id*. at Ex. 3 ¶ 6(k).
[23] *Id*. at Ex. 1 (Ex. X at page/line 51:5-11).

Bankruptcy trustees and receivers, including the receiver in *SEC v. Internet Cap. Holdings, Inc., et al.,* Case No. 00-9028-CIV-HURLEY (S.D. Fla.), and has experience in non-SEC enforcement actions, including *FTC v. Ameritel Payphone Distribs., Inc. et al.,* Case No. 00-514-CIV-Gold (S.D. Fla.), *Alvarez v. Martinez,* Case No. 07-37278 CA (S.D. Fla), *In re: Blue Trust Cap. LLC,* Case No. 06-24280 CA (Fla. 11th Cir. Ct.); *In Re: ByeByenow.com, Inc.,* Case No. 01-20536-BKC-Ray (S.D. Fla.). Mr. Rivero previously served for five years as a federal prosecutor in the Southern District of Florida in the Economic Crimes and Public Corruption sections.

If appointed as Receiver, Mr. Rivero will utilize attorneys at Rivero Mestre, relying primarily on partners Jorge A. Mestre and Amanda L. Fernandez. Mr. Mestre and Ms. Fernandez have experience litigating securities actions, banking controversies, accounting malpractice claims, and director and officer liability lawsuits.

Mr. Rivero has agreed to significantly discount his current hourly rate to $350 an hour, which represents a 65% discount from the $1,000 rate he typically charges to regular clients. Mr. Rivero also has agreed to discount the billing rates for his professionals. Mr. Mestre will bill at $395 an hour, discounted from his regular rate of $950, and Ms. Fernandez will bill at $325 an hour, discounted from her regular rate of $450. Additionally, Mr. Rivero has agreed to reduce hourly rates for associate attorneys to between $200 and $300, and for paralegals to $100.

Accordingly, the Commission recommends Mr. Rivero, who has the capability and experience necessary to carry out the tasks of the Receiver and has indicated a willingness to serve. As indicated previously, the Commission has identified two other well-qualified candidates who have no conflicts of interest. Accordingly, if the Court does not agree with the Commission's recommendation, the Commission urges the Court consider the alternative candidates whose credentials are also attached.

## II.     ASSET FREEZE AND OTHER RELIEF

On December 27, 2023, the Commission filed its Motion for Asset Freeze against Kapoor,[24] which the Court granted on the same date. At that time, the Commission did not seek an asset freeze against the Company Defendants to allow this Court to consider, together, the Commission's request for the appointment of a receiver *and* an asset freeze against the Company Defendants. Further, the Commission did not file this Motion *ex parte* to allow the Defendants to share their respective positions with the Court to the extent they oppose the Commission's request.

Should the Court grant the Commission's request for the appointment of a receiver, an asset freeze remains necessary to prevent potential further dissipation of investors funds while the receiver endeavors to take control over 22 entities and account for all of their assets. The proposed Order attached specifically excludes the receiver from the freeze.

As such, for the same reasons the Court granted the Motion for Asset Freeze against Kapoor and the additional considerations stated herein, the Court should enter an Order freezing the assets of the Company Defendants, requiring sworn accountings, and prohibiting the destruction of records. *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005); *see also FTC v. IAB Mktg. Assocs., LP*, 746 F.3d 1228, 1234 (11th Cir. 2014); *see also SEC v. Gonzalez de Castilla*, 145 F. Supp. 2d 402, 415 (S.D.N.Y. 2001).

---

[24] As stated above, the Commission incorporates the arguments in support of the Motion for Asset Freeze against Kapoor as if fully set forth herein.

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court grant the Commission's Expedited Motion for Appointment of Receiver, Asset Freeze, and Other Relief, and enter the accompanying proposed Order.

### LOCAL RULE 7.1(a)(3) CERTIFICATION OF PRE-FILING CONFERENCE

Counsel for the Commission hereby certifies that he has made reasonable efforts to confer with all parties or non-parties who may be affected by the relief sought in the Motion. Defendant Rishi Kapoor has no objection. Counsel for the Company Defendants stated that the managers of LV and URBIN lack the necessary authority to take a position with respect to the requested relief until they advise and obtain consent from LV's and URBIN's respective members. As such, the Company Defendants do not take a position at this time.

Dated:  January 5, 2024            Respectfully submitted,


/s/ Russell R. O'Brien
Russell R. O'Brien
Trial Counsel
Florida Bar No. 084542
Direct Dial: (305) 982-6341
Email: obrienru@sec.gov

Attorney for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131