UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:23-cv-24903-CMA

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.

RISHI KAPOOR, *et al.*,

        Defendants.
_____/

## **DEFENDANT, RISHI KAPOOR'S, MOTION FOR CLARIFICATION**

Defendant, RISHI KAPOOR, by and through his undersigned counsel, hereby submits this Motion for Clarification of its Order Granting Plaintiff, Securities and Exchange Commission's, Expedited Motion for Appointment of Receiver, Asset Freeze, and Other Relief Against the Company Defendants [ECF No. 28], and in support of this Motion states:

1. On December 27, 2023, the Securities and Exchange Commission ("SEC") filed its Emergency Ex Parte Motion for Asset Freeze and Other Relief Against Defendant Rishi Kapoor and Memorandum of Law ("Asset Freeze Motion") [ECF No. 6].

2. On the same date the Court entered a Sealed Order granting the Asset Freeze Motion, freezing Kapoor's assets and granting other relief ("Asset Freeze") [ECF No. 10].

3. As outlined in the Asset Freeze, RISHI KAPOOR ("KAPOOR") is restrained from "directly or indirectly, transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating, or otherwise disposing of, or withdrawing any assets or property, including, but not limited to, cash…" *See* ECF No. 10.

4. The Asset Freeze further states that any "person or other entity holding any such funds or other assets, in the name of, for the benefit of, … Kapoor, shall hold and retain within its control and prohibit the withdrawal, removal, … or other disposal of any such funds…" *Id*.

5. On January 12, 2024, the Court issued an Order Granting Securities and Exchange Commission's Motion for Appointment of Receiver, Asset Freeze, and Other Relief Against the Company Defendants [ECF No. 28] ("Stay Order").

6. Pursuant to the Stay Order, "[t]he parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action in connection with any such proceeding…" *See* ECF No. 28.

7. In addition, "[a]ll Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court." *Id*.

8. In a separate but somewhat related action, on or about October 20, 2023, UNIBANK FOR SAVINGS ("UNIBANK") filed a Verified Complaint asserting a cause of action *in rem* against the M/Y Suneeta II ("Defendant Vessel") and a cause of action *in personam* against Defendants RISHI KUMAR KAPOOR AND JENNIE ELIZABETH FRANK KAPOOR ("Ancillary Proceeding and Admiralty Action"). *See Unibank for Savings v. M/Y Suneeta II, et al.*, Case No.: 9:23-CV-81411-DMM.

9. At its most basic level, UNIBANK is foreclosing on a maritime lien against the Defendant Vessel for a purported breach of the preferred ship's mortgage and/or marine promissory note.

10. On or about January 10, 2024, UNIBANK filed a Motion for Interlocutory Sale of the Defendant Vessel in the Ancillary Proceeding.

11. In the Admiralty action, in response to Plaintiff UNIBANK's Motion for Interlocutory Sale Defendant, KAPOOR has filed a Notice of Stay and/or Motion to Stay.

12. The basic premise of this Motion to Stay was to inform the Admiralty Action court that an asset freeze has been ordered and mandates KAPOOR from transferring, selling, or otherwise disposing of the Defendant Vessel.

13. In the Motion, KAPOOR further outlined that a Stay Order had been issued that prohibits further participation in the Admiralty Action.

14. KAPOOR is under the impression that the Asset Freeze would forbid the interlocutory sale of the Defendant Vessel.

15. As set forth in the Asset Freeze, the Court entered an Order:

    (a) Freezing the assets of Rishi Kapoor.

    (b) Requiring a sworn accounting by Rishi Kapoor.

    (c) Prohibiting the destruction of documents by Rishi Kapoor.

16. The obligations and mandate of the Order are far-reaching and bind a number of different individuals and entities: 1) "**Kapoor** and his officers, directors, agents, servants, employees, attorneys, depositories, **banks**, insurance companies and those persons in active concert or participation with any more of them" and 2) **any financial or brokerage institution**, or other person or entity **holding any such funds or other assets**, and the name of, for the benefit of, or under the control of Kapoor, directly or indirectly, held jointly or singularly, and wherever located." *See* ECF No. 10 (emphasis added).

17. The initial requirements of the Asset Freeze dictate that KAPOOR is "restrained from, directly or indirectly, transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating, or otherwise disposing of, or withdrawing any assets or property, including,

but not limited to, cash, free credit balances, fully paid for securities, crypto assets, and/or property pledged or hypothecated as collateral for loans, or charging upon or drawing from any lines of credit owned by, controlled by, or in the possession of Kapoor…" *See id.*

18. The Asset Freeze order expressly states that KAPOOR is unable to sell, assign, liquidate, or otherwise dispose of assets, including but not limited to the Defendant Vessel.

19. Also, the Asset Freeze instructs "any financial institution" that is holding "funds or other assets" in the name of, for the benefit of, or under the control of Kapoor to "hold and retain within its control and prohibit the withdrawal, removal, transfer, disposition, pledge, encumbrance, assignment, set off, sale, liquidation, dissipation, concealment or other disposal of any such funds or other assets." *See id*.

20. KAPOOR believes that both the Plaintiff in the Ancillary Proceeding, UNIBANK, and Defendant KAPOOR have been provided with notice of the Stay Order, and consequently, both parties are expressly prohibited from transferring, selling, or otherwise disposing of the Defendant Vessel at this time.

21. In addition to KAPOOR's concerns about the Asset Freeze, KAPOOR also is traveling under the belief that this Courts Stay Order is a blanket order against all proceedings including but not limited to the Admiralty Action.

22. KAPOOR acknowledges that, although he disagrees, the Defendant Vessel in the Ancillary Proceeding may be considered a "Receivership Asset" as defined in Paragraph 2 of the Stay Order.

23. As a result, in the Ancillary Proceeding, on January 15, 2024, KAPOOR filed a Notice of Stay and/or Motion to Stay Proceedings and Memorandum of Law in Support as to

appraise the parties and the honorable Judge Middlebrooks of the Stay Order, and to remain in compliance with the various orders issued by this Court.

24. On February 2, 2024, Judge Middlebrooks submitted an Order denying Defendants' Notice of Stay and/or Motion to Stay Proceedings. *See id.*

25. Furthermore, in the aforementioned Order in the Ancillary Proceeding, Judge Middlebrooks suggested that "[i]f the Defendants believe the yacht in this case falls under Judge Altonaga's stay order as a Receivership Asset, then they can seek relief before her in the SEC matter…" *See id.*

26. In response, on February 5, 2024, KAPOOR filed a Motion for Reconsideration of the Order denying Defendants' Notice of Stay and/or Motion to Stay Proceedings. *See Unibank for Savings v. M/Y Suneeta II, et al.*, Case No.: 9:23-CV-81411-DMM.

27. KAPOOR's Motion for Reconsideration respectfully moved the Court in the Ancillary Proceeding to reconsider the Order based upon the sincere belief that the Court had misinterpreted or overlooked the following language set forth in paragraph 26 of the Stay Order:

All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in her capacity as Receiver; (b) any Receivership Property, wherever located; (c) the Receivership Defendants, including subsidiaries and partnerships; or (d) **any of the Receivership Defendants' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").** *See* ECF No. 28 (emphasis added).

28. Pursuant to the language in paragraph 26 of the Stay Order, KAPOOR admits that he was an "officer, director manager" of the "Receivership Defendants," and as such, believes that the stay of litigation applies to the Ancillary Proceeding. *See id.*

29. Desirous of not running afoul of a federal court order, KAPOOR respectfully requests clarification as to whether the Asset Freeze and Stay of Litigation contained within the Stay Order entered by this Court on January 12, 2024, operates to stay *Unibank for Savings v. M/Y Suneeta II, et al.*, Case No.: 9:23-CV-81411-DMM, filed in the United States District Court for the Southern District of Florida.

30. If this Court does find that the Stay Order applies to the Ancillary Proceeding or that the Defendant Vessel is subject to the Asset Freeze, KAPOOR requests an Order providing guidance and/or assistance on how to proceed in the Ancillary Proceeding so as to avoid running afoul of this Court's orders.

31. KAPOOR is loath to respond to any discovery requests or enter into any settlement discussions with Plaintiff UNIBANK in fear of violating the Stay Order.

32. If this Court does not find that the Stay Order applies to the Ancillary Proceeding or that the Defendant Vessel is not subject to the Asset Freeze, KAPOOR requests assistance and/or guidance in obtaining a private sale of the Defendant Vessel.

33. The Defendant Vessel is owned by KAPOOR and has been independently surveyed and appraised at a value of Five Million Three Hundred Thousand and 00/100 Dollars ($5,300,000.00)

34. UNIBANK loaned KAPOOR Four Million Two Hundred Eighty-Two Thousand Two Hundred Thirty-Five and 00/100 Dollars ($4,282,235.00).

35. KAPOOR has engaged with a broker that will take a 7% rather than 10% commission on the sale of the Defendant Vessel

36. As a result, KAPOOR is in a position to sell the Defendant Vessel at a surplus, however, UNIBANK has refused to allow the broker to show the Defendant Vessel pursuant to the Asset Freeze.

37. KAPOOR requests the right to show and contract for the sale of the Defendant Vessel, subject to the approval of the Court to preserve equity, as opposed to a foreclosure auction sale.

38. KAPOOR is receiving two different interpretations from two different Courts and does not want to violate any of the Court Orders.

39. KAPOOR is requesting an Order of clarification as to the Scope of the Asset Freeze and Stay Order entered by this Court.

## **MEMORANDUM OF LAW**

It is well settled under federal jurisprudence that a Court has the authority to clarify its own orders. "The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend." *United States v. Philip Morris USA, Inc.*, 793 F. Supp. 2d 164, 168 (D.D.C. 2011) (explaining that, while "there is no Federal Rule of Civil Procedure specifically governing 'motions for clarification,'" federal courts frequently will "rule[] on a motion for clarification without resort to [Federal Rule of Civil Procedure] standards"); *Resolution Tr. Corp. v. KPMG Peat Marwick*, No. CIV. A. 92-1373, 1993 WL 211555 (E.D. Pa. June 8, 1993). Clarification regarding language used in a court order is a permissible ground for such a motion without resort to Federal Rule of Civil Procedure 60(b). *Id.*; *see Knighten v. Palisades Collections, LLC*, No. 09-CIV-20051, 2011 WL 835783 (S.D. Fla. Mar. 4, 2011); *see also Potter v. D.C.*, 382 F. Supp. 2d 35 (D.D.C. 2005).

Clarification is necessary in this instance because KAPOOR seeks clarity regarding the applicability of the Asset Freeze and Stay of Litigation outlined in the Stay Order. Particularly concerning the Stay Orders impact on the case *Unibank for Savings v. M/Y Suneeta II, et al.*, Case No.: 9:23-CV-81411-DMM33. Facing conflicting interpretations from separate courts, KAPOOR seeks clarity to comply with all the Court orders without contradiction. Consequently, KAPOOR petitions this Court for an Order of clarification regarding the extent and implications of the Asset Freeze and Stay Order it issued.

To lift a litigation stay, a court should consider "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim." *SEC v. Stanford Int'l Bank Ltd.*, 424 Fed. Appx 338, 341 (5th Cir. 2011) (quoting *SEC v. Wencke*, 742 F. 2d 1230, 1231 (9th Cir. 1984)).

In the event that this Honorable Court does not determine that the Stay Order extends to the Ancillary Proceeding or that the Defendant Vessel is not subject to the Asset Freeze, KAPOOR seeks assistance and/or guidance in facilitating a private sale of the Defendant Vessel. KAPOOR moves the Court – in the alternative – to provide him with narrow relief from the stay of litigation to pursue a private sale of the Defendant Vessel.

KAPOOR, the rightful owner of the Defendant Vessel, has conducted an independent survey and appraisal, establishing its value at Five Million Three Hundred Thousand Dollars ($5,300,000.00). KAPOOR has initiated arrangements with a broker who is willing to accept a reduced commission of 7%, as opposed to the standard 10%, for the sale of the Defendant Vessel. Despite KAPOOR's ability to sell the vessel at a surplus, UNIBANK has prohibited the broker

from showcasing the Defendant Vessel in accordance with the Asset Freeze. Therefore, KAPOOR seeks the Court's approval to exhibit and negotiate the sale of the Defendant Vessel, aiming to preserve equity rather than resorting to a foreclosure auction sale.

WHEREFORE, based on the foregoing, Defendant KAPOOR respectfully moves this honorable Court for an Order clarifying:

i) Whether the Defendant Vessel is subject to the Asset Freeze;

ii) Whether the Defendant Vessel can be sold without violating the Asset Freeze;

iii) Whether the Admiralty Action is subject to the Stay Order;

iv) Whether the Motion for Interlocutory Sale is subject to the Stay Order, or in the alternative;

v) Whether Kapoor is permitted to participate and/or defend in the Admiralty Action; and

vi) Whether Kapoor is permitted to participate in the sale and negotiation of the Defendant Vessel without violating the Stay Order and/or Asset Freeze.

A proposed order is attached hereto as Exhibit A.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(A), the undersigned certifies that counsel for the movant has conferred with the Receiver regarding this Motion. The Receiver's position is "The Receiver does not believe the Receivership Order stay applies to the maritime foreclosure action – we have no reason to believe the boat was bought in Mr. Kapoor's capacity as an officer, manager, etc. of the Receivership Defendants, and Mr. Kapoor does not acknowledge that the yacht is Receivership Property. While the provisions of the Asset Freeze Order arguably might apply to a creditor's action against Mr. Kapoor's property – and certainly apply to any voluntary disposition of such property by Mr. Kapoor – the Receiver would not object to a sale of the yacht at fair market value

by Mr. Kapoor, provided that (1) the terms of sale are fully disclosed to the Receiver and approved in advance of sale; (2) no insider is participating in such sale; and (3) any net proceeds after satisfaction of the lender's indebtedness are turned over to the receivership estate. Failing such a sale by Mr. Kapoor, the Receiver does not expect to oppose a foreclosure sale by the lender, providing such sale is appropriately noticed and marketed and that any net proceeds are turned over to the receivership estate." Mr. Kapoor agrees to the terms enunciated by the Receiver, but only to the extent that Mr. Kapoor's individual proceeds from the sale of the boat would be held in escrow by an attorney or in the registry of the Court, pending a determination as to Mr. Kapoor's obligations to the Receiver or the SEC. Counsel has also conferred with the SEC which takes no position as to this Motion. Mr. Kapoor's Admiralty counsel, James Perry, has also conferred with counsel for UNIBANK FOR SAVINGS, Nicholas J Zeher, Esq. and Robert Edward Machate, Esq., in a good faith effort to resolve the issues but has been unable to resolve them.

Dated:  February 26, 2024.        Respectfully submitted,

**SHAHADY & WURTENBERGER, P.A.**

*/s/ Fred A. Schwartz*
Fred A. Schwartz, Esq.
Florida Bar No. 360538
200 E. Palmetto Park Road, Suite 103
Boca Raton, FL 33432
Direct: 561-910-3064
Cellular: 561-504-8534
fschwartz@swlawyers.law

John J. Shahady, Esq.
JShahady@swlawyers.law
Florida Bar No. 998990
7900 Peters Road, Suite B-200
Fort Lauderdale, FL 33324
(954) 376-5958

**RASKIN & RASKIN, P.A.**

Jane Serene Raskin
jraskin@raskinlaw.com
Florida Bar No. 848689
2525 Ponce De Leon Blvd.
Suite 300
Coral Gables, FL  33134

*Attorneys for Defendant Kapoor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was served by electronic eservice through CM/ECF on all counsel and parties of record this 26th day of February, 2024, as well as to Nicholas J Zeher, Esq. (litigation@robertallenlaw.com) and Robert Edward Machate, Esq. (rmachate@robertallenlaw.com) via email.

**SHAHADY & WURTENBERGER, P.A.**

*/s/Fred A. Schwartz*
Fred A. Schwartz, Esq.