UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:23-CV-24903-CMA

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

RISHI KAPOOR, et al.

    Defendants.
    _____/

**JOHN ABELL CORPORATION'S MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF SEEKING RELIEF FROM THE COURT'S RECEIVERSHIP ORDER**

    Non-Party Movant, John Abell Corporation ("Abell Corporation" or "Non-Party Movant"), pursuant to Rules 24(a) and (b) of the Federal Rules of Civil Procedure, moves to intervene to seek relief from the Court's receivership order dated January 12, 2024 granting Plaintiff, Securities and Exchange Commission's Expedited Motion for Appointment of Receiver, Asset Freeze, and Other Relief against Company Defendants [DE 28[ (the "Stay Order"), in order that Abell Corporation may enforce its rights under those certain claims of lien for building materials and supplies provided by Abell Corporation which were incorporated into improvements to real property owned by the Company Defendants. In support, Abell Corporation states as follows:

    **I.    INTRODUCTION**

    John Abell Corporation is in the business of buying and selling wholesale building material and supplies. Pursuant to the Florida Division of Corporations, as of March 15, 2023, Urban Coconut Grover Partners, LLC ("Urbin CGP") is a limited liability company managed by Urbin LLC, which is managed by Urbin Founders Group, LLC which is managed by Defendant Rishi

Kapoor. As of March 15, 2023, Urbin Miami Beach Owner, LLC ("Urbin MBO") is a Florida limited liability company which is managed by Urbin Miami Beach Mezzanine, LLC which is managed by Urbin Miami Beach Partners, LLC which is managed by Urbin, LLC which is managed by Urbin Founders Group, LLC which is managed by Defendant Rishi Kapoor. Urbin Coconut Grove Partners, LLC is the owner of multiple parcels of real property legally described as:

> URBIN GROVE LIVE 1, 3162 COMMODORE PLAZA COCONUT GROV, PORTION OF LAND IN COMMODORE PLAZA PB 18-25 LOTS 8, THRU 11 & LOTS 31-34 LESS RDS BLK 1, MIAMI DADE COUNTY FL (TR) PERMIT #BD2101521001B001, Notice of Commencement recorded in Official Records Book/Page 33568/1535, Public Records of Miami-Dade County, Florida is incorporated herein by reference.

And

> 22-51 URBIN GROVE LIV 2, 3170 COMMODORE PLAZA, MIAMI, PERMIT #BD210152001B001 FOLIO 01-4121-047-0060, COMMODORE PLAZA PB 18-25 & LOTS 31-34 LESS RDS BLK 1 F/A/U 01 4121470080 MIAMI-DADE COUNTY, Notice of Commencement recorded in Official Records Book/Page 33568/1535, Public Records of Miami-Dade County, Florida is incorporated herein by reference.

(the "Urbin CGP Properties")

Urbin Miami Beach Owner, LLC ("Urbin MBO") is the owner of multiple parcels of real property legally described as:

> URBIN RETREAT, 1260 WASHINGTON AVE MIAMI BEACH, LOTS 1 TO 3 INC BLK 22 & LOTS 4-5 OCEAN BEACH ADD, #3 PB 2/81 MIAMI-DADE COUNTY FL (TR) (1234-1260) WD 32501/0292 5/4/21 FOLIO 0242030090040,50.

(the "Urbin MBO Property") (collectively, the "Urbin CGP Properties" and the "Urbin MBO Property" are referred to as the "Urbin Properties"). Urbin CGP and Urbin MBO contracted Winmar Construction, Inc. f/k/a Winmar Commercial, Inc. ("Winmar") to perform work and improvements to the Urbin Properties. Winmar subsequently commenced construction activities

at the Urbin Properties. In connection with Winmar's construction activities, Abell Construction provided building materials and supplies which were incorporated into the improvements to the Urbin Properties at the request of Winmar and for the benefit of Urbin CGP, Urbin MBO and Winmar. Due to Urbin CGP, Urbin MBO and Winmar's failure and/or refusal to pay for the building materials and supplies furnished by Abell Corporation, on August 1, 2023, June 15, 2023 and August 24, 2023, Abell Corporation filed its Claim of Lien against each of the Urbin Properties respectively. **A true and correct copy of Abell Corporation's claims of lien are attached hereto as Composite Exhibit "A".**

After the provision of the statutorily required notices, demands and the expiration of the required time periods, on February 5, 2024, Abell Corporation filed its Complaint seeking foreclosure of its claims of lien in the Circuit Court in and for Miami-Dade County, Florida bearing Case No.: 2024-026027-CC-25.

Unbeknown to Abell Corporation, the Securities and Exchange Commission ("SEC") commenced the instant action due to Defendants' theft of millions of dollars obtained from their investors through an alleged fraudulent real estate development scheme. Also unbeknown to Abell Corporation, on January 12, 2024, the SEC obtained from this Court an Order to freeze all assets of the "Company Defendants", as well as those owned by Mr. Kapoor individually. In relevant part, this Court granted the Receiver, with broad and inclusive language, the following general powers and duties:

> "To use reasonable efforts to determine the nature, location, and value of all property interest of the Receivership Defendants, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest, or other income attributable thereto, of whatever kind, which the Receivership Defendants own, posses, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estates").

[DE 28], p. 5 ¶ 7-A.  Furthermore, the Receiver is empowered to:

> "Subject to Paragraph 33 immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property."
>
> "Upon further Order of the Court, pursuant to such procedures as may be required by the Court and additional authority such as 28 U.S.C. sections 2001 and 2004, the Receiver **is authorized to sell, and transfer clear title to, all real property in the Receivership Estate.**

[DE 28], p 13 ¶¶ 32 and 33 (emphasis added).

Abell Corporation is a lien holder under the claims of lien which encumber the two parcels of real property owned by Urbin CGP and clearly subject to the Court's Stay Order and the parcel of real property owned by Urbin MBO which although not a named defendant is also subject to the Court's Stay Order.  Due to the broad and inclusive language of the Stay Order which names as Receivership Property any property which the Receivership Defendants have a "beneficial" interest in or indirect "control", coupled with the Annual Report filed on behalf of Urbin MPO on April 26, 2024 by the Receiver, Bernice Lee, Abell Corporation seek leave to intervene in the instant case for the sole purpose of protecting its interest lien interest by obtaining leave of this Court's injunction and proceeding with its foreclosure action on the Urbin Properties. Furthermore, the sale of the Urbin Properties, free and clear of perfected recorded liens without permitting Abell Corporation an opportunity to object would constitute a violation of its due process rights and a taking in violation of the Fifth Amendment of the United States Constitution. In order for Abell Corporation to enforce its lien rights it seeks leave of this Court to intervene in the instant action, to permit the interposition of its objection to the actions on the part of the

Receiver and the lifting of the injunction in order that Abell Corporation may pursue it legal remedies and foreclose on its claims of lien.

**II.     LEGAL ARGUMENT**

**A. Proposed Intervenor is entitled to intervene as of right.**

Under Federal Rule of Civil Procedure 24(a), a court must permit anyone to intervene who (1) makes a timely motion to intervene, (2) has "an interest in the subject matter of the underlying action", (3) is so situated that "denial of the motion to intervene would impair or impede his ability to protect that interest", and (4) shows that his "interest is not adequately represented by existing parties." *Hous. Gen. Ins. Co. v. Moore,* 193 F.3d 838, 839 (4th Cir. 1999).  "[T]imeliness is a 'cardinal consideration ….'" *Id.*  Proposed intervenor satisfies all four elements for intervention as of right.

***1. Proposed Intervenor's motion is timely.***

Three criteria determine whether a motion to intervene is timely: (1) "how far the underlying suit has progressed," (2) the "prejudice" that granting the motion would cause to the other parties; and (3) the reason for the delay—if any—in filing the motion. *Alt v. EPA,* 758 F.3d 588, 591 (4th Cir. 2014).  "The determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances." *Stupak-Thrall v. Glickman,* 226 F.3d 467, 472-73 (citation and internal quotation marks omitted).  The factors to be considered in determining timeliness are:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Id* at 473 (citation and internal quotation marks omitted). The timeliness requirement is liberally construed. *See, e.g., Cook v. Bates,* 92 F.R.D. 119, 122 (S.D.N.Y. 1981) ("In the absence of prejudice to the opposing party, even significant tardiness will not foreclose intervention."); *see also, Georgia v. U.S. Army Corps of Eng'gs,* 302 F.3d 1242, 1259 (11th Cir. 2002) ("[t]imeliness is not a word of exactitude or of precisely measurable dimensions. The requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice."). As particularly relevant here, courts have recognized that timeliness is measured "from the time [prospective intervenors] became aware that [their interest] would no longer be protected by the existing parties to the lawsuit." *Edwards v. City of Houston,* 78 F.3d 983, 1000 (5th Cir. 1996).

In the instant action, Non-Party Movant became aware when it attempted to perfect service of process upon one of the Urbin Defendants. Specifically, at the time service was attempted in May 2024, the representative for the Urbin Defendant advised the process server that they could not accept service as it was not permitted by and in violation of the Receivership Order.[1] Until such time as service was attempted and rejected, the Non-Party Movant had no information or notice concerning the instant action and/or the Receivership Order. In less than one week from receiving said notice, the Non-Party Movant has obtained a copy of the Receivership Order, analyzed the content thereof and moved expeditiously to file the instant Motion seeking relief from the Order.

As to the second and fourth prongs, the Non-Party movants seek to intervene in order to protect its interest and recover a debt owed which is enforceable through its claim of lien, perfected

---

[1] Pursuant to the Receivership Order, Section VIII "Stay of Litigation" – p. 27 "The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action in connection with any such proceeding, including, but not limited to, the issuance or employment of process."

in accordance with Florida law.  In addition, the Non-Party Movant claims an interest relating to the property that is the subject of this action.  Conversely, the prejudice to the original parties to the instant action will be minimal, at worst, given that they will have an opportunity to raise any interests and defenses in the action to foreclose the claim of lien.  If, however, Abell Corporation's motion to intervene is denied, it risks losing its legally enforceable right to collect payment for materials and supplied provided.  Furthermore, its lien rights will evaporate should the action be forestalled beyond the one-year statutory period to enforce its claim of lien, that is, if the Circuit Court does not dismiss the action first.  Therefore, although the risk of prejudice to the original parties to the action is minimal, the risk to Abell Corporation is substantial if the relief requested were not granted.  Abell Corporation has moved without undue delay and in good faith upon learning of the Receivership Order and would be materially prejudiced were it not permitted to intervene and thereby protect its interest.

   2. ***Proposed Intervenor has a "significant protectable" interest in this litigation which would be impaired by disposition of the real property under the Receivership Order.***

To satisfy Rule 24(a), proposed intervenor's interest in the subject of this suit must be "significantly protectable." *Donaldson v. United States,* 400 U.S. 517, 531 (1971).  Intervention must be supported by a direct, substantial, legally protectable interest in the proceeding-a movant must be at least "real part[y] in interest in the transaction which is the subject of the proceedings." *Chiles v. Thornburgh,* 865 F.2d 1197, 1213-14 (11th Cir. 1989).  Interest is to be construed liberally. *Bradley v. Milliken,* 828 Fo.2d 1186, 1192 (6th Cir. 1987); *see also Mich. State AFL-CIO v. Miller,* 103 F.3d 1240, 1247 (6th Cir. 1997) ("Even close cases should be resolved in favor of recognizing an interest under Rule 24(a)"); *Citizens for Balanced Use v. Mont. Wilderness Ass'n,* 647 F.3d 839, 900 (9th Cir. 2011) ("[I]ntervention of right does not require an absolute certainly that a party's interest will be impaired").

As a threshold matter, Florida's construction lien law provides that lienors, such as Abell Corporation, who have supplied labor, work or materials used in the improvement of real property are entitled to a lien against said property for the value of the materials, labor or work provided. *See* Chapter 713, Fla. Stat., *et seq.*  The statute exists for the specific purpose "to protect those who have provided labor and materials for the improvement or real property" by providing a remedy, foreclosure of a lien. *WMS Construction, Inc. v. Palm Springs Mile Associates, Ltd.,* 762 So.2d 973, 974-75 (Fla. 3d DCA 2000) (citations omitted).  In the instant case, Abell Corporation has a significant protectable interest which the Receivership Order seeks to vitiate, all without any intervention on the part of Abell Corporation.  In fact, the Receiver has expressed its intention to act in regard to the Receivership Properties without the joinder of those parties who hold a property interest therein, such as Abell Corporation.  Furthermore, the seeks authority to sell, and transfer clear title to, all real property in the Receivership Estate, without any participation by and ability to defend their legal interests, on the party of interested parties such as Abell Corporation.[2]  It is confounding how the Receiver expects this action to stand when it flies squarely in the fact of the Fifth Amendment to the United States Constitution, which states that no party deprived of life, liberty or property, without due process of law.  In order to prevent Abell Corporation's deprivation of its rights as provided under Florida law and the Constitution of the Untied States, it must be permitted to intervene in the instant action and to assert its claims to the property the subject of its

---

[2] "Upon further Order of the Court, pursuant to such procedures as may be required by the Court and additional authority such as 28 U.S.C. sections 2001 and 2004, the Receiver **is authorized to sell, and transfer clear title to, all real property in the Receivership Estate.**"

[DE 28], p 13 ¶¶ 32 and 33 (emphasis added).

perfected claims of lien. To permit otherwise would be a derogation of the law and an evisceration of its constitutionally protected rights.

### 3. *The party defendants will not adequately represent Proposed Intervenor's "significantly protectable" interest*

In determining the adequacy of representation, courts consider three factors: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. *Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003). "The 'most important factor' to determine whether a proposed intervenor is adequately represented by a present party to the action is 'how the [intervenor's] interest compares with the interests of the existing parties.'" *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947 (9th Cir. 2009) (quoting *Arakaki*, 324 F.3d at 1086). The burden to show inadequacy of representation is "minimal" and only requires intervenors to show that Defendants' representation of their interest may be inadequate." *See Greene v. Raffensperger,* 22-cv-1294-AT (N.D. Ga. Apr. 7, 2022). "The Supreme Court has held that the inadequate representation requirement "is satisfied if the [proposed intervenor] shows that representation of his interest 'may be' inadequate" and that "the burden of making that showing should be treated as minimal." *Chiles,* 865 F.2d at 1214.

To date, the neither the Receiver nor any other party in anyway associated with this action has taken any steps to protect the interests of Abell Corporation, much less demonstrated any willingness to do so. Moreover, the Receivership Order demonstrates the intention on the part of the Receiver to do just the opposite, which is to sell the Receivership Properties free and clear of the claims of lien in favor of Abell Corporation. The lack of any intention or interest on the part of the Receiver to represent the interests of Abell Corporation is demonstrated by the lack of notice

of communication with any officer, director or agent on behalf of Abell Corporation to discuss or otherwise seek to satisfy the outstanding debt which, in comparison with the interests of other who have claims which encumber the real properties the subject of the claims of lien are de minimis. Based on the foregoing it is clear that neither the Receiver nor any other party to this action has any interest whatsoever in representing the interests of Abell Corporation, adequately or otherwise. Therefore, an Order lifting the stay as it relates to Abell Corporation and permitting the foreclosure of the claims of lien will both protect its interest as guaranteed by Florida law and the Fifth Amendment to the United States Constitution while simultaneously assuring that the interests of the Receivership in conserving its resources to maximize the assets of the Receivership Estate are protected.

### B. Alternatively, Proposed Intervenor Satisfies the Minimal Requirements for Permissive Intervention.

Under Rule 24(b) of the Federal Rules of Civil Procedure, the Court "may permit anyone to intervene who" files a timely motion and who "has a claim or defense that shares with the main action a common question of law or fact." Timeliness is measured by the same three criteria used for intervention as of right: "how far the suit has progressed," "the prejudice that delay might cause other parties," and "the reason for the delay (if any) in filing the motion." *Students for Fair Admissions Inc. v. Univ. of N.C.*, 319 F.R.D. 490, 494 (M.D.N.C. 2017) (quoting *R & G Morg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009). As explained above, Non-Party Movant, Abell Corporation, has filed the instant Motion within one week of discovering the existence of the Receivership Order. Further, as indicated by the Court's Order Setting Trial and Pretrial Scheduled, Requiring Mediation and Referring Certain Matters to Magistrate Judge [DE 49], the trial of this case is not set to until the two-week period commencing May 5, 2025, more

than a year from the date of the instant motion. Thus, intervention will cause no undue delay or prejudice to any existing parties.

Moreover, Non-Party Movant, Abell Corporation has causes of action against some of the Receivership Properties, in the form of claims of lien for material, labor and/or supplied provided and incorporation into improvements of said properties. It is likely that there will some factual overlap in terms of the allegations concerning the fraud on the part of the Defendant, Rishi Kapoor, as claimed by the SEC and as suffered by Abell Corporation in connection with the outstanding debt, a likely result of Mr. Kapoor's ongoing fraudulent scheme. Therefore, due to the commonality of facts and the clear prejudice to be suffered by Abell Corporation, intervention for the limited purpose of enforcing its claims of lien is both in keeping with the law and the principals of equity.

### III.   CONCLUSION

For the foregoing reasons, the Court should grant Non-Party Movant, Abell Corporation's motion to intervene to allow intervention and relief from the Stay Order in order that it may enforce its rights and remedies under the claims of lien encumbering the Urbin Properties.

**WHEREFORE,** John Abell Corporation respectfully requests the Court to: (i) grant its Motion to Intervene for the limited purpose of seeking relief from the Court's Order Granting Plaintiff Securities and Exchange Commission's Expedited Motion for Appointment of Receiver, Asset Freeze, and Other Relief against the Company Defendants and to protect its interest in the Urbin Properties; (ii) enter an Order lifting the stay and allowing John Abell Corporation to exercise its right to foreclose on the claims of lien, permitting John Abell Corporation to foreclose on the Urbin Properties and enforce all other rights and remedies afforded under the claims of lien and applicable law; (iii) decreeing that the Urbin Properties are not subject to the Receivership or

the Stay Order; (iv) alternatively, enter an Order requiring the Receiver to perform all financial obligations the subject of the claims of lien, including but not limited to curing all monetary and defaults forthwith; and (v) enter all other orders that are necessary and just.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

The undersigned counsel hereby certifies that, on May 15, 2024, our office conferred verbally with counsel on behalf of the Receiver, regarding the relief sought herein. Counsel for Receiver indicated that it opposes the relief sought. On May 15, 2024, our office verbally conferred with counsel for Mr. Kapoor, regarding the relief sought. Counsel for Mr. Kappor indicated that his client did not oppose the relief sought herein. On May 15, 2024, our office conferred verbally with counsel on behalf of the SEC, regarding the relief sought. Counsel for the SEC indicated that it opposes the relief sought.

Dated: May 15, 2024

Respectfully submitted,

ANNESSER ARMENTEROS, PLLC
*Attorneys for Plaintiff*
2151 S. Le Jeune Rd, Mezzanine Floor
Coral Gables, FL 33134
(786) 600-7446   Telephone
(786) 607-3022   Facsimile
jannesser@aa-firm.com
rbernstein@aa-firm.com
cziegenhirt@aa-firm.com
mconkey@aa-firm.com
frank@aa-firm.com
service@aa-firm.com

By:   */s/ Megan Conkey Gonzalez*
Megan Conkey Gonzalez, Esq.
Fla. Bar No. 1002944
John W. Annesser, Esq.
Fla. Bar No. 98233
Carlos A. Ziegenhirt, Esq.
Fla. Bar No. 178896

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on this 15th day of May 2024, I electronically filed the foregoing document with the Clerk of Courts using the CM/ECF filing system, which will send a notice of electronic filing to all counsel of record.

                                                         */s/ Megan Conkey Gonzalez*
                                                         Megan Conkey Gonzalez, Esq.