UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-cv-24903-JB

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,
v.

RISHI KAPOOR; *et al.*,

    Defendants.
_____/

### ORDER GRANTING IN PART RECEIVER'S MOTION TO APPROVE SALE FREE AND CLEAR AND RELATED SETTLEMENT AGREEMENT AND CLAIMS PROCESS

**THIS CAUSE** came before the Court upon the Receiver, Bernice C. Lee's Motion to Approve Sale Free and Clear and Related Settlement Agreement and Claims Process (the "Motion"). ECF No. [128]. No party has filed a response to the Motion or otherwise objected to the relief sought. However, Non-Parties Martin I. Halpern, as Trustee of the Martin I. Halpern Revocable Trust and as Trustee of the Halpern Family Trust (the "Halpern Trusts"), with the agreement of the Receiver and SEC, ECF No. [148], filed a response to the Motion,[1] which the Court construes as an Objection. ECF No. [153]. The Receiver filed a Reply to the Objection, ECF No. [157], and the Court held oral argument on the Motion. ECF No. [159].

Following oral argument, the Court required supplemental briefing regarding

---

[1] The Halpern Trusts previously filed a Verified Motion to Intervene for the Limited Purpose of Seeking Relief from the Court's Receivership Order, ECF No. [130], which remains pending.

1

the impact on the Motion, if any, of the Eleventh Circuit's decision in *Sec. & Exch. Comm'n v. Wells Fargo Bank, N.A.*, 848 F. 3d 1339 (11th Cir. 2017). The Receiver and the Halpern Trusts each filed a supplemental memorandum of law, and the Receiver filed a revised proposed order in which she withdrew or amended certain of the relief requested in the Motion. ECF Nos. [163], [164]. The Court held a status conference on June 3, 2024, where it heard from counsel for the Receiver and the Halpern Trusts regarding their respective positions on the Receiver's revised proposed order, and the Court's intended changes thereto.

The Court has carefully considered the parties' initial and supplemental briefing, and the accompanying exhibits, as well the pertinent portions of the record and the relevant legal authorities. For the reasons explained more fully below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

I.   BACKGROUND

On December 27, 2023, the Securities and Exchange Commission ("SEC") filed a Complaint for Injunctive Relief against Rishi Kapoor ("Kapoor") and the Receivership Companies alleging that Kapoor used the Receivership Companies to operate a real estate scheme in violation of the anti-fraud provisions of the federal securities law raising approximately $93 million from more than 50 investors from January 2018 through March 2023. *See generally* Complaint, ECF No. [14-1]. On January 12, 2024, the Court entered an Order appointing Bernice C. Lee as receiver "for the estate of the Receivership Companies, including any of [their] divisions, subsidiaries, affiliates, successors, and assigns; and any fictitious business entities or

2

business names created or used by the Receivership Companies, their divisions, subsidiaries, affiliates, successors, and assigns." ("Receivership Order") ECF No. [28] at ¶ 2.

The Receivership Order authorizes the Receiver to sell real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property. *Id*. at ¶ 32. The Receivership Order further provides that "[u]pon further Order of the Court, pursuant to such procedures as may be required by the Court and additional authority such as 28 U.S.C. sections 2001 and 2004, the Receiver is authorized to sell, and transfer clear title to, all real property in the Receivership Estate." *Id*. at ¶ 33.

On January 24, 2024, the Court entered an Order approving the parties' Stipulation Waiving Requirements of 28 U.S.C. § 2001(a) and (b) in Connection with Real Property Sale Motion (the "Section 2001 Order"). ECF No. [51]. The Section 2001 Order provides that "[t]he Receiver is excused from compliance with 28 U.S.C. section 2001 in connection with the sale of real property in this case." ECF No. [51]. The Halpern Trusts received notice of the Stipulation and Section 2001 Order at the time each was filed, as its counsel previously filed a Notice of Appearance in this action on January 17, 2024. ECF No. [31]. Neither the Halpern Trusts nor any other non-party sought to file an objection to the Stipulation or otherwise dispute the Section 2001 Order.

3

### A. The Stewart Property

Stewart Grove 1, LLC ("Stewart Grove") is a Receivership Company that owns a luxury single family home located on Stewart Avenue in Coconut Grove, Florida (the "Stewart Property"). The Stewart Property is mostly constructed but does not have a certificate of occupancy or a temporary certificate of occupancy from the City of Miami. ECF No. [128] at 4.

In May 2023, the Stewart Property was listed for sale for $24.9 million pursuant to a one-year Exclusive Right of Sale Listing Agreement with One Sotheby's International Realty. ECF No. [128-8]. On October 31, 2023, the price was reduced to $19.5 million. *Id*; ECF No. [128-9].

On April 24, 2024, the Receiver received a contract to purchase the property for $17.5 million, which was the result of an arms-length negotiation (the "Sale Contract"). ECF Nos. [128] at 11-12; [128-11]. This offer was the highest all cash offer that was received. ECF No. [128] at 12.

The Stewart Property is encumbered by a lien in favor of first position lender 3610 Stewart Acquisitions, LLC (the "Lender"), who has filed a foreclosure action and sought 24.99% default interest. *Id*. at 5-9. The Receiver has reached an agreement with the Lender with respect to the proposed sale of the Stewart Property. The terms of this agreement are set out in the Motion, *id*. at 13-14, and below. As relevant here, the Stewart Property is also encumbered by a second mortgage held by the Halpern Trusts, and various lien claimants. *Id*. at 9-10. The junior mortgage secures a $4 million commercial loan that the Halpern Trusts made to Stewart Grove on January

4

27, 2023. *Id*. at 9.

### B. The Sale Motion

The Receiver filed the Motion seeking the Court's approval to sell the Stewart Property free and clear of any liens, claims and encumbrances, and to enter the proposed settlement agreement with the Lender. ECF No. [128]. The Receiver intends to establish a Lien Claim Fund to hold the net sale proceeds, and proposes that all other liens against the Stewart Property, including the junior lien held by the Halpern Trusts, attach to the monies in the Lien Claim Fund (as defined below), with the same priority, extent and validity as they had prior to the Receivership. *Id*. at 20. Lien claimants may, but are not required, to submit proofs of claim and supporting documentation to the Receiver by a date certain. ECF No. [164] at 7. After that date, the Receiver will file a motion setting forth her proposed distribution of the Lien Claim Fund, notice of which will be provided to all lien claimants known to the Receiver, who may object to the proposed distribution and be heard by the Court. *Id*.

The Receiver argues that it is in the best interest of the receivership estate to consummate the sale of the Stewart Property under the Sale Contract because it will generate sufficient funds to pay the Lender in accordance with the settlement agreement and prevent accrual of additional claimed default interest that could otherwise reduce the potential recovery by lien claimants with allowed secured claims, and the receivership estate. ECF No. [128] at 13. The Receiver also argues that the proposed settlement with the Lender is reasonable, and constitutes a fair

resolution with respect to the administration of the Stewart Property and potential liability given applicable claims, defenses, and risks. *Id*. at 23-24.

The Halpern Trusts object to the Sale Motion. ECF No. [153]. They offer five reasons why the Court should deny the Motion. Specifically, that: (1) the Motion requests a grant of powers to the Receiver greater than it is entitled to under the law; (2) the Motion requires the Court ignore the mandatory requirements of 28 U.S.C. § 2001(b) without a valid reason; (3) the relief requested would deprive the Halpern Trust of its property rights without due process; (4) if the relief sought is granted, the Court's action would constitute a taking under the Takings Clause of the Fifth Amendment; and (5) the Court lacks subject matter jurisdiction to adjudicate the rights and interests of the various lienholders because the lienholders are citizens of Florida, and thus complete diversity is absent. *Id*.

III. **ANALYSIS**

"The district court has broad powers and wide discretion to determine relief in an equity receivership." *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (citations omitted). The Receiver has shown that the proposed sale will maximize the value of the Stewart Property, particularly since the Sale Contract is the highest all cash offer received after a year on the market. This is significant given that the Stewart Property does not have a certificate of occupancy, which makes it difficult for an institutional lender to provide financing to a potential buyer. The Court has carefully considered the objections raised by the Halpern Trusts, and concludes that none warrant denial of the Motion.

### A. The Court Has Subject Matter Jurisdiction.

The Court first addresses the subject matter jurisdiction challenge. After careful consideration, the Court finds, for the reasons noted below, that the Halpern Trusts' challenge to subject matter jurisdiction is not well-founded. Given that this is an SEC action, the Court has federal question jurisdiction over the action, ECF No. [14-1] at ¶ 36, and the receivership proceeding is within the Court's equity jurisdiction. *See e.g., Elliott*, 953 F.2d at 1566 (district court's "wide discretion to determine relief in an equity receivership . . . derives from the inherent powers of an equity court to fashion relief."); *SEC v. Posner*, 16 F.3d 520, 521 (2d Cir. 1994) (holding that once the "equity jurisdiction of the district court has been properly invoked by a showing of a securities law violation," the court has "broad discretion" to fashion an appropriate remedy) (citation omitted).

The Halpern Trusts do not dispute this, but rather, argue that resolution of the Motion is akin to a foreclosure action over which the Court would not have subject matter jurisdiction. ECF No. [153] at 12-14. Specifically, the Halpern Trusts complain that "the Receiver is asking the Court to "functionally adjudicate" the rights and claims of lienholders "as would be requested in a foreclosure," yet the Court "would lack subject matter jurisdiction to preside over such an action if independently brought by the Receiver, because there is no federal question or diversity." ECF No. [153] at 13. However, the Receiver has not brought a foreclosure complaint in this Court, and the Halpern Trusts cite no legal authority to support its assertion that resolution of the Motion would transform this proceeding into a foreclosure action.

7

Thus, whether the Court has subject matter jurisdiction over a hypothetical foreclosure action has no bearing on the Court's authority to adjudicate the Motion in *this* action. The Court clearly has jurisdiction over this SEC action, and no argument based on the actual proceeding in this Court has been raised.

### B. The Proposed Sale Does Not Violate Due Process Or Constitute An Ultra Vires Act Of The Receiver, Nor Does It Violate the Takings Clause.

Next, the Halpern Trusts contend that the proposed sale (i) violates its due process rights, (ii) is a taking without just compensation in violation of the Takings Clause of the Fifth Amendment, and (iii) constitutes an ultra vires act of the Receiver because "the Receiver, through its Motion, seeks to extinguish the Trusts' mortgage lien rights" without notice and an opportunity to be heard. ECF No. [153] at 4, 9-12. The premise of these arguments is that the proposed sale would invalidate the Halpern Trusts' junior lien. This is incorrect. The Halpern Trusts' lien will not be extinguished or terminated by the proposed sale. To the contrary, as stated in the Motion, "liens against the Stewart Property will attach to the funds in the Lien Claim Fund, with the same priority, extent and validity as they had prior to the receivership." ECF No. [128] at 20.

"Courts have repeatedly held that a receivership claims process is the appropriate forum for considering interests of secured creditors and allowing secured creditors to protect their interest." *Sec. & Exch. Comm'n v. JCS Enters., Inc.*, No. 14-CV-80468, 2015 WL 13950381 (S.D. Fla. Nov. 3, 2015) (citations omitted); *see also Elliott*, 953 F.2d at 1566 ("The government's and parties' interests in judicial

8

efficiency underlie the use of a single receivership proceeding.").

Instructive is the Eleventh Circuit's decision in *Securities and Exchange Commission v. Wells Fargo Bank, N.A.*, 848 F. 3d 1339 (11th Cir. 2017). In *Wells Fargo*, the Eleventh Circuit held that "while a federal district court has wide-ranging authority to supervise a receivership . . . it does not have the authority to extinguish a creditor's pre-existing state law security interest." *Id*. at 1344.

The Court explained that:

> [t]he appointment of a receiver does not invalidate liens existing at the time the receiver is appointed, *although it may affect or change the remedy or remedies which the lienholder may use to enforce his lien*. Generally speaking the person who has a specific lien on property is entitled by following proper procedure to pay himself out of the property and if it be insufficient, then to prove his claim for the deficiency. In the case of receivership such claim must come out of the proceeds of property not covered by the specific lien and such claim for deficiency must prorate with the unsecured creditors. Generally speaking no other creditor except the lienholder is entitled to any part of the proceeds of property covered by a lien until the lienor is first paid.

*Id*. at 1345 (citing Ralph Ewing Clark, *A Treatise on the Law and Practice of Receivers*, § 646 (3d ed. 1959)) (emphasis supplied). The Eleventh Circuit also stated that "a federal district court cannot order a secured creditor to either file a proof of claim and submit its claim for determination by the receivership court, or lose its secured state-law property right that existed prior to the receivership." *Id*.

The proposed sale does not violate these principles. As mentioned, the Halpern Trusts' junior security interest is not extinguished or invalidated, but rather, attaches to the funds in the Lien Claim Fund. Further, the Receiver has withdrawn her request for a mandatory claims process, and instead has agreed that a lienholder

9

may, but is not required to, file a proof of claim to receive distribution from the Lien Claim Fund. ECF No. [164] at 7.

Given the preservation of the Halpern Trusts' security interest, its argument that the proposed sale violates the Takings Clause of the Fifth Amendment by "extinguishing non-parties lien rights without just compensation" is without merit. ECF No. [153] at 11-12. The Halpern Trusts also argue that "it would lose another important right[:] the right to credit bid at a foreclosure sale . . . ." *Id*. at 10 n.3. While a secured lien constitutes a protected property interest, *see e.g., Armstrong v. United States*, 364 U.S. 40, 46-49 (1960), the Halpern Trusts cite no legal authority that a right to credit bid qualifies as such.

"[I]t is appropriate for [a] district court to use summary proceedings" to dispose of receivership property because it "reduces the time necessary to settle disputes, decreases litigation costs, and prevents further dissipation of receivership assets." *Elliott*, 953 F. 2d at 1566. Indeed, the Eleventh Circuit has held that "summary proceedings do not per se violate claimants' due process interest." *Id*. at 1571. Rather, to establish a due process violation, the claimant "must show how they were prejudiced by the summary proceedings and how they would have been better able to defend their interests in a plenary proceeding." *Id*. The Halpern Trusts make no such showing. To be sure, "[s]ummary proceedings are inappropriate when parties would be deprived of a full and fair opportunity to present their claims and defenses." *Id*. at 1567. That is not the situation here, as monies can only be distributed from the Lien Claim Fund upon court order following notice to all known lien claimants,

10

including the Halpern Trusts, who will be given an opportunity to object.

For these reasons, the proposed sale does not constitute an unauthorized act of the Receiver, or violate the Halpern Trusts' due process or Fifth Amendment rights.

### C. Compliance With 28 U.S.C. § 2001(b) Is Not Required.

Finally, the Halpern Trusts contend that the proposed sale is improper because it does not comply with the requirements set forth in 28 U.S.C. § 2001(b). Section 2001(b) provides that:

> After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price less than two-thirds of the appraised value. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale.

28 U.S.C. § 2001(b). After counsel for the Halpern Trusts appeared in this case, the SEC, Receiver, and Mr. Kapoor filed a Stipulation waiving the requirements of Section 2001(b) in connection with the sale of any real property sought by the Receiver. ECF No. [48]. On January 24, 2024, the Court entered an Order approving the Stipulation and explicitly stated that "[t]he Receiver is excused from compliance with 28 U.S.C. section 2001 in connection with the sale of real property in this case."

11

(the "Section 2001 Order"). ECF No. [51]. Despite receiving notice, the Halpern Trusts did not seek to file an objection to the Stipulation or otherwise dispute the Section 2001 Order.

The Halpern Trusts assert that the Section 2001 Order does not apply because parties cannot waive the protections of Section 2001(b) on behalf of non-parties. ECF No. [153] at 6-8. This argument misses the mark. The operative waiver is not the parties' waiver of the Halpern Trusts' rights under Section 2001(b). Rather, it is the Halpern Trusts' waiver of their Section 2001(b) rights by taking no action to challenge either the Stipulation or the Section 2001 Order despite knowledge of both filings. "Ordinarily, a mere lack of diligence is sufficient to forfeit a constitutional or statutory right." *Clement v. U.S. Attorney General*, 75 F. 4th 1193, 1202 (11th Cir. 2023).

Indeed, the record reflects that the Halpern Trusts believed a sale of the Stewart Property had already taken place, yet did not complain that Section 2001(b) was not followed. Specifically, on April 18, 2024, counsel for the Halpern Trusts emailed the Receiver stating "Can you give us an update on the status of the Stewart project. We were under the impression that this property was sold months ago." ECF No. [157-5]. The Halpern Trusts' silence under those circumstances is consistent with the Court's conclusion that given the Section 2001 Order, compliance with Section 2001(b) is not required in connection with the proposed sale.[2]

---

[2] At oral argument, counsel for the Halpern Trusts indicated that they did not have a means to object to the Stipulation or Section 2001 Order because they were not parties, and had no reason to know the Stewart Property would be sold. These arguments are unpersuasive. The Halpern Trusts could have filed a motion to

12

Furthermore, the Halpern Trusts have not shown that waiver of Section 2001(b) prejudices them. The statute requires that a hearing with notice to all interested parties take place before a court can approve a private sale of receivership property. 28 U.S.C. § 2001(b). That occurred here, as the Halpern Trusts received notice of the Motion and an opportunity to be heard at a hearing prior to court approval of the proposed sale. Similarly, the statute allows an interested party to make a bona fide offer that it is at least ten percent higher than the private sale amount. *Id*. The Halpern Trusts have been on notice of the private sale amount and could have, but did not, make a higher offer.

The Halpern Trusts are correct that the statute also requires that three disinterested persons appraise the property, and the private sale price must be more than two-thirds of the appraised value. *Id*. The Halpern Trusts have not offered any appraisals of the Property, or other evidence to show that the current sale price is less than two-thirds of the appraised value. Notably, the Property was listed on the market for sale beginning in May 2023 at a price of $24.9 million, which had to be reduced six months later to $19.5 million. The current offer of $17.5 million made in April 2024—more than a year after the Stewart Property was first listed—is the highest all cash offer received. This is significant because the Stewart Property does

---

intervene (as they did recently) to alert the Court to their concerns, or could have conferred with the Receiver and SEC to secure an agreement that the Halpern Trusts could file an objection without formal intervention (as they did here). Further, the Stewart Property was publicly listed for sale even before the Receivership and, as evidenced by the email correspondence discussed above, the Halpern Trusts believed in April 2024 that the Stewart Property was "sold months ago."

not have a certificate of occupancy, which will likely make it difficult for potential buyers to secure financing. In short, the Halpern Trusts have failed to demonstrate that the proposed private sale amount runs afoul of Section 2001(b).

## III. CONCLUSION

For the foregoing reasons, and finding that good cause exists, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Receiver's Motion ECF No. [128] is **GRANTED IN PART** as described herein.

2. The Receiver is authorized to enter the Sale Contract attached to the Motion as Exhibit J, and the Receiver, as the Receiver over Stewart Grove 1, LLC ("Stewart Grove"), is authorized to execute the deed, bill of sale and title affidavit attached to the Sale Contract, and other documents necessary for the proposed sale.

3. While the sale of the Stewart Property will be free and clear of pre-existing liens as stated in Paragraph 4 below, all liens against the Stewart Property, including, but not limited to, the liens described in the Receiver's Motion and those asserted between April 8, 2024 through the closing date, are not extinguished, but rather, will attach to the funds in the Lien Claim Fund (as defined below), with the same priority, extent and validity as they had prior to the Receivership.

4. The sale of real property with a legal description Lot 1, Block 1, of the Plat of Stewart, according to the plat thereof, as recorded in Plat Book

171, Page 50, of the Public Records of Miami-Dade County, Florida, having folio no. 01-4128-051-0010, and Lot 2, Block 1, of the Plat of Stewart, according to the plat thereof, as recorded in Plat Book 171, Page 50, of the Public Records of Miami-Dade County, Florida, having folio no. 01-4128-051-0020 (together, the "Stewart Property"), to Mimi Chough, as Trustee of the JWY Trust u/t/a dated 7/1/2021 (the "Buyer"), free and clear of all liens, claims and encumbrances, including, but not limited to, the liens described in the Receiver's Motion and those asserted between April 8, 2024 through the closing date, is approved on an as-is, where-is basis, without representations or warranties from the Receiver.

5. Any licensed title insurer and the Buyer are authorized to rely on this Order as authorizing the transfer of legal title to the Stewart Property.

6. The Receiver is authorized to take any and all actions reasonably necessary to consummate the sale of the Stewart Property including, but not limited to, execute deeds, bills of sale, title affidavits, and closing statements reasonably required to consummate the sale of the Stewart Property in accordance with the terms of the Sale Contract.

7. The settlement agreement between the Receiver and 3610 Stewart Acquisitions, LLC (the "Lender") set forth in the Motion is **APPROVED**.

8. The Receiver is authorized to pay at closing: (a) the Lender Payment (as

defined in the Motion) consisting of $13,923,238.49 for amounts owed through June 20, 2024, and $3,978.57 per diem at the non-default interest rate of 12.875% for the period after June 20, 2024 through the date the sale of the Stewart Property closes, plus any additional amounts Lender was required to and did advance prior to closing under the Advance Agreement, and interest thereon in accordance therewith, (b) traditional seller's fees and costs specified in the Sale Contract, and (c) the Carveout (as defined in the Motion) to the receivership estate consisting of a payment of $651,407.28 plus $3,743.72 per diem for the period after June 20, 2024 through the date the sale of the Stewart Property closes, for the benefit of the receivership estate. The Carveout funds will be free and clear of any liens, claims and encumbrances, and will constitute an unencumbered asset of the receivership estate, with any disbursement subject to the terms of the Receivership Order and future Court orders.

9. The Receiver is authorized to fund, at closing, a reserve of $100,000 (the "Lender Fee Reserve") that will be held by the Receiver, and the Receiver is authorized to release amounts from the Lender Fee Reserve to the Lender for reasonable attorney's fees and costs incurred after April 26, 2024 for the Stewart Property that have been paid by the Lender, and to the extent there are excess funds in the Lender Fee Reserve after the payment of such fees and costs, such excess funds will

be split 50% to the Lender and 50% for the Lien Claim Fund (defined below).

10. The Receiver will separately account for the remaining net sale proceeds after payment of the Lender Payment, Carveout and closing fees and costs, and funding of the Lender Fee Reserve (the "Lien Claim Fund").

11. The modified proof of lien claim form attached as Exhibit E to the Receiver's Supplemental Brief on Stewart Sale Motion (the "Proof of Lien Claim"), ECF No. [164-5], and modified submission procedure set forth herein are **APPROVED,** and all other relief relating to the lien claims process described in the Motion is **denied**.

12. On the date that is 60 days after the entry of this Order (the "Lien Claim Submission Date"), any person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, estates, trusts, and governmental units) who claims to have a right to payment or claim of any nature, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, that arose from the beginning of time through the present date, against Stewart Grove, Stewart Grove 2, LLC and/or the Stewart Property secured by a lien against the Stewart Property *may* complete and submit the Proof of Lien Claim, signed under the penalty of perjury, with supporting documents evidencing the amount, extent, validity, perfection and

      priority of their claim and lien, including, but not limited to, compliance with applicable state law requirements, to the Receiver by electronic mail to Bernice C. Lee at blee@kttlaw.com and David L. Rosendorf at dlr@kttlaw.com for the Receiver to consider in preparing the proposed distribution of the funds in the Lien Claim Fund.

13. Following the Lien Claim Submission Date, the Receiver will file an appropriate motion with the Court to approve the proposed distribution of the funds in the Lien Claim Fund, with notice to all known lien claimants. A lien claimant with a claim against the Lien Claim Fund may file an objection to the motion if it disagrees with the proposed distribution. The Court will thereafter set a briefing schedule and make a final determination regarding the distribution of funds from the Lien Claim Fund.

**DONE AND ORDERED** in Miami, Florida this 17th day of June, 2024.

_____
**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**