UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-24903-CIV-JB

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.

RISHI KAPOOR, et al.,

      Defendants.
_____/

## RECEIVER'S SECOND INTERIM REPORT

Bernice C. Lee, the Receiver (the "Receiver") appointed by the Court's Order [DE 28] ("Receivership Order") entered on January 12, 2024, submits her Second Interim Report for the period of April 1, 2024 through June 30, 2024 (the "Reporting Period").

**I.**    **Receiver's General Activities and Efforts in the Second Quarter**

    **A.**    **General Operations of the Receiver**

This receivership involves twenty-two entities named as defendants[1] (collectively, the "Receivership Defendants"), over twenty subsidiaries and related entities, and seven active real estate projects. The Receiver is assessing all assets of the receivership estate on a project-by-project basis to determine the best path forward for each property and its ability to produce a recovery or reduction of claims for the receivership estate.

---

[1] The Receivership Defendants are: Location Ventures, LLC, URBIN, LLC, Patriots United, LLC; Location Properties, LLC; Location Development, LLC; Location Capital, LLC; Location Ventures Resources, LLC; Location Equity Holdings, LLC; Location GP Sponsor, LLC; 515 Valencia Sponsor, LLC; LV Montana Sponsor, LLC; URBIN Founders Group, LLC; URBIN CG Sponsor, LLC; 515 Valencia Partners, LLC; LV Montana Phase I, LLC; Stewart Grove 1, LLC; Stewart Grove 2, LLC; Location Zamora Parent, LLC; URBIN Coral Gables Partners, LLC; URBIN Coconut Grove Partners, LLC; URBIN Miami Beach Partners, LLC; and URBIN Miami Beach II Phase 1, LLC.

1

During the Reporting Period, the focus of the Receiver's efforts has been on: (a) assessing the potential disposition of the receivership property (including debt structure, loan transactions, lender funding and related claims), (b) negotiating and discussing the potential sale and/or settlement of debt with potential purchasers and lenders for multiple properties, (c) preparing and prosecuting a motion to approve a proposed sale and lender settlement for the Stewart Grove property, (d) preparing and prosecuting a motion to approve a settlement with the lender for the 299 Alhambra Building, (e) obtaining dismissal of a chapter 11 bankruptcy filed by an entity related to Rishi Kapoor that owns a luxury residence in which Mr. Kapoor resides, preventing Mr. Kapoor from hiring an insider (his spouse) as the broker for the sale of the residence, and obtaining a settlement with Mr. Kapoor and the lender that provided for the dismissal of the bankruptcy, the engagement of an experienced non-insider broker, and an agreed upon process and timeframe to sell the residence and escrow the proceeds, (f) responding to motions to intervene filed by non-party creditors and a motion to advance fees by Mr. Kapoor, (g) obtaining and analyzing additional bank records and other financial documents, including purchaser deposits for the Miami Beach, Commodore/Coconut Grove and Villa Valencia properties, and (h) addressing pending litigation and creditor and investor inquiries and investigating potential litigation claims.

A summary of the real estate properties and the Receiver and professionals' efforts during the Reporting Period is provided below:

Stewart Grove Property: Stewart Grove 1, LLC owns a luxury single family home constructed on real property located across two parcels: 3620 Stewart Avenue, Miami, Florida 33133 (folio no. 01-4128-051-0010), and 3610 Stewart Avenue, Miami, Florida 33133 (folio no. 01-4128-051-0020). During April 2024, the Receiver spent a significant amount of time negotiating: (a) the terms of a $17.5 million sale with a purchaser, (b) settlement terms with the

first position lender that provide for a carveout payment from the first position lien in excess of $700,000 for the benefit of the receivership estate, and (c) an agreement to have the buyer pay its broker's commission, and the broker waive any claim against the estate and cooperate with the Receiver to collect any amounts claimed to be owed under any listing agreement.

On May 2, 2024, the Receiver filed an Expedited Motion to Approve Sale Free and Clear and Related Settlement Agreement and Lien Claims Process (the "Stewart Sale Motion") [DE 128]. The Martin I. Halpern Revocable Trust and Halpern Family Trust (the "Halpern Trusts") filed a Motion to Intervene [DE 130] on May 7, 2024 to seek relief from the stay to foreclose on its lien on the Stewart Property and Commodore/Coconut Grove Properties (discussed below), and to object to the Stewart Sale Motion. The Receiver filed a response in opposition to the motion as it relates to intervention and stay relief [DE 146] but agreed to the Halpern Trusts filing an objection to the Stewart Sale Motion.

On May 17, 2024, the Halpern Trusts filed a response in opposition to the Stewart Sale Motion [DE 153], and later the same day, the Receiver filed her reply to the response in support of the Stewart Sale Motion. The Court conducted a hearing on May 20, 2024, and subsequently entered an order requiring supplemental briefing, which the parties complied with by submitting supplemental memoranda on May 28, 2024 [DE 163, 164]. After a further status conference on May 30, 2024, on June 17, 2024, the Court entered an Order granting in part the Stewart Sale Motion, which approved the proposed sale and provided modified relief with respect to a proposed lien claims process [DE 185]. The sale closed on July 29, 2024. The following sale proceeds were disbursed by the escrow agent: (a) $14,084,835.19 for the Lender Payment (as defined in the Stewart Sale Motion), and (b) $3,238,475.34 to the receivership estate, which funds consist of $797,412.36 as a carveout from the lender's first position lien for the benefit of the receivership

estate, $100,000 for a lender fee reserve and $2,341,062.98 for a lien claim fund to pay other valid lien claims against the Stewart Property.

In addition, during the Reporting Period, the Receiver and her professionals facilitated access and assisted the purchaser and its professionals in conducting various inspections, including searching the property and available records to locate septic tanks, and prepared access agreements for various third parties to perform landscaping and other maintenance services with the purchaser paying for all associated expenses.

299 Alhambra Building and Personal Property: CG Office SPE, LLC, a wholly owned subsidiary of Urbin Coral Gables Partners, LLC, owned an office building located at 299 Alhambra Circle in Coral Gables, Florida. The Receivership Defendants occupied the ground floor and offices 319, 401, 406, 510, 512, and 519 – 521 in the building. During the prior Reporting Period, the Receiver negotiated a settlement with the lender under which CG Office SPE consented to the entry of a consent final judgment in the foreclosure case, the lender agreed to pay $100,000 to the receivership estate, and the Receiver had sixty days to administer the receivership property in the building.

The Receiver filed a Motion for Approval of Settlement and Authority to Consent to Foreclosure Judgment (the "299 Alhambra Motion") [DE 91] on February 28, 2024. Mr. Kapoor filed a response in opposition to the motion on March 4, 2024 [DE 95], and the Receiver filed her reply on March 5, 2024 [DE 96]. On May 28, 2024, the lender filed a Motion to Intervene seeking a status conference on the 299 Alhambra Motion [DE 162]. On June 11, 2024, the Receiver filed a Motion for Status Conference [DE 179], and the lender withdrew its Motion to Intervene [DE 182]. The Court held a status conference on June 17, 2024, and on the same day, entered the Order Granting Motion for Approval of Settlement and Authority to Consent to Foreclosure Judgment

[DE 186]. On June 18, 2024, the lender paid the $100,000 settlement payment, and is currently in the process of seeking entry of the final consent judgment.

Additionally, during the Reporting Period, the Receiver's auctioneer conducted a sale of receivership property in the building. Mr. Kapoor's raised objections to the auction of alleged personal items he left in Office 510 [DE 117]. The Receiver resolved these objections with Mr. Kapoor, and the Court entered an Agreed Order Resolving Rishi Kapoor's Objection to Auction Sale of Personal Property [DE 122], which provided that Mr. Kapoor could remove specified items by a certain date, and such items remain subject to the Asset Freeze Order [DE 10]. The auction resulted in $21,244.50 of net proceeds for the personal property in the offices and certain sliding glass doors.

<u>Miami Beach Property</u>: Urbin Miami Beach Owner, LLC, a wholly owned subsidiary of Urbin Miami Beach Mezzanine, LLC, owns two adjacent parcels located in Miami Beach: 1260 Washington Avenue consisting of primarily vacant land, folio no. 02-4203-009-0040, and 1234 Washington Avenue with a gutted office building, folio no. 02-4203-009-0050. On April 12, 2024, the Receiver filed a Motion for Authorization of Employment of Lamar Fisher and Fisher Auction Company as Broker and Auctioneer [DE 120], and on April 15, 2024, the Court entered an Order granting the motion [DE 124]. The Receiver and her counsel have expended a meaningful amount of time drafting and finalizing a sale contract for the Miami Beach Property, and conducting conference calls with the broker, lender and potential purchasers to discuss the status of the marketing process, offers and potential sale terms. The Receiver and her counsel have also been in communication with the City of Miami Beach regarding code violations asserted regarding the Miami Beach Property, and with counsel for individuals who placed deposits for purchase of units in the proposed Miami Beach development.

On May 15, 2024, John Abell Corporation, a subcontractor, filed a Motion to Intervene to seek relief from stay to enforce its rights against the Miami Beach Property and the Commodore/Coconut Grove Properties (discussed below) [DE 139], and the Receiver filed a response in opposition on May 29, 2024 [DE 165].

Commodore/Coconut Grove Properties: Urbin Coconut Grove Partners, LLC is the 100% owner and/or manager of four entities that own real property and/or leasehold rights in properties located on Commodore Plaza in Coconut Grove, Miami: (a) Urbin Commodore Residential SPE, LLC owns 29 condominium or retail units in a building located at 3162 Commodore Plaza, Miami, FL 33133, (b) Urbin Commodore Residential II SPE, LLC owns a parcel, folio no. 01-4121-047-0060, with an address of 3170 Commodore Plaza, Miami, FL 33133, and is the leasee under a ground lease with Dharma Studio, Inc. for real property located at 3166 Commodore Plaza, Miami, FL 33133, folio no. 01-4121-047-0070, (c) Urbin Commodore SPE, LLC is a lessee under a ground lease with TB 3138 Commodore Investments, LLC for real property located at 3138 Commodore Plaza, Miami, FL 33133, folio no. 01-4121-047-0130, and (d) Urbin Commodore Restaurant SPE, LLC is a lessee under a ground lease with TB 3138 Commodore Investments, LLC for real property located at 3120 Commodore Plaza, Miami, FL 33133, folio no. 01-4121-047-0120.

During the Reporting Period, the Receiver and her counsel have spent a considerable amount of time negotiating the terms of a potential sale of the Commodore/Coconut Grove Properties with an interested party and its counsel, and the parties have been engaged in drafting and revising a sale contract for sale of all the properties. The Commodore/Coconut Grove Properties are a complex assemblage of interests with many complications and challenges. For example, the City of Miami's Unsafe Structure Panel issued an order on May 19, 2023 determining that 3170 Commodore Plaza is in violation of the building code and is required to submit a

recertification report to address whether the structure is safe for occupation by tenants or residence. The residential condominium units at 3162 Commodore Plaza occupy the fourth through sixth floors, which have been gutted, and which are situated above three floors of operating retail units in the property. Construction ceased in the summer of 2023, presumably due to nonpayment. The City of Miami's Unsafe Structure Panel issued an order on July 28, 2023 determining that 3138 Commodore Plaza needed to be repaired within sixty days, and if not, the structure shall be demolished. The building was already partially demolished prior to the commencement of the receivership. Verizon has its cellular equipment on the partially demolished structure. The equipment needs to be moved or suspended for the building to be demolished. The Receiver and her counsel have also been engaged in regular communications with lessees under the ground leases, with the Halpern Trusts as lender to the properties, with tenants in the retail units, with counsel for individuals who placed deposits for purchases of units, with counsel for the 10% purchaser deposit bond surety, and with the City of Miami.

Further, as noted above, the Halpern Trusts filed a Motion to Intervene [DE 130] on May 7, 2024 to seek relief from the stay to foreclose on its lien on the Commodore/Coconut Grove Properties, and on May 16, 2024, the Receiver filed a response in opposition to such relief [DE 146].

<u>Villa Valencia Condos</u>: 515 Valencia SPE, LLC, a wholly owned subsidiary of 515 Valencia Partners, LLC, owns four condominium units in a condominium building located at 515 Valencia Ave., Coral Gables, Florida 33134: (a) Unit 1301, folio no. 03-4117-096-0120, (b) Unit 1104, folio no. 03-4117-096-0390, (c) Unit 1202, folio no. 03-4117-096-0110, which is subject to a sale contract and related litigation, and (d) Unit 1201, folio 03-4117-096-0230, which is subject to a sale contract and related litigation. The Receiver filed a motion to employ appraiser for the

7

condos on April 2, 2024 [DE 113], and the Court entered an Order granting the motion on April 4, 2024 [DE 116].

During the Reporting Period, the Receiver and her counsel have spent a significant amount of time meeting with multiple interested parties, negotiating potential sale terms with certain interested parties for Unit 1104, and drafting a sale contract. They have also spent a meaningful amount of time investigating which parking spaces, private garages and private cabanas are unassigned and part of the receivership estate. No master list has been located or provided by the condominium association or management company for the building or in the records of the Receivership Companies. The Receiver and her counsel have also attended to multiple calls and e-mail communications with creditors, the City of Coral Gables, the condominium association, and other parties regarding issues relating to the building and the temporary certificate of occupancy, which the Receiver has successfully extended through discussions with the City. The Receiver has had multiple discussions with purchasers under pre-receivership sale contracts for Units 1201 and 1202, including with respect to a possible resolution, and provided access to the units for such parties' professionals. The Receiver and her counsel have also had multiple communications with personnel at City of Coral Gables and at AT&T regarding the completion of a pending underground wiring project.

On June 28, 2024, the Receiver filed a Motion for Authorization of Employment of Real Estate Broker for Villa Valencia Condominium Unit [DE 187] seeking to employ a broker for Unit 1301. On July 3, 2024, the Court entered an Order granting the motion [DE 189].

Montana Property: 7240 US Highway 2 SPE, LLC, a wholly owned subsidiary of LV Montana Phase I, LLC, owns real property consisting of 12.37 acres and residential structure with an address of 7240 US Highway 2 E, Columbia Falls, Montana 59912 (folio no. 07-4186-15-2-09-

30-0000). On April 22, 2024, the Receiver filed a Motion for Authorization of Employment of Real Estate Broker for Montana Property [DE 126], which the Court granted on May 21, 2024 [DE 160]. The Receiver has spent a meaningful amount of time attending to having the electricity turned on, cleaning the residence and surrounding area, and checking the plumbing.

Los Pinos Property: 7233 Los Pinos LLC ("7233 Los Pinos"), an entity Mr. Kapoor has stated that he and Jeannie Frank Kapoor ("Mrs. Kapoor") own through an entity named Kapoor, LLC, owns the property located at 7233 Los Pinos Blvd in Coral Gables, Florida, which is their residence, is subject to a foreclosure action, and is subject to the Asset Freeze Order entered in the receivership action against assets in which Mr. Kapoor has an interest.

On March 4, 2024, Mr. Kapoor filed a motion to stay the foreclosure proceeding and employ Mrs. Kapoor as the real estate agent [DE 94]. On March 7, 2024, the Receiver filed a response to the motion proposing that the property be marketed by a non-insider professional with no insider receiving any compensation, with a final sale offer being subject to approval by the Receiver and SEC, or if appropriate, the Court, and with the net sale proceeds after payment of bona fide liens escrowed with Receiver's counsel. While his motion remained pending, on March 25, 2024, Mr. Kapoor caused 7233 Los Pinos to file a voluntary chapter 11 bankruptcy petition, and soon after, the company sought to employ Mrs. Kapoor as the sales agent for the broker to sell the residence. The Receiver filed a Motion to Dismiss Bankruptcy or Abstain on April 17, 2024, and objection to the application to employ broker on May 1, 2024.

The Receiver and her counsel spent a meaningful amount of time explaining to 7233 Los Pinos's initial bankruptcy counsel, and after his withdrawal, its successor bankruptcy counsel that the bankruptcy case should be dismissed, and Mr. Kapoor and 7233 Los Pinos should sell the property through a non-insider independent professional. Eventually, the Receiver's counsel

9

facilitated a resolution under which Mr. Kapoor, 7233 Los Pinos and the lender agreed, *inter alia*, that (a) 7233 Los Pinos would dismiss the bankruptcy case, (b) the property and proceeds thereof are subject to the Asset Freeze Order, (c) 7233 Los Pinos is permitted to sell the property using a non-insider broker within a certain amount of time and with no insider participating in the sale process or any compensation, (d) the lender agreed to suspend default interest and stay the foreclosure action for a 90-day period pending sale, and (e) net proceeds from the sale of the property after the satisfaction of valid non-insider liens will be escrowed with Receiver's counsel pending a determination by this Court. The resolution is set forth in the Receiver's Agreed Motion for Entry of Agreed Order Granting in part Kapoor's Motion to Stay State Court Proceedings and Permit Sale of Asset Subject to Asset Freeze filed on May 31, 2024 [DE 169], and the Order granting the motion entered on June 3, 2024 [DE 175]. Since entry of the Order, the Receiver and her counsel have continued to monitor and communicate with the parties regarding the progress toward sale of the 7233 Los Pinos property.

<u>Princess Yacht</u>: Mr. and Mrs. Kapoor owned a 68' 2023 Princess yacht subject to a mortgage in excess of $4.2 million and maritime foreclosure action by the lender. On or about April 3, 2024, the Kapoors and the lender reached a settlement agreement. On July 3, 2024, the lender's counsel advised the Receiver of a potential sale contract for a purchase price that is less than the amount owed to the lender.

During the Reporting Period, the Receiver and her professionals devoted a considerable amount of time identifying bank accounts used for transactions involving the Receivership Defendants and related entities, including their bank accounts, third party escrow accounts and law firm accounts, and obtaining records for such accounts and transactions through requests and subpoenas to third parties. The Receiver and her professionals are reviewing over 40,000

transactions occurring across more than 45 bank accounts, and purchaser deposits for the Miami Beach, Commodore/Coconut Grove and Villa Valencia properties, as well as other transactions engaged in by the Receivership Companies and potential recoveries in connection with those transactions. The Receiver is investigating all potential avenues of potential recovery, including substantial payments made to certain equity investors prior to the commencement of the SEC action, intercompany transfers, payments to or for the benefit of insiders, and other questionable transactions. The Receiver and her team have spent a significant amount of time identifying and understanding the massive volume of information, which has been time-consuming but will help pave the way for the efficient administration of this receivership estate.

The Receiver and her counsel have also addressed numerous case and claims administration items, including:

a. Attending to various document requests and ESI issues, and searching and reviewing documents relating to the Receivership Defendants and related entities to address requests from various parties,

b. Attending to corporate filings with the State of Florida and State of Montana,

c. Updating the Receiver's website which contains court documents and a section where investors and other claimants can include their contact information (https://kttlaw.com/lv/),

d. Monitoring and appearing for hearings with respect to the over twenty-five Florida state and federal court proceedings filed prior to or after the Court entered the Receivership Order, and city code violation hearings, and communicating with plaintiffs and other parties involved in the cases,

    e. Attending the SEC's deposition of D.J. Motha, the former Chief Financial Officer of Location Ventures, and

    f. Attending to calls and emails with investors, lien claimants, unit purchasers and other claimants to discuss the SEC action, Receivership Order, potential claims process, and issues relating to particular properties.

**B. Receiver's Pending Motions**

As of June 30, 2024, there is only one motion filed by the Receiver that remain pending on the Court's docket: Receiver's First Interim Application to Authorize Payment of Fees and Expenses of Receiver and Her Professionals [DE 137], which the Receiver filed on May 15, 2024, seeking allowance and payment of fees and costs incurred from January 12, 2024 through March 31, 2024 . No party has opposed the relief sought in the application.

**C. Cash on Hand, and Receipts and Disbursements**

As of June 30, 2024, the Receivership Estate has cash on hand in the amount of $2,362,278.87, which consists of unencumbered funds. During the Reporting Period, the Receiver collected $185,023.55 and disbursed $14,002.57. Additional details are provided in the Standardized Fund and Accounting Report attached as **Exhibit A**.

The total amount and nature of known accrued administrative expenses as of June 30, 2024, is $1,031,636.34, which consists of professional fees and expenses of the Receiver's professionals, as follows: (a) Receiver, Bernice C. Lee, fees $260,575.00 for 744.5 hours, (b) Kozyak Tropin & Throckmorton, LLP (Counsel), fees $373,785.00 for 1,281.5 hours and $22,517.77 expenses, (c) Yip Associates, fees $315,965.00 for 1,080.7 hours and $155.07 expenses, and (d) Day Pitney fees $58,638.50 for 169.4 hours. These amounts represent fees and expenses of the Receiver and her professionals which have been incurred but not yet applied for, awarded by the Court, or paid by

the Receiver. The initial months of the receivership generally require the most intensive effort by the Receiver and her professionals.

### D. Schedule of Receipts of Disbursements

A report of the Receiver's receipt and disbursements, on a quarterly and cumulative basis, is attached as Exhibit A.

### E. Receivership Property

The receivership property consists of primarily the real properties discussed above which are owned directly by certain Receivership Defendants or by subsidiaries, cash on hand of $2,362,278.87, and potential third-party claims.

### F. Liquidated and Unliquidated Claims held by the Receivership Estate

The Receiver is in the process of investigating the potential liquidated and unliquidated claims held by the Receivership Estate, and is not yet able to provide a valuation of such claims or the anticipated or proposed methods of enforcing such claims. The Receiver anticipates that numerous claims will be identified as the administration of the receivership estate progresses.

### G. Known Creditors

Over 32 investors and creditors have input their contact information in through the Receiver's website. In the interest of protecting the privacy of those investors and ensuring that the list of fraud victims does not become available to others who may use it for improper purposes, the Receiver does not recommend at this time that a list of the known creditors and investors and their addresses be publicly filed at this time.

### H. Creditor Claims Proceedings

No Creditor Claims Proceedings have been commenced.

I. **The Receiver's Recommendations for a Continuation or Discontinuation**

The Receiver recommends the continuation of the receivership. There is a substantial amount of work to be done in administering the remaining real property, reconstructing the Receivership Defendants and related entities' financial operations and transactions, assessing the amounts due to investors and creditors, and pursuing recoveries on behalf of the victim investors.

> Respectfully submitted,
>
> **KOZYAK TROPIN & THROCKMORTON, LLP**
> *Counsel for Bernice C. Lee, Receiver*
> 2525 Ponce de Leon Boulevard, 9th Floor
> Coral Gables, Florida 33134
> Tel:   (305) 372-1800
> Fax:   (305) 372-3508
>
> By:  /s/ *David L. Rosendorf*
> David L. Rosendorf
> dlr@kttlaw.com
> Florida Bar No. 996823

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the clerk of the Court using CM/ECF, and the foregoing document has been served via CM/ECF upon all counsel of record this 30th day of July, 2024.

> By:  /s/ *David L. Rosendorf*
> David L. Rosendorf