UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 23-cv-24903-JB

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.

RISHI KAPOOR, *et al.*,

        Defendants.
_____/

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
OPPOSITION TO NON-PARTY DANIEL J. MOTHA'S
<u>MOTION TO QUASH SUBPOENA</u>**

Plaintiff Securities and Exchange Commission (the "Commission") responds in opposition (the "Opposition") to the Motion to Quash Subpoena (ECF No. 191 ("Motion to Quash" or "Motion")), filed by Non-Party Daniel J. Motha ("Motha"), and states:

**I. <u>INTRODUCTION</u>**

Displaying a remarkable lack of candor with the Court, Motha moves to quash the Commission's subpoena for documents, implying he has "no relevance to the claims" in the Commission's Complaint and was not "involved in or witness to" the real estate investment scheme that his former company, Defendant Location Ventures, LLC ("Location Ventures" or "LV"), and business partner, Defendant Rishi Kapoor ("Kapoor"), perpetrated on more than 50 investors. See Mot. at p. 1. Not only is Motha the *primary* witness in this case but he personally benefitted from the scheme by approximately $1 million.

While Kapoor is credited for founding Location Ventures, Motha and Kapoor started the company together. Motha was LV's Chief Financial Officer with signing authority over the

company's bank accounts, was responsible for maintaining LV's book and records, and was one of only two employees (Kapoor being the other) authorized to transfer funds to/from LV's accounts. Motha was also President of LV's Multifamily Division and a member LV's board of directors. And while he is not named in this pending action, Motha's role in the scheme is referenced in the Complaint in connection with Kapoor's principal misrepresentation to investors that Patriots United, LLC—a company owned by Motha, Kapoor, and two of Kapoor's family members—contributed $13 million in cash to LV. See Compl., ¶ 51. Importantly, Motha owns a 45.05% membership interest in Patriots United and presumably was responsible for funding nearly half of the purported $13 million cash contribution. As alleged in the Complaint, Patriots United (now a Receivership entity) never contributed any cash to LV. *Id.* at ¶ 52.

While not identified by name in the Complaint,[1] Motha is explicitly named in a declaration by the Commission's forensic accountant, Kapila Mukamal ("KM") (ECF No. 6-10 (the "Declaration" or "Dec.")), filed in support of the Commission's Emergency *Ex Parte* Motion for Asset Freeze and Other Relief Against Defendant Rishi Kapoor (ECF No. 6) and in support of the Commission's Expedited Motion for Appointment of Receiver, Asset Freeze, and Other Relief Against the Company Defendants (ECF No. 16). In a section entitled "Kapoor and Motha Received Over $7.8 million from LV," KM details how Location Ventures and its related entities made approximately $1 million in unsupported transfers to Motha. See Dec., ¶ 101.

The Commission has been attempting to obtain documents from Motha since July 2023 when it issued its first subpoena to Motha pursuant to a formal order of investigation entered by the Commission. In an apparent attempt to withhold evidence and delay the Commission's

---

[1] The Commission referred to Motha in the Complaint as Kapoor's business partner. As a general practice, the Commission does not identify non-parties by name in its complaints to the extent possible.

investigation, Motha slow-walked three rolling productions, producing only 20 documents over a 10-month period. After the Commission served an identical subpoena for documents in this case pursuant to Rule 45 of the Federal Rules of Civil Procedure, Motha for the first time asserted the Fifth Amendment's Act of Production privilege. For the five weeks following Motha's claim of privilege, the parties engaged in a comprehensive meet-and-confer process through which the Commission agreed to reduce its document requests from 21 to just two requests with subparts (Request No. 1 seeks communications with 15 individuals), eliminating aspects of the requests that arguably would implicate the Fifth Amendment privilege. No longer able to object based on the Act of Production privilege, Motha changed tactics, complaining of the breadth and scope of the two requests—understanding that adding any parameters narrowing the scope of the requests, such as subject-matter limitations, would once again trigger the Act of Production privilege and allow Motha to avoid the subpoena altogether. In response, the Commission attempted to reduce the burden on Motha even further by reducing its request for communications with 15 individuals to just 10 of the most relevant former LV employees and investors. Demonstrating he never intended to produce documents, Motha moved to quash the Amended Subpoena.

      As discussed below, the two remaining requests strike the right balance. They do not call for the production of privileged information protected by the Fifth Amendment and do not impose undue burden or expense on Motha, who is a potential defendant and central witness to the Commission's case. The Motion to Quash should be denied.

## II. BACKGROUND

### A. The Subpoenas & Partial Production

Pursuant to a formal order of investigation entered by the Commission, the staff served Motha with a subpoena for documents on June 28, 2023 (the "Investigative Subpoena"), a copy of which is attached as **Exhibit A**. The Investigative Subpoena was part of the Commission's investigation of LV and relevant individuals. Pursuant to the Investigative Subpoena, Motha was required to produce responsive documents on or before July 13, 2023.

In response to the Investigative Subpoena, Motha proposed that he be allowed to produce documents on a rolling basis, to which the staff consented. On July 28, 2023, Motha made his first of three rolling productions, producing just five documents. Seven months later, on February 14, 2024, Motha made a second rolling production, producing an additional 14 documents. And on March 28, 2024, Motha made his third rolling production, producing only one additional document, for a total of 20 document over the 10-month period. As part of his rolling production, Motha produced text messages between Motha and several of LV's employees and key investors. Motha's counsel has represented to the Commission that not all responsive text messages have been produced.

On May 2, 2024, the Commission served Motha with a subpoena for documents in this case pursuant to Rule 45 of the Federal Rules of Civil Procedure (the "Subpoena"), a copy of which is attached as **Exhibit B**. The documents requested in the Subpoena are identical to the documents requested in the Investigatory Subpoena. This limited any additional burden on Motha, who may have already collected documents, drafted and ran search terms, and took other steps necessary to comply with the Investigatory Subpoena. Documents responsive to the Subpoena may not only provide evidence in support of the Commission's claims against Kapoor and the Company

Defendants[2] but also in support of any potential claims against Motha for his role in the scheme.

The day after being served with the Subpoena, Motha responded with a letter invoking the Fifth Amendment's Act of Production privilege (the "Letter"), a copy of which is attached as **Exhibit C**. In the Letter, Motha cited *SEC v. Charnas*, No. 23-MC-22764, 2024 WL 639740 (S.D. Fla. Feb. 15, 2024) and claimed "[t]his week, [Motha] learned for the first time that there is an open federal criminal investigation" involving him despite widespread reporting of the FBI's investigation of his company in the Miami Herald and other news organizations as early as July 2023.

### B. Meet & Confer Efforts

As part of a comprehensive meet-and-confer process, the Commission amended the Subpoena, substantially reducing the number of requests from 21 to just two requests with subparts (the "Amended Subpoena"), as reflected in *Figure 1*. In drafting the Amended Subpoena, the Commission relied on *Sallah v. Worldwide Clearing LLC*, 855 F. Supp. 2d 1364 (S.D. Fla. 2012) to tailor the requests to "objectively determinable universes of documents" that did not require Motha to employ the "contents of his mind" by choosing what documents might be responsive to the request. *See Sallah*, 855 F. Supp. 2d at 1373-74. Indeed, the amended requests are nearly identical in form to the requests in *Sallah*, which the court in that case held did not run afoul of the Fifth Amendment's Act of Production privilege. *Id*.

---

[2] The Company Defendants include Location Ventures, URBIN, LLC ("URBIN"), Patriots United, Location Properties, LLC; Location Development, LLC; Location Capital, LLC; Location Ventures Resources, LLC; Location Equity Holdings, LLC; Location GP Sponsor, LLC; 515 Valencia Sponsor, LLC; LV Montana Sponsor, LLC; URBIN Founders Group, LLC; URBIN CG Sponsor, LLC); 515 Valencia Partners, LLC; LV Montana Phase I, LLC; Stewart Grove 1, LLC; Stewart Grove 2, LLC; Location Zamora Parent, LLC; URBIN Coral Gables Partners, LLC; URBIN Coconut Grove Partners, LLC; URBIN Miami Beach Partners, LLC; and URBIN Miami Beach II Phase 1, LLC.

*Figure 1 – Excerpt from the Amended Subpoena*

**Documents to be Produced**

1. All communications with:

    a. Rishi Kapoor;
    b. Vivian Bonet;
    c. Claudia Mezerhane;
    d. Joanna Davila;
    e. Raymond Gonzalez;
    f. Angel Garcia;
    g. Frank Astor;
    h. Jorge Chirinos;
    i. Nizar Alawamleh;
    j. Marguerite Cook;
    k. Gregg Brooks;
    l. Jon Drujak;
    m. Alan Fine;
    n. Alex Kleyner; and
    o. Diana Ulis.

2. Your federal and state income tax returns for tax years 2016 through 2023.

Despite the drastic reduction in the number of requests, Motha claimed that the Amended Subpoena was now overbroad and unduly burdensome because the requests did not include limitations based on date range, subject matter, or the types of communications. Having relied on *Charnas* to object to the original Subpoena based on the Fifth Amendment's Act of Production privilege, Motha's counsel understood that the very limitations he claimed were necessary to reduce the burden to his client would once again allow him to object based on the Fifth Amendment's Act of Production privilege. In yet another attempt to reach a resolution, the Commission agreed to further amend the Amended Subpoena to reduce the number of subparts in Request No. 1 from 15 to 10, as reflected in *Figure 2*. Moreover, the Commission told Motha if he agreed to produce documents in response to the now twice amended subpoena, it would allow him to exclude e-mails sent to and from Motha's Location Ventures e-mail address.

*Figure 2 – Amendments to the Amended Subpoena*

The Commission will agree to further amend its June 10, 2024 amended subpoena as follow:

All communications with:

    a. Rishi Kapoor;
    b. Vivian Bonet;
    c. Claudia Mezerhane;
    d. Angel Garcia;
    e. Jorge Chirinos;
    f. Marguerite Cook;
    g. Gregg Brooks;
    h. Alan Fine;
    i. Alex Kleyner; and
    j. Diana Ulis.

Your federal and state income tax returns for tax years 2016 through 2023.

In response, Motha's counsel continued to object to the scope and relevancy of the requests, claiming the Commission was on a "fishing expedition" despite Motha's role at Location Ventures and proximity to the scheme. On July 10, 2024, after the Commission engaged in weeks of meet-and-confer efforts and twice amended its Subpoena, Motha filed the Motion to Quash, which the Commission now opposes.

### III. LEGAL STANDARD

The Court must quash or modify a subpoena that:

(i)    fails to allow a reasonable time to comply;
(ii)   requires a person to comply beyond the geographical limits …;
(iii)  requires disclosure of privileged or other protected matter …; or
(iv)  subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3). "At the outset it is important to note that the scope of discovery is broad 'in order to provide parties with information essential to the proper litigation of all relevant facts, to eliminate surprise and to promote settlement.'" *SEC v. Rex Venture Group, LLC*, 5:13-MC-004-WTH-PRL, 2013 WL 1278088, at *3–4 (M.D. Fla. Mar. 28, 2013) (quoting *Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 685 (M.D. Ala.1998)). The Federal Rules of Civil Procedure "strongly favor

7

full discovery whenever possible." *Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). Federal Rule of Civil Procedure 26(b)(1) allows parties to "obtain discovery regarding any nonpriviledged matter that is relevant to any party's claim or defense." Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). A discovery request "should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Roesberg v. Johns–Manville Corp.*, 85 F.R.D. 292, 296 (E.D. Pa.1980); *see also Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556 (7th Cir. 1984).

## IV.   ARGUMENT

### A.   The First Request Does Not Subject Motha to an Undue Burden

Request No. 1 seeks all communications between Motha and seven key, former LV employees, two of LV's largest investors, and LV's former liquidation manager, retired Judge Alan Fine. See **Figure 1** on p. 6.  Motha has moved to quash Request No. 1 as unduly burdensome. See Mot., pp. 5-6.

As a preliminary matter, the Motion to Quash may be denied without further consideration because Motha's assertion of undue burden is not supported by affidavits or evidence.  *See, e.g., Sallah*, 855 F. Supp. 2d at 1376 (explaining that claims of undue burden should be supported by a statement or affidavit with specific information showing the request is overly burdensome); *Coker*, 177 F.R.D. at 686 (noting that a party objecting to discovery on the basis of undue burden or overbreadth must generally support the assertion with affidavits or other evidence); *Border Collie Rescue, Inc. v. Ryan*, Case No. 304-CV-568J32HTS, 2005 WL 662724 at *2 (M.D. Fla. 2005) (providing that the resisting party must demonstrate that the burden is "unreasonable in light of

8

the benefits to be secured from the discovery.") (citing *Hammond v. Lowes Home Ctrs., Inc.*, 216 F.R.D. 666, 672 (D. Kan. 2003) ("The objecting party must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, [the] question is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.")). Instead, Motha argues that Request No. 1 "on its face" subjects Motha to an undue burden. See Mot., p. 5. His argument is both incorrect and insufficient as a matter of law.

First, the Commission is not seeking communications to/from Motha's work e-mail address, dmotha@location.ventures, where the vast majority of communications reside. It is unlikely that Motha regularly communicated with investors and other LV department heads and employees using his personal e-mail address. While downplayed in his Motion to Quash, this limitation likely drastically reduces the number of documents Motha would need to review and produce. In fact, Motha may have zero communications outside of his work e-mail with several of the parties included in Request No. 1.

Second, Motha claims the Commission cannot set forth a need for the communications requested. *Id*. at p. 6. As an example, Motha cites to the Commission's request for all communications between Motha and the "Receiver Alan Fine" to argue that the requested communications are already in the Receiver's possession and, therefore, equally available to the Commission. *Id*. ("The Receiver, as an example, has access to all the work emails of Location Ventures."). But Retired Judge Alan Fine is **not** the Receiver in this case; the Court appointed Bernice Lee. See January 12, 2024 Order appointing Bernice Lee as Receiver (ECF No. 28). As alleged in the Complaint, Judge Fine replaced Kapoor as the manager of LV by a resolution supported by a majority of LV's members, with instructions to wind down and sell substantially all the assets of LV and its projects. See Compl., ¶ 85. Furthermore, Judge Fine was LV's manager

9

from approximately August 2023 until the Court appointed Bernice Lee as Receiver over the Company Defendants on January 12, 2024. Requiring Motha to produce his communications with Judge Fine during this brief six-month period—to the extent they communicated outside of Motha's work e-mail—is not unduly burdensome.

Motha also argues that the Commission is required to first seek communications with Kapoor directly from Kapoor, who is a party to this action. Mot., p. 6.  But the Commission has learned that Kapoor regularly deleted e-mails. And even if the requested information was available from another source, this is not a basis to quash pursuant to Rule 45(d)(3). See Fed. R. Civ. P. 45(d)(3); *see also SEC v. Creative Cap. Consortium, LLC*, No. 08-CIV-81565, 2009 WL 10664429, at *3 (May 20, 2009) ("… even if the requested information is available from another source, such reason is not listed as a basis for entering a protective over under Rule 26(c)."). Finally, this argument does not apply to the nine remaining individuals included in Request No. 1 who are not parties to this action and, therefore, cannot provide a basis to quash the subpoena *in toto*.

Third, Motha claims that the period for the request (from January 1, 2016, to the filing of the Complaint), without any subject-matter limitations, is overly broad on its face.[3] *Id*. This, too, is incorrect when applying Request No. 1 to the specific facts in this case. As already discussed, the Commission is not seeking communications to/from Motha's work e-mail address, effectively eliminating any argument regarding undue burden. Also, LV did not hire many of the employees included in Request No. 1 until 2020 or later. And investors Alex Kleyner and Diana Ulis did not begin investing in LV and its projects until 2021. Therefore, Motha communicated with the

---

[3] Motha and Kapoor formed LV in 2016. Communications regarding their initial investment into LV and its projects is relevant in light of the allegations that they misrepresented to investors that they contributed $13 million to LV

10

majority of the individuals included in Request No. 1 for only a three-to-four-year period.

As for Motha's argument regarding subject-matter limitations, the Commission included subject-matter limitations in both its Investigative Subpoena and the Subpoena issued in this case. It was precisely for this reason that Motha invoked the Fifth Amendment's Act of Production privilege. Motha cannot have it both ways. While the Commission did remove the subject-matter limitations from its requests to avoid the Act of Production privilege, it also severely reduced the number of requests and narrowed their scope to avoid any unnecessary burden to Motha. The Commission, however, stands ready to reintroduce subject-matter limitations if Motha will agree to produce documents. Finally, Motha already collected and began producing text messages in response to the Investigatory Subpoena. Completing a process he already began will not cause an undue burden or expense.

### B. **Motha's Tax Returns are Relevant and Necessary**

Request No. 2 seeks Motha's federal and state income tax returns for tax years 2016 through 2023. Motha has moved to quash Request No 2 because he claims his tax returns are irrelevant and may be obtained from some other unidentified source. See Mot. 6-7. Incredibly, Motha states: "Motha is not named in the Complaint as a party or even a relevant witness. The SEC has provided no justification for seeking Motha's personal tax returns. **Nor can it**." (emphasis added).

The Motion to Quash as to Request No. 2 also can be denied without further consideration because neither relevancy nor necessity is a basis to quash pursuant to Rule 45(d)(3). See Fed. R. Civ. P. 45(d)(3); *see also Creative Capital Consortium,* No. 08-CIV-81565, 2009 WL 10664429, at *3. Even if relevancy and necessity were legitimate bases to quash the subpoena (they are not), Motha's tax returns are clearly relevant to the subject matter of this action. As alleged in the

Complaint, and as supported by KM's Declaration, Kapoor and Motha collectively received $5.6 million in payments not supported by the Company Defendants' respective operating agreements. See Declaration, pp. 34-36. Of the $5.6 million, Motha received approximately $1 million. *Id*. ¶ 101. This excess compensation appears to be in connection with, among other things, distributions from the sale of certain projects that should have been paid to LV and URBIN, as well as so-called acquisitions fees and loan guarantee fees that also should have been paid to LV and URBIN. Understanding how Motha treated this income in his tax returns not only is relevant to this case but evidence of Motha's possible participation in the scheme.

Motha cites three cases in support of his argument. At the outset, it should be noted that **none** of these cases involves a motion to quash pursuant to Rule 45(d)(3). Additionally, they actually support the Commission's position or are distinguishable. For instance, in *Dunkin Donuts Inc. v. Mary's Donuts, Inc.*, No. 01-0392-CIV-GOLD, 2001 WL 34079301 (S.D. Fla. Nov. 1, 2001), a franchisor moved to compel the production of a franchisee's tax returns. The central issue in this case was "whether or not the [d]efendants' franchises … generated additional, unreported sums of money, and, if they did, what happened to these sums." *Id*. at *2. In granting the franchisor's motion to compel, the court held:

> In the present case, **the tax returns and tax-related information are clearly relevant to the subject matter of the action**, as discussed above, and the Court finds that a compelling need has been shown because the information contained in such documents is not readily available from other sources, and **will presumably provide a benchmark for any income that the Defendants have received during the relevant time period**.

*Id*. (emphasis added). As in *Dunkin Donuts*, the information contained in Motha's tax returns is not readily available from other sources and will provide a benchmark for any income Motha received from the Company Defendants.

Next, Motha cites to *Hayden v. Urvan*, No. 21-CV-82051, 2022 WL 3024818, at *6 (S.D.

12

Fla. July 27, 2022). *Hayden* involved claims for violations of Florida's state securities laws, including Section 517.301 of the Florida Statutes for fraudulent transactions, which is similar in many respects to the anti-fraud provisions of the federal securities laws. In a parenthetical, Motha represents to this Court that the court in *Hayden* "denied the disclosure of tax returns where it did not find them 'relevant and proportional to the needs of this case.'" See Mot., p. 7. But the court in *Hayden* did **not** deny the disclosure of the party's tax returns but, in fact, ordered their production:

> However **as to the state and federal income tax returns** filed by Brew First for the years 2018 and 2019, including all accompanying schedules, and any attachments to returns, **the Court does find that they are relevant and proportional to the needs of this case**.

*Id*. (emphasis added) (internal citations omitted). As *Hayden* involved allegations of securities fraud similar to this case, its holding only further supports the Commission's position that Motha's tax returns are relevant and proportional to the needs of this case.

Finally, Motha cites to *Roseman v. Sports and Recreation*, 165 F.R.D. 108, 112-13 (M.D. Fla. 1996). In *Roseman*, the defendant in a class action was seeking the plaintiffs' tax returns, claiming they were relevant in connection with class certification and to the merits of the case, specifically, plaintiffs' motivation in purchasing certain stock. *Id*. The court disagreed, holding that the plaintiffs' ability to pay the cost of litigation was irrelevant to their ability to represent the putative class. *Id*. The court also held that the defendants did not establish a need for the financial documents, as other documents produced through discovery contained the same or similar information. *Id*.

*Roseman* is easily distinguishable from this case. The Commission is not seeking Motha's tax returns in connection with class certification—this case is not a putative class action. And the Commission is unable to obtain the same or similar information contained in Motha's tax returns

from other sources.

### C. Motha's Request for an Award of Attorneys' Fees Should be Denied

The Commission not only took "reasonable steps to avoid imposing an undue burden or expense" on Motha as required under Rule 45(d)(1), but took extraordinary steps, including: engaging in multiple meet-and-confer conferences to avoid court intervention; reducing the number of requests from 21 to just two requests with subparts; further reducing Request No. 1's subparts from 15 to 10; and excluding any requirement to produce Motha's work e-mails, which dramatically reduced any potential burden to Motha. And the Commission continues to be willing to further narrow the two remaining requests by adding subject-matter limitations to the extent Motha agrees to produce documents. Motha's request for an award of attorneys' fees is entirely inappropriate under the circumstances and should be denied.

### V. CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court enter an Order denying Motha's Motion to Quash.

Dated:  August 5, 2024           Respectfully submitted,

By: /s/*Russell R. O'Brien*
    Russell R. O'Brien, Esq.
    Trial Counsel
    Fla. Bar No.  084542
    Direct Dial: (305) 982-6341
    Email:  obrienru@sec.gov

**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, FL 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154
**Attorney for Plaintiff Securities and Exchange Commission**