UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-24903-JB

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.

RISHI KAPOOR, et al.,

    Defendants.
_____/

## NON-PARTY DANIEL J. MOTHA'S REPLY IN SUPPORT OF MOTION QUASH SUBPOENA

Non-Party Daniel J. Motha ("Motha"), through counsel, submits this Reply in support of his Motion to Quash the Non-Party Subpoena (ECF No. 191 ("Motion").

## I. INTRODUCTION

With a host of irrelevant, unsupported, and untrue statements set forth only to distract and mislead this Court,[1] Plaintiff Securities and Exchange Commission's (the "SEC") opposition (ECF No. 197 ("Opposition" or "Opp.")) effectively concedes the fundamental facts that warrant granting Non-Party Motha's motion to quash the overly broad subpoena issued by the SEC.

*First*, despite the SEC's attempts to conflate him with Defendant Kapoor, Motha is not a party to this action. *Second*, the SEC has not sought the requested information from actual parties to this case, such as Kapoor and Location Ventures. *Third*, Motha validly exercised his Fifth Amendment rights in response to the SEC's first overbroad subpoena.[2] *Fourth*, in an attempt to circumvent those rights, the SEC served Motha with a second, wildly overbroad subpoena—requesting *every* communication about *everything* with no temporal or subject matter limitations

---

[1] Motha will not waste this Court's time by addressing the entirety of the SEC's unsupported accusations about the history and scope of this case or the various subpoenas that have been issued in the past. But it must be made clear that the SEC's version of events, much of which lacks citations to anything in the record, cannot be credited. As just one example, the SEC accuses Motha of "[d]isplaying a remarkable lack of candor with the Court" by "implying he has 'no relevance to the claims' in the Commission's Complaint and was not 'involved in or witness to' the real estate investment scheme" that Defendants purportedly "perpetrated on more than 50 investors." Opp. at 1. But this was not Motha's argument. Rather, Motha stated in his opening brief (and reiterates now) that the SEC did not allege *in the Complaint* that Motha was involved in the purported scheme underlying the current claims against Defendants. *See* Motion at 1 ("The **Complaint** does not even allege that Motha was involved in or witness to Defendants' purported scheme. Indeed, the **Complaint** itself makes no reference to Motha that would establish his relevance to the claims at issue in this matter."). Motha is, of course, correct about this argument.

[2] On May 3, 2024, the defense sent the SEC a letter explaining, in great detail, why the SEC's subpoena was improper and violated Mr. Motha's Fifth Amendment rights. *See* Dkt. 197-3. The SEC, thereafter, did not move to compel the production of documents, conceding that Motha's exercise of his Fifth Amendment rights was proper. Instead, Motha was served with an amended subpoena. Accordingly, any argument (or implication) to the contrary by the SEC has been waived.

1

from more than a dozen counterparties. *Fifth*, and most importantly, recognizing the impropriety of the subpoena, the SEC conditionally agreed to narrow the subpoena *but only* if Non-Party Motha agreed to produce the documents the SEC wanted. However, this *quid pro quo* narrowing effectively put Non-Party Motha back in the same position that he was before—forced to choose between complying with the SEC's subpoena or waiving his Fifth Amendment rights. But Motha has a constitutional right to protect himself from self-incrimination, and the SEC cannot circumvent this right by serving an overly broad, improper subpoena and then offering to narrow it, but only if Motha agrees to comply.

For the reasons set forth herein and in the Motion, the subpoena is clearly overly broad and unduly burdensome. This Motion must be granted, and attorneys' fees must be awarded.

**II.   ARGUMENT**

    A.   Request 1 is Unduly Burdensome and Must be Quashed.

Request 1, which seeks "[a]ll communications" with ten individuals without a time[3] or subject matter limitation is unduly burdensome. As a threshold matter, the SEC argues that the "Motion to Quash may be denied without further consideration because Motha's assertion of undue burden is not supported by affidavits or evidence." Opp. at 8. In support of this incorrect assertion, the SEC relies on three cases related to *party* discovery. *Id.* But Motha is *not* a party, and cases pertaining to *party* discovery are inapposite and unpersuasive. Moreover, as noted, Motha validly exercised his Fifth Amendment rights, making any affidavit or declaration in support of this motion improper and unneeded.

---

[3] As set forth in the Motion, the SEC conditionally agreed to limit Request 1 to communications sent and received between January 1, 2016 through December 23, 2023, *only if* Motha agreed to produce all other requested documents. *See* Motion at 3. Because Motha brought the instant Motion, the subpoena as it now stands before the Court is not limited by time.

Instead, to determine whether the subpoena imposes an undue burden on Motha, the Court must consider:

> (1) [the] relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party.

*TIC Park Ctr. 9, LLC v. Cabot*, No. 16-24569-CIV, 2017 WL 9988745, at *2 (S.D. Fla. June 9, 2017); *see also* Motion at 5. The SEC fails to present any argument or evidence that would tip the balance of these factors toward production.

*First*, the SEC has not explained how *every* communication, without a time or subject matter limitation between Motha and ten individuals is relevant to *this* matter. Nor could it.

*Second*, the SEC argues that Request 1 is not unduly burdensome because it is "not seeking communications to/from Motha's work e-mail address, dmotha@location.ventures, where the vast majority of communications reside." Opp. at 9. But the subpoena *does* seek these communications. The SEC only conditionally offered to exclude work emails "to the extent [Motha] agree[d] to produce documents[.]" *See* Motion, Ex. C at 1. Obviously, Motha has not agreed to produce documents and, thus, the subpoena was not modified to exclude his work emails.[4]

*Third*, the SEC attempts to respond to Motha's claim that the SEC "cannot set forth a need for the communications requested" by making light of Motha's erroneous reference to Alan Fine as the court-appointed Receiver. Opp. at 9-10. Fine, a former judge, became the Company's

---

[4] Motha notes that the Receiver is in possession of the work emails and has incurred fees of more than $1 million thus far in this Receivership. *See* Dkt. 196 at 12. Clearly, the Receiver, who is being well-compensated for her work, can sift through the work emails and produce relevant emails to the SEC. By contrast, Motha has received no money to pay for legal fees from Location Ventures, even though he was entitled to indemnification under the company's bylaws. This fact too weighs in favor of finding an "undue burden" meriting the quashing of the limitless subpoena.

3

"manager" (effectively acting in a Receiver-type capacity) *after* Kapoor was ousted from the Company. Not only does this inadvertent error demonstrate how little Motha has to do with this case, but it also does nothing to show the SEC's purported need for every communication between *Motha and ten individuals* without time or subject matter limitation.

At best, the SEC appears to argue that it needs the requested communications because the "Commission has learned that Defendant Kapoor regularly deleted e-mails." Opp. at 10. But the SEC provides no evidentiary support for this accusation, nor does it say what types of emails Kapoor "regularly" deleted or whether Kapoor deleted emails between himself and Motha. Instead, recognizing the specious nature of this argument, the SEC contends that "even if the requested information was available from another source, this is not a basis to quash pursuant to Rule 45(d)(3)." Opp. at 10. Critically, however, the SEC's failure to limit Request 1 by subject matter or time makes it impossible to know *what* information the SEC seeks to discover and *why*, if at all, that information is relevant to or necessary for *this case*—a failure that clearly weighs in favor of quashing the subpoena to Motha (a non-party) on the basis of undue burden.

*Fourth*, the SEC argues that "the period for the request (from January 1, 2016, to the filing of the Complaint), without any subject-matter limitations, is [not] overly broad on its face"[5] because "Motha and Kapoor formed LV in 2016" and "[c]ommunications regarding their initial investment into LV [Location Ventures] and its projects is relevant in light of the allegations that they misrepresented to investors that they contributed $13 million to LV[.]" Opp. at 10 n.3. But Motha did *not* "form LV" with Kapoor in 2016 or at any other time. Kapoor formed LV. *See* Exhibit A. Moreover, the Complaint clearly states that it was *Kapoor* (not Motha) who made

---

[5] Again, the subpoena before the Court does *not* have a time limitation. For the sake of argument, Motha's analysis of the time limitation relates to the 8-year period *conditionally* offered by the SEC.

4

misrepresentations to investors. *See* Dkt 14-1 at ¶51 ("To induce prospective investors to invest, **Kapoor represented that he made an initial $13 million cash investment in LV**…"). And, in any event, Request 1 is *not* limited to communications regarding Motha's and Kapoor's initial investments into LV and its projects. Rather, Request 1 requests all communications (email, text, handwritten, voicemails, and the like) between *Motha and 10 individuals* from the time of Motha's birth to the present. Thus, Request 1's plain overbreadth cannot be cured by viewing the (conditional) time limitation through the lens of a non-existent subject matter limitation.

Similarly, the SEC's contention that "Motha communicated with the majority of the individuals in Request No. 1 for only a three-to-four-year period" fails to cure the overly broad (conditional) time limitation. Opp. at 10-11. The SEC does not explain why Motha should be subjected to the expense of searching for, collecting, reviewing, and producing every communication between Motha and ten individuals beginning in 2016 if, as the SEC concedes, "LV did not hire many of the employees included in Request No. 1 until 2020 or later. And investors Alex Kleyner and Diana Ulis did not begin investing in LV and its projects until 2021." Opp. at 10. Given this context, the SEC's (modified) request for documents beginning in 2016 remains a fishing expedition intended as an end-run around Motha's Fifth Amendment rights.

*Fifth*, and most critically, the SEC appears to respond to Motha's "argument regarding subject-matter limitation" by wholly disregarding the case law that instructs courts to quash subpoenas that fail to describe the documents sought with particularity. *See* Motion at 5. Instead, the SEC contends that it can demand a response to Request 1, despite the lack of time or subject matter limitation, because the SEC cannot issue a particularized version of Request 1 without implicating Motha's "Act of Production privilege[.]" Opp. at 11. The SEC goes as far as to suggest that it "stands ready to reintroduce subject-matter limitations if Motha will agree to produce

5

documents." *Id.* But that the SEC cannot issue a particularized subpoena without implicating the Fifth Amendment is precisely our point. Non-Party Motha is *not* required to choose between *either* waiving his Fifth Amendment rights *or* responding to an overly burdensome subpoena that is not limited by time or subject matter. Unsurprisingly, the SEC does not cite a single case where a government agency has been permitted to compel a response to an overbroad subpoena simply because the non-party validly exercised his/her Fifth Amendment rights. Nor would such a case exist because the SEC's demands—a forced waiver of the Fifth Amendment—are plainly unconstitutional and have been for decades. *Cf. Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (waiver of Fifth Amendment rights must be made "voluntarily, knowingly and intelligently").

Put another way, if the SEC cannot issue a valid (non-overbroad) subpoena without implicating Motha's Fifth Amendment Act of Production privilege, then the SEC cannot compel responses from Motha *at all* without running afoul of the Constitution.

   B. <u>Request 2 Must Be Quashed Because Motha's Personal Tax Returns are Neither Relevant Nor Necessary To *SEC v. Kapoor*.</u>

The SEC contends that the Motion should be denied as to Request 2 because Non-Party Motha's federal and state income tax returns for tax years 2016 through 2023 are relevant and necessary to the instant case. Opp. at 11-13. The SEC is wrong for three reasons, amongst others.

*First*, the SEC argues that the Motion can be denied as to Request 2 "without further consideration because neither relevancy nor necessity is a basis to quash pursuant to Rule 45(d)(3)." Opp. at 11. The SEC is wrong. Relevance and necessity are both factors to be considered when assessing the validity of a subpoena served on a non-party such as Motha. *See Liles v. Stuart Weitzman, LLC*, No. 09-61448-CIV-COHN, 2010 WL 1839229, at *2 (S.D. Fla. May 6, 2010) ("The scope of discovery under a Rule 45 subpoena to non-parties is the same as that permitted under Rule 26.") (citing *Ireh v. Nassau Univ. Med. Ctr.*, No. CV–06–09 (LDW)(AKT), 2008 WL

4283344, at *5 (E.D.N.Y. Sept. 17, 2008) ("Any subpoena that is issued to non-parties pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement.")); *see also* Motion at 4.

*Second*, the SEC contends Motha's tax returns are relevant because:

> As alleged in the Complaint, and as supported by KM's Declaration, Kapoor and Motha collectively received $5.6 million in payments not supported by the Company Defendants' respective operating agreements. *See* Declaration, pp. 34-36. Of the $5.6 million, Motha received approximately $1 million. *Id.* ¶ 101. This excess compensation appears to be in connection with, among other things, distributions from the sale of certain projects that should have been paid to LV and URBIN, as well as so-called acquisitions fees and loan guarantee fees that also should have been paid to LV and URBIN. Understanding how Motha treated this income in his tax returns not only is relevant to this case but evidence of Motha's possible participation in the scheme.

Opp. at 11-12. But the foregoing allegations are not contained within the four corners of the Complaint. *See id.* at 11-12 (citing only KM's Declaration, and not the Complaint). Instead, the allegations are purportedly contained within KM's Declaration, which is sealed and thus unavailable to Motha as a non-party. Accordingly, references to the unavailable declaration prejudice Motha and, therefore, should be stricken. *See Schmidt v. Life Ins. Co. of N. Am.*, 289 F.R.D. 357, 358 (M.D. Fla. 2012) (matter may be stricken where it will "prejudice a party.")).

Moreover, even if true, the SEC does not explain how *Motha's* treatment of purported income is relevant to *existing* claims against *existing* defendants in this case. Instead, the SEC unabashedly admits that their true (and improper) motive for Request 2 is "uncovering evidence of Motha's possible participation in the scheme." Opp. at 12. But the SEC cannot use the subpoena as a fishing expedition for *new* claims against Motha (a non-party). *See e.g.*, *Lazarre v JP Morgan Chase Bank, N.A.*, 780 F. Supp. 2d 1320, 1329 n. 16 (S.D. Fla. 2011) (discovery is "not intended to allow a party to go on a fishing expedition to seek if speculation has any basis in fact" (internal citation omitted)); *Cuomo v. Clearing House Ass'n, LLC.*, 129 S. Ct. 2710 (2009) ("judges are trusted to prevent 'fishing expedition' or an undirected rummaging through books and records for

7

evidence of some unknown wrongdoing.").

*Third*, the SEC attempts to distinguish the cases relied on by Motha, but in doing so, the SEC only proves that Request 2 must be quashed. For example, the SEC argues that *Dunkin Donuts Inc. v. Mary's Donuts, Inc.*, No. 01-0392-CIV-GOLD, 2001 WL 34079301 (S.D. Fla. Nov. 1, 2001) supports denial of the Motion because, in that case, the information was not readily available from other sources and the tax returns would "presumably provide a benchmark for any income that the Defendants have received during the relevant time period." Opp. at 12. The SEC then contends that "the information contained in Motha's tax returns is not readily available from other sources and will provide a benchmark for any income Motha received from the Company Defendants." *Id.* But in *Dunkin*, the tax returns were relevant because they reflected the income the *defendant-franchisee* received, which was at issue in the case. Here, Motha's tax returns will only reflect income *he received* as a non-party. Because the purported "excess compensation" at issue in this case is *only* that compensation received by Kapoor—evidence of which can be obtained from Kapoor—Motha's tax returns, which will not reflect Kapoor's income, cannot possibly contain relevant or necessary information.

Next, the SEC asks the Court to disregard *Hayden v. Urvan*, No. 21-CV-82051, 2022 WL 3024818, at *6 (S.D. Fla. July 27, 2022) because, there, the Court found the tax returns relevant and proportional to the needs of the case. Opp. at 12-13. But, while the *Hayden* Court did require production of the third-party defendant's state and federal income taxes *without any attachments or worksheets*[6], the Court only did so after noting that the requesting-defendant "has advanced

---

[6] The Court explicitly held that "to the extent [requesting-defendant] seeks all worksheets used in preparing the 2018 and 2019 tax returns, or requests for any tax extensions, the Court finds that a request for those documents is not proportional to the needs of this case. Thus, [the third-party defendant's] need not produce the worksheets or requests for any tax extensions." *Hayden*, 2022 WL 3024818, at *6.

8

allegations concerning [the third-party defendant's] financials and seeks sworn financial information that may bear upon such." *Id.* Here, however, unlike in *Hayden*, Motha is not a third-party defendant and there are no claims concerning his financials. Thus, the reason the Court found partial relevance and necessity in *Hayden* simply does not exist here.

Lastly, the SEC contends that *Roseman v. Sports and Recreation*, 165 F.R.D. 108, 112-13 (M.D. Fla. 1996) is not instructive because the SEC "is not seeking Motha's tax returns in connection with class certification" and the SEC "is unable to obtain the same or similar information contained in Motha's tax returns from other sources." Opp. at 13. But again, the SEC misses the point. The SEC simply has not (and cannot) point to a single reason why information on Motha's tax returns is relevant to the claims *currently framed by the Complaint*. Request 2 cannot be used to uncover evidence *against Motha* that the SEC cannot otherwise obtain through a particularized subpoena due to Motha's Act of Production privilege.

Accordingly, Request 2 must be quashed because Motha's personal federal and state income taxes for the years 2016 through 2023 are not relevant or necessary to the instant case.

C.   <u>Non-Party Motha is Entitled to an Award of Attorneys' Fees</u>

The SEC argues that Motha is not entitled to an award of attorneys' fees under Rule 45(d)(1) because the SEC "took extraordinary steps," including engaging in multiple meet-and-confers, and because the SEC remains willing to narrow the Requests "by adding subject-matter limitations to the extent Motha agrees to produce documents." Opp. at 14. But the SEC's alleged willingness to meet and confer was a sham. The SEC admits in its Opposition that in "agreeing" to narrow the subpoena it was trying to force Motha into a *quid pro quo* in an attempt to force Motha to waive his well-established Fifth Amendment rights. Opp. at 11 ("[T]he Commission, however, stands ready to reintroduce subject- matter limitations *if Motha will agree to produce*

9

*documents*."). That the SEC is trying to do this is particularly puzzling because, just a few months earlier, in another case, *SEC v. Charnas*, No. 23-MC-22764, 2024 WL 639740, at *1 (S.D. Fla. Feb. 15, 2024), Judge Bloom rejected the SEC's attempts to enforce a subpoena where the counter-party, in similar circumstances, invoked the Fifth Amendment's Act of Production immunity.

This plainly unconstitutional gamesmanship by the SEC, *for a second time in a matter of months*, should not be condoned. Rather than absorbing the lessons of Judge Bloom's decision, the SEC is instead attempting to fashion an impermissible workaround—demand every document and agree to narrow the subpoena *only if* the party agrees to comply. The SEC clearly has learned nothing. If the SEC can draft and serve Non-Party Motha with a subpoena that does not implicate his Fifth Amendment privileges *and* which is not fatally overbroad, so be it. Motha will comply. But the SEC cannot make an end-run around the Constitution by serving a facially overbroad subpoena and then offering to narrow the subpoena conditioned on compliance. That is not a "meet and confer"—that is the SEC demanding the same documents they originally sought, only now through an overbroad subpoena instead of through a subpoena that infringes on Motha's Fifth Amendment rights. Neither is permissible.

Last, attorney's fees are warranted for an additional reason—none of the principles discussed above are new. The Fifth Amendment has been in the Constitution since 1791, and the Act of Production doctrine has been controlling since at least *Fisher v. United States*, which was decided in 1976 (425 U.S. 408). Because of the SEC's willingness to trample on these well-settled constitutional rights, an award of attorneys' fees is appropriate.

### III.    CONCLUSION

For the reasons set forth above, the subpoena must be quashed and an award of attorneys' fees and costs entered for Motha.

Dated: August 12, 2024

Respectfully submitted,

**DYNAMIS LLP**

*/s/ Eric S Rosen*
Constantine P. Economides (FBN. 118177)
Eric S. Rosen (*pro hac vice*)
Brianna Pierce
1111 Brickell Ave., 10th Fl.
Miami, FL 33131
  Tel: (305) 985-2959
Email: ceconomides@dynamisllp.com

*Counsel for Non-Party Daniel J. Motha*

11

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on this 12th day of August, 2024. I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF.

<i>/s/ Eric S Rosen</i><br>
Constantine P. Economides (FBN. 118177)