**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 23-24903-CIV-JB**

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

RISHI KAPOOR, et al.,

      Defendants.

_____/

**RECEIVER'S *EXPEDITED* MOTION TO APPROVE SALE OF MIAMI BEACH
PROPERTY FREE AND CLEAR AND RELATED SETTLEMENT AGREEMENT**

***EXPEDITED RELIEF REQUESTED***

*The Receiver requests that this Motion heard by the Court on September 24, 2024
or such subsequent date the Court has availability, and an order entered on an
expedited basis. The property is subject to a loan under which the lender asserts
an entitlement to interest accruing at 24.99%, and 2023 real estate taxes that
remain unpaid, multiple notices of violation from the City of Miami Beach and
ongoing maintenance expenses.*

      Bernice C. Lee, as Receiver ("Receiver") over the companies listed herein (each a
"Receivership Company" and collectively, the "Receivership Companies") [1] in this action, seeks
the entry of an Order approving the sale of real property described herein, free and clear of all
liens, claims, interests and encumbrances, and granting related relief. In support, the Receiver
states:

---

[1] The "Receivership Companies" include: Location Ventures, LLC, URBIN, LLC, Patriots United, LLC;
Location Properties, LLC; Location Development, LLC; Location Capital, LLC; Location Ventures
Resources, LLC; Location Equity Holdings, LLC; Location GP Sponsor, LLC; 515 Valencia Sponsor, LLC;
LV Montana Sponsor, LLC; URBIN Founders Group, LLC; URBIN CG Sponsor, LLC; 515 Valencia
Partners, LLC; LV Montana Phase I, LLC; Stewart Grove 1, LLC; Stewart Grove 2, LLC; Location Zamora
Parent, LLC; URBIN Coral Gables Partners, LLC; URBIN Coconut Grove Partners, LLC; URBIN Miami
Beach Partners, LLC; and URBIN Miami Beach II Phase 1, LLC.

## INTRODUCTION

Urbin Miami Beach Partners, LLC ("Urbin Partners") is a Receivership Company that owns 100% of Urbin Miami Beach Mezzanine, LLC ("Urbin Mezzanine"), which in turn owns 100% of Urbin Miami Beach Owner, LLC ("Miami Beach Owner"). Miami Beach Owner owns two parcels on Washington Avenue in Miami Beach, Florida (the "Miami Beach Property"). The Miami Beach Property is encumbered by a lien in favor of the first position lender who filed a foreclosure action and sought 24.99% default interest, and various construction and other lien claimants. The Receiver has reached an agreement with the first position lender, 1234 Washington Acquisitions, LLC (the "Lender"), with respect to the proposed sale of the Miami Beach Property described below.

On September 3, 2024, the Receiver received a contract to purchase the Miami Beach Property for $17,500,000 (the "Sale Contract") from Pakman Miami Beach LLC (the "Buyer"), a copy of which is attached as **Exhibit 1**. Through the Motion, the Receiver seeks the entry of an order: (a) approving the sale of the Miami Beach Property to the buyer free and clear of all liens, claims, interests and encumbrances through the closing date, on an as-is, where-is basis, without representations or warranties from the Receiver, with all such liens, claims, interests and encumbrances attaching to the net sale proceeds with the same priority, extent and validity as they had prior to the receivership (if any), (b) approving the settlement agreement with the Lender, and (c) authorizing the Receiver to pay, at closing, the Lender Payment (defined below), a carveout for the benefit of the estate, unpaid 2023 real estate taxes and 2024 prorated real estate taxes, any pending, unpaid or accrued charges for utility bills for the City of Miami Beach, and the seller's closing costs specified in the Sale Contract, including, but not limited to, documentary stamps and surtax. As described below, the Receiver believes proceeding with the sale described herein is in

2

the best interest of the receivership estate.

## FACTUAL BACKGROUND

### I.    The Receivership Order

1.      On December 27, 2023, the Securities and Exchange Commission ("SEC") filed a Complaint for Injunctive Relief against Rishi Kapoor ("Kapoor") and the Receivership Companies [DE 14-1] alleging that Kapoor used the Receivership Companies to operate a real estate scheme in violation of the anti-fraud provisions of the federal securities law raising approximately $93 million from more than 50 investors from January 2018 through March 2023.

2.      On January 5, 2024, the SEC filed an Expedited Motion for Appointment of Receiver, Asset Freeze, and Other Related Relief Against the Company Defendants and Memorandum of Law (the "Receiver Motion") [DE 16] seeking the appointment of a receiver to *inter alia* administer the Receivership Companies' assets.

3.      On January 12, 2024, the Court entered an Order granting the Receiver Motion (the "Receivership Order") [DE 28], which appointed Bernice C. Lee as receiver "for the estate of the Receivership Companies, including any of [their] divisions, subsidiaries, affiliates, successors, and assigns; and any fictitious business entities or business names created or used by the Receivership Companies, their divisions, subsidiaries, affiliates, successors, and assigns."  Receiver. Order ¶ 2.

4.      The Receivership Order defines "Receivership Property" and "Receivership Estate" as including "all property interests . . . of whatever kind, which the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly." *See* ¶ 7.A.

5.      The Receivership Order authorizes the Receiver to transfer or otherwise dispose of Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to

the realization of the true and proper value of such Receivership Property. *See* ¶ 31.

6.      The Receiver is further authorized to sell real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property, and is authorized to sell, and transfer clear title to, all real property in the Receivership Estate, pursuant to such procedures as may be required by the Court and additional authority such as 28 U.S.C. sections 2001 and 2004. *See* ¶ 32-33.

7.      The Receivership Order further grants the Receiver all powers, authorities, rights and privileges possessed by the officers, directors, managers, and general and limited parties of the Receivership Companies under applicable state and federal law, and by any governing charters, by-laws, articles, and/or agreements, in addition to all powers and authority of a receiver at equity and under other applicable law. *See* ¶ 4.

## II.      The Miami Beach Property

8.      Urbin Partners is a Receivership Company. The Receiver located the Operating Agreement of Urbin Mezzanine dated April 30, 2021, which indicates that Urbin Partners is the sole member and 100% owner of Urbin Mezzanine. A copy of the Operating Agreement is attached as **Exhibit 2**. The Receiver located the Operating Agreement of Miami Beach Owner dated April 30, 2021, which indicates that Urbin Mezzanine is the sole member and 100% owner of Miami Beach Owner. A copy of the Operating Agreement is attached as **Exhibit 3**.

9.      Miami Beach Owner acquired the Miami Beach Property on May 12, 2021 for $20,000,000 consisting of: (a) 1260 Washington Avenue, which now consists of primarily vacant

land (folio no. 02-4203-009-0040),[2] and (b) 1234 Washington Avenue with an existing three-story commercial building that has been gutted (folio no. 02-4203-009-0050).

### III.     The First Position Lender and Additional Claimants

10.     To purchase the Miami Beach Property, on May 4, 2021, Miami Beach Owner executed a $14,000,000 promissory note, purchase money mortgage, and assignment of leases and rents in favor of 1234 Partners, Ltd. ("1234 Partners"). A copy of the Foreclosure Complaint (defined below) is attached as **Exhibit 4**. A copy of the note is attached as Exhibit C to the Foreclosure Complaint, and a copy of the mortgage is attached as Exhibit A to the Foreclosure Complaint. The mortgage was recorded in Book 32501, Page 299. The assignment of leases and rents was recorded in Book 32501, Page 321.

11.     On May 31, 2022, Miami Beach Owner executed in favor of 2EE, LLC ("2EE"): (a) an amended and restated mortgage, a copy of which is attached as Exhibit B to the Foreclosure Complaint, and recorded in Book 33222, Page 3022, (b) a gap note in the amount of $1,350,000, a copy of which is attached as Exhibit D to the Foreclosure Complaint, (c) a consolidated and replacement promissory note, consolidating the prior note balance of $13,500,000 and gap note for $1,350,000, for a total of $14,850,000, a copy of which is attached as Exhibit E to the Foreclosure Complaint, (d) an assignment of contracts, documents, intangibles and other rights as collateral, a copy of which is attached as Exhibit H to the Foreclosure Complaint, and (e) an assignment of architectural contract and plans, a copy of which is attached as Exhibit K to the Foreclosure Complaint.

12.     On June 1, 2022, 1234 Partners executed in favor of 2EE an assignment of

---

[2] The Receiver understands that demolition of existing structures at the time of acquisition was completed prior to the commencement of the receivership.

mortgage, a copy of which is attached in composite Exhibit L to the Foreclosure Complaint. The assignment was recorded June 6, 2022, in Book 33222, Page 3020. On July 18, 2023, 2EE assigned the aforementioned mortgage, note, and other loan documents to 1234 Washington Acquisition, LLC (the "Lender"), an affiliated company. Copies of the assignment documents are attached in composite Exhibit L to the Foreclosure Complaint.

13.     On June 6, 2022, a UCC-1 Financing Statement naming 2EE as the secured party was recorded in Book 33222, Page 3051.

14.     On July 21, 2023, the Lender filed a foreclosure action against Miami Beach Owner, Urbin Partners, Urbin Mezzanine, and other defendants in the Circuit Court for Miami Dade County, Case No.: 2023-020039-CA-01 (the "Foreclosure Case"). A copy of the complaint ("Foreclosure Complaint") is attached hereto as Exhibit 4. The Lender also recorded a Notice of Lis Pendens recorded in Book 33916, Page 4574.

15.     The Foreclosure Complaint alleges that the loan matured on June 1, 2023 and Miami Beach Owner failed to repay the loan upon maturity. Compl. ¶ 24-25. It further states that as of July 21, 2023, the Lender was owed $14,850,000 in principal, plus interest of $505,312.50, for a total sum of $15,355,312.50.  *Id.* at ¶ 30. On October 5, 2023, the clerk of court entered defaults against Miami Beach Owner, Urbin Partners, Urbin Mezzanine, copies of which are attached as composite **Exhibit 5**.

16.     The Lender has provided payoff information through June 19, 2024 asserting a total due of $19,271,006.71 consisting of: (a) $14,850,000 in principal, (b) $3,914,358.29 in default interest at 24.99% from June 1, 2023 through June 19, 2024, (c) $151,890.18 in attorney's fees and costs paid by Lender through April 1, 2024, (d) $326,420.78 paid for 2022 real estate taxes, and (e) $28,337.46 for insurance, utilities and an appraisal. The Lender's asserted per diem default

interest rate is $10,167.16, and additional attorney's fees will accrue. Absent a prompt sale, additional costs to maintain and preserve the Miami Beach Property will continue to accrue, including property taxes, insurance premiums, and electricity and water bills.

17.    As set forth in the Lender's Declaration attached as **Exhibit 6**, the Lender represents that the Lender and its related parties: (a) are not investors in the Receivership Companies, or their subsidiaries or affiliates, except with respect to 515 Valencia SPE LLC and certain token shares in Location Ventures, LLC that appeared on a Schedule K-1 for one year and then were eliminated, (b) have never been a director, officer, manager, member, investor, employee or agent of the Receivership Companies, or their subsidiaries or affiliates, except with respect to being an investor with 515 Valencia SPE LLC and certain token shares in Location Ventures, LLC that appeared on a Schedule K-1 for one year and then were eliminated, and (c) except as otherwise stated in the Lender's Declaration with respect to prior lending and loan transactions and except as to a lending relationship with respect to real property owned by Stewart Grove 1, LLC, Stewart Grove 2, LLC, 515 Valencia SPE LLC, Urbin Miami Beach Owner LLC and 7233 Los Pinos, LLC, have no direct or indirect relationship to, connection with, or interest in, the Receivership Companies, their subsidiaries or affiliates, or Rishi Kapoor.

18.    A list of the above mortgages and assignments, and additional liens, and *lis pendens* recorded by claimants against the Miami Beach Property, who are likely material and service subcontractors, follows:

     a.    Mortgage in the original principal sum of $14,000,000, executed by Urbin Miami Beach Owner, LLC, a Florida limited liability company in favor of 1234 Partners, Ltd., a Florida limited partnership, recorded in Book 32501, Page 299, as modified by document recorded in Book 33222, Page 3022, and assigned to 1234 Washington Acquisition, LLC, a Florida limited liability company by document recorded in Book 33808, Page 4802,

b.    Assignment of Rents and Leases from Urbin Miami Beach Owner, LLC, a Florida limited liability company to 1234 Partners, Ltd., a Florida limited partnership recorded May 12, 2021, in Book 32501, Page 321,

c.    UCC-1 Financing Statement naming 2EE LLC as secured party and Urbin Miami Beach Owner, LLC as debtor, filed June 06, 2022, recorded in Book 33222, Page 3051,

d.    Claim of Lien in favor of South Florida Construction Solution, Inc. for $811,704.80 recorded on June 12, 2023 Book 33746, Page 173,

e.    Claim of Lien in favor of G. Proulx Building Products, LLC for $128,956.72 recorded on June 14, 2023 Book 33748, Page 4446,

f.    Claim of Lien in favor of Touzet Studio, Inc. for $44,677.81 recorded on June 21, 2023 Book 33755, Page 4675,

g.    Claim of Lien in favor of Rene's Equipment Rental – Master Paving Engineering, LLC for $181,738.50 recorded on June 22, 2023 Book 33759, Page 1402,

h.    Claim of Lien in favor of Ferguson Waterworks for $23,857.28 recorded on July 12, 2023 Book 33788, Page 3766,

i.    Claim of Lien in favor of United Rentals (North America), Inc. for $34,155.17 recorded on July 31, 2023 Book 33815, Page 4816,

j.    Claim of Lien in favor of Atlantic Coast Drilling for $20,592.50 recorded on August 7, 2023 Book 33826, Page 935,

k.    Claim of Lien in favor of John Abell Corporation for $423.62 recorded on August 24, 2023 Book 33850, Page 4612,

l.    Claim of Lien in favor of Doka USA, Ltd. for $40,095.71 recorded on September 25, 2023 Book 33898, Page 703,

m.    Claim of Lien in favor of Paragon Painting & Waterproofing, Inc. for $24,304.00 recorded on September 25, 2023 Book 33898, Page 2282,

n.    Claim of Lien in favor of J. Hernandez and Associates, Inc. for $9,300 recorded on October 2, 2023 Book 33907, Page 530,

o.    Claim of Lien in favor of Integrated Cooling Solutions LLC for $133,080, recorded on October 23, 2023, Book 33937, Page 103,

p.  Claim of Lien in favor of Winmar Construction, Inc. for $447,415.50 recorded on July 7, 2023 Book 33783, Pages 2933,

q.  Claim of Lien in favor of Winmar Construction, Inc. for $456,070.50 recorded on August 22, 2023 Book 33845, Pages 4917,

r.  Claim of Lien in favor of Winmar Construction, Inc. for $3,898,808.59 recorded on July 7, 2023 Book 33783, Pages 2931,

s.  Claim of Lien in favor of Winmar Construction, Inc. for $4,249,098.59 recorded on August 22, 2023 Book 33845, Pages 4915,

t.  Claim of Lien in favor of Winmar Construction, Inc. for $671,260.93 recorded on July 11, 2023 Book 33787, Pages 1999,

u.  Claim of Lien in favor of Adonel Concrete Corp. for $52,414.67 recorded on June 13, 2023 Book 33746, Page 4470,

v.  Claim of Lien in favor of Rock & Dirt Construction Equipment Rental LLC for $23,878.50 recorded on June 15, 2023 Book 33750, Page 390,

w.  Claim of Lien in favor of South Dade Electrical Supply, Inc. for $7,582.17 recorded on August 4, 2023 Book 33824, Page 1031,

x.  Claim of Lien in favor of Aya Diversity Electric, LLC for $81,090.09 recorded on July 7, 2023 Book 33783, Pages 3175-3176,

y.  Claim of Lien in favor of Aya Diversity Electric, LLC for $15,930.00 recorded on July 7, 2023 Book 33783, Pages 3177-3178,

z.  Claim of Lien in favor of City of Miami Beach for $8,302.38 recorded on December 8, 2008 Book 26676, Page 3090,

aa.  Claim of Lien in favor of City of Miami Beach for $8,302.38 recorded on December 8, 2008 Book 26676, Page 3091,

bb.  Notice of Lis Pendens for Case No. 2023-020039-CA-01, styled 1234 Washington Acquisition, LLC v. Urbin Miami Beach Owner, LLC recorded on July 27, 2023 Book 33812, Page 3444,

cc.  Notice of Lis Pendens Case No. 2023-083125-CC-05, styled Ferguson Enterprises, LLC, D/B/A Ferguson Waterworks v. Urbin Miami Beach Owner, LLC recorded on August 2, 2023 Book 33820, Page 2024,

dd.  Notice of Lis Pendens for Case No. 2023-021077-CA-01, styled Rene's Equipment Rental-Master Paving Engineering, LLC, a Florida limited

liability company v. Urbin Miami Beach Owner, LLC recorded on August 15, 2023 recorded in Book 33838, Page 2085,

ee.    Notice of Lis Pendens Case No. 2023-020039-CA-01, styled 1234 Washington Acquisition, LLC v. Urbin Miami Beach Owner, LLC recorded in Book 33916, Page 4574, and

ff.    Michael Berkman who filed a UCC Financing Statement as to Debtor BF Burger Group, LLC, recorded on March 2, 2016 in Book 29983, Page 323, that appears to relate to a lease with Peppers, LLC discussed below.

Excluding the Lender's claim, the aggregate amount of the filed lien claims against the Miami Beach Property exceeds $11,000,000.

19.    In addition to the foregoing lien claims, the City of Miami Beach (the "City") has provided the Receiver a statement as of July 17, 2024 for: (a) 1260 Washington Avenue with a total amount due of $340,384.32, a copy of which is attached as **Exhibit 7**, and (b) 1234 Washington Avenue with a total amount due of $30,807.09, a copy of which is attached as **Exhibit 8** (together, the "Statements"). Counsel for the City of Miami Beach has confirmed that the items in the Statements and amounts owed to the City fall within the following three categories:

a.    Utility bills, which are the only items in the Statements that may result in a lien if unpaid, and the City has advised that the utility bills are current and any unpaid amounts need to be paid at closing,

b.    Charges against the Miami Beach Property that are unsecured and have no lien, and for which the City could submit an unsecured claim for in the event the Receiver conducts a claims process for Miami Beach Owner, which include the following items listed in the Statements but only to the extent the description references "Urbin Miami Beach," "1234 Partners Ltd" or "Urbin Miami Beach Owner": (1) unsafe structure charges, (2) city bills, (3) city invoices, and (4) special magistrate charges for code violations which are currently contingent amounts, and

c.    Charges entered in the City's database based on the parcel numbers for 1260 and 1234 Washington Avenue that are not obligations of Miami Beach Owner, and for which Miami Beach Owner and any future owner of the Miami Beach Property would not be responsible, that relate to prior tenants, such as for the following items in the Statements where the description references Triskell LLC, Canton Buffet, Ice Blue, Ice Blue LLC, Chicken Brasa, Med Shish Kabob, 1946 Washington Inc, Sergio De La Fuentes, DGS Restaurant GRP, Harat's Pub Miami LLC, M & M

Parking, BGM South Beach LLC, DGS Restaurants, DGS Restaurants Group, MYCI/SageBuilt,[3] The Cool Team, Printpro Shop, Peppers Burrito Grill, Peppers Burrito, Direct Marketing, BMG Talent Group, Regatta Real Estate, Acquip Inc., and The Royal Management: (1) resort tax liens, (2) city bills, (3) city invoices, (4) licensing, (5) permits, and (6) public works.

20.     The City has confirmed that the current and future owners of the Miami Beach Property are not responsible for any amounts owed to the City that relate to prior tenants, such as the items specified in paragraph 19(c) above. The Motion seeks to sell the Miami Beach Property free and clear of all claims, charges and amounts set forth in the Statements, and if granted and the sale closes, the City has confirmed that it understands it cannot seek to collect from the Buyer any amounts set forth in the Statements.

21.     There are also potential unsecured claims of depositors in connection with the purchase of units in the Miami Beach development proposed by the Receivership Companies which likely exceed $10,000,000.

22.     Further, the title search for the Miami Beach Property indicates there are three recordings relating to lease agreements between a prior owner of the Miami Beach Property and tenant: (a) the lease agreement by and between 1234 Partners as lessor, and Harat's Pub Miami, LLC as lessee, a Memorandum of Lease of which was recorded September 10, 2018, in Book 31132, Page 3593, (b) the lease agreement by and between 1234 Partners as lessor and BF South Beach LLC as lessee, a Memorandum of Lease of which was recorded January 23, 2013, in Book 28454, Page 3836, and (c) the lease agreement by and between 1234 Partners as lessor and Peppers, LLC as lessee, a Memorandum of Lease of which was recorded March 22, 2011, in Book 27625,

---

[3] The City has advised it will review its records to determine whether the $164,931.01 charge under Permits for "MYCI/SageBuilt" relates to a prior tenant or Miami Beach Owner. In the event such charge relates to Miami Beach Owner, such charge would be an unsecured claim under paragraph 19(b) above and would not have a lien.

Page 768. These are old leases between 1234 Partners and prior tenants who no longer occupy the Miami Beach Property. There are no tenants in the Miami Beach Property. The building on 1260 Washington Avenue was demolished and the parcel consists of primarily vacant land. The existing three-story commercial building on 1234 Washington Avenue has been gutted and remains in an unfinished state.

23.     The Receiver seeks to sell the Miami Beach Property free and clear of any liens, claims, interests and encumbrances, including, but not limited to, the foregoing mortgages, liens, *lis pendens*, charges and leases, with all such liens, claims, interests and encumbrances attaching to the net sale proceeds with the same priority, extent and validity as they had prior to the receivership.

**IV.     The Receiver's Broker and Marketing Efforts**

24.     On April 15, 2024, the Court entered the Order Granting Receiver's Motion for Authorization to Employ Broker/Auctioneer [DE 124], and approved the Receiver's employment of Lamar P. Fisher, CAI, AARE and Fisher Auction Company (together "Fisher Company") as her broker for the Miami Beach Property.

25.     As set forth in the Declaration of Lamar P. Fisher attached hereto as **Exhibit 9** (the "Fisher Declaration"), the Fisher Company engaged in an extensive and commercially reasonable marketing process for the Miami Beach Property, listing the Miami Beach Property as a Premium Listing on LoopNet and CREXi, sending emails to its contact list of over 17,000 subscribers, and sending a worldwide blast email to over 300,000 potential buyers via PropertyCampaign.com. Fisher Company had 142 calls or emails from interested parties from 22 different states, territories and countries, 555 unique visitors to the Fisher Company website's dedicated listing page, over 7,800 unique property views and over 27,000 total views on LoopNet, 264 page views and over

16,000 impressions on CREXi, and had 38 parties executed confidentiality agreements to obtain access to due diligence information. *Id*.

26.     In the course of marketing the Miami Beach Property and communicating with potential purchasers over the past several months, Fisher Company encountered certain recurring themes in their evaluation of the property, including: (a) the co-living units that were the original proposed use for the Miami Beach Property, and a vital component of the previously approved plans developed by the Receivership Companies, are no longer an accepted use for the property in the City of Miami Beach along Washington Avenue, (b) the potential historic designation of the 1234 Washington Avenue building limits the potential utilization of space and the design of the overall development, (c) the number of approved units for the development was too low for larger residential and hotel developers, and (d) most parties found an appraisal prepared for the Miami Beach Property as of May 11, 2022 to be of little to no use due to its age, particularly due to changes in interest rates and construction costs which are now significantly higher in today's market, and one potential buyer ordered its own appraisal that presented a much lower price point.

27.     The Receiver, when engaging Fisher Company, retained them as both broker and auctioneer, contemplating the possibility of soliciting a "stalking horse" purchase offer followed by further bidding through a process to be approved by separate motion. *See* DE#120, 124. After over four months of marketing, the Receiver, in consultation with Fisher Company, and in consideration of all the offers she has received, has determined in her business judgment that further marketing and further sale procedures are not reasonably expected to yield a better purchase offer than that which is the subject of this Motion. The Buyer was only willing to make this offer on the condition that it be a sale subject to approval by the Court, and not as a "stalking horse" bid subject to higher and better offers after a further auction process.

28.     As set forth in the Fisher Declaration, Fisher Company has agreed to a receive a payment of $25,000 from the Carveout (defined below), and waives any and all other claims to any commission or any other amounts relating to the Receivership Estate and Miami Beach Property.

## V.     **The Proposed Sale Contract**

29.     On September 3, 2024, the Buyer provided the Receiver the signed Sale Contract with a purchase price of $17,500,000, which was the result of extensive arms-length negotiation. This offer was the highest all cash offer that was received with no due diligence period. While a summary of certain terms are as follows, parties should review the Sale Contract in its entirety:

    a.     Buyer shall pay to Seller[4] at Closing the sum of $17,500,000, plus or minus the net amount of any prorations as hereinafter provided.  This is an "all cash" transaction not contingent on financing.

    b.     On the day the Receiver files the Sale Motion, a deposit in the amount of $1,750,000.00 will be due and payable by Buyer to the Title Company.

    c.     The Miami Beach Property is being sold as-is, where-is and with all faults, with no guarantees or warranties express or implied.

    d.     If and to the extent that the Statements disclose any amounts that the City requires to be paid prior to Closing or in order for the Closing to occur ("Pre-Closing Obligations"), and the Parties cannot reach an agreement on the allocation or payment of the Pre-Closing Obligations, then either Party may terminate the Sale Contract by providing written notice to the other Party at least fifteen (15) days prior to the Closing Date ("City Statements Termination Deadline"). Buyer shall not have the right to terminate or cancel the Sale Contract if the City provides written notification to Buyer, prior to the City Statements Termination Deadline, stating that the City: (i) will not seek to enforce or take any legal action concerning the items or accounts payable identified in the City Statements against Buyer, and (ii) will not seek to collect on any accounts payable as referenced in the Statements against Buyer. Upon receipt of such written notification from the City, Buyer's right to terminate or cancel this Agreement as authorized herein, shall be deemed waived, and Buyer shall be obligated to proceed to Closing as set forth in the Sale Contract. Buyer understands that the Receivership Estate does not have funds available to pay any Pre-Closing Obligations or other amounts owed to the City,

---

[4] Capitalized terms not defined herein shall have the definitions provided for in the Sale Contract.

and any such payment would be paid from the sale proceeds for the Miami Beach Property and subject to the agreement of the Lender.

e.    Prior to Closing, the Title Company shall perform an update search to the effective date of the Title Commitment to confirm that there are no new title matters adversely affecting the Miami Beach Property ("Title Defect") that cannot otherwise be satisfied by the Sale Order.  In the event that a Title Defect exists that cannot otherwise be insured over by the entry of the Sale Order then in such event Buyer's sole remedies shall be (1) to terminate the Agreement by providing written notice to Seller prior to the Closing Date and receive a return of the Deposit and upon delivery of such notice of termination, this Agreement shall terminate and the Deposit shall be returned to Buyer, and thereafter neither party hereto shall have any further rights, obligations or liabilities hereunder with respect to the Miami Beach Property, except for those that expressly survive termination or (2) to accept a conveyance of the Miami Beach Property subject to the such Title Defect without reduction of the Purchase Price.

f.    The closing of the transaction contemplated by this Agreement (the "Closing") shall take place on or before sixty-one (61) calendar days after the Sale Order is entered provided no appeal or rehearing motion has been filed on or before (60) calendar days after the Sale Order is entered (the "Closing Date"), time being of the essence. Notwithstanding anything herein to the contrary, if the Sale Order has been appealed within sixty (60) days from the entry of the Sale Order, then the Closing Date shall be postponed until not more than five (5) Business Days after Sale Order has been confirmed on appeal; provided that, if such postponement is longer than ninety (90) days after the entry of the Sale Order, then in such event Seller shall have the right to terminate this Agreement by giving written termination notice to Buyer, and provided the Buyer is not otherwise in default or breach of this Agreement, then within five (5) Business Days of Seller providing written termination notice, the Deposit shall be returned to Buyer and neither Party shall have any further obligations under this Agreement except those that expressly survive the termination of this Agreement.

g.    Seller shall pay past due delinquent real estate taxes owed on the Miami Beach Property and documentary stamps and surtax due in connection with the Deed transfer.  Buyer shall be solely responsible for all other costs related to the sale and purchase of the Miami Beach Property (except as otherwise stated herein), including but not limited to:  all due diligence (inspection) of the Miami Beach Property (including title and survey matters); all costs to prevent any liens from attaching to the Miami Beach Property if caused by Buyer; cost to update title; owner's policy premium with endorsements thereto; certified lien search fees and recording of the Deed.  In addition, Buyer shall pay or take the Miami Beach Property subject to all matters set forth and disclosed on a lien search of the Miami Beach Property, including but not limited to:  open or expired permits, any existing or future code violations, open utility balances, special assessments (except for real estate county taxes to be prorated as set forth in Section 14B below), etc.; provided,

however, the Receiver will list any matters set forth therein containing final and liquidated amounts that have been recorded as liens in the Sale Motion and Sale Order to be otherwise addressed therein.  The Title Company's Escrow fees shall be paid by Buyer.   Buyer and Seller agree to cooperate in a 1031 Tax Deferred or Reverse Exchange, if applicable, so long as the costs associated with the 1031 Exchange are the responsibility of the requesting party and shall not create a financial responsibility on the non-requesting party.  Each Party shall pay their respective attorneys' fees and costs.

h.   The real estate taxes for the year of Closing will be prorated through the day before Closing. If the amount of taxes for the current year cannot be ascertained, rates for the previous year will be used with due allowance being made for improvements and exemptions. There shall be no reproration of taxes following the Closing.  This paragraph shall survive (continue to be effective after) closing.

30.     The Receiver submits it is in the best interest of the Receivership Estate to consummate the sale of the Miami Beach Property under the Sale Contract and settlement agreement with the Lender described below. The sale will generate sufficient funds to pay the Lender Payment (defined below), unpaid 2023 real estate taxes, 2024 prorated real estate taxes, utility bills for the City of Miami Beach, the Carveout described below and the seller's closing costs specified in the Sale Contract, including, but not limited to, documentary stamps and surtax, and the Lender will not file a claim in or seek a distribution from the receivership estate.

31.     The sale, after payment of the foregoing obligations, will not yield sufficient net proceeds to make any additional distributions to junior lien creditors or other parties with claims against the Miami Beach Property or its owners. The proposed sale does, nonetheless, provide a benefit to the Receivership Estate in that it (a) resolves and eliminates any further liability to the Lender, including any deficiency claim that may be asserted against the Receivership Entities, (b) enables payment of the real estate tax obligations associated with the Miami Beach Property and prevents the accrual of additional tax obligations, and (c) terminates any responsibility of the Receivership Estate in connection with the continued maintenance and preservation of the Miami Beach Property, including the expenses associated therewith.

32.     The only other realistic alternatives for disposition of the Miami Beach Property are (a) an open auction, which will entail further delay, further expense in maintaining the property, and further interest accrual, with no certainty that the result will meet or exceed the current purchase offer, or (b) abandonment of the property to the Lender, which will leave the Receivership Estate exposed to potential deficiency and other claims that are being resolved through this proposed transaction. Accordingly, the Receiver in her business judgment has determined that proceeding with the sale is in the best interests of the Receivership Estate.

**THE PROPOSED SETTLEMENT AGREEMENT WITH THE
LENDER WITH RESPECT TO THE PROPERTY**

33.     In consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and without admitting any wrongdoing or liability, if the Court approves the Sale Contract and the Buyer closes, the Receiver and Lender agree as follows:

a.  The Lender has agreed to the proposed sale under the Sale Contract, and the payment at closing of the Carveout (defined below), 2023 real estate taxes (estimated to be $330,000), prorated 2024 real estate taxes (estimated to be $240,000 if the sale closes by October 31, 2024), any pending, unpaid or accrued charges for utility bills for the City of Miami Beach (estimated to be $15,000 at the time of closing), and all seller's closing costs under the Sale Contract, including, but not limited to, documentary stamp tax and surtax (estimated to be $125,000), and to receive the remaining net sale proceeds (the "Lender Payment"), which are estimated to be $16,740,000 if the sale closes by October 31, 2024 and less if the sale closes after October 31, 2024, in full satisfaction of all amounts owed under all loan documents relating to the Miami Beach Property to be paid at closing of the sale of the Miami Beach Property, and the Lender will not file a claim in, or seek a distribution from

17

the receivership estate, with respect to any other amounts owed relating to the Miami Beach Property, and agrees to waive any such claim. The Lender will dismiss its foreclosure action with prejudice and file a notice of voluntary dismissal within two (2) business days upon receiving the Lender Payment. The Lender may, in its sole discretion, agree to further reduce the Lender Payment, such as in the event the closing date is delayed due to an appeal of the Sale Order, or additional real estate taxes or lien payments need to be made at closing.

b. The Lender understands that real estate taxes for the Miami Beach Property will be paid at closing from the sale proceeds, including: (1) at least $330,000 for 2023 real estate taxes, with interest accruing at 5.75% for folio no. 02-4203-009-0050, and 7.75% for folio no. 02-4203-009-0040, and (2) 2024 real estate taxes subject to the prorations under the Sale Contract.

c. The Lender will carve out from its first position lien and security interest on the Miami Beach Property: (1) $25,000 for the payment of Fisher Company in full satisfaction of all services provided for in connection to Miami Beach Property, and (2) $25,000 for the benefit of the receivership estate for the Receiver and Receiver's attorneys' expenses (the "Carveout") that will be paid at closing. The Carveout funds will be free and clear of any liens, claims, interests and encumbrances, and constitute an unencumbered asset of the receivership estate, and used to pay $25,000 to Fisher Company at closing, and $25,000 to pay the Receiver and her attorneys for their services, including with respect to the administration of the Miami Beach Property. Payment for the Receiver and her attorneys are subject to the entry of the Court's order approving the Receiver's fee applications.

d. Los Pinos Acquisition, LLC, an affiliate of the Lender, will carve out from its first position

lien and security interest on 7233 Los Pinos Blvd, Coral Gables FL, 33134 (the "<u>Los Pinos</u> <u>Property</u>") $50,000 for the benefit of the receivership estate for the Receiver and Receiver's attorneys' expenses that will be paid at closing of the sale or other disposition of Los Pinos Property. Payment for the Receiver and her attorneys are subject to the entry of the Court's order approving the Receiver's fee applications.

e.    The Lender has provided a list of all known lienholders, who are listed in the below certificate of service and will receive notice of the Motion.

f.    The Lender warrants and represents that: (1) all amounts set forth in its payoff statement asserting that at least $19,271,006.71 is due to Lender are accurate, and (2) all statements in the Lender's Declaration are accurate.

## <u>MEMORANDUM OF LAW</u>

### I.   **The Court Should Approve the Proposed Sale Free and Clear.**

"The district court has broad powers and wide discretion to determine relief in an equity receivership." *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (citations omitted). "This discretion derives from the inherent powers of an equity court to fashion relief." *Id.*  These powers include the authority to approve the sale of property of the Receivership Companies. Clark on Receivers § 482 (3d ed. 1992) (citing *First National Bank v. Shedd*, 121 U.S. 74, 87, 7 S.Ct. 807, 814, 30 L.Ed. 877 (1887) (A court of equity having custody and control of property has power to order a sale of the property in its discretion). "[A]ny action by a trial court in supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse." *S.E.C. v. Pension Fund of Am. L.C.*, 377 F. App'x 957, 961 (11th Cir. 2010) (quotations omitted).

"A court of equity under proper circumstances has power to order a receiver to sell property

free and clear of all incumbrances, and to deny the mortgagee the right to foreclose his mortgage." *Miners' Bank of Wilkes-Barre v. Acker*, 66 F.2d 850, 853 (3d Cir. 1933); *see United States v. Brewer*, 2009 WL 1748504, at *5 (M.D. Fla. June 19, 2009) (approving private sale and concluding buyer "shall hold good and clear title to the Property as against the world, free and clear of all liens, encumbrances, claims and interests of any kind"); *Sec. & Exch. Comm'n v. Harbor City Capital Corp.*, No. 6:21-cv-694-CEM-DCI, 2023 WL 1105282 (M.D. Fla. Jan. 30, 2023) ("To be sure, 'it has long been recognized that under appropriate circumstances, a federal court presiding over a receivership may authorize the assets of the receivership to be sold free and clear of liens and related claims.'"); *Sec. & Exch. Comm'n v. Capital Cove Bancorp LLC*, No. SACV 15-980JLS, 2015 WL 9701154, *4 (C.D. Cal. Oct. 13, 2015); *Pennant Mgmt., Inc. v. First Farmers Fin., LLC*, No. 14–CV–7581, 2015 WL 4511337, *4 (N.D.Ill. July 24, 2015) (quoting *Regions Bank v. Egyptian Concrete Co.*, No. 09–cv–1260, 2009 WL 4431133, at *7 (E.D. Mo. Dec. 1, 2009)); *see also Mellen v. Moline Malleable Iron Works*, 131 U.S. 352, 357 (1889) ("[T]he removal of alleged liens or incumbrances [sic] upon property, the closing up of affairs of insolvent corporations, and the administration and distribution of trust funds are subjects over which courts of equity have general jurisdiction.").

One of the primary goals of a receivership is to provide a conduit through which assets can be administered for the benefit of the receivership estate and harmed investors, and reduce claims against the receivership estate. Even where the sale of an asset will not generate sufficient funds to satisfy all existing lien claims, the sale still can produce a benefit by reducing the claims assertable against the Receivership Companies' assets and estate. *Capital Cove*, 2015 WL 9701154 at *8 (where receiver presented evidence of the large number of unsecured and junior creditors who were defrauded, and the receiver's expected inability to pay the full amount of each claim

from the pooled assets of the receivership, it was in best interests of the receivership estate to sell properties at highest possible market price, even if below the aggregate value of existing liens, rather than abandoning the properties). Here, given the amount of the Lender's first lien debt, and the other liens and claims asserted against the Miami Beach Property, and the total claims of creditors and investors asserted against all of the Receivership Companies and their assets, it is not expected that the Receiver will be able to pay the full amount of all such claims from the pooled assets of the receivership. Accordingly, it is in the best interests of the Receivership Estate to consummate this transaction in order to reduce the claims asserted against the Receivership Estate.

Allowing the Receiver to enter into the Sale Contract and sell the Miami Beach Property free and clear will further the goals of the receivership. The Receiver proposes that all liens, claims, interests and encumbrances asserted through the closing date against the Miami Beach Property will attach to any remaining sale proceeds after payment of the Lender and other amounts set forth above (if any), with the same priority, extent and validity as they had prior to the receivership. The Receiver wishes to make clear, however, that no such remaining sale proceeds are anticipated, and accordingly there will be no amounts distributable on account of such junior liens (just as would be the case if the Miami Beach Property were sold at a foreclosure sale for less than the amount of the senior debt).

The Receiver has not authorized any work to be performed on the Miami Beach Property since her appointment on January 12, 2024 that has not been paid, and does not anticipate any claimant will assert a valid lien for work performed after January 12, 2024. The Receivership Order enjoins creditors from enforcing or creating liens against property owned by the Receivership Companies. *See* Receiver. Order ¶ 23. Any post-receivership recording of a lien will violate this provision, and be objected to by the Receiver.

The Receiver is not aware of any party asserting a lien superior in priority to the Lender's lien against the Miami Beach Property. To the extent any party in interest purports to assert a lien against the Miami Beach Property superior in priority to the Lender's lien, the Receiver requests, and requests that the Court's Order so provide that such position be asserted by way of objection to this Motion. To the best of the Receiver's knowledge, all interested parties have received notice of the Motion.

As described above, the sale of the Miami Beach Property was marketed extensively and in a commercially reasonable manner, and the purchase price is reasonable given the circumstances and represents the highest possible market price the Receiver believes is attainable in the circumstances. The Sale Contract for $17.5 million is the highest all cash offer received with no due diligence period, and was the result of an arms-length negotiation. The expeditious sale of the Miami Beach Property will avoid additional real estate taxes and maintenance expenses, maximize the value of the Miami Beach Property, and provide sufficient funds to provide for payment of the 2023 and prorated 2024 real estate taxes, Lender Payment and Carveout. The Lender has agreed to not file a claim in, or seek a distribution from the receivership estate, with respect to its deficiency claim or any other amounts owed relating to the Miami Beach Property.

The Receiver has been excused from compliance with 28 U.S.C. § 2001(b), which provides procedures for the sale of realty under any order or decree of any court of the United States. On January 24, 2024, the Court entered an Order approving the parties' stipulation and excusing the Receiver from compliance with 28 U.S.C. section 2001 in connection with the sale of real property in this case. The SEC, Receiver and Kapoor entered into the *Stipulation Waiving Requirements of 28 U.S.C. § 2001(a) and (b) in Connection with Real Property Sale Motions* on January 23, 2024 [DE 48]. *See Huntington Nat'l Bank v. Big Sky Dev. Flint, LLC*, No. 10-10346, 2010 WL 3702361,

at *7 (E.D. Mich. Sept. 16, 2010) (noting that the requirements of 28 U.S.C. § 2001 were waived as part of the receivership order to which the parties stipulated); *see also Sec. & Exch. Comm'n v. EB5 Asset Manager, LLC*, No. 15-62323-CIV, 2016 WL 7508252, at *2 (S.D. Fla. Mar. 25, 2016) (stating that "[w]hile the Court may not waive the mandatory requirements of § 2001(b), the parties may" and citing *Huntington Nat'l Bank v. Big Sky* for support).

## II.     The Court Should Approve the Settlement with the Lender Relating to the Proposed Sale of the Property.

"The district court has broad powers and wide discretion to determine relief in an equity receivership." *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (citations omitted). "This discretion derives from the inherent powers of an equity court to fashion relief." *Id*.  "A district court reviews settlements proposed by receivers for fairness, reasonableness, and adequacy." *Sec. & Exch. Comm'n v. 1 Glob. Cap. LLC*, No. 18-CV-61991, 2018 WL 8050527, at *2 (S.D. Fla. Dec. 27, 2018); *see Sterling v. Stewart*, 158 F.3d 1199, 1201 (11th Cir. 1998) (approving settlement because managing receiver acted in good faith and conducted adequate investigation and settlement was fair); *Sec. & Exch. Comm'n v. Quiros*, No. 16-CV-21301, 2016 WL 9254719, at *2 (S.D. Fla. Oct. 18, 2016) (approving settlement as fair, adequate and reasonable, and well within the range of reasonableness).  "Determining fairness is left to the sound discretion of the district court." *Sec. & Exch. Comm'n v. 1 Glob. Cap. LLC*, 2018 WL 8050527, at *2 (citing Sterling, 1158 F. 3d at 1202).

The proposed settlement is well within the range of reasonableness. The Lender's payoff information states that the Lender is owed $19,271,006.71 as of June 19, 2024, plus a per diem default rate of $10,167.16. Even assuming that only non-default interest applied through June 19, 2024, the Lender would be owed approximately $16,766,000, and would have an unsecured deficiency claim of more than $2,500,000. Under the settlement, the Lender will receive a reduced

payment of approximately $16,740,000 or less, and the Lender will not file a claim in, or seek a distribution from the receivership estate, with respect to amounts owed relating to the Miami Beach Property. The Lender has also agreed to the Carveout from its collateral in the amount of $50,000 to pay for the Receiver and her professional's fees, including her counsel and Fisher Company's services, relating to the Miami Beach Property. An affiliated company has agreed to pay the Lender an additional $50,000 as a carveout from its first position lien on Los Pinos at the closing of the sale or other disposition of property.  The carveout from the Los Pinos first position lien does not operate to the detriment of any party: it facilitates the resolution of the Miami Beach mortgage debt, which relieves the Receivership Estate from a deficiency claim by the Lender; it provides additional funds to compensate the Receivership Estate for its expenses in connection with the Miami Beach transaction; and as a carve-out from the Los Pinos lien, it does not increase the debt on the Los Pinos property.

The Receiver believes the proposed settlement constitutes a fair resolution with respect to the administration of the Miami Beach Property and potential liability given applicable claims, defenses, and risks. The Sale Contract for $17.5 million is the highest and best all cash offer received by the Receiver after extensive marketing by the Fisher Company. The proposed settlement will provide for a source of payment for the professional fees and expenses incurred by the estate to administer the Miami Beach Property. Bankruptcy courts routinely approve transactions and settlements that provide for a carveout from a lender's collateral to pay for professional fees and to provide a distribution to lower priority claims. *See, e.g., In re Camtech Precision Mfg., Inc.*, 2015 WL 14025728, at *8 (Bankr. S.D. Fla. Jan. 23, 2015) (approving a transaction that provided a carveout of lender's collateral to pay for professional fees and lower priority claims); *see also In re The Carlisle Apartments, L.P.*, 2010 WL 11834073, at *5 (Bankr.

S.D.N.Y. Dec. 17, 2010) (approving settlement with lender that included carveout from collateral to pay for court approved professional fees).

**WHEREFORE**, the Receiver respectfully requests the entry of an order substantially in the same form as the proposed order attached hereto as **Exhibit 10**: (a) authorizing the Receiver to enter into the Sale Contract, and execute the receiver's quitclaim deed, receiver's bill of sale, title affidavit and closing statement to consummate the sale of the Miami Beach Property in accordance with the terms of the Sale Contract, (b) approving the proposed sale to the Buyer, free and clear of any liens, claims or encumbrances that may be asserted on the Miami Beach Property through the closing date, on an as-is, where-is basis, without representations or warranties from the Receiver, (c) authorizing the Receiver to pay, at closing, the Lender Payment, the Carveout amount, unpaid 2023 real estate taxes, 2024 prorated real estate taxes, any pending, unpaid or accrued charges for utility bills for the City of Miami Beach, and the seller's closing costs specified in the Sale Contract, including, but not limited to, documentary stamps and surtax, (d) approving the settlement agreement with the Lender with respect to the proposed sale of the Miami Beach Property, and (e) granting such other and further relief as the Court deems just and proper.

## CERTIFICATION OF CONFERENCE WITH COUNSEL

Counsel for the SEC has informed undersigned counsel that it has no objection to the relief requested herein. Counsel for defendant Rishi Kapoor has informed undersigned counsel that Rishi Kapoor takes no position on the relief requested herein. Counsel for a group of unit purchasers who is included in the service list below but who has not made an appearance in this case, has advised undersigned counsel that his clients object to any sale of the Miami Beach Property that will not allow them to recoup all (if not a great sum) of their deposit funds; however, it is unclear if counsel will appear in this case.

Respectfully submitted,

**KOZYAK TROPIN & THROCKMORTON, LLP**
2525 Ponce de Leon Boulevard, 9th Floor
Coral Gables, Florida 33134
Tel: (305) 372-1800
Fax: (305) 372-3508
Email: dlr@kttlaw.com

By: */s/ David L. Rosendorf*
    David L. Rosendorf
    Florida Bar No. 996823

*Counsel for Bernice C. Lee, Receiver*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served this 10th day of September, 2024 via CM/ECF upon all counsel of record and via email and/or U.S. mail on the following lienholders, tenants and interested parties listed in the Service List.

By: */s/ David L. Rosendorf*
    David L. Rosendorf

## Service List

**Via U.S. mail***
* Copies of the motion, sale contract (Exhibit 1) and proposed order (Exhibit 10) were served on the interested parties listed below by US Mail. Copies of all other exhibits are available upon request by contacting the Receiver's office, and will be available on the Receiver's website: https://kttlaw.com/lv/ by clicking the link underneath "**Court Documents**" at the bottom left-hand corner of the webpage.

Miami-Dade County Tax Collector
200 N.W. 2nd Avenue
Miami, FL 33128

Miami-Dade County Property Appraiser
Stephen P. Clark Center
111 N.W. 1st Street, Suite 710
Miami, FL 33128-1984

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101-7346

Florida Department of Revenue
PO Box 6668
Tallahassee, FL 32314-6668

Jim Zingale
Executive Director
Florida Dept. of Revenue
5050 West Tennessee Street
Tallahassee, FL 32399

Florida Department of Revenue
Miami Service Center
3750 NW 87th Ave, Suite 300
Doral, FL 33178-2430

The Honorable Ashley Moody
Office of the Attorney General
The Capitol, PL 01
Tallahassee, FL 32399

The Honorable Markenzy Lapointe
United States Attorney
99 NE 4th Street
Miami, FL 33132

The Honorable Merrick B. Garland
United States Attorney General
Department of Justice, Room 4400
950 Pennsylvania Avenue N.W.
Washington, DC 20530-0001

Mayor Steven Meiner
City of Miami Beach
1700 Convention Center Dr.
Miami Beach, FL 33139

City of Miami Beach
c/o Steven Rothstein
Office of the City Attorney
1700 Convention Center Drive, Fourth Floor
Miami Beach, FL 33139
stevenrothstein@miamibeachfl.gov

Cooper Road LLC
101 20th Street, Apt 2501
Miami Beach, FL 33139
jayrbloom@gmail.com
jordanbloom1@gmail.com

Allen Furst
3540 Royal Palm Avenue
Coconut Grove, FL 33134

Ghislain Gouriage
8601 SW 54th Avenue
Miami, FL 33134

Jared Kaplan
6195 SW 92nd Street
Pinecrest, FL 33156

Otto Porter Jr
3109 Grand Avenue
PMB 447
Coconut Grove, FL 33133

Daniel Motha
3036 Center Street
Miami, FL 33133
djlocation1@gmail.com

DR Urbin LLC
Corporation Service Company, as
Registered Agent
1201 Hays Street
Tallahassee, FL 32301-2525

JV Urbin LLC
3471 Main Highway # 414
Miami, FL 33133

MMG Limited Investments III LLC
Marcel Navarro, as Registered Agent
9171 South Dixie Highway
Miami, FL 33156

CCG Urbin LLC
5959 Blue Lagoon Drive
Suite 200
Miami, FL 33126

CCG Urbin LLC
CORPCO, Inc., as Registered Agent
901 Ponce De Leon Blvd., 10th Floor
Coral Gables, FL 33134

Urbin Partners LLC
Rob Hyman, P.A., as Registered Agent
110 SE 6th Street, 17th Floor
Fort Lauderdale, FL 33301

John E Aibel Revocable Trust II
10598 NW South River Drive
Miami, FL 33178

Aaron Hollub
299 Alhambra Circle
Coral Gables, FL 33134

Kimley-Horn and Associates Inc.
CT Corporation System, as Registered
Agent
1200 South Pine Island Rd
Plantation, FL 33324

Kimley- Horn and Associates Inc.
Michael B. Stevens, Esq. / Milana
Kamenezki, Esq.
Derrevere Stevens Black & Cozad
2005 Vista Parkway, Suite 210
West Palm Beach, FL 33411

The Pick LLC
Abitos Advisors LLC, as Registered Agent
255 Aragon Ave., 2nd Floor
Coral Gables, FL 33134

The Pick LLC
David P. Reiner, II, Esq.
Reiner & Reiner, P.A.
9100 So. Dadeland Blvd., Suite 901
Miami, FL 33156-7815

Monica Acosta Wiesner & Lina Maria
  Acosta Wiesner
Jay R. Tome, Esq.
The Tome Law Firm, P.A.
6840 Griffin Road
Davie, FL 33314

Real Estate Viand Globe LLC
Sunny 365 Management LLC, as Registered
Agent
6735 Conroy Rd, Ste 209
Orlando, FL 32835

Jay R. Tome, Esq.
The Tome Law Firm, P.A.
jayrtome@tomelawfirm.com

Real Estate Viand Globe LLC, et al.
Jay R. Tome, Esq.
The Tome Law Firm, P.A.
6840 Griffin Road
Davie, FL 33314

Runlight, LLC
Corporaciones America LLC, as Registered
Agent
20900 NE 30 Ave., Suite 200-27
Aventura, FL 33180

Flamingo Rent, LLC
Suarez, Vega & Associates, Inc., as
Registered Agent
25 SE 2 Ave, Ste 410
Miami, FL 33131

Urban Haven, LLC
Suarez, Vega & Associates, Inc., as
Registered Agent
25 SE 2 Ave, Ste 410
Miami, FL 33131

Jolus, LLC
John E. Dannel, as Registered Agent
217 N Westmonte Dr., Ste 2018
Altamonte Springs, FL 32714

Luis Carlos, LLC
Tax Solutions & Bookkeeping LLC, as
Registered Agent
7751 Kingspointe Pkwy, Suite 119
Orlando, FL 32819

8121 NW 45th Real Estate Corp
Carlos A. Espinosa, as Registered Agent
175 SW 7th Street, 1817
Miami, FL 33130

Enda Ximena Galarza Tamayo
and Ricardo Leon Munera Uribe
Carrera 118 #4-147 Casa 10 Condominio
Gaudi
Cali, COLUMBIA 760031
rilemu@hotmail.com
ximegalarza7@hotmail.com

Jolus LLC
Hacienda De Pena Blanca Numero 9
Lomas De La Hacienda
Atizpan De Zaragoza, MEXICO 52925
jolobregon@hotmail.com

Octavio Villavicencio Vaca
Direccion Calle y La Madrid 824
Tarija, BOLIVIA
octaviovillavicenciovaca@gmail.com

Wolberg Group LLC
701 N International Blvd, Suite 123-6406
Hidalgo, TX 78557
wolberg@drwolberg.com

Monica Acosta Wiesner
and Lina Maria Acosta Wiesner
Monica Acosta Carrera 71# 97-75 Edificio
Casona De Pontevedra Apt 502
COLUMBIA
linawiesner@hotmail.com

Antesor Investments Usa Corp
221 W Hallandale Beach Blvd, Suite 312
Hallandale Beach, FL 33009
jespinos@vbtravelgroup.com

Real Estate Viand Globe Llc
milton.mendoza@inmobiliariaviand.cl

Alejandra C. Gorrin
12500 Southwest 74th Avenue
Pinecrest, FL 33009
cgorrin@donpan.com

Fernando Schmidt
La Vendimia 6191 Apt 202
Vitacura, Santiago CHILE 7660313
Fernando@consultek.cl

VT 213 Corp
2665 Executive Park Drive, Ste 2
Ft. Lauderdale, FL 33331
hernan.vega@rrsa.mx

Pamela Caratonni
Pellegrini 499
Salta, ARGENTINA A4400
carpamela@hotmail.com

Vanina Caratonni
499 Pellegrini
Salta, ARGENTINA A4400
vaninacaratonni@hotmail.com

Luis Marcelo Laroz
Cariola 388 Yerba Buena Tucuman
ARGENTINA
lmarce_la@hotmail.com

Alejandro Victor Laroz
San Lorenzo 119 San M. De Tucuman
ARGENTINA
alaroz@mobilear.com.ar

Fabio Gabriel Caminiti
Gobernador Garcia 1268
ARGENTINA
fabiocaminiti@yahoo.com.ar

Juan Manuel Garcia - TBA
Avda Europa 19b Portal 8 Bajo B. 28224
Pozuelo
De Alarcon Madrid, SPAIN
jmanuel.garcia@cepsa.com

Paula Caratonni
Pellegrini 499
Salta, ARGENTINA A4400
paulacaratonni@hotmail.com

Agcemala2 Llc/ Laurent Puons
and Agnes Puons
17666 79th St Causeway
Miami, FL 33137
lpouns@monacomediax.com

Mariano Starowicz
And Maria Florencia Esteche
Av. Cervino 3220 Piso 2 B CP 1425
Caba, ARGENTINA
Mstarowicz@Gmail.Com
mariaesteche2020@gmail.com

Flamingo Rent LLC
1100 Brickell Bay Drive Apt 53 M
Miami, FL 33131
jmacarmona@hotmail.com

The Pick LLC
155 Ocean Lane Drive
Key Biscayne, FL 33149
enriquemayol@gmail.com

Jacob Cheja Sitton
Fuente de Diana 353
Mexico City, MEXICO 53950
Jacoboch1@hotmail.com

Moises Zirdok Cain And/Or Assigns
marino@mexico.com.mx

Chin Hung Kuo and Yuliia Horbaliuk
15700 Collins Avenue, #2901
Sunny Isles Beach, FL 33160
yulia.horbaliuk@gmail.com
richard@fluotics.com

Urban Haven, LLC
1100 Brickell Bay Drive, Apt 53 M
Miami, FL 33131
jmacarmona@hotmail.com

Segre LLC by Karim Hagar
4785 Pine Creek Lane
El Paso, TX 79922
osotte@yahoo.com

Wisnicka Magdalena
and Wisnicka Wiktoria
U1 Motorowa 10/86 04-035
Warszawa, POLAND
wisnicka.wiktoria@gmail.com
wisnicka.magda@gmail.com

Santino Investments LLC
Carlos A. Vazquez, Authorized Member
3716 NE 168 St # 403
North Miami Beach, FL 33160
alejovaz2002@yahoo.com.ar

Gustavo Fernandez
3400 Galt Ocean Drive PH 2S
Ft. Lauderdale, FL 33308
director@maesco.co

Cecilia Pasara
Av. Circunvalacion Golf Los Inkas 404
G3 101 Surco
Lima, PERU 3333
ceciliapasara@gmail.com

Gustavo Fernandez & Cecilia Pasara
c/o Matthew Maranges, Esq.
matt@pbmlegal.net

Crystal Valley Investments LLC
8726 Northwest 26th Street
Doral, FL 33172
nenalandaeta@outlook.com

Crystal Valley Investments
c/o Alessandra Stivelman, Esq.
astivelman@eisingerlaw.com

Walter Otto Guerrero Brieger
Barrio Aranjuez antes de Avenida
principal
esquina avenida Oscar Alfaro
Tarija, BOLIVIA
guerrerobrieger@gmail.com

Mario Leonardo Mauriziano Apolito
Camino Punta de Aguila, Interior #4157,
Lo Barnecha
CHILE
Mario@yamaimport.cl

Pablo Fabián Marcheselli Macias
& Rocío Belén Marcheselli González
Azopardo 2333, Bella Vista
Buenos Aires, ARGENTINA
rociomarcheselli@gmail.com
pablis63@hotmail.com

Gonzalo Luis Tosti Ibanez
Av. Juan Bautistaalberdi
1342 Piso 9, Dept C
Caba, ARGENTINA
gonzalotosti@hotmail.com

Runlight LLC
Pamela Carattoni (Auth. Signer)
1234 Washington Ave
Miami Beach, FL

Mario Alberto Pereyra
and Ana María Santiago
Manzana 35 Lote 1 Las Cigarras
Valle Escondido, Cordoba ARGENTINA
arqpereyamario@hotmail.com
anaassantiago1@gmail.com

Trunk Bay Properties Llc
777 Brickell Avenue, Suite 1110
Miami, FL 33131
patty_muller84@yahoo.com

Carlota At South Beach LLC
2 Cadence Ct.
Spring, TX 77389
mifnaves@gmail.com

8121 NW 45th Real Estate Corp
8121 Northwest 32nd Avenue
Miami, FL 33147
juanfsuarez@unidrogas.com

Luis Carlos LLC
Avenida Las Americas 1352
michelmendoza@yahoo.com

Alejandra E. Rosso and Gaston A. Bono
rosssoale@hotmail.com
bonogaston@hotmail.com

Agcemala2 LLC,
Laurent Puons and Agnes Puons
17666 79th St. Causeway
Miami, FL 33137
lpouns@monacomediax.com

1234 Partners, Ltd.
Jonathan Fryd, as Registered Agent
523 Michigan Ave.
Miami Beach, FL 33139

2EE, LLC
c/o Jonathan Hoffman, as registered agent
125 Ocean Drive, Suite 501
Miami Beach, FL 33139

2EE LLC
c/o Florida Mortgage Group, Inc.
2511 Anderson Road
Coral Gables, FL 33134

2EE LLC
3121 Commodore Plaza, Suite 303
Coconut Grove, FL 33133

1234 Washington Acquisition, LLC
Robert Gutlohn, as Registered Agent
2511 Anderson Road
Coral Gables, FL 33134

1234 Washington Acquisition, LLC
Jason R. Alderman, Esq.
Troy A. Tolentino, Esq.
The Alderman Law Firm
9999 NE 2nd Avenue, Suite 211
Miami Shores, FL 33138
jalderman@thealdermanlawfirm.com
ttolentino@thealdermanlawfirm.com

South Florida Construction Solution, Inc.
Ivan Linares, as Registered Agent
1657 W. 39th Place
Hialeah, FL 33012

G. Proulx Building Products, LLC
Jocelyn Vinet, as Registered Agent
3050 N 29th Court
Hollywood, FL 33020

Touzet Studio, Inc.
Carlos Prio-Touzet, as Registered Agent
1501 SW 8th St., Fl 2
Miami, FL 33135

Rene's Equipment Rental – Master
Paving Engineering, LLC
Luis Jimenez. as Registered Agent
16401 SW 18th St.
Miramar, FL 33027

Rene's Equipment Rental – Master
Paving Engineering, LLC
c/o Jose A. Rodriguez, Esq.
2400 East Commercial Blvd., Suite 400
Fort Lauderdale, FL 33308
jose@sotolawgroup.com

Ferguson Enterprises, LLC, D/B/A
   Ferguson Waterworks
Corporate Creations Network, Inc.,
   as Registered Agent
801 US Highway 1
North Palm Beach, FL 33408

Ferguson Waterworks
Attn: Camilo Posada
1950 NW 18t St.
Pompano Beach, FL 33069

Ferguson Waterworks
c/o Alexander Barthet, Esq.
200 South Biscayne Blvd., Suite 1650
Miami, FL 33131

United Rentals (North America), Inc.
Corporation Service Company, as
Registered Agent
1201 Hays Street
Tallahassee, FL 32301-2525

United Rentals (North America), Inc.
Attn: Maria Anderson
10330 David Taylor Drive
Charlotte, NC 28269

Atlantic Coast Drilling Inc.
Marcos Aleman, as Registered Agent
234 NE 3rd St., Apt 1101
Miami, FL 33132

John Abell Corporation
John W. Abell, Jr., as Registered Agent
10500 SW 186 Street
Miami, FL 33157

Doka USA Ltd., Inc.
Corporation Service Company, as
Registered Agent
1201 Hays Street
Tallahassee, FL 32301-2525

Doka USA Ltd., Inc.
Attn: Sam Saeed
1001 NW 12th Terrace
Pompano Beach, FL 33069

Paragon Painting & Waterproofing, Inc.
Justo C. Padron, as Registered Agent
3550 SW 139th Avenue
Miramar, FL 33027

J. Hernandez and Associates, Inc.
Jose G. Hernandez, as Registered Agent
3300 NW 112th Avenue, Unit 10
Doral, FL 33172

Aya Diversity Electric, LLC
Alex Hutchinson, as Registered Agent
9937 N. Spring Way
Coral Springs, FL 33076

Integrated Cooling Solutions LLC
Capitol Corporate Services, Inc.,
   as Registered Agent
515 East Park Avenue, 2nd Fl
Tallahassee, FL 32301

Winmar Construction, Inc.
Francisco Touron, III, as Registered Agent
2665 S. Bayshore Drive, Suite 300
Miami, FL 33133

Winmar Construction, Inc.
Luis A. Leon, President
5959 Blue Lagoon Drive, Suite 100
Miami, Florida 33126

Adonel Concrete Corp.
c/o Richard Buckley, Esq.
Weston Professional Center
1820 N. Corporate Lakes Blvd., Ste 104
Weston, FL 33326

Adonel Concrete Corp.
Gerardo L. Garcia, as Registered Agent
2101 NW 110th Ave.
Miami, FL 33172

Rock & Dirt Construction Equipment Rental
LLC
Ricardo Lopez, as Registered Agent
2950 NW 132nd Terr
Opa Locka, FL 33054

South Dade Electrical Supply, Inc.
Donald C. Elliott, as Registered Agent
13627 Deering Bay Drive, Unit 704
Coral Gables, FL 33158

South Dade Electrical Supply, Inc.
Attn: Sabrina Johnson
13100 SW 87 Avenue
Miami, FL 33176

Michael Berkman
18851 NE 29th Avenue, Suite 714
Aventura, FL 33180

City of Miami Beach
c/o Steven Rothstein, Esq.
1700 Convention Center Dr., 4th Fl
Miami Beach, FL 33139

Harat's Pub Miami LLC
Dmitri Serebrianik, as Registered Agent
2632 NE 26th Ct
Fort Lauderdale, FL 33306

BGM South Beach LLC f/k/a
   BF South Beach LLC
Michael Berkman, as Registered Agent
1955 E. Hallandale Beach Blvd, First Floor
Hallandale Beach, FL 33009

Peppers, LLC aka Pepper's
   Miami Beach, LLC
c/o David Gonzalez
8254 SW 84th Av
Miami, FL 33143-6625
davidgon79@yahoo.com

Pepper's Miami Beach, LLC
c/o David Gonzalez
2842 Pine Tree Dr., Apt 10
Miami Beach, FL 33140-4350

Pepper's Miami Beach, LLC
c/o David Gonzalez
1568 Washington Ave
Miami Beach, FL 33139-7805

Pepper's Miami Beach, LLC
c/o David Gonzalez
1600 NE 1st Ave, Apt 191
Miami, FL 33132-1259

Pepper's Miami Beach, LLC
c/o David Gonzalez
11105 S.W. 73rd Avenue
Miami, FL 33156