# EXHIBIT 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-cv-24903-CIV-JB

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.

RISHI KAPOOR; *et al.*,

    Defendants.
_____/

**ORDER GRANTING RECEIVER'S *EXPEDITED* MOTION TO APPROVE
SALE OF THE MIAMI BEACH PROPERTY FREE AND CLEAR**

**THIS CAUSE** came before the Court upon the Receiver, Bernice C. Lee's *Expedited* Motion to Approve Sale of the Miami Beach Property Free and Clear (the "Motion"). ECF No. [___]. The Court has carefully considered the Motion, and the accompanying exhibits, as well the pertinent portions of the record and the relevant legal authorities. For the reasons explained more fully below, the Motion is **GRANTED**.

    **I.**    **BACKGROUND**

On December 27, 2023, the Securities and Exchange Commission ("SEC") filed a Complaint for Injunctive Relief against Rishi Kapoor ("Kapoor") and the Receivership Companies alleging that Kapoor used the Receivership Companies to operate a real estate scheme in violation of the anti-fraud provisions of the federal securities law raising approximately $93 million from more than 50 investors from January 2018 through March 2023. *See generally* Complaint, ECF No. [14-1]. On January 12, 2024, the Court entered an Order appointing Bernice C. Lee as receiver "for the estate of the Receivership Companies, including any of [their] divisions, subsidiaries, affiliates, successors, and assigns; and any fictitious business entities or business names created or

1

used by the Receivership Companies, their divisions, subsidiaries, affiliates, successors, and assigns." ("Receivership Order"). ECF No. [28] at ¶ 2.

The Receivership Order authorizes the Receiver to sell real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property. *Id*. at ¶ 32. The Receivership Order further provides that "[u]pon further Order of the Court, pursuant to such procedures as may be required by the Court and additional authority such as 28 U.S.C. sections 2001 and 2004, the Receiver is authorized to sell, and transfer clear title to, all real property in the Receivership Estate." *Id*. at ¶ 33.

On January 24, 2024, the Court entered an Order approving the parties' Stipulation Waiving Requirements of 28 U.S.C. § 2001(a) and (b) in Connection with Real Property Sale Motion (the "Section 2001 Order"). ECF No. [51]. The Section 2001 Order provides that "[t]he Receiver is excused from compliance with 28 U.S.C. section 2001 in connection with the sale of real property in this case." ECF No. [51].

A. The Miami Beach Property

Urbin Miami Beach Owner, LLC ("Miami Beach Owner") owns two parcels in Miami Beach with an address of 1260 Washington Avenue consisting of primarily vacant land, and 1234 Washington Avenue with an existing three-story commercial building that has been gutted. ECF No. [____] at ¶ 9. Urbin Miami Beach Partners, LLC is a Receivership Company that is the sole owner of Urbin Miami Beach Mezzanine, LLC, which is the sole owner of Miami Beach Owner. *Id*. at ¶ 8; ECF No. [___- Ex. 2, ___ - Ex. 3].

On April 15, 2024, the Court entered the Order Granting Receiver's Motion for Authorization to Employ Broker/Auctioneer, and approved the Receiver's employment of Lamar

2

P. Fisher, CAI, AARE and Fisher Auction Company (together "Fisher Company") as her broker for the Miami Beach Property. ECF No. [____] at ¶ 24. Fisher Company engaged in an extensive and commercially reasonable marketing process for the Maimi Beach Property. *Id*. at ¶ 25; ECF No. [___- Ex. 9]. The Fisher Declaration attached to the Motion describes the Fisher Company's marketing process that included marketing the Miami Beach Property through emails to its contact list of over 17,000 subscribers and a worldwide blast email to over 300,000 potential buyers via PropertyCampaign.com. ECF No. [___- Ex. 9]. The Fisher Company had 142 calls or emails from interested parties from 22 different states, territories and countries, and 38 parties executed confidentiality agreements to obtain access to the due diligence information. *Id*.

On September 3, 2024, the Receiver received a contract from Pakman Miami Beach LLC (the "Buyer") to purchase the property for $17.5 million, which was the result of an arms-length negotiation (the "Sale Contract"). ECF Nos. [____] at ¶ 29; [____- Ex. 1]. This offer was the highest all cash offer that was received with no due diligence period. ECF No. [____] at ¶ 29.

The Miami Beach Property is encumbered by a lien in favor of first position lender 1234 Washington Acquisitions, LLC (the "Lender"), which has filed a foreclosure action and sought 24.99% default interest. *Id*. at 1, ¶¶ 14, 16. The Receiver has reached an agreement with the Lender with respect to the proposed sale of the Miami Beach Property. The terms of this agreement are set out in the Motion, *id*. at ¶ 33, and below. The Receiver states that the aggregate amount of filed lien claims exceeds $11,000,000, and there are potential unsecured claims of depositors in connection with the purchase of units that likely exceed $10,000,000. *Id*. at ¶¶ 18, 21. In addition, the City of Miami Beach has provided the Receiver a statement as of July 17, 2024 for 1260 Washington Avenue with a total amount due of $340,384.32, and 1234 Washington Avenue with a total amount due of $30,807.09 (the "Statements"). *Id*. at ¶ 19; ECF No. [___- Ex. 7, Ex.8].

### B. The Sale Motion and Notice

The Receiver filed the Motion seeking the Court's approval to sell the Miami Beach Property free and clear of any liens, claims, interests and encumbrances, and to enter into the proposed settlement agreement with the Lender. ECF No. [____]. All interested parties known to the Receiver have received notice of the Motion. *Id*. at 21.

The Receiver argues that it is in the best interest of the receivership estate to consummate the sale of the Miami Beach Property under the Sale Contract and proposed settlement with the Lender because the sale will generate sufficient funds to pay the Lender Payment, unpaid real estate taxes and utility bills, and the settlement will reduce claims against the Receivership Estate. *Id* at ¶ 30. The Sale Contract for $17.5 million is the highest all cash offer received with no due diligence period, and was the result of an arms-length negotiation. *Id.* at ¶ 20. The Lender provided the Receiver with a payoff as of June 19, 2024 stating it is owed $19,271,006.71, plus a per diem default rate of $10,167.16. *Id*. at ¶ 16. The Receiver states that even assuming that only non-default interest applied through June 19, 2024, the Lender would be owed approximately $16,766,000, and would have an unsecured deficiency claim that exceeds $2,500,000. *Id*. at 23. Under the settlement, the Lender will receive a reduced payment of approximately $16,740,000 or less, and the Lender will not file a claim in, or seek a distribution from the receivership estate, with respect to amounts owed relating to the Miami Beach Property. *Id*. The proposed settlement will provide for a source of payment for the professional fees and expenses incurred by the estate to administer the Miami Beach Property. *Id*.

## II.   ANALYSIS

"The district court has broad powers and wide discretion to determine relief in an equity receivership." *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (citations omitted). "The

4

district court has broad powers and wide discretion to determine relief in an equity receivership." *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (citations omitted); *Sec. & Exch. Comm'n v. Harbor City Capital Corp.*, No. 6:21-cv-694-CEM-DCI, 2023 WL 1105282 (M.D. Fla. Jan. 30, 2023) ("To be sure, 'it has long been recognized that under appropriate circumstances, a federal court presiding over a receivership may authorize the assets of the receivership to be sold free and clear of liens and related claims.'"). This Court has previously determined that this includes the power to authorize the sale of real property free and clear of liens, claims, interests and encumbrances. ECF No. [185]. Even where the sale of an asset will not generate sufficient funds to satisfy all existing lien claims, the sale still can produce a benefit by reducing the claims assertable against the Receivership Companies' assets and estate. *Capital Cove*, 2015 WL 9701154 at *8 (where receiver presented evidence of the large number of unsecured and junior creditors who were defrauded, and the receiver's expected inability to pay the full amount of each claim from the pooled assets of the receivership, it was in best interests of the receivership estate to sell properties at highest possible market price, even if below the aggregate value of existing liens, rather than abandoning the properties).

The Receiver has shown that the proposed sale is reasonable given the circumstances, represents the highest possible market price the Receiver believes is attainable in the circumstances, and will maximize the value of the Miami Beach Property, particularly since the Sale Contract is the highest all cash offer received with no pending inspection period. ECF No. [___] at ¶ 29. The sale will provide sufficient funds to pay unpaid 2023 real estate taxes, prorated 2024 real estate taxes, utility bills, the Lender Payment and Carveout. The Receiver has further shown that in the best interests of the Receivership Estate to consummate this transaction in order to reduce the claims asserted against the Receivership Estate, as the Lender has agreed to not file

5

a claim in, or seek a distribution from the receivership estate, with respect to its deficiency claim which based on the Lender's payoff would be more than $2,500,000.

### III. CONCLUSION

For the foregoing reasons, and finding that good cause exists, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Receiver's Motion ECF No. [_____] is **GRANTED**.

2. All interested parties listed in the service list for the Motion have had the opportunity to object to the relief granted by this Order and, to the extent that any objections have not been withdrawn or resolved by stipulation prior to the entry of this Order or are not resolved by the relief granted herein or as stated in the record, all such objections are hereby overruled.

3. The Receiver is authorized to enter into the Sale Contract attached to the Motion as Exhibit 1, and the Receiver, as the Receiver over Urbin Miami Beach Partners, LLC, the owner of Urbin Miami Beach Mezzanine, LLC, the owner of Miami Beach Owner, is authorized to execute the receiver's quitclaim deed and receiver's bill of sale attached to the Sale Contract, and other documents necessary for the proposed sale.

4. While the sale of the Miami Beach Property will be free and clear of pre-existing liens as stated in Paragraphs 5 and 6 below, to the extent there are any remaining sale proceeds after the payments stated in Paragraph 10 below, all liens against the Miami Beach Property, including, but not limited to the liens described in the Receiver's Motion and those asserted through the closing date, are not extinguished, but rather, will attach to such remaining sale proceeds, if any, with

5. The sale of the Miami Beach Property, with a legal description of Lots 1, 2, 3, 4 and the North 1/2 of Lot 5, Block 22, of OCEAN BEACH, ADDITION NO. 3, according to the plat thereof as recorded in Book 2, Page(s) 81, of the Public Records of Miami-Dade County, Florida, also known as Real Property taxed under folio numbers 02-4203-009-0040 with an address of 1260 Washington Avenue consisting of vacant land and 02-4203-009-0050 with an address of 1234 Washington Avenue which is improved with an office building, to the Buyer, free and clear of all liens, claims, interests and encumbrances, including, but not limited to, the mortgages, liens, *lis pendens*, charges, leases, and all amounts set forth in the Statements from the City of Miami Beach described in the Receiver's Motion, and those asserted through the closing date, is approved on an as-is, where-is basis, without representations or warranties from the Receiver.

6. The mortgages, liens, *lis pendens*, charges, leases, and Statements described in the Receiver's Motion are as follows:

    a. Mortgage in the original principal sum of $14,000,000, executed by Urbin Miami Beach Owner, LLC, a Florida limited liability company in favor of 1234 Partners, Ltd., a Florida limited partnership, recorded in Book 32501, Page 299, as modified by document recorded in Book 33222, Page 3022, and assigned to 1234 Washington Acquisition, LLC, a Florida limited liability company by document recorded in Book 33808, Page 4802,

    b. Assignment of Rents and Leases from Urbin Miami Beach Owner, LLC, a Florida limited liability company to 1234 Partners, Ltd., a Florida limited partnership recorded May 12, 2021, in Book 32501, Page 321,

    c. UCC-1 Financing Statement naming 2EE LLC as secured party and Urbin Miami Beach Owner, LLC as debtor, filed June 06, 2022, recorded in Book 33222, Page 3051,

7

d.  Claim of Lien in favor of South Florida Construction Solution, Inc. for $811,704.80 recorded on June 12, 2023 Book 33746, Page 173,

e.  Claim of Lien in favor of G. Proulx Building Products, LLC for $128,956.72 recorded on June 14, 2023 Book 33748, Page 4446,

f.  Claim of Lien in favor of Touzet Studio, Inc. for $44,677.81 recorded on June 21, 2023 Book 33755, Page 4675,

g.  Claim of Lien in favor of Rene's Equipment Rental – Master Paving Engineering, LLC for $181,738.50 recorded on June 22, 2023 Book 33759, Page 1402,

h.  Claim of Lien in favor of Ferguson Waterworks for $23,857.28 recorded on July 12, 2023 Book 33788, Page 3766,

i.  Claim of Lien in favor of United Rentals (North America), Inc. for $34,155.17 recorded on July 31, 2023 Book 33815, Page 4816,

j.  Claim of Lien in favor of Atlantic Coast Drilling for $20,592.50 recorded on August 7, 2023 Book 33826, Page 935,

k.  Claim of Lien in favor of John Abell Corporation for $423.62 recorded on August 24, 2023 Book 33850, Page 4612,

l.  Claim of Lien in favor of Doka USA, Ltd. for $40,095.71 recorded on September 25, 2023 Book 33898, Page 703,

m.  Claim of Lien in favor of Paragon Painting & Waterproofing, Inc. for $24,304.00 recorded on September 25, 2023 Book 33898, Page 2282,

n.  Claim of Lien in favor of J. Hernandez and Associates, Inc. for $9,300 recorded on October 2, 2023 Book 33907, Page 530,

o.  Claim of Lien in favor of Integrated Cooling Solutions LLC for $133,080, recorded on October 23, 2023, Book 33937, Page 103,

p.  Claim of Lien in favor of Winmar Construction, Inc. for $447,415.50 recorded on July 7, 2023 Book 33783, Pages 2933,

q.  Claim of Lien in favor of Winmar Construction, Inc. for $456,070.50 recorded on August 22, 2023 Book 33845, Pages 4917,

r.  Claim of Lien in favor of Winmar Construction, Inc. for $3,898,808.59 recorded on July 7, 2023 Book 33783, Pages 2931,

8

s. Claim of Lien in favor of Winmar Construction, Inc. for $4,249,098.59 recorded on August 22, 2023 Book 33845, Pages 4915,

t. Claim of Lien in favor of Winmar Construction, Inc. for $671,260.93 recorded on July 11, 2023 Book 33787, Pages 1999,

u. Claim of Lien in favor of Adonel Concrete Corp. for $52,414.67 recorded on June 13, 2023 Book 33746, Page 4470,

v. Claim of Lien in favor of Rock & Dirt Construction Equipment Rental LLC for $23,878.50 recorded on June 15, 2023 Book 33750, Page 390,

w. Claim of Lien in favor of South Dade Electrical Supply, Inc. for $7,582.17 recorded on August 4, 2023 Book 33824, Page 1031,

x. Claim of Lien in favor of Aya Diversity Electric, LLC for $81,090.09 recorded on July 7, 2023 Book 33783, Pages 3175-3176,

y. Claim of Lien in favor of Aya Diversity Electric, LLC for $15,930.00 recorded on July 7, 2023 Book 33783, Pages 3177-3178,

z. Claim of Lien in favor of City of Miami Beach for $8,302.38 recorded on December 8, 2008 Book 26676, Page 3090,

aa. Claim of Lien in favor of City of Miami Beach for $8,302.38 recorded on December 8, 2008 Book 26676, Page 3091,

bb. Notice of Lis Pendens for Case No. 2023-020039-CA-01, styled 1234 Washington Acquisition, LLC v. Urbin Miami Beach Owner, LLC recorded on July 27, 2023 Book 33812, Page 3444,

cc. Notice of Lis Pendens Case No. 2023-083125-CC-05, styled Ferguson Enterprises, LLC, D/B/A Ferguson Waterworks v. Urbin Miami Beach Owner, LLC recorded on August 2, 2023 Book 33820, Page 2024,

dd. Notice of Lis Pendens for Case No. 2023-021077-CA-01, styled Rene's Equipment Rental-Master Paving Engineering, LLC, a Florida limited liability company v. Urbin Miami Beach Owner, LLC recorded on August 15, 2023 recorded in Book 33838, Page 2085,

ee. Notice of Lis Pendens Case No. 2023-020039-CA-01, styled 1234 Washington Acquisition, LLC v. Urbin Miami Beach Owner, LLC recorded in Book 33916, Page 4574,

ff. Michael Berkman who filed a UCC Financing Statement as to Debtor BF Burger Group, LLC, recorded on March 2, 2016 in Book 29983, Page 323,

9

    gg. Statements provided by the City of Miami Beach attached as Exhibit 7 and Exhibit 8 to the Motion and other charges by the City of Miami Beach,

    hh. Lease agreement by and between 1234 Partners as lessor, and Harat's Pub Miami, LLC as lessee, a Memorandum of Lease of which was recorded September 10, 2018, in Book 31132, Page 3593,

    ii. Lease agreement by and between 1234 Partners as lessor and BF South Beach LLC as lessee, a Memorandum of Lease of which was recorded January 23, 2013, in Book 28454, Page 3836, and

    jj. Lease agreement by and between 1234 Partners as lessor and Peppers, LLC as lessee, a Memorandum of Lease of which was recorded March 22, 2011, in Book 27625, Page 768.

7. Any licensed title insurer and the Buyer are authorized to rely on this Order as authorizing the transfer of legal title to the Miami Beach Property described in paragraph 5 to Buyer.

8. The Receiver is authorized to take any and all actions reasonably necessary to consummate the sale of the Miami Beach Property including, but not limited to, executing the receiver's quitclaim deed, receiver's bill of sale, title affidavits, and closing statements reasonably required to consummate the sale of the Miami Beach Property in accordance with the terms of the Sale Contract.

9. The settlement agreement between the Receiver and 1234 Washington Acquisitions, LLC (the "Lender") set forth in the Motion is **APPROVED**.

10. The Receiver is authorized to pay at closing: (a) the Lender Payment (as defined in the Motion), (b) unpaid 2023 real estate taxes and 2024 prorated real estate taxes, (c) any pending, unpaid or accrued charges for utility bills for the City of Miami Beach, (d) the seller's closing costs specified in the Sale Contract, including, but not limited to, documentary stamps and surtax, and (e) the Carveout (as defined in the Motion) to the receivership estate for the benefit of the receivership estate. The

Carveout funds will be free and clear of any liens, claims and encumbrances, and will constitute an unencumbered asset of the receivership estate. The Receiver is authorized to pay Fisher Company $25,000 from the Carveout funds in full satisfaction for services provided in connection with the Miami Beach Property, and the disbursement of the remainder of the Carveout will be subject to further court order granting the Receiver's fee application.

**DONE AND ORDERED** in Miami, Florida this \_\_\_\_ day of _____, 2024.

_____
**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**