UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:23-CV-24903-CMA

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

RISHI KAPOOR, et al.

    Defendants.
_____/

**NON-PARTIES' AMENDED[1] *URGENT* NOTICE OF OBJECTION TO RECEIVER'S EXPEDITED MOTION TO APPROVE SALE OF MIAMI BEACH PROPERTY FREE AND CLEAR AND RELATED SETTLEMENT AGREEMENT & MOTION TO POSTPONE RULING OF SAID MOTION & REQUEST FOR TIME TO FILE MORE FORMAL MOTIONS AND/OR SUPPLEMENTAL BRIEF ON ARGUMENTS PRESENTED**

Non-Parties, REAL ESTATE VIAND GLOBE, LLC, a Florida limited liability company, ("Viand Globe"); PAMELA CARATTONI, an individual, ("Pamela C"); VANINA CARATTONI, an individual, ("Vanina C"); PAULA CARATTONI, an individual, ("Paula C"); RUNLIGHT, LLC, a Florida limited liability company, ("Runlight"); ALEJANDRO VICTOR LAROZ, an individual, ("Alejandro L"); LUIS MARCELO LAROZ, an individual, ("Luis L"); MARIANO STAROWICZ, an individual, ("Mariano S"); MARIA FLORENCIA ESTECHE, an individual, ("Maria E"); FLAMINGO RENT, LLC, a Florida limited liability company, ("Flamingo"); URBAN HAVEN, LLC, a Florida limited liability company, ("Urban"); MOISES ZIRDOK CAIN, an individual, ("Moises C"); JOLUS, LLC, a Florida limited liability company, ("Jolus"); LUIS CARLOS, LLC, a Florida limited liability company, ("LC LLC"); OCTAVIO VILLAVICENCIO VACA, an individual, ("Octavio V"); JACOBO CHEJA SITTON, an individual, ("Jacobo S"); MARIO LEONARDO MAURIZIANO APOLITO, an individual, ("Mario M"); 8121 NW 45TH REAL ESTATE CORP., a Florida Corporation, ("8121 Corp");

---

[1] This "Amended" nature of this Pleading is revisions made to matters asserted in the initial pleading in Section V. Section V has been revised.

and, WALTER OTTO GUERRERO BRIEGER, an individual, ("Walter G"); SANTINO INVESTMENTS, LLC. a Florida limited liability company ("Santino LLC"); and MONICA ACOSTA WIESNER and LINA MARIA ACOSTA WIESNER, individuals (the "Wiesners") (collectively "the "Defrauded Victims"), pursuant to applicable Federal Rules of Civil Procedure, and by and through undersigned counsel hereby file this Urgent Notice of Objection to Receiver's Expedited Motion to Approve Sale of Miami Beach Property Free and Clear and Related Settlement Agreement & Motion to Postpone Ruling of Said Motion & for Time to File More Formal Motions and/or File a Supplemental Brief on Arguments Presented (hereinafter referred to as, the "Notice"), and state as follows:

I. **INTRODUCTION**

As an initial matter, this pleading constitutes the Defrauded Victims' Notice of their objection to Receiver's Expedited Motion to Approve Sale of Miami Beach Property Free and Clear and Related Settlement Agreement (the "Receiver's Expedited Motion") filed on or about September 11, 2024, [ECF Document No. 220]. This pleading also serves as a motion to postpone a ruling on Receiver's Expedited Motion and a request for time to allow counsel for the Defrauded Victims time to supplement this Notice with a more formal motion and/or a legal brief in support of the arguments presented in this pleadings. This Notice respectfully informs the Court of the Defrauded Victims desire to have their "voices" heard in these proceedings, before the Court rules on the Receiver's Expedited Motion. Both undersigned counsel and the Defrauded Victims therefore beg the Court's indulgence in considering this Notice filed on an urgent basis so that the Notice can be "of record", and allow undersigned counsel time to file more formal pleadings and/or supplement this Notice with a legal brief in support of the arguments made herein. In light of the urgent nature of this Notice, further indulgence of the Court is sought in requesting leeway with regards to compliance with applicable Federal Rules of Civil Procedure and/or Local Rules that may govern the Notice, and the motion contained herein. With the above requests for

indulgence in mind, the Defrauded Victims provide the Court with the following summary of their stake in this matter, and their interest in the Miami Beach Property. Reference to the "SEC Defendants" throughout this Notice is a reference to all the named defending parties to this action.

## II. THE DEFRAUDED VICTIMS AND THEIR TEN MILLION DOLLAR INVESTMENT WITH KAPOOR AT URBIN MIAMI BEACH.

The Defrauded Victims executed sale and purchase agreements (the "Agreements") in that condominium development project referred to in their respective agreements as Urbin Miami Beach Condominium (the "Urbin Miami Beach Project"). The Defrauded Victims as inducement for their execution of the Agreements were promised:

(a) an opportunity to own a condominium unit in Miami Beach, Florida;

(b) a promise and representation of a return on investment ("ROI"), of no less than seven percent (7%) interest annualized, and paid quarterly in cash; or, paid at the closing of a unit, on all deposit amount payments made by the Defrauded Victims towards the purchase of a unit, and earning said interest from the date of the deposit payments, through the date of closing;

*(c) a "leaseback" arrangement whereby the SEC Defendants promised and agreed to "leaseback" the Defrauded Victims' units at closing, and then post-closing, sublease out the units to third parties, with a promised and represented guaranteed flow of rental income to be paid to the Defrauded Victims by the SEC Defendants over a specified period of time, at a contractually specified amount, said rental income constituting an additional ROI on the purchase of their Unit;* (Emphasis added).

(d) a promise and representation by the SEC Defendants to "buy-back" from the Defrauded Victims their units at a set purchase price amount over a contractually specified period of time after closing, constituting a further ROI on the purchase of a unit;

(e) a promise and representation that all deposit payments made would be used towards the construction and completion of the Defrauded Victims' units at the Urbin Miami Beach Project.

In light of the above representations and as required under the Agreements, the Defrauded Victims collectively deposited with the SEC Defendants over Ten Million Dollars $10,000,000.00. The Defrauded Victims are middle class South American that were targeted by the SEC Defendants, and their deposited amounts represent a substantial portion of their current life savings. The Agreements however, were more than just ordinary and customary agreements for the sale and purchase of condominium units at the Urbin Miami Beach Project. The Agreements and the related exhibits and ancillary agreements as a whole constitute an investment opportunity and leasing agreement for the units purchased. In short, the Agreements establish not only ownership rights at the Urbin Miami Beach Project but also "leasing rights" to have been exercised by the Defrauded Victims at the closing of their units. The Agreements and the related documents attached thereto therefore constitute ownership and leasing rights which encumber the Miami Beach Property, the subject of the Receiver's Expedited Motion. A true and correct copy of one of the Agreements is attached hereto (as a sample in support of this Notice) as Exhibit "A" and is incorporated herein.

### III. THE MIAMI BEACH PROPERTY IF SOLD AS PROPOSED WILL BE SOLD GROSSLY UNDER VALUE AND WILL WIPE OUT THE DEFRAUDED VICTIMS' INTERESTS IN THE PROPERTY

The Miami Beach Property has been marketed for sale and is being purchased as "commercial" and not as "residential". As such the proposed purchase price of the Miami Beach Property is set at $17,500,000. The Receiver's Expedited Motion seeks approval of the sale of the Miami Beach Property "free and clear of all liens, claims, interests, and encumbrances…." If approved by the Court under the terms of the sale sought by the Receiver, the Defrauded Victims' property rights and leasing rights will be wiped out, and further, any opportunity of the Defrauded Victims receiving any portion of their collective $10,000,000.00 investment in the Urbin Miami

Beach Project will be wiped out. The Miami Beach Property does not necessarily has to be marketed or sold as "commercial."

This Honorable Court is empowered (through the exercise of its equitable powers) not to approve the sale, at a minimum, not now, not yet, without further inquiry and investigation into the matters brought forth to the Court's attention via this Notice.

First, undersigned counsel has received confirmation from the City of Miami Beach that the Miami Beach Property, although currently zoned as "commercial", can be re-zoned (and therefore sold) as "residential." The Receiver has been notified, is aware of, and has acknowledged the available zoning classification of the Miami Beach Property as "residential." The significance of residential zoning classification is a potential sales price of the Miami Beach Property of well over the $17,500,000.00 proposed sales price the Receiver seeks approval of. Estimated sales price range for the Miami Beach Property as "residential" are between $25,000,000.00 to $32,000,000.00 an amount that well exceeds the mortgage (lien) amount encumbering the Miami Beach Property held by the First Position Lender referenced in the Receiver's Expedited Motion. The Receiver proposes to payout the First Position Lender in the amount of $16,740,000.00 from the proceeds of the proposed sale. Such a payout will wipe out the Defrauded Victims' interest in the Miami Beach Property and make it impossible for them to recover their $10,000,000.00 rights and claim in the Miami Beach Property.

On the other hand, if the Court were to postpone approval of the sale of the Miami Beach Property, and order the receiver to spend additional time and effort in marketing the Miami Beach Property as "residential", the Defrauded Victims would stand a chance of not being wholly wiped out in their attempt to recover their deposited sums.

## IV. THE FIRST POSITION LENDER'S ALREADY ATTAINED ROI AND FAILURE TO PERFECT THEIR INTEREST IN THE PROPERTY

For the reasons that follow, the Court is empowered to order a distribution scheme where the First Position Lender receives only $14,850,000.00 from the sale of the Miami Beach Property. A review of the mortgage foreclosure pleadings filed by the First Position Lender (the "Foreclosure Action") and the attached exhibits to the foreclosure complaint (all included in the Receiver's Expedited Motion) reflects that the First Position Lender's loan of $14,850,000.00 (the "Loan Principal") is evidenced by a balloon note and mortgage (collectively the "Loan Documents"). A copy of the Note is attached hereto as Exhibit "B" and incorporated herein.

The Loan Documents therefore only required interest payment during the life of the loan, with the Loan Principal to be paid upon maturity of the Loan Documents.  Under this lending scheme the First Position Lender successfully obtained its return on investment ("ROI") as a result of the SEC Defendants' successful payments of the monthly interest amounts under the Loan Documents. The default event as pled by the First Position Lender was the SEC Defendant's failure to pay the Loan Principal upon maturity; the default event did not center on the SEC Defendants failure to have paid the ROI interest payments; meaning, the SEC Defendants defaulted under the Loan Documents when they failed to pay the Loan Principal.

The Receiver's desire to have the Court approve the immediate sale of the Miami Beach Property is driven to a great degree by the supposed "pressure" to pay off the Loan Principal.  In reality, no such pressure should exist because the First Position Lender, having already achieved its ROI given the receipt of all interest payments under the Loan Documents, stands well assured to be paid at a minimum,  the Loan Principal upon the sale of the Miami Beach Property which in spite of the current "short sale" type environment, has garnered a proposed purchase price of $17,500,000.00.  With the assurance that at a minimum the First Position Lender is assured of the return of the Loan Principal, the Court is empowered to postpone the sale of the Miami Beach

6

Property, and order the Receiver to spend additional time and effort to market and sell the Miami Beach Property at "residential" value, for amounts in the millions greater than the current $17,500,000.00, allowing for the possibility of recovery on part of the Defrauded Victims of some of their deposit amounts.

Second, a close review of the Loan Documents reflect that the First Position Lender as part of its securitization scheme, included in many, if not all of the Loan Documents, "assignment of rents" language, current and *future*. (Emphasis added). One particular Loan Document, titled, "Assignment of Warranties and Other Contract Rights" (attached hereto as Exhibit "C" and incorporated herein) , specifically sets forth an assignment to the First Position Lender of future lease rights of the SEC Defendants, which in turn were the future lease rights of the Defrauded Victims.  As mentioned earlier in this Notice, the Defrauded Victims' Agreements are more than a simple sale and purchase agreement, as they included a "lease back" agreement between the Defrauded Victims and the SEC Defendants whereby the purchased units would be leased to the SEC Defendants and in turn sub-leased to third parties as part of the "greater investment opportunity" sold to the Defrauded Victims.  As such, the Defrauded Victims, aside from ownership rights to the Miami Beach Property,  have future leasing rights to their units, which cannot be extinguished through the sale of the Miami Beach Property.  Consequently, by failing to add as parties to the Foreclosure Action the Defrauded Victims (and all other purchasers of units at the Miami Beach Property) the First Position Lender has failed to perfect its lien of the Miami Beach Property, and cannot therefore fully foreclosure on the claims and interests (i.e. the lease rights and ownership rights) of the Defrauded Victims.  In turn, the Receiver cannot therefore seek the approval of the Court of a sale in the manner desired; to wit, that the sale of the Miami Beach Property be accomplished by transferring clear and unencumbered title to the property free of any and all (secured or unsecured) claims of any and all affected parties, including the rights of the Defrauded Victims.

### V. THE NEED TO MORE THOROUGHLY VET THE PROPOSED BUYER TO ENSURE NO TIES TO THE SEC DEFENDANTS

The Receiver proposes the sale of the Miami Beach Property to Pakman Miami Beach LLC (the "Buyer"). Regardless of the representations and warranties cited by the Receiver in its expedited motion relating to the Buyer being a "disinterested party" in connection to the purchase of the Miami Beach Property, it is respectfully submitted that the Receiver needs to more thoroughly vet each of the principals of the Buyer in order to ensure that the Buyer (i.e. all of its principals, investors, officials, and board members) have no connection whatsoever, past or present, with the SEC Defendants or any of the SEC Defendants' past or present officers, directors, employees, and agents; and, further, the Receiver needs to ensure that the Buyer became aware of the purchase opportunity of the Miami Beach Property through independent sources; i.e. became aware of the purchase opportunity through no one having any connection with the SEC Defendants in any capacity. Undersigned counsel due to the urgency in filing this Notice has not had sufficient time to fully vet the "connecting of dots" between the Buyer and the Miami Beach Property. Given the importance of doing so, the need to do so is sufficient cause to pause and postpone the sale of the Miami beach Property to ensure that under no circumstances can a SEC Defendants related party ever own the Miami Beach Property. Given that the City of Miami Beach has confirmed "residential" as an allowable zoning for the Miami Beach Property, it is a grave concern of the Defrauded Victims that if the property is sold under value as "commercial", the Buyer will soon after its purchase, seek a zoning classification of the Miami Beach Property as "residential", and thereby achieve an inequitable windfall in its purchase of the property, and achieve this windfall at the expense of the Defrauded Victims.

### VI. CONCLUSION

For the foregoing reasons, the Defrauded Victims merely seek that the Court postpone its ruling of the Receiver's Expedited Motion and order the Receiver to spend more time and effort in

attempting to market and sell the Miam Beach Property as residential and not commercial. It is respectfully submitted that the arguments set forth above and the proffered facts as to the Buyer potentially being an "interested party" (in relation to the SEC Defendants) and the First Position Lender not having perfected its lien in the Foreclosure Actions, constitutes cause to "pause" on the approval of the sale of the Miami Beach Property. Further, it is the intent of the Defrauded Victims to present themselves, through undersigned counsel, before the City of Miami Beach Government and Zoning Department, and obtain the commitment of the City of Miami Beach that the Miami Beach Property will receive a residential zoning classification; thus, allowing the Miami Beach Property to be marketed and sold as residential, thereby resulting in a purchase price estimated to be north of $25,000,000.00.

**WHEREFORE,** the Defrauded Victims respectfully requests the Court to: (i) note their objection to the sale of the Miami Beach Property; (ii) postpone ruling and or continue the hearing on the Receiver's Expedited Motion; (iii) allow counsel for the Defrauded Victims time to file a more thorough and formal Motion Objecting to Sale; (iv) order the Receiver to further explore the possibility of marketing and selling the Miami Beach Property as "residential" and vet more thoroughly First Position Lender's priority standing in connection to the Miami Beach Property and vet the Buyer more thoroughly to eliminate any doubt of whether the Buyer is in fact a "disinterested party"; and, (v) enter all other orders that are necessary and just.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

The undersigned counsel hereby certifies that, during the past weeks preceding this Notice, our office conferred verbally and via email with counsel on behalf of the Receiver, and counsel on behalf of the SEC regarding some of the relief sought herein. Counsel for Receiver and Counsel for the SEC indicated that they did not have an objection to the Defrauded Victim's being allowed to be heard on the Receiver's Expedited Motion. Undersigned Counsel did request of Counsel for the Receiver to postpone the sale of the Miami Beach Property, but

Counsel for Receiver did not agree to the postponement. Undersigned counsel has not had time to reach out to any of the other parties regarding this Notice.

Dated: September 18, 2024

        Respectfully Submitted,
        **The Tome Law Firm, P.A.**
        Attorneys for the Defrauded Victims
        6840 Griffin Road
        Davie, Florida 33314
        Telephone: (305) 809-8099
        Primary Email: jayrtome@tomelawfirm.com
        Secondary Email: jayrtome@gmail.com

       By _____/s/ Jesus R. Tome_____
        **JESUS R. TOME, ESQUIRE**
        Florida Bar No.: 769400

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 18th day of September 2024, I electronically filed the foregoing document with the Clerk of Courts using the CM/ECF filing system, which will send a notice of electronic filing to all counsel of record.

        */s/ Jesus R. Tome, Esquire*
        Jesus R. Tome, Esq.