**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 23-24903-CIV-JB**

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,
v.

RISHI KAPOOR, et al.,

    Defendants.
_____/

**RECEIVER'S RESPONSE IN OPPOSITION TO EXPEDITED MOTION
BY MEMBERS OF URBIN COCONUT GROVE PARTNERS, LLC FOR
RELIEF FROM STAY OF ANCILLARY LITIGATION AND/OR FOR
PARTIAL VACATION, MODIFICATION, OR CLARIFICATION OF
<u>ORDER APPOINTING RECEIVER AND IF NECESSARY TO INTERVENE</u>**

Bernice C. Lee, as Receiver ("Receiver") over the Receivership Companies,[1] responds to the Expedited Motion by Members of Urbin Coconut Grove Partners, LLC for Relief from Stay of Ancillary Litigation and/or for Partial Vacation, Modification, or Clarification of Order Appointing Receiver and if Necessary to Intervene ("Stay Relief Motion") (DE#244) filed by CWL-CH, LLC, ASJAIA, LLC and Vieden Grove Oz, LLC ("CG Investors"). The CG Investors – who are equity investors in one of the Receivership Companies, seeking to assert a *lis pendens* against Receivership Property – have failed to establish a basis for relief from the Receivership

---

[1] The "Receivership Companies" or "Receivership Defendants" include: Location Ventures, LLC, URBIN, LLC, Patriots United, LLC; Location Properties, LLC; Location Development, LLC; Location Capital, LLC; Location Ventures Resources, LLC; Location Equity Holdings, LLC; Location GP Sponsor, LLC; 515 Valencia Sponsor, LLC; LV Montana Sponsor, LLC; URBIN Founders Group, LLC; URBIN CG Sponsor, LLC; 515 Valencia Partners, LLC; LV Montana Phase I, LLC; Stewart Grove 1, LLC; Stewart Grove 2, LLC; Location Zamora Parent, LLC; URBIN Coral Gables Partners, LLC; URBIN Coconut Grove Partners, LLC; URBIN Miami Beach Partners, LLC; and URBIN Miami Beach II Phase 1, LLC.

1

Order. In response, the Receiver states:

## FACTUAL BACKGROUND

**A.     The SEC Complaint and Duties and Powers of the Receiver**

On December 27, 2023, the Securities and Exchange Commission ("SEC") filed a Complaint (unsealed at DE#14) and an Emergency Motion for Asset Freeze and Other Relief ("Asset Freeze Motion") (DE#6) against Rishi Kapoor, Location Ventures, LLC, Urbin, LLC and several of their subsidiaries and affiliated companies, which asserted and evidenced that Mr. Kapoor used the companies to raise approximately $93 million from more than 50 investors for investment in real estate projects through a series of material misrepresentations and omissions in violation of securities laws. The Asset Freeze Motion describes how Mr. Kapoor, among other things: (1) misrepresented his cash investment in Location Ventures LLC and the size of his real estate portfolio, and omitted material information about his prior business; (2) intentionally understated construction and costs and withheld information from investors; and (3) misappropriated at least $4.3 million of investor funds. It further describes how he regularly commingled investor funds and transferred funds between entities despite representations that each entity and project was a separate and distinct investment, and often used funds for one project for the expenses of another project.

On January 12, 204, the Court entered an order granting the SEC's motion to appoint receiver ("Order Appointing Receiver") (DE#28) finding that:

> [T]he appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of the Company Defendants ("Receivership Assets") that: (a) are attributable to funds derived from investors or clients of the Company Defendants; (b) are held in constructive trust for the Company Defendants; (c) were fraudulently transferred by the Company Defendants; and/or (d) may otherwise be includable as assets of the estates of the Company Defendants (collectively, the "Recoverable Assets").

*Id.* at 2. In so doing, the Court took exclusive took exclusive jurisdiction over all Receivership Property:

> The Court takes exclusive jurisdiction and possession of the assets of whatever kind and wherever situated, of the Company Defendants (the "Receivership Defendants").

*Id.* at ¶ 1. The Court included essential provisions to empower the Receiver to analyze and investigate assets, administer assets for the benefit of the receivership estate and harmed investors and creditors, and develop a fair and reasonable liquidation plan. The Court directed and empowered the Receiver, among other things:

> To use reasonable efforts to determine the nature, location, and value of all property interests of the Receivership Defendants, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights, and other assets, together with all rents, profits, dividends, interest, or other income attributable thereto, of whatever kind, which the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estates"), *id.* at ¶ 7.A;

> To manage, control, operate, and maintain the Receivership Estates and hold in her possession, custody, and control all Receivership Property, pending further Order of the Court, *id.* at ¶ 7.C;

> To locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property, and as approved by the Court, *id.* at ¶ 32.

The Order Appointing Receiver further provides that the "Receiver is authorized, empowered, and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property[.]" *Id*. at ¶ 46.

To provide the Receiver with the ability to fulfill her duties without being hindered or obstructed by creditor litigation against the Receivership Property, the Court entered an injunction against interference with the Receiver, and a stay of litigation. *Id*. at ¶¶ 23-28. The injunction

protects the Receiver, Receivership Property, the Receivership Defendants and their subsidiaries from actions that would:

> Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to releasing claims or disposing, transferring, exchanging, assigning, or in any way conveying any Receivership Property, enforcing judgments, assessments, or claims against any Receivership Property or the Receivership Defendants, attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate (the due date) any lease, loan, mortgage, indebtedness, security agreement, or other agreement executed by the Receivership Defendants or which otherwise affects any Receivership Property; or,
>
> Interfere with or harass the Receiver or interfere in any manner with the exclusive jurisdiction of the Court over the Receivership Estates.

*Id.* at ¶ 23.C – 23.D. The litigation stay provides that the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the SEC related to the above-captioned enforcement action, are stayed until further Order of the Court:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in her capacity as Receiver; (b) any Receivership Property, wherever located; (c) the Receivership Defendants, including subsidiaries and partnerships; or (d) any of the Receivership Defendants' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

*Id.* at ¶ 26. The parties to any Ancillary Proceedings are enjoined from commencing or continuing any such proceedings, and all such proceedings are stayed in their entirety. *Id.* at ¶¶ 27-28.

This receivership involves twenty-two Receivership Companies, twenty subsidiaries and related entities, seven active real estate projects, over twenty-five state and federal proceedings pending at the time the Court entered the Order Appointing Receiver, and a massive amount of records and transactions. Since her appointment, the Receiver has been assessing all assets on a project-by-project basis to determine the best path forward for each property and its ability to

4

produce a benefit for the receivership estate. Details of the Receiver's efforts are described in the Receiver's First Interim Report (DE#127) and Second Interim Report (DE#196).

### B. The Commodore Properties & Commodore Sale Motion

The Commodore Properties[2] comprise five parcels of real property on Commodore Plaza in Coconut Grove owned by four subsidiaries of Urbin Coconut Grove Partners, LLC ("CG Partners"), a Receivership Company. They are a complicated assemblage of fee simple and tenant ground lease interests with various issues presented by the lack of funds, a partially demolished building that still houses Verizon cellular equipment under a lease, gutted residential condominium units for which construction ceased in the summer of 2023, unsafe structure orders from the City of Miami Unsafe Structure Panel, multiple layers of mortgage loans, construction liens, and released purchaser deposits for condominium units.

After obtaining an appraisal for the Commodore Properties and engaging in negotiations with multiple parties, the Receiver negotiated a Sale Contract with Coconut Grove Commodore Development Ventures, LLC ("Buyer") to buy the Commodore Properties, free and clear of all liens, claims and encumbrances, for $28,200,000, plus up to $150,000 in the event the Closing occurs in or before February 2025, as described in the Commodore Sale Motion (DE#238). The transaction, if approved and consummated, will enable the Receiver to monetize the Commodore Properties for a substantial amount which will significantly reduce debts and claims, relieve the receivership estate of the ongoing burden of maintaining and preserving the Commodore Properties, potentially realize a recovery for the receivership estate, and by doing the foregoing,

---

[2] Capitalized terms used herein and not otherwise defined have the meanings ascribed to them in the Commodore Sale Motion (DE#238).

provide a better opportunity for recoveries by investors and other creditors of the Receivership Companies, consistent with the Receiver's responsibilities under the Receivership Order.

The CG Investors have filed an objection to the Commodore Sale Motion (DE#265), which the Receiver has addressed in her Omnibus Reply (DE#279). As explained in the Receiver's Omnibus Reply, the Commodore Sale Motion does not address the disposition of the net sale proceeds from the sale, except with respect to closing costs to be paid by the seller and the reimbursement of $582,079.62 advanced by the Halpern Parties in protective rental payments to the Ground Lessors. The interests in and claims to the net proceeds are to be addressed and resolved by further proceedings through a claim process in the receivership case, and any liens against the Commodore Properties will attach to the net sale proceeds with the same validity, priority and extent as they held in the Commodore Properties. This is the same type of process which the Court approved in *Sec. & Exch. Comm'n v. Kapoor*, No. 23-cv-24903-JB, 2024 WL 3026490 (S.D. Fla. Jun. 17, 2024) ("Stewart Sale Order") (DE#185).

### C.     The CG Investors and their State Court Action

The CG Investors are equity investors in CG Partners. The Operating Agreement of CG Partners reflects that they collectively made a $2 million equity investment in the entity. Prior to the receivership, in December 2022 the CG Investors filed an action in state court against Urbin, LLC, a Receivership Company which was the manager of CG Partners, asserting claims for breach of the CG Partners Operating Agreement and injunctive relief. On October 5, 2023, the CG Investors filed, and subsequently recorded, Notices of Lis Pendens ("NLPs") against the Commodore Properties. On December 26, 2023, the CG Members filed a motion to amend their complaint, seeking to join the Halpern Parties, 2EE, LLC, Vivian Bonet, Location Ventures, and

6

CG Partners as defendant, and to add claims for breach of fiduciary duty, breach of contract, rescission of mortgages against the Commodore Properties and to quiet title against the lenders.

Upon the Receivership Order's entry, a notice thereof was filed in the CG Investors' state court action. On March 8, 2024, the state court placed the case on inactive status due to the receivership, and on July 10, 2024 entered an Order of Dismissal without prejudice, reserving jurisdiction to vacate the dismissal "should the issues in this [c]ase not get completely resolved through the receivership process and a request to vacate is filed."

The CG Investors filed their Stay Relief Motion on October 4, 2024. They sought "expedited relief" because, according to the CG Investors, the NLPs they filed against the Commodore Properties expired on that date unless extended by court order. (DE#244 at ¶ 15).

## DISCUSSION

### A. Rule 60(b) Does Not Give Standing to the CG Investors

The CG Investors' motion relies on Fed. R. Civ. P. 60(b) as the authority for the relief requested, citing *Stoppa v. Bal Harbour Village*, 385 F.Appx. 932 (11th Cir. 2010). While *Stoppa*, in an unpublished *per curiam* opinion without detailed discussion, states that "a non-party whose interests are directly impacted by a judgment may obtain Rule 60(b) relief," it goes on to hold that the movant there –an ex-husband who filed an independent action seeking to set aside a specific performance judgment requiring her to sell their former marital residence to the defendant – nonetheless lacked standing because (1) he was not a party; and (2) he lacked a "sufficient connection" to the judgment to challenge it as a non-party. The published (and therefore controlling)[3] decision relied upon in *Stoppa – Kem Mfg. Corp. v. Wilder*, 817 F.2d 1517, 1521

---

3 *See* 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

7

(11th Cir. 1987) – actually sets forth a much narrower scope for Rule 60(b). As explained in *Kem*, Rule 60(b) provides that "a court may relieve *a party or his legal representative* from a final judgment." *Id.* at 1519-20, citing Fed. R. Civ. P. 60(b). The *Kem* court goes on to note with the "potential exception of claims of fraud on the court … the general rule is that one must either be a party or a party's legal representative in order to have standing to bring any Rule 60(b) motion." *Id.* at 1520. The term "legal representative was intended to reach only those individuals who were in a position tantamount to that of a party or whose legal rights were otherwise so intimately bound up with the parties that their rights were directly affected by the final judgment." *Id.* Accordingly, the *Kem* court affirmed the district court's denial of the Rule 60(b) motion for lack of standing, particularly where the movant had an alternative forum in which to make his arguments. *Id.* at 1521.

As in *Kem*, the CG Investors are not the legal representatives of any of the parties to the SEC action. Nor are their rights directly affected by the Receivership Order. To the contrary, as explained further below, this Court has taken exclusive jurisdiction over all Receivership Property, which includes the Commodore Properties and any proceeds thereof. Any claim to those proceeds – whether by the CG Investors or others – will be addressed through further proceedings in this case.

**B.     The CG Investors Should Not be Permitted to Intervene Under Rule 24**

To the extent the CG Investors seek intervention under Fed. R. Civ. P. 24 to pursue their Stay Relief Motion, the Receiver respectfully submits that such relief is inappropriate. First, Section 21(g) of the Securities Exchange Act of 1934, codified at 15 U.S.C. § 78u(g), provides that "… [N]o action for equitable relief instituted by the Commission pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the Commission, even

8

though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission." The Receiver is advised that the SEC does not consent to intervention under Rule 24. And Section 78u(g) has been held to constitute a complete bar on intervention in an SEC case without the SEC's consent.[4] The *Nadel* court noted that permitting intervention would establish a "dangerous precedent" and "would undermine the efficient administration of this receivership and divert resources and the Receiver's efforts from activities intended to benefit the entire Receivership Estate." *Nadel*, 2009 WL 3126266, *1.

Moreover, the interests of the CG Investors are adequately protected without the need for intervention, because, as discussed further below, this Court has jurisdiction over the Commodore Properties and the ability to address and resolve claims against Receivership Property through a claims process.[5] *See, e.g.*, *Sec. & Exch. Comm'n v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (noting that "The district court has broad powers and wide discretion to determine relief in an equity receivership" and describing how the government's and parties' interests in judicial efficiency "underlie the use of a single receivership proceeding," and that a summary proceeding "reduces the time necessary to settle disputes, decreases litigation costs, and prevents further dissipation of receivership assets.") *Id.* Consistent with *Elliott*, courts have repeatedly and properly held that a claimant is not entitled to intervene in an SEC action where their interests are otherwise

---

[4] *Sec. & Exch. Comm'n v. Nadel*, No. 8:09-cv-87-T-26TBM, 2009 WL 3126266 (M.D. Fla. Sep. 24, 2009), citing *Sec. & Exch Comm'n. v. Cogley*, 2001 WL 1842476, *5 (S.D. Ohio 2001) and *Sec. & Exch. Comm'n v. Homa*, 2000 WL 1468726, *2 (N.D. Ill. 2000). *See also Sec. & Exch. Comm'n v. Freedom Env't Servs., Inc.*, No. 6:12-cv-1415, 2013 WL 12155837, *2 (M.D. Fla. Feb. 1, 2013). *Compare Sec. & Exch. Comm'n v. BKCoin Mgmt., LLC*, No. 23-20719, 2023 WL 3250917, *2 (S.D. Fla. May 4, 2023) (noting split of authority on whether Section 21(g) is an absolute bar to intervention in SEC enforcement actions).

[5] The CG Investors' assertion that they "have standing under 28 U.S.C. § 2001 to insist that the Receiver strictly adheres to the procedures for conducting a private judicial sale" are addressed in the Receiver's Omnibus Reply (DE#279).

9

protected. *See, e.g.*, *Sec. & Exch. Comm'n v. JCS Enters., Inc.*, No. 14-CV-80468, 2015 WL 13950381 (S.D. Fla. Nov. 3, 2015) (denying motion to intervene under Rule 24(a) and (b) by claimant who asserted a claim regarding a particular receivership estate asset).

In denying intervention, the *JCS Enterprises* court noted that the receivership was still engaging in "extensive and complex financial reconstructions of dozens of financial accounts" which were required to permit the receiver to "allocate losses according to a Court-approved methodology and fairly evaluate claims during a claims process." *Id.* at *2. It noted that "A receiver must be given a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant." *Id.*, citing *Sec. & Exch. Comm'n v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985). In a similar vein, the court in *Sec. & Exch. Comm'n v. Callahan*, 2 F. Supp. 2 F. Supp. 3d 427 (E.D.N.Y. 2014), denied a lender the right to intervene to foreclose on receivership property where the SEC did not consent, the lender would suffer minimal prejudice, and intervention would interfere with the receiver's ability to administer the receivership estate and recover assets for investors.

The CG Investors assert that their interests are not adequately protected because "[t]he Receiver and the SEC are most interested in bringing this matter to a quick conclusion; because the Receivership Estate lacks working capital, they are not inclined to take steps that maximize the Receivership Estate to benefit equity holders." (DE#244 at 8). The CG Investors misconstrue the purpose of the receivership both generally, which is expressly to "take whatever actions are necessary for the protection of the investors" (DE#28 at p. 1), and more specifically, the purpose of the Commodore Sale Motion. As explained in further detail in the Commodore Sale Motion itself, and in the Receiver's Omnibus Reply, the Receiver is not seeking to sell the Commodore Properties to "bring this matter to a quick conclusion" – she is doing so because she has determined

in her business judgment that it is the best way to monetize a complicated, challenging assemblage of property and create a fund that can be used to resolve claims and provide a better opportunity for recovery by creditors and investors – including the CG Investors, who are investors in the Receivership Companies. This is fully consistent with the authority given to her under the Receivership Order to sell real property "on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such property." (DE#28 at ¶ 32).

To the extent the Court is willing to entertain the Stay Relief Motion without granting intervention, the Receiver does not oppose the CG Investors requesting to be heard by the Court on the Stay Relief Motion, provided that the Receiver reserves the right to contend that the CG Investors lack standing as parties to the SEC case or in the event of an appeal of any order on the Stay Relief Motion.

### C.   The CG Investors Are Not Entitled to Stay Relief

The CG Investors assert that they should be granted relief from the stay provisions of the Receivership Order because of the possible risk that their NLPs will expire. As they acknowledge, they are stayed from taking action to request an extension by the Receivership Order. But that is not an appropriate reason for stay relief, because (1) an extension does not need to be requested within the one-year period (and if it does, is already moot); and (2) the Receiver has advised that she would stipulate that the Receiver will not assert that the CG Investors' asserted lien position (if any) with regard to the Commodore Properties is impaired by the failure to seek an extension of the NLPs, in light of the Receivership Order staying any request for an extension, and in the event the sale does not close, and the Receiver agrees to lift the stay generally with respect to the

11

Commodore Properties, the CG Investors may then seek to extend the NLPs.[6]

The Florida Lis Pendens statute provides:

A notice of lis pendens is not effectual for any purpose beyond 1 year from the commencement of the action and will expire at that time, unless the relief sought is disclosed by the pending pleading to be founded on a duly recorded instrument or on a lien claimed under part I of chapter 713 against the property involved, except when the court extends the time of expiration on reasonable notice and for good cause.

Fla. Stat. § 48.23(2). If, as suggested by the CG Investors, the NLPs have to be extended prior to the one-year period running in order to avoid expiration, then the CG Investors' Stay Relief Motion is already moot: they filed their Stay Relief Motion literally on the day of expiration and could not possibly obtain timely relief in state court even were the Stay Relief Motion granted, particularly since the underlying case has been dismissed without prejudice.[7]

Further, the CG Investors may not realize that courts have held that a motion to extend an NLP does not need to be filed within one year of commencement. *See, e.g.*, *Zakharova v. Innovative Techs. & Consulting Ltd. Corp.*, 386 So. 3d 988, 991 (Fla. 3d DCA 2023) ("[T]his court and others have uniformly concluded that a motion to extend a notice of lis pendens need not be filed within one year of commencement to justify relief. … Instead, consistent with the statutory framework, the trial court must examine whether the movant has provided reasonable notice and established good cause regardless of when the motion to extend is filed.") (citations omitted). Courts have also held that "the one year time period is tolled during appellate review." *Vonmitschke-Collande v. Kramer*, 841 So. 2d 481 (Fla. 3d DCA 2002). It seems likely that if the

---

[6] The Receiver, by so stipulating, does not address or acknowledge the merit of the CG Investors' entitlement to a *lis pendens*, their underlying claims, or their authority to assert them.

[7] In fact, since the statute says a notice of lis pendens is not effectual beyond "1 year from the *commencement of the action*," the expiration date might arguably have been much earlier, as the CG Investors' Complaint commencing the action was filed in state court on December 19, 2022.

12

CG Investors were to raise the foregoing case law and that it was enjoined by a federal court order from taking action in state court, the state court would find "good cause" for not doing so – particularly when the state court has already dismissed the action, reserving jurisdiction to vacate the dismissal "should the issues in this [c]ase not get completely resolved through the receivership process."

The Receiver has already advised the CG Investors that she will stipulate that (1) the Receiver will not assert that the CG Investors' asserted lien position (if any) with regard to the Commodore Properties is impaired by the failure to seek an extension of the NLPs, in light of the Receivership Order staying any request for an extension; and (2) in the event the sale does not close, and the Receiver agrees to lift the stay generally with regard to the Commodore Properties, the CG Investors could then seek to extend the NLPs. In the first scenario, assuming a sale of the Commodore Properties is approved and closes, the claims and liens against the Commodore Properties will be addressed by this Court as part of a claim process; and in the second scenario, the CG Investors would then have the opportunity to seek such extension in state court. That stipulation was relayed by the Receiver more than two weeks ago – despite repeated inquiries, the CG Investors have not advised what issues, if any, are not resolved by the Receiver's proposal.

The CG Investors are not required to obtain an extension of the NLPs within the one-year period (which is fortunate for them, since it already expired). If the Commodore Properties are sold through the receivership, then an extension of the NLPs is irrelevant because their entitlement to the proceeds, if any, will be addressed through a claims process in this court. And if the Commodore Properties are not sold through the receivership, the CG Investors may seek such extension, if necessary, if and when the stay imposed by the Receivership Order is lifted.

### D.      The Relief Requested Goes Beyond Extending the Notices of Lis Pendens

Finally, the Receiver notes that while the potential expiration of the NLPs is apparently the driving force behind the Stay Relief Motion, the relief requested goes substantially beyond simply seeking to extend the NLPs. The CG Investors ask this Court to grant relief from the Receivership Order to "allow the State Court to (a) extend the Commodore NLPs; (b) continue with adjudication of the claims presented in State Court Case; and (c) adjudicate all claims that could be presented in connection with the Interested Persons' First Amended Complaint or otherwise between the persons named therein." (DE#244 at 10). The CG Investors' filed state court complaint asserts claims against Urbin LLC, and their proposed amended complaint seeks to add CG Partners as a defendant – both of which are Receivership Companies.

One of the primary purposes of the receivership is to provide the Receiver with the opportunity to liquidate Receivership Property and address the disposition of the proceeds through proceedings in the receivership case. This Court has exclusive jurisdiction over all Receivership Property including the Commodore Properties, and in the event they are sold through this receivership, has exclusive jurisdiction over the proceeds and their disposition. All creditors and investors have been stayed from prosecuting such claims elsewhere. Granting relief to the CG Investors to pursue state court litigation claims against the Receivership Defendants or affecting rights to Receivership Property would be entirely inconsistent with those purposes.

### CONCLUSION

For the foregoing reasons, the Receiver respectfully submits that the CG Investors' Stay Relief Motion should be denied.

Respectfully submitted,

**KOZYAK TROPIN & THROCKMORTON, LLP**
*Counsel for Bernice C. Lee, Receiver*
2525 Ponce de Leon Boulevard, 9th Floor
Coral Gables, Florida 33134
Tel: (305) 372-1800 / Fax: (305) 372-3508
Email: dlr@kttlaw.com

By: /s/ *David L. Rosendorf*
　　David L. Rosendorf
　　Florida Bar No. 996823

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via CM/ECF upon all counsel of record this 25nd day of October, 2024.

By: /s/ *David L. Rosendorf*
　　David L. Rosendorf