UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23-cv-24903

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.

RISHI KAPOOR, et al.,

        Defendants.

_____/

**CWL-CH, LLC, ASJAIA, LLC, AND VIEDEN GROVE OZ, LLC'S RESPONSE TO RECEIVER'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH THE HALPERN PARTIES RELATING TO THE COMMODORE PROPERTIES AND DISTRIBUTION OF SALE PROCEEDS AND BACK-UP SALE CONTRACT**

CWL-CH, LLC, ASJAIA, LLC, and VIEDEN GROVE OZ, LLC (collectively, "CG Interested Persons"), by and through their undersigned counsel[1], hereby files their Response in Opposition to the Receiver's Motion to Approve Settlement Agreement with the Halpern Parties Relating to the Commodore Properties and Distribution of Sale Proceeds and Back-Up Sale Contract, and state as follows:

**INTRODUCTION**:

For several reasons, the Halpern Trusts and affiliated entities ("Halpern") should not be permitted to credit bid, or to exchange their liens as contemplated in the Receiver's motion. The most glaring reasons are shown in the deposition of Greg Brooks the former Chief Financial Officer of Location Ventures, who testified that many of the transactions initiated by Halpern went

---

[1] The CG Interested Persons and the undersigned counsel have appeared for the limited purpose of seeking relief from this Court's stay and to object to the sale of the Commodore Properties. The CG Interested Persons do not concede that this Court has jurisdiction over the liens that they have asserted in the Commodore Properties.



201 Alhambra Circle, Suite 1060, Coral Gables, FL 33134 • Tel: 305-444-3114 • service@b2b.legal

Case 1:23-cv-24903-JB   Document 315   Entered on FLSD Docket 12/17/2024   Page 2 of 17
CWL-CH, LLC, ASJAIA, LLC, And Vieden Grove Oz, LLC'S Response to Receiver's Motion to Approve Settlement Agreement
with the Halpern Parties Relating to the Commodore Properties and Distribution of Sale Proceeds and Back-Up Sale Contract
Case No. 1: 23-cv-24903
Page 2 of 17

to other projects instead of the Commodore Properties. Additionally, none of the Halpern loans or mortgages were presented to the equity owners of the affected Commodore Properties for approval. At the time that Halpern made or acquired the loans, a majority of those equity owners would have opposed the loans and the related mortgages. When Halpern purported to make the loans, Mr. Brooks raised these objections with Defendant Kapoor, but his concerns were brushed aside. This is information which the CG Interested Persons provided to the Receiver and the SEC at the inception of this matter. It is information that should be presented to the Court to fairly evaluate these motions.

## FACTS

1. The CG Interested Persons are equity investors in Urbin Coconut Grove Partners, LLC ("UCGP").

2. Collectively they invested $2,000,000.$^{00}$ in Urbin Coconut Grove Partners, LLC ("UCGP").

3. The CG Interested Persons, Urbin, Kapoor, and **Halpern** executed the Amended and Restated Operating Agreement of Urbin Coconut Grove Partners, LLC (the "Operating Agreement") which has an effective date of January 1, 2022. *A true and correct copy of the Operating Agreement is attached hereto as* **Exhibit 1**.

4. UCGP's stated purpose was to acquire, finance, demolish, develop, re-develop, operate, lease and sell Commodore Plaza parcels while engaged in a Qualified Opportunity Zone Business. See **Exhibit 1**, § 2.1.

5. To that end, UCGP owned 100% of the interests in URBIN Commodore SPE, LLC; URBIN Commodore Restaurant SPE, LLC; URBIN Commodore Residential SPE, LLC; and a fourth, to be formed LLC, each being a single purpose entity that would own the real estate

Case 1:23-cv-24903-JB   Document 315   Entered on FLSD Docket 12/17/2024   Page 3 of 17
CWL-CH, LLC, ASJAIA, LLC, And Vieden Grove Oz, LLC'S Response to Receiver's Motion to Approve Settlement Agreement with the Halpern Parties Relating to the Commodore Properties and Distribution of Sale Proceeds and Back-Up Sale Contract
Case No. 1: 23-cv-24903
Page 3 of 17

property for the different development Commodore Plaza projects. *See* **Exhibit 1**, § 2.1, Exhibit A.

6. Accordingly, URBIN Commodore Residential SPE II, LLC, is the additional wholly owned entity that was formed after the execution of the Operating Agreement (hereinafter, all UCGP's sub-entities are referred to as the "Wholly Owned Subsidiaries.").

7. UCGP has complete and sole control over the Wholly Owned Subsidiaries.

8. Urbin and/or Rishi were each a "Sponsor" of UCGP. *See* **Exhibit 1**, ¶ 1.

9. According to the schedule of members attached to the Operating Agreement, the Halpern Family Trust is a member of UCGP. *See* **Exhibit 1**, Exhibit A.

10. The Halpern Family Trust is also an investor at different levels of Kapoor's real estate development projects, including Location Ventures, LLC, Urbin, LLC, and Urbin Founders Group, LLC. *See* **Exhibit 1**, Exhibit F.

11. At the time the Operating Agreement was executed, Kapoor was the manager of multiple entities involved in different real estate development projects.

12. UCGP was part of a wider web of companies developed by Kapoor. *See* **Exhibit 1**, Exhibit F.

13. Location Ventures, LLC ("Location Ventures"), is a separate entity that was established by and was at all times material hereto controlled by Kapoor. For all intents and purposes, Location Ventures was the "parent company" of UCGP. *See* **Exhibit 1**, Exhibit F. However, Location Ventures was not legally in control of UCGP at the time that Halpern made or acquired the loans.

14. Greg Brooks (the "CFO") served as chief financial officer for Location Ventures (UCGP's parent company) from August 15, 2022, to March 29, 2023.

Case 1:23-cv-24903-JB   Document 315   Entered on FLSD Docket 12/17/2024   Page 4 of 17

*CWL-CH, LLC, ASJAIA, LLC, And Vieden Grove Oz, LLC'S Response to Receiver's Motion to Approve Settlement Agreement with the Halpern Parties Relating to the Commodore Properties and Distribution of Sale Proceeds and Back-Up Sale Contract*
Case No. 1: 23-cv-24903
Page 4 of 17

15. The Wholly Owned Subsidiaries own in fee simple or hold the ground leases to real estate parcels as follows:

   a. URBIN Commodore SPE, LLC holds the ground lease for the property located at 3138 Commodore Plaza Miami, FL 33133 ("3138 Commodore Plaza").

   b. URBIN Commodore Restaurant SPE, LLC holds the ground lease for the property located at 3120 Commodore Plaza Miami, FL 33133 ("3120 Commodore Plaza").

   c. URBIN Commodore Residential SPE, LLC owns the property located at 3162 Commodore Plaza Miami, FL 33133 ("3162 Commodore Plaza").

   d. URBIN Commodore Residential SPE II, LLC owns the property located at 3170 Commodore Plaza Miami, FL 33133 ("3170 Commodore Plaza") and holds the ground lease for the property located at 3166 Commodore Plaza Miami, FL 33133 ("3166 Commodore Plaza").

## The Operating Agreement

16. The Operating Agreement requires UCGP's members to vote to allow UCGP to incur loan obligations and/or to authorize UCGP to encumber its property.

17. Specifically, section 6.5(c) of the Operating Agreement provides Class B Members right to vote on major decisions, including taking on debt. *See* **Exhibit 1**, § 6.5(c).

18. The term "Major Decisions" is defined in Exhibit B to the Operating Agreement as follows:

> "Major Decisions" refers to any decision by the Company to take any of the following acts, all of which acts shall require Member Approval:
> (i) materially expand the Business of the Company;
> **(ii) pay any fees or other compensation to any Affiliate of the Sponsor, other than those fees and reimbursements expressly approved in this Agreement;**



Case 1:23-cv-24903-JB   Document 315   Entered on FLSD Docket 12/17/2024   Page 5 of 17

CWL-CH, LLC, ASJAIA, LLC, And Vieden Grove Oz, LLC'S Response to Receiver's Motion to Approve Settlement Agreement
with the Halpern Parties Relating to the Commodore Properties and Distribution of Sale Proceeds and Back-Up Sale Contract
Case No. 1: 23-cv-24903
Page 5 of 17

**(iii) engage in a sale of all or substantially all of the Company's assets or a transaction that involves a sale of substantially all of the equity interests in the Company**; or

[…]

**(vi) Borrow money, issue evidences of indebtedness, or grant any mortgages or other encumbrances on or security interests in the assets of the Company, including without limitation, any financing or refinancing of the Property or any portion thereof, or modify, extend, renew, change, or prepay in whole or in part any borrowing, financing, or refinancing, or make any commitments to borrow funds or give any consideration to obtain a commitment for the loan of funds.**

**(vii) Enter into or amend, modify, or terminate any agreement pertaining to the sale, conveyance, exchange, or other transfer of any assets of the Company, or sell, convey, exchange, or otherwise transfer any assets of the Company, including, without limitation, all or any portion of the Property or any interest therein, other than non-material transfers of personal, tangible, or intangible property in the ordinary course of business.**

**(viii) Enter into or amend, modify, or terminate any contract for the construction,**

**development, improvement, or rehabilitation of the Property, unless with respect to any new contract or modification of an existing contract, no Member Approval is needed because there is no change to any Approved Budget that requires Member Approval.**

(ix) Make a payment on any Member Loan or a distribution of any Distributable Cash Flow or distribute proceeds from a Capital Transaction to Members which, in any case, is inconsistent with the current Approved Budget or otherwise in contravention of this Agreement.

[…]

(xiii) Establish, increase, replenish, or decrease the amount of reserves held by the

Company, except in accordance with the applicable Budget unless required by law or pursuant to the terms of any financing approved by the Members.

*See* **Exhibit 1**, pp. 41-43 (Exhibit B).

19. The Operating Agreement expressly provides that "[c]apitalized terms used in this Agreement and not elsewhere defined shall have the meanings set forth in Exhibit B, the provisions of which are incorporated herein by reference." *See* **Exhibit 1**, pp. 1.



Case 1:23-cv-24903-JB   Document 315   Entered on FLSD Docket 12/17/2024   Page 6 of 17

CWL-CH, LLC, ASJAIA, LLC, And Vieden Grove Oz, LLC'S Response to Receiver's Motion to Approve Settlement Agreement
with the Halpern Parties Relating to the Commodore Properties and Distribution of Sale Proceeds and Back-Up Sale Contract
Case No. 1: 23-cv-24903
Page 6 of 17

20. "Member Approval" is defined in the Operating Agreement as "approval by Members holding at least 70% of all outstanding Percentage Interests in the Company." *See* **Exhibit 1**, pp. 43.

21. "Percentage Interests" is defined in Section 3.3 of the Operating Agreement to include Class B Interests. *See* **Exhibit 1**, § 3.3.

### Mismanagement of UCGP

22. On or about July 17, 2023, the CFO sat for a deposition in this matter. *See attached a copy of the CFO's deposition transcript as* **Exhibit 2.**

23. The CFO's testimony provided confirming details about the fraud that was committed by Kapoor and his co-conspirators. Specifically, the CFO testified that:

   a. UCGP's Wholly Owned Subsidiaries executed promissory notes to Lenders secured by mortgages on their real estate property, but they never received the proceeds from those loans.

   b. UCGP received restricted purchaser deposits for condominium units, which deposits were diverted by Kapoor and his co-conspirators to unrelated projects, without UCGP's approval or consent.

   c. The Managers used UCGP's funds for expenses and fees for personal and/or otherwise uses that were not allowed under UCGP's Operating Agreement.

   d. UCGP's Managers improperly commingled UCGP's funds with the funds of other entities.

### The Unauthorized Loans and Mortgages

24. On or about May 27, 2022, Urbin Commodore Residential II SPE, LLC, a wholly owned subsidiary of UCGP, signed a promissory note in the amount of $2,400.000.$^{00}$ and payable

Case 1:23-cv-24903-JB   Document 315   Entered on FLSD Docket 12/17/2024   Page 7 of 17
CWL-CH, LLC, ASJAIA, LLC, And Vieden Grove Oz, LLC'S Response to Receiver's Motion to Approve Settlement Agreement
with the Halpern Parties Relating to the Commodore Properties and Distribution of Sale Proceeds and Back-Up Sale Contract
Case No. 1: 23-cv-24903
Page 7 of 17

to the Halpern Trusts, and granted a mortgage in the properties commonly known as "3170 Commodore Plaza" and "3166 Commodore Plaza" in favor of the Halpern Trusts. *See a copy of this mortgage attached as* **Exhibit 3.** Kapoor signed this mortgage on behalf of the entities.

25.     On or about May 27, 2022, Urbin Commodore Residential SPE, LLC, a wholly owned subsidiary of UCGP, signed a promissory note in the amount of $4,100.000.$^{00}$ and payable to the Halpern Trusts, and granted a mortgage in some of the condominiums located in the property commonly known as "3162 Commodore Plaza." *See a copy of this mortgage attached as* **Exhibit 4.** Kapoor signed this mortgage on behalf of the entities.

26.     On or about May 27, 2022, two of UCGP's wholly owned subsidiaries, being Urbin Commodore SPE, LLC, and Urbin Commodore Restaurant SPE, LLC, signed a promissory note in the amount of $9,500.000.$^{00}$ and payable to the Halpern Trusts, and granted a mortgage in the properties commonly known as "3138 Commodore Plaza" and "3120 Commodore Plaza." *See a copy of this mortgage attached as* **Exhibit 5.** Kapoor signed this mortgage on behalf of the entities.

27.     All of the above-described mortgages were granted to the Halpern Trusts and recorded in Miami-Dade County's Official Records on June 1, 2022.

28.     On or about February 21, 2023, Urbin Commodore SPE, LLC, and Urbin Commodore Restaurant SPE, LLC, entered into a mortgage modification agreement with the Halpern Trusts whereby they modified the mortgage that is shown in **Exhibit 5**. That modification was to provide security for a new amended and restated promissory note in the amount of $14,500,000.$^{00}$.[1] *See a copy of this mortgage modification attached as* **Exhibit 6.** Kapoor signed this mortgage modification on behalf of the entities.

29.     The above-described mortgage modification agreement was granted to the Halpern Trusts and recorded in Miami-Dade County's Official Records on February 21, 2023.

Case 1:23-cv-24903-JB   Document 315   Entered on FLSD Docket 12/17/2024   Page 8 of 17
CWL-CH, LLC, ASJAIA, LLC, And Vieden Grove Oz, LLC'S Response to Receiver's Motion to Approve Settlement Agreement
with the Halpern Parties Relating to the Commodore Properties and Distribution of Sale Proceeds and Back-Up Sale Contract
Case No. 1: 23-cv-24903
Page 8 of 17

30. On or about March 13 2023, all of UCGP's Wholly Owned Subsidiaries, Urbin Commodore SPE, LLC; Urbin Commodore Restaurant SPE, LLC; Urbin Commodore Residential SPE, LLC; and Urbin Commodore Residential II SPE, LLC, signed a promissory note in the amount of $7,000.000.$^{00}$ and payable to 2EE LLC ("2EE", being another company that is owned by or affiliated with an equity owner in UCGP), and granted a mortgage in the properties commonly known as "3138 Commodore Plaza;" "3120 Commodore Plaza;" "3162 Commodore Plaza;" "3166 Commodore Plaza;" and "3170 Commodore Plaza." *See a copy of this mortgage attached as* **Exhibit 7.** Kapoor signed this mortgage on behalf of the entities.

31. In total, it appears that the Managers caused UCGP to obtain over $28,000,000.$^{00}$ in loans that were secured by mortgages on UCGP's interests in several real estate parcels.

32. The proceeds of the Halpern Trusts and 2EE's loans to UCGP's Wholly Owned Subsidiaries were never deposited into UCGP's bank account. Instead, those funds were directly transferred to Location Ventures by the lenders. *See* **Exhibit 2**, 26:10-27:9.

33. In turn, those funds were diverted to pay one of Location Ventures, other lenders, DA Capital. *See* **Exhibit 2**, 25:8-27:9 ("It went directly into Location Capital and right out the door to this other group DA Capital.").

34. Kapoor had a dispute with DA Capital over their investments in Location Ventures and other development projects managed by Kapoor. Kapoor and the principals of DA Capital eventually reached an agreement to settle the dispute. To make payments under that settlement agreement, Kapoor took out loans on behalf of UCGP's entities and secured those loans with mortgages on UCGP's assets. *See* **Exhibit 2**, 25:8-23; 27:17-18.

35. Despite the promissory notes and mortgages being executed by UCGP's entities, the Lenders wired the funds directly to Location Ventures. As a principal of the Halpern Trusts

Case 1:23-cv-24903-JB   Document 315   Entered on FLSD Docket 12/17/2024   Page 9 of 17

CWL-CH, LLC, ASJAIA, LLC, And Vieden Grove Oz, LLC'S Response to Receiver's Motion to Approve Settlement Agreement
with the Halpern Parties Relating to the Commodore Properties and Distribution of Sale Proceeds and Back-Up Sale Contract
Case No. 1: 23-cv-24903
Page 9 of 17

and a member of UCGP, Martin Halpern was in a position to know that the proceeds from the loans were to be used to pay off an unrelated debt of Kapoor, namely his settlement with DA Capital. Again, Halpern was deeply involved in activities of Location Ventures at multiple levels in the capacity as both a lender and equity owner.

36. UCGP's Managers never obtained UCGP's members' approval for the loans that were funded by the Halpern Trusts or 2EE. *See* **Exhibit 2**, 28:6-19.

*37.* In fact, the UCGP Managers never requested the member's approval for the loans. *Id.*

38. The UCGP Managers did not secure the UCGP's members' approval to divert the proceeds from these loans to pay any debt owed by Kapoor.

39. The CG Interested Persons filed their First Amended Complaint in the State Court Case and explicitly challenged the validity of the Halpern and 2EE mortgages.

40. The above-described facts were provided to the Receiver on January 25, 2004.

## DISCUSSION OF POINTS AND AUTHORITIES

The Halpern Mortgages are in dispute. The Receiver has failed to develop the record with the facts that this Court must have to evaluate the Halpern Mortgages. Previously, the Receiver proposed that the Commodore Properties would be sold free and clear of all liens, while validity and priority of claims would be determined after those liens were transferred to the sale proceeds. The Receiver's present motion seeks to circumvent that process entirely. This concern applies whether the Halpern backup offer is triggered or not. The Receiver asks this Court's approval to **give** the Halpern Parties either (a) the Commodore Properties on a credit bid, or (b) the proceeds from the sale thereof. In either case, the Receiver's motion is not supported by the record.

Case 1:23-cv-24903-JB   Document 315   Entered on FLSD Docket 12/17/2024   Page 10 of 17
CWL-CH, LLC, ASJAIA, LLC, And Vieden Grove Oz, LLC'S Response to Receiver's Motion to Approve Settlement Agreement
with the Halpern Parties Relating to the Commodore Properties and Distribution of Sale Proceeds and Back-Up Sale Contract
Case No. 1: 23-cv-24903
Page 10 of 17

Moreover, the Receiver has ignored the following authority: "The law leaves no doubt that the holder of a lien the validity of which has not been determined, as here, may not bid its lien." *In re Fisker Auto. Holdings, Inc.*, 510 B.R. 55, 61 (Bankr. D. Del. 2014) (citation omitted); *see also In re Daufuskie Island Props., LLC,* 441 B.R. 60 (Bankr. D.S.C. 2010); *National Bank of Commerce of El Dorado v. McMullan (In re McMullan)*, 196 B.R. 818, 835 (Bankr. W.D. Ark. 1996) (at sale, mortgagee not allowed to credit bid its claimed liens or security interest because the validity of its liens and security interests were unresolved); *In re Octagon Roofing*, 123 B.R. 583, 592 (Bankr. N.D. Ill. 1991) (bank allowed to credit bid conditioned upon the posting of an irrevocable letter of credit to protect the estate in the event the lien were later avoided).[2] For these and other reasons, this Court must reject the Receiver's motion in its entirety.

1. **Receiver's New Motion Eliminates the Claims Process.**

Paragraph ¶ 18 of the Receiver's Commodore Sale Motion states that:

> The Receiver seeks to sell the Commodore Properties to the Buyer, free and clear of all liens, claims, and encumbrances through the closing date, with all such liens attaching to the net sale proceeds with the same priority, extent and validity as they had prior to the receivership, ….

As is discussed below, this language represents to this Court and affected creditors that the Receiver will conduct a post-sale claims process. Presumably, that paragraph describes a process through which the Receiver and the Court would test the validity and priority of all claims of lien against the Commodore Properties, including the questioned Halpern Trusts' liens. This is in stark contrast to the thrust of the present motion, as reflected in the following:

> Absent a settlement, the Halpern Parties could assert an entitlement as first position lender to all of the net proceeds from a sale of the Commodore Properties, which if successful would mean there would be no recovery at all for the receivership estate,

---

[2] The Receiver has also ignored this Court's prior rejection of the Halpern Parties' purported right to a "credit bid". *SEC v. Kapoor*, No. 23-cv-24903-JB, 2024 U.S. Dist. LEXIS 106961, at *13 (S.D. Fla. June 17, 2024, D.E. 185, hereafter the "Stewart Property Order," at p. 10) ("While a secured lien constitutes a protected property interest … the Halpern Trusts cite no legal authority that a right to credit bid qualifies as such.")



Case 1:23-cv-24903-JB   Document 315   Entered on FLSD Docket 12/17/2024   Page 11 of 17

*CWL-CH, LLC, ASJAIA, LLC, And Vieden Grove Oz, LLC'S Response to Receiver's Motion to Approve Settlement Agreement with the Halpern Parties Relating to the Commodore Properties and Distribution of Sale Proceeds and Back-Up Sale Contract*
*Case No. 1: 23-cv-24903*
*Page 11 of 17*

> junior creditors or investors, while still leaving potential exposure to the Commodore Companies on a deficiency claim.

Receiver's Motion, D.E. 310 at page 21. Nothing in the foregoing statement reflects any assessment by the Receiver of the validity of the Halpern claims. Later, the Receiver also states that:

> While certain parties have suggested that the loans may be subject to rescission on various grounds, the Receiver has considered the likelihood that the requirements for such a remedy could be satisfied, including the restoration of any benefits received (i.e., the loan proceeds).

Thus, claimants with a legitimate opposition to Halpern's validity and priority would be in the unenviable position of chasing assets that have already been transferred. Neither the estate nor the expected beneficiaries of the estate stand to gain anything from giving the property to the Halpern Parties before the validity of these liens is established.

2. **Recitation of the Factual Background is Flawed and Incomplete**.

The Receiver's statement of the "Factual Background" omits all facts regarding the CG Interested Persons' challenge to the validity of the Halpern Parties' purported mortgage liens. Nevertheless, the Court should take judicial notice of docket entries in the case of *CWL-CH LLC, et al. vs. Kapoor, et al.*, Miami-Dade Circuit Case No. 2022-024051-CA-01 (the "State Court Case"). Among those entries are the original Complaint, *see* State Court Case, Docket Entry No. 2, and the Motion for Leave to File their First Amended Complaint in the State Court Case (hereafter the "First Amended Complaint"), s*ee* State Court Case, Docket Entry No. 58. From those and other docket entries, it should be evident that the CG Interested Persons have maintained

Case 1:23-cv-24903-JB   Document 315   Entered on FLSD Docket 12/17/2024   Page 12 of 17
CWL-CH, LLC, ASJAIA, LLC, And Vieden Grove Oz, LLC'S Response to Receiver's Motion to Approve Settlement Agreement
with the Halpern Parties Relating to the Commodore Properties and Distribution of Sale Proceeds and Back-Up Sale Contract
Case No. 1: 23-cv-24903
Page 12 of 17

challenges as to the Halpern Parties' mortgages for some time.[3] The CG Interested Persons have previously notified the Receiver of the pertinent filings in the State Court Case.

It is apparent that the Receiver has taken notice of these filings because she relies on some of these facts therefrom in her prior filings. In the Commodore Sale Motion, the Receiver reported that "[t]he movement of funds from the Halpern Trusts is not straightforward." D.E. 238 ¶ 16, pages 8-9. The Receiver then described questionable transactions reflecting the movement of $2,437,629.94 on February 14, 2023, between the Halpern Trusts and Location Capital LLC.[4]

The Court should recognize that the Receiver's prior filing [D.E. 238 ¶ 16] reports at least one of the questions that have been raised about *how the proceeds of Halpern's purported loans were used*. The Court should also note that nothing in the Receiver's representations in ¶¶'s 16 through 20 of the Receiver's present Motion would confirm that the Halpern loan proceeds were spent on the on the Commodore Properties or benefited the purported mortgagors.

Therefore, the Receiver has not stated any facts that would warrant a finding by this Court that the Halpern Parties' purported "credit bid" is valid and enforceable as to the Commodore Properties. For that reason, both aspects of the Receiver's present motion should be denied.

### 3. This Sale does not Comply with 28 U.S.C § 2001

In ¶ 9, the Receiver concludes that she has been relieved from compliance with the clear statutory directives set forth in 28 U.S.C. § 2001. This is predicated on the notion that Mr. Kapoor can waive the protections of 28 U.S.C. § 2001 without the consent of the beneficiaries of the

---

[3] These State Court Case docket entries are discussed in the CG Interested Persons' Motion for Relief from Stay, etc. [D.E. 244], which is by this reference incorporated herein.

[4] The Receiver's descriptions are consistent with the facts that are set forth in the Declaration of Greg Brooks, Former CFO of Location Ventures, LLC (the "Brooks Declaration"), which is attached hereto. The Brooks Declaration is discussed in greater detail below; it provides additional details to explain why this Court should require the Receiver to investigate and report on the Halpern Trusts' purported liens on the Commodore Properties.



Case 1:23-cv-24903-JB   Document 315   Entered on FLSD Docket 12/17/2024   Page 13 of 17
CWL-CH, LLC, ASJAIA, LLC, And Vieden Grove Oz, LLC'S Response to Receiver's Motion to Approve Settlement Agreement
with the Halpern Parties Relating to the Commodore Properties and Distribution of Sale Proceeds and Back-Up Sale Contract
Case No. 1: 23-cv-24903
Page 13 of 17

receivership estate. The statute was not designed to protect Mr. Kapoor. It is designed to ensure a fair and transparent process for the creditors and beneficiaries of the estate. Why then could Mr. Kapoor waive those protections? The CG Interested Persons are in fact "parties" within the meaning of 28 U.S.C. § 2001. *Acadia Land Co. v. Horuff*, 110 F.2d 354 (5th Cir. 1940). As such, without their consent, no waiver is effective. Furthermore, as the *Horuff* court held, until the prerequisites established in § 2001 are satisfied, this Court lacks a jurisdictional basis for completing the contemplated sale.

Here, there is no substantial compliance with the statute as described in *Horuff*. As a result, this Court lacks jurisdiction to confirm the sale. The statute requires three independent appraisers appointed by the court. To date, only one appraisal of the Commodore Properties has been conducted. Even so, that appraiser has not established that he is independent. Along with that, the appraiser was not appointed by the Court but was hired by the Receiver. It is not clear that there is a separate appraisal for each class of properties. For these and other reasons, the reliability of this first appraisal is presently being evaluated by another appraiser, who was hired, *and paid for*, by the victims of the fraud and not by the estate.

In short, the Receiver's motion to approve the sale, including a backup sale to the Halpern Parties, should be denied for failure to comply with 28 U.S.C. § 2001.

4. **Receiver's Proposed Settlement Would Violate this Court's Interpretation of Wells Fargo**.

In the Stewart Property Order, this Court considered the Halpern Trusts' arguments that a proposed sale violated its due process rights and constituted a taking without just compensation. D.E. 185 at page 8. To analyze these arguments, the Court considered the Eleventh Circuit's ruling in *SEC v. Wells Fargo Bank, N.A.*, 848 F.3d 1339, 1345 (11th Cir. 2017) ("a federal district court

Case 1:23-cv-24903-JB   Document 315   Entered on FLSD Docket 12/17/2024   Page 14 of 17
*CWL-CH, LLC, ASJAIA, LLC, And Vieden Grove Oz, LLC'S Response to Receiver's Motion to Approve Settlement Agreement with the Halpern Parties Relating to the Commodore Properties and Distribution of Sale Proceeds and Back-Up Sale Contract*
Case No. 1: 23-cv-24903
Page 14 of 17

cannot order a secured creditor to either file a proof of claim and submit its claim for determination by the receivership court, or lose its secured state-law property right that existed prior to the receivership."); *see also* D.E. 185 at page 9. Applying *Wells Fargo*, this Court ruled that "the Halpern Trusts' junior security interest is not extinguished or invalidated, but rather, attaches to the funds in the Lien Claim Fund." Thus, this Court relied upon a transfer of liens, coupled with the Receiver's proposed claims process, to avoid a finding that a proposed "free and clear" sale would extinguish a creditor's state-law property right.

For at least two reasons, the Receiver's present Motion is a clear violation of the spirit of the Stewart Property Order and the holding in the *Wells Fargo* decision. First, if the First Sale Contract closes, the Receiver proposes to transfer all net sale proceeds to the Halpern Parties without any consideration given to the other creditors. D.E. 310, page 13. Those transactions would be conducted free and clear of all liens. There would be no transfer of liens from the Commodore Properties to the net sale proceeds. Indeed, no accommodation whatsoever would be made to ensure that "junior" creditors rights were preserved. In short, the Receiver's approach completely ignores *Wells Fargo*.

Second, if the First Sale Contract fails to close and the Court allows the Halpern Parties' Back-up Sale Contract (with a "credit bid") to be consummated, there would also be no transfer of liens to the net sale proceeds. Like in the first scenario, the CG Interested Persons' liens would simply be extinguished. Further, they would be denied a right to defend their liens or to challenge the validity of the Halpern Parties' liens. Consequently, the Receiver's proposal is a clear violation of the *Wells Fargo* ruling.

By virtue of their Commodore Notices of Lis Pendens, the CG Interested Persons have liens which remain intact throughout these proceedings. Unless and until they are adequately

Case 1:23-cv-24903-JB   Document 315   Entered on FLSD Docket 12/17/2024   Page 15 of 17

CWL-CH, LLC, ASJAIA, LLC, And Vieden Grove Oz, LLC'S Response to Receiver's Motion to Approve Settlement Agreement
with the Halpern Parties Relating to the Commodore Properties and Distribution of Sale Proceeds and Back-Up Sale Contract
Case No. 1: 23-cv-24903
Page 15 of 17

compensated, or the stay is lifted and the CG Interested Persons are allowed to assert their claims in the State Court, this Court has no jurisdiction that would allow it to summarily terminate their liens.

Furthermore, in the absence of a fund to which liens have attached and been transferred after a sale, this Court cannot pretend to allow the Commodore Properties to be sold "free and clear of all liens." If it attempts to do so, this Court will contravene its own ruling in the Stewart Property Order. Moreover, even if it imposes a claims process for the adjudication of such transferred liens, *Wells Fargo* mandates that this court recognize that it cannot summarily write off all lienholders in favor of the Halpern Parties. As the Halpern Parties observed in their challenge to the Stewart Property sales, were the Court to allow that, it would violate due process and effectuate a taking without just compensation.

5. **A Challenged Lien Cannot Support a Credit Bid.**

Surprisingly, at page 21 of her Motion, the Receiver cites *SEC v. Capital Cove Bancorp LLC*, No. SACV 15-980-JLS (JCx), 2015 U.S. Dist. LEXIS 174856 (C.D. Cal. Oct. 13, 2015) as support for her proposed settlement with the Halpern Parties. Nevertheless, even a superficial reading of *Capital Cove* reveals that it stands for the proposition that a challenged lien cannot support a credit bid in an SEC receivership case. In that case, "CAM" referred to senior lienholders on four of the properties at issue in an SEC receivership. CAM sought permission to employ a credit bid to purchase the disputed properties. However, the Receiver in that case argued that CAM's liens were voidable. As it accepted analogous guidance from the U.S. Bankruptcy Code, the *Capital Cove* court held that:

> Although secured creditors may credit bid under 11 U.S.C. § 363(k), courts may deny this opportunity "for cause." *See* 11 U.S.C. § 363(k). "Intrinsically, acting 'for

Case 1:23-cv-24903-JB   Document 315   Entered on FLSD Docket 12/17/2024   Page 16 of 17
*CWL-CH, LLC, ASJAIA, LLC, And Vieden Grove Oz, LLC'S Response to Receiver's Motion to Approve Settlement Agreement with the Halpern Parties Relating to the Commodore Properties and Distribution of Sale Proceeds and Back-Up Sale Contract*
Case No. 1: 23-cv-24903
Page 16 of 17

cause' looks to the court's equity powers that allow the court to balance the interests of the debtor, its creditors, and the other parties of interests in order to achieve the maximization of the estate and an equitable distribution to all creditors." *In re RML Dev., Inc.*, 528 B.R. 150, 155 (Bankr. W.D. Tenn. 2014) (citing *Florida Dept. of Revenue v. Picadilly Cafeterias, Inc.*, 554 U.S. 33, 51, 128 S. Ct. 2326, 171 L. Ed. 2d 203 (2008); *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 527, 104 S. Ct. 1188, 79 L. Ed. 2d 482 (1984); *Katchen v. Landy*, 382 U.S. 323, 336, 86 S. Ct. 467, 15 L. Ed. 2d 391 (1966)).

A number of equitable considerations justify the denial of CAM's request to credit bid. The Court takes note of the SEC's prima facie case of Defendants' securities fraud, the Receiver's evidence of a Ponzi scheme, the numerous investors and creditors that were defrauded by Defendants, the Receiver's finding that Defendants' collective assets will be insufficient to pay 100% of all amounts claimed, and the Receiver's intent to equitably distribute recovery among all those who were harmed. **Allowing CAM to credit bid would harm the many unsecured and junior creditors who also await recovery. This conclusion is further supported by the Court's finding that a bona fide dispute exists as to CAM's liens against the properties at issue. Accordingly, the Court finds it has justifiable "cause" to deny CAM's request to credit bid**.

2015 U.S. Dist. LEXIS 174856, at *29-30 (emphasis added); *see also* cases cited above on page 10. The facts in the present case require this Court to reach the same conclusion. The Receiver, Brooks, and the CG Interested Persons have each presented bona fide reasons to dispute the validity of the Halpern Parties' liens. Indeed, the CG Interested Persons named some of the Halpern Parties as defendants in the First Amended Complaint that they filed in the State Court Case, wherein they challenged the validity of those same liens. In short, there exists a bona fide dispute as to the validity of the Halpern Parties' liens. Accordingly, per *Capital Cove*, this Court should deny the present motion for cause, and also deny the Halpern Parties the opportunity to assert a "credit bid".

WHEREFORE, the CG Interested Persons respectfully pray that this Honorable Court will deny the Receiver's Motion to Approve Settlement Agreement with the Halpern Parties Relating to the Commodore Properties and Distribution of Sale Proceeds and Back-Up Sale Contract, and

Case 1:23-cv-24903-JB   Document 315   Entered on FLSD Docket 12/17/2024   Page 17 of 17
CWL-CH, LLC, ASJAIA, LLC, And Vieden Grove Oz, LLC'S Response to Receiver's Motion to Approve Settlement Agreement
with the Halpern Parties Relating to the Commodore Properties and Distribution of Sale Proceeds and Back-Up Sale Contract
Case No. 1: 23-cv-24903
Page 17 of 17

grant them such relief as is just and equitable, including fees and costs for preparing and submitting this response.

        Respectfully submitted,

        **BARAKAT + BOSSA, PLLC**
*Attorneys for* CWL-CH, LLC, ASJAIA, LLC, and VIEDEN GROVE OZ, LLC
201 Alhambra Circle, Suite 1060
Coral Gables, Florida 33134
Tel (305) 444-3114

By: */s/ Brian Barakat*
**BRIAN BARAKAT**
Florida Bar Number 457220
barakat@b2b.legal
service@b2b.legal
cguzman@b2b.legal

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 17, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, and that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Brian Barakat*
**BRIAN BARAKAT**

