# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-cv-24903-CIV-JB

SECURITIES AND EXCHANGE
COMMISSION,

     Plaintiff,

v.

RISHI KAPOOR; *et al.*,

     Defendants.

_____/

## ORDER GRANTING RECEIVER'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH THE HALPERN PARTIES RELATING TO THE COMMODORE PROPERTIES AND DISTRIBUTION OF SALE PROCEEDS AND BACK-UP SALE CONTRACT

**THIS CAUSE** came before the Court upon the Receiver, Bernice C. Lee's Motion to Approve Settlement Agreement with the Halpern Parties Relating to the Commodore Properties and Distribution of Sale Proceeds and Back-Up Sale Contract (the "Motion"). ECF No. [310]. CWL-CH, LLC, ASJAIA, LLC and Vieden Grove Oz, LLC's (the "CG Investors") filed a response, ECF No. [315], and TB 3138 Commodore Investments, LLC and TB 3120 Commodore Investments, LLC (the "3138/3120 Ground Lessors") filed a limited response, ECF No. [316]. The Receiver filed replies to the response and limited response, ECF No. [320, 321], and the Court held oral argument on the Motion.

The Court has carefully considered the Motion, responses and replies, and the accompanying exhibits, as well the pertinent portions of the record and the relevant legal authorities. For the reasons explained more fully below, the Motion is

1

**GRANTED**.

## I.   BACKGROUND

On December 27, 2023, the Securities and Exchange Commission ("SEC") filed a Complaint for Injunctive Relief against Rishi Kapoor ("Kapoor") and the Receivership Companies alleging that Kapoor used the Receivership Companies to operate a real estate scheme in violation of the anti-fraud provisions of the federal securities law raising approximately $93 million from more than 50 investors from January 2018 through March 2023. *See generally* Complaint, ECF No. [14-1]. On January 12, 2024, the Court entered an Order appointing Bernice C. Lee as receiver "for the estate of the Receivership Companies, including any of [their] divisions, subsidiaries, affiliates, successors, and assigns; and any fictitious business entities or business names created or used by the Receivership Companies, their divisions, subsidiaries, affiliates, successors, and assigns." ("Receivership Order"). ECF No. [28] at ¶ 2.

The Receivership Order authorizes the Receiver to sell real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property. *Id*. at ¶ 32. The Receivership Order further provides that "[u]pon further Order of the Court, pursuant to such procedures as may be required by the Court and additional authority such as 28 U.S.C. sections 2001 and 2004, the Receiver is authorized to sell, and transfer clear title to, all real property in the Receivership Estate." *Id*. at ¶ 33.

On January 24, 2024, the Court entered an Order approving the parties'
Stipulation Waiving Requirements of 28 U.S.C. § 2001(a) and (b) in Connection with
Real Property Sale Motion (the "Section 2001 Order"). ECF No. [51]. The Section 2001
Order provides that "[t]he Receiver is excused from compliance with 28 U.S.C. section
2001 in connection with the sale of real property in this case." ECF No. [51].

### A.   The Commodore Properties and First Sale Contract

Urbin Coconut Grove Partners, LLC is a Receivership Company and the sole
owner and manager of Urbin Commodore Residential SPE, LLC, Urbin Commodore
Residential II SPE, LLC, Urbin Commodore SPE, LLC, and Urbin Commodore
Restaurant SPE, LLC (the "Commodore Companies") that own the Commodore
Properties (as defined in the Motion), an assemblage of fee simple and leasehold
interests in Miami, Florida including fee simple title to condominium and retail units
located at 3162 Commodore Plaza, fee simple title to real property located at 3170
Commodore Plaza, and leasehold interests as tenant for the leased premises located
at 3166 Commodore Plaza, 3138 Commodore Plaza and 3120 Commodore Plaza. ECF
No. [310] at ¶10.

The residential units of 3162 Commodore Plaza occupy the fourth through
sixth floors and these floors have been gutted. *Id* at ¶12. Construction ceased in the
summer of 2023. Plywood is used to cover the window openings, and flooring and tiles
have been removed. *Id*. The Commodore Companies do not have funds for the
construction, condominium association and maintenance expenses for 3162
Commodore Plaza. *Id*. City of Miami's Unsafe Structure Panel (the "City Panel")

issued an order on May 19, 2023 determining that 3170 Commodore Plaza is in violation of the building code and is required to submit a recertification report to address whether the structure is safe for occupation by tenants or residence. *Id*. The Commodore Companies do not have funds to address the structural issues or demolish 3170 Commodore Plaza. *Id*. The ground leases for 3166, 3138 and 3120 Commodore Plaza require monthly or quarterly lease payments, real estate tax payments, and other maintenance and expenses. *Id*. at ¶13. The 2023 real estate taxes have not been paid, and the county has sold the tax certificates. *Id*. The City Panel issued an order on July 28, 2023 determining that 3138 Commodore Plaza needed to be repaired within sixty days, and if not, the structure shall be demolished. *Id*. The building has not been repaired and has already been partially demolished. *Id*. Verizon Wireless Personal Communications LP has its cellular equipment on the partially demolished structure. *Id*. The equipment needs to be moved or suspended, and the demolition of the building needs to be completed. *Id*. The City of Miami has also issued a code violation notice for graffiti on 3138 Commodore Plaza, and failure to register a vacant or abandoned structure for 3166[1] and 3170 Commodore Plaza. *Id*. The Commodore Companies do not have sufficient funds to pay for real estate taxes, lease payments, demolition costs, or other expenses relating to the ground leases. *Id*.

On March 22, 2024, the Court entered an Order Granting Receiver's Motion for Authorization to Employ Real Estate Appraiser, which authorized the Receiver to

---

[1] The City of Miami in some instances refers to this property as 3168 Commodore Plaza.

employ Walter B. Duke, III and Walter Duke + Partners, Inc. as an appraiser for the fee simple and leasehold interests. ECF No. [111]. The appraiser issued appraisal reports with final opinions of market value "as is" as of March 27, 2024 for the Commodore Properties (collectively, the "Appraisals"). The Receiver filed the Appraisals with the Court under seal on December 2, 2024 [DE 309]. The Appraisals opine to a total market value substantially lower than the purchase price under the First Sale Contract (defined below) and Halpern Back-Up Sale Contract (defined below) by several million dollars. ECF No. [310] at ¶14.

On May 2, 2024, the Receiver filed a Motion to Approve Sale of Commodore Properties Free and Clear of Liens, Encumbrances and Interests (the "Commodore Sale Motion"), ECF No. 238, seeking approval of a sale contract signed by Coconut Grove Commodore Development Ventures, LLC on September 6, 2024 (the "First Sale Contract"), with all liens, encumbrances and interests attaching to the net sale proceeds with the same priority, extent and validity as they had prior to the receivership, and providing that the Receiver will file an appropriate pleading to address disbursement of the net sale proceeds at a later date with notice to be provided to all lien claimants known to the Receiver who may object to the proposed distribution and be heard by the Court. *Id.* at 19. The Court is deferring consideration of the Commodore Sale Motion to the next status conference.

**B. The Motion to Approve Settlement Agreement with the Halpern Parties and Proposed Distribution of Sale Proceeds Under the First Sale Contract**

The Receiver filed the Motion seeking the Court's approval of a settlement

agreement with the Martin I. Halpern Revocable Trust, the Halpern Family Trust (together the "Halpern Trusts"), Martin I. Halpern, individually and as Trustee of the Halpern Trusts, HFT Commodore LLC, and their successors and assigns (collectively, the "Halpern Parties") relating to the Commodore Properties, which provides for a back-up sale of the Commodore Properties to an entity affiliated with the Halpern Parties (the "Halpern Back-Up Sale Contract") that is subject and subordinate to the First Sale Contract, and (b) approval of the proposed disbursement of sale proceeds from the sale of the Commodore Properties under the First Sale Contact, which is part of the settlement agreement with the Halpern Parties. ECF No. [310]. All interested parties known to the Receiver have received notice of the Motion. *Id*. at 23.

The Receiver argues that the proposed settlement with the Halpern Parties constitutes a fair resolution with respect to the administration of the Commodore Properties, and is well within the range of reasonableness. *Id* at 17. The settlement provides that under either a closing of the First Sale Contract or Halpern Back-Up Sale Contract, all unpaid 2023 and 2024 real estate taxes, 2025 prorated real estate taxes, and all closing costs will be paid, a "carve-out" in favor of the receivership estate will be paid ($600,000 from closing on the First Sale Contract, $800,000 upon closing of the Halpern Back-Up Sale Contract), and all claims and indebtedness asserted by the Halpern Parties relating to the Commodore Properties and the related loans will be satisfied and any deficiency claims will be waived. *Id*. The Halpern Parties have also agreed to pay the ground lease payments as provided in the settlement. *Id*.  The proposed settlement provides hundreds of thousands of

dollars for the benefit of the receivership estate through carveouts agreed to by the Halpern Parties. *Id*. at 18.

The total principal amount of the Halpern Parties' loans asserted against the Commodore Properties is $28 million, without including any interest or other charges that may be asserted. *Id*. In the event the First Sale Contract is approved and closes, the Halpern Parties agree to receive the Lender Payment (defined below), which will be less than $26.5 million and thus $1.5 million less than the amount of principal claimed without any interest or other expenses, such as the more than $500,000 in rental advance payments, waive any deficiency claim, and provide a $600,000 carveout from their liens and security interests on the Commodore Properties for the benefit of the receivership estate (the "First Sale Contract Carveout"). *Id*., ECF No. [320, n.5]. In the event the Halpern Back-Up Sale Contract is approved and closes, the Halpern Buyer agrees to purchase the Commodore Properties for a credit bid of $27.4 million and $800,000 carveout cash payment for the total consideration of $28.2 million, which is the same amount as the highest offer received under the First Sale Contract and exceeds the total appraised "as is" market value by several million dollars, and the Halpern Parties agree that the sale will be in complete satisfaction of all of Halpern Parties' claims and loans relating to the Commodore properties. ECF No. [310, at 18]. Under the proposed Halpern Back-Up Sale Contract, the Halpern Buyer will pay for all real estate taxes, closing costs and all other amounts required for the sale to close. *Id*. at ¶ 22(e)(A). The Receiver will seek Court approval of the Halpern Back-Up Sale Contract through a separate motion to approve sale contract

once it is executed by the Halpern Buyer, and the contract will be subject to approval of the Court and entry of this Order. *Id*. at 19.

## II.   ANALYSIS

"The district court has broad powers and wide discretion to determine relief in an equity receivership." *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (citations omitted); *Sec. & Exch. Comm'n v. Harbor City Capital Corp*., No. 6:21-cv-694-CEM-DCI, 2023 WL 1105282 (M.D. Fla. Jan. 30, 2023) ("To be sure, 'it has long been recognized that under appropriate circumstances, a federal court presiding over a receivership may authorize the assets of the receivership to be sold free and clear of liens and related claims.'"). This Court has previously determined that this includes the power to authorize the sale of real property free and clear of liens, claims, interests and encumbrances. ECF No. [185]. Even where the sale of an asset will not generate sufficient funds to satisfy all existing lien claims, the sale still can produce a benefit by reducing the claims assertable against the Receivership Companies' assets and estate. *Capital Cove*, 2015 WL 9701154 at *8 (where receiver presented evidence of the large number of unsecured and junior creditors who were defrauded, and the receiver's expected inability to pay the full amount of each claim from the pooled assets of the receivership, it was in best interests of the receivership estate to sell properties at highest possible market price, even if below the aggregate value of existing liens, rather than abandoning the properties).

The Receiver has shown that the proposed settlement agreement with the Halpern Parties, which includes the proposed Halpern Back-Up Sale Contract, which

will be subject to a separate motion and Court approval, and distribution of funds under the First Sale Contract, which will occur only if the Court approves the Commodore Sale Motion and the First Sale Contract closes, constitutes a fair resolution with respect to the administration of the Commodore Properties and is well within the range of reasonableness. Under either a closing under the First Sale Contract or Halpern Back-Up Sale Contract, all real estate taxes and closing costs will be paid. Importantly, the Halpern Parties have also agreed to pay the ground lease payments during the period that the Receiver is seeking approval of the Commodore Sale Motion and Halpern Back-Up Sale Contract as provided in the settlement, which resolves certain issues raised by the 3138/3120 Ground Lessors. In the event the First Sale Contract is approved and closes, the Halpern Parties agree to receive the Lender Payment, which will be less than $26.5 million and thus $1.5 million less than the $28 million principal asserted without any interest or other expenses, such as the more than $500,000 in rental advance payments, waive any deficiency claim, and provide the First Sale Contract Carveout of $600,000 for the benefit of the receivership estate. In the event the Halpern Back-Up Sale Contract is approved and closes, the Halpern Buyer agrees to purchase the Commodore Properties for a credit bid of $27.4 million and $800,000 carveout cash payment for the total consideration of $28.2 million, which is the same amount as the highest offer received under the First Sale Contract and exceeds the total appraised "as is" market value by several million dollars, and to pay for all real estate taxes, closing costs and all other amounts required for the sale to close. The Halpern Parties agree that the

sale will be in complete satisfaction of all of Halpern Parties' claims and loans relating to the Commodore Properties.

The Court has considered, and overruled, the objection to the Motion filed by the CG Investors, ECF No. [315], who are equity investors in Urbin Coconut Grove Partners, LLC, the entity which owns the Commodore Companies which in turn own or hold leasehold interests in the Commodore Properties. The CG Investors object that the Motion "eliminates the claim process" for the CG Investors; but the CG Investors, like all other investors in the Receivership Companies, will have an opportunity to submit a claim and to be heard on any distribution plan proposed by the Receiver in this case. The CG Investors object that the factual background in support of the Motion is incomplete, but the matters they refer to are all already of record in this case. The CG Investors' objection that the proposed sale by credit bid to the Halpern Parties does not comply with 28 U.S.C. § 2001 is premature, in that the Receiver will be filing a further motion to approve the Halpern Back-Up Sale Contract after the entry of this Order, and the issue can be addressed at that time.

The CG Investors' objection that the proposed settlement would violate the Court's interpretation of *S.E.C. v. Wells Fargo Bank, N.A.*, 848 F.3d 1339 (11th Cir. 2017) is incorrect: the holding of *Wells Fargo* was that the Court could not require a party to submit a claim and participate in a claim process to preserve a lien interest. The decision, and the Court's interpretation of it in its prior order, ECF No. [185], does not preclude the Receiver from negotiating and seeking approval of a settlement of lien claims against Receivership Property, nor does it preclude the Court from

10

approving such a settlement if it is fair and equitable and within the range of reasonableness and affected persons have the right to object and be heard, as the CG Investors have received.

The CG Investors' objection that a challenged lien cannot support a credit bid disregards that the settlement which is the subject of the Motion represents a resolution of any lien dispute for purposes of distribution of the proceeds of a sale under the Commodore Sale Motion, if approved, or for purposes of a credit bid under the Halpern Back-Up Sale Contract.

The Court further notes that the CG Investors have not – either in their objection or in their argument to the Court at hearing – provided any substantive explanation of how, as equity investors in the parent of the borrower entities, they have a valid, enforceable lien interest in the Commodore Properties.

With regard to the limited response filed by 3138/3120 Ground Lessors, ECF No. [316], the Receiver has advised that the Halpern Parties have agreed to commence making payments of the monthly rent under the ground leases consistent with the terms of the settlement set forth in the Motion commencing in January 2025 up through the closing date of the sale of the Commodore Properties pending the Court's approval of the Motion, and have agreed to pay the accrued unpaid rent since September 2024 upon the Court's approval of the Motion. ECF No. [321, at 3]. Furthermore, the Court has separately entered an order ("Stay Relief Order") on the Ground Lessors' Motion for Stay Relief, ECF No. [245], which sets forth the Ground Lessors' right to renew that motion in the event that the ground lease payments are

11

not made as provided for in this Order or in the event of changed circumstances as set forth in the Stay Relief Order. Nothing in this Order is intended to or shall have the effect of modifying the Stay Relief Order or the terms of the Ground Leases. Accordingly, any objections the Ground Lessors raised in the limited response or during oral argument are denied as moot.

## III.  CONCLUSION

For the foregoing reasons, and finding that good cause exists, it is hereby **ORDERED AND ADJUDGED** as follows:

1.   The Receiver's Motion ECF No. [310] is **GRANTED**.

2.   All interested parties listed in the service list for the Motion, and any other interested parties that have otherwise received notice of the Motion, have had the opportunity to object to the relief granted by this Order and, to the extent that any objections have not been withdrawn or resolved by stipulation prior to the entry of this Order or are not resolved by the relief granted herein or as stated herein or in the record, all such objections are hereby overruled.

3.   The settlement agreement between the Receiver and the Halpern Parties attached as Exhibit 6 to the Motion is **APPROVED**.

4.   The Halpern Parties shall pay the Ground Lessors the base monthly rent payments up through the date of the closing of the sale of the Commodore Properties and accrued rent in accordance with this Order consistent with the terms of the settlement set forth in the Motion.

5.      In the event the Court approves the Commodore Sale Motion and the sale of the Commodore Properties under the First Sale Contract closes, the Receiver is authorized to pay at closing to the Halpern Parties (i) the remaining net sale proceeds from the closing of the sale of the Commodore Properties under the First Sale Contract after payment of (A) the First Sale Contract Carveout, (B) real estate taxes, (C) Seller's closing costs and (D) the protective rental payments on the Commodore Properties the Halpern Parties advance (the "Rental Advances"); (ii) the Rental Advances of $582,079.61 the Halpern Parties paid from August 2023 through August 2024; and (iii) the additional Rental Advances for lease payments the Halpern Parties have agreed to and will pay from September 2024 through closing (collectively, the "Lender Payment").

6.      Further, in the event the Court approves the Commodore Sale Motion and the sale of the Commodore Properties under the First Sale Contract closes, the Receiver is authorized to pay at closing to the receivership estate the First Sale Contract Carveout for the benefit of the receivership estate. The First Sale Contract Carveout funds will be free and clear of any liens, claims, interests and encumbrances, and will constitute an unencumbered asset of the receivership estate, with any disbursement subject to the terms of the Receivership Order and future

Court orders.

**DONE AND ORDERED** in Miami, Florida this 29th day of January, 2025.

_____

**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**