UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 23-24903-CIV-JB

SECURITIES AND EXCHANGE
COMMISSION,

    *Plaintiff*,

v.

RISHI KAPOOR, et al.

    *Defendants*.

_____/

**CWL-CH, LLC, ASJAIA, LLC, AND VIEDEN GROVE OZ, LLC'S
MOTION TO INTERVENE FOR THE LIMITED
PURPOSE OF OPPOSING RECEIVER'S
PROPOSED THIRD-PARTY LITIGATION PROCEDURES**

CWL-CH, LLC. ("CWL-CH"), ASJAIA, LLC. ("ASJAIA"), and VIEDEN GROVE OZ, LLC ("VIEDEN") (jointly and referred to hereafter as the "CG Investors"), by and through the undersigned counsel and, pursuant to Federal Rules of Civil Procedure, Rule 24, hereby file this Motion to Intervene for the limited purpose of opposing Receiver Bernice C. Lee's (the "Receiver") Motion to Approve Third Party Litigation Procedures and Contingency Fee Arrangement [D.E. 490, hereafter the "Motion"] and Receiver's Reply in Support of Motion to Approve Third Party Litigation Procedures and Contingency Fee Arrangement [D.E. 497, hereafter the "Reply"], and state as follows:

**INTRODUCTION**

In her Reply, the Receiver asserts that the CG Investors have not intervened in the present action. To resolve any such deficiency, and solely to the extent necessary to preserve the CG Investor's ability to object, the movants submit this Motion to Intervene for the limited purpose of



Case 1:23-cv-24903-JB   Document 502   Entered on FLSD Docket 01/21/2026   Page 2 of 11

*Motion to Intervene for the limited purpose of Opposing Receiver's proposed Third-Party Litigation Procedures*
Case No. 23-24903-CIV-JB
Page 2 of 11

opposing the Receiver's Motion. In so doing, the CG Investors do not seek affirmative relief from this Court, nor do they submit their claims to this Court's jurisdiction. Instead, the CG Investors seek this Court's recognition that its equitable powers will not permit it to grant the Receiver's Motion. This is because the Receiver "stands in the shoes" of Urbin Coconut Grove Partners, LLC ("UCGPLLC," being a Receivership Entity), and she is bound by the terms of the UCGPLLC LLC Operating Agreement (the "UCGPLLC-OA", which is attached as Exhibit A). Further, as proposed, the litigation procedures in the Receiver's Motion violate the terms of the UCGPLLC-OA. Considering that violation, an order granting the Receiver's Motion would be an abuse of this Court's equitable powers. For that reason, this Court must deny the Receiver's Motion.

## LEGAL STANDARD FOR LIMITED INTERVENTION

Under Federal Rules of Civil Procedure, Rule 24, intervention is permitted where an applicant's ability to protect its interests may be impaired absent intervention and where existing parties may not adequately represent those interests.[1] *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 205, 142 S. Ct. 2191, 2209 (2022). Limited intervention for a discrete purpose is permitted where the applicant is directly affected by the challenged procedure, and the applicant seeks only to be heard on that specific issue. *Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, 271 F.R.D. 530, 537 (S.D. Fla. 2010). *Abreu v. Pfizer, Inc.*, No. 21-62122-CIV-MOORE, 2022 U.S. Dist. LEXIS 19796 (S.D. Fla. Feb. 3, 2022).

To the extent formal intervention is necessary, the CG Investors seek to intervene on a limited basis in the present action under Rule 24(a) for intervention as of right. The four

---

[1] This Court has not granted the CG Investor's prior motion for relief from the Stay in the Receivership Order. *See* D.E. 244 and 432. Therefore, the CG Investors only avenue to protect their interests and to challenge the Receiver's actions in the present case is to seek leave to intervene in this action.



Case 1:23-cv-24903-JB Document 502 Entered on FLSD Docket 01/21/2026 Page 3 of 11

*Motion to Intervene for the limited purpose of Opposing Receiver's proposed Third-Party Litigation Procedures*
Case No. 23-24903-CIV-JB
Page 3 of 11

requirements for intervention as of right are: (1) the motion to intervene must be timely; (2) the party seeking to intervene must claim an interest related to the subject matter of the action; (3) the party seeking to intervene must be so situated that the disposition of this action threatens to impair or impede the party's ability to protect that interest; and (4) the existing parties must not be adequate representatives of the movant's interest. Fed. R. Civ. P. 24(a).

## MOVANTS SATISFY THE STANDARD FOR LIMITED INTERVENTION AS OF RIGHT

As is discussed below, under the UCGPLLC-OA, the CG Investors have a right to vote on "Major Decisions," which rights would be encompassed within and prejudiced by the authority that the Receiver seeks in her Motion. Despite this, the Receiver's Motion does not provide a mechanism for conditioning any such authority in a way that would conform to the UCGPLLC-OA's requirements. Consequently, the proposed litigation procedures would allow the Receiver to make litigation decisions in a manner that prejudices the CG Investors' rights under the UCGPLLC-OA.

Thus, the CG Investors meet the requirements for intervention under Rule 24(a). First, this motion is timely. Less than a month ago, the Receiver filed her Motion and served the CG Investors. Thereafter, the CG Investors filed a timely objection as to that Motion. On January 13th, the Receiver filed her Reply. In that Reply, the Receiver argued that the CG Investors lacked standing to contest the Motion and had not sought leave to intervene. So, less than two weeks ago,

Case 1:23-cv-24903-JB   Document 502   Entered on FLSD Docket 01/21/2026   Page 4 of 11

*Motion to Intervene for the limited purpose of Opposing Receiver's proposed Third-Party Litigation Procedures*
*Case No. 23-24903-CIV-JB*
*Page 4 of 11*

the Receiver raised the intervention issue regarding her Motion. On that basis, the present motion is timely.[2]

Second, as is detailed below, the CG Investors are parties to the UCGPLLC-OA, as is Defendant UCGPLLC. The Receiver's Motion implicates the UCGPLLC-OA, because it contemplates allowing her to engage her own law firm to pursue claims on behalf of Receivership Entities, including UCGPLLC. Under that structure, the Receiver would have sole authority to decide to hire her own law firm. Such a structure will affect the Receivership Estate's overall recoveries and expense allocation. Moreover, the proposed structure implicates the following language:

> *"**Major Decisions**" refers to any decision by the Company to take any of the following acts, all of which acts shall require Member Approval:*
>
> ***
>
> *(xi) Institution of any legal proceedings in the name of Owners, the settlement of any legal proceedings against Owners, or the confession of any judgment against Owners or any property of Owners to the extent that: (i) such legal proceedings are not in the ordinary course of business for Owners; (ii) either Member reasonably believes that such legal proceedings may have a material adverse effect upon the reputation of the Company or such Member; or (iii) the amount in controversy, or sought by Owners or the plaintiff, is at least one hundred thousand ($100,000.00) Dollars.*
>
> *(xii) Make decisions or take other actions relating to litigation or tax-related matters not included in an Approved Operating Budget; provided that undertaking*

---

[2] The CG Investor filed a prior motion to intervene in connection with their opposition to the Receiver's motion to sell the Commodore Properties. [D.E. 238.] Likewise, the CG Investors previously sought relief from this Court's stay so that they might pursue their claims in the State Court Action. *See* [D.E. 244]. The stay relief motion remained pending until June 12, 2025, when the Court denied the CG Investors' prior Motion to Intervene and granted the Receiver's sale motion. [D.E. 432.] The sale motion remained pending until December 29, 2025, when the Court denied the CG Investors' prior Motion to Intervene and granted the Receiver's sale motion. [D.E. 492]. Therefore, any analysis of the timeliness of the present motion should reflect the pendency of the CG Investors' prior efforts to intervene or to obtain relief from the stay in the Receivership Order.



Case 1:23-cv-24903-JB   Document 502   Entered on FLSD Docket 01/21/2026   Page 5 of 11

*Motion to Intervene for the limited purpose of Opposing Receiver's proposed Third-Party Litigation Procedures*
Case No. 23-24903-CIV-JB
Page 5 of 11

> *the defense of any litigation matter which is fully insured (other than a deductible) with a claim of less than One Hundred Thousand Dollars ($100,000.00) shall not be a Major Decision.*
>
> ***
>
> *"**Member Approval**" refers to approval by Members holding at least seventy (70%) percent of all outstanding Percentage Interests in the Company.*
>
> *"**Members**" means all Persons admitted to the Company as a Member as provided herein, so long as they remain Members.*

*See* UCGPLLC-OA, pages 42-43; *see also* Section 6.5 (Voting), page 16. These provisions require the Receiver to obtain the approval of a super-majority of the members of UCGPLLC before *inter alia*, proceeding with any action involving litigation of a claim. The above-quoted provisions encompass the decisions to hire attorneys or to settle claims (i.e., "[m]*ake decisions or take other actions relating to litigation…*"). Therefore, before seeking this Court's approval as to a Major Decision related to a claim in the name of UCGPLLC, the Receiver must first obtain the approval of 70 % of the Members of that entity. To date, the Receiver has not produced any evidence that would suggest that she has obtained such approval. Indeed, she has not given the CG Investors any notice that a meeting would be held to obtain such approval. Therefore, the Receiver's Motion violates the UCGPLLC-OA.

In short, the CG Investors' interests are materially and specifically affected by the Receiver's Motion, and limited intervention is appropriate.

Third, to the extent the Receiver seeks this Court's order to authorize her to hire litigation counsel without the Members' approval, to pursue claims owned by UCGPLLC, such an order would impair or impede the CG Investors' rights under the UCGPLLC-OA. That agreement explicitly grants the CG Investors (as Members), the right to vote on decisions or actions relating to litigation or tax-related matters. Despite this, the Receiver seeks authorization to circumvent the voting

Case 1:23-cv-24903-JB Document 502 Entered on FLSD Docket 01/21/2026 Page 6 of 11

Motion to Intervene for the limited purpose of Opposing Receiver's proposed Third-Party Litigation Procedures
Case No. 23-24903-CIV-JB
Page 6 of 11

requirements that are set forth in the UCGPLLC-OA. Clearly, that would impede or impair the CG Investors' rights.

Finally, although the plaintiff's and defendants' interests are intimately bound up with those of the CG Investors, the existing parties are not adequate representatives of the movants' interests. None of the named Defendants filed a response to the Receiver's Motion or expressed any interest therein. Further, the named Defendants' actions demonstrate their complete lack of concern for the CG Investors' equity in the Commodore Properties or rights under the UCGPLLC-OA. Similarly, neither the Receiver nor the SEC has demonstrated any respect for the rights and powers that the CG Investors or other Members are granted in the UCGPLLC-OA. Clearly, these parties are not adequate representatives of the CG Investors' interests.

In her Reply, the Receiver asserts that she and the SEC ostensibly have an interest in maximizing the Receivership Estates' recovery as to all third-party claims for the benefit of the creditors. Even if that were so, that interest alone would not be sufficient to cause the Receiver or the SEC to be adequate representatives of the CG Investors' interests. The right to vote on each "Major Decision" was part of the CG Investors' bargain in entering the agreement with UCGPLLC. Each Member may have an idiosyncratic, divergent, or unstated reason for casting a vote for or against an action that UCGPLLC might undertake. Neither the Receiver nor the SEC can purport to represent that she or they could represent all such interests simultaneously. And, at every step in the present litigation, the Receiver and the SEC have opposed the positions that the CG Investors have espoused. As such, if the Receiver and the SEC are representatives of anything, they represent a perspective that does coincide with the interests of the CG Investors. To the contrary, the SEC and the Receiver represent interests that would allow the Receiver and her law firm to enjoy a potential windfall at the CG Investors' expense. In any event, by suggesting that



Case 1:23-cv-24903-JB   Document 502   Entered on FLSD Docket 01/21/2026   Page 7 of 11
*Motion to Intervene for the limited purpose of Opposing Receiver's proposed Third-Party Litigation Procedures*
Case No. 23-24903-CIV-JB
Page 7 of 11

she and the SEC are adequate representatives, the Receiver runs afoul of the Eleventh Circuit's guidance in *Clark v. Putnam Cty.*:

> We presume adequate representation when an existing party seeks the same objectives as the would-be interveners. But the presumption is weak; in effect, it merely imposes upon the proposed interveners the burden of coming forward with some evidence to the contrary. *See Meek*, 985 F.2d at 1477 ("[The presumption] merely requires the presumed result *unless* some evidence is placed before the court tending to rebut it.") (emphasis in original). Once the would-be interveners have carried their burden, the court returns to the general rule that adequate representation exists "if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed intervener, and if the representative does not fail in fulfillment of his duty." *Falls Chase*, 983 F.2d at 215 (quoting *United States v. United States Steel Corp.*, 548 F.2d 1232, 1236 (5th Cir.1977)). Showing any of these factors is not difficult. The "requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S. Ct. 630, 636 n. 10, 30 L. Ed. 2d 686 (1972).
>
> The facts here show a sufficient divergence of interest between the six black voters and the county commissioners to rebut the presumption and entitle the six black voters to intervene. First, the county commissioners have asserted to both the district court and the court of appeals that they represent the interests of all Putnam County citizens. … This intent to represent everyone in itself indicates that the commissioners represent interests adverse to the proposed interveners; after all, both the plaintiffs and the proposed defendant-interveners are Putnam County citizens. The commissioners cannot adequately represent the proposed defendants while simultaneously representing the plaintiffs' interests. The commissioners' pledge to represent all citizens has another component, as well, that reflects an interest distinct from the proposed interveners': the commissioners have a duty to consider the expense of defending the current plan out of county coffers.

168 F.3d 458, 461-62 (11th Cir. 1999) (some citations and footnotes omitted). Just as the commissioners in *Clark* could not represent all voters, the Receiver and the SEC cannot adequately represent all the Receivership Estate's creditors and each of the investors in UCGPLLC.

## MOVANTS SATISFY THE STANDARD FOR LIMITED PERMISSIVE INTERVENTION



Case 1:23-cv-24903-JB   Document 502   Entered on FLSD Docket 01/21/2026   Page 8 of 11
*Motion to Intervene for the limited purpose of Opposing Receiver's proposed Third-Party Litigation Procedures*
Case No. 23-24903-CIV-JB
Page 8 of 11

Even if the CG Investors were required to intervene and did not meet the requirements for intervention as of right, in the alternative, the Court may still be granted permissive intervention under Rule 24(b). As discussed below, the CG Investors have objected to the Receiver's Motion. *See* Fed. R. Civ. P., Rule 24(b)(1)(B) (allowing permissive intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact"); *see also Travelers Indem. Co. v. Attorneys' Title Ins. Fund*, No. 2:13-cv-670-FtM-38DNF, 2014 U.S. Dist. LEXIS 192601, at *7-8 (M.D. Fla. Apr. 25, 2014). Therefore, at a minimum, the CG Investors are entitled to seek permissive intervention for the purpose of challenging the Receiver's Motion.

Here, the CG Investors' objection to the Receiver's motion shares a common question of law and fact. As is discussed below, the Receiver's Motion implicates the scope of her authority under the UCGPLLC-OA, as well as the CG Investors' right to participate in the decision to initiate litigation. *Compare Burns v. MLK Express Servs., LLC,* 18-cv-625, 2020 U.S. Dist. LEXIS 67302, 2020 WL 1891175, at *2 (M.D. Fla. Apr. 16, 2020) (permitting a non-party with a similar class action filed in another jurisdiction to intervene for the purpose of objecting to a report and recommendations when it could impact the resolution of the non-party's case). So that the questions raised by the Receiver's Motion may be properly addressed, this Court should use its discretion and allow the CG Investors to intervene.

## THE RECEIVER "STANDS IN THE SHOES" OF THE RECEIVERSHIP ENTITIES

The Receiver's Motion and Reply seem to assume that her actions as to the third-party claims are constrained only by this Court's Receivership Order. If so, then the Receiver is mistaken. In numerous decisions, courts have recognized that general equity receivers "step into the shoes" of the receivership entity's management. *SEC v. Terry*, 833 F. App'x 229, 233 (11th



Case 1:23-cv-24903-JB Document 502 Entered on FLSD Docket 01/21/2026 Page 9 of 11

*Motion to Intervene for the limited purpose of Opposing Receiver's proposed Third-Party Litigation Procedures*
Case No. 23-24903-CIV-JB
Page 9 of 11

Cir. 2020) ("The Receiver stood in the shoes of Summit, and he 'obtain[ed] only the rights of action and remedies that were possessed by' that corporation") *citing Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1306 (11th Cir. 2020); *SEC v. Alleca*, No. 21-13486, 2022 U.S. App. LEXIS 30350, at *10 (11th Cir. Nov. 2, 2022); *SEC v. 1 Glob. Cap. LLC*, No. 18-cv-61991-BLOOM/Valle, 2019 U.S. Dist. LEXIS 26355, at *9 (S.D. Fla. Feb. 19, 2019); *Goldberg v. Chong*, No. 07-20931-CIV-HUCK, 2007 U.S. Dist. LEXIS 49980, at *9 (S.D. Fla. July 11, 2007); *SEC v. Pension Fund of Am. L.C.*, No. 05-20863-CIV-MOORE/GARBER, 2006 LX 38771, at *29-30 (S.D. Fla. Sep. 8, 2006); *SEC v. Bkcoin Mgmt., LLC*, No. 23-CV-20719-SCOLA/GOODMAN, 2024 U.S. Dist. LEXIS 55369, at *20-21 (S.D. Fla. Mar. 26, 2024).

In a recent opinion by the federal Ninth Circuit Court of Appeals, the court evaluated whether a court-appointed receiver for an LLC, who initiated litigation on the LLC's behalf against certain LLC members, could be bound by the Operating Agreement's arbitration provisions. *Winkler v. McCloskey*, 83 F.4th 720 (9th Cir. 2023). That case involved an SEC receivership where the receiver argued that "although a receiver generally stands in the shoes of the receivership entity, the receiver actually is acting on behalf of the entity's creditors, when it brings fraudulent transfer claims." 83 F.4th at 726. However, the Ninth Circuit rejected that argument, and held that:

> It is true that the Receiver's actions ultimately will benefit defrauded investors. … Nonetheless, even if the Receiver's actions ultimately benefit the receivership entity's creditors, pursuant to *Donell*, the Receiver stands in the shoes of the receivership entities, not in the shoes of the creditors.

Case 1:23-cv-24903-JB   Document 502   Entered on FLSD Docket 01/21/2026   Page 10 of 11
*Motion to Intervene for the limited purpose of Opposing Receiver's proposed Third-Party Litigation Procedures*
Case No. 23-24903-CIV-JB
Page 10 of 11

83 F.4th at 727. The court then remanded the case, in part because the district court had not decided whether the appellants were parties to the arbitration agreements.[3] However, the *Winkler* court's conclusion stands: "[w]e conclude that a receiver acts on behalf of the receivership entity and thus can be bound by an agreement signed by that entity." 83 F.4th at 723.

From these authorities, it should be clear that the Receiver's actions are governed by the organic documents, operating agreements, and other agreements of the Receivership Entities. On that basis, before hiring any attorney to engage in litigation for a claim involving UCGPLLC, the Receiver must first obtain the approval of a super-majority of that LLC's Members.

## LIMITED INTERVENTION WILL NOT VIOLATE §21(g) NOR IMPEDE THE RECEIVERSHIP

The Receiver relies on §21(g) of the Securities Exchange Act to argue broadly that intervention is barred. But courts approve limited intervention where the movant does not seek to assert independent claims or consolidate actions. The CG Investors' request does not assert independent causes of action and does not require consolidation with any collateral litigation. The CG Investors seek only to be heard on procedural issues that control the Receivership Entity's decision to pursue claims and to hire and compensate attorneys.

This request for limited intervention does not interpose new claims against the Receivership Estate. Likewise, it does not interfere with the SEC's enforcement prerogatives. Rather, it fits within the exceptions recognized by courts when a narrow procedural or property related interest is implicated.

---

[3] On November 9, 2023, after the case was remanded, the parties entered a Stipulation for Order Approving Settlement. *See SEC vs. Iannelli, et al.,* USDC-CDCal, Case 2:18-cv-05008-FMO-AFM, Document 273. As such, the question of whether the parties were bound by the Operating Agreement's arbitration clause was left unresolved in the trial court.



Case 1:23-cv-24903-JB   Document 502   Entered on FLSD Docket 01/21/2026   Page 11 of 11
*Motion to Intervene for the limited purpose of Opposing Receiver's proposed Third-Party Litigation Procedures*
Case No. 23-24903-CIV-JB
Page 11 of 11

**WHEREFORE,** CWL-CH, LLC., ASJAIA, LLC., and VIEDEN GROVE OZ, LLC, respectfully request that this Court enter an order (i) allowing them to intervene in this action for the limited purpose of objecting to Receiver Bernice C. Lee's Motion to Approve Third Party Litigation Procedures and Contingency Fee Arrangement, (ii) denying that Motion, and (iii) granting such further relief as the Court deems just and proper.

Respectfully submitted,

**BARAKAT + BOSSA, PLLC**
*Attorneys for CWL-CH, LLC., ASJAIA, LLC., and Vieden Grove Oz, LLC.*
201 Alhambra Circle, Suite 1060
Coral Gables, Florida 33134
Tel (305) 444-3114

By: */s/ Brian Barakat*
    **BRIAN BARAKAT**
    Florida Bar Number 457220
    barakat@b2b.legal
    service@b2b.legal
    cguzman@b2b.legal

## LOCAL RULE 7.1 CERTIFICATE OF CONFERRAL

Counsel for CWL-CH, LLC., ASJAIA, LLC., and Vieden Grove Oz, LLC certify that they have conferred with counsel for Plaintiff. Counsel has not advised that they are agreeable to the relief requested herein as of the time of filing of this Motion.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 20th, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, and that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Brian Barakat*
    **BRIAN BARAKAT**

